IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>KAILIN WANG,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PRETRIAL RELEASE<br><br><br>Case No. 2:24-CR-163-TS-003<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion to Review Order of Detention. The Court conducted a hearing on July 2, 2024, to hear argument from the parties. Following the hearing, the Court took the matter under advisement. For the reasons described herein, the Court orders that Defendant be granted pretrial release, subject to certain conditions.

## I.  BACKGROUND

Defendant Kailin Wang is charged in a four-Count Indictment for Interstate Cyberstalking in violation of 18 U.S.C. §§ 2261A(2) and 2265A(a) (Counts 1 and 2) and Making a False Statement or Representation in violation of 18 U.S.C. § 1001(a)(2) (Counts 3 and 4).

The government filed a Motion for Detention on May 28, 2024. In support, the government alleged that detention was justified because Defendant's repeated and ongoing harassing behaviors toward the victims demonstrate that she poses a threat to the safety of the victims while released, and her disregard of prior court orders demonstrates that no conditions can alleviate that threat. The government further argued she poses an unmanageable flight risk.

The Magistrate Judge conducted a hearing on the Motion on May 29, 2024, and ordered Defendant detained. On June 11, 2024, Defendant filed a Motion for Review of Detention by District Judge.[1]

## II.  STANDARD OF REVIEW

The Court considers Defendant's request for a review of the Magistrate Judge's order of detention under 18 U.S.C. § 3145(b) and DUCrimR 57-16(a)(1). The Court conducts a de novo review of the detention issue giving no deference to the Magistrate Judge's findings or conclusions.[2] In so doing, the Court may elect to start from scratch and take evidence—whether or not new evidence is proffered—and also may incorporate the record of the proceedings conducted by the Magistrate Judge, including any exhibits.[3]

In making its determination, this Court, like the Magistrate Judge, is governed by the standards set forth in 18 U.S.C. § 3142. Under that statute, an accused is ordinarily entitled to pretrial release, with or without conditions, unless the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and community."[4]

An order of detention is appropriate only if the government meets its burden to prove risk of flight by a preponderance of the evidence and dangerousness to any other person or to the community by clear and convincing evidence.[5] To determine whether there are conditions of

---

[1] Docket No. 27.

[2] DUCrimR 57-16(a)(1) (providing for de novo review of detention orders); *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002); *see also United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003) (holding that district court's review under §3145(a) is de novo).

[3] *Lutz*, 207 F. Supp. 2d at 1251.

[4] 18 U.S.C. § 3142(e)(1).

[5] *Cisneros*, 328 F.3d at 616.

release that will reasonably assure the appearance of Defendant and the safety of any other

person and the community, this Court considers the following factors:

>   (1) The nature and circumstances of the offense charged . . . ;
>   (2) the weight of the evidence against the person;
>   (3) the history and characteristics of the person, including—
>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . [6]

## III.  DISCUSSION

First, the Court considers the nature and circumstances of the offense charged. Here,

Defendant is charged with cyberstalking and falsifying documents. There are two alleged victims

of Defendant's actions. According to the Indictment, Victim 1 and Defendant had a brief sexual

relationship, which resulted in the birth of Defendant's child. Victim 1 has sole legal custody of

the child. Victim 2 and Defendant communicated after connecting on a social media site, but they

did not engage in a romantic or sexual relationship at any point.

The specific charges in the case involve alleged incidents occurring in 2019 where

Defendant purportedly made false statements and submitted complaints to law enforcement

accusing the victims of criminal activities that she knew they had not committed in an attempt to

injure, harass, or intimidate the victims. The government asserted, however, that for numerous

years Defendant has repeatedly engaged in harassing conduct directed at the victims through

sending messages and making public postings to and about the victims and their family or

---

[6] 18 U.S.C. § 3142(g).

friends. These alleged communications include threats to kill Victim 2 and repeated messages that he should kill himself; false public postings stating that Victim 1 abducted their minor child with whom he intends to flee the country; public posts concerning the victims that were sexual in nature; repeated attempts to obtain private information about Victim 1 though unlawful means; and other concerning and harassing behavior. Importantly here, the government alleges that Defendant has continued to engage in this or similar harassing conduct despite numerous court orders prohibiting her from doing so.

The more recent court-order violations alleged by the government include that Defendant called the police to conduct a welfare check on her child, who is also the child of Victim 1, after she had not been permitted to see the child for a time; publicly posted the name and images of the child and Victim1; and obtained and publicly posted the private address of Victim 1, which Victim 1 had made concerted efforts to keep private and which Defendant had been prohibited from obtaining. The government also noted that several years ago, Defendant produced numerous fraudulent subpoenas in an effort to obtain information on the whereabouts, travel plans, and other private information of Victim 1 and their child. The government further discussed Defendant's efforts to obtain and change her child's birth certificate in direct violation of a court order. Although this occurred some time ago, the government alleges she was told to return the birth certificate to the court and has not done so, and therefore is currently in violation of that court order.

Defendant argued that the Court should limit its considerations to her more recent behavior, which she contends has largely been compliant with the relevant court orders. Regarding the more recent violations, Defendant insists understanding of the context is critical. Defendant explained she called police out of concern for her child. After traveling to California

to see her child for her scheduled visitation, she was told she would not be able to see them because they were sick. Around that time, she had also been told that Victim 1 had filed an *ex parte* motion in an ongoing custody case to request that he be able to move the child out of the country with him. This caused her concern for her child's welfare because she had not seen them and did not know their whereabouts. She alleges the call to police, the posting of her child's name and photos, and the public notation of Victim 1's address was a result of this concern and in relation to the ongoing custody case in California between Victim 1 and her. Defendant further asserts that she has been on pretrial release for an ongoing case in California since 2019 and, aside from these issues related to the custody case, she has largely been compliant with conditions.

Second, the Court considers the weight of the evidence. The Indictment provides probable cause that Defendant committed these offenses. Third, the Court considers the history and characteristics of the person. Defendant was born in China in 1983. She moved to the United States in 1990 with her family, and soon after became a US citizen. She has lived in Utah most of her life and has an accounting degree from UVU. Prior to her arrest, she lived in Spanish Fork with her parents and traveled to California regularly for her scheduled visitation time with her child. Her parents appear very supportive of her.

Defendant currently has criminal charges pending in a criminal case in California involving the same victims, which was filed in 2019 and involves allegations of stalking behaviors beginning in 2017. She is also named as a defendant in the Fourth Judicial District of Utah, in American Fork for allegations of forgery and making false statements under oath in an attempt to gain information about Victim 1 and/or their child. She also pleaded guilty to criminal harassment charges in a 2013 case filed in New York. Defendant was required to surrender her

5

passport in relation to the California case. She has also been flagged by the United States

Department of State as an abduction risk due to her efforts to obtain and change her child's birth

certificate.

Finally, the Court considers the nature and seriousness of the danger to any person or the

community that would be posed by the person's release. While the crimes of which Defendant is

accused do not involve directly inflicting physical harm to others (though she has threatened

physical harm), her alleged behaviors would certainly be distressing and emotionally harmful to

the targeted individuals. This is particularly true if such behavior were to continue.

Considering the above analysis, the Court finds as follows: The government has not

shown by a preponderance of the evidence that Defendant poses an unmanageable flight risk.

Defendant has been on pretrial release since 2019 and has pending cases in both California and

Utah, and, to the Court's knowledge, she has not missed any appearances at which she was

required in either location. The Court also finds it significant that her parents and primary

support system are located in Utah. The government noted concern with Defendant's ties to

China; however, even if she were able to fraudulently obtain a false passport, there is no

evidence before the Court suggesting she has sufficient support or opportunities in China such

that unlawfully fleeing to China would be plausible.

The Court is more concerned of the ongoing risk Defendant poses to the victims in this

case. However, considering the preference for pretrial release[7] and each of the Section 3142(g)

factors discussed above, the Court finds that the government has not shown by clear and

---

[7] *United States v. Frater*, 356 F. App'x 133, 134 (10th Cir. 2009) ("In general, the Bail
Reform Act expresses a preference for pretrial release.").

convincing evidence that a combination of certain conditions imposed on the Defendant will not

"reasonably assure" the safety of the victims in this case. Accordingly, the Court will order

Defendant released and impose strict conditions which, among other things, prohibit her use of

the internet, prohibit her possession of internet capable devices, and require home confinement

and GPS monitoring. Each of the pretrial release conditions will be listed in a separate order.

Defendant is cautioned that a single violation of the pretrial release conditions, including any

public or electronic posting of any kind and on any site, will likely result in revocation of pretrial

release.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant is to be transported by the United States Marshals to the

United States District Court for the District of Utah Courthouse on the morning of July 5, 2024,

to be rolled up and released. It is further

ORDERED that Defendant must sign an acknowledgement of her pretrial release

conditions prior to her release. Counsel must deliver the signed copy of the Order setting

conditions of release form to the Clerk's Office. It is further

ORDERED that the Magistrate Judge's Order of Detention (Docket No. 13) is

OVERRULED. It is further

ORDERED that the government's Motion for Detention (Docket No. 10) is DENIED.

DATED this 3rd of July, 2024.

BY THE COURT:

_____

Ted Stewart
United States District Judge