MELISSA HOLYOAK, United States Attorney (#9832)
JOEY BLANCH, Assistant United States Attorney (#16665)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah, 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:24-CR-163 TS |
| Plaintiff, | **GOVERNMENT OBJECTION TO DEFENSE MOTION TO MODIFY CONDITIONS OF RELEASE** |
| vs. | |
| KAILIN WANG, | Magistrate Judge Samuel Pead |
| Defendant. | Judge Ted Stewart |

The United States, by and through the undersigned Assistant United States Attorney, hereby objects to defendant Kailin Wang's request to modify conditions of pretrial release that would allow her to travel internationally.

**PROCEDURAL HISTORY**

This case was initiated via Grand Jury Indictment on May 8, 2024. (ECF No. 1). The Indictment charged defendant with two counts of violating 18 U.S.C. § 2261A(2) and 2265A(a), interstate cyberstalking, and two counts of violating 18 U.S.C. § 1001(a)(2), false statements. (ECF No. 1). Defendant first appeared before Magistrate Judge Daphne A. Oberg on May 29, 2024. At that time, the government requested that defendant be

1

detained. (ECF 10). (This request was later supplemented with supporting documents, see ECF 32 and supporting under seal documents).

Defendant was initially ordered detained. (ECF No. 13 and 22). On June 11, 2025, defendant filed a motion for review of detention with District Court Judge Ted Stewart. (ECF No. 27). A hearing was held on July 2, 2025, wherein Judge Stewart ordered the defendant released on conditions. (ECF No. 34, 35, 37). This order was briefly stayed, but on July 9, 2024, the Court issued a Second Amended Order setting conditions of release for defendant (ECF No. 41). The conditions included GPS monitoring, as well as no Internet access, and no access to an Internet-capable device. (ECF No. 41). On July 22, 2025, the conditions were modified to allow defendant access to an Internet-capable device and the Internet for the limited purpose of attending virtual court hearings where defendant's appearance is required. (ECF 45).

On June 4, 2025, the Government filed a motion to revoke defendant's release for violating a discovery protective order. The allegations set forth in that motion were that defendant posted unredacted, protected, discovery containing personal identifying information of victims and minors on a publicly available Google drive and provided a hyperlink to that Google drive in a filing made in California state court. (ECF 76).

On September 30, 2025, defendant plead guilty to cyberstalking Victims 1 and 2 pursuant to a highly negotiated global plea agreement. (ECF 88, 89). Defendant specifically admitted to using multiple email account, social media accounts, and phone

numbers to send numerous derogatory and defamatory messages, texts and other communications to and/or about them.  She also admitted reporting both victims to federal law enforcement in order to harass and intimidate them.   As part of the agreement, the government withdrew the motion to revoke defendant's pretrial release.  Defendant is pending sentencing in this case.

As part of the global agreement, on November 4, 2025, defendant separately pleaded guilty in State of Utah v. Kailin Wang, Third District Court case number 211100167.  Defendant was facing felony counts in that case, including making knowing false statements to law enforcement (using false and misleading evidence to obtain a protective order), forging documents (issuing at least 12 fraudulent subpoenas to various entities using the Fourt District Court's signature stamp and a court clerk's signature, using the signature page from a previously issued filing in a civil custody case), and communications fraud.   Pursuant to the plea agreement, defendant pleaded guilty to Count 1, amended to making a false written statement, a Class B misdemeanor, and Count 9, felony forgery reduced to a Class A misdemeanor pursuant to Utah criminal code 77-2.2.3.  In the factual basis in support of the plea, defendant admitted that she had knowingly created a "false impression" in a written application for a protective order by omitting information that would have absolved the respondent [Victim 1 in the federal case] of her accusation regarding a nude photograph. She also admitted that she had repurposed a previously court-stamped form in order to send a subpoena purportedly

issued by the Fourth District Court to a nursery school to obtain records related to Minor Victim. This subpoena had in fact never been issued by the court and was outside the court's order related to the subpoenas defendant could send in that case. Defendant is still pending sentencing in that case.

Finally, defendant is also pending multiple felony charges related to stalking offenses against Victims 1 and 2 in California state court, <u>California v. Wang</u>, Superior Court of the State of California, City and County of San Francisco, case numbers 19016407 and 24500827 (consolidated). Pursuant to the terms of the global agreement, this case will be dismissed after sentencing is imposed in the federal case. However, if defendant fails to abide by her obligations in the plea agreement, that case will not be dismissed. It remains pending against the defendant.

## VICTIM'S OBJECTION

On December 28, 2025, Victim 1's attorney Douglas Rappaport provided the Government with Victim 1's objection to defendant's request to be allowed to obtain a passport and travel internationally, with the cited exhibits (attached). Victim 1's position states:

> Please be advised that [Victim 1] has become aware that Defendant Wang is requesting that the Court allow her to travel to Denmark for a hearing scheduled on January 26, 2026, for a family court case she initiated there. The hearing is from 8:30 a.m. to 12:30 p.m. MST, just four hours in duration. As with the San Francisco family court, where Wang has appeared via video for every single one of her many court appearances since 2019, the Danish Family Court has arranged for her to participate by video from the Danish Consulate in Utah (Exhibit A).

Not only can Defendant Wang appear virtually for the four-hour hearing, but for the reasons below, the victim is very concerned that Wang is attempting to travel to Denmark in advance of her sentencing:

    1.    Defendant Wang is pending sentencing in the State of Utah and in the Federal District Court, and no defendant should be permitted to travel abroad at this time, especially one who has no tangible property in the United States, has no meaningful employment, has a bank account with just several hundred dollars (according to her previous filings in the family case), has no children here, and has no other assets. Further, as discussed below, the fact that her mother and father reside in Utah should have no bearing on a modification of the terms of Defendant Wang's release. Both of her parents have been and continue to be actively complicit in their daughter's crimes and potential plot to abduct the minor child.

    2.    Defendant Wang had initially been deemed by the San Francisco Family court to constitute an abduction risk to the minor child (See 3/6/19 order attached as Exhibit B), and then later was found to constitute a "heightened" abduction risk. (See 7/30/21 and 2/2/22 orders attached as Exhibits C and D.) Utah law enforcement believes that Wang's parents were attempting to hide the minor child and were dishonest about the child's whereabouts (see Report attached as Exhibit E). When Wang was arrested for felony stalking in San Francisco in October, 2019, it was discovered that she had recently obtained an open ten year visa to China and that her parents had recently transferred title of their properties to an LLC for nominal consideration.

    3.    On June 9, 2021, Utah Sgt. Richard Hales authored a Search Warrant Affidavit for the search of the Wang home and stated that because Wang had issued a fraudulent subpoena to the United States Department of State for the minor child's passport and to the Menlo-Atherton Cooperative Nursery School seeking the child's whereabouts and photos (information she was prohibited from having) and because of suspicious activity at the child's visitation facility by Wang and her parents, it appeared as if they were engaged in "a possible threat of abduction of [minor child]."

    4.    The California Court of Appeal, in an October 6, 2022 written opinion stated, "The record established that mother has a history of using the internet to threaten and harass father and that many of her threats involve potential harm to the child[,]" and that "evidence supports the trial court's previous finding that the child was a risk of abduction by mother." (Exhibit F)

     5.     Defendant Wang does not comply with Court orders, and worse, intentionally violates court orders as she sees fit:

     a.     On two occasions, March 6, 2019, and May 2, 2024, the San Francisco Family Court ordered that Wang relinquish the minor child's birth certificate and not apply for a new one. Not only has Wang failed to turn in the birth certificates, but the Utah Department of Vital Statistics records show that just 18 days after the court ordered that she turn in the birth certificate for the second time, she applied for a new one.

     b.     She failed to provide documentation that she completed a domestic violence course as ordered by the Court on October 21, 2022.

     c.     She was ordered not to email the San Francisco family court and continuously violated this order. (See January 27, 2021 order and April 19, 2022 order finding 45 violations at Exhibits G and H.)

     d.     She was ordered not to find the locations of the victims, but somehow obtained their new address. New criminal charges were filed by the San Francisco District Attorney on December 16, 2024, for her violation of this Order.

     e.     A federal protective order was issued prohibiting Defendant Wang from providing the federal discovery to anyone outside of her legal team and to not publish it online. Wang herself filed an objection to the Federal Protective Order from jail in a handwritten motion stating that it was imperative that she be permitted to disclose her discovery to third parties and that her federal public defender did not have her authorization to enter into the protective order. She withdrew her objection. It was later discovered that she had violated this order by either providing the discovery to her father who published it online or she published it online under his name. A motion to remand her for this conduct was filed by the government, but tabled when she offered to enter a plea of guilty to federal stalking charges.

     f.     Defendant Wang continues to use the internet in violation of the federal court orders: not only has she been sending emails to the Danish court and to prosecutors, it has recently been discovered that just nine days after the government filed a motion to remand her for her violation of the federal protective order, she again accessed the internet — this time, she

joined a facebook group under her own longstanding Facebook account and is actively using it (see Exhibit I).

The Danish Family Court found many months ago that video participation was appropriate in this case, and the Danish Family Court then arranged for the Danish consulate in Utah to set up and supervise the hearing. Now, Wang claims to the federal court that she must travel to Denmark to facilitate "real-time consultation with her Danish attorney to help the attorney understand the years-long complex child custody and visitation history of the case (which includes several thousands of documents and which has spanned multiple jurisdictions)." The hearing is on January 26, 2026, and Wang has ample time to help her attorney understand the facts of her case before the hearing, not at the hearing. Moreover, Wang has never filed anything in the Danish Family Court raising her concern about "real-time consultation" — if there is a problem with the technology that hinders Wang from consulting with her counsel during the hearing, this is a problem for the Danish court to address, not this Court.

## ARGUMENT

Since the charges were initially filed, it has been the government's position that defendant should be detained pending trial because she poses a danger to the community – particularly Victims 1 and 2 and their families – and a flight risk that cannot be ameliorated by any condition or combination of conditions of pretrial release. (ECF 10 and 32). As the government set forth in detail in its initial detention request:

- Defendant had previously been convicted of conduct that amounted to the stalking of a different victim, and in the instant case was alleged to engaged in targeting campaigns of harassment and stalking behavior against two new victims – Victims 1 and 2 – and their friends and family. (ECF 10). This is behavior to which she has now pleaded guilty.

7

- Efforts to report defendant's behavior to law enforcement did not deter the stalking behavior, but rather, escalated it: defendant attempted to use courts and law enforcement to further harass the victims, making false allegations to use courts and law enforcement to further harass the victims, making false allegations of criminal conduct by the victims in an effort to obtain court orders, law enforcement intervention, and criminal charges against the victims. (ECF 10).
- Multiple court orders have been entered to protect the victims, as well as court orders finding that defendant had violated those court orders. (Id.)
- Jail calls indicated that defendant intended to move overseas and posed a flight risk. (ECF 10).
- Defendant claimed on social media that her minor child had been "kidnapped" by Victim 1 and was "missing," and that there was a "live international abduction unfolding before our eyes." To the contrary, there was a court order granting custody of the child to Victim 1 and the court had granted Victim 1 permission to relocate the minor to a county outside the United States. (Id.) (This is the country defendant now wants to visit.)
- There was an abduction warning with the U.S Department of State related to the defendant's efforts to obtain personal information and the US passport of a minor child using falsified Utah state court subpoenas. A

> California state court judge had ordered that his written order documenting defendant's efforts to obtain a new birth certificate for the minor child in an altered name be provided to the State Department "in order to update the existing abduction warning regarding the minor child to include the altered name of the child."  (Id.)

While the District Court ultimately disagreed with the government on the issue of pretrial detention, the District Court released defendant only under strict conditions of pretrial supervision, including Internet restrictions and GPS monitoring.  Defendant's request to obtain a passport and travel outside the United States abandons all of these conditions – she will be outside the jurisdiction of pretrial service officers, her internet access cannot be monitored or restricted, her location cannot be monitored by GPS.  She will be entirely outside the reach of this Court.  Outside the United States, there are no conditions or combination of conditions that can ensure the safety of the Community and the appearance of defendant and court proceedings.

There is no reason to simply trust that defendant will voluntarily comply with the conditions of supervision and return to the United States.  She has already failed to comply with Court orders on multiple occasions.  She has posted protected discovery online (see Government's previously-filed motion to revoke pretrial detention, ECF 76); she is back to posting on social media (see the Facebook posts discussed above by Victim

9

1's attorney); she is not supposed to have any access to the Internet except for court hearings and yet she has repeatedly emailed the AUSA in this case.[1]

Defendant has now pleaded guilty and is pending sentencing in two separate criminal cases - this case and the Utah state case. The California criminal case is still pending. Defendant's admissions in her guilty pleas establish her danger to the community and rule out unsupervised international travel. This is particularly true when her crimes against the victims are internet based, and can easily be committed remotely.

Further, defendant is a flight risk. While the plea agreement allows her to request no prison time, she is well aware that the government intends to seek a year in custody – the most the government can seek under the plea agreement. The spectre of prison is hanging over her head. Since pleading guilty, defendant (or her family on her behalf) has sent multiple emails to the AUSA in this case claiming that despite her guilty pleas, she is not in fact guilty, threatening to withdraw her guilty plea, and seeking to renegotiate terms. She has made filings in other courts suggesting that that she was compelled to plead by the overwhelming power of the federal government and the victims. These

---

[1] While these emails are sent from defendant's father's email account, this is an account defendant is known to use when communicating directly with courts and counsel in other cases-emails she has signed with her name. When the AUSA pointed out to defendant through defense counsel that this was unauthorized internet access in violation of the terms and conditions of defendant's pretrial release, the emails did not stop; they simply started claiming that they were being sent "on her behalf" by her family or were "dictated" to family members to send. This is not credible, as it is unlikely defendant's father is sending the AUSA multiple back-to-back emails in the middle of the night.

claims are without any valid basis; defendant pleaded guilty, under oath, pursuant to a thorough Rule 11 colloquy, and there is plenty of evidence to support the factual basis of her guilty pleas. These claims suggest, however, that defendant has "buyer's remorse," and underscores her risk of flight.

There is simply no good reason for taking such a risk, as the Danish Courts have agreed that defendant can attend the hearing remotely, monitored by the Danish consulate. The Court should deny defendant's request.

## **CONCLUSION**

Based on the foregoing, the United States opposes defendant's request to modify the conditions of pretrial release to allow her to obtain a passport, remove her GPS monitor, and leave the jurisdiction of the United States courts.

Respectfully submitted this 29th day of December 2025.

              MELISSA HOLYOAK
              United States Attorney


              */s/ Joey Blanch*
              _____
              JOEY L. BLANCH
              Assistant United States Attorney