LDOGED
2025 DEC 29
CLERK
U.S. DISTRICT COURT

**UNITED STATES OF AMERICA v. KAILIN WANG**

**Case No. 2:24-CR-163-001**

**DEFENDANT'S MOTION FOR PERMISSION TO TRAVEL TO DENMARK FOR CUSTODY HEARING**

## I. EXECUTIVE SUMMARY

Defendant Kailin Wang requests permission to travel to Copenhagen, Denmark, for a 48-hour period to attend a custody hearing on January 26, 2026, that will permanently determine whether she will ever have contact with her seven-year-old child. This Court has already authorized Defendant's interstate travel on seven separate occasions—each time she complied perfectly, traveling for court proceedings and returning as scheduled. She seeks the same authorization here, with the same conditions that have proven effective, differing only in destination.

Three factors provide overwhelming assurance of Defendant's return:

1. **Perfect 17-month compliance record** with zero violations of any release condition;

2. **U.S.-Denmark extradition treaty** making flight legally futile and ensuring Denmark would return her to face additional federal charges; and

3. **Preservation of parental rights**—the only reason for this trip—which would be permanently destroyed by failure to return.

The child's father ("V1") successfully advocated for dismissal of California custody proceedings by arguing that Danish jurisdiction was proper and urging Defendant to file there. Having achieved dismissal on that basis, he cannot now prevent her meaningful participation in the forum he championed as necessary.

## II. INTRODUCTION

Defendant Kailin Wang respectfully requests this Court's permission to travel to Copenhagen, Denmark, to attend an in-person custody hearing scheduled for January 26, 2026, from 4:30

p.m. to 8:30 p.m. Danish time (8:30 a.m. to 12:30 p.m. Mountain Time). This hearing will determine whether she will be permitted any future contact with her only child.

Defendant's release conditions include home detention with explicit exceptions for "court appearances" and "court-ordered obligations." This motion seeks authorization to extend that existing exception to include the Danish custody hearing, consistent with seven previous authorizations for California court appearances that Defendant completed without incident.

If this Court declines to allow in-person attendance, the Danish family court will likely decline to order any visitation, permanently severing the parent-child relationship based on procedural barriers rather than the child's best interests.

---

## III. STATEMENT OF FACTS

### A. Defendant's Exemplary Compliance Record

#### 1. Perfect Compliance with All Release Conditions

Defendant has demonstrated exemplary compliance with all court-ordered conditions since her release on July 10, 2024:

- Zero violations of home detention, GPS monitoring, or any release condition in 17 months;
- No incidents reported by U.S. Pretrial Services during entire supervision period; and
- Perfect adherence to contact restrictions, location monitoring, and all supervision requirements.

#### 2. Seven Court-Approved Interstate Trips—All Successfully Completed

This Court has authorized Defendant's interstate travel for court proceedings on seven separate occasions. In every instance, Defendant complied fully with all conditions and returned as scheduled:

| Date | Docket | Purpose |
| --- | --- | --- |
| July 22, 2024 | Dkt. 45 | Modified conditions to allow internet access for out-of-state court hearings |
| November 18, 2024 | Dkt. 54 | Authorized attendance at out-of-state court hearing |

| | | |
|---|---|---|
| February 18, 2025 | Dkt. 59 | Modified release conditions for California court appearance |
| February 21, 2025 | Dkt. 61 | Authorized attendance at out-of-state court hearing |
| March 17, 2025 | Dkt. 64 | Authorized attendance at out-of-state court hearing |
| August 1, 2025 | Dkt. 82 | Authorized travel to San Francisco for court hearing on August 6, 2025 |
| December 19, 2025 | Dkt. 92 | Authorized travel to Nevada and southern California from December 22-28, 2025 |

Each authorized trip required Defendant to:

- Coordinate travel plans with her pretrial officer;
- Travel to California for court proceedings; and
- Return to Utah as scheduled.

This is precisely what she seeks authorization to do here—the only difference is the destination (Denmark rather than California) and the shorter duration (48 hours rather than the multi-day California trips).

### 3. Seven-Year History Without Incident

Before this federal case, Defendant attended in-person hearings and professionally supervised visitation for five years while V1 resided in California:

- Never violated any condition during seven years of supervised visitation;
- Never attempted contact with V1 or his family, despite knowing their California residential address and having visitation appointments 5-10 minutes from their home; and
- No security incidents across hundreds of court appearances and visitation sessions spanning seven years.

This extensive history demonstrates that Defendant respects court-imposed boundaries and poses no safety risk during supervised court proceedings.

## B. The Custody Proceedings

Defendant has not seen or heard from her child since May 17, 2024. On May 23, 2024, she was detained in this case and released on July 10, 2024, subject to conditions including home detention with GPS monitoring and international travel restrictions.

The child's father ("V1") and the child relocated to Denmark on June 1, 2024. Following V1's urging, the California Superior Court for San Francisco County terminated its jurisdiction over custody and visitation matters on July 30, 2025, explicitly transferring jurisdiction to Denmark.

## C. V1's Advocacy for Danish Jurisdiction

In his sworn declaration dated August 19, 2024, filed in the California proceedings, V1 expressly stated:

- Denmark has acquired jurisdiction over all custody and visitation matters (¶ 6);
- Danish orders are required to obtain any potential visitation (¶ 8);
- The Danish Agency of Family Law resources "are activated by Ms. Wang opening a case in Denmark" (¶ 8); and
- FRH "provided [Ms. Wang] with a simple form to open a case" and V1 urged her to file (¶ 8).

V1 successfully advocated for dismissal of the California case based on his representation that:

- Denmark was the proper and necessary forum;
- Danish courts employ appropriate child welfare frameworks;
- Defendant should and must file in Denmark to obtain visitation; and
- Danish proceedings were the only viable path forward.

## D. The Danish Court Proceedings

Following V1's urging, Defendant filed custody proceedings in Denmark. The Copenhagen City Court (*Københavns Byret*) scheduled a main hearing (trial) for January 26, 2026, in Case No. BS-29022/2025-KBH before Judge Anne-Marie Boysen.

On December 18, 2025, the Danish court issued an order confirming that:

- Defendant may appear in person if she obtains necessary authorization under U.S. law;
- Virtual participation via the Danish Consulate in Salt Lake City remains available as an alternative; and
- Defendant must notify the court by January 19, 2026, whether she will appear in person or virtually.

## E. V1's Current Opposition and Bad Faith

Despite advocating for Danish jurisdiction and urging Defendant to file there, V1 now objects to Defendant's in-person attendance at the hearing he insisted was necessary.

This reversal is not based on legitimate safety concerns but calculated to prevent Defendant from meaningfully participating in proceedings V1 championed as the proper forum. V1's opposition constitutes bad faith for several reasons:

1. **Direct contradiction of sworn statements**: V1 urged California court to dismiss based on representation that Danish proceedings were proper and necessary;

2. **Procedural manipulation**: Having achieved dismissal by advocating for Danish jurisdiction, V1 now seeks to prevent meaningful participation in that forum;

3. **Contradicts seven-year safety record**: V1 maintained extensive security during hundreds of California court appearances without incident; and

4. **Ignores comprehensive Danish security protocols**: Copenhagen Police have been notified and Danish court security maintains controlled access and separation protocols.

V1's security arrangements—including licensed security personnel, staggered arrival/departure protocols, and law enforcement coordination—proved effective during hundreds of California court appearances over seven years. These same protocols will be in place in Denmark, and V1 has maintained such security throughout these proceedings without incident.

## IV. MULTIPLE SAFEGUARDS ENSURE DEFENDANT'S RETURN

### A. U.S.-Denmark Extradition Treaty Eliminates Flight Risk

Denmark and the United States maintain a robust extradition treaty (Treaty of June 22, 1972, as amended June 23, 2005, entered into force February 1, 2010). Under Article 3 of the treaty, Denmark is legally obligated to extradite individuals charged with offenses punishable by more than one year's imprisonment in both countries.

Rather than creating flight risk, the extradition treaty provides additional assurance of Defendant's return:

- Denmark would be legally required to extradite Defendant if she failed to return;
- Defendant would face additional federal charges for failure to appear and violation of release conditions;
- International flight would be legally futile—Denmark does not provide asylum from U.S. criminal charges; and
- Defendant would become an international fugitive, ensuring immediate arrest and extradition.

Most critically: **International flight would permanently destroy any possibility of future contact with her child**—the very relationship this trip seeks to preserve. Defendant's sole

motivation for traveling to Denmark is to maintain her parental rights, which would be irrevocably eliminated by failure to return.

## B. Preservation of Parental Rights Provides Powerful Incentive to Return

Defendant has not seen or heard from her child since May 17, 2024—over 19 months ago. The January 26, 2026 hearing represents her only opportunity to seek any future relationship with her only child.

Failure to return to the United States would:

- Result in immediate forfeiture of any custody or visitation rights;
- Demonstrate to the Danish court that she is a fugitive from U.S. justice;
- Eliminate any possibility that the Danish court would ever grant visitation;
- Permanently sever the parent-child relationship; and
- Result in additional federal charges and international arrest warrant.

Defendant's entire purpose for this trip is to preserve the possibility of seeing her child. This powerful incentive structure—combined with her perfect compliance record and the extradition treaty—makes flight not merely unlikely but irrational.

## C. Confirmed Entry Authorization to Denmark

The Danish Immigration Service confirmed in writing on December 17, 2025, that Defendant "is not subject to an alert on refusal of entry in SIS [Schengen Information System]" and "will not be restricted from entering Denmark, provided that she has a valid visa for entry into the Schengen Area and Denmark."

There are no barriers to Defendant's entry into Denmark or her return to the United States.

---

# V. NECESSITY OF IN-PERSON ATTENDANCE

While the Danish court offered virtual participation through the Salt Lake City consulate as a fallback option, this cannot substitute for in-person attendance for proceedings of this magnitude. Virtual participation would violate due process for proceedings permanently determining parental rights.

### A. Newly Appointed Danish Counsel Requires In-Person Collaboration

Defendant's Danish attorney was appointed only on December 1, 2025—less than eight weeks before the hearing. Given the case's complexity and the voluminous seven-year record, in-person collaboration between Defendant and her attorney during the hearing is essential to effective representation.

Virtual participation would eliminate the ability to conduct real-time consultation during witness testimony and cross-examination.

## B. Intimate Knowledge of Seven-Year Litigation History

Defendant represented herself pro se against V1 for seven years in California Family Court Case No. FDV-19-814465, which contains 2,640 docket entries. She is intimately familiar with every filing, order, transcript, and piece of evidence in this voluminous record.

No attorney, regardless of preparation, can match Defendant's knowledge of this extensive case history within the abbreviated eight-week timeframe.

## C. Real-Time Response to V1's Pattern of Misrepresentations

V1 has a documented history of making false statements and misrepresentations in court proceedings—as evidenced by his current contradictory position on Danish jurisdiction.

Defendant needs to sit beside her attorney to immediately alert counsel when V1 or his attorney:

- Misstates facts from the seven-year case history;
- Mischaracterizes evidence from the 2,640-entry record; or
- Makes claims contradicted by documentary evidence.

Virtual participation through a consular facility, with interpretation delays and technological barriers, would eliminate this critical real-time collaboration.

## D. Instant Access to Documentary Evidence

Due to her extensive experience with this litigation, Defendant can quickly locate and produce documents that refute false statements—something no attorney, regardless of preparation, can do with the same speed and precision in a case of this complexity.

Virtual participation would eliminate the ability to immediately access and reference documents from the voluminous case file during live testimony.

## E. Translation and Cultural Complexity

The proceedings will involve English-Danish interpretation and require navigating unfamiliar Danish family law procedures. Virtual participation through a consular facility, with interpretation delays and technological barriers, would substantially impair Defendant's ability to:

- Communicate effectively with her newly appointed counsel;
- Understand nuances of Danish court proceedings;
- Respond promptly to developments during the hearing; and

- Participate meaningfully in real-time strategic decisions.

### F. Fundamental Parental Rights at Stake

This hearing will permanently determine whether Defendant will ever be permitted contact with her only child. The stakes could not be higher.

Due process requires that she be afforded every reasonable opportunity to participate effectively in proceedings that will determine her fundamental parental rights. Virtual participation for a hearing of this magnitude—particularly given the abbreviated time her Danish attorney has had to prepare—would fall below constitutional minimums.

### G. Denial Would Harm the Child

Courts recognize that children benefit from relationships with both parents absent legitimate safety concerns. V1's own sworn declaration urged Defendant to pursue Danish custody proceedings, acknowledging the importance of establishing a custody framework.

Preventing Defendant's in-person attendance would likely result in the Danish court declining to order any visitation, permanently severing the parent-child relationship based on procedural barriers rather than the child's best interests.

This outcome would contradict V1's own stated position that Danish proceedings were appropriate to determine custody and visitation.

---

## VI. TRAVEL AUTHORIZATION UNDER HOME DETENTION EXCEPTIONS

Defendant's current release conditions include home detention with explicit exceptions for "court appearances" and "court-ordered obligations."

The Danish custody hearing falls squarely within these exceptions:

1. **Court-ordered appearance**: The Danish court scheduled the hearing and ordered Defendant to notify the court by January 19, 2026, of her attendance method;

2. **Court-ordered obligation**: The California court transferred jurisdiction with the explicit expectation that Defendant would pursue custody and visitation in Denmark, as V1 urged; and

3. **Essential to exercise fundamental parental rights**: The hearing will permanently determine Defendant's parental rights.

This Court's authorization would simply extend the existing "court appearances" exception to include the Danish hearing, consistent with the seven previous authorizations for California court appearances.

The legal framework is identical:

- Court-scheduled hearing with confirmed date and time;
- Proceeding to determine custody and parental rights;
- Same travel, monitoring, and reporting conditions;
- Limited duration for single court appearance; and
- Return required to maintain any possibility of future visitation.

## VII. PASSPORT STATUS AND EXPEDITED RENEWAL

### A. Current Passport Status

Defendant's U.S. passport has been held by the San Francisco Superior Court since her arraignment on October 23, 2019, in Case No. 19016407. The passport is now expired.

On March 25, 2025, Defendant requested through counsel that the San Francisco Superior Court transfer the passport to this Court for purposes of evaluating international travel related to custody proceedings.

The San Francisco court has confirmed that they can send the expired passport to this Federal Court's custody via next-day mail upon an order from this Federal Court.

### B. Expedited Processing Required

Standard passport renewal takes approximately 6-8 weeks. Expedited processing takes 2-3 weeks.

Given the January 26, 2026 hearing date, Defendant respectfully requests:

1. Immediate order directing San Francisco Superior Court to transfer passport via next-day delivery;

2. Authorization to submit expedited passport renewal application upon receipt; and

3. Court's order to include statement that expedited processing is necessary for court-ordered international travel, which may assist with State Department processing.

The tight timeline requires immediate action to ensure passport renewal is completed before the hearing date.

## VIII. COMPREHENSIVE SECURITY MEASURES

Danish and U.S. authorities have been notified of the hearing and potential travel:

- Copenhagen Police acknowledged receipt of security information on December 19, 2025;
- Danish Prosecution Authority was provided coordination details;
- Danish court security maintains controlled access and separation protocols; and
- U.S. Attorney's Office has been copied on all correspondence.

V1 has maintained extensive professional security throughout these proceedings, including:

- Licensed security personnel;
- Staggered arrival/departure protocols; and
- Coordination with law enforcement.

No security incidents occurred during hundreds of California court appearances over seven years, despite Defendant's knowledge of V1's residential address during that period.

Defendant has no knowledge of V1's current Danish residential address, providing an additional protective barrier.

V1's extensive security arrangements demonstrate that in-person court proceedings can be conducted safely. His opposition is not based on legitimate safety concerns but rather on preventing Defendant from effectively participating in the forum he championed.

## IX. PROPOSED TRAVEL ARRANGEMENTS AND CONDITIONS

### A. Proposed Travel Schedule

| Element | Details |
| --- | --- |

| | |
|---|---|
| Departure | January 25, 2026 |
| Return | January 27, 2026 |
| Duration | Approximately 48 hours in Denmark |
| Purpose | Court appearance only (January 26, 2026, 4:30 p.m. - 8:30 p.m. Danish time) |
| Lodging | To be arranged near courthouse; details provided to Pretrial Services |

## B. Proposed Conditions

Defendant respectfully proposes the following conditions for Court-authorized travel, modeled on conditions successfully imposed in similar cases:

### 1. Passport Transfer and Renewal

- San Francisco Superior Court to transfer expired passport to this Court via next-day mail upon this Court's order;
- Defendant authorized to submit expedited passport renewal application through U.S. Department of State;
- Renewed passport to be provided to Pretrial Services upon receipt; and
- Defendant to coordinate all passport renewal steps with Pretrial Services.

### 2. Extradition Waiver

- Defendant will execute a written waiver of any right not to be extradited to the United States from Denmark or any other foreign country to which she travels, consistent with *United States v. Irizarry*, No. 22-3208, 2022 WL 2284298, at *3 (D.C. Cir. June 24, 2022) (Wilkins, J., dissenting) (suggesting extradition waiver to mitigate flight risk for international travel).

### 3. Additional Bond Security (If Required)

- If the Court deems additional security necessary, Defendant is prepared to transfer the existing $325,000 bond posted in California Superior Court Case No. 19016407 to this Court's jurisdiction; or
- In the alternative, Defendant can post additional bond secured by property, as the Court deems appropriate.

### 2. Travel Specifications

- Travel limited to January 25-27, 2026;

- Complete itinerary (flights, lodging, ground transportation) provided to Pretrial Services at least 48 hours in advance; and
- Any changes to itinerary immediately reported to Pretrial Services.

### 3. Monitoring and Compliance

- GPS monitoring continues via approved international tracking method;
- Daily check-ins with Pretrial Services during travel (if Court deems necessary);
- Defendant to maintain phone contact capability at all times; and
- Immediate return following court hearing conclusion.

### 4. Contact Restrictions

- No contact with V1 or his family except as occurs during court proceedings;
- Strict compliance with all Danish court security protocols; and
- Coordination with law enforcement as directed.

### 5. Reporting Requirements

- Immediate notification to Pretrial Services and the Court of any travel issues, delays, or changes;
- Confirmation of safe return to Utah residence within two hours of arrival; and
- Post-travel debriefing with Pretrial Services as requested.

### 6. Court Coordination

- Copies of Danish court orders and hearing notices provided to Pretrial Services;
- Contact information for Danish attorney provided to Pretrial Services; and
- Documentation of hearing attendance provided to Court upon return.

These conditions mirror the safeguards that proved effective during Defendant's seven prior court-authorized trips, adapted for international travel.

---

# X. LEGAL STANDARD AND ANALYSIS

## A. Legal Framework

Under 18 U.S.C. § 3142(c), conditions of release must reasonably assure appearance and community safety while imposing the least restrictive conditions necessary. The Court may modify conditions "at any time" to serve these interests.

The Supreme Court has held that pretrial detention is "carefully limited" and courts must impose the "least restrictive" conditions that will reasonably assure appearance. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

Courts routinely authorize international travel for defendants on supervised release when:

1. The defendant has demonstrated consistent compliance;
2. The purpose is legitimate and verifiable;
3. Appropriate safeguards can be implemented;
4. The travel is time-limited; and
5. Risk of flight is minimal.

## B. Application to This Case

### 1. Demonstrated Consistent Compliance

Defendant's 17-month record of compliance, combined with seven prior court-authorized trips that she completed without incident, establishes her reliability beyond question.

This Court has already determined—on seven separate occasions—that Defendant can be trusted to travel for court proceedings and return as required.

The requested authorization simply extends that same trust to a hearing in Denmark rather than California, with even shorter duration (48 hours vs. multi-day California trips).

### 2. Legitimate and Verifiable Purpose

The purpose is indisputably legitimate: attendance at a custody trial that will permanently determine Defendant's parental rights. The Danish court has:

- Confirmed the hearing date and time;
- Arranged video backup through the Danish Consulate in Salt Lake City;
- Explicitly authorized Defendant's in-person attendance if she obtains U.S. court approval; and
- Scheduled the matter as a "main hearing" (trial) on the merits.

The U.S. Attorney's Office has been notified and can verify all aspects of the Danish proceedings.

### 3. Multiple Safeguards Ensure Return

Three independent safeguards provide overwhelming assurance of Defendant's return:

**First**: U.S.-Denmark extradition treaty makes flight legally futile. Denmark would be required to return Defendant to face additional federal charges.

**Second**: Preservation of parental rights provides powerful incentive to return. Failure to return would permanently destroy the relationship this trip seeks to preserve.

**Third**: Perfect 17-month compliance record demonstrates Defendant's respect for court orders and release conditions.

These safeguards—combined with GPS monitoring, pretrial supervision, and limited 48-hour duration—eliminate flight risk.

### 4. Time-Limited Travel with Verified Return Flight

The requested travel is narrowly tailored:

- **Duration**: 48 hours total (shorter than several prior California trips);
- **Purpose**: Single court appearance with confirmed date/time;
- **Verification**: Danish court confirmation, U.S. Attorney notified;
- **Monitoring**: Same GPS/check-in protocols used successfully seven times; and
- **Return flight**: Booked and confirmed before departure.

### 5. Least Restrictive Condition Analysis

Denying this request would impose restrictions beyond what is necessary to assure appearance, particularly given:

- Defendant's perfect compliance record;
- Seven successful prior authorizations;
- Extradition treaty providing additional assurance;
- Powerful incentive structure (preservation of parental rights);
- Limited 48-hour duration; and
- Comprehensive monitoring conditions.

The same conditions that ensured compliance for California travel can be implemented for Denmark travel. The change in destination does not materially alter the risk assessment when the legal framework (extradition treaty, parental rights incentive, monitoring conditions) provides equivalent or greater assurance of return.

---

## XI. CONCLUSION

This hearing represents Defendant's sole opportunity to seek any future relationship with her child. V1 himself argued to the California court that Danish jurisdiction was proper and that Defendant needed to file there. Having achieved dismissal on that basis, he cannot now prevent her meaningful participation in the forum he championed as necessary.

This Court has already granted Defendant's requests to modify release conditions for court travel seven times. Each time, Defendant complied perfectly—traveling for court proceedings and returning as scheduled.

She seeks the same authorization here. The destination differs (Denmark rather than California), but the legal framework provides even greater assurance of return:

- U.S.-Denmark extradition treaty eliminates flight risk;
- Preservation of parental rights provides powerful incentive to return;
- 17 months of perfect compliance demonstrates reliability;
- Shorter duration (48 hours vs. multi-day California trips); and
- Same monitoring conditions that proved effective seven times.

The requested authorization is narrowly tailored to permit Defendant to exercise her fundamental right to participate in proceedings determining her permanent parental rights, while ensuring her appearance through the same conditions that have proven effective on seven prior occasions.

**WHEREFORE**, Defendant respectfully requests that this Court:

1. Order the San Francisco Superior Court to transfer Defendant's expired passport to this Court via next-day delivery;

2. Authorize Defendant to submit an expedited passport renewal application;

3. Authorize Defendant to travel to Copenhagen, Denmark, from January 25-27, 2026, to attend the custody hearing on January 26, 2026;

4. Impose the conditions proposed in Section IX.B of this motion, or such other conditions as the Court deems appropriate; and

5. Grant such other and further relief as the Court deems just and proper.

**DATED** this __22__ day of __December__, 2025.

**Respectfully submitted,**