SCOTT KEITH WILSON, Federal Public Defender (#7347)
RICHARD G. SORENSON, Assistant Federal Public Defender (#12240)
OFFICE OF THE FEDERAL PUBLIC DEFENDER
DISTRICT OF UTAH
Attorneys for Ms. Wang
46 West Broadway, Suite 110
Salt Lake City, Utah 84101
Telephone: (801) 524-4010
Fax: (801) 524-4060

---

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>KAILIN WANG,<br><br>  Defendant. | REPLY TO GOVERNMENT'S OPPOSITION TO DEFENSE'S MOTION TO MODIFY CONDITIONS OF PRETRIAL RELEASE<br><br>Case No. 2:24-cr-163 TS<br><br>Judge Ted Stewart |

Kailin Wang, through counsel, replies to the *Government's Objection to Defense Motion to Modify Conditions of Release* (doc. # 96) (hereafter the "Objection") where the government objects to Ms. Wang's *Motion to Modify Conditions Pretrial Release* (doc. # 94) (hereafter the "Motion"). A hearing is scheduled before Magistrate Judge Pead on January 12, 2026 at 9:30 am to address the Motion.

1. **Summary of Lengthy Child Custody Case.**

As stated in the Motion, Ms. Wang is requesting to go to Denmark to attend an important hearing regarding, among other things, her future custody and visitations rights of her only child.

Victim 1 (hereafter "V1")[1] in this case is the father of the child, and there has been a years-long contentious custody and visitation battle that has spanned multiple jurisdictions.[2] Defense provides a brief background of the lengthy custody case:

V1 and Ms. Wang met on Tinder in February 2018 and had a brief sexual relationship that resulted in Ms. Wang having a child in the fall 2018. The child lived with Ms. Wang and her parents in Utah until March 2019 when V1 obtained a temporary restraining order in California that allowed him to take temporary custody of the child. Since that time and continuing to today, there has been an extensive and highly contested custody battle for the child between V1 and Ms. Wang. The custody case originated in California in the spring of 2019 and remained there until July 2025. Thousands of documents were filed in the California custody case at the district court and appellate court levels. V1 comes from a family with substantial financial resources and has had the assistance of legal counsel in the custody case. Ms. Wang, who has limited means and is not educated in the law, represented herself.[3]

V1 throughout the custody case has consistently argued that Ms. Wang should not have custody of the child and less or no visitation. However, the California court for several years allowed Ms. Wang both virtual and supervised in-person visitation of the child. From approximately June 2019 to May 2024, Ms. Wang and her parents drove from Utah to the San

---

[1] There are two victims in this case. Regarding V2 (who is not associated with V1), Ms. Wang has not had any contact with V2 for several years. Unlike V1, Ms. Wang and V2 do not have a child together.

[2] A California appellate court described the custody proceedings in this case as "lengthy" and noted that the record in the appeal was "largely unworkable." *See C.T. v. K.W.*, 2022 WL 5239461.

[3] In the California custody case, Ms. Wang requested assistance from the court for attorney fees multiple times, which requests were denied.

Francisco area two times per month (around 75 in-person visits over a multiple year period) to have supervised visitation with the child – a significant undertaking.[4] Ms. Wang never missed an in-person visit with her child.[5] Ms. Wang was also allowed virtual visits with the child one to two times a week from approximately April 2020 to January 2024 (an approximate total of nearly 200 virtual visits). Ms. Wang only missed one of her video visits due to, among other things, weather conditions. Ms. Wang last saw her child in-person during a supervised visit on May 17, 2024 (after which V1 and the child moved to Denmark).

On May 2, 2024, the California court granted V1's request to move with the child to Denmark.[6] However, the California court in the same order allowed Ms. Wang to have both in-person and virtual visitation with the child, specifically that V1 was responsible to have the child travel every other month to California in order for Ms. Wang to have in-person visits with the child, or alternatively, that Ms. Wang could travel to Denmark every other month to have visitation with the child.

Shortly after the May 2, 2024 California order allowing international visitation, the U.S. Attorney's Office in Utah on May 8, 2024 filed an indictment against Ms. Wang based on conduct that occurred several years prior and based on virtually the same conduct that had

---

[4] In-person supervised visits were temporarily suspended for a couple of months during Covid 19 and for an approximate six-month period (from July 2021 to February 2022 when the court reinstated in-person supervised visits).

[5] Ms. Wang traveled to California for visitation on March 2, 2024 and March 9, 2025. Once she arrived, she was informed that V1 did not bring the child for visits.

[6] V1 in his April 9, 2024 application to the California court requested he be allowed to move to Denmark with the child for employment purposes – not because Ms. Wang was a danger to him or the child.

3

already been charged and was pending in California since October 2019 involving V1 and V2.[7] Ms. Wang was detained pursuant to a federal warrant on May 23, 2024; on May 29, 2024, Ms. Wang appeared for an arraignment in Utah federal court where Judge Oberg ordered her continued detention. Ms. Wang remained detained until approximately July 9, 2024 when Judge Stewart released her and placed her on pretrial release.

While Ms. Wang was in custody in the federal case, V1 filed on June 18, 2024 with the California custody court an ex parte application for a judicial determination that the California court no longer had jurisdiction over custody and visitation issues because the child and the child's parents no longer resided in California. On August 1, 2024, the California court held that California had continuing jurisdiction over custody and visitation issues. V1 appealed that order; the appellate court eventually affirmed the lower court's ruling that California retained continuing jurisdiction. In April 2025, V1 argued again that California had lost jurisdiction to hear custody and visitation issues. On July 30, 2025, the California court agreed that it no longer had jurisdiction over custody and visitation issues because V1 and the child lived in Denmark.

**2.    The Upcoming Hearing in Denmark.**

Custody and visitations proceedings related to the child began in Denmark around June 2, 2025. A hearing on January 26, 2026[8] will determine, among other things, important issues

---

[7]    The government provided defense with tens of thousands, if not hundreds of thousands, of pages of unorganized discovery in this case, which relate to the same allegations in the California criminal case. The federal government did provide defense counsel with approximately ten IC3 complaints (from 2019 or earlier) which appear unique to the federal case. Besides the IC3 complaints, it appears federal discovery is the same discovery from the California criminal case. The discovery the government provided in this case even has bates numbers from the California criminal case.

[8]    Ms. Wang's Danish attorney may request a continuance of the January 26, 2026 hearing depending on how the Court rules on this Motion because – if the Court grants the Motion – Ms. Wang would need time to apply for and receive a new passport to travel to Denmark which may take multiple weeks.

related to Ms. Wang's future custody of her child, her future visitation of her child, and even whether Ms. Wang can receive information about her child's medical care and school.

Although the Danish court will allow Ms. Wang to attend the hearing by videoconference (which would take place at the Danish Consulate in Salt Lake City with a consulate employee at Ms. Wang's side), the Danish court determined that Ms. Wang can appear and participate in person at the hearing on January 26, 2026 as long as she receives the necessary permission from the Court.

Defense counsel has communicated with Bjorn Jacobsen who is Ms. Wang's appointed family law attorney in Denmark. Mr. Jacobsen confirmed the following about the upcoming hearing in Denmark:

- The hearing on January 26, 2026 is scheduled for 4 hours. At the hearing, there will be interpreters present for both parties and in his opinion, having interpreters translate slows down court hearings.

- The upcoming hearing is in the center of Copenhagen; there are plenty of hotels where Ms. Wang could stay within walking distance from the courthouse.

- Although Ms. Wang would have the opportunity to address the court at the hearing if the hearing is virtual, anything she says would be heard by all parties participating in the call (including the judge and the opposing party). Ms. Wang would not have the ability to have a break-out session with her attorney for a private conversation.

- In Mr. Jacobsen's opinion, it is preferable in cases addressing future custody and visitation that both parties are present in person because, among other things, the attendance in person can affect how the court views the parent as a person.

- Mr. Jacobsen believes that Ms. Wang's personal physical appearance is important because (1) he would have the ability to better communicate with Ms. Wang if she was physically present at the hearing; (2) her actual presence will give him the ability to talk to Ms. Wang privately in person during the hearing, (3) he would have the ability to guide Ms. Wang throughout the hearing (such as whispering a message to her or having a hand on her shoulder if she addresses the judge), and (4) "given what is at stake, i.e., the right to decide to have contact with one's child, it is an essential right of the parent to be allowed to be present in person during the hearing."
- On November 28, 2025, the Danish court appointed Mr. Jacobsen to be Ms. Wang's attorney. Mr. Jacobsen confirmed that Ms. Wang has maintained consistent contact with him since the time he was appointed.
- As far as whether the child will be present at the upcoming hearing, Mr. Jacobsen stated it is possible the child may be present in order to be heard, but even when a child is present and heard, it is not part of the regular court proceedings. The parties have to leave the courtroom and the judge and a child psychologist would hear from the child in the judge's chambers. So, the child is not in the same room as the parents – including Ms. Wang – when the child speaks to the judge. Mr. Jacobsen assumes that the party responsible for taking the child to court – here, V1 – would be able to arrange so that the child does not see Ms. Wang in passing in the courthouse. However, there is nothing wrong even if the child in the courthouse were to see Ms. Wang who, after having visitation rights with the child for several years, has not seen the child since V1 moved with the child to Denmark.

- Mr. Jacobsen added that he has not yet met Ms. Wang in person (which he would be able to do if the Court allowed Ms. Wang to travel to Denmark). Mr. Jacobsen feels it is best to meet a client in person "in a case of this importance" because a personal meeting "creates a better mutual understanding and rapport."

Ms. Wang's right to litigate for custody of her child is "fundamental." *United States v. White*, 782 F.3d 1118, 1138 (10th Cir. 2015) (citing *Traxel v. Granville*, 530 U.S. 57, 65 (2000)). "The liberty interest parents have in the care, custody, and control of their children is a substantive due process right protected by the Fourteenth Amendment." *Id*., 782 F.3d at 1138 (citation omitted). And, the maintenance of a parent-child relationship is something that the U.S. Supreme Court has repeatedly reaffirmed. *See*, *e.g.*, *Little v. Streater*, 452 U.S. 1, 13, 17 (1981) (holding that an indigent defendant in a paternity proceeding brought by the State has a Fourteenth Amendment due process right to receive blood grouping tests. The Court stressed the importance of familial bonds and reasoned that their imposition by the state demands procedural fairness); *Lassiter v. Department of Social Services*, 452 U.S. 18, 27 (1981) (holding that due process must be afford to a parent prior to state termination of her parental status); *Santosky v. Kramer*, 455 U.S. 745, 752-57 (1982) (holding that natural parents have a constitutionally protected liberty interest in the care, custody, and management of their child which entitles them to due process at a state-initiated parental rights termination proceeding). Accordingly, any "restrictions on a defendant's contact with [her] own children are subject to stricter scrutiny." *United States v. Bear*, 769 F.3d 1221, 1229 (10th Cir. 2014).

3. **<u>Response to Government's Opposition</u>**.

Ms. Wang's highly disputes arguments throughout the government's Opposition and responds to them as follows:

      a.      <u>Pages 2-3, 6: Government's Motion to Revoke Defendant's Pretrial Release</u>.

The government's Opposition briefly discusses its June 4, 2025 motion to revoke Ms. Wang's pretrial release for violating a discovery protective order. The Government is correct that the government ultimately withdrew its motion as part of the plea agreement. Ms. Wang has denied and continues to deny the allegations in the government's motion to revoke, which include an allegation that approximately ten months prior (in August 2024) in the middle of an 8-page document filed with an appellate court in the California child custody case, Ms. Wang included a hyperlink to a Google drive containing some discovery in this case which the government believes was a violation of the discovery protective order. As was explained in detail in defense's *Response to Government Joins Victim's Motion Requesting Enforcement of Protective Order and Moves for Revocation of Release* (doc. # 80), the hyperlink was in the middle of an appellate court filing which was not shared with the general public who does not have easy access to the document at issue. As explained in the *Response*, the general public must access documents in child custody cases at the courthouse, and before someone from the public can access such a document, that person would have to file a request with the court which request would be reviewed on a case-by-case basis. There was no evidence or allegation that anyone from the public accessed the document at issue, let alone the hyperlink at issue. As explained, if Ms. Wang had intended to harass V1 by intentionally disclosing discovery, one can think of many other ways she could have easily made the discovery readily accessible to the general public. Additionally, the government filed its motion approximately ten months after the alleged conduct and only after V1's attorney filed a motion with the Court.

      b.      <u>Page 4, last paragraph: The Length of the Denmark Hearing and Ms. Wang Previously Appearing in Court Virtually</u>.

The Government in its *Objection* includes V1's objections to defense's Motion.[9] V1 explains that the upcoming hearing in Denmark is "just four hours" (seeming to try to minimize the importance of the upcoming hearing) and that Ms. Wang appeared via video "for every single one of her many court appearances since 2019" in the California custody case.

The fact that the Danish court hearing is "just four hours" shows the importance of Ms. Wang being there in person to help her attorney (who was only appointed on November 28, 2025) understand the complex history and extensive background of the case. As explained above, there will be multiple interpreters present for both parties to translate the proceedings from Danish to English, which may slow down the hearing.

Regarding Ms. Wang being allowed to attend custody hearings in California virtually, Ms. Wang was pro se in the California case (despite her requests to receive financial assistance to hire an attorney), so she was very familiar with the history and background of the case, had to make her own arguments, and did not have the need to communicate with an attorney during the hearing (because none was appointed). Unlike in California, Ms. Wang has the assistance of counsel (who was only recently appointed) at the upcoming hearing.

      c.      <u>Page 5 ¶ 1: Ms. Wang's Employment and Child</u>.

V1 states that Ms. Wang should not be permitted to travel to abroad because, among other things, she "has no meaningful employment" and "has no children" in the United States. Although Ms. Wang (who is a college graduate) is currently employed part-time, she demonstrated in the past consistent employment across multiple sectors prior to her current legal situation including tax accounting, financial consulting, employment with Goldman Sachs, and

---

[9]    V1's objections are made through V1's attorney, who has represented V1 since 2019.

data management and clerical positions. Regarding V1's statement that Ms. Wang has no children in the United States, the reason she does not have any children here is because V1 moved to Denmark with her only child.

       d.      <u>Page 5: Allegations regarding Ms. Wang's Parents</u>.

V1 on page 5 states that "[b]oth of [Ms. Wang's] parents have been and continue to be actively complicit in their daughter's crimes and potential plot to abduct the minor child." This statement is completely untrue, without any support or evidence, and is arguably libelous. Her parents have no criminal record and are well-respected members of their community. Ms. Wang lives with her parents who have endured significant financial strain to assist in her custody dispute. Like Ms. Wang, her parents traveled to California multiple times a month to visit their only grandchild. The Court in this case previously on multiple occasions allowed Ms. Wang to travel out of state, and her parents have always accompanied her and returned with her without incident. And, V1 provides no evidence how Ms. Wang's parents supposedly tried to "potential[ly] plot [the] abduct[ion of] the minor child."

V1 also states on page 5 that "Utah law enforcement believed that Wang's parents were attempting to hide the minor child and were dishonest about the child's whereabouts" and included in support of this a report from the Spanish Fork Police Department from March 2019 when V1 had recently obtained a California order allowing removal of the child – who at that point was about 3.5 months old, had lived in Utah its whole life, and had never at that point met V1 – to California. The police report discusses how police conducted a traffic stop of Ms. Wang's mother who informed police if they wanted Ms. Wang's phone number, that they should contact Ms. Wang's attorney. Police also asked her if she knew where Ms. Wang and the child were; according to the police report, Ms. Wang's mother said no. There is no evidence that Ms.

Wang's mother was lying, that she knew where Ms. Wang or the child were, or that she committed some type of crime during her interaction with the officers. There is no evidence that Ms. Wang's parents even knew that V1 had obtained a temporary restraining order from California that allowed them to take the child – who had lived in Utah its whole live – from its Utah home to California. Police released Ms. Wang's mother from the traffic stop without incident. The police never stated or determined that Ms. Wang's parents were "attempting to hide the minor child and were dishonest about the child's whereabouts."

Ms. Wang's parents are well-respected members of their community. If the Court allows Ms. Wang to attend her court hearing in Denmark, her parents would accompany her and make sure she returns on time to the United States with no violations of her pretrial release, as they have previously done on multiple occasions.

    e.    <u>Page 5: Allegations Regarding Ms. Wang Being an Abduction Risk</u>.

V1 throughout its objections discusses how California courts have determined that Ms. Wang previously constituted an abduction risk of the child. These rulings and orders must be understood in the context of the issues before the courts.

    i    <u>the March 2019 order (page 5 ¶ 1)</u>: V1 is correct that a California court, in response to an ex-parte protective order, issued a boiler-plate temporary restraining order on March 6, 2019 and checked boxes indicating there is a risk that Ms. Wang might take the child without permission out of California so she was not allowed to travel with the child without permission (which Ms. Wang to date and after several years has never done or attempted to do). The same order also discusses court-ordered visitation. As discussed above, Ms. Wang had in-person visitation with the child for several years and there was never any attempt to abduct the child.

11

    ii. <u>July 2021 and February 2022 order (page 5 ¶ 2)</u>: V1 discusses how a California court determined that Ms. Wang constituted a heightened abduction risk and includes as Exhibit D a California court order. This order related to the California court reinstating Ms. Wang's in-person visitation of the child. The order discusses how Ms. Wang previously participated in both in-person and virtual visitation. Supervised visitation occurred from summer 2019 until in-person visits were suspended in March 2020 due to the Covid 19 pandemic. Ms. Wang had video visitation until in-person visitation became available again in May 2021. In July 2021, the California court temporarily suspended Ms. Wang's in-person visits due to Ms. Wang's allegedly violating court orders and attempting to obtain records about the child. In February 2022, however, the Court reinstated supervised in-person visitation.

 The California court in its February 2022 order reinstating in-person visits for Ms. Wang (and allowing Ms. Wang's parents to attend the visits) discussed how Ms. Wang's visits with the child were not detrimental to the child or did not negatively impact the child's health and safety (page 8); that Ms. Wang engaged in both in-person and video visitation since 2019 (page 9); that Ms. Wang appropriately engaged with the child during the in-person visits (including reading the child books, watching videos with him, and responding to his questions); that Ms. Wang appeared on time for all Zoom visits; that the child responded positively to Ms. Wang; that the child was generally attentive to Ms. Wang during the visits (page 9); that Ms. Wang greeted the child warmly for each visit, asked appropriate questions during the visits, and had good verbal interactions with the child (page 9); that there were no allegations of physical abuse against the child (page 10); and that the supervision reports demonstrated that the child was bonded to Ms. Wang and has a healthy parent-child interactions with her during both in-person and video

visitation (page 10). The February 2022 order never discussed – because it was not true – that Ms. Wang tried to abduct the child.

            iii.        <u>June 2021 statement in a Search Warrant Affidavit (page 5, ¶ 3)</u>: V1 discusses how an officer in a search warrant affidavit expressed a personal belief that Ms. Wang was engaged in "a possible threat of abduction of minor child." Although V1 did not provide a copy of this affidavit, defense assumes V1 is referencing a search warrant affidavit related to searching Ms. Wang's electronics at her residence due to allegations (which Ms. Wang denies) of issuing fraudulent subpoenas. The purpose of the affidavit V1 references was not to obtain evidence that Ms. Wang was planning to abduct the child; the affidavit was limited to requesting to search electronics in Ms. Wang's residence to see if there was evidence of fraudulent subpoenas. Ms. Wang has never been charged with abduction or an attempt to abduct and defense assumes that if there was evidence of an abduction plan, V1 or the government would have made this Court aware of the details in its Opposition.

            iv.        <u>October 2022 opinion from the California Court of Appeals (page 5 ¶ 4)</u>:

V1 discusses a California Court of Appeals opinion from October 2022 where the court at issue stated that "evidence supports the trial court's previous finding that the child was a risk of abduction by mother." The issue before the California Court of Appeals was very narrow – Ms. Wang challenged the lower court's order of prohibiting her from taking photographs of the child during her supervised visits. It was related to this narrow issue that the California Court of Appeals made this statement.

The decision of Ms. Wang's visitation and custody rights of her child will be made by the Danish court who is in a better position than this Court to make that decision. All Ms. Wang is

asking that she be allowed to attend in-person this important hearing that will determine her important rights related to her only child.

      f.      <u>Page 5 ¶ 2: Allegation that She Obtained a Ten-Year Visa to China and Her Parents Transferring Title of Their Properties to an LLC for Nominal Consideration</u>.

V1 alleges that when Ms. Wang was arrested in October 2019, "it was discovered that she had recently obtained an open ten year visa to China and that her parents had recently transferred title of their properties to an LLC for nominal consideration."

Regarding a visa application in 2019, Ms. Wang through a family member obtained a visa to China in April 2019 to attend her grandmother's funeral who died on March 17, 2019. Ms. Wang was very close with her grandmother and lived with her for a time as a child. Ms. Wang was not able to attend the funeral due to the removal of her child from her home in April 2019 and the ensuing custody case. Based on defense counsel's limited understanding and research on visas to China, a 10-year visa appears to be a standard visa, a cost-efficient visa, and a flexible convenient visa, especially for an individual with ties to China (Ms. Wang's parents are from China and Ms. Wang spent a portion of her childhood in China). Defense believes that the visa is no longer valid because the visa stamp is on Ms. Wang's expired passport.

Regarding Ms. Wang's parents alleging transferring "title of one of their properties to an LLC for nominal consideration," it is unknown and unclear why V1 thinks this is relevant to whether Ms. Wang should be allowed to travel to Denmark to attend an important court hearing. Defense will not provide additional information on this issue unless V1 articulates how this is relevant to the Court's decision on the Motion.

14

      g.      <u>Page 6 ¶ 5(b): Allegations She Failed to Provide Documentation that She Completed a Domestic Violence Course</u>.

V1 alleges that "she failed to provide documentation that she completed a domestic violence course as ordered by the Court on October 21, 2022." Although V1 does not state which court ordered this or include a copy of the order, defense assumes he means a California court. Ms. Wang has previously provided proof to a California court of taking dozens of domestic violence classes, and there has not been a court finding that she failed to turn in proof. It is worth noting that one of this Court's conditions of release was that Ms. Wang must "undergo mental health evaluation and complete any recommended treatment, as directed by the pretrial officer…." Ms. Wang continues to remain in total compliance with this condition, and her counselor continues to provide Pretrial Services with monthly updates of Ms. Wang's compliance and progress.

      h.      <u>page 6 ¶ 5(d): Finding Locations of the Victims</u>.

V1 alleges that Ms. Wang "was ordered not find the locations of the victims, but somehow obtained their new address." V1 provides no evidence in support of this allegation. Ms. Wang has denied this allegation in the past and continues to do so.

      i.      <u>Page 6 ¶ 5(f): Allegation that She Accessed Facebook via the Internet</u>.

V1 alleges that Ms. Wang has violated the terms of her pretrial release by accessing the internet and in support of this, alleges that she has sent the Danish court and prosecutors emails and that she has used her Facebook account. In support of this argument, V1 includes a document from Facebook which allegedly shows someone posted a message on Facebook on June 13, 2025 under Ms. Wang's name with a post saying, "How is the Family Court system in Denmark?"

Regarding the allegation of a Facebook post, Ms. Wang denies making the post. She was at work on the date and time of the post. She is also unable to access her old Facebook account.

Ms. Wang denies violating the terms of her supervised release by personally accessing the internet. Ms. Wang has her father email on her behalf; she has not done so herself.

  j. <u>Allegation that She Previously Stalked a Different Victim</u>.

The government on page 7 alleges that Ms. Wang was previously "convicted of conduct that amounted to stalking of a different victim." This simply is not true. Defense assumes the government is making reference to a case from New York where Ms. Wang pled in 2014 to Harassment under New York Penal Law 240.26(1) which prohibits a person from threatening to strike or otherwise subject a person to physical contact with an intent to harass, annoy, or alarm another person. Harassment is a "violation" under New York law which is punishable up to 15 days in jail. The New York court ordered Ms. Wang to complete therapy which she successfully did. Due to Ms. Wang's compliance, the court allowed her on November 5, 2014 to withdraw her plea to Harassment, and entered a plea of guilty to Disorderly Conduct (also a "violation") with a sentence of time served with a two-year order of protection.

  k. <u>Page 8: Allegation that She Stated on a Jail Phone Call She Intended to Move Overseas</u>.

The government in its Opposition alleged that jail calls indicated that Ms. Wang intended to move overseas and posed a flight risk. The government made this same argument in its initial request that Ms. Wang be detained (which very well may have influenced Judge Oberg's decision to detain Ms. Wang). The government subsequently filed an Errata (doc. # 101) and withdrew this argument as a basis for its Opposition, correctly realizing that the government previously withdrew this same argument (the phone call related to V1 moving overseas).

16

**4.      Ms. Wang is Not a Risk of Non-Appearance or Danger to the Community.**

Ms. Wang is not a risk of non-appearance. Ms. Wang has been compliant with the conditions of her pretrial release, including requesting (and receiving) permission from the Court multiple times whenever she traveled out of state.[10] Each time she has traveled, Ms. Wang returned as directed without any issues. She traveled to California for supervised visits for several years and returned to Utah every time. From 2019-2025, she traveled back and forth to California approximately 15 times to attend court-ordered in-person hearings in the California criminal case; she never failed to attend a hearing. She appeared at each of her court hearings in a Utah County case from 2021 to the present. She has shown over several years that she will appear to court as ordered. She has lived in Utah for several years with her parents. Judge Oberg at the initial detention hearing focused more on Ms. Wang's risk of danger to the community instead of risk of non-appearance. Judge Stewart determined that Ms. Wang was a manageable risk of nonappearance – which she has proven by having no pretrial violations the 17 months she has been on pretrial release.

Ms. Wang has an important reason and incentive to return without any violation if the Court allows her to travel to Denmark to attend the hearing. Specifically, if Ms. Wang does not return, it could negatively affect her ability to fight for custody and visitation rights of her only child, something she has done for several years with a great amount of effort and cost. It would be foolish of her not to return or violate a condition of her release while in Denmark.

---

[10]     Ms. Wang filed with the Court several motions to travel out-of-state to attend court hearings and for personal travel, which motions were not opposed to by the government and which requests were granted. Defense filed the motions on the following dates: November 15, 2024; February 18, 2025; March 13, 2025; August 1, 2025; and December 18, 2025.

Ms. Wang's federal sentence is scheduled for March 24, 2026. It goes without saying that a violation of her pretrial release (including a violation of any kind allowing her to travel to Denmark) at this point would likely negatively impact her arguments at sentencing.

Although the Danish court would allow Ms. Wang to attend the January 26, 2026 via video (from the Danish Consulate in Salt Lake City where a consulate employee would be by Ms. Wang's side), the Danish court specifically determined that Ms. Wang is allowed to participate and attend the January 26, 2026 hearing in person as long as she receives permission to travel from the Court. As explained above, the hearing will determine important future permanent parental rights and Ms. Wang should be able to be present at the hearing for the reasons described above.

According to a Pretrial Report dated December 29, 2025, Ms. Wang (who has been on pretrial release for approximately 17 months) has followed her conditions of pretrial release. Pretrial has not reported any violations in the 17 months Ms. Wang has been on pretrial supervision.

Pretrial Services stated it would not be able to track Ms. Wang via a GPS ankle monitor outside of the United States due to the GPS provider not utilizing international cell services. However, the Court could impose other requirements to ensure Ms. Wang remains compliant. Her parents could act as third-party custodians (her parents, as explained above, have a perfect track record of traveling with Ms. Wang out-of-state while she has been on pretrial release, and the parents have always returned with Ms. Wang without any issue). The Court could impose other conditions while Ms. Wang is in Denmark including that she must be in contact with Pretrial Services multiple times a day (by phone or by video) and report within 2 hours of her return to the United States.

Ms. Wang is terrified that she will never be able to see her only child again. Her in-person presence is necessary at the upcoming Danish hearing to ensure she receives her fair day in court, as explained above.

Based on these reasons and the reasons in defense's Motion, Ms. Wang requests that the Court allow her to travel to Copenhagen, Denmark for the upcoming hearing; that the Court order the San Francisco Superior Court to transfer her expired passport immediately to the Utah Federal Courthouse; and that the Court allow Ms. Wang to apply for an expedited passport renewal.

DATED this 7th day of January, 2026.

*/s/ Richard G. Sorenson*
Richard G. Sorenson
Assistant Federal Public Defender