GREGORY FERBRACHE (Utah Bar No. 10199)
FERBRACHE LAW
2150 South 1300 East, Suite 500
Salt Lake City, Utah 84106
Phone: (801) 440-7476
Email: gregory@ferbrachelaw.com

DOUGLAS RAPPAPORT (California Bar No. 136194) (pro hac vice)
LAW OFFICES OF DOUGLAS L. RAPPAPORT
260 California Street, Suite 1002
San Francisco, CA 94111
Phone: (415) 989-7900
Email: admin@sfcrimlaw.com

Attorneys for Victim-1

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff, | **VICTIM-1's OBJECTION UNDER THE CRIME VICTIM RIGHTS ACT, 18 U.S.C. § 3771 et seq., TO DEFENDANT'S REQUEST TO MODIFY CONDITIONS OF PRE-TRIAL RELEASE** |
| v. | Case No. 2:24-cr-00163-TS |
| KAILIN WANG,<br><br>Defendant. | District Judge Ted Stewart |

Defendant Wang has filed a new motion to modify the conditions of her pre-trial release. Her request comes after the defense just obtained another delay in the sentencing hearing.[1] As her motion was filed under seal in its entirety and not provided to the victims, this general response is based on the belief that Defendant is asking to leave her residence for unrestricted travel or activities not permitted under the existing conditions of her pre-trial release.

---

[1] Sentencing was originally scheduled for February 10, but was later postponed at the request of the defense to March 24. Sentencing was recently postponed again at the request of the defense and is now set for May 5.

1

I.  **Relevant background**

For crimes committed between 2017 and 2024, Defendant is currently awaiting sentencing in both federal court and the Utah Fourth District Court following her guilty pleas to multiple counts of stalking involving two unrelated victims she sourced through popular dating apps, as well as guilty pleas to forgery and submitting false evidence to the court.

This is not her first involvement with the criminal justice system. She has a documented criminal history spanning more than 25 years, including acts of physical violence, threats of death and dismemberment, forgery, and falsifying evidence to frame her victims. She has previously been ordered to undergo psychological treatment, including as a condition of a 2014 plea agreement in New York arising from similar conduct involving another dating-app victim.

Her stalking has grown increasingly sophisticated over time. Her conduct toward both Victim-2 and her 2014 New York victim involved threats to kill and dismember them. In her stalking of Victim-1, Defendant created a child through an act of abuse (as found at trial by the San Francisco Superior Court Family Law Division)[2] and then used that child to engage in "a technologically sophisticated course of stalking that escalated over many months through increasingly graphic threats involving the safety of the child."[3] The conduct involved "a sustained and ongoing course of harassing conduct against [Victim-1] that involved threats to his son's welfare and was apparently designed to put him in fear for his son's safety."[4] Her conduct

---

[2] See pages 5-6 of the Ruling and Orders Transcript dated October 20, 2022, in Family Court Case FDV-19-814465, excerpted and attached hereto as Attachment 1, redacted to remove the name of the victim.

[3] See the December 18, 2025 letter of the Office of the San Francisco District Attorney in State of California v. Wang, Case No. 19016407, attached hereto as Attachment 2, redacted to remove the name of the victim.

[4] See Judge Quinn's July 11, 2023 comprehensive 43-page Order discussing the evidence, analyzing the definition of stalking in Cal. Penal Code § 646.9(a) and its credible threat element, rejecting Defendant Wang's First Amendment arguments, and denying Defendant Wang's Motion to Suppress, Quash and Traverse in State of California v. Wang, Case No. 19016407.

against Victim-1 also involved manipulation of the justice system, including the admitted use of forgery and false evidence,[5] and attempts to frame both Victim-1 and Victim-2, including admittedly "reporting both victims to federal law enforcement in order to harass and intimidate them."[6] In post-plea filings and communications, Defendant has continued to assert that she is innocent and blames her victims. Pursuant to Paragraph 12(g) of the Plea Agreement ("Relevant Conduct"), this history will be presented at sentencing, but it is relevant here for this Court to understand the danger she poses to her victims and their fear of her and what she might do.

II.  **Objection to Defendant's request to modify her pretrial release conditions**

On July 3, 2024, the District Court attached strict conditions to pre-trial release, which it determined were the minimal necessary to keep the victims safe, especially from stalking enabled by the internet, given that Defendant has waged a seven-year-long campaign designed to both threaten the victims as well as place the victims in jeopardy of third-party violence. The "strict conditions," among other things, prohibit her from "**hav[ing] access to any internet capable device**"[7] and require home confinement and GPS monitoring. Thus, **any modification that allows Defendant greater freedom to access internet-capable devices outside her home that cannot be monitored by Pre-Trial Services increases the risk to the victims.**

Even if this Court were to permit a modification subject to court-ordered guardrails, history has shown that Defendant does not comply with court orders. **Even while on federal**

---

[5] See Defendant Wang's November 4, 2025 guilty plea to Counts 1 and 8 in <u>State of Utah v. Kailin Wang</u>, Case No. 211100167.

[6] See Defendant Wang's September 30, 2025 guilty plea to Counts 1 and 2 in this case at ECF Nos. 88 and 89, and quoting the Government's December 29, 2025 Objection To Defense Motion to Modify Conditions of Release at ECF No. 96.

[7] See this Court's July 9, 2024 Second Amended Order Setting Conditions Of Release at ECF No. 41. Relevant Additional Conditions of Release include Item 9 ("The defendant may not own, possess, or have access to any internet capable device") and Item 6(v)(iii) Appendix C - Restricted Computer Access ("No computer or internet access except for approved employment.")

3

**release**, she remains in active violation of court-ordered abduction-prevention orders, criminal protective orders, and the federal court's prohibition on her accessing the internet. Some examples are as follows:

### A. Repeated violations of abduction-prevention orders.

Defendant is in active violation of abduction-prevention orders. On March 6, 2019, July 30, 2021, and February 2, 2022, the San Francisco Superior Court found that Defendant constituted a "heightened" risk of committing child abduction. Since March 6, 2019, she has been ordered to surrender the minor child's birth certificates to prevent their misuse. She failed to comply. The Court re-ordered compliance on May 2, 2024. Not only did she again fail to comply, but the Utah Office of Vital Records and Statistics confirmed that she sought a new birth certificate just eighteen days after that May 2, 2024 order.

### B. Repeated violations of protective and restraining orders.

The San Francisco Superior Court issued a criminal protective order (active since October 23, 2019), prohibiting Defendant, among other things, from taking action to obtain the locations of her victims. The restraining order also issued by the Court (active since March 6, 2019) contains the same prohibition. Despite this prohibition, Defendant has repeatedly sought, and sometimes obtained, locations.

Her violations, **which occurred while she was already being prosecuted**, have resulted in additional criminal charges being filed in San Francisco Superior Court and the Utah Fourth District Court, including:

- April 12, 2024 conduct charged as violation of a court order in State of California v. Wang, Case No. 19016407; and
- December 23, 2020 conduct charged as forgery in State of Utah v. Kailin Wang, Case No. 211100167.

The December 23, 2020 offense, committed while she was on bail in the California felony stalking case, involved her taking prohibited action to locate the child's preschool and then send a forged subpoena to the school, impersonating the Utah Fourth District Court's authority,[8] to command production of sensitive information and photographs which Defendant was expressly prohibited from obtaining. The child had to be pulled from the school due to safety concerns. Defendant has recently pled guilty to forgery for this conduct (Count 8, Utah Case No. 211100167). The April 12, 2024 offense involved Defendant taking prohibited action to obtain a home location of victims, which she somehow uncovered despite the fact that the home was purchased in the name of an anonymous LLC to prevent her from discovering it. This offense was certified for jury trial as part of the preliminary hearing in March of 2025. Since federal home confinement was imposed, additional conduct in which Defendant asserts knowledge that could only be obtained by further violations of the prohibition indicates her continued efforts to locate her victims.

C. **Repeated violations of the federal court's prohibition on internet access.**

On June 4, 2024, Magistrate Oberg entered a Protective Order (ECF Nos. 24, 25), finding it "...necessary and appropriate in this case to prevent harmful disclosure of personal identifying information of other individuals, graphic content, and the public dissemination of discovery materials." While in custody, Defendant Wang filed a handwritten objection to the Protective Order, asserting that it was "imperative" that she provide the discovery to third parties. She later withdrew her objection. Nevertheless, the federal discovery was subsequently published online

---

[8] Even prior to the Utah Fourth District Court's criminal prosecution, the Court had enunciated its feelings about Defendant Wang's fraudulent misuse of the Court's signature. See Judge Low's June 1, 2021 Order in Case No. 194400718 quashing the subpoenas that Defendant Wang was serving that "were never issued or authorized by the Court," are "highly improper," and "it is not appreciated that she has taken the court's signatures and reused the signatures for other purposes."

and made available to the public via a hyperlink which Defendant included in a legal filing as a method of dissemination.

The government filed a Motion to Remand based on this violation, but it was not heard as part of a global plea resolution in which Defendant pleaded guilty to two counts of federal stalking, and in the Utah state court prosecution, one count of forgery for using Utah Fourth District Court's signatures and one count of "false information" using fabricated evidence under penalty of perjury to the Utah Fourth District Court.

This is just one of many times Defendant has violated the prohibition on accessing the internet. On June 13, 2025 — just 9 days after the Government filed its Motion to Remand — Defendant accessed the internet by posting in a Facebook group in Denmark, where Victim-1 and the child had moved.[9] When Victim-1 provided a forensic capture of the Facebook post, Defendant stated in writing through her counsel that, "Ms. Wang denies making the post. She was at work on the date and time of the post. She is also unable to access her old Facebook account." (ECF No. 104 at page 16.) Defendant has pleaded guilty to crimes of dishonesty; therefore, this denial is not particularly meaningful. Moreover, this is not a random post: it is a bid to connect with disgruntled litigants on the ground in Denmark who have joined the Danish Facebook group titled, "Familieretshuset svigter," which translates to "[The Danish Agency of Family Law] is failing." Both Defendant and John Wang are members of this Facebook group. Defendant's account was used to make the June 13, 2025 post to the group.

Even in its direct dealings with Defendant, this Court has firsthand experience with her refusal to comply with even the simplest of court directives — i.e., to stop emailing court

---

[9] The June 13, 2025 Facebook post is attached as <u>Attachment 3</u>, redacted to remove the names and faces of the victims.

personnel. Rather than comply, she has used aliases or third parties to circumvent federal supervision conditions. It appears that she uses aliases or third parties to preserve plausible deniability while continuing prohibited activity. Her use of "John Wang," for example — either as an alias or as an actor on her behalf — undermines the effectiveness of federal monitoring.

There is ample evidence that she has access to the internet and uses the "John Wang" yunlong88cong@gmail.com email account as she pleases, for example:

- The 1:52 a.m. email to 68 Utah court staff (internet use would have been involved in finding 68 email addresses), making false allegations about Victim-1 and his family, and warning the Utah Fourth District Court to rescind its offer to supervise the January 26, 2026, hearing or face "unnecessary and excessive litigation beyond the court's capacity to manage."[10]

- The January 12, 2026 Transcript reveals that Defendant researched Magistrate Judge Pead, found his university email address, and emailed him there.[11]

- In other emails to courts, she has accidentally reverted to the first-person pronoun "I" and "Sincerely, Kailin Wang" when using the "John Wang" yunlong88cong@gmail.com email account.

- As this Court has observed in its 1/21/26 Memorandum and Order, "There is some question as to her access to the internet considering the Court has received numerous emails on her behalf from her father's account. The government further asserts that Defendant has communicated with the AUSA assigned to this case via email 'repeatedly.' Docket No. 96, at 10."[12]

However, even if one were to momentarily suspend disbelief and take her argument at face value, namely, that John Wang, her elderly father, is sending rapid-fire emails dictated by Defendant at all hours of the night, then the logical conclusion is that John Wang operates under her control. Under that scenario, her parents do not function as chaperones; rather, Defendant uses them to carry out her directives.

---

[10] An email to 68 members of the Utah Fourth District Court is attached as Attachment 4, redacted to remove the names of the victims.

[11] Page 5 of the January 12, 2026 Transcript is attached as Attachment 5.

[12] See the Amended Memorandum Decision And Order Affirming Magistrate Judge's Order Denying Motion to Modify filed 1/21/26 at footnote 16, ECF No. 119.

Either scenario is problematic. Moreover, the fact that she emailed Magistrate Pead at his university address also shows that she took action to research him, undoubtedly again violating the federal court's prohibition on using the internet.

### III. In closing

Defendant Wang's criminal history includes a demonstrated sophisticated and persistent use of technology to threaten, locate, and subject victims to continued abuse, including through third-party action. Expanding her access to third-party computers or other internet-enabled devices that Pre-Trial Services could not inspect—whether at libraries, internet cafés, or through acquaintances' devices—would substantially increase the risk of circumvention of supervision.

Pursuant to the Crime Victims' Rights Act, the victims respectfully request that the Court take all appropriate action to protect them while Defendant Wang remains on pre-trial release, including denying any modification that would increase her access to third-party computers and other internet-enabled devices and further diminish the protective effect of the existing release conditions.

Dated: February 22, 2026

LAW OFFICES OF DOUGLAS L. RAPPAPORT

/s/ Douglas L. Rappaport
DOUGLAS L. RAPPAPORT
Attorney for Victim-1
