IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

UNITED STATES OF AMERICA,

Plaintiff,

vs.

KAILIN WANG,

Defendant.

**Case No. 2:24-cr-00163-TS**

**DEFENDANT'S RENEWED MOTION TO PROCEED PRO SE WITH STANDBY OR HYBRID COUNSEL**

**Resubmission of Dkt. 125 and Related Motions**

## I. INTRODUCTION

On January 22, 2026, the Defendant filed a Motion to Proceed Pro Se at Docket 125. The Defendant now resubmits and supplements that motion, reasserting all arguments previously raised therein. The Defendant respectfully renews her request to proceed pro se with the assistance of standby or hybrid co-counsel and submits the attached law review article—*The Right to Hybrid Representation in Criminal Court*, by John P. Gross, *Ohio State Law Journal Online* 2023—to assist the Court in understanding the legal landscape and to guide its discretion in fashioning whatever combination of self-representation and counsel-assisted representation it is willing to authorize. The precise contours of any hybrid arrangement are within the Court's discretion.

This renewed motion arises from an irreconcilable impasse between the Defendant and her appointed counsel over the presentation of her objections to the Presentence Investigation Report ("PSR") and related sentencing filings. Appointed counsel has declined to present the Defendant's arguments and evidentiary objections in the form, level of detail, and with the exhibits the Defendant believes are legally necessary to ensure an accurate record at sentencing. The Defendant therefore seeks leave to proceed pro se, with the assistance of standby or hybrid counsel, so that she may file her own

pleadings and exhibits directly with the Court, under seal, without requiring appointed counsel to sign, endorse, or assume responsibility for arguments with which he disagrees.

In addition, recent filings by Victim-1 underscore why direct pro se access to the Court is essential in this case. Victim-1's most recent CVRA objection (Dkt. 134) contains egregious factual misstatements that are flatly contradicted by the Court's own findings at the January 12, 2026 hearing. In that filing, Victim-1 attached only a single page from the January 12 transcript and omitted the remainder of the hearing, despite the fact that the complete certified transcript is already on this Court's docket. That selective excerpting creates a materially misleading picture of what occurred and appears calculated to induce a reviewing judge—particularly one unfamiliar with the full record or pressed for time— to rely on Victim-1's narrative rather than the actual findings made on January 12, 2026. This is consistent with Victim-1's broader pattern of submitting partial, distorted records in multiple forums and then invoking those distorted records to seek ever-harsher conditions and outcomes.

The Defendant respectfully submits that the only effective safeguard against this ongoing misuse of the record is to permit her to appear pro se, with standby or hybrid counsel, so that she can: (1) present full, accurate excerpts of the January 12, 2026 transcript and other proceedings already in the docket; and (2) correct the specific falsehoods and omissions in Victim-1's filings through sworn, citation-supported pleadings filed in her own name. Because no lesser remedy adequately resolves this conflict, pro se status with standby counsel is the only constitutionally sound path forward.

---

## II. PROCEDURAL AND FACTUAL BACKGROUND

The Defendant negotiated the factual basis of her plea through extensive email correspondence transmitted via her family in August 2025. Those negotiations culminated in the Statement in Advance of Plea, which the Court accepted on September 30, 2025.

The current phase of proceedings concerns objections to the PSR. Those objections are extensive—they address two alleged victims and span a 25-year history—despite the

Defendant having no prior criminal convictions of any kind, not even a misdemeanor. The breadth of the PSR is compounded by Victim-1's considerable power and wealth, which have enabled him to obtain long-expunged juvenile records and other materials that would ordinarily remain inaccessible, further complicating the Defendant's efforts to correct the factual record.

By way of illustration, the Defendant has drafted detailed objections to paragraphs 9 through 24 of the PSR, out of approximately 50 disputed paragraphs in total—objections to paragraphs 24 through 78 are currently being prepared. Each disputed line is supported by substantial documentary evidence reflected in emails and attachments totaling thousands of pages.

At present, there is no agreement between the Defendant and her appointed counsel regarding the manner in which the Defendant's objections and evidentiary materials will be presented. Counsel has expressed reluctance to file motions and pleadings presenting the Defendant's position in the manner and level of detail that the government employed for Victim-1 in its own filings.

Critically, defense counsel has not yet reviewed the specific written objections and evidentiary materials the Defendant seeks to advance, yet has already indicated an unwillingness to present them in the form the Defendant deems necessary. That posture should not be misconstrued by the Court or opposing parties as a reflection on the credibility or legal sufficiency of the Defendant's evidence. All evidence the Defendant seeks to present consists of court records and rulings already in the public domain, accompanied by detailed legal argument that is, in the Defendant's view, sound and firmly grounded in existing law.

Because appointed counsel continues to decline to file the pleadings, exhibits, and arguments in the manner the Defendant believes is necessary to protect her rights, there is no realistic path to resolving this conflict short of allowing the Defendant to proceed pro se, file her own pleadings, and submit her own exhibits. The Defendant affirmatively requests that all her filings be lodged under seal to prevent inadvertent disclosure of confidential information.

### III. THE DEFENDANT'S SIXTH AMENDMENT RIGHT AND THE CASE FOR HYBRID REPRESENTATION

A criminal defendant has a constitutional right to represent herself. *Faretta v. California*, 422 U.S. 806, 819 (1975). The Court in *Faretta* grounded that right in the plain meaning of the Sixth Amendment's guarantee of "the assistance of counsel"—language that envisions counsel as an assistant to the accused, not as a substitute for the accused's own voice. *Id.* at 832. A trial court may appoint standby counsel to assist a defendant who elects to proceed pro se. *Id.* at 834 n.46.

The Defendant submits the attached article by Professor John P. Gross, *The Right to Hybrid Representation in Criminal Court*, 2023 Ohio St. L.J. Online 27, which demonstrates that the historical, textual, and practical foundations of the Sixth Amendment support permitting defendants to represent themselves while retaining the assistance of counsel. As Professor Gross explains, every one of the thirty-six state constitutions cited in *Faretta* guaranteed defendants the right to be heard "by himself and his counsel"—language embracing simultaneous self-representation and counsel-assistance. *See* Gross, at 29. That dual guarantee was not historical accident: when Aaron Burr stood trial for treason in 1807, he defended himself alongside retained counsel that included a former Secretary of State and a former Attorney General. *Id.*

While *McKaskle v. Wiggins*, 465 U.S. 168 (1984), held that defendants possess no constitutional right to *compel* hybrid representation, it expressly acknowledged that nothing prevents trial courts from *permitting* it. *See* Gross, at 33. The question is not whether this Court *may* authorize a hybrid arrangement—it plainly may—but whether it *should* exercise that discretion here.

The case for hybrid representation is particularly compelling where appointed counsel and the defendant have reached an impasse of the kind documented here. As Professor Gross observes, the traditional agency model of representation—in which counsel exercises near-total control over trial strategy—rests on the premise that the defendant has voluntarily selected and consented to her representative. *Faretta*, 422 U.S. at 820–21.

That premise does not hold where a defendant is assigned counsel she did not choose and cannot easily discharge. Gross, at 32.

Hybrid representation addresses this structural problem by enlisting the person with the greatest incentive to work on the case—the defendant herself—while preserving the legal expertise and procedural guidance that counsel can provide. *Id.* at 34–35.

The Defendant is mindful of the institutional skepticism many courts harbor toward pro se litigants, and she acknowledges that most defendants who represent themselves receive harsher sentences than those represented by counsel—often because they advance arguments, such as sovereign citizen theories, that have no legal foundation and that justifiably frustrate courts. The Defendant commits, in the clearest possible terms, to advancing only legally grounded arguments. She respectfully asks the Court to keep an open mind, to review her pleadings and exhibits with care, and to invest the time necessary to understand the factual and procedural complexity of this case.

Despite being a convicted felon and having been labeled a vexatious litigant in other forums, the Defendant has previously persuaded two presiding justices of the California Court of Appeal, First Appellate District—both former federal prosecutors—across three separate appeals, including two published decisions.

Specifically, Justice Stuart R. Pollak, who presided over *C.T. v. K.W.*, 71 Cal.App.5th 679, 286 Cal.Rptr.3d 409 (2021), served as an Assistant United States Attorney in the Northern District of California before his appointment to the bench. Justice Pollak's published opinion in *C.T. v. K.W.*—a case directly involving the Defendant and Victim-1 arising from the same underlying dispute that forms the factual backdrop of this proceeding—reflects a careful and searching review of the Defendant's arguments and the record, ultimately ruling in material part in her favor on significant issues notwithstanding the considerable resources arrayed against her.

Similarly, Justice Tracie Brown, who presided over *C.T. v. Superior Court*, 109 Cal.App.5th 1075 (Cal. Ct. App., 1st Dist., 4th Div. 2025), also brought to her judicial role extensive experience as a federal prosecutor, having served as an Assistant United States Attorney before her elevation to the Court of Appeal.

Both justices—each with firsthand experience in the federal criminal system, familiar with the tactics used by well-resourced parties to overwhelm pro se opponents, and trained to evaluate evidence rather than advocacy style—evaluated the Defendant's positions and, at least in significant part, found them persuasive.

This history is not offered to relitigate those cases or to suggest that prior civil appellate successes predict the outcome of federal sentencing proceedings. It is offered for a single, limited purpose: to demonstrate that when the Defendant is given a fair opportunity to brief and argue her position before jurists who are willing to engage seriously with the record, the result is not the categorical dismissal that the label of "vexatious litigant" might suggest. Experienced former federal prosecutors, sitting as appellate justices, changed their initial impressions after reviewing her submissions. She respectfully asks this Court to extend the same open-minded engagement.

## IX. CONCLUSION

For the foregoing reasons, the Defendant respectfully renews the request to be pro se.

She seeks leave to proceed pro se with the assistance of standby or hybrid co-counsel, to file her own pleadings and exhibits under seal, consistent with the framework endorsed by Professor Gross and within the discretion this Court already possesses under *Faretta* and *McKaskle*.

Respectf       d,

**KAILIN WANG**
Defendant, Pro Se
with Standby Counsel to be appointed by the Court

Dated: February 24, 2026