Kailin Wang
2481 Fairway Dr.
Spanish Fork, Utah 84660
801-787-9755
kaywg2372@gmail.com

FILED
2026 APR 16
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**KAILIN WANG**,<br><br>Defendant. | DEFENDANT'S MOTION FOR CONTINUANCE OF SENTENCING,<br><br>Case No. 2:24-cr-00163-TS<br><br>Judge Ted Stewart<br><br>Magistrate Judge Dustin Pead |

## I.  INTRODUCTION

Defendant Kailin Wang, proceeding pro se, respectfully moves this Court pursuant to Federal Rule of Criminal Procedure 32, the Fifth Amendment to the United States Constitution, and the Criminal Justice Act, 18 U.S.C. § 3006A(e), for an order: (1) continuing the sentencing hearing currently scheduled for May 5, 2026; (2) scheduling a potential Fatico evidentiary hearing to resolve materially disputed sentencing facts.

At the center of this motion is a representation the government made nine days before it disclosed its expert evidence. On April 2, 2026, Ms. Wang sent the government a written meet-and-confer inquiry expressly asking whether the government intended to call expert witnesses or rely on expert opinions — including from mental-health professionals — at sentencing. On April 6, 2026, AUSA Joey Blanch responded in a single sentence: **"We do not expect to call expert witnesses."**  Nine days later, on April 15, 2026 — twenty days before the May 5, 2026 sentencing hearing — the government produced a 21-page updated forensic

psychological expert report by Dr. J. Reid Meloy, Ph.D., ABPP, dated April 14, 2026, together with an extensive multi-page narrative of alleged conduct (the "Wang Impersonations" document) and approximately four hours of translated jail call recordings.

The government's April 6 representation was either a misrepresentation or a concession that the Meloy Report was not finalized until April 14, 2026 — the day before it was produced. Either way, Ms. Wang is left with twenty days before her sentencing hearing to respond to a board-certified expert's 21-page assessment resting on more than 100 adversarially curated documents, an unattributed third-party narrative spanning multiple jurisdictions, and four hours of translated recordings — none of which she had any meaningful opportunity to investigate, respond to, or counter with her own expert. Due process, Rule 32, and basic fairness require a continuance, a potential Fatico evidentiary hearing, and time required for authorization of expert fees.

## II.  FACTUAL BACKGROUND

### A.  Ms. Wang's April 2 Expert-Disclosure Request and AUSA Blanch's April 6 Response

1.  On April 2, 2026, Ms. Wang sent AUSA Blanch a written meet-and-confer email (copied to Federal Defender attorneys Richard Sorenson and Lacey Bagley) regarding expert disclosures and sentencing materials in *United States v. Wang*, No. 2:24-CR-163-TS. The email expressly requested:

> (a)  Identification of each expert witness — including any law-enforcement or mental-health expert — whose opinions the government intended to rely on at sentencing, whether by live testimony or written report;

> (b)  A written disclosure for each such expert setting out the opinions to be offered, the bases and reasons for those opinions, the expert's qualifications, and the expert's prior testimony and publication history; and

> (c)  Copies of all expert reports, technical analyses, notes, underlying data, and other materials on which those opinions relied.

2.  On April 6, 2026 — four days after the request — AUSA Blanch responded. His entire response consisted of one sentence: **"We do not expect to call expert witnesses."**

3.  Ms. Wang was entitled to rely on that unequivocal representation in tailoring her sentencing preparation. The government's April 15 disclosure, made nine days after that representation, eliminated any reasonable basis for reliance on it.

**B.  The Government's April 15, 2026 Production — Twenty Days Before Sentencing**

4.  On April 15, 2026 — twenty days before the May 5, 2026 sentencing hearing — AUSA Blanch produced, for the first time, the following materials (collectively, the "April 15 Materials"):

> (a)  An "Updated Violence Risk and Threat Assessment" by Dr. J. Reid Meloy, Ph.D., ABPP, dated April 14, 2026 ("Meloy Report"), 21 pages in length with a 9-page record list spanning more than 100 source documents;

> (b)  A multi-page narrative document titled "Wang Impersonations" ("Impersonation Document"), prepared by or for Victim 1's civil counsel; and

> (c)  Translations of approximately 22 jail call recordings totaling 13,620 seconds — approximately 227 minutes, or roughly four hours — of calls.

5.  None of these materials was previously disclosed to Ms. Wang. AUSA Blanch acknowledged in his April 15, 2026 communications that the materials were received from Victim 1's counsel, and that the government intends to use them at sentencing. The April 15 Materials have already been provided to the United States Probation Office for potential inclusion or reliance in the sentencing recommendation.

6.  When Ms. Wang asked who authored the Impersonation Document, the government had not, as of April 15, 2026, identified the author.

7.  AUSA Blanch further acknowledged that some documents cited in and relied upon by Dr. Meloy have still not been produced, stating that "when I receive the remaining documents cited, I will produce them." Ms. Wang therefore cannot yet evaluate the full evidentiary foundation of the Meloy Report.

8.  The government has objected to any continuance of the May 5, 2026 sentencing date.

**C.  The Meloy Report — Scope, Methodology, and Conclusions**

9.  Dr. Meloy is a board-certified forensic psychologist (ABPP), Fellow of the American Academy of Forensic Psychology and the American Academy of Forensic Sciences, former Clinical Professor of Psychiatry at the University of California, San Diego, and former consultant to the FBI's Behavioral Analysis Unit. The Meloy Report updates prior assessments dated May 7, 2023 and January 5, 2024, and covers a 24-month interval ending in April 2026. The report was addressed to Douglas Rappaport, Victim 1's attorney, who retained Dr. Meloy and assembled the documentary record on which the report relies.

10.  The report expressly acknowledges that it was prepared without any direct clinical interview of Ms. Wang — a methodological limitation Dr. Meloy acknowledges but dismisses. As the report's own footnote discloses, in February 2023 Dr. Meloy sought to evaluate Ms. Wang directly; she declined. For this update, Dr. Meloy renewed the request through Mr. Rappaport, who advised that because Ms. Wang had three pending criminal cases implicating her Fifth Amendment rights, her position was unlikely to change. Ms. Wang's exercise of her Fifth Amendment right not to submit to an evaluation by an adversarially retained expert cannot be used as affirmative evidence of non-cooperation or dangerousness at sentencing.

11.  Every document in Dr. Meloy's record review — spanning more than 100 items, from 2018 through early 2026 — was assembled and provided by Victim 1's attorney. No records were provided by or on behalf of Ms. Wang. The corpus includes court orders, restraining orders, affidavits, social media captures, criminal complaints, custody orders, and proceedings from San Francisco Superior Court, California Courts of Appeal, a Danish family court, Utah state court, and this Court.

12.  The Meloy Report concludes that Ms. Wang exhibits "severe" and "stable" psychopathy as measured by the Psychopathy Checklist — Revised (PCL-R), on which she received a prorated score of 32.6 (97th percentile among female inmates in North America) in the May 2023 evaluation — a score Dr. Meloy carries forward without independent re-scoring. The report further concludes that she poses a "persistent, high-level risk" of stalking violence, stochastic violence (i.e., that a third party might act violently on her behalf), and target dispersion. Its central recommendation is that "[i]ncarceration provides the only fully effective protection."

13.  The report also makes specific factual allegations concerning Ms. Wang's conduct while on federal pretrial supervision, including alleged internet access in violation of her Conditions of

Release, use of a yunlong email account, emails to court personnel, and routing of filings through third parties. These allegations are disputed and are being offered in support of an upward variance and highly restrictive post-release conditions.

### D.  The "Wang Impersonations" Document

14.  The Impersonation Document is a multi-page narrative prepared by an unidentified author on behalf of or at the direction of Victim 1's attorney, who btw has a known team of 31 attorneys, experts, and private investigators. The report purports to describe, in extensive detail, alleged conduct by Ms. Wang directed at largely an individual that is  not a victim in this case ("Rory," the New York case) and WS (V2), whom both were not interviewed for this report, and across multiple jurisdictions.

15.  The document was not prepared through any independent investigation. It is not based on any interviews with Ms. Wang,  Rory Will, WS (V2) or the original New York law-enforcement investigators. It contains multiple layers of hearsay, argumentative legal conclusions (e.g., characterizing prior allegations as having been "falsely" made and prior proceedings as based on "materially false information"), and extensive assertions of disputed historical fact — without identifying any source, investigative foundation, or evidentiary basis for those conclusions.

### E.  The Cloudflare Subpoena — The Government's Concession on Pattern-of-Conduct Attribution

16.  The government's April 13, 2026 Response to Ms. Wang's Request for a Subpoena to Cloudflare (ECF No. 151) confirms that Cloudflare could not provide IP tie-back reliably attributing the "Kill Baby K" post on HolySmoke.org to any particular person or account. The government acknowledges that its attribution of that post to Ms. Wang is "not based on IP tie back, but on the face of the post itself, combined with Ms. Wang's pattern and practice." This pattern-of-conduct attribution is precisely the type of contested behavioral-profile inference that pervades the Meloy Report and the Impersonation Document, and it further underscores the need for a hearing at which the evidentiary basis for these arguments can be tested.

### F.  The Jail Call Translations

17.  The government produced, for the first time on April 15, 2026, translations of approximately 22 jail call recordings totaling 13,620 seconds — approximately 227 minutes — of calls. Ms. Wang requires adequate time to review the recordings and translations, assess their context, and evaluate how the government may seek to deploy them at the May 5, 2026 sentencing hearing.

### III.  LEGAL ARGUMENT

**A.  The Government's April 6 Representation That It Would Call No Expert Witnesses Independently Requires a Continuance**

On April 6, 2026, AUSA Blanch stated in writing, in response to Ms. Wang's direct and specific written inquiry: "We do not expect to call expert witnesses." Ms. Wang was entitled to rely on that representation. It is fundamental that government attorneys in criminal cases may not make affirmative representations about the scope of their sentencing evidence and then — nine days later — produce the centerpiece of their sentencing argument: a 21-page forensic psychological risk assessment by a nationally credentialed expert, dated one day before its production. However the government characterizes that representation, the prejudice to Ms. Wang is real and concrete.

Relying on the government's April 6 statement, Ms. Wang had no reason to seek, retain, or begin the process of engaging a forensic experts in the weeks before sentencing. The April 15 production destroyed that reasonable reliance and left Ms. Wang with twenty calendar days — until May 5, 2026 — to respond to a 21-page expert assessment resting on more than 100 documents assembled by the victim 1's own self-serving expert, and attorney that has been on the case for 7 years. That is constitutionally insufficient, and the government's objection to any continuance does not change that calculus.

**B.  Due Process Requires a Continuance**

The Fifth Amendment's Due Process Clause requires that a sentencing court rely only on accurate information and that a defendant have a meaningful opportunity to be heard on information the Court will rely upon in imposing sentence. *United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 740–41 (1948); *Gardner v. Florida*, 430 U.S. 349, 362 (1977) (plurality). These rights apply with full force to a pro se defendant.

The April 15 Materials are not supplemental background documents. They are the government's primary evidentiary foundation for any upward variance, dangerousness finding, and restrictive supervision conditions. Twenty days before sentencing — and nine days after being told no expert witnesses would be called — Ms. Wang cannot realistically: (a) investigate the factual assertions in the Impersonation Document across multiple jurisdictions; (b) consult qualified forensic experts to evaluate and rebut the Meloy Report new report; (c) obtain and review the records cited by Dr. Meloy that have not yet been produced; (d) complete the Cloudflare subpoena process; or (e) prepare any form of meaningful cross-examination or response.

The Court should also be mindful that Ms. Wang is proceeding pro se. The practical burden of responding to a 21-page forensic psychological report, an unattributed multi-jurisdictional narrative, and four hours of translated calls — all not fully produced twenty days before sentencing, after a representation that no expert evidence would be offered — falls with greater weight on a self-represented defendant than on represented counsel. Due process requires no less than a meaningful opportunity to be heard; twenty days is not that opportunity here.

## C.  Rule 32 and the Fatico Doctrine Require an Evidentiary Hearing

Federal Rule of Criminal Procedure 32 requires that the defendant have a reasonable opportunity to comment on and contest information the Court will rely on at sentencing, and that the Court resolve any material disputes about that information. Fed. R. Crim. P. 32(f), (i)(1)(B), (i)(3)(B). Where the government seeks to use contested, uncharged conduct to support a higher sentence or more restrictive conditions, due process and Rule 32 require the Court to resolve those factual disputes through an evidentiary hearing. *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979); *United States v. Williams*, 45 F.4th 1293 (10th Cir. 2022).

The following material factual disputes exist:

> (a)  Whether Dr. Meloy's PCL-R score of 32.6, derived in a 2023 evaluation without a direct interview and from a record set compiled exclusively by Victim 1's attorney, and carried forward without independent re-scoring into this April 2026 report, is methodologically reliable or reflects selective, adversarially curated information;

(b)  Whether Dr. Meloy's specific factual characterizations of Ms. Wang's conduct while on federal pretrial supervision — including alleged internet access in violation of her Conditions of Release and alleged use of a email accounts — are accurate and, if so, what weight they should receive at sentencing;

(c)  Whether the specific episodes described in the Impersonation Document occurred as portrayed, and whether those portrayals are the product of independent investigation or adversarial advocacy by Victim 1's numerous attorneys, experts, etc. ;

(d)  The identity, qualifications, methodology, and data sources of the Impersonation Document's author — none of which has been disclosed — and whether the document is reliable under the standards applicable to sentencing information;

(e)  Whether the Meloy Report's "stochastic violence" and "target dispersion" constructs are a proper basis for sentencing or supervision conditions under the standard for reliable sentencing information; and

(f)  Whether the government's pattern-of-conduct attribution of the "Kill Baby K" post — which the government itself concedes is not based on IP evidence — is reliable under the preponderance standard applicable at sentencing.

## D.  Specific Methodological Vulnerabilities of the Meloy Report

**No direct interview.**  The report expressly acknowledges the absence of any direct clinical interview. Ms. Wang is entitled to cross-examine Dr. Meloy on whether and how this limitation affects the reliability of his PCL-R scoring and overall risk conclusions.

**Exclusively adversarial record set.**  Every document in Dr. Meloy's record review was assembled and provided by Victim 1's attorney. No records from Ms. Wang or on her behalf were reviewed. Professional guidance on the PCL-R warns against reliance on one-sided record sources. Ms. Wang must be permitted to present alternative source materials to a defense expert and to cross-examine Dr. Meloy about the completeness and balance of his record review.

**Carried-forward PCL-R scoring.**  The PCL-R score dates from May 2023. Dr. Meloy does not conduct an independent re-scoring for this April 2026 update, stating only that "[n]o new information undermines the original scoring." Ms. Wang is entitled to test that assertion, including whether the absence of a direct interview and the one-sided record set infected the original 2023 scoring.

**Litigation conduct used as evidence of psychopathy.**  Many items in Dr. Meloy's record review are Ms. Wang's own court filings, characterized in the report as "litigation-enabled harassment" and evidence of "criminal versatility." Using constitutionally protected litigation conduct as primary evidence of a personality disorder raises significant First Amendment and due process concerns that warrant examination at a hearing.

**Fifth Amendment invocation used against Ms. Wang.**  As the report's own footnote acknowledges, Ms. Wang declined to be interviewed by an adversarially retained expert while facing three overlapping criminal prosecutions. Her exercise of Fifth Amendment rights cannot be used as affirmative evidence of dangerousness or non-cooperation at sentencing.

### E.  Dr. Meloy's History of Ethical Violations and the Wrongful Conviction of Timothy Masters Demand Additional Time for Investigation

The government has presented Dr. Meloy as one of the nation's foremost forensic threat assessment experts. The Court should be aware, however, that Dr. Meloy's professional record includes a documented episode of catastrophic expert-witness failure that resulted in an innocent teenager spending a decade in prison — an outcome Dr. Meloy himself has acknowledged. That history is directly relevant to the reliability of his methodology in this case, and Ms. Wang requires additional time to investigate and develop that record for purposes of cross-examination and potential expert rebuttal.

### 1.  The Timothy Masters Wrongful Conviction

In 1999, Dr. Meloy served as the prosecution's expert witness in the murder trial of Timothy Masters, a fifteen-year-old who lived near the scene of the 1987 killing of Peggy Hettrick in Fort Collins, Colorado. Despite the complete absence of physical evidence linking Masters to the crime — no blood, no matching fibers, no footwear impression, no forensic connection of any kind — Dr. Meloy constructed a psychological theory to fill the evidentiary void. He did so, critically, without ever conducting a direct clinical interview of Masters — the same methodological shortcut he employs in his report against Ms. Wang.

Working solely from Masters' personal drawings and notebooks — the horror-movie and war-game-themed sketches typical of many adolescents — Dr. Meloy told the jury that Masters harbored "repressed anger" toward his deceased mother, that this rage expressed itself as

homicidal fantasy, and that Masters had been "killing his mother" when he allegedly stabbed Hettrick. He characterized the volume of Masters' adolescent artwork as uniquely menacing, testifying that he had "never seen such a large volume of productions before" — a statement that one commentator noted reflects unfamiliarity with the output of any serious young artist rather than any clinical significance. Based substantially on Dr. Meloy's speculation-driven testimony about the inner life of a teenager he had never met, the jury convicted Masters. He was sentenced to life in prison.

In 2008 — nearly ten years after Masters' conviction — DNA evidence exonerated him. The true perpetrator was identified as a physician, Dr. Richard Hammond, who had lived in the same neighborhood and had died years earlier. Masters was released and subsequently received $10 million in compensation for his wrongful imprisonment. The case was widely covered as a paradigmatic example of "junk science" forensic psychology — specifically, the use of unverified psychological profiling to substitute for evidence of guilt. A rogue detective, two prosecutors, and Dr. Meloy had combined to send an innocent teenager to prison on no evidence at all.

Dr. Meloy himself has acknowledged, in a recorded public admission: "There have been incidences where juries relied on my opinion and in the aftermath, those [opinions] were not supported by evidence." That admission is not an abstraction. In the Masters case it translated into ten years of imprisonment for an innocent man. The same speculative methodology — profiling from documents alone, without a direct interview, relying on adversarially selected materials — underlies the report Dr. Meloy has now submitted to this Court recommending Ms. Wang's permanent incapacitation.

## 2. The Parallel Methodology in This Case

The methodological parallels between the Masters case and the report before this Court are not superficial. In both cases: (a) Dr. Meloy conducted no direct clinical interview of the subject; (b) he relied exclusively on a record set assembled by the opposing party; (c) he interpreted constitutionally protected expressive activity — Masters' drawings, Ms. Wang's court filings — as primary evidence of dangerous pathology; (d) he offered sweeping psychological conclusions going well beyond what the underlying record could support; and (e) his ultimate recommendation was effectively permanent removal of the subject from society. The Masters

case demonstrates that these methodological shortcuts are not merely theoretical concerns — they produced a wrongful conviction that destroyed an innocent person's life for a decade.

### 3.  The Need for Additional Time to Investigate Dr. Meloy's Background

Ms. Wang requires additional time beyond the current twenty-day window to conduct a complete investigation of Dr. Meloy's professional record. That investigation must include, at minimum: (a) a review of all prior cases in which Dr. Meloy has testified for the prosecution and the outcomes of those cases, including any that resulted in vacated convictions, exonerations, or appellate reversals based on the reliability of his testimony; (b) examination of Dr. Meloy's prior expert disclosures, Daubert/Rule 702 challenges, and any judicial findings regarding the reliability or admissibility of his methods; (c) review of all professional disciplinary proceedings, ethics complaints, or licensing board actions involving Dr. Meloy; (d) identification and consultation with any defense experts who have previously challenged or rebutted Dr. Meloy's methodology; and (e) full review of the scholarly and professional literature critiquing the forensic tools — including the PCL-R, Stalking Risk Profile, and "stochastic violence" construct — that Dr. Meloy employed here.

This is not a peripheral inquiry. The government seeks to have this Court impose a sentence and supervision conditions substantially based on Dr. Meloy's conclusions about Ms. Wang's risk level and character. Before accepting those conclusions, the Court and Ms. Wang are entitled to know whether the expert offering them has a documented history of using the same unreliable methods to send an innocent person to prison — and has publicly admitted that his opinions have not always been supported by the evidence. Twenty days is not adequate to conduct this investigation. The Court should grant a continuance of not less than 60 to 90 days to permit Ms. Wang to investigate Dr. Meloy's background fully and to retain and prepare a defense expert who can address his methodology on equal footing.

### F.  Authorization of Expert Fees Under the CJA Is Necessary for a Fair Proceeding

The government presents a report by one of the nation's most prominent forensic threat assessment experts — a former FBI Behavioral Analysis Unit consultant, author of major texts in the field, who has applied the PCL-R and Stalking Risk Profile and recommended what amounts to permanent incapacitation. Ms. Wang, a pro se defendant, has had no opportunity to rebut this

in a timely manner in significant part because AUSA Blanch represented on April 6 that the government would not call expert witnesses.

The Criminal Justice Act, 18 U.S.C. § 3006A(e), authorizes the Court to approve funds for investigative, expert, and other services reasonably necessary for adequate representation — including in pro se cases where the Court finds the interests of justice require it. The need here is plain: without a qualified defense expert, the May 5 sentencing hearing will feature a one-sided expert presentation in which Dr. Meloy's conclusions about "severe psychopathy," "stochastic violence," "target dispersion," and the necessity of incarceration go unrebutted by any independent professional assessment.

## IV.  PROPOSED RELIEF

Ms. Wang respectfully requests an order:

1.  Continuing the May 5, 2026 sentencing hearing for not less than 90 to 120 days, to permit: (a) full review of the Meloy Report and all records cited therein, including those not yet produced; (b) investigation of the factual assertions in the Impersonation Document and the underlying proceedings on which it relies; (c) consultation with and preparation of a report and hearing testimony by a qualified defense forensic expert; and (d) completion of the Cloudflare subpoena process;

2.  Directing the government, within seven (7) days of this Order, to: (a) disclose the identity, qualifications, and institutional affiliation of the author(s) of the Impersonation Document; and (b) produce all documents cited in Dr. Meloy's April 14, 2026 report that have not yet been provided, consistent with AUSA Blanch's April 15, 2026 representation that he would do so upon receipt;

3.  Scheduling a possible Fatico evidentiary hearing prior to sentencing, at which: (a) Dr. Meloy testifies regarding his methodology, record selection, PCL-R scoring, and conclusions and is subject to cross-examination; (b) the identified author(s) of the Impersonation Document testify under oath and are subject to cross-examination; and (c) such additional witnesses as may be necessary to resolve the factual disputes identified in Section III.C are called;

## V.  CONCLUSION

For the foregoing reasons, Defendant Kailin Wang, proceeding pro se, respectfully requests that the Court continue the May 5, 2026 sentencing hearing, order the government to identify the author of the Impersonation Document and produce all remaining Meloy source materials, schedule a potential Fatico evidentiary hearing, and authorize expert fees. The government told Ms. Wang on April 6, 2026 that it would call no expert witnesses. Nine days later it produced a 21-page expert report dated the day before. Ms. Wang now has twenty days before sentencing to respond to that report, an unattributed multi-jurisdictional narrative, and four hours of translated recordings — without an expert, without all the underlying source materials, and without a meaningful opportunity to test any of it. Proceeding to sentencing under these circumstances would deny Ms. Wang the fair hearing the Constitution and Rule 32 guarantee.

DATED this 16th day of April, 2026.

*Respectfully submitted,*

/s/ Kailin Wang Defendant, Pro Se

I hereby certify that on April 16, 2026, I filed the foregoing Motion with the Clerk of the Court and served a copy on AUSA Joey Blanch (joey.blanch2@usdoj.gov); Conrad Kaufman, U.S. Probation Officer; conrad_kaufman@utp.uscourts.gov; Richard Sorenson (standby counsel); richard_sorenson@fd.org

 Gmail

John Wang <yunlong88cong@gmail.com>

---

## Subject: Meet and Confer re Expert Disclosures and Sentencing Materials – United States v. Wang, 2:24-cr-0163-TS

2 messages

---

**John Wang** <yunlong88cong@gmail.com>                                                 Thu, Apr 2, 2026 at 9:51 PM
To: "Blanch, Joey (USAUT)" <joey.blanch2@usdoj.gov>, Richard Sorenson <richard_sorenson@fd.org>, Lacey Bagley
<Lacey_Bagley@fd.org>

---

Subject: Meet and Confer re Expert Disclosures and Sentencing Materials – United States v. Wang, 2:24-cr-0163-TS

Dear Mr. Blanch,

Regarding expert disclosures and related materials the government intends to use at Kailin Wang's sentencing currently set for May 5, 2026.

As you know, the government has indicated that it plans to rely at sentencing on technical assertions concerning IP addresses, VPNs, IP masking, and "authentication" of online posts, as well as on certain characterizations of my mental and emotional condition that may rest on specialized assessments. In order to meaningfully prepare for sentencing and address disputed factual issues raised in the Presentence Investigation Report, defendants needs to understand whether the government intends to present any expert testimony or rely on expert opinions (including from law-enforcement officers or mental-health professionals) on these topics, and, if so, to receive the corresponding disclosures and materials.

To that end, defendants respectfully request that the government provide:

1. Identification of each expert witness (including any law-enforcement or mental-health expert) whose opinions the government intends to rely on at sentencing, whether by live testimony or written report.
2. A written disclosure for each such expert setting out the opinions to be offered, the bases and reasons for those opinions, the expert's qualifications, and the expert's prior testimony/publication information, consistent with current federal criminal discovery requirements for expert disclosures.
3. Copies of all expert reports, technical analyses, notes, underlying data, and other materials on which those opinions rely that the government intends to use or rely on at sentencing.

If the government does not intend to rely on any expert opinions at sentencing on these topics, please confirm that in writing so the defendant can tailor her preparation accordingly.

Thank you for your attention to this matter. Defendant looks forward to your prompt response.

Respectfully,

John Wang sent on behalf of Kailin Wang, who dictated the message  (+1 801 709-0209); (+1 801-787-9755) (+1 801 361-8742)

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

---

**Blanch, Joey (USAUT)** <Joey.Blanch2@usdoj.gov>                              Mon, Apr 6, 2026 at 9:49 AM
To: John Wang <yunlong88cong@gmail.com>, Richard Sorenson <richard_sorenson@fd.org>, Lacey Bagley <Lacey_Bagley@fd.org>

We do not expect to call expert witnesses.

[Quoted text hidden]

 Gmail

**John Wang <yunlong88cong@gmail.com>**

---

## Sentencing Discovery

16 messages

---

**Blanch, Joey (USAUT)** <Joey.Blanch2@usdoj.gov>                    Wed, Apr 15, 2026 at 11:01 AM
To: "yunlong88cong@gmail.com" <yunlong88cong@gmail.com>, Richard Sorenson - FDO <richard_sorenson@fd.org>
Cc: Conrad Kaufman <conrad_kaufman@utp.uscourts.gov>

Ms Wang,

Attached are documents provided to us by Victim 1's counsel that the government intends to use at sentencing.  I am also providing them to USPO.

Joey L. Blanch | Assistant U.S. Attorney

111 S. Main St. Suite 1800 | Salt Lake City, UT 84111

(801) 524-5682 | joey.blanch2@usdoj.gov

---

**2 attachments**

 **Wang Impersonations_Redacted.pdf**
1586K

 **2026-04-14 Updated Violence Risk and Threat Assessment_Redacted.pdf**
3697K

---

**Blanch, Joey (USAUT)** <Joey.Blanch2@usdoj.gov>                    Wed, Apr 15, 2026 at 11:05 AM
To: "yunlong88cong@gmail.com" <yunlong88cong@gmail.com>, Richard Sorenson - FDO <richard_sorenson@fd.org>
Cc: Conrad Kaufman <conrad_kaufman@utp.uscourts.gov>

I forgot to mention, re Dr. Meloy's report.  You should already have the majority of the documents he reviewed, cited in the report.  When I receive the remaining documents cited, I will produce them.

[Quoted text hidden]

---

**John Wang** <yunlong88cong@gmail.com>                    Wed, Apr 15, 2026 at 1:11 PM
To: "Blanch, Joey (USAUT)" <Joey.Blanch2@usdoj.gov>
Cc: Richard Sorenson - FDO <richard_sorenson@fd.org>, Conrad Kaufman <conrad_kaufman@utp.uscourts.gov>

who wrote the report?

John Wang sent on behalf of Kailin Wang, who dictated the message  (+1 801 709-0209); (+1 801-787-9755) (+1 801 361-8742)

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

---

**Blanch, Joey (USAUT)** <Joey.Blanch2@usdoj.gov>                    Wed, Apr 15, 2026 at 2:16 PM
To: John Wang <yunlong88cong@gmail.com>
Cc: Richard Sorenson - FDO <richard_sorenson@fd.org>, Conrad Kaufman <conrad_kaufman@utp.uscourts.gov>

Dr. Meloy

[Quoted text hidden]

---

**John Wang** <yunlong88cong@gmail.com>                    Wed, Apr 15, 2026 at 2:22 PM
To: "Blanch, Joey (USAUT)" <Joey.Blanch2@usdoj.gov>
Cc: Richard Sorenson - FDO <richard_sorenson@fd.org>, Conrad Kaufman <conrad_kaufman@utp.uscourts.gov>

no, the other report.

John Wang sent on behalf of Kailin Wang, who dictated the message  (+1 801 709-0209); (+1 801-787-9755) (+1 801 361-8742)

---

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

---

**John Wang** <yunlong88cong@gmail.com>                    Wed, Apr 15, 2026 at 2:45 PM
To: "Blanch, Joey (USAUT)" <Joey.Blanch2@usdoj.gov>, Richard Sorenson <richard_sorenson@fd.org>, Conrad Kaufman <Conrad_Kaufman@utp.uscourts.gov>

Who prepared this report?



John Wang sent on behalf of Kailin Wang, who dictated the message  (+1 801 709-0209); (+1 801-787-9755) (+1 801 361-8742)

---

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

---

**Blanch, Joey (USAUT)** <Joey.Blanch2@usdoj.gov>                    Wed, Apr 15, 2026 at 2:48 PM
To: John Wang <yunlong88cong@gmail.com>
Cc: Richard Sorenson - FDO <richard_sorenson@fd.org>, Conrad Kaufman <conrad_kaufman@utp.uscourts.gov>


It was provided to me from Victim 1's attorneys' office.

[Quoted text hidden]

---

**John Wang** <yunlong88cong@gmail.com>                    Wed, Apr 15, 2026 at 2:50 PM
To: "Blanch, Joey (USAUT)" <Joey.Blanch2@usdoj.gov>
Cc: Richard Sorenson - FDO <richard_sorenson@fd.org>, Conrad Kaufman <conrad_kaufman@utp.uscourts.gov>

Who drafted it? We cannot have unidentified drafters of reports, who was interviewed? etc. etc.

John Wang sent on behalf of Kailin Wang, who dictated the message  (+1 801 709-0209); (+1 801-787-9755) (+1 801 361-8742)

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

---

**John Wang** <yunlong88cong@gmail.com>                                          Wed, Apr 15, 2026 at 2:51 PM
To: "Blanch, Joey (USAUT)" <Joey.Blanch2@usdoj.gov>
Cc: Richard Sorenson - FDO <richard_sorenson@fd.org>, Conrad Kaufman <conrad_kaufman@utp.uscourts.gov>

Also V1 has a team of 30+  attorneys, experts, etc. that is not specific.

John Wang sent on behalf of Kailin Wang, who dictated the message  (+1 801 709-0209); (+1 801-787-9755) (+1 801 361-8742)

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

---

**John Wang** <yunlong88cong@gmail.com>                                          Wed, Apr 15, 2026 at 2:52 PM
To: "Blanch, Joey (USAUT)" <Joey.Blanch2@usdoj.gov>
Cc: Richard Sorenson - FDO <richard_sorenson@fd.org>, Conrad Kaufman <conrad_kaufman@utp.uscourts.gov>

See attached.

John Wang sent on behalf of Kailin Wang, who dictated the message  (+1 801 709-0209); (+1 801-787-9755) (+1 801 361-8742)

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

 **2025-04-22 Thygesen's 31 known Attorneys, Experts, Private Investigators vs_compressed (2) (1).pdf**
11091K

---

**Blanch, Joey (USAUT)** <Joey.Blanch2@usdoj.gov>                    Wed, Apr 15, 2026 at 2:54 PM
To: John Wang <yunlong88cong@gmail.com>
Cc: Richard Sorenson - FDO <richard_sorenson@fd.org>, Conrad Kaufman <conrad_kaufman@utp.uscourts.gov>

Ms Wang, I cannot give you information I don't have.  If I learn the information, I can provide it to you.  In the meantime, you can see the report is based on a number of exhibits, which you should already have.  Out of an abundance of caution I will provide the exhibits to you, but I'm still redacting them.

Best,

Joey L. Blanch | Assistant U.S. Attorney

111 S. Main St. Suite 1800 | Salt Lake City, UT 84111

(801) 524-5682 | joey.blanch2@usdoj.gov

[Quoted text hidden]

---

**John Wang** <yunlong88cong@gmail.com>                    Wed, Apr 15, 2026 at 3:00 PM
To: "Blanch, Joey (USAUT)" <Joey.Blanch2@usdoj.gov>
Cc: Richard Sorenson - FDO <richard_sorenson@fd.org>, Conrad Kaufman <conrad_kaufman@utp.uscourts.gov>

Well, we understand Rory Will's stuff does not need to be redacted as it's already public record.

See:

https://unicourt.com/case/ny-sue1-kailin-wang-v-rory-m-will-138119?init_S=csup_ltst

John Wang sent on behalf of Kailin Wang, who dictated the message  (+1 801 709-0209); (+1 801-787-9755) (+1 801 361-8742)

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

---

**John Wang** <yunlong88cong@gmail.com>                                              Wed, Apr 15, 2026 at 3:13 PM
To: "Blanch, Joey (USAUT)" <Joey.Blanch2@usdoj.gov>
Cc: Richard Sorenson - FDO <richard_sorenson@fd.org>, Conrad Kaufman <conrad_kaufman@utp.uscourts.gov>

Conrad,

If new material is inserted into the PSR that was not included in the final draft disclosed around the end of February 2026, and we submitted objections on April 10, 2026, that means the defendant did not have an opportunity to object to those additions if any. Therefore, if any new information is added to the revised PSR, we assume we will be given an opportunity to object.

Please clarify.

Thank you,

John Wang sent on behalf of Kailin Wang, who dictated the message  (+1 801 709-0209); (+1 801-787-9755) (+1 801 361-8742)

---

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

---

**Conrad Kaufman** <Conrad_Kaufman@utp.uscourts.gov>                                 Wed, Apr 15, 2026 at 3:33 PM
To: John Wang <yunlong88cong@gmail.com>, "Blanch, Joey (USAUT)" <Joey.Blanch2@usdoj.gov>
Cc: Richard Sorenson - FDO <Richard_Sorenson@fd.org>

I do not intend to add any new material.

Conrad

---

**From:** John Wang <yunlong88cong@gmail.com>
**Sent:** Wednesday, April 15, 2026 3:14 PM
**To:** Blanch, Joey (USAUT) <Joey.Blanch2@usdoj.gov>
**Cc:** Richard Sorenson - FDO <Richard_Sorenson@fd.org>; Conrad Kaufman <Conrad_Kaufman@utp.uscourts.gov>
**Subject:** Re: [EXTERNAL] Re: Sentencing Discovery

**CAUTION - EXTERNAL:**

[Quoted text hidden]

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

---

**Blanch, Joey (USAUT)** <Joey.Blanch2@usdoj.gov>                               Wed, Apr 15, 2026 at 3:33 PM
To: John Wang <yunlong88cong@gmail.com>
Cc: Richard Sorenson - FDO <richard_sorenson@fd.org>, Conrad Kaufman <conrad_kaufman@utp.uscourts.gov>

I've been informed the report was authored by Victim 1's counsel.  That is as specific as I have.

Joey L. Blanch | Assistant U.S. Attorney

111 S. Main St. Suite 1800 | Salt Lake City, UT 84111

(801) 524-5682 | joey.blanch2@usdoj.gov

[Quoted text hidden]

---

**John Wang** <yunlong88cong@gmail.com>                               Thu, Apr 16, 2026 at 12:45 AM
To: Conrad Kaufman <Conrad_Kaufman@utp.uscourts.gov>
Cc: "Blanch, Joey (USAUT)" <Joey.Blanch2@usdoj.gov>, Richard Sorenson - FDO <Richard_Sorenson@fd.org>

Conrad,

Thank you for your response.

We understand you do not intend to add any new material. Nevertheless, we respectfully request that **paragraph 36** of the PSR be revised to reflect the record more accurately, including the government's recent filing:

> " in its April 13, 2026 response to the defendant's request for issuance of a subpoena to Cloudflare (ECF No. 151), the government expressly acknowledges that Cloudflare "was unable to provide IP tie-back information that would reliably attribute the 'Kill Baby K' post to any particular person or internet account" and that the information Ms. Wang seeks from Cloudflare "is not disputed."

Given that this language is drawn directly from the government's own filing and clarifies the evidentiary basis for paragraph 36, we believe it is appropriate for inclusion in the PSR. If you prefer, we can also submit this in the form of a written objection or proposed PSR addendum.

Please let us know how you would like us to proceed.

Thank you,

 Gmail

**John Wang <yunlong88cong@gmail.com>**

---

## Dr. Meloy's resume

---

**Blanch, Joey (USAUT)** <Joey.Blanch2@usdoj.gov>                    Wed, Apr 15, 2026 at 3:32 PM
To: "yunlong88cong@gmail.com" <yunlong88cong@gmail.com>, Richard Sorenson - FDO <richard_sorenson@fd.org>

> Attached, please find the CV for Dr. Meloy.

**Joey L. Blanch | Assistant U.S. Attorney**

111 S. Main St. Suite 1800 | Salt Lake City, UT 84111

(801) 524-5682 | joey.blanch2@usdoj.gov

---

 **Resume Dr Meloy Apr 2026.pdf**
373K

 Gmail

**John Wang <yunlong88cong@gmail.com>**

## translations of jail calls

**Blanch, Joey (USAUT)** <Joey.Blanch2@usdoj.gov>                                     Wed, Apr 15, 2026 at 5:44 PM
To: "yunlong88cong@gmail.com" <yunlong88cong@gmail.com>, Richard Sorenson - FDO <richard_sorenson@fd.org>


Attached please find a draft translation of Ms Wang's recorded jail calls.


Joey L. Blanch | Assistant U.S. Attorney

111 S. Main St. Suite 1800 | Salt Lake City, UT 84111

(801) 524-5682 | joey.blanch2@usdoj.gov


**Translations_Redacted.pdf**
3608K