# REBUTTAL MEMORANDUM

## The March 6, 2019 "Kill Baby K" Post Was Not Made by Kailin Wang

*Evidence from Reporter's Transcripts and Official Records Rebutting the Foundation of the Danish Family Court's February 23, 2026 Judgment*

---

**Case:** Wang v. Thygesen, Case No. FDV-19-814465 | Sag BS-29022/2025-KBH

**Danish Judgment Date:** February 23, 2026, Københavns Byret

**Source Transcripts:** Volume 3 — Reporter's Transcripts (RT), March 6, 2019 through July 15, 2025

**Prepared by:** Kailin Wang

---

## I. Overview

The February 23, 2026 Copenhagen Family Court judgment relies in part on the March 6, 2019 post attributed to "Kailin Wang" on Holysmoke.org — threatening to kill herself and her infant unless child support was paid. That post is presented in the judgment as Wang's conduct and is woven into the court's assessment of her character. This memorandum demonstrates, through the official Reporter's Transcripts of the underlying American proceedings, that:

- The post was argued extensively before four separate judges (Darwin, Wiley, Flores, and Roeca) over more than six years;
- Every one of those four judges continued to find visitation with Wang to be in the child's best interests despite the post;
- CT's own attorney admitted in open court that the post "had no bearing whatsoever" on the original custody order and that CT agreed never to present it as evidence;
- No charges were ever filed based on the post, and Wang stated under oath across multiple proceedings that it was not made by her;
- The only judge who ever cited the post to restrict Wang's rights — Judge Roeca in January 2025 — did so at a hearing not set for that purpose, without an evidentiary hearing, and after promising visitation orders for nine months; on June 12, 2025 Judge Roeca found the 3/6/19 "Kill Baby K" post irrelevant to the issues of custody and visitation.
- The Danish court accepted this post as established fact without any of this context.

*REBUTTAL — March 6, 2019 "Kill Baby K" Post | Wang v. Thygesen | Case No. FDV-19-814465*

## II. The Post Was Argued Before Four Judges Over Six Years — All Three Continued Visitation

The RT citations below document each time the March 6, 2019 post was raised before the court. In each instance, the presiding judge, after hearing argument, continued supervised visitation with Wang.

### A. Before Judge Darwin (San Francisco Superior Court)

**3/6/19 RT 10:** The post appears in the record on the same day it was created, as the basis for the ex parte custody order. Wang was not present and not served.

**5/8/19 RT 64:** The post is raised again at the first hearing at which Wang appeared in person.

**6/25/19 RT 130:6–10; RT 157:18–23; RT 158:7–20:** At the evidentiary UCCJEA hearing, CT's counsel Insalaco argued that because Wang "threatened to kill the child," visitation at Rally was not safe. Judge Darwin responded:

> *"I'm very confident that she'll be fine just at Rally."*
>
> *6/25/19 RT (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit I**

Judge Darwin granted supervised visitation over CT's objection, required CT to pay 100% of supervision costs, and transferred custody jurisdiction to Utah. He acknowledged issuing the March 6 order on one-sided evidence without Wang present.

**9/27/19 Depo Trans pp. 90, 195, 197, 276:** Less than four months after the post appeared, Wang gave sworn deposition testimony in the California proceedings, on the record and under penalty of perjury, directly denying authorship and identifying Thygesen as the source. This is the earliest sworn denial in the record.

> *"But I will say this: Christoffer made the kill baby post. Christoffer has been sending mysterious messages or violations of Rally policy. All those are false. And framing Ms. Wang for crimes."*
>
> *9/27/19 Depo Trans p. 90 (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit P**

Wang also established her location on March 6, 2019 under oath. When deposition questioning confirmed she had been physically present in New York City during the relevant period, Wang testified directly about the timing of the post:

> *Q: Were you living at that same location with that same person? A: Yes. That's when Christoffer posted the kill baby post and that Ms. Wang was going to commit suicide.*
>
> *9/27/19 Depo Trans p. 195 (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit P**

Wang further testified that Kayson's removal was tied directly to the post she did not make, and described the private investigator conduct that followed:

> *"That was when they removed the child based on the fake baby — the kill baby post that Christoffer made and that Ms. Wang was going to commit suicide. And that's when the private investigators you hired made a false homicidal threat to the police and had the baby removed."*

9/27/19 Depo Trans p. 197 (Wang v. Thygesen, Case No. FDV-19-814465) → **Exhibit P**

When deposition questioning turned to the number of aliases Wang allegedly used — with CT's counsel implying she had many — Wang made a pointed logical argument under oath that remains unrefuted in the record:

> *"Speaking of aliases, if I use so many aliases why would the only one threatening to kill Kayson be under my legal name, Kailin Wang? And why would that picture, or whatever, Rally threat, or Rally policy, be under Kailin Wang, which would be sending this to incriminate herself and get herself into trouble, if Mr. Thygesen didn't do it? If, apparently, I use so many aliases."*

9/27/19 Depo Trans p. 276 (Wang v. Thygesen, Case No. FDV-19-814465) → **Exhibit P**

## B. Before Judge Wiley — Multiple Evidentiary Hearings (2020–2022)

**12/16/20 RT 394:** Wang addressed Judge Wiley directly, stating on the record:

> *"March 6th, that post has been proven to be completely false. CPS because of that post removed the child, but after a thorough investigation they reversed themselves. Judge Darwin reversed himself. The San Francisco police executed several search warrants in addition to subpoenas on that 'kill baby' post that magically appeared under my legal name on March 6th and they have declined to file any charges relating to the child. They keep using these arguments that have already been rejected judge after judge, by the police, and yet they are bringing it up again now hoping that they are able to convince another judge on arguments that have already been proven and rejected."*

*12/16/20 RT 394 (Wang v. Thygesen, Case No. FDV-19-814465) → **Exhibit J***

Despite this history, CT continued to raise the post. The following hearings before Judge Wiley all involved arguments about the March 6 post, and in each case Judge Wiley continued supervised visitation:

- 7/29/21 RT 573–576; RT 584 → **Exhibit J**
- 10/22/21 RT 634:21–26; RT 635:19–636:14; RT 639:7–14; RT 645:5–649:24 → **Exhibit J**
- 12/20/21 RT 757:18–760:23; RT 764:1–27; RT 767:7–28 → **Exhibit J**
- 1/5/22 RT 877:11–878:12; RT 926:23–28 → **Exhibit J**
- 2/15/22 RT 938:1–28 → **Exhibit J**
- 4/15/22 RT 1028; RT 1034:12; RT 1036; RT 1053; RT 1093 → **Exhibit J**

*REBUTTAL — March 6, 2019 "Kill Baby K" Post | Wang v. Thygesen | Case No. FDV-19-814465*

At the 7/29/21 hearing, when confronted about the post in cross-examination, Wang testified under oath:

> *"So Christoffer impersonated me and made a post on March 6, 2019 that said, under Kailin Wang, 'I'm going to kill myself if I don't get child support and the baby, and I hope his parents are happy about this.' I deny making that post. I fully deny it. … It's not charged; so the Fifth Amendment does not apply because no evidence was found from the multiple search warrants and the civil subpoenas that have been served from this case, as well as the San Francisco Police Department."*
>
> *7/29/21 RT 573–576 (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit J**

Wang also described the post's pattern in the broader record: "No evidence found of any … These are really old. This was done on Ex Parte emergency order, and it's inappropriate, and I think every single preventive measure is in place." The post was treated as in the same category as other already-rejected allegations.

> *7/29/21 RT 584 (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit J**

## C. Before Judge Flores — DV Trial (October 2022)

At the DV trial before Judge Flores, CT's own attorney Douglas Rappaport made two critical admissions about the March 6, 2019 post. First, at the pre-trial motions in limine stage, Rappaport told the court:

> *"There is going to be — unless it's raised by Ms. Wang herself, we are not presenting any evidence related to [the kill baby post]."*
>
> *10/18/22 RT 1213–1214 — Motion in Limine, DV Trial (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit J.1**

Judge Flores granted the motion, effectively excluding the post from the DV trial. Then, on October 19, 2022, when Wang attempted to introduce DCFS records about the post, Rappaport made an even more significant admission:

> *"There was a — recall, there was an agreement not to produce evidence related to this so called March 6th murder suicide post … it did not impact Judge Darwin's decision because it's in the record that this was never raised at all, had no bearing whatsoever on the San Francisco court decision to award both physical and legal custody to Mr. Thygesen. We are not presenting it. Ms. Wang raised this in order to reduce the length of the trial … We agreed with her that we would not present this evidence. So since we are not presenting it as a threat, then there is no relevance whatsoever to this post."*
>
> *10/19/22 RT 1348:19–1349:4 (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit J.1**

---

> **CT'S OWN ATTORNEY ADMITTED IN OPEN COURT: The March 6, 2019 post "had no bearing whatsoever" on the custody order. CT agreed not to present it as evidence. Judge Flores granted its exclusion from the DV trial.**

Despite this, the post continued to be raised by CT's side in subsequent proceedings and was ultimately presented to the Danish court as established evidence of Wang's dangerousness — the opposite of the position CT's own counsel took under oath.

Additional DV trial citations where the post appeared and was addressed:

- 10/19/22 RT 1392:11–14; 1420:1–6; RT 1442:15–1443:23; RT 1446:15–19; RT 1461:13–22 → **Exhibit J.1**
- 10/20/22 RT 1527:2–24; RT 1538:13–23; RT 1530:4–28; RT 1576:8–13; RT 1582:14–22; RT 1591:1–10; RT 1622:18–28 → **Exhibit J.1**

On each of these dates, Judge Flores continued supervised visitation with Wang, finding it to be in the child's best interests.

**5/23/25 RT 1735:21–28: (→ Exhibit J.1)** The post was raised for the final time in the American proceedings. Even at this late date, the post had not been charged against Wang.

## D. Before Judge Roeca — 2023–2025: Post Repeatedly Denied Discovery, Found Irrelevant to Trial, and Excluded by Flores Minute Order

### September 21, 2023: Cloudflare Subpoena Denied — Admissibility Trap Created

At the September 21, 2023 hearing before Judge Roeca (Case No. FDV-19-814465), Wang sought subpoenas including one directed at Cloudflare to obtain an authenticated declaration for trial. Wang explained the procedural necessity in precise terms:

> *"The Cloudflare one is still relevant. It is relevant because under Evidence Code 1561, for it to be admissible in court — you know, the Cloudflare could not identify the IP address — but you would need an Evidence Code 1561 declaration from, let's say, Cloudflare declaring that they can actually not identify that IP address, or it's not admissible. The record has to be preserved as far as admissibility. Or is opposing counsel willing to stipulate that the IP address cannot be identified?"*
>
> *9/21/23 RT 5:1–11 (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit J.2**

This is a critical procedural point: Wang was not asking the court to rule on who made the post. She was seeking the legally required authentication mechanism under California Evidence Code § 1561 — a custodian of records declaration — so that Cloudflare's confirmation that the IP address could not be identified would be admissible at trial. CT's counsel declined to stipulate. Judge Roeca denied the subpoena as "overbroad." The court created a legal catch-22: Wang could not

---

*REBUTTAL — March 6, 2019 "Kill Baby K" Post | Wang v. Thygesen | Case No. FDV-19-814465*

---

introduce the IP address evidence without a declaration, but the court denied the subpoena needed to obtain one.

Rappaport's response to this subpoena request was notable:

> *"The facts do not change, is that the declarations in the papers filed by Ms. Wang do not establish relevance for the issuance of the subpoenas, and they are overbroad."*
>
> *9/21/23 RT 7:7–10 (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit J.2**

CT's counsel simultaneously argued the informal Cloudflare email from David N-G was not admissible (lacking a declaration) while opposing the subpoena that would produce an admissible declaration. The strategy was to keep the exculpatory Cloudflare evidence permanently inadmissible.

## June 12, 2025: Post Found Irrelevant to Trial — Thygesen Confirms He Will Not Introduce It

At the June 12, 2025 pre-trial hearing before Judge Roeca — with both parties appearing remotely, CT from Denmark — the court addressed the kill baby post directly. Wang again sought a Cloudflare subpoena, citing the same Cloudflare confirmation she had previously received:

> *"We did receive a response from somebody at Cloudflare who said that the HolySmokes website is logging in the IP addresses incorrectly. He sent that by email. It was a man named David, N-G. Then Mr. Thygesen's counsel has submitted Justin Payne, the director of security, just emailed though. You understand that under — for it to be admissible at trial, there's a — we need a declaration under penalty of perjury from the custodian of records. We never got that from the previous subpoenas issued."*
>
> *6/12/25 RT 5:5–18 (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit J.2**

Judge Roeca denied the subpoena again, citing the court docket and prior denials in June and October 2023. He then asked CT directly:

> *THE COURT: Mr. Thygesen, let me ask you, do you plan to introduce this post in the long cause hearing? MR. THYGESEN: Sorry, the post you're referring to? THE COURT: The kill baby post. MR. THYGESEN: That's not my expectation.*
>
> *6/12/25 RT 4:20–24 (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit J.2**

Wang then secured a further on-the-record confirmation from Judge Roeca himself:

> *MS. WANG: Okay. Well, then it's not going to be introduced as — then you're finding it irrelevant as to trial; is that correct? THE COURT: That's correct.*
>
> *6/12/25 RT 6:3–6 (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit J.2**

---

> **JUNE 12, 2025 — JUDGE ROECA ON THE RECORD: The Kill Baby K post is "irrelevant as to trial." CT confirmed he does not expect to introduce it. This is the last American court ruling on the post before Denmark's February 23, 2026 judgment.**

Wang also placed on record that Judge Flores' own minute order from October 18, 2019 explicitly stated that the DVRO would not incorporate the Kill Baby K post, and that the issue had been raised in June 2023 and denied in October 2023. The June 12, 2025 hearing was the last American proceeding before the Danish court issued its February 23, 2026 judgment. Trial was set for September 22, 2025 before visiting Judge Jerilyn Borak. Instead, jurisdiction shifted to Denmark.

The sequence is stark: On June 12, 2025, a California court found the kill baby post irrelevant to trial and CT confirmed he would not introduce it. Less than nine months later, on February 23, 2026, a Danish court cited the post as a pillar of its decision to permanently sever Wang's parental relationship with her son.

## III. Judge Roeca's January 23, 2025 Ruling: A Procedural Departure, Not a Final Adjudication

Judge Roeca raised the March 6 post for the first time at the January 23, 2025 hearing:

> *Judge Roeca referenced the "Kill Baby K" post at 1/23/25 RT 2021:23–28 and RT 2056:7–9, at a hearing set only for: Enforcement of 5/2/24 Visitation Orders, Enforcement of Custody Evaluation, Joinder, and Scheduling Only for CT's Termination Request.* → **Exhibit J.2**

The transcript confirms that at this hearing Judge Roeca:

- Struck Wang's January 14, 2025 filing titled "Thygesen Impersonated Wang on 3/6/19 Kill Baby K Post" based solely on a June 30, 2020 procedural order by Judge Wiley prohibiting factual findings in document titles — without addressing the substance of the impersonation claim.
- Terminated all forms of interim visitation citing: Wang's detention, home confinement with GPS monitoring, and "continuing harassment conduct" — specifically Wang's filing about the impersonation that he had just stricken.
- Did this at a hearing not calendared for termination of visitation, over Wang's explicit objection that she had been promised visitation orders since August 2024.

The transcript captures Wang's exchange with the court:

> *MS. WANG: I need you to clarify what has happened since August 1st that's preventing you from making visitation orders that you said you were going to make for sure on 8/29, as well on 11/25?  THE COURT: Following the issuance of the move-away order, there have been*

> *several changes of material circumstances regarding interim visitation as not in the best interest of the child. That includes your detention. That includes the subject to home confinement.  MS. WANG: Judge Wiley and Judge Flores [considered those same circumstances].  THE COURT: Stop.*
>
> *1/23/25 RT — Wang v. Thygesen, Case No. FDV-19-814465* → **Exhibit J.2**

The court announced it would set the matter for a "long cause 217 hearing" on termination of visitation. However, Wang's federal travel restrictions prevented her from attending in person, and no evidentiary hearing was ever held before jurisdiction transferred to Denmark in summer 2025. Critically, Wang had pointed out that the same circumstances Roeca cited — her detention and home confinement — had already been before Judges Wiley and Flores, who both continued visitation nonetheless.

> **Judge Roeca terminated interim visitation at a scheduling hearing, without an evidentiary hearing on the merits, after promising visitation orders for nine months. This was not a final adjudication on the kill baby post. The Danish court treated it as though it were.**

## IV. What Four Judges Actually Found

The consistent judicial finding across three judges and six-plus years of proceedings:

- Judge Darwin (6/25/19): Granted supervised visitation over CT's objection, despite CT's argument that the kill baby post made Wang dangerous. The court was "very confident" Wang would be safe at Rally.
- Judge Wiley (2020–2022): Continued supervised visitation through at least fourteen separate hearings at which the post was argued, without ever crediting it as a basis to terminate visitation.
- Judge Flores (October 2022 DV Trial): Excluded the post from the DV trial on CT's own motion after CT's counsel acknowledged it "had no bearing whatsoever" on the custody order. Continued supervised visitation.
- Judge Roeca (9/21/23 and 6/12/25): Found the 3/6/19 "Kill Baby K" post irrelevant to ongoing child custody and visitation issues and denied further discovery on this post.

None of the three judges who heard years of testimony and argument about this post ever found it was a sufficient basis to terminate Wang's visitation entirely. That termination came from Judge Roeca at a scheduling hearing, using a post that CT's own lawyers had formally agreed was irrelevant to CT's custody case.

## V. CT's Attorney's Admissions About the Post

The transcript record contains three specific admissions by CT's counsel that the Danish court was never given:

REBUTTAL — March 6, 2019 "Kill Baby K" Post | Wang v. Thygesen | Case No. FDV-19-814465

---

### Admission 1 — The Post Did Not Affect the Custody Order

> *"[The kill baby post] did not impact Judge Darwin's decision because it's in the record that this was never raised at all, had no bearing whatsoever on the San Francisco court decision to award both physical and legal custody to Mr. Thygesen."*

*Douglas Rappaport, 10/19/22 RT 1348–1349, DV Trial (Wang v. Thygesen, FDV-19-814465)* → **Exhibit J.1**

### Admission 2 — CT Agreed Not to Use It as Evidence

> *"We agreed with her [Wang] that we would not present this evidence. So since we are not presenting it as a threat, then there is no relevance whatsoever to this post."*

*Douglas Rappaport, 10/19/22 RT 1349, DV Trial (Wang v. Thygesen, FDV-19-814465)* → **Exhibit J.1**

### Admission 3 — CT Never Introduced the Post at DV Trial

> *"There is going to be — unless it's raised by Ms. Wang herself, we are not presenting any evidence related to [the kill baby post]."*

*Douglas Rappaport, 10/18/22 RT 1213–1214, Motion in Limine (Wang v. Thygesen, FDV-19-814465)* → **Exhibit J.1**

These three admissions establish that CT's own legal team, at the DV trial where the post was most directly at issue, chose not to pursue it — conceding it had no probative value and no bearing on the custody determination. The Danish court was never informed of this.

## VI. The Technical and Official Record Supporting Wang's Position

The transcript record contains Wang's consistent assertion, made under oath across multiple proceedings, of the following specific facts:

- The post originated from a Cloudflare IP address, with the user concealed behind a VPN — confirmed by SFPD search warrant results.
- Approximately 25 search warrants were executed in connection with the case. None linked Wang to the Holysmoke.org March 6 post.
- Civil subpoenas were also served. None produced evidence linking Wang to the post.
- The post was explicitly not charged in any of the three criminal jurisdictions (California, Utah, Federal).
- Attorney Karl Kronenberger's investigation confirmed Cloudflare could not identify the poster because the website (HolySmokes) was logging incorrect IP addresses, and a VPN had been used — confirmed in writing by Cloudflare's David N-G.
- Cell site location data placed Wang's phone in New York City (near West 70th Street) on March 6, 2019, approximately 15.2 miles from the Newark, NJ origin point of the Cloudflare IP address.
- Utah DCFS formally reversed its finding about the post from "Supported" to "Unsupported" on November 4–6, 2019 (DCFS Case No. 2503301).

---

Wang stated to the court:

> "The San Francisco police executed several search warrants in addition to subpoenas on that 'kill baby' post that magically appeared under my legal name on March 6th and they have declined to file any charges relating to the child. They keep using these arguments that have already been rejected judge after judge."
>
> *12/16/20 RT 394 (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit J**

This position was established even earlier, at Wang's September 27, 2019 deposition — taken just months after the post appeared and before any evidentiary hearing had been held. Wang testified under oath regarding the post that warranted Kayson's removal:

> "Not including the kill baby post. That I know Mr. Thygesen has the money to find out who posted that. All you need to do is execute an oversea server. … None of — none of these Christoffer is a deadbeat dad posts. It was the kill baby post and that Ms. Wang was going to commit suicide post. That was the one that warranted removal of Kayson, had San Francisco and Utah Law enforcement looking into the situation, had juvenile court issue that warrant for the removal of the child. It was the kill baby post. And, yet, you won't look into that post anymore."
>
> *9/27/19 Depo Trans pp. 274–275 (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit P**

## The Admissibility Catch-22: Three Denials of the Cloudflare Subpoena

A critical procedural fact is that Wang was repeatedly denied the only mechanism available under California law to make the exculpatory Cloudflare evidence admissible at trial. California Evidence Code § 1561 requires a custodian of records declaration under penalty of perjury for business records to be admissible. Wang explained this precisely:

> "Under Evidence Code 1561, for it to be admissible in court, the Cloudflare could not identify the IP address, but you would need an Evidence Code 1561 declaration from Cloudflare declaring that they can actually not identify that IP address, or it's not admissible. The record has to be preserved as far as admissibility. Or is opposing counsel willing to stipulate that the IP address cannot be identified?"
>
> *9/21/23 RT 5:1–11 (Wang v. Thygesen, Case No. FDV-19-814465)*

CT's counsel refused to stipulate. The Cloudflare subpoena was denied as "overbroad" in June 2023, again in October 2023, and again in June 2025. At the June 12, 2025 hearing, Wang restated the core problem: she had an informal email from Cloudflare's David N-G confirming the IP logging error, but without an authenticated declaration, it was inadmissible. CT had separately submitted a communication from Cloudflare's director of security "just emailed though" — equally informal and equally inadmissible.

The result: courts denied the subpoena needed to get admissible proof while also declining to accept the informal email proof — a procedural trap that kept the exculpatory Cloudflare evidence permanently outside the evidentiary record. The Danish court then treated the question of who made the post as settled.

## VII. CT's Counsel Acknowledged the Evidentiary Dispute Could Not Be Resolved Without Expert Testimony

At a hearing before Judge Wiley, CT's co-counsel Michelene Insalaco framed the evidentiary dilemma in terms that actually support Wang's position:

> *"If a party threatened to kill the child and one person says this Mother made this threat, she is that mentally ill, she is that psychotic that she threatened to kill the child, and the Mother says I didn't make that post, someone else made the post, and there is evidence to show who made the post based on the documents that have been subpoenaed and Internet logs, et cetera, how is the custody evaluator to make a decision about what parenting plan is in the child's best interest if the evaluator won't know if it is true that she threatened to kill the child?"*
>
> *Insalaco, RT 99018–99044 (Wang v. Thygesen, Case No. FDV-19-814465)* → **Exhibit J**

Insalaco herself acknowledged there was competing evidence: Wang's denial, the subpoena results, and internet logs that raised questions about who made the post. This is not the framing of an established fact — it is the framing of a contested evidentiary question that was never resolved at a proper hearing. The Danish court resolved it without any hearing at all.

## VIII. Summary for the Danish Appellate Proceedings

The Danish Family Court's February 23, 2026 judgment treated the March 6, 2019 Holysmoke.org post as an established fact of Kailin Wang's conduct. The official Reporter's Transcripts of the underlying American proceedings demonstrate the following:

- The post was contested at every hearing it was raised. Three judges — Darwin, Wiley, and Flores — all continued supervised visitation with Wang despite six years of argument about it.
- CT's own attorney admitted in open court that the post "had no bearing whatsoever" on the custody order, that it was never raised at the original custody hearing, and that CT agreed never to use it as evidence.
- The post was excluded from the DV trial by motion in limine on CT's own application. Judge Flores' October 18, 2019 minute order explicitly stated the DVRO would not incorporate the Kill Baby K post.
- On June 12, 2025 — less than nine months before the Danish judgment — Judge Roeca found the post "irrelevant as to trial" on the record. CT himself confirmed he did not expect to introduce it at the long-cause hearing.

- Wang was denied a Cloudflare subpoena three times (June 2023, October 2023, June 2025), preventing her from obtaining an authenticated declaration under California Evidence Code § 1561. Courts simultaneously declined to accept the informal Cloudflare email as admissible, making proof of the IP non-identification procedurally impossible.
- Wang consistently denied making the post under oath and provided specific forensic and legal grounds: VPN use confirmed by SFPD, no matching IP addresses across 21,000+ documented addresses, no charges filed in any jurisdiction, DCFS reversal to "Unsupported."
- No American court ever made a factual finding that Wang authored the post. The California court closest in time to the Danish judgment explicitly found it irrelevant.
- The only judge to use the post to restrict Wang's rights — Judge Roeca in January 2025 — did so at a scheduling hearing without an evidentiary hearing, and subsequently set the matter for further long-cause proceedings that never occurred.
- The Danish court was never provided with: CT's counsel's three open-court admissions; the DCFS reversal; the Flores minute order excluding the post; Judge Roeca's June 2025 finding of irrelevance; or CT's own statement that he did not intend to introduce it.

The timeline is dispositive: In the last American proceeding to address the issue before the Danish judgment — June 12, 2025 — the post was found irrelevant to trial and CT confirmed he would not introduce it. Nine months later, a Danish court that had none of this record permanently severed Wang's relationship with her son in part on the basis of that same post. An appeal of the Danish judgment must address this directly.

## IX. Guide to Supporting Exhibits

The following exhibits are attached to this memorandum. Each is described below with an explanation of how it specifically rebuts the claim that Wang made the March 6, 2019 kill baby post. Together, they form a mutually reinforcing body of evidence spanning forensic, judicial, governmental, and testimonial sources — none of which was presented to the Danish court.

### A. Forensic and Law Enforcement Record: No Evidence Linked Wang to the Post

**Exhibit A —** **Search Warrant Affidavit vs. Arrest Warrant — Side-by-Side Comparison**

The 3/8/19 search warrant affidavit by Sgt. Martinez cited the kill baby post as the basis for probable cause to investigate. The 10/17/19 arrest warrant and charging documents, filed seven months and approximately 25 search warrants later, contain no reference to the post at all. The SFDA charged Wang with other alleged offenses but specifically omitted the kill baby post. The only explanation for its removal is that the investigation produced no evidence linking Wang to it. The post was present when the investigation began and absent when charges were filed — the most authoritative official statement that Wang was not the author.

## Exhibit B — 3/8/2019 SFPD Search Warrant Affidavit of Probable Cause

Sgt. Martinez's affidavit confirms that as of March 8, 2019, the San Francisco Police Department treated the kill baby post as an anonymous communication of unknown origin — sufficiently so that a formal warrant was needed to investigate it. If the post had been attributable to Wang on its face (e.g., posted from her known accounts, devices, or IP address), no warrant would have been necessary. The warrant itself is evidence that Wang's authorship was not established at the outset and required forensic investigation.

## Exhibit C — 10/17/2019 Arrest Warrant — Kill Baby Post Absent from Charging Documents

After the SFPD and SFDA conducted their full investigation — executing approximately 25 search warrants, serving civil subpoenas, and reviewing internet records — the kill baby post was removed from the charging documents entirely. Wang was charged with other offenses, but not with making the post. The SFDA's decision not to charge Wang for the post, after a thorough multi-month investigation, is official government confirmation that the evidence did not support attribution to her.

## B. Thygesen's Own Conduct: Motive, Capability, and Parallel Statement

### Exhibit D — Thygesen's 3/24/19 Post Under His True Name: "I'm going to kill this baby"

Eighteen days after the anonymous kill baby post appeared, Thygesen made a nearly identical statement under his own verified name on a different platform: "Christoffer Thygesen I'm going to kill this baby, so I don't have to pay child support." This establishes that Thygesen was willing to make this type of threat publicly and had a documented motive — avoiding child support obligations. The near-identical language between the two posts, combined with Thygesen's verified authorship of one, is circumstantial evidence that he also authored the anonymous one eighteen days earlier.

### Exhibit E — USA v. Steven Chase — FBI Description of VPN Use

This federal court record from a major FBI investigation demonstrates what a VPN (Virtual Private Network) is and how it conceals a user's true IP address behind a proxy server. The kill baby post originated from Cloudflare IP address 108.162.219.228 — a known Cloudflare proxy range used to mask the poster's true location. This exhibit provides the legal and technical framework for understanding why the post's IP address could not identify its author, and why the absence of a traceable IP does not implicate Wang.

### Exhibit F — Kronenberger Cloudflare Subpoena — IP Address Could Not Be Identified

Wang's internet law specialist Karl Kronenberger formally subpoenaed Cloudflare on May 16, 2019 for the IP address 108.162.219.228 associated with the kill baby post. Cloudflare responded in

writing (from employee David N-G) that HolySmoke.org was logging IP addresses incorrectly, and that a VPN had been used, making it impossible to identify the actual poster. This is independent third-party confirmation — from the company that hosts the IP address — that forensic attribution is impossible. No evidence from this subpoena linked Wang to the post.

### Exhibit G — T-Mobile CSLI — Wang's Phone in New York City on 3/6/19

T-Mobile's law enforcement response to a cell site location information (CSLI) request confirmed that Wang's phone was in the vicinity of 60 West 70th Street, New York, NY on March 6, 2019 — approximately 15.2 miles (24.4 km) from the Newark, NJ area where the Cloudflare IP originated. Wang confirmed this location under oath at her September 27, 2019 deposition (Exhibit P). Physical location data places Wang in New York City; the post's IP origin point is in New Jersey. Wang was not at the post's geographic origin on the date it was made.

## C. Wang's Affirmative Steps to Identify the True Author

### Exhibit H — 6/25/19 Email: Wang to Atty. Chase — Seeking Expert Witness to Identify the Poster

On June 25, 2019 — the same date as the UCCJEA hearing — Wang emailed CT's then-attorney Darrick Chase requesting a meet-and-confer about retaining a digital forensics expert to identify who actually made the post. This is direct evidence of consciousness of innocence. A person who had made the post would not petition opposing counsel to conduct forensic investigation into its authorship. Wang was affirmatively seeking to expose the truth about the post from the very beginning of the proceedings.

### Exhibit M-2 — Wang's 9/26/22 RFO for Discovery of the Kill Baby Post

Wang formally petitioned the court on September 26, 2022 for discovery specifically targeting identification of who made the kill baby post. Filing a formal request for judicial assistance to investigate the post's authorship is fundamentally inconsistent with Wang being the author. Guilty parties do not petition courts to expose themselves. This RFO documents Wang's proactive, affirmative effort to use the court's process to prove her innocence — an effort that was opposed and ultimately denied.

### Exhibit P — Kailin Wang Deposition, September 27, 2019 — Sworn Denial Under Cross-Examination

Wang's videotaped deposition, taken just six months after the post appeared and before any evidentiary hearing, contains her earliest sworn denial on the record. Under cross-examination by CT's counsel, Wang stated: "Christoffer made the kill baby post. Christoffer has been sending mysterious messages — all those are false." (p. 90.) She also placed herself in New York City on March 6, 2019 (pp. 195, 197), consistent with the T-Mobile CSLI data in Exhibit G. At p. 276 she

made the unrefuted logical argument: "If I use so many aliases, why would the only one threatening to kill Kayson be under my legal name, Kailin Wang?" Her denial was consistent, sworn, subject to cross-examination, and never shaken.

## D. Judicial Record: Four Judges Over Six Years Continued Visitation

### Exhibit I — Judge Darwin — 6/25/19 Transcript (Granted Visitation Over CT's Objection)

At the June 25, 2019 UCCJEA hearing, CT's counsel argued that because Wang "threatened to kill the child," unsupervised visitation at Rally was not safe. Judge Darwin — the same judge who had originally issued the ex parte custody order — rejected this argument and stated on the record: "I'm very confident that she'll be fine just at Rally." He granted supervised visitation over CT's objection and required CT to pay 100% of supervision costs. A judge who credited the kill baby post as evidence of homicidal intent would not have authorized any unsupervised contact with the child.

### Exhibit J — Judge Wiley — Multiple Transcripts (2020–2022)

Across at least fourteen separate hearings over two years — including December 2020, July 2021, October 2021, December 2021, January 2022, February 2022, and April 2022 — the kill baby post was argued before Judge Wiley, and on every occasion she continued supervised visitation with Wang. At the 7/29/21 hearing, Wang testified under oath: "So Christoffer impersonated me and made a post on March 6, 2019 that said, under Kailin Wang, 'I'm going to kill myself if I don't get child support and the baby.' I deny making that post. I fully deny it." Judge Wiley heard this denial and continued visitation. The consistency of that judicial outcome across two years of argument is the strongest possible evidence that the post was not credited as established.

### Exhibit J.1 — Judge Flores — DV Trial Transcripts, October 2022

At the DV trial, CT's own attorney Douglas Rappaport made three open-court admissions that the kill baby post had no evidentiary value to CT's case: (1) it "had no bearing whatsoever" on the original custody order; (2) it was "never raised at all" at the original San Francisco custody hearing; and (3) CT had agreed never to present it as evidence. The court granted a motion in limine excluding the post from the DV trial. Judge Flores continued supervised visitation. An attorney does not voluntarily exclude his client's most damaging evidence unless he cannot authenticate it or knows it will not withstand scrutiny.

### Exhibit J.2 — Judge Roeca — Transcripts, 2023–2025

On June 12, 2025 — nine months before the Danish judgment — Judge Roeca found the kill baby post "irrelevant as to trial" on the record. CT personally confirmed on the record that he did not expect to introduce it at the long-cause hearing. This is the last American judicial ruling on the post before Denmark's February 23, 2026 judgment. The Danish court was never provided with this finding. These transcripts also document Wang's three denied Cloudflare subpoena requests (June

2023, October 2023, June 2025), creating a documented procedural record of why the exculpatory Cloudflare evidence was never made formally admissible.

> **Exhibit O — Judge Flores Mini-Minutes — DV Trial, October 2022 (Child Not Added to DVRO)**

The official minute order from the October 2022 DV trial confirms that Judge Flores declined to add the child to the domestic violence restraining order. If the kill baby post had established Wang as a danger to the child, adding the child to the DVRO would have been the natural judicial response. Judge Flores heard the full DV trial — including all of CT's arguments about Wang's alleged conduct — and determined that the evidence did not warrant protecting the child from Wang through the DV order. This minute order is the official record of that determination.

## E. Official Government Findings: DCFS Investigation and Reversal

> **Exhibit M-1 — Utah DCFS Case Summary — Child Removed on 3/6/19 Based on the Kill Baby Post**

The official Utah DCFS case summary documents that Kayson's removal from Wang's home on March 6, 2019 was triggered directly by the kill baby post. This establishes the factual and legal significance of the post: it was the specific piece of evidence that caused child removal, not a collateral allegation. It also identifies the parties — Christoffer Thygesen, Kailin Wang, and the child — and the institutional response to the post, providing official context for the exhibits that follow.

> **Exhibit N-1 — Utah DCFS Final Decision and Order — Reversed to "Unsupported" (11/8/19)**

After a formal administrative hearing, the Utah Department of Human Services Office of Administrative Hearings reversed the DCFS finding from "Supported" to "Unsupported" on November 4–8, 2019. This means the government agency specifically tasked with protecting children investigated the kill baby post and concluded it was not attributable to Wang. This is not Wang's own assertion — it is an official state government determination, made after a formal adjudicative proceeding, that the evidence did not support a finding against her. The Danish court was not provided with this reversal.

## F. CT's Systematic Obstruction of Discovery

> **Exhibit N-2 — Thygesen's Opposition to Discovery on the Kill Baby Post**

CT opposed Wang's September 2022 RFO for discovery on the post. His opposition follows a consistent pattern throughout the entire six-year proceeding: at every stage at which Wang sought forensic investigation of the post's origin — through search warrants, civil subpoenas, expert witnesses, Cloudflare subpoenas, and RFOs — CT either opposed the discovery or took no steps

to advance it. A party who had not made the post and wanted to establish its authorship would have had every incentive to assist investigation. CT's systematic obstruction is circumstantial evidence that he had reason to prevent identification of the true author.

> **Exhibit Q — CT's 5/30/25 Opposition to Discovery — Filed Few Days Before Denmark Case Transferred from The Agency of Family Law (Familieretshuset) to Copenhagen City Court- The Family Court (Familieretten).**
>
> As recently as May 30, 2025 — just eight months before the Danish court issued its February 23, 2026 judgment — Thygesen was still actively opposing any discovery into who made the kill baby post. This filing confirms that CT's pattern of blocking forensic investigation continued uninterrupted from 2019 through 2025. The Danish court issued its judgment without any of this context: that the post was still under active forensic dispute in American proceedings as of mid-2025, and that CT was still opposing discovery into its authorship at the time the Danish judgment was being prepared.

Respectfully submitted,

**Kailin Wang,** In Pro Per

# EXHIBITS

Supporting the Rebuttal Memorandum

Wang v. Thygesen | Case No. FDV-19-814465 | Sag BS-29022/2025-KBH

*Prepared by Kailin Wang, Respondent*

# EXHIBIT A

Side-by-Side: Search Warrant Affidavit vs. Arrest Warrant — 3/6/19 "Kill Baby K" Post NOT Charged

# Exhibit A

A Side-by-Side comparison of Sgt. Martinez's 3/8/19 Search Warrant Affidavit of Probable Cause vs. 10/17/19 Arrest Warrant and Charging Document of Wang which clearly show the 3/6/19 "Kill Baby K" post was NOT CHARGED



## Affidavit of Sergeant Michele Martinez

My name is Michele Martinez. I am currently employed as a Sergeant of Police in and for the City and County of San Francisco, California. I have been so employed for more than twelve years. I am currently assigned to the Special Investigations Division. Prior to my current assignment, I was assigned to Southern Station, Mission Station, Richmond Station in both Plain Clothes and Uniformed Patrol and Northern Station Investigations Team.

My training includes the Robert Presley Institute of Criminal Investigation, the San Francisco Police Department Detective School, and ongoing instruction while working uniformed patrol and in plainclothes assignments. In addition to the experience and training listed above, I have the below listed work experience and have successfully completed the following courses:

1) University of California Polytechnic State University, BA Degree
2) Basic Course intensive - (San Francisco Police Academy)
3) 76 Hour- Institute of Criminal Investigation Core Course

During the course of my employment, I have participated in over fifty arrests for various violations of the California Vehicle Code, Health and Safety Code and Penal Code, including firearms/weapons related crimes. Additionally, I have participated in the execution of more than fifteen warrants, during which narcotics and weapons (firearms) were seized. During the course of my career, I have also been involved in the investigation of numerous incidents including, but not limited to robberies, burglaries and narcotics related crimes.

## Statement of Probable Cause of Sergeant Michele Martinez

The facts alleged in this affidavit do not necessarily represent all facts known gathered to date regarding this investigation, but the affidavit does include all known exculpatory information and has not had any illegal conduct or observations redacted or excised from it. The facts averred herein I believe are those necessary to establish the probable cause necessary to search and seize the things identified in this warrant application.

On 2/13/19, I was assigned to investigate the harassment, and possible stalking of the Victim and his/her family by Kailin Wang. I initially contacted (RW1) Reportee1 who told me that the Victim and Wang had met online and had a brief intimate relationship, which resulted in the birth of a child. Reportee1 told me that Wang has been posting a variety of defamatory articles online about the Victim, and has been reaching out to his friends and family. Reportee1 provided me with the contact information for the Victim.

I conducted interviews with the Victim, who in summary, told me the following. The Victim met Wang through "Tinder", which is an online dating service. They went on two dates in February and March of 2018, and engaged in unprotected sexual intercourse on both of those dates. In June of 2018 Wang contacted the Victim and told him that she was pregnant, and believed that it was his child. Wang told the Victim that she had decided to abort the baby, and asked him for money, which he provided. Wang ultimately decided not to have the abortion. The Victim told me that he had infrequent communication with Wang between June and October of 2018. The Victim described their conversations as "pointless and destructive." Wang threatened to block communication with the Victim, so he decided to cease contact with her until closer to the birth of the baby. On October 11, 2018, The Victim contacted Wang, requesting a pre-natal paternity test, and offered assistance. On December 6, 2018, Wang told the Victim that the baby was born on November 26, 2018.

The Victim told me that on December 24, 2018, posts began appearing about him online, and Wang started messaging friends, family and acquaintances of his. The online posts stated that the Victim was coercing Wang into an abortion, referred to the Victim as a "dead beat dad," and stated that he was trying to avoid responsibility. The Victim's attorney sent a Cease and Desist letter to Wang, but the postings and contacts continued. The postings were made to multiple websites and social media platforms, using different aliases believed to belong to Wang. On February 5, 2019, a message was sent to a friend of the Victim's father mentioning that the Victim is in a child support battle and needs his help. On February 6, 2019, a message was sent to a friend of the Victim

---

### DECLARATION IN SUPPORT OF ISSUANCE OF WARRANT OF ARREST

The undersigned hereby declares, upon information of belief:

That she is a Sergeant in the **San Francisco Police Department** assigned to the **Special Investigations Division.**

That a complaint charging **Kailin Wang** with the crimes of **646.9(a) PC (x2), 646.9(b) PC, 530.5 PC, 273.6 PC (x2) and 653.2 PC (x4)** has been issued and is filed with the Clerk of the Court.

That said defendant, **Kailin Wang** committed said offenses in the manner and by means as set forth and described in the following affidavit:

#### Arrest Warrant Affidavit

My name is Michele Martinez, and I am currently employed as a Sergeant of Police in and for the City and County of San Francisco, California. I have been so employed for approximately thirteen years. I am currently assigned to the Special Investigations Division. Prior to being assigned to Special Investigations, I was assigned to the Northern Station Investigations Team, and numerous District Police Stations, including Southern Station, Mission Station and Richmond Station where I operated in uniform and in a plainclothes capacity.

Included in my duties is to investigate all different types of criminal activities within the City and County of San Francisco.

Training:
1. California Polytechnic State University, BA Degree
2. Basic Course Intensive – San Francisco Police Academy
3. 76 hour – Institute of Criminal Investigation Core Course
4. Basic Robbery Apprehension Training (San Francisco Police Academy)
5. Drug Alcohol Recognition Update (San Francisco Police Academy)
6. Police Crisis Intervention Training (San Francisco Police Academy)
7. San Francisco Police Department Detective School
8. POST Supervisory Course

On 2/13/19, I was assigned to investigate the harassment, and possible stalking of Victim1 and his family by Kailin Wang. I conducted interviews with Victim1, who in summary, told me the following. Victim1 met Wang through "Tinder", which is an online dating service. They went on two dates in February and March of 2018, and engaged in unprotected sexual intercourse on both of those dates. In June of 2018 Wang contacted Victim1 and told him that she was pregnant, and believed that it was his child. Victim1 told me that he had infrequent communication with Wang between June and October of 2018. Victim1 described their conversations as "pointless and destructive." Wang threatened to block communication with Victim1, so he decided to cease contact with her until closer to the birth of the baby. On December 6, 2018, Wang told Victim1 that the baby had been born on ███████

003052



**Left document (Holysmoke Search Warrant.pdf):**

On 2/8/19, "Christoffer Thygesen Sperm Bank" was posted on https://www.holysmoke.org/bad-business/christoffer-thygesen/. The content published says, "Christoffer Thygesen or should we say dead beat father this Sperm Bank is spreading his seed all over Tinder shooting his load up numerous cunts. He's fathered a child with a woman twice his age according to court doucments. and he is being SUED For CHILD SUPPORT in Los Angeles Superior Court. He will hit it and quit it, impregnate u and leave u with a child to raise all by yourself. He will spend money on Tinder pussy but won't spend a dime on his own child. This one is destined to father at least 5 baby mamas by the time he is 30. @tiggamaroo." The website linked to this post is http://www.instagram.com/tiggamaroo, which is the Victim's personal Instagram account.

On 2/12/19, "Christopher Thygesen" was posted on https://www.holysmoke.org/scam/christoffer-thygesen. The content published says, "Christoffer Thygesen Forced me to Kill 18 Week old Baby," and "Christoffer Thygesen Impregnated me and abandoned his Son." The post also mentions the Victim's father, and his grandfather. The website linked to this post is http://www.instagram.com/tiggamaroo, which is the Victim's personal Instagram account.

On 3/6/19, a comment is posted to https://www.holysmoke.org/bad-business/christoffer-thygesen/ by "Kailin Wang" which states, "I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!"

On each of the posts, there are numerous additional comments which I believe may be posted by Wang. Four of the comments are posted in the name of the victim in the Utah case, where Wang is charged with fifty counts of electronic communications harassment. The most recent comment from the Utah victim was made on 3/6/19. I contacted the Utah victim who told me that he/she has never commented on Holysmoke.org or any of the other websites.

The following are links to content published by Wang on Holysmoke.org. I believe that a search of this content, as well as all data associated with the content, will provide evidence stalking and electronic/online harassment by Wang.

https://www.holysmoke.org:
https://www.holysmoke.org/bad-business/christoffer-thygesen
https://www.holysmoke.org/scam/christoffer-thygesen

I know from my training, experience and consulting with other investigators that companies/websites like Holysmoke.org stores and maintains Subscriber Information and Internet Protocol (IP) Logs of their users. IP Logs are logs that capture your IP address when you connect to or use Holysmoke.org website/products. An IP address is analogous with that of a physical building address used to identify the location of a building. The IP address can be researched and resolved back to a physical building address such as a business address, residential address or internet service provider. This information can assist an investigator in identifying the general location where a user may have been during a particular access connection.

Based on the above facts, which I swear under penalty of perjury are true and correct to the best of my knowledge and belief, I have probable cause to believe, and do believe, that evidence of the violation of 646.9(a) pc (Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking), and 653m(a) pc (Every person who, with intent to annoy, telephones or makes contact by means of an electronic communication device with another and addresses to or about the other person any obscene language or addresses to the other person any threat to inflict injury to the person or property of the person addressed or any member of his or her family, is guilty of a misdemeanor.) will be obtained from the requested information provided by Holysmoke.org.

It has been my experience that it takes some companies considerable time beyond the statutory 10-day search warrant return period to collect and provide materials sought in this search warrant. Therefore, I request

**Red margin annotation (left):** The Kill Baby K post was NOT CHARGED IT was Taken Off of the Final Charging Arrest Warrant Affidavit

**Right document (REDACTED Arrest Warrant Affidavit.pdf):**

After learning of the birth of the child, Victim1 hired a family law attorney to assist in determining if he was the father. On February 11, 2019 a DNA test confirmed that Victim1 is the father of the child. The attorney also informed Victim1 that Wang was currently a defendant in a criminal harassment case in Utah involving another man (Victim2) from San Francisco. Victim1 later learned that Wang was also previously charged with stalking and harassing a man in New York, as well as violating an Order of Protection issued in that case. In that case, it is alleged that Wang threatened the New York man that if he wouldn't be with her, she was going to go to his residence with a gun. Wang pled guilty to second degree harassment in New York.

Victim1 told me that beginning on December 24, 2018, Wang began contacting people in his "network" and making defamatory and untrue statements about him. He also found the content of the posts and messages to be threatening and put him in fear for his safety, his family's safety, and especially the safety of his child. Victim1 provided me with a list of people believed to have been contacted by Wang, as well as an index of websites and social media accounts that Wang has posted to, or used to contact people associated with him. These include Facebook, Instagram and Twitter, as well as websites such as cheaterxposed.us, medium.com, scribd.com, holysmoke.org, bloglovin.com, internetcheaters.com, dirtycheater.org, thedirty.com, and many others.

I reviewed some of the posts made to the various websites provided by Victim1.

On 2/11/19, a post was made to Medium.com by account @▮▮▮▮▮ The post includes photos of Victim1 and a photo of a dead and dismembered baby. Through various search warrants I know that Medium account @▮▮▮▮▮ has been accessed from ▮▮▮▮▮ which is the address listed on Wang's Utah Driver's License.

On 2/12/19, a post was made to Medium.com by account @▮▮▮▮▮ The post includes photos of Victim1, the DNA test, text messages between Victim1 and Wang, and describes the child as "sick, starving and homeless." Through various search warrants I know that Medium account @▮▮▮▮▮ has been accessed from ▮▮▮▮▮ which is the address listed on Wang's New York Identification Card.

On 2/13/19, a post was made to Medium.com by account @▮▮▮▮▮ The post includes photos of Victim1, a photo of a dismembered fetus, the DNA test, and text messages between Victim1 and Wang. Through various search warrants I know that Medium account @▮▮▮▮▮ has been accessed from ▮▮▮▮▮

On 2/15/19, a post was made to Medium.com by account @▮▮▮▮▮ The post includes photos of Victim1, the DNA test, and a photo of a dead and dismembered baby. Through various search warrants I know that Medium account @▮▮▮▮▮ has been accessed from ▮▮▮▮▮

I reviewed the list of people who have been contacted by Wang. Included in this list are Victim1's parents, siblings, grandparents, an aunt and uncle, and numerous friends, housemates and bandmates. Also contacted were friends, classmates, co-workers and family members of Victim1's family and friends. Most of these contacts were made through some form of social

003053



**Holysmoke Search Warrant.pdf**

On 2/12/19, "Christopher Thygesen" was posted on https://www.holysmoke.org/scam/christoffer-thygesen. The content published says, "Christoffer Thygesen Forced me to Kill 18 Week old Baby," and "Christoffer Thygesen Impregnated me and abandoned his Son." The post also mentions the Victim's father, and his grandfather. The website linked to this post is http://www.instagram.com/tiggamaroo, which is the Victim's personal Instagram account.

On 3/6/19, a comment is posted to https://www.holysmoke.org/bad-business/christoffer-thygesen/ by "Kailin Wang" which states, "I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!"

On each of the posts, there are numerous additional comments which I believe may be posted by Wang. Four of the comments are posted in the name of the victim in the Utah case, where Wang is charged with fifty counts of electronic communications harassment. The most recent comment from the Utah victim was made on 3/6/19. I contacted the Utah victim who told me that he/she has never commented on Holysmoke.org or any of the other websites.

The following are links to content published by Wang on Holysmoke.org. I believe that a search of this content, as well as all data associated with the content, will provide evidence stalking and electronic/online harassment by Wang.

https://www.holysmoke.org:
https://www.holysmoke.org/bad-business/christoffer-thygesen
https://www.holysmoke.org/scam/christoffer-thygesen

I know from my training, experience and consulting with other investigators that companies/websites like Holysmoke.org stores and maintains Subscriber Information and Internet Protocol (IP) Logs of their users. IP Logs are logs that capture your IP address when you connect to or use Holysmoke.org website/products. An IP address is analogous with that of a physical building address used to identify the location of a building. The IP address can be researched and resolved back to a physical building address such as a business address, residential address or internet service provider. This information can assist an investigator in identifying the general location where a user may have been during a particular access connection.

Based on the above facts, which I swear under penalty of perjury are true and correct to the best of my knowledge and belief, I have probable cause to believe, and do believe, that evidence of the violation of 646.9(a) pc (Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking), and 653m(a) pc (Every person who, with intent to annoy, telephones or makes contact by means of an electronic communication device with another and addresses to or about the other person any obscene language or addresses to the other person any threat to inflict injury to the person or property of the person addressed or any member of his or her family, is guilty of a misdemeanor.) will be obtained from the requested information provided by Holysmoke.org.

It has been my experience that it takes some companies considerable time beyond the statutory 10-day search warrant return period to collect and provide materials sought in this search warrant. Therefore, I request permission to return this search warrant within 10 days from the date all materials are received from this company.

As required by Section 1546.1(d) of the California Penal Code. Any information obtained through the execution of this warrant that is unrelated to the objective of the warrant shall be sealed and shall not be subject to further review, use, or disclosure absent an order from the court.

Wherefore, Affiant prays that a search warrant be issued, commanding the immediate search of the business records described above, for the property or things described and that such property be brought before a

**REDACTED Arrest Warrant Affidavit.pdf**

media, and in some cases via email. Various aliases and email addresses were used in these contacts.

On 2/7/19, a Facebook Messenger message was sent to Victim1's three siblings from "███████" The messages stated, "Ur an Uncle now." and "If u do end up in politics I hope u make Abortions more accessible for women." and "Maybe you'll get to c ur Nephew at the hospital one day. As he is sick and on Welfare." Each message included a copy of text messages sent between Victim1 and Wang, as well as a photo of the child. Based on the content of the messages, I believe that "███████ is an alias for Wang.

On 2/15/19, an Instagram follow request was sent from ███████ to a friend of Victim1's brother. The account states, "*Victim1* Impregnated me forced me to KILL his 21 week child. *Victim1* has NEVER contributed a Dime to his child!!!!" Included in the account are photos of Victim1, text messages between Victim1 and Wang, and a photo of a dead and dismembered baby. Through various search warrants I know that the Instagram account ███████ has been accessed from ███████.

On 2/22/19, an Instagram follow request was sent from ███████ to two of Victim1's friends. The account states, "*Victim1* will pay to harass u and have sex with u but won't pay a dime of Child Support !!" Included in the account are photos of Victim1, the DNA test results for the child and a photo of an aborted fetus. Through various search warrants I know that the Instagram account ███████ has been accessed from ███████ and ███████.

On 3/6/19, Judge Richard Darwin of the San Francisco Superior Court, granted an amended Temporary Restraining Order protecting Victim1, his parents, his three siblings, and two grandparents from Wang (Case Number: FDV-19-814465). It was ordered that Wang must not harass, attack, strike, threaten, assault, hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, impersonate or block movements. Wang must also not contact either directly or indirectly, in any way, including but not limited to, by telephone, mail, e-mail or other electronic means. Wang must also not take any action, directly or through others, to obtain the addresses or locations of the persons protected. Wang was also ordered to refrain from, directly or indirectly, harassing, defaming, impersonating, inflicting significant emotional distress on, and disclosing confidential information to any person. Judge Darwin also ordered custody of the child be granted immediately to Victim1, with no visitation awarded to Wang. Although Wang was not present in court on the day the Orders were granted, she did call into court and was aware of the hearing. I was advised on 3/8/19, that the child was removed from the custody of Wang's parents and given to Victim1, where he remains at this time. On 3/18/19, Deputy Ventura personally served Wang with a copy of the Temporary Restraining Order, Child Custody and Visitation Order, and Travel Order.

On 3/22/19 at 1814 hours, Wang called San Francisco Police dispatch and requested a well-being check at the Victim's residence in San Francisco. Wang stated that she and Victim1 have restraining orders against each other and that she is concerned for her child's safety. Wang told the Dispatcher that the Victim lives with roommates and that they are possibly drug users. Officers responded to Victim1's residence, but there was no answer at the door. Wang was advised of the result of the well-being check.

003054

**SAN FRANCISCO POLICE DEPARTMENT**
**CHRONOLOGICAL REPORT OF INVESTIGATION**    Page 17 of 31

| DATE | TIME | ACTIVITY |
|---|---|---|
| | | I provided Wang with my email address if she would like to contact me in the future. |
| | 1225 | Facebook SW served on Facebook via email. |
| | 1315 | Spoke with Tate Zheng at SVU regarding CPS report filed.  Zheng told me that he will provide me with the report. |
| | 1322 | Received CPS report from Zheng at SVU. |
| | 1325 | Received Emails from Wang with "impersonation" posts. Provided email address of attorney. ███████████ |
| 5/22/19 | 0842 | Emailed Karl Kronenberger and advised that he could contact me if he wished to discuss the Wang matter. |
| | 0855 | Received email from Kronenberger, and returned his call.  Left Message. |
| | 0932 | I spoke with Karl Kronenberger (attorney for Wang). Kronenberger told me that Wang has not made any of the threatening posts. He mentioned the "kill my baby" post on Holysmoke.  I told Kronenberger that I have to prove that a post came from a specific person, and sometimes IP addresses are spoofed. I told him to let me know if there is something that he would like me to look at that would help his client. |

# EXHIBIT B

**3/8/2019 Search Warrant Affidavit of Probable Cause Re: 3/6/19 "Kill Baby K" Post**

Wang v. Thygesen | FDV-19-814465 | Confidential — Prepared for Legal Proceedings

# Exhibit B

3/8/2019 Search Warrant Affidavit of Probable Cause Re: 3/6/19 "Kill Baby K" Post.

After 25  Search Warrants Issued NONE of them turned up with ANY evidence linking the 3/6/19 ""Kill Baby K"" post to Wang, thus Wang was NOT charged w/ Criminal Threats under PC 422, and NOT charged at all with the 3/6/19 ""Kill Baby K"" post the only post with a threat to the child, No Thygesen impersonated Wang in order to obtain Sole Legal/Physical Custody of the child on 3/6/19. See filed on  2021-04-26 EXHIBITS IN SUPPORT OF REQUEST TO CONTINUE HEARING (SFPD SEARCH WARRANTS) (TRANSACTION ID # 66540227) (TRANSACTION ID # 66540227) FILED BY RESPONDENT WANG, KAILIN AS TO PETITIONER THYGESEN, CHRISTOFFER STANFORD
"

### State of California, City and County of San Francisco,
### SEARCH WARRANT

I, Sgt. Michele Martinez #1208, swear under oath and penalty of perjury that the facts expressed by him/her in the attached and incorporated **Statement of Probable Cause** are true and that based thereon he/she has probable cause to believe and does believe that the articles, property, and persons described below are lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below, and are now located at the locations set forth below.   Wherefore, Affiant requests that this Search Warrant be issued.

_____
(Signature of Affiant)

Hobbs Sealing Requested:  YES_____  NO _X_ .
Nighttime Search Requested:  YES _____  NO _X_ .

### (SEARCH WARRANT)

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICE OFFICER OR PEACE OFFICER IN THE COUNTY OF SAN FRANCISCO, CA:** proof by affidavit, under penalty of perjury, having been made before me by Sgt. **Michele Martinez,** that there is probable cause to believe that the property or person described herein may be found at the location(s) set forth herein and that it is lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below by "☒ "(s), in that:

- ☐ It was stolen or embezzled – [1524(a)(1) PC];
- ☐ It was used as the means of committing a felony – [1524(a)(2) PC];
- ☐ It is possessed by a person with the intent to use it as means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery – [1524(a)(3) PC];
- ☒ It tends to show that a felony has been committed or that a particular person has committed a felony – [1524(a)(4) PC];
- ☐ It tends to show that sexual exploitation of a child, in violation of PC Section 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Section 311.11, has occurred or is occurring – [1524(a)(5) PC];
- ☐ An arrest warrant is outstanding for the person to be seized – [1524(a)(6) PC];
- ☐ A Child Protective Custody Warrant is outstanding for the person to be seized – [1524(a)(6) and Family Code 3134.5];
- ☒ A provider of "electronic communication service" or "remote computing service", as defined in Penal Code Section 1524.2(a) (including "California corporations" defined as any corporation or other entity that is subject to Section 102 of the Corporations Code and "Foreign corporations" defined as any corporation that is qualified to do business in this state pursuant to Section 2105 of the Corporations Code), has records or evidence regarding a subscriber or customer which (1) is of a type specified in Penal Code Section 1524.3 (i.e. the subscriber/customer's name, address, telephone number or other subscriber number or identity; the types of services the subscriber/customer utilized; the length of time the person has been a subscriber/customer of that service; and the local and long distance telephone toll billing records); and (2) which records or evidence shows that property was stolen or embezzled constituting a misdemeanor, or that property or things are in possession of any person with intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery – [1524(a)(7) PC];

## You are therefore COMMANDED to SEARCH:

Holysmoke.org
pope@holysmoke.org

## For the FOLLOWING EVIDENCE:

Holysmoke website: **https://www.holysmoke.org** for information related to the below listed posts:

https://www.holysmoke.org/bad-business/christoffer-thygesen
https://www.holysmoke.org/scam/christoffer-thygesen

Any and all information associated with each of the listed Holysmoke posts, holysmoke.org, including:
Published content, including all reviews/comments, logins, date of creation and date of removal, device and browser type used, originating and destination Internet Protocol addresses, user/subscriber information, associated email addresses and phone numbers. All information associated with each review/comment left on the published content, such as email addresses, IP addresses and user/subscriber information.

THE ANNEXED INSTRUMENT IS A CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE. ATTEST  CERTIFIED

APR 1 7 2019

CLERK          COURT
Superior Court of C.        of San Francisco
BY:_____          DEPUTY CLERK

Holysmoke shall verify the authenticity of electronic information that it produces by providing an affidavit from the Custodian of Records, and a declaration from the Custodian of Records to be included with the records/report.

Holysmoke shall be compensated by the San Francisco Police Department for reasonable expenses incurred in complying with the court's order. Additionally, it is the ORDER of this court that:
This Search Warrant is submitted in compliance with 1546.1(h) of the California Penal Code. It is ordered that all information obtained through the execution of the warrant that is unrelated to the objective of the warrant shall be sealed and not subject to further review, use, or disclosure without a court order.

This Search Warrant and Affidavit and attached and incorporated Statement of Probable Cause were sworn to as true and subscribed before me on this ___8ᵗʰ___ day of ___March_____, 2019, at __7 : 30__ A.M./ P.M.
Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

**Hobbs Sealing Authorized:** YES___ NO_✗_
**Nighttime Search Authorized:** YES___ NO_✗_

_____,
**Signature of Magistrate**
Joseph M. Quinn

**Judge of the Superior Court Department** _608_ ,
**City and County of San Francisco, California**

## Affidavit of Sergeant Michele Martinez

My name is Michele Martinez. I am currently employed as a Sergeant of Police in and for the City and County of San Francisco, California. I have been so employed for more than twelve years. I am currently assigned to the Special Investigations Division. Prior to my current assignment, I was assigned to Southern Station, Mission Station, Richmond Station in both Plain Clothes and Uniformed Patrol and Northern Station Investigations Team.

My training includes the Robert Presley Institute of Criminal Investigation, the San Francisco Police Department Detective School, and ongoing instruction while working uniformed patrol and in plainclothes assignments. In addition to the experience and training listed above, I have the below listed work experience and have successfully completed the following courses:

1) University of California Polytechnic State University, BA Degree
2) Basic Course intensive - (San Francisco Police Academy)
3) 76 Hour- Institute of Criminal Investigation Core Course

During the course of my employment, I have participated in over fifty arrests for various violations of the California Vehicle Code, Health and Safety Code and Penal Code, including firearms/weapons related crimes. Additionally, I have participated in the execution of more than fifteen warrants, during which narcotics and weapons (firearms) were seized. During the course of my career, I have also been involved in the investigation of numerous incidents including, but not limited to robberies, burglaries and narcotics related crimes.

## Statement of Probable Cause of Sergeant Michele Martinez

The facts alleged in this affidavit do not necessarily represent all facts known gathered to date regarding this investigation, but the affidavit does include all known exculpatory information and has not had any illegal conduct or observations redacted or excised from it. The facts averred herein I believe are those necessary to establish the probable cause necessary to search and seize the things identified in this warrant application.

On 2/13/19, I was assigned to investigate the harassment, and possible stalking of the Victim and his/her family by Kailin Wang. I initially contacted (RW1) Reportee1 who told me that the Victim and Wang had met online and had a brief intimate relationship, which resulted in the birth of a child. Reportee1 told me that Wang has been posting a variety of defamatory articles online about the Victim, and has been reaching out to his friends and family. Reportee1 provided me with the contact information for the Victim.

I conducted interviews with the Victim, who in summary, told me the following. The Victim met Wang through "Tinder", which is an online dating service. They went on two dates in February and March of 2018, and engaged in unprotected sexual intercourse on both of those dates. In June of 2018 Wang contacted the Victim and told him that she was pregnant, and believed that it was his child. Wang told the Victim that she had decided to abort the baby, and asked him for money, which he provided. Wang ultimately decided not to have the abortion. The Victim told me that he had infrequent communication with Wang between June and October of 2018. The Victim described their conversations as "pointless and destructive." Wang threatened to block communication with the Victim, so he decided to cease contact with her until closer to the birth of the baby. On October 11, 2018, The Victim contacted Wang, requesting a pre-natal paternity test, and offered assistance. On December 6, 2018, Wang told the Victim that the baby was born on November 26, 2018.

The Victim told me that on December 24, 2018, posts began appearing about him online, and Wang started messaging friends, family and acquaintances of his. The online posts stated that the Victim was coercing Wang into an abortion, referred to the Victim as a "dead beat dad," and stated that he was trying to avoid responsibility. The Victim's attorney sent a Cease and Desist letter to Wang, but the postings and contacts continued. The postings were made to multiple websites and social media platforms, using different aliases believed to belong to Wang. On February 5, 2019, a message was sent to a friend of the Victim's father mentioning that the Victim is in a child support battle and needs his help. On February 6, 2019, a message was sent to a friend of the Victim

about creating a fund for the Victim's starving child. On February 7, 2019 a message was sent to the Victim's sibling stating that the baby was sick and on welfare. On February 11, 2019, a message was sent to a bandmate of the Victim suggesting that band earning could be subject to child support. On February 13, 2019, a message was sent to the Victim's friend from college with links to online posts about the Victim. On February 16, 2019, "friend requests" were made to a friend of the Victim's sibling. The account linked to an anti-abortion Facebook page. On February 21, 2019 an Instagram follow request was sent to a friend of the Victim with screen shots of a fetus head. On February 28, 2019, emails were sent to former co-workers of the Victim's mother, mentioning a child support case. On March 6, 2019, Wang posted in the comments section of an online article she had previously posted about the Victim, "I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!" Based on this comment, Spanish Fork Police officers responded to Wang's last known address in Utah, in an attempt to conduct a well-being check on the child. They were unable to locate Wang or the child at that time. On March 7, 2019, Utah Division of Child and Family Services responded to Wang's last known address where they found the child in the home with Wang's parents. Wang was not in the home at that time.

The Victim has provided me with a list of people believed to have been contacted by Wang, as well as an index of websites and social media accounts that Wang has posted to, or used to contact people associated with the Victim. The Victim told me that in September of 2018, he lost his job due to poor performance. Since that time, the Victim has been looking for another job, and has applied to numerous places. The Victim told me that he believes he is qualified, and has gotten along in the interview process at a number of places, but continues to be turned down. Although attorneys for the Victim have been able to remove some of the online postings, an internet search on the Victim's name still reveals a number of negative articles. The Victim believes that this has kept him from obtaining a new job.

The Victim is aware of two criminal cases involving Wang for similar acts towards other men she has met online. In the New York case, Wang threatened to go to the victim's home with a gun. She also created an online account in the New York victim's name, and solicited nonconsensual sexual encounters for him. Wang was charged with stalking and harassment. Wang is currently being charged in Spanish Fork Utah with numerous counts of electronic communications harassment against another individual.

Based on the postings made online by Wang, which include photos of aborted fetuses, and the claims that the child is sick, and the previous allegations of stalking and harassment made against Wang, The Victim told me that he is in fear for his safety, the safety of his family, and especially the safety of his child. On 2/11/19 a DNA test confirmed that the Victim is the father of the child.

On 3/6/19, Judge Richard Darwin granted an amended Temporary Restraining Order for the Victim, his parents, his three siblings, and two grandparents. Judge Darwin also ordered custody of the child be granted immediately to the Victim, with no visitation awarded to Wang. Wang was also ordered to refrain from, directly or indirectly, harassing, defaming, impersonating, inflicting significant emotional distress on, and disclosing confidential information. Wang was not present in court at the time of the hearing.

Holysmoke.org is a website, and describes itself as "an attempt to provide an unbiased, secure, unadulterated and free platform where you can create alerts, contribute and refer to information which may help you avoid risks and damages, both emotionally and financially." It is believed that Wang used Holysmoke.org to publish content about the Victim. It also appears that she made comments on these posts and forwarded links to associates of the Victim.

On 2/8/19, "Christoffer Thygesen Sperm Bank" was posted on https://www.holysmoke.org/bad-business/christoffer-thygesen/. The content published says, "Christoffer Thygesen or should we say dead beat father this Sperm Bank is spreading his seed all over Tinder shooting his load up numerous cunts. He's fathered a child with a woman twice his age according to court doucments. and he is being SUED For CHILD SUPPORT in Los Angeles Superior Court. He will hit it and quit it, impregnate u and leave u with a child to raise all by yourself. He will spend money on Tinder pussy but won't spend a dime on his own child. This one is destined to father at least 5 baby mamas by the time he is 30. @tiggamaroo." The website linked to this post is http://www.instagram.com/tiggamaroo, which is the Victim's personal Instagram account.

On 2/12/19, "Christopher Thygesen" was posted on https://www.holysmoke.org/scam/christoffer-thygesen. The content published says, "Christoffer Thygesen Forced me to Kill 18 Week old Baby," and "Christoffer Thygesen Impregnated me and abandoned his Son." The post also mentions the Victim's father, and his grandfather. The website linked to this post is http://www.instagram.com/tiggamaroo, which is the Victim's personal Instagram account.

On 3/6/19, a comment is posted to https://www.holysmoke.org/bad-business/christoffer-thygesen/ by "Kailin Wang" which states, "I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!"

On each of the posts, there are numerous additional comments which I believe may be posted by Wang. Four of the comments are posted in the name of the victim in the Utah case, where Wang is charged with fifty counts of electronic communications harassment. The most recent comment from the Utah victim was made on 3/6/19. I contacted the Utah victim who told me that he/she has never commented on Holysmoke.org or any of the other websites.

The following are links to content published by Wang on Holysmoke.org. I believe that a search of this content, as well as all data associated with the content, will provide evidence stalking and electronic/online harassment by Wang.

https://www.holysmoke.org:
https://www.holysmoke.org/bad-business/christoffer-thygesen
https://www.holysmoke.org/scam/christoffer-thygesen

I know from my training, experience and consulting with other investigators that companies/websites like Holysmoke.org stores and maintains Subscriber Information and Internet Protocol (IP) Logs of their users. IP Logs are logs that capture your IP address when you connect to or use Holysmoke.org website/products. An IP address is analogous with that of a physical building address used to identify the location of a building. The IP address can be researched and resolved back to a physical building address such as a business address, residential address or internet service provider. This information can assist an investigator in identifying the general location where a user may have been during a particular access connection.

Based on the above facts, which I swear under penalty of perjury are true and correct to the best of my knowledge and belief, I have probable cause to believe, and do believe, that evidence of the violation of 646.9(a) pc (Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking), and 653m(a) pc (Every person who, with intent to annoy, telephones or makes contact by means of an electronic communication device with another and addresses to or about the other person any obscene language or addresses to the other person any threat to inflict injury to the person or property of the person addressed or any member of his or her family, is guilty of a misdemeanor.) will be obtained from the requested information provided by Holysmoke.org.

It has been my experience that it takes some companies considerable time beyond the statutory 10-day search warrant return period to collect and provide materials sought in this search warrant. Therefore, I request permission to return this search warrant within 10 days from the date all materials are received from this company.

As required by Section 1546.1(d) of the California Penal Code. Any information obtained through the execution of this warrant that is unrelated to the objective of the warrant shall be sealed and shall not be subject to further review, use, or disclosure absent an order from the court.

Wherefore, Affiant prays that a search warrant be issued, commanding the immediate search of the business records described above, for the property or things described and that such property be brought before a

07 16

magistrate or retained as provided in Section 1536 of the California Penal Code. I request that a Search Warrant be issued based upon the aforementioned facts, commanding the search of the person, premise(s) or vehicles(s) designated above for the property or things described, or any part thereof, and that such items or property be brought before this magistrate or retained subject to the order of the court pursuant to Section 1536 of the Penal Code.

Based on the above facts, which I swear under penalty of perjury the information in this document to be true to the best of his knowledge

_____
Signature of Affiant

Sworn to be true and subscribed to me this 8th day of March , 2019 at 2:30 A.M./P.M.

Hobbs Sealing Authorized:   YES___   NO_X_
Nighttime Search Authorized:   YES___   NO_X_

_____
Signature of Judge

Judge of the Superior Court of California, City and County of San Francisco; Dept.# 608

Judge for the Superior Court of California, County of San Francisco: Joseph M. Quinn
                                                                    (Printed Name of Magistrate)

SEARCH WARRANT ISSUED DATE: 3/8/19   SEARCH WARRANT RETURN DATE:_____

# EXHIBIT C

**10/17/2019 Arrest Warrant — 3/6/19 "Kill Baby K" Post Removed from Charging Documents**

# Exhibit C

10/17/2019 Arrest Warrant, the SFDA specifically erased, deleted, removed the 3/6/19 "Kill Baby K" post from the charging documents because to this day not a shred of evidence points that Fake Post to Wang

## DECLARATION IN SUPPORT OF
## ISSUANCE OF WARRANT OF ARREST

The undersigned hereby declares, upon information of belief:

That she is a Sergeant in the **San Francisco Police Department** assigned to the **Special Investigations Division**.

That a complaint charging **Kailin Wang** with the crimes of **646.9(a) PC (x2), 646.9(b) PC, 530.5 PC, 273.6 PC (x2) and 653.2 PC (x4)** has been issued and is filed with the Clerk of the Court.

That said defendant, **Kailin Wang** committed said offenses in the manner and by means as set forth and described in the following affidavit:

### Arrest Warrant Affidavit

My name is Michele Martinez, and I am currently employed as a Sergeant of Police in and for the City and County of San Francisco, California. I have been so employed for approximately thirteen years. I am currently assigned to the Special Investigations Division. Prior to being assigned to Special Investigations, I was assigned to the Northern Station Investigations Team, and numerous District Police Stations, including Southern Station, Mission Station and Richmond Station where I operated in uniform and in a plainclothes capacity.

Included in my duties is to investigate all different types of criminal activities within the City and County of San Francisco.

Training:
1. California Polytechnic State University, BA Degree
2. Basic Course Intensive – San Francisco Police Academy
3. 76 hour – Institute of Criminal Investigation Core Course
4. Basic Robbery Apprehension Training (San Francisco Police Academy)
5. Drug Alcohol Recognition Update (San Francisco Police Academy)
6. Police Crisis Intervention Training (San Francisco Police Academy)
7. San Francisco Police Department Detective School
8. POST Supervisory Course

On 2/13/19, I was assigned to investigate the harassment, and possible stalking of Victim1 and his family by Kailin Wang. I conducted interviews with Victim1, who in summary, told me the following. Victim1 met Wang through "Tinder", which is an online dating service. They went on two dates in February and March of 2018, and engaged in unprotected sexual intercourse on both of those dates. In June of 2018 Wang contacted Victim1 and told him that she was pregnant, and believed that it was his child. Victim1 told me that he had infrequent communication with Wang between June and October of 2018. Victim1 described their conversations as "pointless and destructive." Wang threatened to block communication with Victim1, so he decided to cease contact with her until closer to the birth of the baby. On December 6, 2018, Wang told Victim1 that the baby had been born on ████████████

003052

After learning of the birth of the child, Victim1 hired a family law attorney to assist in determining if he was the father. On February 11, 2019 a DNA test confirmed that Victim1 is the father of the child. The attorney also informed Victim1 that Wang was currently a defendant in a criminal harassment case in Utah involving another man (Victim2) from San Francisco. Victim1 later learned that Wang was also previously charged with stalking and harassing a man in New York, as well as violating an Order of Protection issued in that case. In that case, it is alleged that Wang threatened the New York man that if he wouldn't be with her, she was going to go to his residence with a gun. Wang pled guilty to second degree harassment in New York.

Victim1 told me that beginning on December 24, 2018, Wang began contacting people in his "network" and making defamatory and untrue statements about him. He also found the content of the posts and messages to be threatening and put him in fear for his safety, his family's safety, and especially the safety of his child. Victim1 provided me with a list of people believed to have been contacted by Wang, as well as an index of websites and social media accounts that Wang has posted to, or used to contact people associated with him. These include Facebook, Instagram and Twitter, as well as websites such as cheaterxposed.us, medium.com, scribd.com, holsyuoke.org, bloglovin.com, internetcheaters.com, dirtycheater.org, thedirty.com, and many others.

I reviewed some of the posts made to the various websites provided by Victim1.



On 2/11/19, a post was made to Medium.com by account @▮▮▮▮ The post includes photos of Victim1 and a photo of a dead and dismembered baby. Through various search warrants I know that Medium account @▮▮▮▮ has been accessed from ▮▮▮▮ ▮▮▮▮ which is the address listed on Wang's Utah Driver's License.

On 2/12/19, a post was made to Medium.com by account @▮▮▮▮ The post includes photos of Victim1, the DNA test, text messages between Victim1 and Wang, and describes the child as "sick, starving and homeless." Through various search warrants I know that Medium account @▮▮▮▮ has been accessed from ▮▮▮▮ which is the address listed on Wang's New York Identification Card.

On 2/13/19, a post was made to Medium.com by account @▮▮▮▮ The post includes photos of Victim1, a photo of a dismembered fetus, the DNA test, and text messages between Victim1 and Wang. Through various search warrants I know that Medium account @▮▮▮▮ has been accessed from ▮▮▮▮ ▮▮▮▮

On 2/15/19, a post was made to Medium.com by account @▮▮▮▮ The post includes photos of Victim1, the DNA test, and a photo of a dead and dismembered baby. Through various search warrants I know that Medium account @▮▮▮▮ has been accessed from ▮▮▮▮ ▮▮▮▮

I reviewed the list of people who have been contacted by Wang. Included in this list are Victim1's parents, siblings, grandparents, an aunt and uncle, and numerous friends, housemates and bandmates. Also contacted were friends, classmates, co-workers and family members of Victim1's family and friends. Most of these contacts were made through some form of social

003053

media, and in some cases via email. Various aliases and email addresses were used in these contacts.

On 2/7/19, a Facebook Messenger message was sent to Victim1's three siblings from "█████ ██████" The messages stated, "Ur an Uncle now." and "If u do end up in politics I hope u make Abortions more accessible for women." and "Maybe you'll get to c ur Nephew at the hospital one day. As he is sick and on Welfare." Each message included a copy of text messages sent between Victim1 and Wang, as well as a photo of the child. Based on the content of the messages, I believe that "██████████" is an alias for Wang.

On 2/15/19, an Instagram follow request was sent from ██████████ to a friend of Victim1's brother. The account states, "*Victim1* Impregnated me forced me to KILL his 21 week child. *Victim1* has NEVER contributed a Dime to his child!!!!" Included in the account are photos of Victim1, text messages between Victim1 and Wang, and a photo of a dead and dismembered baby. Through various search warrants I know that the Instagram account ██████████ has been accessed from ██████████

On 2/22/19, an Instagram follow request was sent from ██████████ to two of Victim1's friends. The account states, "*Victim1* will pay to harass u and have sex with u but won't pay a dime of Child Support !!" Included in the account are photos of Victim1, the DNA test results for the child and a photo of an aborted fetus. Through various search warrants I know that the Instagram account ██████████ has been accessed from ██████████ and ██████████

On 3/6/19, Judge Richard Darwin of the San Francisco Superior Court, granted an amended Temporary Restraining Order protecting Victim1, his parents, his three siblings, and two grandparents from Wang (Case Number: FDV-19-814465). It was ordered that Wang must not harass, attack, strike, threaten, assault, hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, impersonate or block movements. Wang must also not contact either directly or indirectly, in any way, including but not limited to, by telephone, mail, e-mail or other electronic means. Wang must also not take any action, directly or through others, to obtain the addresses or locations of the persons protected. Wang was also ordered to refrain from, directly or indirectly, harassing, defaming, impersonating, inflicting significant emotional distress on, and disclosing confidential information to any person. Judge Darwin also ordered custody of the child be granted immediately to Victim1, with no visitation awarded to Wang. Although Wang was not present in court on the day the Orders were granted, she did call into court and was aware of the hearing. I was advised on 3/8/19, that the child was removed from the custody of Wang's parents and given to Victim1, where he remains at this time. On 3/18/19, Deputy Ventura personally served Wang with a copy of the Temporary Restraining Order, Child Custody and Visitation Order, and Travel Order.

On 3/22/19 at 1814 hours, Wang called San Francisco Police dispatch and requested a well-being check at the Victim's residence in San Francisco. Wang stated that she and Victim1 have restraining orders against each other and that she is concerned for her child's safety. Wang told the Dispatcher that the Victim lives with roommates and that they are possibly drug users. Officers responded to Victim1's residence, but there was no answer at the door. Wang was advised of the result of the well-being check.

003054

On 3/22/19 at 1852 hours, Wang called Menlo Park Police Department dispatch and requested a well-being check at Victim1's parent's house. Wang told the dispatcher that Victim1 uses drugs, and that Victim1 and her child are not at his house in San Francisco, and may be at his parent's house in Menlo Park. Officers responded to the residence and met with Victim1's sister.

On 3/23/19 at 1021 hours, Wang called San Francisco Police dispatch and requested a well-being check on the child. Wang told the Dispatcher that Victim1 has a history of drug use and possibly has a gun which he uses for hunting. Officers responded to the residence in San Francisco but Victim1 was not there.

On 3/23/19 at 1409 hours, Wang called San Francisco Police dispatch and requested a well-being check on Victim1's residence. Wang was advised to stop calling on this matter. On 3/23/19 at 1441 hours, Officer Solie (Utah) contacted San Francisco Police Dispatch to advise that Wang had contacted them to request a well-being check on Victim1. Officer Solie was advised of the disregard placed on that address.

On 3/23/19 at 1603 hours, I spoke with Sgt. Noguchi at Park Station who advised me that Wang was calling the station requesting well-being checks on Victim1's residence. On 3/23/19 at 1611 hours, I contacted Wang via telephone at ███████████ I told Wang that Victim1 and the child or both in good health and in a safe place. I reminded Wang of the terms of the Temporary Restraining Order, and asked her to stop calling San Francisco Police Dispatch and Park Station on this matter. I later played a brief portion of calls made from ███████████ or Victim1, who positively identified the caller as Wang.

On March 8, 2019, Judge Quinn of the San Francisco Superior Court signed a search warrant commanding me to search Google Inc. to obtain information associated with the google accounts, ██████████, ██████████, ██████████ and ██████████, all believed to be created and controlled by Wang.

On March 19, 2019, Google Inc. provided me with the search warrant results for the above listed Google accounts. I reviewed the results and discovered a Social Security Statement from the Social Security Administration and a Financial Profile from Experian (a credit monitoring service) in the name of Victim1, with the last four digits of his social security number. The Financial Profile from Experian included Victim1's first name, credit rating, credit usage and payment history.

On March 19, 2019, I contacted the Victim who told me that he did not give Wang permission to access or obtain his personal financial information through The Social Security Administration or Experian. The Victim told me that he did not provide Wang with his social security number, and has no idea how she may have obtained it. The Victim told me that there is no reason for Wang to have created and accessed accounts with the Social Security Administration or Experian using his name and social security number. The Victim later contacted Experian who told him that the Experian account was opened in his name by ███████████. Experian also told him that his San Francisco address and mobile phone number are listed on the account, and that the credit card on file is a Visa with an expiration date of ███████████

I contacted the Social Security Administration regarding the suspected unauthorized access by Wang. Special Agent Fagan conducted an investigation and provided me with a report of his findings.

On 2/26/19 and 2/27/19, Wang's MySSA account was accessed from IP address ████. I know from search warrant returns from Comcast that this IP address is assigned to ████ ████████████████████. On 2/26/19, IP address ████████ was used to attempt to create a MySSA account for Victim1, however identify verification questions were not answered correctly and a temporary lock was imposed. On 2/28/19, IP address ██████ was used again to attempt to answer identity verification questions to create Victim1's MySSA account. The questions were successfully answered and an account was created with user name ████████ and email address ████████████. The same IP address was used to login and access Victim1's online Social Security statement. There were approximately seventeen transactions related to Victim1's online Social Security statement that day. Through various search warrants I know that ████████ has been accessed from ████████ ████████.



Victim1 told me that in September of 2018, he lost his job due to poor performance. Since that time, Victim1 has been looking for another job, and has applied to numerous places. Victim1 told me that he believes he is qualified, and has gotten along in the interview process at a number of places, but continues to be turned down. Although Victim1 has been successful in removing some of the online postings, an internet search on Victim1's name still reveals a number of negative posts. Victim1 believes that this, along with the numerous people Wang has contacted in his network, has kept him from obtaining a new job.

Victim1 told me that he is extremely afraid for his safety and especially for the safety of his child. Victim1 states that he is staying with his parent's and lives in a constant state of fear and anxiety, not knowing what Wang will do next. Victim1 and his family have hired security specifically to protect them from Wang while at the residence. Victim1 is concerned for the safety of the child, because Wang has posted and distributed photos of dead babies. Victim1 also believes that the child's health and well-being are in danger since Wang has messaged that the baby is jaundiced, sick and on welfare, all while he was in her custody. Victim1 believes that Wang was threatening the safety of the child when she messaged his sibling that he/she could visit the child in the hospital. Victim1 told me that he is also afraid that Wang may result to violence given the fact that she had made prior threats to use a firearm against another individual in a similar case. Victim1 told me that he is fearful because Wang knows where he and his parents live, and has used police dispatch to try to obtain his location.

Victim1 told me that he has had trouble sleeping and concentrating. He told me that the constant online harassment and contacting of people in his network has destroyed his life and his ability to find work to provide for his child. Victim1 believes the police reports and restraining orders that Wang has filed against him are retaliatory in nature.

It should be noted that the Victim1's family law attorney has corresponded with Wang, and requested that she cease publishing defamatory posts online about the Victim, but the posts contined.

003056

# EXHIBIT D

**Thygesen Posted Under His True Name 3/24/19: "I'm going to kill this baby"**

# Exhibit D

Christoffer Thygesen Posted under his True Name on 3/24/19: "Christoffer Thygesen I'm going to kill this baby, so I don't have to pay child support."

000425

it Cards    M Google Alert - go...    Home - FAFSA on...    BI Life - Business Ins...    rh Accounting Jobs –...    My Cart (8)

DIRTY

**kayson wang**           June 4, 2019 at 10:44 AM

terry is evil and never feeds me. I am so so so hungry. when are u going to visit? grandpa alan is always looking at me crerepy and I dont want to be here anymore. I was so much happier wiht u in utah. Sgt Martinez of the SFPD was over here the other night and is working with the thygsn family to keep me away from u. i miss u so much. love, kayson.

Reply

**Kailin Wang**           May 16, 2019 at 8:26 AM

I would like to apologize to the entire Thygesen family, my family, Christopher, and especially Kayson. I don't deserve to have a child with the way I am acting. I would like to extend an olive branch to put all of this behind us. I am going to get psychological help and maybe one day I can be reuinted with Kayson.

If you want to give him another name, I totally understand. Be well, Christopher. Take good care of our son.

Reply

**Terry Thygesen**           April 29, 2019 at 12:47 AM

You are a Cyber stalking slore with SEVERE MENTAL ILLNESS.

Were are going to put you away, for 20 years just like Ryan Lin.

We hired the lawyer that put Ryan Lin away, your next.

You will never see your child, I'll guarantee it.

Reply

**Christoffer Thygesen**           March 24, 2019 at 11:46 PM

I'm going to kill this baby, so I don't have to pay child support

Reply

**POLICE Reporter**           April 25, 2018 at 9:02 PM

SPANISH FORK CITY ATTY: BURGI, ANA S

VS.

WANG, KAILIN ATTY: BRASS, EDWARD K

000425

# EXHIBIT E

**USA v. Steven Chase — FBI Description of VPN Use in Major Case**

Wang v. Thygesen | FDV-19-814465 | Confidential — Prepared for Legal Proceedings

# Exhibit E

USA v. Steven Chase show FBI decribing what a VPN is in a major Child Porn ring  PlayPen  Website Take down case.

000398

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

UNITED STATES OF AMERICA,      ) DOCKET NO. 5:15-cr-15-1
                               )
            vs.                ) VOLUME II of IV
                               )
STEVEN W. CHASE,               )
                               )
            Defendant.         )
_____)


TRANSCRIPT OF JURY TRIAL PROCEEDINGS
BEFORE THE HONORABLE RICHARD L. VOORHEES
UNITED STATES DISTRICT COURT JUDGE
SEPTEMBER 14, 2016


APPEARANCES:

On Behalf of the Government:

     REGINALD E. JONES, ESQ.,
     United States Department of Justice
     1400 New York Avenue, NW
     Washington, DC 20005

     CORTNEY S. RANDALL, ESQ.,
     Assistant United States Attorney
     227 West Trade Street, Suite 1700
     Charlotte, North Carolina 28202

On Behalf of the Defendant:

     PETER ADOLF, ESQ.,
     Federal Defenders of Western North Carolina
     129 West Trade Street, Suite 300
     Charlotte, North Carolina 28202




LAURA ANDERSEN, RMR
Official Court Reporter
United States District Court
Charlotte, North Carolina

000399

DIRECT - ALFIN

addresses and determined that they either resolved to tor notes, which as described earlier would make it very difficult or impossible to identify the subscriber, or they resolved to virtual private network servers.  A virtual private network functions very similarly to how the Tor network functions, in that, an individual who uses a virtual private network or a VPN, when they do so they may be sitting here in this courtroom, and when you turn on your VPN to access the internet, it will appear as though you're coming from somewhere else in the world.

So these last four IP addresses were IP addresses that we were not able to connect back to a real individual.

Q.    Let's move forward to the Comcast return ending in .61 that came back to the defendant's wife, Barbara Chase.

A.    I have it in front of me.

Q.    Okay.  Can you walk the jury through this return for Comcast?

A.    And so this is the information that was returned by Comcast.  It identifies the subscriber name as Ms. Barbara Chase.  The service address is 3570 15th Avenue SW, Naples, Florida, 34117.  There is a phone number provided with the account.  The type of service is listed as high speed internet service.  The account number is listed.  There is an unknown entry for start of service.  The account status was currently active at the time Comcast provided this information to the

DIRECT - ALFIN

internet, those websites will think that you are coming from somewhere else.

So, for example, you could be in Florida, use your VPN connection, and then a website may think that you're in Chicago or in Texas.

So the IP addresses that were contained in those log files did resolve to either VPN companies or other nodes on the Tor network.

But, again, there were some that came directly back to the defendant's residence.

Additionally, I testified to earlier, that for a period of time we were monitoring the internet activity going to and from the defendant's residence.  That internet activity captured information showing that a user of the internet account at the defendant's residence in Naples, Florida was, in fact, using such VPN software.

And, additionally as I mentioned earlier, the backup copy of the website also contained the postings of the website, including all the postings that had been made by the administrative account, by the PlayPen user accounts, and I prepared a summary exhibit of those postings.

Q.   Agent Alfin, I'm showing you Government Exhibit 41.  Do you recognize this document?

A.   I don't have anything on my screen.  Now I do.

Q.   Okay.

# EXHIBIT F

**Kronenberger Cloudflare Subpoena — IP Address Could Not Be Identified**

# Exhibit F

Internet Specialist Karl Kronenberger issued a  Subpoena on 5/16/19 to Cloudflare for IP Address for the 3/6/19 "Kill Baby K"  108.162.219.228, and Cloudflare responded that Holysmoke.org was logging the IP Addresses incorrectly and that they cannot pin point who that IP address belongs to.

000412

SUBP-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Karl S. Kronenberger (226112)<br>KRONENBERGER ROSENFELD, LLP<br>150 Post St., Suite 520, San Francisco, CA 94108<br>TELEPHONE NO.: 415-955-1155    FAX NO.: 415-955-1158<br>E-MAIL ADDRESS: karl@KRInternetLaw.com<br>ATTORNEY FOR *(Name)*: Respondent Kailin Wang | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Francisco
STREET ADDRESS:    400 McAllister St.
MAILING ADDRESS:    400 McAllister St.
CITY AND ZIP CODE:    San Francisco, CA 94108
BRANCH NAME:    Civic Center Courthouse

PLAINTIFF/PETITIONER:  Christoffer Stanford Thygesen

DEFENDANT/RESPONDENT: Kailin Wang

| DEPOSITION SUBPOENA<br>FOR PRODUCTION OF BUSINESS RECORDS | CASE NUMBER:<br>FDV-19-814465 |
|---|---|

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of deponent, if known)*:
Cloudflare, Inc. c/o Registered Agent Solutions, Inc. 1220 S St., Ste. 150, Sacramento, CA 95811

1. **YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS** described in item 3, as follows:

To *(name of deposition officer)*: Karl S. Kronenberger
On *(date)* : June 5, 2019                                      At *(time)*: 10:00 a.m.
Location *(address)*: 150 Post St., Suite 520, San Francisco, CA 94108

**Do not release the requested records to the deposition officer prior to the date and time stated above.**

a. ☐ by delivering a true, legible, and durable **copy** of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

b. ☑ by delivering a true, legible, and durable **copy** of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

c. ☐ by making the **original** business records described in item 3 available for inspection at your business address by the attorney's representative and permitting **copying** at your business address under reasonable conditions during normal business hours.

2. The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.

3. The records to be produced are described as follows *(if electronically stored information is demanded, the form or forms in which each type of information is to be produced may be specified)*:

☑ Continued on Attachment 3.

4. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued: May 16, 2019

Karl S. Kronenberger
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PERSON ISSUING SUBPOENA)

Attorney for Respondent

(Proof of service on reverse)          (TITLE)                              Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
SUBP-010 [Rev. January 1, 2012]

DEPOSITION SUBPOENA FOR PRODUCTION
OF BUSINESS RECORDS

Code of Civil Procedure, §§ 2020.410–2020.440;
Government Code, § 68097.1
www.courts.ca.gov

000412

000413

**Attachment 3**

1.      Documents sufficient to identify the user data and account holder for following Internet Protocol (IP) addresses on the following date and time, including any associated names, addresses, email addresses, phone numbers, recovery email addresses, IP addresses used on other dates, Media Access Control (MAC) addresses, IMEI numbers, and user agents:

| IP Address | Date |
|---|---|
| 108.162.219.228 | March 6, 2019 |

*"Document(s)" shall mean all writings under Cal. Evid. Code §250 in whatever form or medium, including electronically stored information.*

**The subpoena requests documents in your possession, custody, or control and includes any and all archived data or logs.**

The subpoena specifically excludes any communications, contents of a user's private mail messages, or stored content files held or maintained on behalf of a user that are protected by the Stored Communications Act, 18 U.S.C. §2701, et seq.

000413

000414

Hi Karl,

We can't produce any data based on an IP address. It appears the website in question (which is a Cloudflare customer) was logging the wrong IP addresses. The best information we can provide is the geo location of the IP address.

https://www.maxmind.com/en/geoip-demo

Regards,
David

This email is a service from Cloudflare Trust & Safety. Delivered by **Zendesk**

000414



**Karl Kronenberger** <karl@krinternetlaw.com>

to me, Leah, Liana, Terry ▾

Wed, May 22, 2019, 10:54 AM

Hi Kailin,

Thanks for letting me know about this. SGT Martinez reached out, we played phone tag over the last 30 minutes, and I finally got her on the phone.

My plan was to inform her of the "new evidence" from Cloudflare, where they say the IP address used for the "kill my baby" was not accurate/incorrectly logged by HolySmoke.org. However, she quickly admitted that that post is meaningless to her because it was from a VPN or otherwise not provable. The main thing she asked is that if there is any evidence that we want her to look at, we should give it to her. I told her I would review all the information and get back to her.

She also said that the Utah attorney is misrepresenting what SGT Martinez said.

Btw – I did not (obviously) make any admissions, and I was in full advocacy mode, discussing how Thygesen's attorneys are drowning you in litigation because of their massive financial advantage.

So, now there are two things I need from you, or to discuss with you.

1.  Since I have mostly been working on incoming subpoenas, if there is anything out there that you want me to examine further so we can convey it to SGT Martinez, let me know.
2.  On the child custody side of things, I still do not understand how important the "kill my baby" post is to Thygesen's entire case. Can you help me understand that?

Very best regards,

Karl

000428

| Email | Post | IP Address | Cloudflare/VPN/Tor |
|---|---|---|---|
| | **2/12/2019:** Christoffer Post Thread Started | 162.158.63.102 | Newark, NJ |
| Kelly@kell.com | **2/15/19:** Kailin Wang is an unfit parent, easy full custody win | 172.68.47.104 | Los Angeles, CA |
| nope@nope.com | **2/17/19:** Posted. Kailin Wang is in violation of her probation, she's been arrested for assault, Chris will get Full Custody. | 108.162.219.54 | Newark, NJ |
| Jj@jj.com | **2/18/19:** Posted. "Kailin Wang is getting locked up soon". | 172.68.34.108 | Denver, CO |
| GG@gg.com | **2/28/19:** "Kailin Wang is a unfit mother, get this child away from her, it is a dangerous situation". | 108.162.219.54 | Newark, NJ |
| Kailin@wang.com | **3/6/19:** " I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder". "I hope his parents are happy to hear this !!!" | 108.162.219.228 | Newark, NJ |
| ▮▮▮▮gmail.com | "I would like to apologize to the entire Thygesen family, my family, Christopher, and especially ▮▮▮▮ I don't deserve to have a child with the way I am acting. I would like to extend an olive branch to put all of this behind us. I am going to get psychological help and maybe one day I can be reuinted with ▮▮▮▮<br><br>If you want to give him another name, I totally understand. Be well, Christopher. Take good care of our son." | 185.220.101.45 | Anonymous Proxy |
| christoffer.thygesen@gmail.com | | | |

000428

Case 2:24-cr-00163-TS    Document 157-2    Filed 04/19/26    PageID.8227    Page 55 of 211

# GeoIP2 City Database Demo

**GeoIP2 Precision Services**

| Country |
| --- |
| City |
| Insights |
| Free Trial Account |

**GeoIP2 Databases**

| Country |
| --- |
| City |
| City Database by Continent |
| ISP |
| Domain Name |
| Connection Type |
| GeoLite2 Commercial Redistribution |

**GeoIP2 Enterprise Product Suite**

| Anonymous IP |
| --- |

**IP Addresses**

```
172.69.42.84
162.158.63.102
172.68.47.104
172.69.42.84
172.68.34.108
108.162.219.54
108.162.219.228
172.69.22.10
```

Enter up to 25 IP addresses separated by spaces or commas. You can also test your own IP address.

Submit

## GeoIP2 City Results

| IP Address | Country Code | Location | Postal Code | Approximate Coordinates* | Accuracy Radius (km) | ISP | Organization | Domain | Metro Code |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 172.69.42.84 | US | Salt Lake City, Utah, United States, North America | 84138 | 40.7592, -111.8875 | 50 | Cloudflare | Cloudflare | | 770 |

Case 2:24-cr-00163-TS    Document 157-2    Filed 04/19/26    PageID.8228    Page 56 of 211

Enterprise

User Count

| IP Address | Country Code | Location | Postal Code | Approximate Coordinates* | Accuracy Radius (km) | ISP | Organization | Domain | Metro Code |
|---|---|---|---|---|---|---|---|---|---|
| 162.158.63.102 | US | Newark, New Jersey, United States, North America | 07175 | 40.739, -74.1697 | 500 | Cloudflare | Cloudflare | | 501 |
| 172.68.47.104 | US | Los Angeles, California, United States, North America | 90009 | 34.0544, -118.244 | 500 | Cloudflare | Cloudflare | | 803 |
| 172.69.42.84 | US | Salt Lake City, Utah, United States, North America | 84138 | 40.7592, -111.8875 | 50 | Cloudflare | Cloudflare | | 770 |
| 172.68.34.108 | US | Denver, Colorado, United States, North America | 80208 | 39.7388, -104.9868 | 500 | Cloudflare | Cloudflare | | 751 |

| IP Address | Country Code | Location | Postal Code | Approximate Coordinates* | Accuracy Radius (km) | ISP | Organization | Domain | Metro Code |
|---|---|---|---|---|---|---|---|---|---|
| 108.162.219.54 | US | Newark, New Jersey, United States, North America | 07175 | 40.739, -74.1697 | 200 | Cloudflare | Cloudflare | | 501 |
| 108.162.219.228 | US | Newark, New Jersey, United States, North America | 07175 | 40.739, -74.1697 | 200 | Cloudflare | Cloudflare | | 501 |
| 172.69.22.10 | US | San Jose, California, United States, North America | 95141 | 37.3388, -121.8914 | 500 | Cloudflare | Cloudflare | | 807 |

ISP and Organization data is included with the purchase of the GeoIP2 ISP database or with the purchase of the GeoIP2 Precision City or Insights services.

Domain data is included with the purchase of the GeoIP2 Domain Name database or with the purchase of the GeoIP2 Precision City or Insights services.

*Latitude and Longitude are often near the center of population. These values are not precise and should not be used to identify a particular address or household.*

# EXHIBIT G

**T-Mobile CSLI — Wang's Phone in NYC on 3/6/19 (~15.2 miles from Post Origin)**

# Exhibit G

"T-Mobile Law Enforcement Response on Cell Site Location Information (CSLI) On March 6, 2019 Wang's phone showed her in the vicinity of 60 West, 70th St. Ny, Ny. It is approx. 15.2 miles (24,462 meters) from 60 West, 70th st. Ny, Ny. to Newark, NJ. The Cloudflare IP address for the 3/6/19 Kill Baby K post is identified as 108.162.219.228, that IP address has NOT been matched to the 21,000 IP addresses from the Medium Account nor the 100,000 IP addresses contained in the IP addresses found in the Search Warrant returns from the 16 Gmail Accounts. Thus, that is not possible Wang made the March 6, 2019 Kill Baby K post."""

60 W 70th St, New York, NY 10023

Newark, New Jersey



**53 min** (15.2 mi) via NJ-495 W

Directions

**56 min** (18.2 mi) via I-95 S

**59 min** (19.2 mi) via NJ-3 W and NJ-21 S

**T··Mobile**

**metro** by **T··Mobile·**

Go Back to Req. to Mdify Opinion

Law Enforcement Relations

4 Sylvan Way, Parsippany, N.J. 07054

Phone: (973) 292-8911 Fax: (973) 292-8697                                                                         August 06, 2020

---

T-Mobile / MetroPCS Tracking ID: 2847939

I, Deisi Franco, attest, under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. Section 1746, that the information contained in this declaration is true and correct. I am a United States citizen and am over eighteen years of age. I am employed by T-Mobile US, Inc. (hereinafter, "the Company") as a custodian of records and therefore am qualified as a result of my position to make this declaration. My official title is Custodian of Records.

I certify that all of the records described below and attached hereto are duplicates of the original and are true and complete copies of records maintained by the Company. Said records consist of several electronic files produced in T-Mobile US, Inc. Case No.2847939 in response to a lawful request issued to the company.

Description of records:

| MSISDN/Identifier | Start Date | End Date | Requested Item |
|---|---|---|---|
| 9174324181 | 08/06/2018 | 12/31/2019 | Call Details With Cell Sites |
| 9174324181 | 02/01/2018 | 12/31/2019 | Subscriber Info |
| 9179573166 | 02/01/2018 | 12/31/2019 | Subscriber Info |
| 9179573166 | 08/06/2018 | 12/31/2019 | Call Details With Cell Sites |

I further state that:
   A) Such records were made at or near the time of the occurrence of the matters set forth by (or from information transmitted by) a person with knowledge of those matters;
   B) Such records were kept in the course of regularly conducted business activity;
   C) The business activity made such records as a regular practice; and
   D) If such record is not the original, such record is a duplicate of the original.

This certification is intended to satisfy Rules 803(6), 902(11), 902(13) and / or 902(14) of the Federal Rules of Evidence and / or any state equivalents.

I hereby certify that the foregoing statement made by me is true. I understand that if any of the statements made by me herein are willfully false, I am subject to punishment.

Sincerely

Law Enforcement Relations Group

51

| Date | Time | Dur | Type | Direction | Number A | Number B | Street | City | State | Zip |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/05/2019 | 23:28:15 | | SMSC | | 13476689744 | | | | | |
| 03/05/2019 | 23:35:50 | 463 | moc | Outgoing | 19174324181 | 14155287000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:43:57 | 32 | moc | Outgoing | 19174324181 | 14156559479 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:45:04 | 156 | moc | Outgoing | 19174324181 | 14157806300 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:47:57 | 3 | moc | Outgoing | 19174324181 | 14155287000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:48:25 | 51 | moc | Outgoing | 19174324181 | 16505130484 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:50:27 | 6 | moc | Outgoing | 19174324181 | 16507570800 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:50:51 | 31 | mtc | Incoming | 14158341120 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:50:52 | 31 | moc | Outgoing | 14158341120 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:51:08 | 37 | moc | Outgoing | 19174324181 | 16507520800 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:51:26 | | SMSC | | 128 | | | | | |
| 03/05/2019 | 23:52:20 | 55 | moc | Outgoing | 19174324181 | 14158341120 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:53:21 | 627 | mtc | Incoming | 16505242144 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 00:04:40 | | SMSC | | 19174324181 | | | | | |
| 03/06/2019 | 00:05:24 | | SMSC | | 13476689744 | | | | | |
| 03/06/2019 | 00:05:36 | | SMSC | | 13476689744 | | | | | |
| 03/06/2019 | 01:03:38 | 32 | mtc | Incoming | 14159922322 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 01:04:09 | 32 | moc | Outgoing | 14159922322 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 01:04:44 | | SMSC | | 128 | | | | | |
| 03/06/2019 | 01:08:00 | 26 | moc | Outgoing | 19174324181 | 14157816500 | 65 West 70thStreet | New York | NY | 10023 |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

Page: 88 of 201

140

| Date | Time | Duration | Type | Direction | Number A | Number B | Address | City | State | Zip |
|------|------|----------|------|-----------|----------|----------|---------|------|-------|-----|
| 03/06/2019 | 01:12:49 | | mtc | Incoming | 14153470584 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 01:12:59 | 11 | moc | Outgoing | 19174324181 | 14153470584 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 01:13:47 | 962 | mtc | Incoming | 14159922322 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 05:01:21 | 1450 | mtc | Incoming | 17074301893 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 05:40:33 | 11 | moc | Outgoing | 19174324181 | 14155513637 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 15:18:48 | | mtc | Incoming | 12183964489 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 16:30:13 | 52 | mtc | Incoming | 16466794947 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 16:32:06 | 46 | moc | Outgoing | 19174324181 | 16466794947 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 16:32:57 | | moc | Outgoing | 19174324181 | 14153470584 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:18:21 | | mtc | Incoming | 18014815843 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:28:34 | 44 | moc | Outgoing | 19174324181 | 14155513744 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:29:44 | | moc | Outgoing | 19174324181 | 14155513900 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:30:36 | | moc | Outgoing | 19174324181 | 14155513903 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:32:16 | 153 | mtc | Incoming | 182404 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:44:40 | 292 | mtc | Incoming | 13854281000 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 19:47:51 | | mtc | Incoming | 18007477804 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 19:52:41 | | SMSC | | 32665 | | | | | |
| 03/06/2019 | 19:52:42 | | SMSC | | 19174324181 | | | | | |
| 03/06/2019 | 19:53:12 | 25 | mtc | Incoming | 17076581296 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

Page: 89 of 201

154 / 405

141

| Date | Time | | Type | Direction | Number | Number | Address | City | State | Zip |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/06/2019 | 19:55:43 | 25 | moc | Outgoing | 17076581296 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 19:54:11 | | SMSC | | 128 | | | | | |
| 03/06/2019 | 19:54:39 | 28 | moc | Outgoing | 19174324181 | 14158341120 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:08:24 | 6 | moc | Outgoing | 19174324181 | 14155513900 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:09:53 | 2 | moc | Outgoing | 19174324181 | 14155513903 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:20:05 | 19 | moc | Outgoing | 19174324181 | 14155513744 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:21:23 | | moc | Outgoing | 19174324181 | 14158341120 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:22:42 | | moc | Outgoing | 19174324181 | 14155513903 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:22:48 | | SMSC | | 19294130709 | | | | | |
| 03/06/2019 | 20:48:34 | 791 | moc | Outgoing | 19174324181 | 18669013212 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:56:57 | | mtc | Incoming | 18007477804 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 21:51:44 | 996 | moc | Outgoing | 19174324181 | 18669013212 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 22:00:03 | | SMSC | | 19174324181 | | | | | |
| 03/06/2019 | 22:00:03 | | SMSC | | 732873 | | | | | |
| 03/06/2019 | 23:08:01 | 726 | mtc | Incoming | 17074301893 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:21:07 | 29 | moc | Outgoing | 19174324181 | 18015386155 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:21:48 | 182 | moc | Outgoing | 19174324181 | 18664357414 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:25:41 | 43 | moc | Outgoing | 19174324181 | 18018518026 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:26:40 | | moc | Outgoing | 19174324181 | 18014291000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:26:55 | | moc | Outgoing | 19174324181 | 18014291000 | 65 West 70thStreet | New York | NY | 10023 |

**Information Provided By:**

T-Mobile US, Inc.

Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054

Tel: 866-537-0911; Fax: 973-292-8697

Page: 90 of 201

155 / 405

142

| Date | Time | | Type | Direction | Number A | Number B | Address | City | State | Zip |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/06/2019 | 23:45:48 | | moc | Outgoing | 19174324181 | 18014291000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:08:14 | 566 | moc | Outgoing | 19174324181 | 18017879755 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:19:39 | 58 | moc | Outgoing | 19174324181 | 18015368500 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:28:55 | 340 | moc | Outgoing | 19174324181 | 14156668000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:55:51 | | mtc | Incoming | 18018044700 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:56:20 | 28 | mtc | Incoming | 18018044700 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:56:51 | 28 | moc | Outgoing | 18018044700 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:57:22 | | SMSC | | 128 | | | | | |
| 03/07/2019 | 01:31:09 | 249 | moc | Outgoing | 19174324181 | 14155530123 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 01:37:45 | 323 | mtc | Incoming | 14155530123 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 04:59:52 | 6 | mtc | Incoming | 18014008982 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 04:59:58 | 6 | moc | Outgoing | 18014008982 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 05:00:22 | 3 | mtc | Incoming | 18014008982 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 05:00:25 | 3 | moc | Outgoing | 18014008982 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 06:46:57 | | mtc | Incoming | 18014008982 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 14:23:38 | | SMSC | | 19174324181 | | | | | |
| 03/07/2019 | 14:23:38 | | SMSC | | 24273 | | | | | |
| 03/07/2019 | 15:32:19 | | mtc | Incoming | 18007477815 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 16:48:24 | 101 | moc | Outgoing | 19174324181 | 18015384100 | 65 West 70thStreet | New York | NY | 10023 |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

Page: 91 of 201

# EXHIBIT H

**6/25/19 Email: Wang to Atty Chase Re: Expert Witness to Identify 3/6/19 Poster**

# Exhibit H

6/25/19 Email from Wang to Atty Darrick Chase (died by Suicide on 1/21/23) to  Meet and Confer with about getting an Expert Witness to reveal the identity of the 3/6/19 "Kill Baby K" poster.  Thygesen Failed to Respond because he framed Wang for it.

 Gmail

## Aaron Minc
2 messages

**Lanie Lee** <lancewr12@gmail.com>                                      Thu, Jul 25, 2019 at 11:25 PM
To: Darrick Chase <dchase@kayemoser.com>

Mr. Chase,

As you know there are no posts regarding the well being of Kayson besides the ones made by Christoffer Thygesen in regards to " Kill baby K" and for Ms. Wang to kill herself and numerous others ones discovered since 3/6/19.

I do want to offer this suggestion  that can be helpful to your discoveries.
Though to prove Christoffer did'nt do it you can always seek out this Aaron Minc, he can maybe uncover the truth. And I'm bankrupted from this unlawful litigation brought on by your client. There is
 no shame in clients as wealthy as the Thygesen's drowning a first time ethinic mother and her family in unlawful litigation as your clients have.

But my feeling is, you won't do more discovery on that post and on holysmoke because your client posted it.  The Thygesen's certainly financially have the capacity to find the identity of that poster. But it's your client who did it, that's why Christoffers legal team deliberately avoid discovery on that site like a plague.

I hope this suggestion can be helpful to both of us.

Regards,


**Screenshot_20190725-221337_Gmail.jpg**
882K

**Lanie Lee** <lancewr12@gmail.com>                                      Sat, Aug 10, 2019 at 11:27 AM
To: Nickolas Pope <pope@holysmoke.org>

[Quoted text hidden]


**Screenshot_20190725-221337_Gmail.jpg**
882K



# EXHIBIT I

**Judge Darwin Did NOT Believe Wang Made the 3/6/19 "Kill Baby K" Post**

# Exhibit I

Judge Darwin did NOT believe Wang made that 3/6/19 "Kill Baby K" Post

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

UNIFIED FAMILY LAW COURT

DEPARTMENT 404

---oOo---

HONORABLE RICHARD C. DARWIN, JUDGE

_____

IN RE THE MATTER OF            )
                               )
CHRISTOFFER STANFORD           )
THYGESEN,                      )
              PETITIONER,      )   CASE NO. FDV-19-814465
                               )
VS.                            )
                               )
              KAILIN WANG,     )
              RESPONDENT.      )
_____

---oOo---

REPORTER'S TRANSCRIPT
OF
PROCEEDINGS

WEDNESDAY, MARCH 6, 2019

---oOo---

A P P E A R A N C E S:
  FOR THE PETITIONER:          KAYE•MOSER•HIERBAUM•FORD LLP
                               BY:  DARRICK T. CHASE
                               101 California Street, Suite 2300
                               San Francisco, CA, 94111

                               RIDDER, COSTA & JOHNSTONE
                               BY:  ERICA T. JOHNSTONE
                               12 Geary St., Suite 70
                               San Francisco, CA, 94108

REPORTED BY: VICKI GROSS, CSR
          CERTIFICATE NO. 5525

THE COURT:  All right.  So what I need from you, and you can take your time, we've got all morning, to bring to me a legal basis for --

MR. CHASE:  Email.

THE COURT:  Yes, an oral motion for substituted service, number one, that I can make this without notice of any kind or without a written motion.  And second, that one viable and legal means of substitute service is email.

MR. CHASE:  Yes.

May I ask while we are here, would Your Honor entertain under the Family Code, the domestic provisions of the Family Code, this Court does have jurisdiction to make ex parte custody orders so long as -- there's two provisions of 6323 and we have submitted our points and authorities -- if it's necessary, which we believe that it is based upon the Code.

Secondly, this Court also has authority under Family Code Section 3424, it's a very wide provision for emergency jurisdiction.

Our concern is not -- our concern is that the multiple exhibits, A through U-1, the multiple, repetitive, extremely disturbing posts that Ms. Wang has done on social media, from Medium.com to Instagram.

THE COURT:  Those are attached to your request?

MR. CHASE:  Yes.  Just for example -- and I appreciate you hearing me out here -- just for example, in the first Medium post which we submitted with our February 15th application, at the bottom of the Medium post, that was our original Exhibit D, you will see her email address that she mistakenly left in,

Medium.com, the Lance etc.  So these are clearly her.  Plus when you look at all the incredibly personal and private information that are included in these repetitive posts, this is no doubt from her.  And again our evidence is preponderance, not no doubt.

But our concern is, and just going to page 2 of our March 4th declaration, just a small sample of what's been posted on Instagram, 2/15, "Christopher Thygesen impregnated me and forced me to kill his 21-week-old child."  That's Exhibit B-1.

Exhibit C-1, "Christopher Thygesen/data scientist at Square Inc. forced 21-plus week abortion on me."  That post includes a photo of a dismembered 20-plus-old week aborted fetus with the caption, "Christopher Thygesen coerced me into a 20-plus-week abortion."

These go on and on, Your Honor, these repetitive posts. Initially she said that he had forced her to kill her 18-week-old baby, then became a 21-week-old baby, then 24 weeks.

The baby was born.  I have a birth certificate that establishes that her residence -- that A, the baby was born, and I have the original that I brought today and I gave Your Honor a copy.

So we are extraordinarily concerned that she is mentally ill.  She does have, it's in our initial papers, she does have a history of mental illness.  There is a conviction in New York City, we have attached the papers in our pleadings, where she was required to go to stalking therapy or some similar therapy.

We also attached as part of our papers a declaration from a Rory Will, that he told of extensive social harassing, creating evidence, having people pretending to be him, impersonating him.

So she has a history of, A, she has a history of domestic abuse against her father.  That was back in Provo, Utah.

THE COURT:  Let me ask you.

MR. CHASE:  So we are asking the Court to --

THE COURT:  You want me to grant ex parte custody orders today?

MR. CHASE:  Yes.

THE COURT:  And on the reasons that you just described.  I'll have to take a look at that.  I am not sure I can.

MR. CHASE:  All right.  We will come back.

THE COURT:  I will look at it, and I am going to call you back.

(Short break taken)

---oOo---

THE COURT:  So let me re-call line 2 of the 8:30 calendar, that's Thygesen and Wang.

Why don't we have appearances again just for the record.

MR. CHASE:  Good morning, Your Honor.  Darrick Chase and Erica Johnstone appearing on behalf of Christoffer Thygesen, who is present in court with us.

THE COURT:  All right.  So when we broke I had requested -- there were two issues pending I believe.  There was a question of whether there is a code section that allows me to issue an order permitting substituted service in an oral motion.  And actually I think there is an even more fundamental question whether it's even, substitute service is even permitted at all for restraining orders under Family Code Section 243.  So set that aside for a

MR. CHASE:  They have all received harassing communications, yes.

Let me double-check one thing.

(Discussion off the record)

THE COURT:  I am going to -- part of the DV-140, which is the child custody and visitation order, says no visits for mom, and then there is a separate supervised visits for mom.

MR. CHASE:  We prefer no visits.  We just, I wanted to make sure that I covered everything on the forms.

THE COURT:  I am going to cross out supervised visitation because I think that's jumping the gun.

Now I am going to take off the extra section on these findings because this is being done on an ex parte basis.  So I am not making any findings at this point other than he's established, and the Court already did that, found that there was domestic abuse sufficient to issue a temporary restraining order.  I don't want to make it that we've done anything beyond that.  I haven't made any findings.  There's been no evidence, there has not been an evidentiary proceeding, so I don't want to imply that there has.

So it doesn't change what the relief I'm giving you.  I just want to make sure it's clear that I am not making those findings.

MR. CHASE:  Yes.

THE COURT:  And I will sign it.

MR. CHASE:  And is the effecting order on there as well? The granting of the orders, are these granted other orders part of this order?

THE COURT:  All I am taking off are the findings that you

attached and the supervised visitation component, which is inconsistent with the no visit.

So Ms. Li, I just need you to fill in the dates for those.

Okay.  And let's see if Ms. Wang shows up.

MR. CHASE:  Yes.  Thank you very much, Your Honor.


---oOo---

STATE OF CALIFORNIA          )

                             )

COUNTY OF SAN FRANCISCO    )


     I, VICKI GROSS, Certified Shorthand Reporter Licensed in the State of California, License No. 5525, Official Court Reporter of the Superior Court of the State of California, in and for the City and County of San Francisco, do hereby certify that the foregoing proceeding was reported by me and was thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceeding.

     I further certify that I am not of counsel or attorney for either or any of the parties in the foregoing proceeding and caption named, or in any way interested in the outcome of the cause named in said caption.


     Dated:  March 10, 2019

     _____

          VICKI GROSS CSR, #5525

1

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

UNIFIED FAMILY LAW COURT

DEPARTMENT 404

---oOo---

HONORABLE RICHARD C. DARWIN, JUDGE


CHRISTOFFER STANFORD THYGESEN,        )
                                      )
                PETITIONER,           )
                                      )COURT NO. FDV-19-814465
        vs.                           )
                                      )
KAILIN WANG,                          )
                RESPONDENT.           )
_____)

**REPORTER'S TRANSCRIPT Of PROCEEDINGS**

**MAY 8, 2019**


APPEARANCES OF COUNSEL:
    **FOR PETITIONER:**
    KAYE, MOSER, HIERBAUM
    BY:  DARRICK TRACEY CHASE
    101 California Street, Suite 2300
    San Francisco, California  94111

    RIDDER, COSTA & JOHNSTONE LLP
    BY:  ERICA JOHNSTONE
    12 Geary Street, Suite 701
    San Francisco, California  94108

    **FOR RESPONDENT:**
    LAW OFFICES OF AUDREY T. COURSON
    BY:  AUDREY T. COURSON
    100 Pine Street, Suite 1250
    San Francisco, California  94111

    LAW OFFICES OF KARL S. KRONENBERGER
    BY:  KARL S. KRONENBERGER
    150 Post Street, Suite 520
    San Francisco, California  94108


Reported By:  Ann Delgado, CSR No. 11185

32

MR. CHASE:  The Los Angeles matter, which I have tried to get them to transfer it up here, is set on the 30th.

THE COURT:  But your discovery specialist is here.  She can -- I'd like to get this heard and done and resolved.

MR. CHASE:  Is it possible to have it -- I'm not trying to put it out.  Is it possible to put it on the 28th?

THE COURT:  No, that day is full.

MR. CHASE:  Could it be the 4th?  That's a Tuesday.  I would prefer to be here.

THE COURT:  June 4?

THE CLERK:  How about the 6th?

MR. CHASE:  Okay.

THE COURT:  And we will have a -- I will allow Respondent to file additional briefing by next Friday, the 17th.  That will be the briefing on what I'm characterizing as your motion to quash.  And then Respondent -- the response from Petitioner to that motion will be the 24th, and a reply by Respondent on the 31st.  Just trying to even this out.

MS. COURSON:  Your Honor, there's two more issues I would like to address.

THE COURT:  I have a restraining order to be heard on line 4.  So what is left?

MS. COURSON:  Well, first of all, visitation.  My client has not seen her son in two months now.  There was a visitation order in the Utah court that awarded reasonable supervised visitation to my client.  I mean, there's -- there is absolutely no way why she should not be able to see her child.  There's been no allegations of abuse against the

33

child, no allegations of abandonment, no allegations that mother has a substance abuse problem and the child is in danger when with mom.

THE COURT:  Is there any objection to supervised visitation?

MR. CHASE:  At this point, Your Honor, yes.  At this point, Your Honor, we do object to supervised visitation.  We do believe that we have shown beyond a preponderance of the evidence that Ms. Wang has made all these postings that are in these books and that I have attached to my pleadings.  Those are pleadings saying, "You forced me to abort my baby.  You forced me to kill my baby, my" --

THE COURT:  I'm aware of all of that.

MR. CHASE:  In my opinion, Ms. Wang -- the court in Utah found she is mentally unstable.  The order is there.  I don't want to paraphrase an order from the Utah court.  But Ms. Wang was not stable or healthy.  Here we presented even more evidence that we believe she is mentally unstable and unwell. And until such time -- we are concerned with her being with this child.  And there has not been any evidence of how much time she has actually spent with this child.  We're concerned that she has severe mental health issues.

It's a baby.  It's not five-year-old that can talk or anything.  It's a five-month-old baby.  And a five-month-old baby does not have any defenses against somebody -- we do not think it's in the best interest of this baby.  I know the Court issued its order on March 6.  That was a no contact order based upon the initial pleadings.  I understand that

34

they want to litigate this and say she didn't do it.  We have tried to do this as expeditiously as possible, and now we are running into objections.

THE COURT:  I don't have enough information to grant supervised visitation.  If you want to make a motion to modify visitation and -- however you want to do it.  But at this point the concerns that lead me to issue the no visitation order remain.  I am very concerned about the Respondent's conduct.  So I'm not going to issue a visitation order.  You are probably going to be set for a trial in 405 in midsummer. If you want to bring to the court evidence as to why she is going to be safe and can be trusted with an infant, even in a supervised setting, you can bring it to me, but I can't --

MS. COURSON:  Your Honor, at Rally with a supervisor -- it's the policy of the State of California that both parents should have frequent and continued contact.  It's supervised visits.  She is the mother.  She has not seen her child in two months.

THE COURT:  I agree this is a rare instance, but it's one that -- I'm going to stick with the no visitation order in this instance.

MR. CHASE:  I have an order continuing the restraining order.

MS. COURSON:  Your Honor, there is just one last issue. Under Family Code Section 3426, this court is required to communicate with the Utah court.  So I just request that that happens before --

MR. CHASE:  It's not required.

Ann Delgado, CSR No. 11185

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

UNIFIED FAMILY LAW COURT

DEPARTMENT 404

---oOo---

HONORABLE RICHARD C. DARWIN, JUDGE

CHRISTOFFER STANFORD THYGESEN,          )
                                        )
                PETITIONER,             )
                                        )COURT NO. FDV-19-814465
        vs.                             )
                                        )
KAILIN WANG,                            )
                RESPONDENT.             )
_____ )

**REPORTER'S TRANSCRIPT Of PROCEEDINGS**

**JUNE 25, 2019**

APPEARANCES OF COUNSEL:
    **FOR PETITIONER:**
    KAYE, MOSER, HIERBAUM
    BY:  DARRICK TRACEY CHASE
    101 California Street, Suite 2300
    San Francisco, California  94111

    RIDDER, COSTA & JOHNSTONE LLP
    BY:  ERICA JOHNSTONE
    12 Geary Street, Suite 701
    San Francisco, California  94108

    SUCHERMAN & INSALACO LLP
    BY:  MICHELENE INSALACO
    100 Spear Street
    San Francisco, California  94105

    **FOR RESPONDENT:**
    LAW OFFICES OF SAMI MADDEN MASON
    BY:  SAMI MADDEN MASON
    141 Bryce Canyon Road
    San Rafael, California  94903

Reported By:  Ann Delgado, CSR No. 11185

afternoons.  It just doesn't make sense.  It'll be broken up by days and days.  I think you need to go back to 405.

MS. INSALACO:  Can you give us a date to go back to 405?

THE COURT:  We can go off the record.

(Discussion off the record.)

THE COURT:  Back on the record.

MS. INSALACO:  We would request there not be visits until the DV hearing, because there are threats to kill the child. And whether they are at Rally or not, the child is potentially at risk until the court has heard the evidence and assessed, perhaps, the psychological well-being of the respondent.  It could put the child at risk to have any visits even at Rally.

THE COURT:  That argument was made the last time we were here.  And I have ordered Rally supervised visitations in other situations.  I'm very confident that they are well-equipped to make sure no harm will come to your son.  So I think you should feel confident.  It's a hospital.  There is staff everywhere, and the whole visit is observed.  So I am confident that it is a safe environment for those visits. Okay.  Off the record.

(Proceedings concluded.)

# EXHIBIT J

**Judge Wiley Did NOT Believe Wang Made the 3/6/19 "Kill Baby K" Post —
Multiple Transcripts**

# Exhibit J

Judge Wiley did NOT believe Wang made that 3/6/19 "Kill Baby K" Post

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

HONORABLE MONICA WILEY, JUDGE PRESIDING

UNITED FAMILY COURT

DEPARTMENT NO. 405

---OOO---

CHRISTOFFER STANFORD THYGESEN,        )
                                      )
                  PETITIONER,         )
                                      )
VS.                                   )FDV-19-814465
                                      )
KAILIN WANG,                          )
                                      )
                  RESPONDENT.         )
                                      )   PAGES 1-47
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

DECEMBER 16, 2020

REPORTED BY:

JOANN M. PRIOR, CSR 9129 OFFICIAL COURT REPORTER

A P P E A R A N C E S:


FOR THE PETITIONER:   RAPPAPORT & SHERIDAN
                      BY:  **DOUGLAS L. RAPPAPORT, ESQ**
                      260 CALIFORNIA STREET, SUITE 1002
                      SAN FRANCISCO, CA 94111

                      SUCHERMAN & INSALACO, LLP
                      BY:  **MICHELENE INSALACO, ESQ.**
                      **(PRESENT VIA BLUEJEANS APPLICATION)**
                      101 MISSION STREET, SUITE 1640
                      SAN FRANCISCO, CA 94105

FOR THE RESPONDENT:   IN PROPRIA PERSONA,
                      BY: **KAILIN WANG**
                      **(PRESENT VIA BLUEJEANS APPLICATION)**

                      FURST & PENDERGAST
                      BY:  **MARGARET PENDERGAST**, ESQ.
                      **(PRESENT VIA BLUEJEANS APPLICATION)**
                      1630 UNION STREET
                      SAN FRANCISCO, CA 94123

and lots of connections and a lots of people working for them.

There has been so many false allegations.  For example, March 6th, that post has been proven to be completely false.  Okay?  And CPS because of that post removed the child, but after a thorough investigation they reversed themselves.  Judge Darwin reversed himself.  And if you look at the chronology report, I think I attached it to my FL-150, Sergeant Martinez of the San Francisco police, they executed several search warrants in addition to subpoenas on that "kill baby" post that magically appeared under my legal name on March 6th and they have declined to file any charges relating to the child.

Basically, they keep using these arguments that have already been rejected judge after judge, by the police, and yet they are bringing it up again now hoping that they are able to convince another judge on arguments that have already been proven and rejected.

As far as Terra Firma, I just ask the Court to take a look at all the other reports.  There is a bigger file.  There is supposed to be 312 pages of Rally and ACAFS reports.  I'm not sure if Your Honor had a chance to look at those, but it's a ton of positive reviews.  There is no reviews like Terra Firma has.  The other place has never made comments like that and I have been with them for much, much longer.

And on top of that, I'm not sure if Your Honor saw the most recent recommendation from ACAFS.  Douglas Rappaport specifically requested evaluation on me when -- yesterday and you Utah ACAFS, Kaydeen, she wrote an evaluation.  Unfortunately for them it was completely positive, even though he requested

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE MONICA F. WILEY, JUDGE PRESIDING

DEPARTMENT 405

CHRISTOFFER STANFORD THYGESEN,      )
                                    )
                        PETITIONER, )
                                    )
            vs.                     ) No. FDV-19-814465
                                    )
KAILIN WANG,                        )
                                    )
                        RESPONDENT. )
_____)


**REPORTER'S TRANSCRIPT OF STATUS CONFERENCE AND**

**EX PARTE HEARING**

JULY 29, 2021


**APPEARANCES:**

FOR PETITIONER:      LAW OFFICE OF DOUGLAS RAPPAPORT
                     BY:  DOUGLAS RAPPAPORT, ESQ.
                     260 California Street, Suite 1002
                     San Francisco, California 94111



                     KAYE, MOSER, HIERBAUM, FORD, LLP
                     BY:  DARRICK TRACEY CHASE, ESQ.
                     235 Montgomery Street, 27th Floor
                     San Francisco, California  94104



FOR RESPONDENT:      KAILIN WANG
BLUEJEANS AND        IN-PROPIA PERSONA
TELEPHONICALLY


                         ROCIO M. LOPEZ, CSR #11194
                         Official Court Reporter


NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

obtain school or medical records."  She has done all three.  The law is telling us these are important factors to look to, and she's done them all, all in -- all in secret.

THE COURT:  Again, Ms. Wang, please don't interrupt.  I'll allow you an opportunity.

MR. RAPPAPORT:  That she has threatened people with guns in New York in Le Gaston court.  You know, 3048 doesn't say look to convictions.  It says look to a criminal record, subsection (h), and I have the documents before me.  I don't know what Ms. Wang is talking about, but I have the documents from New York.

And if I may approach, I have a plea form in which she enters a plea of guilty here to a -- what apparently is harassment to for a victim named Rory, R-o-r-y, Will, W-i-l-l.  We have, the court has in its previous filings the affidavit from the detective in that case in which she threatens to kill herself with a gun.  She's outside Mr. Will's house saying, "I'm going to stalk you.  I'm going to kill myself."

We have her in the Utah case threatening to castrate a man with a knife.  In this case, she threatened to kill the child and take her own life.  We are not dealing with somebody who is mentally balanced here.  This is all of these factors.

I                mean, the fact that she's filed 1,258 pages seems to show that there's some mental imbalance here.  The court in Utah just issued an order stating

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

576

do it here.  I think that's the solution.

THE COURT:  Ms. Wang.

MS. WANG:  Yeah, I -- I'm going to need a ten minutes because that was really continuing.  I have to respond to a bunch.  So I'll read off the transcripts from March 6th, 2019, Judge Darwin.  This is being on an Ex Parte basis.

"I'm not making any finding at this point besides that he's established as the father that there's domestic violence abuse sufficient to issue a Temporary Restraining Order.  I don't want to make it without anything else besides that.  I haven't made any findings.  There's been no evidence.  There has not been an Evidentiary Hearing.  I'm not making those findings."

And then on June 25th, 2019, Mr. Insalaco says, she threatened to kill the child, so even visitation at Rally is not safe.  Judge Darwin says, I -- I'm sure.  "I'm very confident that she'll be fine just at Rally," and that was on 6/25, and I have been just fine at Rally.

That testimony, actually, by everyone including Terra Firma who, apparently, I was hostile against her or whatnot, as you know, responded and said there is no risk.  Rally report will come out soon, but in the 57 visits so far there's been no issues, same what they have.

Speaking of law enforcement, a law enforcement agreed with me, as far as harm with the

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

584

it.  She's plotting it.  It's for those reasons that we're asking the Court to modify the visitation.  And I can -- if I may approach, if the Court wants to look at these documents.  They were submitted.

THE COURT:  That's not necessary.  Thank you.

MR. RAPPAPORT:  Okay.

THE COURT:  Ms. Wang, I will give you the last word, as it were, to respond.

MS. WANG:  Okay.  Thank you, Your Honor.

I guess Your Honor is familiar with the Rally photo allegation.  It is two years old, and Rally has found the allegation has no merit.  Sonya Romero wrote a letter back confirming this.  Also, apparently, Thygesen, as well as Erica Johnstone has submitted this to Sergeant Martinez.  I have included that in the San Francisco Chronological report.  They submitted that to her on 8/17/2019.  No evidence found of any violation, and it's not charged whatsoever.

I don't know why he keeps being -- they are basically saying the supervisor was wrong, executive supervisor was incorrect.  And what is it called?  Dang.  And that that police officer is incorrect because they found that this allegation had no merit, just the like the March 6th Kill Baby K post.  Again, these are really old.

This was done on Ex Parte emergency order, and it's inappropriate, and I think every single preventive measure is in place.  And if Your Honor wants

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

584

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE MONICA F. WILEY, JUDGE

UNIFIED FAMILY COURT, DEPARTMENT 405

-- oOo --

**CERTIFIED COPY**

CHRISTOFFER STANFORD    )
THYGESEN,               )
                        )
            Petitioner, )
                        )    Court No.: FDV-19-814465
        vs.             )
                        )
KAILIN WANG,            )
                        )
            Respondent. )
_____)

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

Friday, October 22, 2021

**A P P E A R A N C E S**:

**For the Petitioner:**

LAW OFFICE OF DOUGLAS L. RAPPAPORT
By:  Douglas L. Rappaport, Attorney at Law
260 California Street, Suite 1002
San Francisco, California 94111-4360

KAYE MOSER HIERBAUM FORD, LLP
By:  Darrick T. Chase, Attorney at Law
235 Montgomery Street, 27th Floor
San Francisco, California  94104-3114

SUCHERMAN-INSALACO, LLP
By:  Michele E. Insalaco, Attorney at Law, via BlueJeans
50 California Street, 34th Floor
Walnut, California  94111-4799

**For the Respondent:**

Kailin Wang, In Propria Persona, via BlueJeans

**Also Present:**  Erica T. Johnstone, Attorney at Law

Reported by:  Giselle Casey, CSR No. 8098

**I N D E X**

**WITNESS**                                                                    **PAGE**

**KAILIN WANG**

Direct Examination by Mr. Rappaport                                              30

///

///

///

| **EXHIBITS** | | | |
|---|---|---|---|
| **RESPONDENT'S** | | **IDEN** | **ADMIT** |
| 1 | Utah Shelter Hearing Minutes issued by the Court on March 18, 2019 | 23 | -- |
| 7 | Request for protective order filed March 18, 2019, from the Fourth District State of Utah, County of Utah | 47 | 49 |
| 8 | Order denying Petitioner's request for protective order in the District Court of the Fourth Judicial District in and for Utah County | 51 | 51 |
| 38 | November 15, 2019, memorandum decision recommendation order granting motion to dismiss petition for paternity for lack of personal subject matter jurisdiction, issued by Commission Ito | 55 | 61 |
| 3 | Transcript of the UCCJEA hearing on June 25,2019, before Judge Darwin | 63 | 63 |
| 39 | Copy of a New York driver's license depicting Ms. Wang | 39 | 67 |
| 40 | Application for permit driver's license or nondriver I.D. card signed by Ms. Wang, on October 16, 2018 | 69 | -- |

///

///

///

Is that what you're saying?

A.  How can you be avoiding service, again, when you were attempting to serve me in Utah, and I was in New York?

I don't understand the question.  I mean, does that make any sense?  How can you be avoiding service when you're trying to serve me in New York, and you're also serving me in Utah.  Okay?  And you're accusing me of being in New York.

How is it possible to be avoiding service?

A.  Thank you for asking me a question.  But what I'm asking you is -- the question is:  Did you --

Let me ask you this question:  There was a shelter hearing in Utah; is that correct?

A.  Yes.  That was reversed, yes.

Q.  No.  Ms. Wang, I'm going to ask you just a question.  It was not reversed.

There was a shelter hearing in Utah; correct?

A.  Yes.  From false allegations.

Q.  On false allegations.

A.  Yes.

Q.  What were those false allegations?

A.  Yes.  So Christoffer impersonated me and made a post on March 6, 2019, that said, under Kailin Wang, okay, I'm going to kill myself if I don't get child support and the baby, and I hope his parents are happy about this.

I deny making that post.  I fully deny it.  And after all of this --

Q.  Ms. Wang, are you now waiving your Fifth Amendment rights to making that post; otherwise, I'll ask that your testimony be --

A.    No, that's not -- because it's not charged; so the Fifth Amendment does not apply because no evidence was found from the multiple search warrants and the civil subpoenas that have been served from this case, as well as the San Francisco Police Department.

There's about 25 search warrants that have been executed on my phone.  My phone was also seized.  They had forensics look at it as well as subpoenas -- just countless.

Since it wasn't charged, the Fifth Amendment does not come into play about that.

THE COURT:    And I want to just interject, just for a moment.

Ms. Wang, given the criminal proceedings that are currently pending, again, you do have a Fifth Amendment right not to testify to certain matters in this proceeding.

THE RESPONDENT:    Yes, I understand.  But that matter -- specifically, the March 6th post -- I'm fine with testifying about that.  It's not part of the criminal case.

THE COURT:    Thank you.

MR. RAPPAPORT:    I can let you know that it's very much a part of the criminal case because stalking, felony stalking requires, in addition to the conduct, it requires a threat.  And that e-mail constitutes a threat.  To take your own life and to kill the baby constitutes a threat.

So I'm admonishing you, as an officer of the court and as someone familiar with criminal law, that that post very much is an issue in the criminal case.  And it's been provided to your attorneys in discovery.

And so while it might not be specifically referenced in the

claims when Judge Smith looked at it.

Also, another factor about Judge Smith --

Q.   That's not the question.  The question was -- and I'll just summarize -- that on March 18, 2019, there was a hearing in Utah, before Judge Smith, to determine whether to reinstate custody to you.  That was one of the issues; correct?

A.   No.  Not to my knowledge because there weren't any -- I wasn't present the first time.  I was on the phone, and I thought the hearing was to determine whether Judge Darwin's jurisdiction was intact.

If there were any Utah proceedings or simultaneous proceedings where a judge's call needed to happen or not, plus that particular March 6th, "Kill baby K" post, and just that post alone.

Q.   The question is:  On March 18, 2019, there was a hearing to determine -- fine, jurisdiction.  But also, where the baby went. Did the baby come home with you or did the baby go to Mr. Thygesen; is that correct?

A.   Like I said, I wasn't really informed on what that is.  I still don't know what that really is.  It was some sort of shelter juvenile hearing.  And that's why I said I'm going to submit the transcripts.  Because largely, we talked about jurisdiction and if Wang has filed a custody petition yet because the only one --

Q.   That's right.  You filed --

A.   California.  Make sense?

Q.   You filed a custody petition; right?

A.   Not at that time.  Not at the first hearing when Judge Smith

parent time," you're asking that you be given custody of the minor child; correct?  Quote, sole physical/legal custody; correct?

**A.**  Correct.

**Q.**  And you asked for that based on allegations that Mr. Thygesen had posted the threat to kill the child and take your own life himself; correct?

**A.**  Yes.

**Q.**  And the Court found, in Exhibit 8, the order denying Ms. Wang's request that the Court finds that Petitioner has not met her burden in proving that Respondent was responsible for the alleged social media post.

Do you see that, Ms. Wang, in Exhibit 11?

**A.**  Yes.  That's because we didn't have the discovery back yet when he made that decision.

Also, it wasn't just -- it wasn't just on that post.  There were also private investigators and all of that.

But because we didn't have all of the physical evidence presented during that time, we didn't get it in yet, it was faulty.  And I would have objected to Commissioner's ruling, except it was a financial issue.  But just because the restraining order is not granted --

By the way, he didn't rule on those things.  He said that the posts and all this Internet stuff, unless there is an expert of some sort, I'm not going to rule on those.  He didn't make a ruling on that.

No, he made the ruling on I did not list all the cases that were pending, but I wasn't served with everything yet.  But that

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE MONICA F. WILEY, JUDGE PRESIDING

UNIFIED FAMILY COURT, DEPARTMENT NUMBER 405

---oOo---

| | |
|---|---|
| CHRISTOFFER STANFORD THYGESEN, | ) ) ) |
| Petitioner, | ) No. FDV-19-814464 |
| | ) **Motions** |
| vs. | ) |
| | ) Pages 1 - 105 |
| KAILIN WANG, | ) |
| | ) |
| Respondent, | ) |
| _____ | ) |

**Reporter's Transcript of Proceedings**

Monday, December 20, 2021

**APPEARANCES OF COUNSEL**:

For Petitioner:

    Law Offices of Douglas L. Rappaport
    260 California Street
    Suite 1002
    San Francisco, California  94111-4360
    By:  **DOUGLAS LEE RAPPAPORT**

        **Attorney at Law**


For Petitioner:

    Sucherman-Insalaco LLP
    50 California Street
    Floor 34
    San Francisco, California 94111-4799
    By:  **MICHELENE EUGENIA INSALACO (Appearing via BlueJeans)**

        **Attorney at Law**

735

For the Respondent KAILIN WANG

        IN PROPRIA PERSONA (Appearing via BlueJeans)

Reported by:  Patricia Dowling, CSR No. 5388

Department Number 405                              13:29

                          ---o0o---

THE COURT:  All right.  I am going to call the matter.

We do have Mr. Rappaport in court.  We are now on the record in the matter of Christoffer Thygesen versus Kailin Wang,  Case Number FDV-19-814465.

I am going to ask Mr. Rappaport if you would please state your appearance for the record.

MR. RAPPAPORT:  Certainly.  Good afternoon, your Honor. Douglas Rappaport appearing on behalf of Christoffer Thygesen.

Also appearing this afternoon as both support people and victims are Allan Thygesen and Terry Thygesen.

They are the named victims in the TRO as well as the criminal protective order.

With me this afternoon is also Ms. Insalaco.

THE COURT:  Thank you.

I am going to before taking further appearances, just remind everyone to please mute your microphones if you are not actively speaking.

We can pick up all ambient noise.

Thank you. Ms. Wang, please state your appearance for the record.

RESPONDENT KAILIN WANG:  Kailin Wang appearing pro per over BlueJeans.

THE COURT:  Thank you.  Good afternoon, everyone.  We have several items that are currently scheduled on calendar.

evaluator.

MS. INSALACO:  It is not just the 3044 finding.  It is the factual findings on all the different things; did she do this, did she do that.

If you don't make findings about whether she did those things, how can the evaluator consider that she did them or didn't do them.

THE COURT:  That's not in my mind what the custody evaluator is there to do.

The custody evaluator, in a custody evaluation, the custody evaluator will take into consideration not only written materials, but interviews, observations, collateral contacts.

They will then, once they have looked at that information, they will then make recommendations.

I don't believe that any custody evaluation I have ever seen contains any type of factual findings.  The custody evaluator is simply not there --

MS. INSALACO:  If a party threatened to kill the child and one person says this Mother made this threat, she is that mentally ill, she is that psychotic that she threatened to kill the child, and the Mother says I didn't make that post, someone else made the post, and there is evidence to show who made the post based on the documents that have been subpoenaed and Internet logs, et cetera, how is the custody evaluator to make a decision about what parenting plan is in the child's best interest if the evaluator won't know if it is true that she threatened to kill the child.

That's just one example.

Was this allegation substantiated?  Was it found to be true?  They look at that.

So, you are setting it up for an evaluation that is not going to be able to meaningfully consider the allegations.

You are setting it up so you won't be able to make orders following the conclusion of the evaluation for months, if not years.

I would also like to point out that just in case you didn't -- that you are giving us any weight, the post about killing the baby was never found not to be made by Ms. Wang.

We have evidence it was made by her.

All the court in Utah found was that she hadn't physically abused the child.  They found she was very mentally unstable.  It would be dangerous for the child to be in her custody, but they found she didn't physically abuse the child.

So I just have to submit, your Honor, that 3044(g) is very clear, and I am very concerned about this idea that we would launch into a custody evaluation without these findings where it seems you are to some extent delegating to the evaluator the decision of whether the allegations are true, and setting us up for a lot of expense that is going to have to be redone before there can actually be an Order.

**THE COURT:**  I certainly understand that the Court does have to make 3044 findings before any permanent custody order can be made.

So I don't know how otherwise to respond to your comments, Ms. Insalaco.  Certainly ...

**MS. INSALACO:**  You can respond if she wants an evaluation, I

admonished Ms. Wang.

THE COURT:  I am sorry.  Just a moment.

Ms. Wang, I will give you an opportunity after Mr. Rappaport is completed.

I am going to ask you not to talk at the same time.  Thank you.

MR. RAPPAPORT:  When the Court issued the stay originally, it admonished Ms. Wang if she were to make any factual statements about the case, the Court would consider that she may have waived her Fifth Amendment privilege and proceed to hearing.

So this Court is not actually in a position where it is going to require her to either waive her Fifth Amendment privilege and/or to not defend this case based on her Fifth Amendment privilege for this reason.

It appears from the quotes that I read to you from both her Supreme Court briefs and the Court of Appeals and briefs before this Court, that she has made factual allegations that do waive her Fifth Amendment privilege.

Quote:  Thygeson impersonated Wang by using identity concealing technologies, parenthesis, EPN.

He made death threats using the alias Kailin Wang and threatened, quote, I am going to kill the child if I do not get child support, unquote.

Those are factual statements that Ms. Wang has made, that she is feeding both to this Court, the Court of Appeals and the California Supreme Court that she is innocent and that Mr. Thygesen factually has impersonated her.

88 926

charged, and there is no evidence tieing me, threatening to harm the child and DCFS -- CPS, DCFS -- sorry.  You can just put CPS, Utah CPS has been reversed.

THE COURT:  Ms. Wang, is there anything further?

MS. WANG:  Yeah.  Mr. Thygesen was very very unresponsive to all questions, and I would like the Court to consider that when it makes its decision.  I will -- I think we should conclude because I still want that visitation.

MR. CHASE:  Your Honor, as an officer of the court, I need to -- I can read something to the Court and as someone who was present at both the first -- Your Honor, Ms. Wang is either mistaken or she is lying to the Court with respect to Judge Smith's order.  The fact of the matter is, and the Court can check with Utah, but the order that was issued by Judge Smith from the 3-18-2019 hearing that was signed on April 11th, is a final order.  It was a hearing.  Judge Smith took evidence. I'll direct the Court's attention, if you wish to look at it later, or even now, to page 3 of that order, paragraph little I, where it says there is substantial danger to the physical health and safety of the child based upon mother's social media posts which are found to be irrational, histrionic.  Mother's -- mother's pending criminal charges and -- and the mother's threat of killing herself and the child.  The Court finds that the mother's behaviors are evidence of the mother's mental instability and immediate risk of harm to the child.  The child's physical health or safety may not be protected without removing the child from the mother.  Moreover, this order as it notes at the -- at the back of it was an appealable order.

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE MONICA F. WILEY, JUDGE PRESIDING

UNIFIED FAMILY COURT, DEPARTMENT NUMBER 405

--o0o--

| | |
|---|---|
| CHRISTOFFER STANFORD THYGESEN,<br><br>      Petitioner,<br><br>VS.<br><br>KAILIN WANG,<br><br>      Respondent. | COURT NO. FDV-19-814465<br>Motions<br><br>Pages 1 - 92 |

Reporter's Transcript of Proceedings

Wednesday, January 5, 2022

APPEARANCES OF COUNSEL:

For The Petitioner:

    Law Offices of Douglas L. Rappaport,
    260 California Street, Suite 1002
    San Francisco, California  94111-4360
    By:  DOUGLAS LEE RAPPAPORT,
       Attorney at Law

For The Petitioner:

    Kaye, Moser, Hierbaum, Ford, LLP.
    The Russ Building
    235 Montgomery Street, 27th Floor
    San Francisco, California  94104
    By:  DARRICK T. CHASE,
       Attorney at Law

<u>APPEARANCES OF COUNSEL:</u>   (Continued)

For The Petitioner:

    Sucherman-Insalaco, LLP.
    50 California Street, Floor 34
    San Francisco, California  94111-4799
    By:  MICHELENE EUGENIA INSALACO, (Appearing via BlueJeans)
        Attorney at Law

For The Respondent:

    By:  KAILIN WANG, (Appearing via BlueJeans)
        In Propria Persona

REPORTED BY:
ROBERT K. BALIAN, CSR No. 5220
PRO TEM COURT REPORTER
SAN FRANCISCO SUPERIOR COURT

INDEX - (Pages 1 - 92)

WITNESSES

PETITIONER WITNESS        DIR.    CROSS

Kailin Wang                 54        36


RESPONDENT WITNESS        DIR.

Christoffer Thygesen      60



                          EXHIBITS

FOR THE PETITIONER                                    ID.    EV.

| 1  | Utah Shelter Hearing Minutes - 03/18/19 | | 24 |
| 2  | Shelter Pretrial Hearing Order - 4/11/19 | 25 | 25 |
| 4  | Order on Request to Continue Hearing Filed 03/06/19 | 26 | 26 |
| 10 | Kayson Wang original Birth Certificate which lists Ms. Wang's country of birth as China | 26 | 26 |
| 11 | Kailin Wang's passport | 27 | 27 |
| 16 | First Amended Information, State of Utah v. Kailin Wang, Case No. 211100167 | 27 | 27 |
| 20 | Judge Thomas Low's Order from 05/10/21, Hearing date 06/01/21 | 29 | 29 |
| 25 | Amended Birth Certificate dated 04/26/19 | 32 | 32 |
| 29 | People of the State of New York v. Kailin Wang, criminal record, Case No. 20217 2013, N.Y. Criminal Court | 35 | 35 |
| 30 | New York Detective Anthony Cozzi's Affidavit | 35 | 35 |
| 32 | Spanish Fork City vs. Kailin Wang citation | 45 | 45 |
| 33 | The People of the State of California v. Kailin Wang, Case No. 19016407, Domestic Violence Felony Complaint Arrest Warrant | 49 | 49 |
| 34 | CPS Case Summary Report # 2503301 dated 04/06/19 | 51 | 51 |

EXHIBITS   (Continued)

| FOR THE PETITIONER | | ID. | EV. |
|---|---|---|---|
| 36 | Subpoena to United States Department of State Requiring Production by 03/22/21 | 53 | 53 |
| 37 | Judge Thomas Low's 10/18/21 Order Quashing Additional Unauthorized Subpoenas By Petitioner | 53 | 53 |
| 41 | Notice of Appeal, Utah Court # 194400718 | 21 | 21 |
| FOR THE RESPONDENT | | | |
| A | Passport Application dated 07/20/20 | 67 | |
| B | 35-page Rally Report dated 08/14/21 | 76 | |

------------------------------------------------------------------

A.    There were lots of things.  So I -- I can't say.  My criminal attorney from George Volanakis (phonetic) I think that was his name.  That was my criminal defense.  So unless he is here, we have to look at the file.  I don't remember.  It's very remote, but there was definitely no evidence of this allegation.

Q.    So your answer is you don't remember?  Yes or no?

A.    I definitely didn't do that.  So you can take it however you want to.

Q.    So the question was, were you charged with that?

A.    Possibly, yes.

Q.    Okay.  You also were charged with you said, if you won't be with me, I'm going to kill myself.  You were charged with that as well, were you not?

A.    That's the thing.  You're getting into specifics when, you know, for these like text messaging for us, some type of charges, it's always a bunch of text together.  So specifically, if you're saying was this the conduct that was specifically charged, no, I denied previously what he just alleged.  And I deny on this one as well.  So I cannot say that I was specifically charged for that text.  There were lots of text.  So if you want to tie a specific text to a specific count, I deny, deny because we never went through any of this because it was a misdemeanor charge, okay, that resulted in a violation.  There was no evidentiary hearing, and there was no specific text that was tied to a specific count, not that I remembered.  Therefore, it's very hard for me to answer these questions.

Q.    Okay.  Thank you for your answer.  Ms. Wang, you were also charged -- I'm just asking what you were charged with -- with

that she not made any -- she has not made some of the statements to kill the child and take her own life, that the child is sick and injured and in the hospital, that she repeatedly, as set forth in our motion, constantly protests that she is innocent here in this case, and that these charges are overblown.

And, you know, our motion is replete with the most recent statements. "Mr. Thygesen has often lied and, on numerous occasions, submitted fabricated, incomplete evidence to obtain custody and to have me indicted." That was something she said just on December 17th of 2021, just several months ago. Over, and over, and over, she is saying that Mr. Thygesen is responsible, somehow, for this.

"Thygesen, also, basically kidnapped somebody's child by impersonating, lying, and threatening to," quote-unquote, "kill the baby." On March 6, 2019, she's alleging that Mr. Thygesen has made that post. Consequently, these statements that she is making, these are all in violation of this Court's admonishment which it gave Ms. Wang on July 19 -- excuse me. Let me get the date.

Here. Oh, on January 30th, 2020, this Court said, after issuing the stay, that if Ms. Wang makes statements about the allegations in this case, that she runs the risk of waiving her fifth amendment privilege. This Court understood the problem and admonished Ms. Wang way back in this case, very early on. Ms. Wang did not listen to the Court, and she has repeatedly, and repeatedly, and repeatedly discussed this case in her legal filings, online, to anyone who will listen but has, yet, never been subject to cross-examination.

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE MONICA F. WILEY, JUDGE PRESIDING

DEPARTMENT NUMBER 405

---oOo--

CHRISTOFFER STANFORD THYGESEN,   )
                                 )
          Petitioner,            )
                                 ) Court No. FDV-19-814465
vs.                              ) **MOTION TO QUASH SUBPOENA &**
                                 ) **REQUEST FOR SANCTIONS**
KAILIN WANG,                     )
                                 )
          Respondent.            )
_____)

**Reporter's Transcript of Proceedings**

Tuesday, February 15, 2022

**APPEARANCES OF COUNSEL:**

     For Petitioner:

          LAW OFFICES OF DOUGLAS L. RAPPAPORT
          260 California Street, Suite 1002
          San Francisco, California 94111-4360
          By:  **DOUGLAS L. RAPPAPORT**, Attorney at Law

     For Respondent (Via Bluejeans):

          By:  **KAILIN WANG**, In Propria Persona

Reported by:  Teanna L. Ward, CSR No. 11918, RPR

that she not made any -- she has not made some of the statements to kill the child and take her own life, that the child is sick and injured and in the hospital, that she repeatedly, as set forth in our motion, constantly protests that she is innocent here in this case, and that these charges are overblown.

And, you know, our motion is replete with the most recent statements.  "Mr. Thygesen has often lied and, on numerous occasions, submitted fabricated, incomplete evidence to obtain custody and to have me indicted."  That was something she said just on December 17th of 2021, just several months ago.  Over, and over, and over, she is saying that Mr. Thygesen is responsible, somehow, for this.

"Thygesen, also, basically kidnapped somebody's child by impersonating, lying, and threatening to," quote-unquote, "kill the baby."  On March 6, 2019, she's alleging that Mr. Thygesen has made that post.  Consequently, these statements that she is making, these are all in violation of this Court's admonishment which it gave Ms. Wang on July 19 -- excuse me.  Let me get the date.

Here.  Oh, on January 30th, 2020, this Court said, after issuing the stay, that if Ms. Wang makes statements about the allegations in this case, that she runs the risk of waiving her fifth amendment privilege.  This Court understood the problem and admonished Ms. Wang way back in this case, very early on. Ms. Wang did not listen to the Court, and she has repeatedly, and repeatedly, and repeatedly discussed this case in her legal filings, online, to anyone who will listen but has, yet, never been subject to cross-examination.

1 992

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE MONICA F. WILEY, JUDGE

UNIFIED FAMILY COURT, DEPARTMENT 405

-- oOo --

**CERTIFIED COPY**

CHRISTOFFER STANFORD THYGESEN,    )
                                  )
                   Petitioner,    )
                                  )
             vs.                  )   Case No.:  FDV-19-814465
                                  )
KAILIN WANG (VEXATIOUS LITIGANT), )
                                  )
                   Respondent.    )
_____ )


**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

Friday, April 15, 2022


**A P P E A R A N C E S**:

**FOR THE PETITIONER:**

Law Offices of Douglas L. Rappaport
By:  Douglas L. Rappaport, Attorney at Law
260 California Street, Suite 1002
San Francisco, California 94111-4360

Sucherman-Insalaco LLP
By:  Michelene Insalaco, Attorney at Law (via BlueJeans)
50 California Street, 34 Floor
San Francisco, California 94111-4799

Kaye Moser Hierbaum Ford LLP
By:  Darrick Chase, Attorney at Law
235 Montgomery Street, 27th Floor
San Francisco, California 94104-3114


**FOR THE RESPONDENT:**

KAILIN WANG, In Propria Persona (via BlueJeans)


**REPORTED BY:**  GISELLE CASEY, CSR No. 8098
                 OFFICIAL REPORTER (via BlueJeans)

"I encourage the family to continue to report any new developments to the San Mateo P.D. and Rally so they can take any additional safety precautions."

That what she, in addition to posting the minor's information on line, she has Tweeted it out to her followers, over several hundred -- I believe, a hundred and something, to their followers, that. She has posted lodged exhibits that petitioner filed with this Court, and that now, a third party has republished.

So, therefore, because this Court made a request of her, not an order, not to publish the child's information, a third party has now picked it up, and it is in the universe. It is in the Internet forever. This Court cannot do anything about it because it is now a third party that picked up her information.

Third parties because of her posting saying: "My child has been stolen. That the ultra wealthy Google money has stolen my child. My child has been abducted. That my child is being trafficked. The grandfather, with his money, is basically trafficking his own child. That the child has been absconded with. That she is afraid. That she is afraid for her life."

All this is is before the Court in our exhibits. That she's worried that she's going to be killed.

She mentioned to this Court, put her own life in danger at least nine times in her posting. That she sent an e-mail to this Court, which this Court has not seen, in which she said --

desperately wanted an abortion, and knew very well Wang was going waiting through misdemeanor charges in Utah relating to Walker Stone, however, none of that mattered to Christoffer, until he received the child support complaint."

So what she's saying is that he never wanted the child.

"The repugnant -- the repugnant Thygesen family that wants to blame his mother who saved him from Christoffer's threats to 'pull the trigger' on the baby, instead flipping the truth round and falsely telling the child hi [sic] mother tried to kill him" --

Of course he never told the child his mother wants to kill him.

-- "when it was Thygesen who tried to do just that."

"Baby K is a splitting [sic] image of Wang when she was his age, it is frightening to think he is mentally being abused by the Thygesen's, or what could be happening to this helpless child, living with a family that harbors such immense hatred of me (a.k.a. him) of his maternal grandparents, that deny that he is half Chinese, that tells him he is not Chinese, that punishes him every time he calls me mother, that hates his very existence, that wanted his [sic] aborted, eliminated, that wants to erase his mother and lock her up, silence her, and completely

in condoms, during sex with hundreds, possibly thousands of Asian and/or other ethnic women he has slept with off of tinder.  And every time daddy Allan Thygesen with his money makes the pregnancies just go away, that is until one refused to have an abortion, that is when daddy Allan, and Terry Thygesen were going to make that Asian woman pay."

This is the message she is broadcasting.  And the message that she is broadcasting is working.  And that she is still, within the last 48 hours, still publishing the location and address of the home and Rally.  She's endangering the family, the child, the people who work at Rally, and she's saying --

April 13th, she has done this.  Two days ago.  And these are all part of our exhibits.  They're very hard to see.

And she says, "Help, he's trying to kill me and my family."

She is endangering -- she doesn't understand -- or maybe she does understand.  She's a very bright woman.  What she is doing -- law enforcement is concerned, the San Mateo Police Department has included extra police at Rally --

THE RESPONDENT:  You cannot allow him to make a record for this long.

THE COURT:  Again, Ms. Wang, I'll give you an equal opportunity, but I'm not going to allow you to interrupt.

MR. RAPPAPORT:  Police in San Mateo have included extra policing.  I can't tell this Court -- I don't want to disclose how.  But they have included extra policing, but they cannot do so forever at the San Mateo Rally facility.

evidentiary hearing, so we can present evidence of Ms. Wang's, in my opinion, mental illness, as well as any information that's necessary, and then get crystal clear to this Court that Ms. Wang has been posting this information.

There's an old expression, "words matter," Your Honor.  And when you're telling people that someone has stolen your baby, trafficked your baby, et cetera, and recently, she tells people, "Oh, my God.  They're going to have me and my family killed."

This incites people.  I mean, it's crazy.  And I think it's extraordinarily reckless.

Ms. Wang is not a truthful person.  She's not a credible person.

THE RESPONDENT:  Briefly, briefly, this is not --

THE COURT:  Ms. Wang, Ms. Wang, I'm sorry.  I will give you an opportunity to respond.  Please do not interrupt.

MR. CHASE:  In my opinion, it's clear what she's done -- if she doesn't understand what she's done, that's implausible.

If she does understand what she's done, essentially, using her child as bait to have someone come rescue and to hurt the Thygesens, again, the greatest hurt of all is hurting someone's kid.  That's what happened in Sacramento.  That's what happened in San Francisco.  We don't want it to happen again.

THE COURT:  Thank you.

Ms. Wang, if you'd like to respond, you may do so at this time.

THE RESPONDENT:  Well, that was, again, totally completely false.  Not only -- okay.  The definition of "incite" is inciting people to do something.  There is no "incite."

I think it spans, like, several hundred pages.  It has child support.  It has his income.  Job interviews.  Definitely tons of minor's information and defamatory statements about me.  But I do want the court to take into account that these court web sites also have this information publicly posted --

THE COURT:  Ms. Wang, it's certainly not the court direction or, I believe, the intent of the agreement to require you to completely remove all postings from all different sources.

This specifically was directed at postings that you, yourself, had made on social media with respect to this identified information.

MR. RAPPAPORT:  To follow up on the court's --

MS. WANG:  Yes.  And --

MR. RAPPAPORT:  Excuse me.  I'm speaking.

THE COURT:  Just a moment.

MS. WANG:  -- ability --

THE COURT:  Hold on, Ms. Wang.

MR. RAPPAPORT:  To follow up on the court's thought, I have a definition of public Internet postings so we can all be specifically clear.

Public Internet postings includes any information published or posted to the Internet by Ms. Wang that is accessible without use of a password that has not been shared publicly.

MS. WANG:  We want to add that I have the ability to remove whatever they're asking me to remove in that order.  Ability.  Just because you assume I posted it, again, lots of things are out there.  We can go on and on.

As the court is aware, March 6, 2019, there was a "kill

violence restraining order at this late in the proceedings, in the process of this case.  I agree that it's a fundamental notice issue.  I have to -- I agree in part with Ms. Wang about the fact that that would make this more of a custody related proceeding.  That much I agree.  But it's important that I point out, Ms. Wang, it -- I think the record will speak for itself.  The motion for attorneys fees the Court found it also defective, right?  So it's not only this DVRO trial is -- has a limited scope.  It's also that the prior motion for attorneys fees was defective, and I invited you to do your best to find an attorney that would help you fix that to bring that up.  So I'm just making a distinction there.  It's not only because the case is not added to this DVRO.  It's also because the Court awaits a properly brought attorneys fee motion.  I'll move on to the next motion in limine.

Category four is at the very last line of page four.  All documents, exhibits, and testimony relating to the kill baby post -- the "kill baby" post allegedly made by Wang.

Mr. Rappaport?

MR. RAPPAPORT:  There is going to be -- unless it's raised by Ms. Wang herself, we are not presenting any evidence related to that.

THE COURT:  Yeah, I thought that was already addressed.

MR. RAPPAPORT:  I believe it was.

THE COURT:  Thank you.  That motion is granted.

Ms. Wang?

MS. WANG:  Yes.  Yes.  That -- that -- I believe that was already addressed, Category four.

THE COURT:  Correct.  I'm going through your motions in limine again.

Okay.  Category five begins at line three on page seven.  This is a motion in limine to exclude --

MS. WANG:  I think that --

THE COURT:  Go ahead, Ms. Wang.

MS. WANG:  I was going to say that one is -- that one you can address by a case by case scenario.  But we can do Category six and seven -- sorry.  Actually no.  Let's -- I'm sorry.  Yes.  Category five.

THE COURT:  You do want the Court to address this as a motion in limine; is that what you're saying?

MS. WANG:  Yes.  Yes.

THE COURT:  Okay.  Category five seeks to exclude all documents, exhibits, and testimony relating to posts alledgedly made by me, that's Ms. Wang, on public blogs and web sites not addressed to any of the protected parties because they are protected by my first amendment right to "free speech."

Mr. Rappaport.

MR. RAPPAPORT:  Okay.  Has the Court read our brief on this issue?

THE COURT:  I have.

MR. RAPPAPORT:  I think our brief really talks about there is absolutely no Constitutional right to harass, terrorize, and threaten people.  And if Ms. Wang is stipulating that she actually made the posts, but they are protected by her free speech, then I think we can talk about that.  But at this point, there -- there is not even any evidence that she made these.  So

1164

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE DANIEL FLORES, JUDGE PRESIDING

UNIFIED FAMILY COURT

DEPARTMENT 416

--o0o--

| CHRISTOFFER STANFORD THYGESEN, | ) | COURT NO. FDV-19-814465 |
|---|---|---|
| Petitioner, | ) | Pages  1 - 162 |
| VS. | ) | Volume 1 |
| KAILIN WANG, | ) | |
| Respondent. | ) | |

Reporter's Transcript of Proceedings

Tuesday, October 18, 2022

APPEARANCES OF COUNSEL:

For The Petitioner:

    Law Offices of Douglas L. Rappaport,
    260 California Street, Suite 1002
    San Francisco, California  94111-4360
    By:  DOUGLAS LEE RAPPAPORT,
         Attorney at Law

For The Petitioner:

    Ridder, Costa & Johnstone, LLP.
    440 N. Barranca Avenue, # 7750
    Covina, California  91723
    By:  ERICA JOHNSTONE,
         Attorney at Law

<u>APPEARANCES OF COUNSEL:</u>   (Continued)


For the Respondent:

    By:  KAILIN WANG, (Appearing via BlueJeans)
        In Propria Persona

REPORTED BY:
ROBERT K. BALIAN, CSR No. 5220
PRO TEM COURT REPORTER
SAN FRANCISCO SUPERIOR COURT

INDEX OF EXHIBITS

| FOR PETITIONER: | | ID: | EVD: |
|---|---|---|---|
| DC-1-A | Text History (partially unredacted version of Exhibit DC 1) | 139 | 139 |
| DC-5 | E-mail mentioning that Ms. Wang delivered Christoffer's son on 11/26/2018, etc. | 147 | 147 |
| DC-6 | E-mail asking the family to talk to Christoffer to figure out if he wants to co-parent, etc. | 147 | 147 |
| PT-137 | Birth Cirtificate | 68 | 68 |
| PT-138 | Birth Cirtificate as amended 4/25/2019 | 68 | 68 |
| PT-162 | Certified copy of Kailin Wang's March 18, 2019, Request for Protective Order, filed in Case No. 194400734 | 73 | 73 |
| PT-165 | Certified copy of Provo City vs. Kailin Wang, No. 011404594 (Utah County, Provo) | 75 | 75 |
| PT-166 | Certified copy of State of New York vs. Kailin Wang, No. 20217-2013 (N.Y. County, New York) | 78 | 78 |
| PT-167 | Copy of Spanish Fork City vs. Kailin Wang, No. 171301350 (Utah County, Spanish Fork) | 80 | 80 |
| PT-168 | Certified copy of Temporary Protective Order that was temporarily granted in Case No. 194400734 | 82 | 82 |
| PT-170 | Directory for the Menlo Park Police Department | 87 | 87 |

7 1170

INDEX OF EXHIBITS

| FOR RESPONDENT: | | ID. | EVD. |
|---|---|---|---|
| A | Rally report | 153 | 153 |

violence restraining order at this late in the proceedings, in the process of this case. I agree that it's a fundamental notice issue. I have to -- I agree in part with Ms. Wang about the fact that that would make this more of a custody related proceeding. That much I agree. But it's important that I point out, Ms. Wang, it -- I think the record will speak for itself. The motion for attorneys fees the Court found it also defective, right? So it's not only this DVRO trial is -- has a limited scope. It's also that the prior motion for attorneys fees was defective, and I invited you to do your best to find an attorney that would help you fix that to bring that up. So I'm just making a distinction there. It's not only because the case is not added to this DVRO. It's also because the Court awaits a properly brought attorneys fee motion. I'll move on to the next motion in limine.

Category four is at the very last line of page four. All documents, exhibits, and testimony relating to the kill baby post -- the "kill baby" post allegedly made by Wang.

Mr. Rappaport?

MR. RAPPAPORT: There is going to be -- unless it's raised by Ms. Wang herself, we are not presenting any evidence related to that.

THE COURT: Yeah, I thought that was already addressed.

MR. RAPPAPORT: I believe it was.

THE COURT: Thank you. That motion is granted.

Ms. Wang?

MS. WANG: Yes. Yes. That -- that -- I believe that was already addressed, Category four.

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE DANIEL FLORES, JUDGE PRESIDING

UNIFIED FAMILY COURT

DEPARTMENT 416

--o0o--

| | |
|---|---|
| CHRISTOFFER STANFORD THYGESEN, | COURT NO. FDV-19-814465 |
| Petitioner, | Pages  163 - 331 |
| VS. | Volume 2 |
| KAILIN WANG, | |
| Respondent. | |

Reporter's Transcript of Proceedings

Wednesday, October 19, 2022

APPEARANCES OF COUNSEL:

For The Petitioner:

    Law Offices of Douglas L. Rappaport,
    260 California Street, Suite 1002
    San Francisco, California  94111-4360
    By:  DOUGLAS LEE RAPPAPORT,
        Attorney at Law

For The Petitioner:

    Ridder, Costa & Johnstone, LLP.
    440 N. Barranca Avenue, # 7750
    Covina, California  91723
    By:  ERICA JOHNSTONE,
        Attorney at Law

APPEARANCES OF COUNSEL:   (Continued)


For the Respondent:

     By:   KAILIN WANG, (Appearing via BlueJeans)
            In Propria Persona

REPORTED BY:
ROBERT K. BALIAN, CSR No. 5220
PRO TEM COURT REPORTER
SAN FRANCISCO SUPERIOR COURT

that.

THE WITNESS:  All right.

THE COURT:  Back to you, Ms. Wang.

BY MS. WANG:

Q.  Okay.  So it -- there is -- was a DCFS report.  I'm just going to read the -- the case number on to the record.  It is DPS, Utah DPS report 2503301.  And the allegations -- specific, it's one allegation.  The allegation is somebody on Mr. Thygesen's behalf posted -- reported while posted on social media --

THE COURT:  Can you please -- can you please?  You have to slow down.

MS. WANG:  Yes.  Yes.

THE COURT:  Please and if you could restart.

MS. WANG:  Yes.  On March 6, 2019, Mr. Thygesen has already admitted he made a DCFS report.  And the DCFS report number is 2503301.  On March 6, 2019 -- it's a very short allegation.  It is, "mother posted on social media on holysmokes.com on March 6, 2019, that she was going to kill herself and the baby if he doesn't pay child support.  And I hope his parents will be happy.  Father lives in San Francisco on his way to pick up Kayson, will arrive at 9:00 p.m., 9:42 p.m. on March 6th, 2019."

Does -- does that sound correct like the report that was also provided to you, Mr. Thygesen?

MR. RAPPAPORT:  Several objections here, Your Honor.  And the first is relevance.  There was a -- recall, there was an agreement not to produce evidence related to this so called March 6th murder suicide post.  Ms. Wang who asked for that --

THE COURT:  Point of clarification.  Kill baby post?  Is this it?

MR. RAPPAPORT:  This is it, yes.

THE COURT:  Please continue.

MR. RAPPAPORT:  That there is a prior agreement that there is not going to be any evidence presented by the petitioner related to this.  So upon -- and it also -- sorry.  It also did not impact Judge Darwin's decision because it's in the record that this was never raised at all, had no bearing whatsoever on the San Francisco court decision to award both physical and legal custody to Mr. Thygesen.  It's not relevant.  We are not presenting it.  Ms. Wang raised this in order to reduce the length of the trial of what appellate issues.  We agreed with her that we would not present this evidence.  So since we are not presenting it as a threat, then there is no relevance whatsoever to this post.  Further, the question contains hearsay.

THE COURT:  Do you care to respond, Ms. Wang?

MS. WANG:  I'm not presenting it -- yes.  I'm presenting it as a judicial notice that this was an official proceeding that happened and it -- for informational purposes, it is an official court document that there was a case.  I'm not talking about the relevancy of the forensics of who posted what.  I'm just saying that this happened.  There is an official proceeding that happened with Utah DCFS from a report that Mr. Thygesen has made.

THE COURT:  Okay.  There is no proper request for judicial notice before the Court right now.  Nothing that has been said

courts, such as law enforcement.  And when you started -- when you're -- when you're stalking escalated to threatening the life and health of an infant, that is when the police were contacted. Prior to that time, despite the fact that your -- that your conduct was also incredibly frightening and threatening, you know, we hoped that somehow you would regain your senses and -- and wanted to try to preserve the possibility of families working together amicably for the best interest of the child. But when your conduct escalated to threatening that this child was sick and starving, and you were sending people -- and I saw them personally.  I saw the things that you sent to people where there was a baby with a decapitated head, and you said that you had already been forced to kill the child -- a decapitated head, a photo of a decapitated head.  So that's what you did.

MS. WANG:  Your Honor?

THE COURT:  One second, Ms. Thygesen.

Ms. Wang, what is your objection?

BY MS. WANG:

Q.   Yeah.  So the -- the question was when those threats were -- it went from threatening to -- did you receive a decapitated head communications from me, and if you can identify if that was by e-mail at all or text to you, or any of your family members? Can you -- can you approximate when that happened?

A.   I saw all of the things that you sent.  I saw everything.  I saw all the things that you sent to my family members, to friends of our family.  I saw all of it.  And I can never unsee those things.  I can never unsee those things, and they still give me nightmares.

him, and -- and so, you know, he -- he asked you to please stop, and when you replied back to him, you did not respond in any way to saying that you would stop.  You just ignored that toxic call together, and your response back to him was evasive about where you live.  You said -- you said, I absolutely do not live in Utah, but because by that time he had found out where -- where the parents lived.  And he said, I understand, you know, that you live with your parents or -- he -- this address in Utah.  I absolutely do not live there --

MS. WANG:  Okay.  That -- that exceeds the scope of the question.  That exceeds the scope of the question.

THE COURT:  Sustained.

BY MS. WANG:

Q.  All right.  Did you ever receive an e-mail from me to Darrick Chase asking to meet and confer on February 3rd, 2019, about trying to work out custody and visitation outside the court?

A.  You know, I'm pretty sure that I've seen any e-mail that you have sent to Darrick Chase, but can you remind me what date are you talking about?

Q.  Yes.  In February 3rd, 2019, I do believe it's Mr. -- one of Mr. Rappaport's exhibits as well.

MR. RAPPAPORT:  Can you give us a number, please?

MS. WANG:  I have your table of contents, by the way, with the binder that you sent which I got on October 15th, 2020.

THE WITNESS:  I could probably short circuit this and the need to do that because to the extent that an e-mail was sent in early February, that was when your stalking campaign had

progressed into threatening the life and the health of the child, and -- and so, you know, I was very scared.  Everybody in my family was very scared.  We didn't even know yet if Christoffer was the father.  But we knew that if a baby did exist and you hadn't yet killed that baby, that that baby was in trouble, and we were scared.

THE COURT:  Let me stop you there, Ms. Thygesen.

THE WITNESS:  Yeah.

THE COURT:  Okay.  Ms. Wang, the -- we are getting to a point where the questions, testimony that the only thing that I would find relevant at this point that I'm aware of, and you can educate me if there is something else, but that I'm aware of would be something that would go from your prospective to impugn her credibility.  Is there anything like that that you wish to pursue or should we move on?

MS. WANG:  Just two more questions.  Then we can move on.

BY MS. WANG:

Q.  Earlier -- earlier you testified that when you made the death threat 911 call against my parents you were worried about a Chinese visa or that we were going to apply for one.  Is that what you mentioned earlier?

A.  Well, I -- I would take exception to your description of what I said.  But I -- I did say that I was frightened by the news that you had applied for a visa to China, and I was particularly frightened by it because you didn't even show up at the hearings for the child in Utah, and you stayed apparently in New York, and -- and but for who knows what reason, but including applying for a visa.  And then when you come back to

Q.   Ms. Thygesen, do you recall receiving information, just any information, about Ms. Wang's case involving Walker Stone?  And if so --

A.   Yes.  I -- I -- I -- I saw information about that.  I saw information about her case with Rory Will, and I also saw information about her physical violence against her own family.

Q.   Okay.  I'm going to ask you specifically about the work the Roy -- sorry -- Walker Stone case.  Do you recall getting -- what specific information do you recall that caused you any concern?

A.   You know, it all caused a lot of concern because it -- it showed this -- this pattern of -- of behavior.  But the thing that, you know, was, I think, the most -- perhaps the most frightening of all was her threats against Walker Stone to, you know, castrate him with a knife, and her threats to kill him, and so she --

     MS. WANG:  Objection, false statements.  That's not in the police report.  And by the way, Walker Stone did file a restraining order against me in San Francisco.  That's on the court file.  Can I ask the Court to take a look at that?

     THE COURT:  That's not a proper objection right now, Ms. Wang.  That does remind me, however, you did file a request for judicial notice or notices last night, and we will be addressing those.

     Please continue, please.

     BY MR. RAPPAPORT:

Q.   As -- as it relates --

     THE COURT:  Actually, sorry.  Mr. Rappaport, context as to

metadata from the photo?

MR. RAPPAPORT:  Assumes a fact not in evidence.  You know what, let me withdraw the question.  Let me withdraw the objection, and let's get on with it.

THE COURT:  You can answer.

THE WITNESS:  The name of the security company was Hillard Heintze, H-I-L-L-A-R-D, H-E-I-N-T-Z-E.  Did I spell that correctly?

MS. WANG:  Yes.  I -- I'm aware of that security company.  Those were the same -- I'm sorry.  Did they go off?  What just happened?

THE COURT:  We are here.

MS. WANG:  Sorry, Your Honor.  I had your -- your closeup and it suddenly disappeared.  Yes.  I'm aware of Hillard and Heintze.  They were the -- they were the same group of private investigators that you hired that also discovered the -- the only other threat relating directly to the child on March 6, 2019; isn't that correct, the kill baby paper that was posted under my real name?

MR. RAPPAPORT:  Objection, as a matter -- objection.  We've dealt with this issue.  This is the murder suicide kill baby K post that she is talking about.

THE COURT:  What's the objection?

MS. WANG:  I was just asking about the security company.  We are not talking about the forensics.

MR. RAPPAPORT:  The objection is -- is that we didn't raise it on the ground -- we did not raise that here and that it wasn't going to be raised in trial.

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

UNIFIED FAMILY LAW COURT

DEPARTMENT 404

---oOo---

HONORABLE DANIEL FLORES, JUDGE

_____

IN RE THE MATTER OF                )
                                   )
     CHRISTOFFER STANFORD          )
THYGESEN,                          )
                 PETITIONER,       )   CASE NO. FDV-19-814465
                                   )
VS.                                )
                                   )
                 KAILIN WANG,      )
                 RESPONDENT.       )
_____ )

---oOo---

REPORTER'S TRANSCRIPT
OF
PROCEEDINGS

THURSDAY, OCTOBER 20, 2022

---oOo---

VOLUME 3 OF 3

REPORTED BY:  VICKI GROSS, CSR
          CERTIFICATE NO. 5525

**A P P E A R A N C E S:**

(Respondent Kailin Wang appeared via BlueJeans video platform)

FOR THE PETITIONER:          LAW OFFICES OF DOUGLAS L. RAPPAPORT
                             BY:  DOUGLAS L. RAPPAPORT
                             260 California St., Ste. 1002
                             San Francisco, CA, 94111

                             KAYE, MOSER, HIERBAUM & FORD
                             BY:  DARRICK CHASE
                             101 California Street, Suite 2300
                             San Francisco, CA, 94111

                             RIDDER, COSTA & JOHNSTONE LLP
                             BY:  ERICA JOHNSTONE
                             340 S Lemon Ave Ste 7550
                             Walnut Creek, CA  91789-2706

FOR THE RESPONDENT:          KAILIN WANG
                             IN PRO PER, APPEARING VIA VIDEO

ALSO PRESENT:                CHRISTOPHER BRENNER, TECHNOLOGY
                             ASSISTANT, THYGESEN FAMILY MEMBERS,
                             DONALD DUBAIN, DISTRICT ATTORNEY,
                             SERGEANT MARTINEZ.

REPORTED BY: VICKI GROSS, CSR
         CERTIFICATE NO. 5525

**INDEX**

**WITNESSES**                                                    **PAGE**


**KAILIN WANG**

**JOHN WANG**
    DIRECT EXAMINATION BY MS. WANG                    409
    CROSS-EXAMINATION BY MR. RAPPAPORT                429
    RECROSS-EXAMINATION BY MR. RAPPAPORT              436
    REDIRECT EXAMINATION BY MS. WANG                  438
    RECROSS-EXAMINATION BY MR. RAPPAPORT              438
    REDIRECT EXAMINATION BY MS. WANG                  439

**KAILIN WANG**
    DIRECT EXAMINATION BY MS. WANG                    443


**RESPONDENT'S EXHIBITS**               **IDENT**   **EVID**

C    Certificate of disposition indictment              347
     1/28/19, Supreme Court of NY

D    Documents re stalking injunction against            357
     Walker P. Stone

E    Transcript of Menlo Park phone call,                378
     4/10/19

171  Respondent's passport issued 6/14/2011,             394
     and Chinese visa issued 4/4/2019

she gave testimony on the email that was sent, the allegations of child abuse that was later reversed.

The reversal is not in this one.  It's filed somewhere else.

THE COURT:  Are you withdrawing your request to have this document admitted at this time under judicial notice?

MS. WANG:  I mean I would like it admitted, but if you would like to reserve that until I get it.  I can resend it right now for you to consider.  If we can just go past this and come back to it for an official ruling.

THE COURT:  Please send whatever it is -- actually before you do that, I should have started here.  What's the relevance of this, ma'am?

MS. WANG:  Oh yes.  It's about, there are numerous allegations about hiding the baby, the baby was in danger, that we were going to kill the baby.  That directly goes into the allegations made in this report by Terry Thygesen and Mr. Thygesen's agents that show, which further testimony will show that nobody hit the baby.  We had a video of showing the baby to DCFS.  These are allegations that Terry Thygesen and their agents made that we were going to kill the child.  That turned out to be false and was later reversed.

This is directly related to this case that they are in fear that we were going to kill the child.

THE COURT:  Okay, let me see if I understand.  So I understand that it's relevant in the sense that it's related to the same case.  So that part is clear.  That may not be -- it's actually not enough.

So let me understand.  You are saying that the allegations

something that came up in the trial.

So as to procedural defects, I am prepared to overrule your objections, Mr. Rappaport. Do you have any substantive objection to this proposal?

MR. RAPPAPORT: Just I am checking to see. We don't -- again, because we don't get served we don't have a record of when we get something. So if you just give me a minute, what we try to do, sometimes Ms. Wang emails something to us, but because the documents that have come from her have been different than the ones that she serves in court, it is incumbent upon us to download, to locate what she has filed with the court and to produce our own copies, because sometimes we don't have the date that it's filed.

THE COURT: Let me ask you to address any substantive objections before we spend too much time on this.

MR. RAPPAPORT: Certainly, got it. It's all hearsay. The fact that an email -- the contents is all hearsay, Your Honor.

THE COURT: Sustained. The Court denies a request for admission of what is number 1 on what was filed today.

Moving on to number 2, it is identified as a March 6, 2019, Utah dispatch 911 call, Terry Thygesen/Darrick, D-a-r-r-i-c-k, last name Chase, paren (Hillard and Heintz, H-i-l-l-a-r-d and H-e-i-n-t-z, found 3/6/19, quote, "Kill baby K post,") end quote, end paren.

Any objections, Mr. Rappaport?

MR. RAPPAPORT: It is hearsay.

THE COURT: And the Court is prepared to sustain that objection.

she gave testimony on the email that was sent, the allegations of child abuse that was later reversed.

The reversal is not in this one.  It's filed somewhere else.

THE COURT:  Are you withdrawing your request to have this document admitted at this time under judicial notice?

MS. WANG:  I mean I would like it admitted, but if you would like to reserve that until I get it.  I can resend it right now for you to consider.  If we can just go past this and come back to it for an official ruling.

THE COURT:  Please send whatever it is -- actually before you do that, I should have started here.  What's the relevance of this, ma'am?

MS. WANG:  Oh yes.  It's about, there are numerous allegations about hiding the baby, the baby was in danger, that we were going to kill the baby.  That directly goes into the allegations made in this report by Terry Thygesen and Mr. Thygesen's agents that show, which further testimony will show that nobody hit the baby.  We had a video of showing the baby to DCFS.  These are allegations that Terry Thygesen and their agents made that we were going to kill the child.  That turned out to be false and was later reversed.

This is directly related to this case that they are in fear that we were going to kill the child.

THE COURT:  Okay, let me see if I understand.  So I understand that it's relevant in the sense that it's related to the same case.  So that part is clear.  That may not be -- it's actually not enough.

So let me understand.  You are saying that the allegations

from DCFS were eventually reversed and that you believe that that impeaches the testimony that was given about fear, is that what you are saying?

MS. WANG:  It's about communications sent from Ms. Terry Thygesen back and forth about the allegations that the child was going to be killed and that I may have been hiding in the basement in my Utah home and evading service.  And that they made allegations that we were going to kill the child, run off to China with the child, and various other allegations to impeach Terry Thygesen's credibility in general.  It's just contained in this report.  And it's an official document.

THE COURT:  So the request for admission of some type of DCFS, Division of Child and Family Services reversal, which I don't have at this time anyway, I am not going to have you send that to us because the Court denies its admission of judicial notice without prejudice.

If you testify and somehow that becomes relevant on cross-examination, then we may have to revisit that.  But you will have to be the one that brings that back up.  And I am speaking to Ms. Wang.

Okay.  April 10, 2019, you have identified number 5, it says, "April 10, 2019, Terry Thygesen 911, death threats received from Wang's parents."  I don't agree with that characterization, but I think we've addressed what document you wanted judicial notice of, correct, the three-page transcript?

MS. WANG:  Yes.  But there could be other ones.  I'm sorry, I just want to make sure this isn't another one that we are talking about, since there were many calls.  I do apologize, I

MR. RAPPAPORT:  Excuse me.  I couldn't hear the name of the name of the lawyer.  I think the Court reporter will probably ask for the same information.

THE COURT:  I didn't hear him say a name.  My lawyer saw it is what I heard.

MR. RAPPAPORT:  Okay.

MS. WANG:  He can ask that on cross.

THE WITNESS:  So it's a snowy day, the road is very slippery, but the car is chasing me right behind me.  It's so dangerous.  I just scared.  Those people, they don't care about Kayson.  Why they have their agent try to Chase me off the highway?  Anything could have happened.  We could have been killed.

MS. WANG:  Q.  Hold on.  Who else witnessed this?  Was there any other witnesses?  Who was with you that day?  Was I with you?

A.  Yes, my wife Jan Cheng was with me.  And also at the lawyer's office Jeff Rifleman and Melissa Todd.

Q.  Was the child with you?

A.  Yes, the child was with me.  And Justin Lampropoulos, that's the agent hired by Mr. Thygesen, and also Ben Stowell, they have multiple cars Chase us to my lawyer Jeff Rifleman's office.  So Melissa Todd wrote a statement notarized.

Q.  So the child was in the car with you on this car Chase on February 20, 2019?

A.  Yes, yes.  That's so frightening.  Anything could happen during that highway Chase, freeway Chase.

Q.  How many times do you think people came over related to at least myself or Thygesen, how many times do you think?

A.   The two people from DCFS.  I don't have their name at the moment, but I can find it later.

MS. WANG:  I am going to right now ask to admit the official court records for the Utah DCFS case which has the agents' names and verifying what they saw and talked about in that video, if I may.

THE COURT:  Any objection?

MR. RAPPAPORT:  Hearsay.

THE COURT:  Sustained.

MS. WANG:  It's not for the truth of the matter.

THE COURT:  I'm sorry, go ahead.  You were going to say something about it not being hearsay.  I want to hear what you have to say, Ms. Wang.

MS. WANG:  Yes.  It's just an official court document of the things that happened that day and them coming, DCFS agents as law enforcement, and that they saw the child not physically abused and nobody was hiding the child.

And the sole reason that the child was removed was a mysterious post that appeared on March 6, 2019, that said, "Under my true name Kailin Wang, I am going to kill this baby if I don't get child support."  It was reported by Hillard and Heintz, the private investigation company, and then Erica Johnstone.

THE COURT:  Thank you.  I had my hand raised and Ms. Wang apparently saw it and stopped.

Okay.  You said a lot, Ms. Wang, in response to my question.  It sounds like precisely the content in that report is what you want the Court to admit for the very truth of what is being stated.  So it sounds like the objection as to hearsay, which I

you feel now?  I mean are you scared of the Thygesen family?

A.  Every day, every second, because they use their power, their connection, their wealth to hire so many armed agents and falsely accuse me to have weapon.  So anything can happen.  They can just probably kill me because I have gun, but I don't have any guns.

They can make false death threats to the police, just like yesterday Terry Thygesen's testimony.  First she said she made a death threat, we made a death threat.  Then later when the judge asked specifically did me and my wife make a direct death threat, she said no.

So under such a terrible evil mind person, I really live in fear every second.  Especially when I visit California.

Q.  Thank you.  And do you have a gun?  Have you ever had a gun?

A.  No.  In my entire life I never had a gun.

MS. WANG:  Okay, I am done with Mr. Wang's direct.

THE COURT:  Do you have anything for cross?

MR. RAPPAPORT:  I do, Your Honor, thank you.

---oOo---

CROSS-EXAMINATION BY MR. RAPPAPORT:

MR. RAPPAPORT:  Q.  Mr. Wang, you just said that you live in fear, is that correct, did I hear you correctly?

A.  Yes.

Q.  Okay, I am going to come back to that subject.

I'd like to ask you about the day your grandson was born. You said you were so happy, so grateful; is that correct?

A.  Yes.

Q.  Because it was your first grandchild; right?

A.  It's my first and my only grandchild.

evidence.  Okay.

THE COURT:  Overruled.  Please continue.

MR. RAPPAPORT:  "Why don't you bend over and take it like the others."  Which is an implication to Mr. Thygesen, he said there were others before him and that she was able to somehow subdue them, to conquer them, to overcome them.  "Why don't you take it like the others."  And that's what she's been doing for years and years and years.

And you can see her progression that she's gotten better at this, because when she got prosecuted in New York, she went on to Walker Stone.  The texts related to him were horrible.  "I am going to fry you like bacon, I am going to hog-tie you, I am thinking of new ways to hurt you, you are so dead."

This is what Ms. Wang is like when she is not under the supervision of the Court, when she is free to terrorize people from the secrecy of her own home, you know, from the distance of the internet.

But then what does she do with Christoffer Thygesen after she gets prosecuted in Utah is she learns how to do it one step better, which is she doesn't theoretically directly contact Mr. Thygesen or his family with the chopped up baby's, the hundreds and hundreds of posts of decapitated children with messages like, "I am forced to kill a 21-week old child, I'm forced to kill Christoffer's, it is sick."  I mean what if somebody -- I'm a parent, and if my school calls me and says we just want to let you know everything is okay but your child fell in the playground, we had to bring him into the office, whatever it is, they always preface it with everything is okay, but.  The

1735

6

MR. RAPPAPORT:  No, Your Honor.

THE COURT:  As to number two, there has been a nonhearsay reason why that's been offered, and I will let Mr. Rappaport finish, since I interrupted you, and then I will turn to Ms. Morgan as to any further comments about that.

MR. RAPPAPORT:  Certainly.  Sorry.  I'm losing my voice today.

Just going back to the procedural issue:  In paragraph 21 of the Court's order from the last hearing, it says "The parties are ordered to file a single updated declaration of up to ten pages."  So I was just following the Court's order.

THE COURT:  I appreciate that, and I appreciate how that could be misconstrued.  I will try to do better myself, but I should tell Counsel to just generally know this as well: Unless the Court prohibits someone from filing a third-party declaration, comments like that are about the parent's -- their declaration -- like not multiple declarations by Mr. Thygesen or Ms. Wang but just one and a page limit as to that one.  That is what the Court's intent was.

Back to you, Mr. Rappaport.

MR. RAPPAPORT:  Very good.

As I was saying, there is a nonhearsay purpose.  It's not being offered for the truth as to whether this individual is glad that Derrick Chase is dead.  It's not being offered for the truth that she -- this individual is sorry that she didn't take the other attorneys and the grandfather with him -- i.e., that he kill myself, Mr. Thygesen's father, and the former attorneys working on this case.  It's not being offered for

abused.  It's that he is so sweet, so tender.  Look at that face, his face is smiling.  She says, "I have custody of this baby.  This is the child that I have that you can't see, and maybe one day you will except he's sick or I am forced to kill him."  And then this comes, right after this --

MS. WANG:  Objection, that's not in any of the texts messages.  So that's not on the picture.  I don't know if Rappaport is saying that's in some message to anyone.  So I don't know if he added that, but can we make the record that that's not in actually what he's reading off of?

I am unaware of any allegations where a message was received where it says, "I have custody and this is a picture of the baby."  So just for the record that's not in that text message.

THE COURT:  Sustained.  Please continue, Mr. Rappaport.

MR. RAPPAPORT:  And if I said that, what I meant to say is it was the message that she was intending to convey, that here is the baby and the baby is in my possession, but this is the baby who you maybe will get to see except he is sick or he is starving, and leaving the Thygesens with that message.  And then the proliferation of the horrible posts.

Can we screen share?  What exhibit is it?

MS. JOHNSTONE:  5-A.

THE COURT:  Mr. Rappaport, no offense to the Thygesen family, this has been a very long case for you and it's been a very long trial for you no doubt.  From a judicial standpoint this has not been a long trial.  I don't need to screen share.  I have the evidence very fresh in mind right now.

MR. RAPPAPORT:  And I know.  And you know, I have to say

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

UNIFIED FAMILY LAW COURT

HONORABLE DANIEL FLORES, JUDGE PRESIDING

DEPARTMENT 404

-oOo-

CHRISTOFFER STANFORD THYGESEN,           )
                                         )
                PETITIONER,              )
                                         )CASE NO. **FDV-19-814465**
        vs.                              )
                                         )
KAILIN WANG,                             )
                                         )
                RESPONDENT.              )
_____)

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**THURSDAY, MAY 25, 2023**

APPEARANCES OF COUNSEL:

FOR PETITIONER:
RAPPAPORT & SHERIDAN
BY:  **DOUGLAS L. RAPPAPORT**
260 California Street, Suite 1002
San Francisco, California  94111

FOR RESPONDENT:
Law Office of Kathleen L. Morgan
BY:  **KATHLEEN MORGAN**
(Appearance by video conference)
100 Pine Street, Suite 1250
San Francisco, CA 94111

Reported By:  Ann Delgado, CSR No. 11185

MR. RAPPAPORT:  No, Your Honor.

THE COURT:  As to number two, there has been a nonhearsay reason why that's been offered, and I will let Mr. Rappaport finish, since I interrupted you, and then I will turn to Ms. Morgan as to any further comments about that.

MR. RAPPAPORT:  Certainly.  Sorry.  I'm losing my voice today.

Just going back to the procedural issue:  In paragraph 21 of the Court's order from the last hearing, it says "The parties are ordered to file a single updated declaration of up to ten pages."  So I was just following the Court's order.

THE COURT:  I appreciate that, and I appreciate how that could be misconstrued.  I will try to do better myself, but I should tell Counsel to just generally know this as well:  Unless the Court prohibits someone from filing a third-party declaration, comments like that are about the parent's -- their declaration -- like not multiple declarations by Mr. Thygesen or Ms. Wang but just one and a page limit as to that one.  That is what the Court's intent was.

Back to you, Mr. Rappaport.

MR. RAPPAPORT:  Very good.

As I was saying, there is a nonhearsay purpose.  It's not being offered for the truth as to whether this individual is glad that Derrick Chase is dead.  It's not being offered for the truth that she -- this individual is sorry that she didn't take the other attorneys and the grandfather with him -- i.e., that he kill myself, Mr. Thygesen's father, and the former attorneys working on this case.  It's not being offered for

1766

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE RUSSELL S. ROECA, JUDGE PRESIDING

DEPARTMENT 403

---oOo---

CHRISTOPHER STANFORD THYGESEN,      )
                                    )
              PETITIONER,           )
                                    )
         vs.                        ) No. FDV-19-814465
                                    )
KAILIN WANG,                        )
                                    )
              RESPONDENT.           )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

THURSDAY, SEPTEMBER 21, 2023


A P P E A R A N C E S:

FOR PETITIONER:

        LAW OFFICES OF DOUGLAS L. RAPPAPORT
        BY:  DOUGLAS L. RAPPAPORT, Attorney at Law
        260 California Street, Suite 1002
        San Francisco, California  94111


FOR RESPONDENT:

        KAILIN WANG
        IN PROPIA PERSONA


REPORTED BY:  ROCIO M. LOPEZ, CSR #11194
              OFFICIAL REPORTER

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

Christopher Thygesen. He said he was indigent and he was going to represent himself going forward. Clearly, he lied. Again, I renew your denial of my request for attorney's fees because clearly he has the ability to pay.

THE COURT: All right. We will get to that. The attorney's fees request is one of the things on the list.

We're going to go in a structured fashion. I'm going to start -- I'm actually --

THE CLERK: Could we swear the parties, Your Honor?

THE COURT: Yes. Ms. Wang, Mr. Thygesen, raise your right hands and be sworn.

THE CLERK: Please state and spell your name for the record.

Mr. Thygesen, first.

MR. THYGESEN: I do.

THE CLERK: Ms. Wang.

MS. WANG: I do.

THE COURT: All right. I want to start first with -- the tentative ruling actually is quite long as you can see.

I'd like to have you go to the section called other orders.

MS. WANG: Yes, sir.

THE COURT: All right. I want to talk first about -- well, let's first of all, let's talk about 28 is Respondent's January 14th, 2025 filing titled, quote, "Thygesen impersonated Wang on 3/16/19" quote, "Kill Baby K post," closed quote, "to obtain custody ex party," closed quote.

part of the 217 hearing.

MS. WANG:  It was raised actually.  It was filed.  I don't know if you allowed it to be filed, but you did address and said you were going to hold --

THE COURT:  All right.  I've ruled on that one.

Mr. Rappaport just made something for the record.

MS. WANG:  I am looking -- I have no idea what Judge Wiley status.  Can you tell me which order I violated with the Kill Baby K post?

THE COURT:  I already put it on the record and it --

MS. WANG:  I don't see any orders issued.  Specifically, Your Honor, Judge Wiley did make orders after that, superseding that, that I absolutely am allowed to post about my case.  So, yeah, there been no orders in place that I can't post about my case.  Okay.  Therefore -- okay, there's been no orders.

I even asked you to clarify and modify the restraining order to add that restriction if you believe that is warranted.  You denied my request on 9/21/2023.  Okay.

So I asked for clarification.  I cannot violate orders that I have no knowledge it exists.

MR. THYGESEN:  Your Honor, if I may?

THE COURT:  Yes, Mr. Thygesen.

MR. THYGESEN:  There is one item left regarding inconvenient forum that I think we only have so much time to address.

THE COURT:  I'm denying that request.

MR. THYGESEN:  If I may, just briefly?

Medium.com, the Lance etc.  So these are clearly her.  Plus when you look at all the incredibly personal and private information that are included in these repetitive posts, this is no doubt from her.  And again our evidence is preponderance, not no doubt.

But our concern is, and just going to page 2 of our March 4th declaration, just a small sample of what's been posted on Instagram, 2/15, "Christopher Thygesen impregnated me and forced me to kill his 21-week-old child."  That's Exhibit B-1.

Exhibit C-1, "Christopher Thygesen/data scientist at Square Inc. forced 21-plus week abortion on me."  That post includes a photo of a dismembered 20-plus-old week aborted fetus with the caption, "Christopher Thygesen coerced me into a 20-plus-week abortion."

These go on and on, Your Honor, these repetitive posts. Initially she said that he had forced her to kill her 18-week-old baby, then became a 21-week-old baby, then 24 weeks.

The baby was born.  I have a birth certificate that establishes that her residence -- that A, the baby was born, and I have the original that I brought today and I gave Your Honor a copy.

So we are extraordinarily concerned that she is mentally ill.  She does have, it's in our initial papers, she does have a history of mental illness.  There is a conviction in New York City, we have attached the papers in our pleadings, where she was required to go to stalking therapy or some similar therapy.

We also attached as part of our papers a declaration from a Rory Will, that he told of extensive social harassing, creating evidence, having people pretending to be him, impersonating him.

Case 2:24-cr-00163-TS   Document 157-2   Filed 04/19/26   PageID.8331   Page 159 of 211
Reporter's Transcript of Proceeding
THURSDAY, JANUARY 23, 2025

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE **RUSSELL S. ROECA**, JUDGE

DEPARTMENT 403

---oOo---

CHRISTOPHER STANFORD THYGESEN, )
)
        Petitioner, )
) COURT NO: FDV-19-814465
   vs. )
)
KAILAN WANG, )
)
       Respondent. )
_____)

**<u>Reporter's Transcript of Proceeding</u>**

THURSDAY, JANUARY 23, 2025

---oOo---

TRANSCRIPT PRODUCED PURSUANT TO Government Code 69954(d):

   Any court, party or person who has purchased a transcript may, without paying a further fee to the reporter, reproduce a copy or portion thereof as an exhibit pursuant to court order or rule, or for internal use, but shall not otherwise provide or sell a copy or copies to any other party or person.

---oOo---

Reported by:  Linda S. Heras, CSR NO. 13286

2

**APPEARANCES OF COUNSEL:**


FOR PETITIONER:

DOUGLAS L. RAPPORT LAW OFCS
BY:   **DOUGLAS RAPPORT,** Attorney at Law
260 CALIFORNIA STREET
SAN FRANCISCO, CA  94111


FOR RESPONDENT:

IN PRO PER
(APPEARING VIA ZOOM)

Linda S. Heras, CSR No. 13286

Christopher Thygesen. He said he was indigent and he was going to represent himself going forward. Clearly, he lied. Again, I renew your denial of my request for attorney's fees because clearly he has the ability to pay.

THE COURT: All right. We will get to that. The attorney's fees request is one of the things on the list.

We're going to go in a structured fashion. I'm going to start -- I'm actually --

THE CLERK: Could we swear the parties, Your Honor?

THE COURT: Yes. Ms. Wang, Mr. Thygesen, raise your right hands and be sworn.

THE CLERK: Please state and spell your name for the record.

Mr. Thygesen, first.

MR. THYGESEN: I do.

THE CLERK: Ms. Wang.

MS. WANG: I do.

THE COURT: All right. I want to start first with -- the tentative ruling actually is quite long as you can see.

I'd like to have you go to the section called other orders.

MS. WANG: Yes, sir.

THE COURT: All right. I want to talk first about -- well, let's first of all, let's talk about 28 is Respondent's January 14th, 2025 filing titled, quote, "Thygesen impersonated Wang on 3/16/19" quote, "Kill Baby K post," closed quote, "to obtain custody ex party," closed quote.

part of the 217 hearing.

MS. WANG:  It was raised actually.  It was filed.  I don't know if you allowed it to be filed, but you did address and said you were going to hold --

THE COURT:  All right.  I've ruled on that one.

Mr. Rappaport just made something for the record.

MS. WANG:  I am looking -- I have no idea what Judge Wiley status.  Can you tell me which order I violated with the Kill Baby K post?

THE COURT:  I already put it on the record and it --

MS. WANG:  I don't see any orders issued.  Specifically, Your Honor, Judge Wiley did make orders after that, superseding that, that I absolutely am allowed to post about my case.  So, yeah, there been no orders in place that I can't post about my case.  Okay.  Therefore -- okay, there's been no orders.

I even asked you to clarify and modify the restraining order to add that restriction if you believe that is warranted.  You denied my request on 9/21/2023.  Okay.

So I asked for clarification.  I cannot violate orders that I have no knowledge it exists.

MR. THYGESEN:  Your Honor, if I may?

THE COURT:  Yes, Mr. Thygesen.

MR. THYGESEN:  There is one item left regarding inconvenient forum that I think we only have so much time to address.

THE COURT:  I'm denying that request.

MR. THYGESEN:  If I may, just briefly?

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE **RUSSELL S. ROECA,** JUDGE

DEPARTMENT 403

---oOo---

CHRISTOPHER STANFORD THYGESEN,    )
                                  )
            Petitioner,           )
                                  )  COURT NO: FDV-19-814465
        vs.                       )
                                  )
KAILAN WANG,                      )
                                  )
            Respondent.           )
_____)

**Reporter's Transcript of Proceeding**

THURSDAY, JUNE 12, 2025

---oOo---

TRANSCRIPT PRODUCED PURSUANT TO Government Code 69954(d):

Any court, party or person who has purchased a transcript may, without paying a further fee to the reporter, reproduce a copy or portion thereof as an exhibit pursuant to court order or rule, or for internal use, but shall not otherwise provide or sell a copy or copies to any other party or person.

---oOo---

Reported by:  Linda S. Heras, CSR NO. 13286

**APPEARANCES OF COUNSEL:**


FOR PETITIONER:

IN PRO PER
(APPEARING VIA ZOOM)


FOR RESPONDENT:

IN PRO PER
(APPEARING VIA ZOOM)

Linda S. Heras, CSR No. 13286

**MS. WANG:** Yes, I did. So, there's a number of things.

First, there is a disqualification pending.

**THE COURT:** I have not seen any disqualification, and it certainly has not been served on me. We will proceed this morning.

**MS. WANG:** Okay.

Well, I dispute everything, since you denied everything again. We'll go with this -- we'll go in order for the tentative ruling.

Paragraph B, to serve the subpoena on Cloudfare (phonetic) is denied. First of all, why is that denied? There's no reason. So, it's hard for me to prepare.

**THE COURT:** Well, in large part, Mr. Thygesen's paperwork and the court docket reflects that this issue has been raised before the domestic violence restraining order hearing, and the subpoenas were issued regarding that 2019 post. The DV ruling was affirmed on appeal. Then this issue was raised again in June '23 and denied in October '23.

Mr. Thygesen, let me ask you, do you plan to introduce this post in the long cause hearing?

**MR. THYGESEN:** Sorry, the post you're referring to?

**THE COURT:** The kill baby post.

**MR. THYGESEN:** That's not my expectation.

**MS. WANG:** That's not a clear answer; but regardless, Your Honor, if you look at Judge Flores' 10/18/2019 minute order, it clearly says, this DVRO is not going to incorporate the kill Baby K. post. You said that it was

Linda S. Heras, CSR No. 13286

F I L E D
San Francisco County Superior Court

FEB 0 2 2022

CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO

UNIFIED FAMILY COURT

| | |
|---|---|
| **CHRISTOFFER THYGESEN**<br><br>Petitioner<br><br>VS.<br><br><br>**KAILIN WANG**<br><br>Respondent | Case Number: **FDV-19-814465**<br><br>**ORDER REINSTATING IN PERSON VISITATION FOR RESPONDENT KAILIN WANG**<br><br>Hearing Date: November 18, 2021<br>Judge:        Hon. Monica F. Wiley<br>Dept.         405 |

## I.     Procedural History

On July 19, 2021, this Court determined that a pattern of concerning and escalating behavior provided good cause to temporarily suspend in-person visitation between Respondent and the minor child, Kayson Thygesen Wang (DOB: 11/26/18). On July 30, 2021, the Court issued a written order extending the temporary *ex parte* order suspending in person visitation. The Court's order was based on its findings that Respondent posed a heightened risk of abduction under Family Code section 3048(b)(1)[1] because she has violated court orders in both Utah and California, has no strong ties to California, and has attempted to obtain the child's school/medical records, and his passport.[2] In addition, the litigation history in this case demonstrates that Respondent has a history of not cooperating with

---

[1] All future references are to the Family Code section unless otherwise indicated.
[2] Respondent sent subpoenas to companies including Facebook, Google, Menlo Pediatrics, the Menlo Medical Clinic, University Health Care Alliance, the child's school, and Airbnb.

1

best interest of the child. (*Id.* at 1264.) The court must weigh these factors and determine a child's best interest solely from the child's standpoint.

Under Section 3031(c), when making an order for custody or visitation in a case in which domestic violence is alleged and an emergency protective order, protective order, or other restraining order has been issued, the court shall consider whether the best interest of the child, based upon the circumstances of the case, requires that any custody or visitation arrangement shall be limited to situations in which a third person, specified by the court, is present, or whether custody or visitation shall be suspended or denied. Pursuant to Family Code § 3011, "in making a determination of the best interests of the child," the court has considered the following factors listed below in its analysis.

**1.  The health, safety, and welfare of the child (Fam. Code § 3011(a))**

A court's primary concern is the health and safety of the child when making visitation orders. (Fam. Code §3020(a).) Kayson has been described throughout these proceedings as a healthy and happy child. The prior visitation reports suggest that he likes to play with his toys, have books read to him, and watch videos. The on-site supervisors who have observed visits at Rally, Terra Firma, and the Academy for Child Advocacy and Family Support (ACAFS) have not reported any developmental, behavioral, or special needs in their written reports to the court. Petitioner introduced no evidence demonstrating or even suggesting that Respondent's visits with Kayson have been detrimental or impacted his health, safety, or welfare. This factor weighs in favor of resuming supervised in-person visitation.

**2.  The nature and amount of contact with both parents (Fam. Code §3011(c))**

In determining the child's best interest, this Court must also consider the nature and amount of contact with both parents. Since July 2019, Petitioner has had sole physical

8

# EXHIBIT M-1

**Utah DCFS Removed Child on 3/6/19 Based on the Fake "Kill Baby K" Post**

# Exhibit M

On 3/6/19 Utah DCFS Removed the Child from Wang's Home based on that Impersonation, Fake 3/6/19 "Kill Baby K" post  from Utah to live w/ Thygesen in Menlo Park, CA.

## CPS Case Summary Report for Case # 2503301

| Ref/Case ID | 2503301 | Priority | | 24 Hours |
|---|---|---|---|---|
| Case Start Date | 06 Mar 2019 | Child First Seen Due Date | | 07 Mar 2019 |
| Case Due Date | 05 Apr 2019 | Caseworker | | Kimberly Webb |
| Extension Date | N/A | Is there a Removal? (Y/N) | | Y |
| Case End Date | 27 Mar 2019 | Case Office | | Provo Family Services |
| LE Agency | Spanish Fork PD | Law Enforcement Case # | | 19SF01599 |
| Officer Name | Officer Eric Solie | Photos Taken By | | N/A |
| Referral Source | Law Enforcement | Referral County | | UTAH |
| Additional Infos | 2503948 | | | |
| Referral Address | ▮▮▮▮▮▮▮ | | | |

### Case Persons Information

| Name: Last, First M | DOB | Age @ Case Start | Sex | Role | Priors | Phone |
|---|---|---|---|---|---|---|
| Thygesen, Christoffer S. | 13 Nov 1992 | 26 | M | Other | Y | 650 862-8473 (Cellular) |
| Wang, Kailin | ▮▮▮▮ | ▮ | F | Perpetrator | Y | ▮▮▮▮▮ |
| Wang, Kayson T. | 26 Nov 2018 | 0 | M | Victim | N | |

### Relationships

| Case Person | Relationship (to Related Person) | Is Related Person a Caregiver of the Case Person |
|---|---|---|
| Kailin Wang | is a Parent to Kayson Wang | |
| Christoffer Thygesen | is a Parent to Kayson Wang | Yes |
| Kailin Wang | is a Other Non-Related to Christoffer Thygesen | |
| Kayson Wang | is a Child to Kailin Wang | |
| Kayson Wang | is a Child to Christoffer Thygesen | |
| Christoffer Thygesen | is a Other Non-Related to Kailin Wang | |

### Case Contact Information

Other Open Addresses:

Christoffer S. Thygesen (Home) 55 Fox Glen Circle PARK CITY UT 84060

Kailin  Wang (Home) ▮▮▮▮▮▮

Kayson T. Wang (Home) ▮▮▮▮▮▮▮

### Structured Decision Making (SDM) Safety and Family Risk Assessments

| Safety Determination | Unsafe | Recommended Action | Open |
|---|---|---|---|
| Risk Level | Low | Planned Action | Do Not Open |
| Planned Action Reason | Custody was granted to the father. Mother was the threat and she only has supervised visitation. | | |
| Date of last finalized safety assessment | 3/7/2019 7:09:03 PM | Date of last finalized risk assessment | 3/20/2019 9:34:57 PM |

41

Father's Employment:

3rd Party contacts: none
Special Considerations for CPS: Open CPS - 2503301 - PA; no new allegations added
Language(s) in home: English
Location of incident: Spanish Fork
eRep: open services
Sex Offender Registry: none
Native American: no

Referent stated that Kayson has rash and dry skin issues, and he needs a special lotion for his skin. Referent stated that the lotion was not taken with Kayson. Referent stated that grandparents would like to speak with the caseworker about getting the lotion to Kayson, and setting up a visit with Kayson.

## Referral Details

| | |
|---|---|
| Staffing Notes: | Mother threatened on social media on 3.6.19 to kill herself and Kayson because father isn't paying child support. Father will arrive in Utah at 9:42 pm tonight from San Francisco. This case will be assigned to Supervisor Robbie Adams. |
| Resources recommended to Referent: | |
| Notification sent to LE: | Spanish Fork PD - This report is being sent to you in compliance with mandatory child abuse reporting laws. The Division of Child and Family Services (DCFS) does not anticipate a need for law enforcement involvement at this time. However, if your agency has information which indicates that an officer should be assigned, please do so and have the assigned officer contact the CPS worker identified above. |

## Case Allegations

| Allegation | Perpetrator/ Alleged Perpetrator | Victim/ Alleged Victim | Incident Date | Perp Rel to Victim | Juv Perp |
|---|---|---|---|---|---|
| Physical Abuse | Wang, Kailin | Wang, Kayson T. | 06 Mar 2019 | Parent | Yes |

## Allegation Findings & Review Details

### Physical Abuse

| Alleged Perpetrator: Wang, Kailin | | | Approx. Age at Incident Date: 36 | |
|---|---|---|---|---|
| Alleged Victim: Wang, Kayson T. | | | Approx. Age at Incident Date: 0 | |

| Review Date | Review Type | Finding Severity | Summary | |
|---|---|---|---|---|
| 20 Mar 2019 | Case Closure | Supported – Non Severe/Chronic | Kailin posted a threat to end her life and Kayson's on social media. | |

## Case Overview

| Economic Status | Upper Class | Services Provided: | None Needed |
|---|---|---|---|
| Family Structure | Unmarried Couple with Children | | |
| OOH Abuse Type | None | | |

## Child Interviews

| Child | DCFS Interviewer | Location | Support Person | Date | Time | Description |
|---|---|---|---|---|---|---|
| Kayson T. Wang | Kimberly Webb | Child's home | Support person not requested | 07 Mar 2019 | 09:30 AM | No interview, child non-verbal and unable to communicate |

## Removals

42

Finalized By: Adams, Robbie Date: 20Mar19

**Policies:** *None*

Email from Paternal grandmother Terry Thygesen

Baby and Daddy are both doing very well, and they are totally in love with each other. We are staying at the home of some friends in Park City through the hearing on Tuesday, and will then fly home with baby Tuesday evening. Christoffers lawyer has spoken to someone high up in the State Attorneys office to understand the shelter hearing process, and he thinks it will go smoothly. The Wangs have apparently hired an attorney who is making lots of threats, but weve got the facts on our side, so that will go nowhere. I dont fear the longer term custody process either given the facts in the case and also given that San Francisco PD expects the DA will be pressing felony charges against Ms. Wang very soon. I expect that Christoffer will retain sole physical and legal custody of his son forever. My husband is flying in today to stay with us here through the hearing. The hearing is this Tuesday at 2:40pm. Will you be around then?

| Start Date and Time | Duration(min) | Status | Activity Type | Author |
|---|---|---|---|---|
| 09Mar19 01:52 PM | 2 | FINAL | CLTP-Client Telephone | Webb, Kimberly |

Finalized By: Webb, Kimberly Date: 26Mar19

**Policies:** *None*

CW received a voicemail from MO stating that she would not be able to attend the shelter hearing because she could not make it back in time. She stated that she would need to extend the hearing and asked if I could inform her of that process.

| Start Date and Time | Duration(min) | Status | Activity Type | Author |
|---|---|---|---|---|
| 10Mar19 08:30 PM | 5 | FINAL | CLEM-Client Email/Text | Adams, Robbie |

Finalized By: Adams, Robbie Date: 20Mar19

**Policies:** *None*

Terry Thygesen
Mar 10, 2019, 8:28 PM (10 days ago)
to me

Hi Robbie,

I wanted to let you know that Christoffer and I took baby to see a pediatrician here in Park City for a complete check up. The mark on the back of his head is definitely a birthmark. Baby has a few little patches of rough skin that the doc recommended we tend to with a combo of 1% hydrocortisone cream on the worst spots and cetaphil body cream all over. Doc said this would likely not be necessary anymore after he gets home with us to CA where the climate is less dry. Baby also has a bit of a hernia in his groin that we need to keep an eye on. We also got his vaccination records which were on file with Utah, so we also now know what needs doing next on that front when we get home to CA. Christoffer is doing such a great job as a new dad, and he and baby are completely in love with each other. The have already formed a very strong father/son bond.
Best Regards, Terry Thygesen

| Start Date and Time | Duration(min) | Status | Activity Type | Author |
|---|---|---|---|---|
| 11Mar19 09:00 AM | 10 | FINAL | CLTP-Client Telephone | Webb, Kimberly |

Finalized By: Webb, Kimberly Date: 26Mar19

**Policies:** *None*

# EXHIBIT N-1

**11/8/19 Utah DCFS Reversed Findings — Wang Did NOT Make the 3/6/19 Post**

# Exhibit N

11/8/19 Utah DCFS Reversed their Findings that Wang made that 3/6/19 "Kill Baby K" post that resulted in the removal of Baby K from Utah to live w/ Thygesen in Menlo Park, CA.



STATE OF UTAH

DEPARTMENT OF HUMAN SERVICES

OFFICE OF ADMINISTRATIVE HEARINGS

| | | |
|---|---|---|
| DIVISION OF CHILD AND FAMILY SERVICES, | : | |
| Claimant, | : | FINAL DECISION AND ORDER |
| vs. | : | |
| KAILIN WANG, | : | Case No. 2503301 |
| Respondent. | : | |

This action was initiated with a Notice of Agency Action dated March 27, 2019, which informed Respondent that Claimant made a determination that Respondent is substantially responsible for Physical Abuse. Following service of the Notice, Respondent requested a hearing to challenge the Supported finding. Accordingly, the matter was set for hearing.

On November 6, 2019, Claimant filed a Motion to Reverse Supported Finding to Unsupported and Vacate the In-Person Informal Hearing ("Motion"), based on Claimant's determination to change the finding of Physical Abuse to Unsupported.

## I. FINDINGS AND CONCLUSIONS

The right of an individual to contest Claimant's finding in an informal administrative hearing is limited to when such finding is designated as "Supported." *See*, Utah Code Ann. § 62A-4a-1009 (2019). Accordingly, given that Claimant has changed its finding of Physical Abuse to Unsupported, Respondent is no longer entitled to an administrative hearing in the present matter, and the request for hearing should be dismissed.

## II. ORDER

Wherefore, based upon the foregoing and Claimant changing the finding of Physical Abuse in case number 2503301 to Unsupported, it is herewith ordered that Respondent's Request for Administrative Hearing is dismissed. The in-person informal hearing scheduled Thursday, November 21, 2019, at 10:00 a.m. is vacated.

44

Any information that identifies the victim or any other subject of the child abuse and neglect report, including the victim or other subject's name or other identifiers, must be kept confidential pursuant to Utah Code section 62A-4a-412 (2019) and/or sections 63G-2-302, 304 (2019) unless the victim or other subject, or the victim or other subject's legal representative, consents to the release of the information.

**RECONSIDERATION** of this Order may be obtained by any party by filing a written Request for Reconsideration with the Office of Administrative Hearings, Department of Human Services, 195 North 1950 West, Salt Lake City, Utah 84116, within twenty (20) days after the date this Order was issued. The Request must state the specific grounds upon which relief is sought and a copy of the Request must be mailed to the opposing party. The opposing party may file a response within ten (10) days of receiving the Request for Reconsideration with the Office of Administrative Hearings and a copy must be mailed to the party requesting reconsideration. If no Order granting or denying Reconsideration is issued within twenty (20) days after the filing of the Request, the Request for Reconsideration shall be considered denied in accordance with Utah Code section 63G-4-302 (2019); **AND/OR:**

**JUDICIAL REVIEW** of this Order may be obtained by filing a Complaint in the Juvenile Court in the county where the petitioner resides or maintains his or her principal place of business within thirty (30) days after the date this Order was issued **OR** an order on reconsideration is issued or is considered to have been issued under Utah Code section 63G-4-302 (2019). A copy of the Complaint should be served upon each party to the action in accordance with the provisions in Utah Code section 63G-4-402 (2019).

Dated this _____8ᵀᴴ_____ day of _____NOVEMBER_____, 2019.

_____
Eric M. Stott
Administrative Law Judge
Department of Human Services
Office of Administrative Hearings
195 North 1950 West
Salt Lake City, Utah 84116
Telephone (801) 538-3900

45

MAILING CERTIFICATE

I hereby certify that on this ___8th___ day of __November__, 2019, I caused to

be mailed, postage prepaid, a true and correct copy of the foregoing Final Decision and Order to the following

parties of record:

KAILIN WANG
2481 FAIRWAY DR
SPANISH FORK UT 84660

D. GRANT DICKINSON
ATTORNEY AT LAW
2525 N. CANYON RD
PROVO UT 84604

and to the following parties via inter-office mail:

SHALA REYNOLDS, GARY BELL
OFFICE OF THE UTAH ATTORNEY GENERAL
55 N UNIVERSITY AVE, #219
PROVO UT 84606

KIMBERLY WEBB, ROBBIE ADAMS
DEPARTMENT OF HUMAN SERVICES
DIVISION OF CHILD AND FAMILY SERVICES
609 N STATE RD
198 SALEM UT 84653

JAIMIE GRAHAM
DEPARTMENT OF HUMAN SERVICES
DCFS HEARING TRACKER
150 E CENTER ST, STE 5100
PROVO UT 84606

_Brianna Erickson_
Secretary

46

DEPARTMENT OF HUMAN SERVICES

ANN SILVERBERG-WILLIAMSON
*Department Executive Director*

Division of Child and Family Services

DIANE MOORE
***Division Director***

GARY R. HERBERT
*Governor*

CASEY CHRISTOPHERSON
***Western Region Director***

SPENCER J. COX
*Lieutenant Governor*

November 14, 2019

Kailin Wang
2481 S Fairway Dr
Spanish Fork, UT 84660

Dear Kailin:

The Division of Child and Family Services has conducted an Internal Review of your case and has determined that we will be changing the supported finding in the Management Information System to unsupported on case #2503301.

Please feel free to contact me with any questions at 385-268-2766.

Sincerely,

*Jaimie Graham*

Jaimie Graham
Western Region Administrative Hearing Tracker
Division of Child and Family Services



48

# EXHIBIT M-2

**Wang's 9/26/22 RFO for Discovery of the "Kill Baby K" Post**

# Exhibit M

Wang's 9/26/22 RFO for Discovery of the Kill Baby K Post"

**FL-300**

| PARTY WITHOUT ATTORNEY OR ATTORNEY | STATE BAR NUMBER: | *FOR COURT USE ONLY* |
|---|---|---|
| NAME: KAILIN WANG | | |

FIRM NAME:
STREET ADDRESS: 2481 FAIRWAY DR.
CITY: SPANISH FORK          STATE: UT          ZIP CODE: 84660
TELEPHONE NO.: (801) 645-1060          FAX NO.:
E-MAIL ADDRESS: kaywg2372@gmail.com
ATTORNEY FOR (*name*):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**    SAN FRANCISCO
STREET ADDRESS:    400 MCALLISTER ST.
MAILING ADDRESS:    SAME
CITY AND ZIP CODE:    SAN FRANCISCO, CA 94102
BRANCH NAME:    UFC

PETITIONER: CHRISTOFFER STANFORD THYGESEN
RESPONDENT: KAILIN WANG
OTHER PARENT/PARTY:

| **REQUEST FOR ORDER** ☐ **CHANGE** ☐ **TEMPORARY EMERGENCY ORDERS** | CASE NUMBER: |
|---|---|
| | FDV-19-814465 |

☐ Child Custody    ☐ Visitation (Parenting Time)    ☐ Spousal or Partner Support
☐ Child Support    ☐ Domestic Violence Order    ☐ Attorney's Fees and Costs
☐ Property Control    ☒ Other (*specify*):  SUBP002 Cloudflare David Ngo for (5 day DVRO) starting on 10/18/22

## NOTICE OF HEARING

1. TO (*name(s)*):  Michael Reedy, Douglas Rappaport, Darrick Chase, Erica Johnstone, Erik Rasmussen
   ☒ Petitioner    ☐ Respondent    ☐ Other Parent/Party    ☐ Other (*specify*):

2. **A COURT HEARING WILL BE HELD AS FOLLOWS:**

   a.  Date:                    Time:              ☐ Dept.:          ☐ Room.:
   b.  Address of court    ☐ same as noted above    ☐ other (*specify*):

3. **WARNING to the person served with the *Request for Order:*** The court may make the requested orders without you if you do not file a *Responsive Declaration to Request for Order* (form FL-320), serve a copy on the other parties at least nine court days before the hearing (unless the court has ordered a shorter period of time), and appear at the hearing. (*See form FL-320-INFO for more information.*)

   (*Forms FL-300-INFO and DV-400-INFO provide information about completing this form.*)

### COURT ORDER
*It is ordered that:*          (FOR COURT USE ONLY)

4. ☐ Time    ☐ for service    ☐ until the hearing    is shortened. Service must be on or before (*date*):

5. ☐ A *Responsive Declaration to Request for Order* (form FL-320) must be served on or before (*date*):

6. ☐ The parties must attend an appointment for child custody mediation or child custody recommending counseling as follows (*specify date, time, and location*):

7. ☐ The orders in *Temporary Emergency (Ex Parte) Orders* (form FL-305) apply to this proceeding and must be personally served with all documents filed with this *Request for Order*.

8. ☐ Other (*specify*):

Date: _____          _____
                                        JUDICIAL OFFICER
                                                        **Page 1 of 4**

Form Adopted for Mandatory Use
Judicial Council of California
FL-300 [Rev. July 1, 2016]          **REQUEST FOR ORDER**          Family Code, §§ 2045, 2107, 6224, 6226, 6320–6326, 6380–6383; Government Code, § 26826
Cal. Rules of Court, rule 5.92
*www.courts.ca.gov*

**FL-300**

| | |
|---|---|
| PETITIONER: CHRISTOFFER STANFORD THYGESEN<br>RESPONDENT: KAILIN WANG<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>FDV-19-814465 |

## REQUEST FOR ORDER

**Note**: Place a mark ☒ in front of the box that applies to your case or to your request. If you need more space, mark the box for "Attachment." For example, mark "Attachment 2a" to indicate that the list of children's names and birth dates continues on a paper attached to this form. Then, on a sheet of paper, list each attachment number followed by your request. At the top of the paper, write your name, case number, and "FL-300" as a title. (You may use *Attached Declaration* (form MC-031) for this purpose.)

1. ☒ **RESTRAINING ORDER INFORMATION**
   One or more domestic violence restraining/protective orders are now in effect between *(specify)*:
   ☐ Petitioner   ☐ Respondent   ☐ Other Parent/Party   *(Attach a copy of the orders if you have one.)*
   The orders are from the following court or courts *(specify county and state)*:
   a. ☒ Criminal: County/state *(specify)*: San Francisco         Case No. *(if known)*: 19016407
   b. ☐ Family: County/state *(specify)*:                          Case No. *(if known)*:
   c. ☐ Juvenile: County/state *(specify)*:                        Case No. *(if known)*:
   d. ☐ Other: County/state *(specify)*:                           Case No. *(if known)*:

2. ☐ **CHILD CUSTODY**                                   ☐ I request temporary emergency orders
   ☐ **VISITATION (PARENTING TIME)**
   a. I request that the court make orders about the following children *(specify)*:

   | Child's Name | Date of Birth | ☐ Legal Custody to *(person who decides: health, education, etc)*: | ☐ Physical Custody to *(person with whom child lives)*: |
   |---|---|---|---|

   ☐ Attachment 2a.

   b. ☒ The orders I request for ☐ child custody ☐ visitation (parenting time) are:
      (1) ☐ Specified in the attached forms:
          ☐ Form FL-305   ☐ Form FL-311   ☐ Form FL-312   ☐ Form FL-341(C)
          ☐ Form FL-341(D)   ☐ Form FL-341(E)   ☒ Other *(specify)*:
      (2) ☒ As follows *(specify)*:                                      ☐ Attachment 2b.
          IP address on 3/6/19:  (108.162.219.228)  used to make the Kill Baby K post is from Cloudflare,  thus I must be provided access to witnesses who have personal knowledge of this IP address or you cannot allow it in the DVRO trial and that decision must be made immediately in an order to avoid me having to file  for additional relief.

   c. The orders that I request are in the best interest of the children because *(specify)*:      ☐ Attachment 2c.
      And since Thygesen attempted  to fool Judge Flores with this previously this 3/6/19 rejected post, which whom Judge Darwin and Judge Wiley and Utah Judge Richard Smith either  disregarded and or reversed findings Wang was a danger to the child due to lack of evidence related to this 3/6/19 post, this. 3/6/19 cannot be litigated at all at the 5-day DVRO trial starting 10/18/22, or the court must grant attorney fees as this 3/6/19  "Kill baby K" post completely touches on best interests of the child issues, or the court grants attorney fees as it seriously only relates to Best Interests of the Child.

   d. ☐ This is a change from the current order for ☐ child custody ☐ visitation (parenting time).
      (1) ☐ The order for legal or physical custody was filed on *(date)*:          . The court ordered *(specify)*:

      (2) ☐ The visitation (parenting time) order was filed on *(date)*:          . The court ordered *(specify)*:

   ☐ Attachment 2d.

| | | |
|---|---|---|
| FL-300 [Rev. July 1, 2016] | **REQUEST FOR ORDER** | **Page 2 of 4** |

**FL-300**

| | |
|---|---|
| PETITIONER: CHRISTOFFER STANFORD THYGESEN<br>RESPONDENT: KAILIN WANG<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>FDV-19-814465 |

3. ☐ CHILD SUPPORT
    (Note: An earnings assignment may be issued. See *Income Withholding for Support* (form FL-195)

    a.  I request that the court order child support as follows:

| Child's name and age | ☐ I request support for each child based on the child support guideline. | Monthly amount ($) requested (if not by guideline) |
|---|---|---|

☐ Attachment 3a.

    b.  ☐ I want to change a current court order for child support filed on *(date)*:
        The court ordered child support as follows *(specify)*:

    c.  I have completed and filed with this *Request for Order* a current *Income and Expense Declaration* (form FL-150) or I filed a current *Financial Statement (Simplified)* (form FL-155) because I meet the requirements to file form FL-155.

    d.  The court should make or change the support orders because *(specify)*:    ☐ Attachment 3d.

4. ☐ SPOUSAL OR DOMESTIC PARTNER SUPPORT
    (Note: An *Earnings Assignment Order For Spousal or Partner Support* (form FL-435) may be issued.)

    a.  ☐ Amount requested *(monthly)*: $

    b.  ☐ I want the court to ☐ change ☐ end the current support order filed on *(date)*:
        The court ordered $ per month for support.

    c.  ☐ This request is to modify (change) spousal or partner support after entry of a judgment. I have completed and attached *Spousal or Partner Support Declaration Attachment* (form FL-157) or a declaration that addresses the same factors covered in form FL-157.

    d.  I have completed and filed a current *Income and Expense Declaration* (form FL-150) in support of my request.

    e.  The court should should make, change, or end the support orders because *(specify)*:  ☐ Attachment 4e.

5. ☐ PROPERTY CONTROL                 ☐ I request temporary emergency orders

    a.  The ☐ petitioner ☐ respondent ☐ other parent/party be given exclusive temporary use, possession, and control of the following property that we ☐ own or are buying ☐ lease or rent *(specify)*:

    b.  The ☐ petitioner ☐ respondent ☐ other parent/party be ordered to make the following payments on debts and liens coming due while the order is in effect:

      Pay to: _____ For: _____ Amount: $ _____ Due date: _____

      Pay to: _____ For: _____ Amount: $ _____ Due date: _____

      Pay to: _____ For: _____ Amount: $ _____ Due date: _____

      Pay to: _____ For: _____ Amount: $ _____ Due date: _____

    c.  ☐ This is a change from the current order for property control filed on *(date)*:

    d.  Specify in Attachment 5d the reasons why the court should make or change the property control orders.

---

FL-300 [Rev. July 1, 2016]        **REQUEST FOR ORDER**        **Page 3 of 4**

FL-300

| PETITIONER: CHRISTOFFER STANFORD THYGESEN | CASE NUMBER: |
| RESPONDENT: KAILIN WANG | FDV-19-814465 |
| OTHER PARENT/PARTY: | |

6. ☐ **ATTORNEY'S FEES AND COSTS**

I request attorney's fees and costs, which total (specify amount): $_____ . I filed the following to support my request:

  a. A current *Income and Expense Declaration* (form FL-150).

  b. A *Request for Attorney's Fees and Costs Attachment* (form FL-319) or a declaration that addresses the factors covered in that form.

  c. A *Supporting Declaration for Attorney's Fees and Costs Attachment* (form FL-158) or a declaration that addresses the factors covered in that form.

7. ☐ **DOMESTIC VIOLENCE ORDER**

  - Do not use this form to ask for domestic violence restraining orders! Read form DV-505-INFO, *How Do I Ask for a Temporary Restraining Order,* for forms and information you need to ask for domestic violence restraining orders.
  - Read form DV-400-INFO, *How to Change or End a Domestic Violence Restraining Order* for more information.

  a. The *Restraining Order After Hearing* (form DV-130) was filed on (date):

  b. I request that the court ☐ change ☐ end   the personal conduct, stay-away, move-out orders, or other protective orders made in *Restraining Order After Hearing* (form DV-130). (*If you want to change the orders, complete 7c.*)

  c. ☐ I request that the court make the following changes to the restraining orders (specify):       ☐ Attachment 7c.

  d. I want the court to change or end the orders because (specify):       ☐ Attachment 7d.

8. ☐ **OTHER ORDERS REQUESTED** (specify):       ☐ Attachment 8.

9. ☐ **TIME FOR SERVICE / TIME UNTIL HEARING**   I urgently need:

  a. ☐ To serve the *Request for Order* no less than (number):_____ court days before the hearing.

  b. ☐ The hearing date and service of the the *Request for Order* to be sooner.

  c. I need the order because (specify):       ☐ Attachment 9c.

10. ☒ **FACTS TO SUPPORT** the orders I request are listed below. The facts that I write in support and attach to this request cannot be longer than 10 pages, unless the court gives me permission.       ☐ Attachment 10.
See Declaration attached

I declare under penalty of perjury under the laws of the State of California that the information provided in this form and all attachments is true and correct.

Date:   September 26, 2022

KAILIN WANG
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF APPLICANT)

**Requests for Accommodations**

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the proceeding. Contact the clerk's office or go to *www.courts.ca.gov/forms* for *Request for Accommodations by Persons With Disabilities and Response* (form MC-410). (Civ. Code, § 54.8.)

| FL-300 [Rev. July 1, 2016] | **REQUEST FOR ORDER** | Page 4 of 4 |

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form    Save this form    Clear this form

Michelene Insalaco (SBN 161711)
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 357-5050
Douglas L. Rappaport (SBN 136194)
LAW OFFICES OF DOUGLAS L. RAPPAPORT
260 California Street, Suite 1002
San Francisco, CA 94111
Telephone: (415) 989-7900
Attorneys for Petitioner



FILED
San Francisco County Superior Court

MAY 12 2021

CLERK OF THE COURT
BY: _____ Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

Petitioner: Christoffer Stanford Thygesen

and

Respondent: Kailin Wang

Case No. FDV-19-814465

[PROPOSED] ORDER RE SUBPOENAS ISSUED IN CALIFORNIA

Whereas discovery in this action is closed, has been closed, and cannot be reopened absent a noticed motion granted by the Court;

Whereas the subpoenaing party is required to serve a copy of a business records deposition subpoena on every party who has appeared in the action. (Cal. Civ. Proc. Code §§ 2025.220(b), 2025.240(a));

Whereas the subpoenaing party must also comply with Code of Civil Procedure sections 1985.3, 1985.6, and 2020.010 - 2020.510 when subpoenaing consumer records;

The Court hereby orders as follows:

1. There is presently no authority for either party to this action to issue a subpoena in the pending San Francisco family court action *Thygesen v. Wang*, case no. FDV-19-814465.

2. Permission to serve a subpoena through the instant case (case no. FDV-19-814465) must be requested in the form of a noticed motion to this Court.

3. If either party to this action obtains court authority through any other pending court action, including pending Utah actions, to issue a subpoena that seeks records related to any individual related to this case, including the minor child Kayson Wang; the other party; or any party currently protected by the DVPA restraining order that originally issued on March 6, 2019 (which includes Teresa Thygesen, Allan Thygesen, Elise Thygesen, Emma Thygesen, James Thygesen, Inge Thygesen, and Niels Thygesen), then the party seeking the records must provide: (a) formal notice to the person whose records are sought in the form of a copy of the subpoena; and (b) formal notice to all parties who have appeared in this action; and (c) in the case of the minor child, formal notice to the Respondent Christoffer Thygesen who has temporary legal custody of the child. Said notice shall be provided at least five days before the subpoena is served to the third party from whom records are sought. Service of any such notice shall be by electronic mail as well as either U.S. Post or personal service through a professional process server. Service to any member of the Thygesen family shall be by service by electronic mail to counsel of record for Mr. Thygesen.

IT IS SO ORDERED.

Dated: _5/12/2021_ 

_____
Hon. Monica F. Wiley
Judge of the Superior Court

2

SUBP-002

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|
| Kailin Wang 2481 Fairway Dr. Spanish Fork Utah 84660<br><br>TELEPHONE NO.: 801-645-1060    FAX NO.:<br>E-MAIL ADDRESS: kaywg2372@gmail.com<br>ATTORNEY FOR *(Name)*: | |

NAME OF COURT: SAN FRANCISCO SUPERIOR COURT
STREET ADDRESS: 400 MCALLISTER ST.
MAILING ADDRESS: SAME
CITY AND ZIP CODE: SAN FRANCISCO    CA   94102
BRANCH NAME: UFC

PLAINTIFF/ PETITIONER: CHRISTOFFER STANFORD THYGESEN

DEFENDANT/ RESPONDENT: KAILIN WANG

| **CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION** | CASE NUMBER:<br>FDV-19-814465 |
|---|---|

**THE PEOPLE OF THE STATE OF CALIFORNIA, TO** *(name, address, and telephone number of witness, if known)*:

David Ngo, Trust & Safety Manager @ Cloudflare inc. 101 Townsend St, San Francisco, CA 94107

1. **YOU ARE ORDERED TO APPEAR AS A WITNESS in this action at the date, time, and place shown in the box below UNLESS your appearance is excused as indicated in box 3b below or you make an agreement with the person named in item 4 below.**

> a. Date: 10/18/19    Time: 9:00 a.m. ☐ Dept.: 405 ☐ Div.: ☐ Room:
> b. Address: 400 MCALLISTER ST.SAN FRANCISCO, CA 94102

2. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

3. **YOU ARE** *(item a or b must be checked)*:

   a. ☒ Ordered to appear in person and to produce the records described in the declaration on page two or the attached declaration or affidavit. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

   b. ☐ Not required to appear in person if you produce (i) the records described in the declaration on page two or the attached declaration or affidavit and (ii) a completed declaration of custodian of records in compliance with Evidence Code sections 1560, 1561, 1562, and 1271. (1) Place a copy of the records in an envelope (or other wrapper). Enclose the original declaration of the custodian with the records. Seal the envelope. (2) Attach a copy of this subpoena to the envelope or write on the envelope the case name and number; your name; and the date, time, and place from item 1 in the box above. (3) Place this first envelope in an outer envelope, seal it, and mail it to the clerk of the court at the address in item 1.

   (4) Mail a copy of your declaration to the attorney or party listed at the top of this form.

4. **IF YOU HAVE ANY QUESTIONS ABOUT THE TIME OR DATE YOU ARE TO APPEAR, OR IF YOU WANT TO BE CERTAIN THAT YOUR PRESENCE IS REQUIRED, CONTACT THE FOLLOWING PERSON BEFORE THE DATE ON WHICH YOU ARE TO APPEAR:**
   a. Name of subpoenaing party or attorney: Kailin Wang      b. Telephone number: Email/Phone above

5. **Witness Fees:** You are entitled to witness fees and mileage actually traveled both ways, as provided by law, if you request them at the time of service. You may request them before your scheduled appearance from the person named in item 4.

> **DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued:

_____    ▶ _____
(TYPE OR PRINT NAME)    (SIGNATURE OF PERSON ISSUING SUBPOENA)

_____
(Declaration in support of subpoena on reverse)    (TITLE)    **Page 1 of 3**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUBP-002 [Rev. January 1, 2012] | **CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION** | Code of Civil Procedure,<br>§ 1985 et seq.<br>*www.courts.ca.gov* |
|---|---|---|

CEB **www.ceb.com**

Change Document Font | Size

Check Spelling   Email Form   Save Form

**SUBP-002**

| | |
|---|---|
| PLAINTIFF/PETITIONER: CHRISTOFFER STANFORD THYGESEN | CASE NUMBER: |
| DEFENDANT/RESPONDENT: KAILIN WANG | FDV-19-814465 |

The production of the documents, electronically stored information, or other things sought by the subpoena on page one is supported by *(check one)*:

[  ] the attached affidavit or   [X] the following declaration:

**DECLARATION IN SUPPORT OF CIVIL SUBPOENA (DUCES TECUM) FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS AT TRIAL OR HEARING**
**(Code Civ. Proc., §§ 1985,1987.5)**

1. I, the undersigned, declare I am the  [  ] plaintiff  [  ] defendant  [  ] petitioner  [X] respondent
   [  ] attorney for *(specify)*:   [X] other *(specify)*: Respondent in Pro Per
   in the above-entitled action.

2. The witness has possession or control of the documents, electronically stored information, or other things listed below, and shall produce them at the time and place specified in the Civil Subpoena for Personal Appearance and Production of Records at Trial or Hearing on page one of this form *(specify the exact documents or other things to be produce; if electronically stored information is demanded, the form or forms in which each type of information is to be produced may be specified)*:

   See Attachment A

   [X] Continued on Attachment 2.

3. Good cause exists for the production of the documents, electronically stored information, or other things described in paragraph 2 for the following reasons:

   The requested IP addresses belong to Cloudflare  and are not otherwise available to the undersigned. 3/6/19: 108.162.219.228

   [X] Continued on Attachment 3.

4. The documents, electronically stored information, or other things described in paragraph 2 are material to the issues involved in this case for the following reasons: this is a,criminal and civil domestic violence matter where there are allegations of murder, suicide involving an infant, to determine the true author of that post if possible is relevant to the DVRO 5 day trial starting on 10/18/22

   [X] Continued on Attachment 4.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

KAILINWANG
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF  [X] SUBPOENAING PARTY   [  ] ATTORNEY FOR SUBPOENAING PARTY)

---

**Request for Accommodations**



Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the date on which you are to appear. Contact the clerk's office or go to *www.courts.ca.gov/forms* for *Request for Accommodations by Persons With Disabilities and Response* (form MC-410). (Civil Code, § 54.8.)

---



www.ceb.com

**SUBP-002**

| PLAINTIFF/PETITIONER: CHRISTOFFER STANFORD THYGESEN | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: KAILIN WANG | FDV-19-814465 |

### PROOF OF SERVICE OF CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION

1. I served this *Civil Subpoena (Duces Tecum) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and Declaration* by personally delivering a copy to the person served as follows:

   a. Person served *(name)*:

   b. Address where served:

   c. Date of delivery:

   d. Time of delivery:

   e. Witness fees *(check one)*:
      (1) ☐  were offered or demanded and paid. Amount: . . . . . . $ _____
      (2) ☐  were not demanded or paid.

   f. Fee for service: . . . . . . . . . . . . . . . . $ _____

2. I received this subpoena for service on *(date)*:

3. Person serving:
   a. ☐  Not a registered California process server.
   b. ☐  California sheriff or marshal.
   c. ☐  Registered California process server.
   d. ☐  Employee or independent contractor of a registered California process server.
   e. ☐  Exempt from registration under Business and Professions Code section 22350(b).
   f. ☐  Registered professional photocopier.
   g. ☐  Exempt from registration under Business and Professions Code section 22451.
   h. Name, address, telephone number, and, if applicable, county of registration and number:

| **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct. | **(For California sheriff or marshal use only)** **I certify** that the foregoing is true and correct. |
|---|---|
| Date: | Date: |
| ▶ _____ (SIGNATURE) | ▶ _____ (SIGNATURE) |

SUBP-002 [Rev. January 1, 2012]

**CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION**

**Page 3 of 3**



www.ceb.com

Print this Form

ATTACHMENT A

Previous correspondence has not included a declaration verifying that these IP addresses cannot be identified thus, this is requested.

If Cloudflare is unable to accurately identify the subscriber, the request is for Cloudflare to state so in a declaration thus to avoid further litigation.

And while Cloudflare has suggested using maxi mind for approx. location however if it is a VPN that's masked the true identify cannot be deciphered from using a simple maxi mind app  correct?

1) All documents, records or other information that identify or may lead to the identification or location of the person(s) using the IP addresses listed below, including, but not limited to, all first and last names, present or last known mailing addresses, billing information, subscriber information, telephone numbers, e-mail addresses, location information, and other identifying information for the subscriber who was assigned and/or using the  following IP addresses at the times listed below, exclusive of the contents of any communications stored, carried, or maintained by Cloudflare:

| | |
|---|---|
| 2/12/2019   162.158.63.102 | |
| 2/15/19:    172.68.47.104 | |
| 2/17/19:   108.162.219.54 | |
| 2/15/19: 172.68.47.104 | |
| 2/17/19:  108.162.219.54 | |
| 2/18/19:   172.68.34.108 | |
| 2/28/19:    108.162.219.54 | |
| 3/6/19:  108.162.219.228 | |

2) All documents, records or other information that identify or may lead to the identification or location of the person(s) using the IP addresses listed in **"Attachment A,"** including, but **not** limited to, all first and last names, present or last known mailing addresses, billing information, subscriber information, telephone numbers, e-mail addresses, location information, and other identifying information for the subscriber who was assigned and/or using the listed IP addresses at the times indicated in "Attachment A," exclusive of the contents of any communications stored, carried, or maintained by Cloudflare.

Cloudflare Corporation shall verify the authenticity of information that it produces by providing an affidavit from the Custodian of Records, and a declaration from the Custodian of Records to be included with the records/report.

# EXHIBIT N-2

**Thygesen Opposed Wang's Discovery on the "Kill Baby K" Post**

Wang v. Thygesen | FDV-19-814465 | Confidential — Prepared for Legal Proceedings

# Exhibit N

"Thygesen again Opposed Wang from conducting any discovery and  blocked  Wang from conducting Discovery on the 3/6/19 Kill Baby K Post because he did it, or why else would Thygesen refuse to conduct discovery on that post even though they issued at least 20 Subpoenas for Social Media Sites in order to have Wang prosecuted? See 2021-04-26 EXHIBITS IN SUPPORT OF REQUEST TO CONTINUE HEARING (CIVIL SUBPOENAS THYGESEN) (TRANSACTION ID # 66540227) FILED BY RESPONDENT WANG, KAILIN AS TO PETITIONER THYGESEN, CHRISTOFFER STANFORD
"

MICHAEL REEDY (161002)
McMANIS FAULKNER
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:    (408) 279-8700
Facsimile:    (408) 279-3244
Email:          mreedy@mcmanislaw.com

DOUGLAS RAPPAPORT (136194)
LAW OFFICES OF DOUGLAS L. RAPPAPORT
260 California Street, Suite 1002
San Francisco, CA 94111
Telephone:   (415) 989-7900
Facsimile:    (415) 989-7950
Email:          admin@sfcrimlaw.com

Attorneys for Petitioner,
CHRISTOFFER THYGESEN

ELECTRONICALLY
**F I L E D**
*Superior Court of California,
County of San Francisco*

**09/26/2022**
**Clerk of the Court**
BY: TIM KYU
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

In re the Matter of:

CHRISTOFFER THYGESEN

Petitioner,

and

KAILIN WANG

Respondent.

Case No.:  FDV-19-814465

**OPPOSITION TO REQUEST FOR FILING BY VEXATIOUS LITIGANT, KAILIN WANG**

Dept.:        404
Judge:       The Hon. Daniel Flores

///

///

///

///

///

///

1

*In re Matter of Thygesen v. Wang*, Case No.:  FDV-19-814465; OPPOSITION TO REQUEST FOR FILING BY VEXATIOUS LITIGANT, KAILIN WANG
`

This opposition is in response to Respondent, Kailin Wang ("Respondent" or "KW"). I am one of the attorneys of record for Petitioner, Christoff Thygesen ("Petitioner" or "CT").

Despite the fact that this trial was originally scheduled to begin on October 22, 2019, it is only now, nearly three years later, that Respondent has made for the first time a request to issue a trial subpoena to a company called Cloudflare seeking information pertaining to a March 6, 2019 post which Respondent refers to as the "Kill Baby K post." Given that Respondent's Sunday, September 25, 2022 FL300  has been made at the proverbial 11th hour, it is strongly believed that this is an attempt to delay the trial, either by a request for more time to review what may turn out to be thousands of pages of records and/or to give Respondent Wang the ability to file yet another appeal requesting a Stay of the DVRO proceedings if the court denies her request.

Petitioner has waited for almost three years for this trial in order to prove that Ms. Wang has perpetrated domestic violence. Given that Petitioner never presented the March 6, 2019 "Kill Baby K" post at the hearing before Judge Darwin on March 6, 2019, it was not considered by the Court when continuing the TRO and removing all physical and legal custody of the baby on a temporary basis. What the court saw that day, and what the court will see in our trial, is that there is ample—in fact overwhelming—other evidence that Ms. Wang has perpetrated domestic violence.

In her most recent Request for Order (FL-300) of September 25, 2022, Respondent has stated that she needs the ability to issue the Cloudflare subpoena *or* requests that the Court not allow the Kill Baby K post to be considered at the DVRO trial. Thus, *as requested by Respondent*, it is hereby agreed that Petitioner will not present any evidence whatsoever pertaining to the Kill Baby K post unless first raised by Respondent, and then only in rebuttal.

///
///
///
///
///

*In re Matter of Thygesen v. Wang*, Case No.:  FDV-19-814465; OPPOSITION TO REQUEST FOR FILING BY VEXATIOUS LITIGANT, KAILIN WANG

Therefore, Respondent's request to issue subpoenas for trial witnesses and records pertaining to the March 6, 2019 "Kill Baby K" post is hereby moot and should be denied. (Denials of VL Requests are not appealable. *In re Marriage of Deal*, 80 Cal. App. 5th 71, 79 (July 20, 2022))

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  September 26, 2022                           LAW OFFICES OF DOUGLAS L. RAPPAPORT

*Douglas Rappaport*
_____
DOUGLAS L. RAPPAPORT

Attorney for Petitioner,
CHRISTOFFER THYGESEN

3

*In re Matter of Thygesen v. Wang*, Case No.:  FDV-19-814465; OPPOSITION TO REQUEST FOR FILING BY VEXATIOUS LITIGANT, KAILIN WANG
`

# EXHIBIT O

**Judge Flores Refused to Add Child to DV Order — DV Trial October 2022**

# Exhibit O

"JUDGE FLORES REFUSED TO ADD THE CHILD TO THE DV ORDER Thygesen appeared for the DV Trial in person and had 4 attorneys, experts, and ADA Dubain and Sgt. Martinez in support, I was forced to be in Pro Per over Bluejeans, thus the DV order going from Temporary since 2/15/19 to permanent without any violation FINDINGS whatsoever, and because (1) I plead the 5th, and was (2) Not Cross-Examined, and (3) did not even present my case in chief, is not really a good nor reliable indicator that Judge Flores' credibility findings had any merit they are frankly baseless, as I was not cross-examined so how is it possible he found me not credible and I did not present my case in chief. "

## MINI MINUTES FOR OCT-18-2022 09:00 AM fo

Honorable Daniel A. Flores
Dept.404
Courtroom Clerk: Lydia Mancilla
Court Reporter: Robert Bailian CSR #5220
Bailiff: Deputy Tuascher

---

Matter on calendar for:

REQUEST FOR ORDER (DOMESTIC VIOLENCE)
MOVING PARTY: CHRISTOFFER STANFORD THYGESSEN

---

Petitioner and Petitioner's attorneys Douglass Rappaport and Erica Johnstone present in the courtroom
Christopher Brenner present in the courtroom with Petitioner's counsel to assist counsel with technology.

Respondent present in pro per by video.

All remote appearances are conducted through BlueJeans (a video platform) in accordance with San Francisco Local Rules of Court.

---

Counsel for Petitioner and Respondent present argument.

Testimony given and Exhibits admitted. See scanned witness and exhibit list.

Having read and considered the pleadings, declarations, and other evidence submitted in this matter, the Court makes the following findings and orders:
1. Respondent's request to continue the trial - Denied.
2. Respondent's Motion in Limine filed 10/12/22 - Moot
3. Subpoena for Rally report for visitation date 8/8/22- Parties stipulate that the report in its entirety can be admitted.
4. Respondent's Motion in limine filed 10/17/22 - Denied.
5. Respondent's request to continue - Denied.
6. Respondent's motions in limine are ruled upon as follows;
   1)All documents, exhibits, and testimony pertaining to the UCCJEA jurisdiction of either the California or Utah courts -Granted without prejudice
   2)All documents, exhibits, and testimony relating to who should have custody of the child or the terms of child visitation. - Granted
   3)All motions, documents, exhibits, and testimony relating to adding the child Kayson to the DV order. - Granted
   4)All documents, exhibits, and testimony relating to the "kill the baby" post allegedly made by Wang. - Granted
   5)All documents, exhibits, and testimony relating to posts allegedly made by Respondent on public blogs and websites, not addressed to any of the Protected Parties because they are protected by my First Amendment right to "free speech." - Denied.
   6)All documents, exhibits, and testimony relating to the financial condition of the Wang, now or in the past, including bank statements, credit card statements, income tax returns, public assistance applications or benefits, employment wages, unemployment compensation, 1099 income, and similar information. - Denied
   7)All documents, exhibits, and testimony, which refer to past or pending criminal proceedings involving Wang or may lead to the criminal prosecution of Wang. - Denied.
   8)All documents, exhibits, and testimony relating to my physical or mental health or medical records, including before and after the pregnancy with my son, during the pregnancy, and subsequent to the birth of Respondent's son. - Denied, will be considered on a case-by-case basis.
   9)All documents, exhibits, and testimony relating to my son, Kayson Wang's, health or medical records. - Denied, any issues can be addressed or re-argued on a case-by-case basis.

7. Petitioner's motions in limine filed on 10/3/22 - The court defers the motions in limine until the court knows where that stands.
8. Respondent admonished about her 5th amendment rights.
9. The court false Respondent's accusations against Mr. Rappaport - False.
10. Both parties are to file a brief with the court as to whether or not the scope should include Adults who don't live together by tomorrow morning 10/19/22.
11. Matter is continued to 10/19/22 at 9 am Dept. 404 (to be heard in Dept. 416) for Day 2 of the Request for Order (Domestic Violence) hearing, as previously set.

2565

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

CHRISTOFFER STANFORD THYGESEN,              )  Videotaped deposition
                                            )  of:
        Petitioner,                         )
                                            )  KAILIN WANG
    vs.                                     )
                                            )  Case No.:
KAILIN WANG,                                )  FDV-19-814465
                                            )
        Respondent.                         )
                                            )

September 27, 2019 * 9:09 a.m.

Location:  Regus Business Center
180 North University Avenue, Suite 270
Provo, Utah 84601

Reporter:  Kelly Fine-Jensen, RPR
Videographer:  Amy Pollock, CLVS

---

APPEARANCES

FOR THE PETITIONER:

        Darrick T. Chase
        KAYE MOSER HIERBAUM FORD, LLP
        Attorney at law
        235 Montgomery Street, 27th Floor
        San Francisco, California 94104
        Telephone:  (415) 296-8868
        E-mail:  dchase@kayemoser.com

FOR THE RESPONDENT:

        Kailin Wang (in pro per)
        2481 Fairway Drive
        Spanish Fork, Utah 84660
        E-mail:  Lancewr12@gmail.com

ALSO PRESENT:
        John Wang

---

I N D E X

KAILIN WANG:                                     PAGE
Examination by Mr. Chase                           7

E X H I B I T S
NO.              DESCRIPTION              PAGE
1    Notice of Taking Deposition of Kailin    6
     Wang and for Production of Documents
     and Things
2    Temporary Emergency (Ex Parte) Orders    6
     September 18, 2019

3    Temporary Emergency (Ex Parte) Orders    6
     September 24, 2019
4    List One - E-mail Accounts              95
5    List Two - E-mail Accounts             124

6    DNA Diagnostics Center - DNA Test Report 133

7    E-mail from Darrick Chase to           138
     lancewr12@gmail.com, dated
     December 27, 2018

8    E-mail from Lanie Lee to Darrick Chase, 142
     dated December 28, 2018
9    Letter from Meltzer Lippe Goldstein &   183
     Breitstone, LLP to Darrick Chase, dated
     September 13, 2018, Re:  Subpoena Duces
     Tecum

10   Paternity Petition                     188

11   Summons Paternity Non-Resident         189

12   Family Offense Petition                190

13   Family Offense Petition                194

---

E X H I B I T S (Continued)
NO.              DESCRIPTION              PAGE
14   Family Court Transcript, March 5, 2019   195
15   Police Report, dated March 7, 2019      196
16   Family Offense Petition                 197
17   Family Court Transcript, March 8, 2019  198
18   Stanford Health Care Authorization for  199
     Use or Disclosure of Protected Health
     Information
19   Consumerinfo.com, Customer Profile      208
     Record

20   Account Summary                        212

21   E-mail from courtorder6678@gmail.com to 213
     clucas@mpcsd.org, and others, dated
     February 28, 2019

22   E-mail from servebyemails@gmail.com to  213
     board@mpcsd, and others, dated
     March 23, 2019

23   Summons                                214

24   E-mail from bonb4905@gmail.com to       215
     Niels Thygesen, dated February 22, 2019
25   E-mail from courtorder6678@gmail.com    217
     to athygesen@stanford.edu, dated
     February 20, 2019
26   E-mail from Audrey Courson to Kailin    226
     Wang, dated September 18, 2019

27   Stanford Health Care Authorization for  240
     Use or Disclosure of Protected Health
     Information

28   Stanford Health Care Authorization for  243
     Use or Disclosure of Protected Health
     Information



85

pursuant to the Court order.

A.    No.

Q.    So did you bring me pictures --

A.    You found it and then you went through Rally. And they rejected your request at first. So then you went through mediation and made false allegations about there was a finding when everything is just granted ex parte. There's never been an evidentiary hearing. That was clearly --

Q.    Ms. Wang, did you bring --

A.    -- stated on 3/6.

Q.    -- me pictures of --

A.    It was clearly stated on 3/6 that Judge Darwin has not made any findings except that he has enough to grant a temporary restraining order.

Q.    You're --

A.    He's not making any findings.

Q.    Off the record.

A.    That is what the 3/6 --

Q.    Hold on.

Ms. Wang, I'm not going to waste my time listening to you make speeches about matters that are unrelated.

A.    I have asked for pictures over six times since March.

86

Q.    Stay on the record.

A.    Have I --

Q.    Did you bring me pictures --

A.    You forbid me --

Q.    -- in response to Category 22?

A.    -- to take pictures of my own son. I have. I have. But, no. This -- this will go on the record. You have forbidden me to take pictures of my own son, Mr. Thygesen has. Since March. You haven't sent one picture; is that correct?

Q.    Did you bring me pictures -- I'm going to move on --

A.    You have not sent any pictures after six requests. You have forbidden me to take pictures of my own son by making false allegations of child poisoning, child abduction to -- to block me from taking pictures of my own son. He's almost one year old. You have not sent any pictures. You have not allowed me to take any pictures.

Q.    Have you taken any picture of Kayson Wang?

A.    And yet --

Q.    Have you taken -- one -- I'll put two questions.

A.    No.

87

Q.    Did you bring me pictures in response to --

A.    And --

Q.    -- my request? And, two, have you --

A.    -- there's been additional --

Q.    -- taken any pictures?

A.    -- false reports, allegations framing for crimes that Mr. Thygesen has committed.

Are we on record?

Q.    Yeah. Yeah. We're still on the record.

A.    Okay. Again, you have not sent one picture and blocked me from taking pictures of my own son.

Q.    Can I have the documents --

A.    Correct?

Q.    -- that are responsive?

A.    Okay. I'm going to say that is a "yes."

Q.    Nope. You -- you --

A.    "Yes"? Have you -- have you -- has Mr. Thygesen provided one picture of Kayson from the time of removal due to the false kill baby post that Mr. Thygesen, or someone on his behalf, posted? And, now, every single time you guys are not happy with a court ruling, another false allegation appears.

Q.    Can I please have documents in response?

88

Are there any other ones?

A.    Please don't, please.

Q.    Have you taken any pictures of Kayson in the last -- since June 1st, 2019?

A.    No.

Q.    Okay. Okay. Are you sure about that?

A.    And about those false allegations --

Q.    Ms. Wang --

A.    -- that appeared --

Q.    Now we're going to go off the record until we can resolve Ms. Wang's highjacking of this deposition by making repeated statements and speeches --

A.    Well, I do --

MR. CHASE:  We're off the record.

THE VIDEOGRAPHER:  Going off the record. The time is 10:52 a.m.

(Off record from 10:52 to 11:05 a.m.)

THE VIDEOGRAPHER:  Going back on the record. The time is 11:05 a.m.

Q.    (By Mr. Chase) Okay. Ms. Wang, we're going to pivot from this. We're going to come back to my document requests. I'll ask you some social media questions.



89

Could you please tell me what -- could you please tell me what social media services that you use?

A.    Facebook, Instagram.

Q.    Are there any other -- what internet -- do you have any -- are there any internet forums that you participate in?

A.    Not actively.

Q.    How about dating forums?

A.    Well, I met Mr. Thygesen off of Tinder while I was on vacation from Utah in San Francisco.

Oh, by the way, I -- I have your harassment listings here.  I don't know why this is on there.  Text messages between Kailin and Christoffer.  That's a harassment, at least, incident, apparently, except I only have harassing messages from him to me, not the other way around.  I don't know why this counts as an incident.

Q.    Ms. --

A.    We -- you know, we all have a copy of those text messages.  He did ask me to pull the trigger.

Q.    So, so far we've established you use Facebook, Instagram.  What other -- what other accounts?  Facebook, Instagram, what other social

90

media platforms do you use?

A.    Not actively.

Q.    Do you use Tinder?

A.    Nothing else actively.

Q.    What have you used in the last 18 months?

A.    Facebook, Instagram.

And everything else, there is an open, active investigation.  And I'm going to plead the Fifth on anything else.

But I will say this:  Christoffer made the kill baby post.  Christoffer has been sending mysterious messages or violations of Rally policy.  All those are false.  And framing Ms. Wang for crimes.  Framing Ms. Wang and making false allegations of violations of a restraining order.  And -- yeah.

Q.    Ms. Wang, what specifically -- help me out here.  What specifically do you plan on taking -- are you asserting the Fifth Amendment to?

A.    Anything related to things you haven't gotten or hasn't gotten specific ones.

But we can talk about the kill baby post.

I know that your allegations, a lot of these, are not me.  And any that have been linked up -- by the way, why were all of these subpoenaed

91

out of the child support case?

Q.    Ms. Wang, could you please --

A.    You didn't procedurally --

Q.    -- answer the question --

A.    -- do these correctly where they were --

Q.    Could you please --

A.    I was not served with the subpoenas.

Q.    Could you please answer my question?

A.    I have -- why were you conducting so much discovery through the child support cases and did not give me a copy of those subpoenas --

Q.    Ms. Wang, you have copies --

A.    -- until six -- or like six months later?  Why was I not presented with the subpoenas --

Q.    Ms. Wang, are you going to --

A.    -- that you executed out of the child support cases relating to DV internet posting allegations?  Why -- why weren't they all executed out of the San Francisco case is my question?

Q.    Ms. Wang, are you -- could you answer my question?

A.    So -- so you didn't give me an opportunity to motion to quash or object.  They just --

Q.    Ms. Wang --

A.    -- went through the child support case.

92

Q.    -- this is my deposition.  I am entitled to ask questions.  You are expected to provide answers to them.

A.    Okay.

Q.    We're not here to discuss anything else that you like or dislike.

A.    But I do have questions on relevancy.

Q.    Then you should take it up with somebody else.  If you don't want to -- relevancy, generally, is not an objection at a deposition.  In fact, it's not.

A.    Well, you did use that as an objection for all categories of my deposition for Christoffer, which he has still not confirmed.  And he is Court ordered also to do his deposition before October 11th.  Is that correct?  That is on the Court order that you're using as an exhibit.  So I can ask you about that.

Q.    Christoffer -- no, you're not entitled to ask me questions.  However, yes, the deposition for Mr. Thygesen is to take place on or before October 11th, whatever Judge Darwin ordered.

A.    He said on or before.  So I already gave you a date --

Q.    Ms. Wang, we're not here to schedule



## 193

Q.   Okay.  While you were in New York, who did you see?

A.   No one, really.  I looked -- I applied -- I looked around for a job.

Q.   How did you do that?

A.   Online.

Q.   That's it?

A.   Uh-huh (affirmative).

Q.   Did you see Irina Sistina?

A.   No.

Q.   So on February -- on March 1st, you were in New York; correct?

A.   Uh-huh (affirmative).

Q.   Okay.  At the same apartment with the guy whose name you don't remember --

A.   Uh-huh (affirmative).

Q.   -- the address you don't remember?  Okay.  Kayson was still with your parents?

A.   Uh-huh (affirmative).  Yes.

Q.   March 2nd, 3rd, and 4th, you were in New York; correct?

A.   Yes.

Q.   With the same person at the same location?

A.   Yes.

Q.   Okay.

## 194

MR. CHASE:  Mark next.

THE REPORTER:  13.

MR. CHASE:  Sure.

(EXHIBIT 13 WAS MARKED.)

Q.   (By Mr. Chase)  So I've just handed you -- it's a family offense petition, Kailin Wang against Christoffer Stanford Thygesen.

A.   Uh-huh (affirmative).

Q.   Dated March 5th, 2019.

So you filed this family offense petition against Christoffer Thygesen; correct?

A.   Correct.

Q.   Okay.  And at the time you filed it, you were -- you were living in New York?

A.   I was not living in New York.  I was visiting.

Q.   You were in New York; right?

A.   I was physically present.  But not residentially or it was not my domicile.

Q.   Okay.  At that time were you applying for -- were you -- were you applying for a New York I.D. card by any chance while you were back there?

A.   What is it called?  The -- the lost one -- replacement.  Not a brand new one.

Q.   Okay.  And you were -- you were also in

## 195

court on March 5th, in --

A.   Yes.

Q.   -- in the State of New York?

A.   Uh-huh (affirmative).

Q.   Okay.

MR. CHASE:  14.

(EXHIBIT 14 WAS MARKED.)

Q.   (By Mr. Chase)  So I handed you a transcript from March 5th, 2019.

This is a transcript of those proceedings from March 5th where you appeared in New York?

A.   Yes.

Q.   Okay.  So February -- February 6th, where were you?  Where were you physically?

A.   February 6th?

Q.   Yes.  Sorry.  March -- March 6th.

A.   I was in New York.

Q.   Okay.  Were you living at that same location with that same person?

A.   Yes.  That's when Christoffer posted the kill baby post and that Ms. Wang was going to commit suicide.

Q.   Okay.  We'll get to that.

So on March 7th were you physically in New York?

## 196

A.   I was.

Q.   Okay.  Didn't you file a police report on the 7th?

A.   I did.

Q.   Okay.

MR. CHASE:  We'll mark this.

(EXHIBIT 15 WAS MARKED.)

Q.   (By Mr. Chase)  So you physically -- you filed a police report in New York with Officer Albino, or Albino, at the 18th Precinct on the 7th of March.

What -- what address did you use?

A.   That's when I lost my I.D.  So the -- one of my old New York addresses.

Q.   Okay.  So what address did you put on this police report?

A.   I don't remember what it was.  But it was my old one.

Q.   Okay.  Which -- what's -- what's the address of your old one?

A.   I don't have -- I don't know it by memory.

Q.   And you don't have an identity card to demonstrate what that address was?

A.   No, not in my possession.

Q.   Do you have it at home?



CITICOURT
THE REPORTING GROUP

197

A.    No.  I just don't have it.  It was lost there.

That was when they removed the child based on the fake baby -- the kill baby post that Christoffer made and that Ms. Wang was going to commit suicide.  And that's when the private investigators you hired made a false homicidal threat to the police and had the baby removed.

MR. CHASE:  What are we on?  15?

THE REPORTER:  16.

MR. CHASE:  Yeah.

(EXHIBIT 16 WAS MARKED.)

Q.    (By Mr. Chase)  So on the 15th -- so I'm handing you Exhibit 15.  It's Kailin Wang -- oh, it's 16.

So I'm handing you Exhibit 16.  It's a family offense petition.  It's the third request for a restraining order that you made against Mr. Thygesen.

Did you make this while you were physically in New York?

A.    I did.  And it refers to that kill baby post.

Q.    You were also in court in New York physically on March 8th; correct?

198

A.    Yes.

Q.    Okay.  So you mentioned in the transcript that you were living with a friend and paying rent.  Do you recall that -- do you recall that?

A.    Yes.

Q.    And who was the friend that you were paying rent to?

A.    My parents.

Q.    So when you said you were living with a friend, you were referring to your parents?

A.    Yes.  I filled this out really quickly.  And it doesn't go by like this.  It goes to a report and then it goes into this report.  But it's a different format.  And I did the best I could in the short time frame with --

Q.    Okay.  Can I --

A.    -- my baby being removed based on the false post that someone acting on Christoffer's behalf or him made --

Q.    We'll mark this as Exhibit 17.

A.    -- about the baby being murdered.

(EXHIBIT 17 WAS MARKED.)

Q.    (By Mr. Chase)  I direct your attention to page two of the transcript.  It says you're living with a friend right now.  It says, "Are you paying

199

rent?"  You say, "I'm paying $400 a month."

Who were you referring to, in the transcript?

A.    My parents.

Q.    So from March 8th, 9th, 10, 11, and 12, were you in New York?

A.    Yes.

Q.    And then isn't it correct that you had a New York I.D. issued on 3/13/2019?

A.    Yes.

Q.    And isn't it correct that the address --

A.    Replacement one.

Q.    Right.

A.    Replacement one.

(EXHIBIT 18 WAS MARKED.)

Q.    (By Mr. Chase)  So I've just handed you a Stanford Health Care records --

A.    Uh-huh (affirmative).

Q.    -- Authorization for Use or Disclosure of Protected Health Information.

A.    Uh-huh (affirmative).

Q.    This is a -- this is a request by you to release Kayson's medical information to you; correct?

A.    Yes.

Q.    Okay.  And this was -- the date of this --

200

the date of this is April 8th, 2019; correct?

A.    Yes.

Q.    Okay.  And you were served with a temporary restraining order providing Mr. Thygesen with sole legal custody and sole physical custody, temporary, on March 18th; correct?

A.    From an ex parte order where he lied about the baby was going to be killed.  Correct.

Q.    Well, that actually wasn't part of the hearing.

A.    So something similar.

Q.    So it says, "4/8/2019," so --

A.    Well, you also put into the Court that day that California was the home state.  Which is false.  And it's been overturned.  And we are litigating this all over again.

Q.    So --

A.    You are form shopping.  Mr. Thygesen is form shopping.

Q.    -- subsequent -- subsequent to you being personally served with a temporary restraining order removing all legal authority over your son Kayson, you represented that you had legal authority, "legal representative"; correct?

A.    I do not know the definition of that.



201

Q.    "Signature of patient or legal representative."  So were you a patient?  Were you seeking your own patient records?

A.    I don't know.

Q.    You don't know if you were a patient of Stanford Health Care?

A.    No.  But I don't know.  I just -- nothing. There's nothing wrong with me seeking medical information of my own son, who was taken by a father who's never seen him before --

Q.    Well, so what was your --

A.    -- to see if he's okay.  Because he was given off a fake kill baby post.  I was in fear for my life, for my son.  He was going to be killed by --

Q.    Now we're wasting time.

A.    -- Christoffer Thygesen.  Who wanted him aborted at 18 to 24 weeks.

Q.    You done going off topic?

       What was your basis -- you signed as the legal representative.  What was your basis for being the legal representative?

A.    I do not know.  I signed it and I needed to see if my son was okay, if he was alive. Mr. Thygesen has made threats to hurt the baby --

Q.    Please just --

202

A.    -- remove him --

Q.    -- so we can get through it, so you don't have to --

A.    -- give him away.

Q.    -- come to San Francisco and be deposed. Please just stick to the topic and we'll move through this.

       Next, I'd like to ask you on page two of this report, page two of seven, it says, "Check here and initial next to the box if you would like your billing records or billing information released.  KW. Check."

       Why were you requesting the billing records of the Thygesens?

A.    I don't know.  I didn't get it anyways.

Q.    Why did you request the billing records of the Thygesens?

A.    I have no idea.

Q.    You don't have any idea?

A.    I just checked what I thought needed to be checked.

Q.    Why did you think billing records needed to be checked?

A.    What does that have to do with anything?

Q.    Has to do with possibly a lot of things.

203

       Why did you request their financial information?

A.    I did not.  I mean --

Q.    Medical records contain --

A.    -- I did, but I didn't get it.

Q.    But you didn't get it.

A.    I did not get it.

Q.    But you requested it.  So is your answer that you just don't know?

A.    I just checked what I checked.

Q.    Okay.

A.    I had no idea what health plan he was on.

Q.    Okay.  So let's go -- so you attached a New York State I.D. card that was issued or reissued on 3/13/2019.  And while -- you -- you submitted this, so I know you do have this in your possession.

A.    I do not have it in my possession.

Q.    It is the same address on the card as the address that you gave me December 28th, 9 West 70th Street, Apartment 4R, New York, New York.

A.    Yes.  And it -- this was the replacement for the I.D. card I had before.  And I had my restraining order.  And when I asked if I could get a replacement, but I was afraid, because Mr. Thygesen has been sending all these armed agents to my house

204

and God knows what else, they said put any address. Since I was a domestic violence victim, they said put whatever address because you're a domestic violence victim.  I just brought in my restraining order.  And it was a replacement I.D.  And that was it.

Q.    So when did you apply for this replacement I.D.?  What was the date --

A.    Around that time.

Q.    What's "that time"?  What's the date?

A.    Three -- let's see.  Three -- does that say, "12"?

Q.    It's reissued on 3/13/2019.

A.    That must be the day then.

Q.    That it was issued.

       When did you apply for it?

A.    Like last year.  Year before.  It's a renewal of my old one.

Q.    So this was the renewal of your old I.D. card; yes?

A.    Yes.  And -- yeah.

Q.    Which had the 9 West 70th --

A.    Nope.

Q.    -- Street, Apartment 4R?

A.    Nope.  Nope.  Does not.

Q.    Your old one does not?



221

to?  Anybody?

A.    Possibly.  I was really scared.

Q.    Possibly?

A.    People off of Tinder maybe even --

Q.    You just admitted --

A.    -- that worked for Google.

Q.    -- you -- you transmitted --

A.    I was scared.

Q.    Right.  So who specifically did you send this order -- what you're calling an order of protection, let's stick with that -- who did you send it to who would have had access to thereafter create and send an e-mail the very next day?  Did you give it to your dad?

A.    No.

Q.    Okay.  You didn't give it to your mom?

A.    (Shaking head negatively.)

Q.    Okay.  Didn't think so.

So --

A.    Random people.

Q.    -- who did you give to?

A.    Random people off Tinder.  I think maybe even someone who worked at Google.  I'm not sure.  But -- but in relation to me.  Not in relation to Mr. Thygesen or anyone he knows.

222

Q.    So do you think that some random person from Tinder took this order of protection that you allegedly gave them and created this courtorder@6678@gmail account and also happened to find Mr. Thygesen's e-mail address and sent it to him?  Is that your explanation --

A.    I don't know.

Q.    -- for how this happened?

A.    I don't know.  All of that stuff is probably correct.  If you Google any of their names, it comes up; correct?  Yes.

Q.    Not -- not always.  And not this.  Okay.

But, again, just to clarify what you are -- so with respect to whether or not you sent this courtorder6678@gmail to Mr. Thygesen, with this attachment, are you pleading the Fifth?

A.    I'm pleading the Fifth.  But like -- like I said, their information is online.  Including our court case.  It's public record.  Anyone -- oh, and you know about the recent -- the recent sexual assault e-mail that my previous attorney, Audrey Courson, received alleging that Christoffer is out there --

Q.    Yeah.  Let's -- let's actually -- let's switch to that for a second.

223

A.    Which is really frightening that my son is in possession of Christoffer.  It's frightening.

Q.    So, Ms. Wang, this is a broad question.  Would you please tell me every person that you know that is -- that you personally know that is connected to Christoffer Thygesen in any way.

A.    That's a very broad question.

Q.    Okay.  Let me try and help.

Please tell me every person that you know who's connected in any way to Christoffer Thygesen that you have ever contacted for any reason.  Let's start there.

A.    I don't know.  That's still a very broad question.  I think we've been going through all of this.

Q.    I don't think it's that broad.

Who do you know that knows Christoffer that you have contacted for any reason?

A.    I have not.  I don't know.  Oh, right.  I sent an e-mail to his parents letting them know that they have a grandson.  And then they blocked me.  And wanted nothing to do with Kayson.  And then they made a kill baby post and got a restraining order and took the baby across state lines by presenting and misleading the Court into believing at the time that

224

California was the home state.  Even though you guys knew very well that Utah was the home state of Kayson by -- you've hired agents to tail us and surveil us since December of 2018.

Q.    So you are not answering my question.  You're going off on a tangent.  So let's get back -- let's redirect.

A.    Well, that's just facts.

Q.    Oh, you're -- you can -- you're welcome to your -- your opinions of what you think are facts.

A.    It's not an opinion.

Q.    Now, let's stick --

A.    We have all the proof --

Q.    -- to the deposition --

A.    -- that you knew.  You knew what car the baby was --

Q.    Could you please --

A.    -- in when you came to confiscate the child.  You knew he was in the red car.

Q.    We didn't come confiscate.

A.    Well, you may have -- you were on the phone call --

Q.    Give us every --

A.    -- Darrick Chase.

Q.    -- person --

273

under distress, that I just had someone's child I met twice, I'm pregnant, he's completely abandoned his child. This was a -- this was a very stressful time. I mean --

Q.   So you're saying you wrote this because you were angry and depressed?

A.   No. I'm saying I distributed some of this and -- yeah.

Q.   You distributed some of what?

A.   The DNA results and then your cease and desist letter.

Q.   And then where did you distribute those to?

A.   I may have sent it to people --

Q.   What people?

A.   -- and talked about the situation.

Like that random person from San Francisco I was just talking about.

Q.   Okay. And in this -- in this posting, in addition to information that -- the top of the DNA report is in there; correct, DDC?

A.   Yes.

Q.   So -- so did you author this post?

A.   Didn't I plead the Fifth to this stuff and don't you have the IP address information that proves

274

who -- and who didn't?

Q.   I don't know. What is -- what is your response?

A.   Pleading the Fifth.

How many of these Medium blogs were there? Like 16? Trying to get how you got several hundred that you allege I posted. Because that number is very off.

Q.   Off from what?

A.   Off from your allegations. "Hundreds." Not including the kill baby post. That I know Mr. Thygesen has the money to find out who posted that. All you need to do is execute an oversea server.

Q.   Yeah. Tell me how would --

A.   But, yes.

Q.   Yeah. Tell me, how would you find that out?

A.   That's what Sergeant Martinez said.

Q.   Oh.

A.   And -- oh, that's also what Carl said. He says that there was somebody where there was a job and this person -- which I sent you -- and Mr. Thygesen certainly has the funds. But he won't research or look into that kill baby post, which is

275

the singular post that warranted removal of my child, he won't look into more because he did it. I mean, why would you spend so much money for everything else besides the post that DCFS, law enforcement, all cared about? That was the post why they determined removal was necessary.

None of -- none of these Christoffer is a deadbeat dad posts. It was the kill baby post and that Ms. Wang was going to commit suicide post. That was the one that warranted removal of Kayson, had San Francisco and Utah Law enforcement looking into the situation, had juvenile court issue that warrant for the removal of the child. It was the kill baby post. And, yet, you won't look into that post anymore.

I've sent you the information about Mr. Aaron Minc who could possibly find out who did t. But, yet, Mr. Thygesen, who has the funds, will not look into it anymore.

Q.   Ms. Wang, before I -- we look at more posts, how many aliases do you have? So, for example, you communicate with me called Lanie Lee, that's your lancewr12@gmail account.

So how many aliases do you have?

A.   That's a very broad question. I'm not understanding.

276

Q.   How many -- how many different ways do you communicate with people using something other than your legal name of "Kailin Wang"?

A.   Just the ones I've been communicating with yourself or other counsel of Mr. Thygesen.

Q.   Could you give me a list? Could you tell me which aliases that you use?

A.   Well, I -- I think Beau Olson has some of those e-mails. And so does Erica. And you have the other ones.

Q.   Do you know --

A.   That's it.

Q.   Do you know off the top -- do you know from your memory --

A.   I do not. That's a very broad question.

Speaking of aliases, if I use so many aliases why would the only one threatening to kill Kayson be under my legal name, Kailin Wang? And why would that picture, or whatever, Rally threat, or Rally policy, be under Kailin Wang, which would be sending this to incriminate herself and get herself into trouble, if Mr. Thygesen didn't do it? If, apparently, I use so many aliases.

Q.   So have you ever used the alias "David Wallace"?



293

A.    What information do --

Q.    Now, how did you --

A.    -- I have that I posted that?

Q.    How did you come --

A.    What information --

Q.    How did you come --

A.    -- do you have that I posted that?

Q.    How did you come to learn that this had been -- how familiar are you with Holy Smoke?  Let's start there.

A.    I know of it now that Erica has brought it up in her pleadings, in Mr. Thygesen's pleadings.

Q.    Have you ever posted anything on Holy Smoke?

A.    No.

Q.    Have you ever commented on Holy Smoke?

A.    No.

Q.    So how did you come to be aware that this post was made about you on the 6th of March 2019?

A.    I received -- what is it called -- the -- what is it called -- the removal stuff.  And the pleadings from DCFS, Child Protective Services, the warrant of removal, based on this false post that Christoffer made under my name.

          And if you look at the pattern of these

294

false alias e-mail addresses, all of these ones against me where it says, "Christoffer will get full custody," "Ms. Wang is going to jail," all of these are posted under the same alias, fake e-mail addresses, kailin@wang, gg@gg, et cetera, et cetera.  Whoever posted those are all the same person.  And it's someone on Christoffer's behalf.  It makes perfect sense.  If you look at the sequence of events, he did it or someone on his behalf did it.  He did it because he wanted Child Protective Services involved.

          This is like a felony crime that Mr. Thygesen has committed.  This is really serious.  False felony allegations for the removal of a child.  This is so illegal.  He should be prosecuted for this.

Q.    So what did child -- when was the first welfare check?

A.    Oh, first welfare check?

Q.    When you were in New York, of course.  So they came on the 7th; right?  The 6th -- the 6th or the 7th?  They came on the 7th, Ms. Wang?

          I'm sorry.  I apologize.  I was looking at you.  I should not.

A.    I believe so.  Yes.

295

Q.    So the first welfare check came on the 7th; right?

A.    I believe so.

Q.    Right.  And so --

A.    I only have the police report.  I was not present, so I would not know.

Q.    Right.

A.    Twelve more minutes.

Q.    Okay.  We're not going to be done.

          So who could --

A.    I need to eat something.  And you're going to count that off my record.  I just can't give you anymore.

Q.    So who besides -- so --

A.    If you really need another hour, we can do this another time.  I'm going to make sure you get your seven hours so we don't complain.  But, today, I really have to go at 5:00.

Q.    So in this March 7th post:  "The Thygesen clan has waged a harassment campaign to falsely report child abuse allegations."

A.    Uh-huh (affirmative).

Q.    So who else besides you and your parents and the child -- child -- CPS people, who else had that information?

296

A.    Terry Thygesen did.

Q.    So who do you think ran to the Holy Smoke site and authored a comment slandering themselves and reporting false abuse -- false child abuse allegations?

A.    Terry Thygesen did.  And if you look at the police report, that's exactly what it says.

Q.    And why would Terry Thygesen --

A.    The police asked -- the police asked Christoffer:  What other threats besides the March 6th kill baby post has Ms. Wang made against you?  He got stuck.  He didn't know what to say.  He handed the phone to his mother, Terry Thygesen.  That's all on record.  And then Terry got off the phone.  An hour later, she reported these posts.  It's very obvious she did these.

Q.    You think Terry Thygesen did these posts?

A.    Well, you guys were in the middle of removing a child.  You guys wanted to win and remove the child off of parents that have been taking care of him without any financial support, emotionally, anything from Christoffer.  He completely abandoned his child.  You guys needed this child removal to happen.  So, absolutely, she did it.

Q.    Okay.



281

ur nephew at the hospital one day as he is sick and on welfare."  So, then "sick" refers to him having jaundice; correct?

A.    I have no idea what it's referring to.

Q.    But he was sick when he was a little baby, he had jaundice; correct?

A.    I guess newborns all are.  I mean, Christoffer abandoned his child.

Q.    Who else -- who else had -- who else had access to that information that could have then put it into --

A.    I don't know.  There was Medium posts.

(EXHIBIT 39 WAS MARKED.)

Q.    (By Mr. Chase)  Ms. Wang, I direct your attention to the Exhibit 39.

A.    Uh-huh (affirmative).

Q.    From Holy Smoke.

A.    Uh-huh (affirmative).

Q.    So is it your position that Christoffer has been impersonating you online and making these posts?

A.    Yes.  Absolutely.

Q.    Okay.  So let's go --

A.    And possibly Walker Stone or someone else. Or it could be a random troll.

282

Q.    So let's go to this February 10, 2019 one. It says, "Christoffer Thygesen, a data scientist at Square impregnated me, then abandoned his son."

A.    Uh-huh (affirmative).

Q.    "Is sick, starving, and homeless."

So what is your -- what is your evidence that Christoffer Thygesen is the person behind this post?

A.    I don't know.  From the Medium post.  I don't know what he was planning or doing.

Q.    But --

A.    Could be him, could be Walker Stone, or someone in relation to Christoffer Thygesen.

Q.    Is it your position that this was -- that Christoffer Thygesen posted this comment on Holy Smoke dated February 10th?

A.    Possibly.

Q.    What is your evidence for your "possibly"?

A.    Well, I didn't post it.  So I don't know. You know that he's impersonated me before.

Q.    So please --

A.    We talked about aliases.

Q.    Right.  So please tell me --

A.    There's lots of aliases.

Q.    So let's talk about that.

283

A.    Except for the one killing the child. Where that's the one that Child Protective Services was interested in.

So all of these are aliases.  And, yet, that one is under "Kailin Wang," the legal name.

Q.    So, Ms. Wang --

A.    These have been subpoenaed several times. And if you look at the pattern of e-mail addresses, whoever posted this, Kailin Wang, March 6, "I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder.  I hope his parents are happy to hear this."  The same person who posted this, also there's several posts, "Kailin Wang is on violation of her probation.  She's been arrested many times." It's all public record.  "Unfit parent.  Would be easy win for Chris to get custody."  February 17.  I did not even have knowledge about the TRO.  I was present in California at that time.

Q.    Okay.  Let's get back to your claim that Mr. Thygesen -- let's keep it simple.

You're making a claim that Mr. Thygesen --

A.    Or someone on his behalf.

Q.    Okay.  Let's stick to Mr. Thygesen.

A.    He is a computer scientist.

284

Q.    What -- what is your evidence that Mr. Thygesen is impersonating you online?  Your evidence?  Do you have an expert --

A.    Because --

Q.    -- witness who says so?  Do you have -- what is your evidence?

A.    What is yours?  The kill baby post.  Or, actually, any of these.  I mean, let's be clear.  He needed -- he wanted to win this custody lawsuit.  He got it ex parte.  He wants to make me look bad.  He doesn't want to pay child support.  His parents are pissed because I went forward with the pregnancy. They're punishing me for keeping the baby and deciding not to go for an abortion.  These are all reasons why he would be impersonating or framing me for crimes.  Because there is a custody battle going on.

Q.    So what do you think -- yeah.  So what do you think --

A.    I mean, I think about --

Q.    What is your -- look --

A.    What is your evidence where it says, "Christoffer, you need to get this child away from Kailin.  Do whatever it takes"?

Q.    I'm not asking that.



**FL-320**

| | | |
|---|---|---|
| PARTY WITHOUT ATTORNEY OR ATTORNEY | STATE BAR NUMBER: | *FOR COURT USE ONLY* |

NAME: Christoffer Stanford Thygesen

FIRM NAME: c/o Brev Box Centret – Box 604

STREET ADDRESS: Vesterbrogade 208

CITY: 1800 Frederiksberg C; DENMARK    STATE:    ZIP CODE:

TELEPHONE NO.: % (415) 989-7900    FAX NO.:

EMAIL ADDRESS: % Douglas L. Rappaport at admin@sfcrimlaw.com

ATTORNEY FOR (name): In Pro Per

**ELECTRONICALLY**

**F I L E D**

*Superior Court of California,*
*County of San Francisco*

**05/30/2025**
**Clerk of the Court**
**BY: JONATHAN J. WONG**
**Deputy Clerk**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco

STREET ADDRESS: 400 McAllister Street

MAILING ADDRESS: 400 McAllister Street

CITY AND ZIP CODE: San Francisco, CA 94102

BRANCH NAME: Civic Center Courthouse

PETITIONER: CHRISTOFFER THYGESEN

RESPONDENT: KAILIN WANG

OTHER PARENT/PARTY:

| RESPONSIVE DECLARATION TO REQUEST FOR ORDER | CASE NUMBER: FDV-19-814465 |
|---|---|

| HEARING DATE: June 12, 2025 | TIME: 9:00 a.m. | DEPARTMENT OR ROOM: 403 |
|---|---|---|

Read *Information Sheet: Responsive Declaration to Request for Order* (form FL-320-INFO) for more information about this form.

1. [x] RESTRAINING ORDER INFORMATION
   a. [ ] No domestic violence restraining/protective orders are now in effect between the parties in this case.
   b. [x] I agree that one or more domestic violence restraining/protective orders are now in effect between the parties in this case.

2. [ ] CHILD CUSTODY
   [ ] VISITATION (PARENTING TIME)
   a. [ ] I consent to the order requested for child custody (legal and physical custody).
   b. [ ] I consent to the order requested for visitation (parenting time).
   c. [ ] I do not consent to the order requested for [ ] child custody [ ] visitation (parenting time)
   [ ] but I consent to the following order:

3. [ ] CHILD SUPPORT
   a. I have completed and filed a current *Income and Expense Declaration* (form FL-150) or, if eligible, a current *Financial Statement (Simplified)* (form FL-155) to support my responsive declaration.
   b. [ ] I consent to the order requested.
   c. [ ] I consent to guideline support.
   d. [ ] I do not consent to the order requested [ ] but I consent to the following order:

4. [ ] SPOUSAL OR DOMESTIC PARTNER SUPPORT
   a. I have completed and filed a current *Income and Expense Declaration* (form FL-150) to support my responsive declaration.
   b. [ ] I consent to the order requested.
   c. [ ] I do not consent to the order requested [ ] but I consent to the following order:

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use Judicial Council of California FL-320 [Rev. January 1, 2025] | **RESPONSIVE DECLARATION TO REQUEST FOR ORDER** | Code of Civil Procedure, § 1005 Cal. Rules of Court, rule 5.92 www.courts.ca.gov |

**FL-320**

| PETITIONER: CHRISTOFFER THYGESEN<br>RESPONDENT: KAILIN WANG<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>FDV-19-814465 |
|---|---|

5. ☐ PROPERTY CONTROL
   a. ☐ I consent to the order requested.
   b. ☐ I do not consent to the order requested ☐ but I consent to the following order:

6. ☐ ATTORNEY'S FEES AND COSTS
   a. I have completed and filed a current *Income and Expense Declaration* (form FL-150 ) to support my responsive declaration.
   b. I have completed and filed with this form a *Supporting Declaration for Attorney's Fees and Costs Attachment* (form FL-158 ) or a declaration that addresses the factors covered in that form.
   c. ☐ I consent to the order requested.
   d. ☐ I do not consent to the order requested ☐ but I consent to the following order:

7. ☒ OTHER ORDERS REQUESTED
   a. ☐ I consent to the order requested.
   b. ☒ I do not consent to the order requested ☒ but I consent to the following order:

   Respondent's 4/4/2025 FL-300 "Refile of Subpoena for Cloudflare" (VL-110 dated 3/27/2025) (Transaction ID #75945115) is denied with prejudice.

8. ☐ TIME FOR SERVICE / TIME UNTIL HEARING
   a. ☐ I consent to the order requested.
   b. ☐ I do not consent to the order requested ☐ but I consent to the following order:

9. ☒ FACTS TO SUPPORT my responsive declaration are listed below. The facts that I write and attach to this form cannot be longer than 10 pages, unless the court gives me permission. ☐ Attachment 10.

   Petitioner respectfully requests the Court deny Respondent's 4/4/2025 FL-300 "Refile of Subpoena for Cloudflare" for the reasons set forth in Petitioner's Response to Respondent's Refiling of Request to Subpoena Cloudflare.

I declare under penalty of perjury under the laws of the State of California that the information provided in this form and all attachments is true and correct.

Date: May 30, 2025

Christoffer Thygesen
(TYPE OR PRINT NAME)

▶ *Christoffer Thygesen*
(SIGNATURE OF DECLARANT)