**UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

USA v. Wang,  No. 2:24-CR-163-TS-003

# APPENDIX

## to PSR Objection — Paragraphs 36–38

Framing Wang for the March 6, 2019 Kill Baby K Post

Exhibits  |  6 Thematic Grou

Exhibits A – BB  |  February 2019 – July 2025

Defendant: Kailin Wang

Case Pending: United States District Court, District of Utah

CONFIDENTIAL — FILED PURSUANT TO 18 U.S.C. § 3552(d)

## TABLE OF EXHIBITS

| Exhibit | Title | Source / Date |
|---|---|---|
| Exh. A | DNA Results Email — February 11, 2019 | Email |
| Exh. B | SFPD Chronological Report of Investigation — pp. 1 & 3 of 31 | SFPD Case No. 190112228 |
| Exh. C | SF Superior Court TRO & Custody Forms — February 15, 2019 | In re Thygesen v. Wang, Case No. FDV-19-814465 |
| Exh. D | Holysmoke.org IP Log & Post Screenshots — Feb. 15 – Mar. 6, 2019 | Holysmoke.org server logs |
| Exh. E / E.1 | Judge Darwin Reporter's Transcript — March 6, 2019 & June 25, 2019 | In re Thygesen v. Wang, FDV-19-814465 |
| Exh. F / G | Utah 911 Dispatch Transcript — March 6, 2019, 2:12 p.m. MST & Dr. Mark Brenzinger — Hillard Heintze Profile & Psychology Today Listing | Utah 911 Dispatch |
| Exh. H | Utah DCFS Case Records, Case #2503301 — Mar. 6–20, 2019 | State of Utah DCFS |
| Exh. I | DCFS Reversal to 'Unsupported' — November 2019 | State of Utah, Dept. of Human Services |
| Exh. J | HolySmoke Posts and Aliases — February 8 – March 15, 2019 | Holysmoke.org |
| Exh. K | Cloudflare IP Attribution Analysis — IP 108.162.219.228 (May–July 2019) | Cloudflare, Inc. (Trust & Safety) |
| Exh. L | Kronenberger Rosenfeld Legal Invoices — 2019 | Invoice #18201 (through 5/31/2019); Invoice #18273 (through 6/30/2019) |
| Exh. M | Wang Financial Hardship Evidence — Irrationality of Self-Incrimination Spending | Thygesen v. Wang, No. FDV-19-814465 |
| Exh. N | T-Mobile CSLI — Wang Phone Located in New York City on March 6, 2019 &  21,000 IP addresses used to access Medium accounts, Four IP addresses linked to Wang. | T-Mobile Cell-Site Location Information (CSLI) & April 17, 2019 SF Search Warrant |
| Exh. O | Wang Subpoena & Procedural Catch-22 — September 2022 Discovery Dispute | Thygesen v. Wang, No. FDV-19-814465 |
| Exh. P | Comparison: 3/8/19 Search Warrant Affidavit vs. 10/17/19 Arrest Warrant | People v. Wang, No. SCN-19-814465 |
| Exh. Q | HolySmoke Search Warrant Results — IP Attribution Analysis | SFPD Search Warrant Return |
| Exh. R | Three-Tier Law Enforcement Conclusion on Kill Baby K Post | SFPD / CA DOJ / Federal — Consolidated Law Enforcement Analysis |
| Exh. S | C.T. Declaration Regarding Kill Baby K — May 30, 2023 | Christoffer S. Thygesen v. Kailin Wang, FDV-19-814465 |
| Exh. T | C.T.'s Opposition to Wang's Discovery — September 8, 2023 | In re Thygesen v. Wang, FDV-19-814465 |
| Exh. U | Erica Johnstone Declaration — September 8, 2023 | In re Thygesen v. Wang, FDV-19-814465 |

| Exhibit | Title | Source / Date |
|---|---|---|
| **Exh. V** | Reporter's Transcript — September 21, 2023 (Judge Chen, Dept. 403) | Christoffer Stanford Thygesen v. Kailin Wang, FDV-19-814465 |
| **Exh. W** | C.T. Motion — January 13, 2025 (Judge Roeca, Dept. 403) | In re Thygesen v. Wang, FDV-19-814465 |
| **Exh. X** | C.T. Declaration — March 27, 2025 | Christoffer S. Thygesen v. Kailin Wang, FDV-19-814465 |
| **Exh. Y** | Wang Responsive Filing — May 30, 2025 (Hearing: June 12, 2025) | In re Thygesen v. Wang, FDV-19-814465 |
| **Exh. Z** | Reporter's Transcript — June 12, 2025 (Judge Roeca) — Wang's Sworn Disclaimer Hearing | Christopher Stanford Thygesen v. Kailin Wang, FDV-19-814465 |
| **Exh. AA** | Reporter's Transcript — July 15, 2025 (Judge Roeca) — Inconvenient Forum Objections | Christoffer Stanford Thygesen v. Kailin Wang, FDV-19-814465 |
| **Exh. BB** | Consolidated Timeline of Legal Events — Civil and Criminal (Pages 1–2, 2018–2019) | Prepared by C.T. for Danish family court proceedings |

## KEY DATES TIMELINE

| Date | Event |
| --- | --- |
| Feb. 11, 2019 | DNA test confirms C.T. as father. Wang emails C.T.'s attorney Chase with results. (Exh. A) |
| Feb. 13, 2019 | SFPD investigation opens. C.T.'s father confirms Wang made no direct threats. (Exh. B) |
| Feb. 15, 2019 | C.T. files for TRO. Sgt. Martinez first contacts Walker Stone — same day first Holysmoke posts appear. (Exh. B, C) |
| Feb. 15, 2019 | SF Superior Court issues TRO but denies sole custody and no-visitation requests. (Exh. C) |
| Mar. 6, 2019 | SF custody hearing. Kill Baby K post appears on Holysmoke.org from IP 108.162.219.228. Court grants ex parte sole custody to C.T. Wang's phone is in New York City per T-Mobile CSLI. (Exh. D, E, F, N) |
| Mar. 6, 2019 | Utah DCFS removes infant from Wang's parents' home following coordinated welfare check-and-custody operation. (Exh. F, H) |
| Mar. 8, 2019 | SFPD search warrant issued to Holysmoke.org. Kill Baby K post included in warrant affidavit. (Exh. P, Q) |
| Mar. 18, 2019 | Wang served with TRO papers — 12 days after 3/6/19 ex parte custody order. (Exh. C) |
| May–Jul. 2019 | Cloudflare investigation: IP 108.162.219.228 confirmed as shared VPN/proxy relay; no subscriber identity derivable. (Exh. K) |
| Jun. 25, 2019 | Judge Darwin reverses himself: sends custody to Utah and grants Wang visitation over C.T.'s Kill Baby K objection. (Exh. E.1) |
| Oct. 17, 2019 | SFPD/SF DA file arrest warrant. Kill Baby K post absent from charging complaint  (Exh. P) |
| Nov. 8, 2019 | Utah DCFS reverses 'Supported' finding to 'Unsupported' following Cloudflare investigation. (Exh. I) |
| May 2023 | C.T. files declaration re-alleging Wang made the 3/6/19 Kill Baby K post in family court. KW files for Discovery on the post (Exh. S) |
| Sep. 8, 2023 | C.T.'s  files  oppose Wang's discovery on the 3/6/19 Kill Baby K post. (Exh. T, U) |
| Sep. 21, 2023 | Hearing before Judge Roeca  on Wang's Kill baby K post subpoenas.  Court denies Wang discovery, because CT argues that 3/6/19 "Kill Baby " K post is not longer relevant. (Exh. V) |
| Jan. 13, 2025 | C.T. continues to invoke Kill Baby K post in family court filings before Judge Roeca to deny Wang visitation (Exh. W) |
| Jan. 13, 2025 | C.T. declaration re-alleging Kill Baby K post — six years after post's appearance. (Exh. X) |
| Jun. 12, 2025 | C.T. swears under oath 3/6/19 Kill Baby K post is 'not my expectation' to introduce. Judge Roeca confirms post irrelevant, thus Wang's request for discovery on that post is denied. (Exh. Z) |
| Jul. 15, 2025 | California court terminates jurisdiction and defers the case to Denmark. (Exh. AA) |
| 2025 (Danish) | C.T. once again accuses Wang of making that "Kill Baby K" post in Danish proceedings where Wang has no ability to conduct discovery of this California cased evidence he once again falsely attributes Kill Baby K post to Wang without qualification. |

| Exhibit A | DNA Results Email — February 11, 2019 |
|---|---|
| **Exhibit Ref.** | Exhibit A (partial) |
| **Document** | Email from lancewr12@gmail.com (Lanie Lee) to Darrick Chase, Esq., Kaye-Moser-Hierbaum-Ford LLP, re: "DNA Results." |
| **Date** | February 11, 2019, 2:40 PM |
| **Parties** | Sender: Wang (lancewr12@gmail.com / Lanie Lee). Recipient: Darrick Chase, C.T.'s attorney. |
| **Court of Origin** | Los Angeles Child Support Services v. Christoffer Stanford Thygesen — email correspondence; produced in California family court discovery. |
| **Description** | Wang emails Chase with the Los Angeles DCSS DNA test results confirming C.T. is the father. Chase does not respond. |

**SIGNIFICANCE TO PSR OBJECTION**

This email establishes: (1) Wang was communicating directly and in good faith with C.T.'s own attorney before any custody filing; (2) Chase received confirmation of paternity on 2/11/19 and did not respond; (3) the email predates C.T.'s 2/15/19 TRO filing by four days, refuting any suggestion that Wang's communications were threatening rather than cooperative.

**Darrick Chase**

| | |
|---|---|
| **From:** | Lanie Lee <lancewr12@gmail.com> |
| **Sent:** | Monday, February 11, 2019 2:40 PM |
| **To:** | Darrick Chase |
| **Subject:** | DNA Results |



1

| Exhibit  B | SFPD Chronological Report of Investigation — pp. 1 , 3 of 31 |
|---|---|

| Exhibit Ref. | Exhibit B (partial) |
|---|---|

| Document | SFPD Chronological Report of Investigation, Case No. 190112228 (Stalking/Harassment), Sgt. Michelle Martinez #1208, Special Investigations Division |
|---|---|

| Relevant Dates | 2/13/19 (page 1 of 31) and 2/15/19 (page 3 of 31) |
|---|---|

| SFPD Chron. p. 1 of 31 | 2/13/19 1739: Allan Thygesen (C.T.'s father) tells Sgt. Martinez: "Wang has made no direct threats towards anyone, and has not requested money, or asked for anything from A. Thygesen." C.T. himself also confirmed: "Wang has not made any direct threats towards him." |
|---|---|

| SFPD Chron. p. 3 of 31 | 2/15/19 1731: Sgt. Martinez's first contact with Walker Stone (V2). Stone confirms he and Wang never met in person. First Holysmoke posts attacking Wang (i.e.; "Kelly," IP 172.68.47.104) started appearing on the same day Walker Stone was contacted by Sgt. Michelle Martinez. |
|---|---|

| SFPD Chron. p. 3 of 31 | 2/15/19 1319: Allan Thygesen informs Sgt. Martinez that C.T. filed TRO same day. C. Thygesen said that Wang has not made any direct threats towards him, but is afraid that her behavior will escalate. I asked C. Thygesen what he believes Wang's motivation is, and he told me that he didn't know. C. Thygesen does not know where Wang lives, but said that she has stayed in an apartment in New York and in Utah, where her parents live. C. Thygesen told me that Wang submitted a case in Los Angeles, and the DNA test was also in Los Angeles. C. Thygesen described Wang's lifestyle as "jet setting." (Compare: C.T.'s PI firm was conducting surveillance of Wang's Utah address by 2/22/19.) |
|---|---|

> **SIGNIFICANCE TO PSR OBJECTION**
> Page 1 contains C.T.'s father's own admission — on the first day of the investigation — that Wang made no direct threats and sought no money. This is the inverse of the narrative that later developed. Page 3 documents that Sgt. Martinez first contacted Walker Stone at 1731 on 2/15/19 — the same time the first Holysmoke posts appeared under the aliases attacking Wang. The temporal coincidence between the first SFPD-Stone contact Holysmoke post is central to the impersonation theory.

## SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL OF INVESTIGATION

Page 1 of 31

| TYPE OF CASE | CASE NO. | VICTIM |
|---|---|---|
| Stalking/Harassment | 190112228 | Thygesen,Christoffer<br>Stone, Walker |

| DATE | DETAIL | INSPECTOR ASSIGNED |
|---|---|---|
| Wednesday, February 13, 2019 | Special Investigations Division | Martinez #1208 |

| DATE | TIME | ACTIVITY |
|---|---|---|
| 2/13/19 | 1700 | Lt. O'Connor advised me that (R) Allan Thygesen and his family are being harassed, and possibly stalked by a woman who had a child with his son, Christoffer Thygesen.  A. Thygesen believes that the woman has prior convictions for stalking other men. |
| | 1739 | I spoke with (R) Allan Thygesen via telephone.<br>In summary, A Thygesen told me the following:<br><br>Thygesen lives in Menlo Park with his wife.  They have four children together.  Their son, Christoffer Thygesen is 26, and lives in San Francisco.<br>C. Thygesen met (S) Kailin Wang on Tinder, they had an intimate relationship, and she became pregnant.  The baby was born on ▮▮▮▮▮▮.  On 2/11/19, a DNA test confirmed that C. Thygesen is the father of the child.<br><br>Wang has been harassing C. Thygesen since Christmas, but it has been escalating.  A. Thygesen told me that Wang has posted a variety of defamatory articles online about C. Thygesen, and is reaching out to his friends and family.  A. Thygesen told me that he has attempted to have these defamatory articles removed from various websites, but not every website has complied.<br><br>A Thygesen hired a Private Investigator to look into Wang's background.  The PI found that Wang had been convicted in New York (5 years ago) for stalking and harassing a man she had met.  In that case, Wang threatened to go over to his apartment with a gun.  She also threatened to kill herself.<br><br>A. Thygesen told me that there is also a current case involving another San Francisco man.  In this case, there are 20 counts pending in the Utah Courts.<br><br>A. Thygesen said that Wang's parents live in Utah, and that may be her home base, but she also appears to be traveling quite a bit.<br><br>Wang has made no direct threats towards anyone, and has not requested money, or asked for anything from A. Thygesen.<br><br>A. Thygesen told me that he will email me the information that he has on Wang, including what she has posted online.<br><br>A. Thygesen told me that he will be filing a restraining order against Wang within the next few days.  A cease and desist letter was sent to Wang in early July, which she responded to.  However, she has continued to post articles about C. Thygesen.<br><br>Kailin Wang<br>DOB: 1/20/83 |

**SAN FRANCISCO POLICE DEPARTMENT**
**CHRONOLOGICAL REPORT OF INVESTIGATION**   Page 3 of 31

| DATE | TIME | ACTIVITY |
|---|---|---|
| | | C. Thygesen said that Wang has not made any direct threats towards him, but is afraid that her behavior will escalate. I asked C. Thygesen what he believes Wang's motivation is, and he told me that he didn't know.  He believes that Wang just likes to hurt people.<br><br>C. Thygesen does not know where Wang lives, but said that she has stayed in an apartment in New York and in Utah, where her parents live.  C. Thygesen told me that Wang submitted a case in Los Angeles, and the DNA test was also in Los Angeles.  C. Thygesen described Wang's lifestyle as "jet setting." |
| | 1245 | CDW search on Kailin Wang.  Located a similar case involving Wang in San Francisco. Incident reports: 170945607, 170810414, 180132399 Reports retained in case file. |
| | 1402 | Obtained case number for Suspicious Occurrence report. Case: 190112228, Cad: 190452274. |
| | 1414 | Conducted computer query on Kailin Wang (1/20/83) |
| 2/15/19 | 1319 | I spoke with A. Thygesen who told me that he filed for the Temporary Restraining Order against Wang today. He is expecting a response from the court within the hour.  A. Thygesen told me that he will provide me with those documents via email today. A. Thygesen told me that he does not believe that Wang has his email address, phone number or home address, and requested that those not be included in the police report. |
| | 1647 | Received Email from A. Thygesen providing me with a copy of the TRO (FDV-19-814465).  The TRO hearing is scheduled for 3/6/19. |
| | 1700 | I received a phone call from Terry Thygesen, mother of (V) Christoffer Thygesen. Thygesen wanted to inform me of Wang's prior stalking/harassment history. Stated that she was afraid of revenge porn setup of C. Thygesen based on Wang's history. |
| | 1731 | I spoke with Walker Stone.  In summary, Stone told me the following: Stone reported Wang approximately a year and a half ago for harassing, and defaming him.  Stone told me that Wang "robo-called" everyone that he knew, non-stop. Stone stated that Wang has been charged with harassment against him, in Utah.  Wang was arrested on 12/14/17, and the harassment continued.  Harassment began September 2nd or 3rd of 2017, and the phone calls continued until November 2017.<br><br>Stone told me that he never met Wang in person, and that they had only corresponded on a few dating apps.<br><br>Stone told me that the Attorney handling the criminal case against Wang was Ana Burgi in Spanish Fork, UT.<br><br>Stone's personal attorney is Ted Broomfield.  TedBroomfieldlaw.com |

| Exhibit C | SF Superior Court TRO & Custody Forms — February 15–16, 2019 |
|---|---|

| Exhibit Ref. | Exhibit C (partial) |
|---|---|

| Case | In re Thygesen v. Wang, Case No. FDV-19-814465, SF Superior Court, Dept. 404 |
|---|---|

| Documents | DV-100 (Request for DVRO, C.T. declaration signed 2/11/19 and 2/15/19 by Chase); DV-110 (Temporary Restraining Order, filed/endorsed 2/16/19); DV-140 (Child Custody & Visitation Order — sole legal and physical custody to C.T., no visitation for Wang); DV-145 (Order: No Travel With Children, Wang ordered to post $100,000 bond); DV-150 (Supervised Visitation & Exchange Order) |
|---|---|

| Critical Terms | DV-140: Full legal and physical custody to C.T., no visitation for Wang "until further orders of the Court." DV-145: Wang "may not travel at all with Kayson" — entered on 2/16/19 before Wang was ever served with these papers (she was not served until 3/18/19). |
|---|---|

| Court Finding | The court granted TRO but — critically — denied C.T.'s requests for sole custody and no visitation pending the March 6, 2019 hearing. (Compare: sole custody was then granted ex parte on 3/6/19 after the Kill Baby K post appeared.) |
|---|---|

| Wang's Status | Wang was not served with these filings until March 18, 2019 — twelve days after the ex parte custody order. |
|---|---|

**SIGNIFICANCE TO PSR OBJECTION**

These forms establish the legal scaffolding C.T. was constructing weeks before the Kill Baby K post: (1) C.T. had already sought sole custody and no visitation before the post appeared; (2) the court initially denied those requests — the post was used on 3/6/19 to obtain what the court declined to grant on 2/16/19; (3) the DV-100 declaration (signed 2/11/19) does not mention the Kill Baby K post — because it did not yet exist, and C.T.'s filing predates it.

## DV-110    Temporary Restraining Order

Clerk stamps date here when form is filed.

**ENDORSED**
**F I L E D**
San Francisco County Superior Court

FEB 1 5 2019

CLERK OF THE COURT
BY: __LOUISA SALAS__
Deputy Clerk

*Person in* ① *must complete items* ①, ②, *and* ③ *only.*

**① Name of Protected Person:**

CHRISTOFFER STANFORD THYGESEN

Your lawyer in this case *(if you have one):*

Name: DARRICK T. CHASE, ESQ.    State Bar No.: 151256

Firm Name: KAYE·MOSER·HIERBAUM·FORD LLP

**Address** *(If you have a lawyer for this case, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, give a different mailing address instead. You do not have to give your telephone, fax, or e-mail.):*

Address: 101 California Street, Suite 2300

City: San Francisco    State: CA    Zip: 94111

Telephone: (415) 296-8868    Fax: (415) 495-1771

E-mail Address: dchase@kayemoser.com

Fill in court name and street address:

Superior Court of California, County of
San Francisco
400 McAllister Street
San Francisco CA 94102

**② Name of Restrained Person:**

KAILIN WANG

Description of restrained person:

Court fills in case number when form is filed.

Case Number:

**FDV-19-814465**

| Sex: ☐ M ☒ F | Height: Approx. 5'4" | Weight: Approx. 130 | Hair Color: Brown | Eye Color: Brown/Hzl |
|---|---|---|---|---|
| Race: Asian | | Age: 36 | Date of Birth: 1/20/1983 | |

Address *(if known):* UNKNOWN (WANG MAY BE TEMP. AT 2481 FAIRWAY DR., SPANISH FORK, UTAH 84660)

City: LOS ANGELES COUNTY PER CHILD'S BIRTH CERTIF.    State: CA    Zip: Unknown

Relationship to protected person: MOTHER OF HIS CHILD

**③ ☒ Additional Protected Persons**

In addition to the person named in ①, the following persons are protected by temporary orders as indicated in items ⑥ and ⑦ *(family or household members):*

| Full name | Relationship to person in ① | Sex | Age |
|---|---|---|---|
| TERESA THYGESEN | MOTHER | FEMALE | 62 |
| ALLAN THYGESEN | FATHER | MALE | 57 |
| ELISE THYGESEN | SISTER | FEMALE | 28 |

☒ *Check here if there are additional protected persons. List them on an attached sheet of paper and write, "DV-110, Additional Protected Persons" as a title.*

*The court will complete the rest of this form.*

**④ Court Hearing**

*This order expires at the end of the hearing stated below:*

| Hearing Date: 3/6/2019 | Time: 8:30 | ☑ a.m. ☐ p.m. |
|---|---|---|

## This is a Court Order.

Judicial Council of California, www.courts.ca.gov
Revised July 1, 2016, Mandatory Form
Family Code, § 6200 et seq.
Approved by DOJ

**Temporary Restraining Order**
**(CLETS—TRO)**
**(Domestic Violence Prevention)**

DV-110, Page 1 of 6
→
Westlaw Doc & Form Builder



| | Case Number: |
|---|---|

**(5)** ☑ **Criminal Protective Order**

a. ☐ A criminal protective order on Form CR-160, *Criminal Protective Order—Domestic Violence*, is in effect.
Case Number: _____ County: _____ Expiration Date: _____

*H·* b. ☒ No information has been provided to the judge about a criminal protective order *(with regard to requesting person)*

**To the person in ②**

The court has granted the temporary orders checked below. If you do not obey these orders, you can be arrested and charged with a crime. You may be sent to jail for up to one year, pay a fine of up to $1,000, or both.

*H·*

**(6)** **Personal Conduct Orders**   ☐ Not requested   ☐ Denied until the hearing   ☒ Granted as follows:

a. You must not do the following things to the person in ① and ~~☒ persons in ③~~ *DENIED PENDING HEARING*

    ☒ Harass, attack, strike, threaten, assault *(sexually or otherwise)*, hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, impersonate *(on the Internet, electronically or otherwise)*, or block movements

    ☒ Contact, either directly or indirectly, in any way, including but not limited to, by telephone, mail, e-mail or other electronic means

    ☒ Take any action, directly or through others, to obtain the addresses or locations of the persons in ① *and* ③. *(If this item is not checked, the court has found good cause not to make this order.)*

b. Peaceful written contact through a lawyer or process server or another person for service of Form DV-120 *(Response to Request for Domestic Violence Restraining Order)* or other legal papers related to a court case is allowed and does not violate this order.

c. ☒ Exceptions: Brief and peaceful contact with the person in ①, and peaceful contact with children in ③, as required for court-ordered visitation of children, is allowed unless a criminal protective order says otherwise.

**(7)** **Stay-Away Order**   ☐ Not requested   ☐ Denied until the hearing   ☒ Granted as follows:

a. You must stay at least *(specify):* 100_____ yards away from *(check all that apply):*
    ☒ The person in ①    ☐ School of person in ①
    ☒ Home of person in ①    ~~☒ The persons in ③~~ *DENIED PENDING HEARING*
    ☒ The job or workplace of person in ①    ☐ The child(ren)'s school or child care
    ☒ Vehicle of person in ①    ~~☒ Other (specify): home, job, school and vehicle of persons in 3.~~ *DENIED PENDING HEARING*

b. ☒ Exceptions: Brief and peaceful contact with the person in ①, and peaceful contact with children in ③, as required for court-ordered visitation of children, is allowed unless a criminal protective order says otherwise.

**(8)** **Move-Out Order**   ☒ Not requested   ☐ Denied until the hearing   ☐ Granted as follows:

You must take only personal clothing and belongings needed until the hearing and move out immediately from *(address):* _____

**This is a Court Order.**

Case Number:

**⑨ No Guns or Other Firearms or Ammunition**

a. You cannot own, possess, have, buy or try to buy, receive or try to receive, or in any other way get guns, other firearms, or ammunition.

b. You must:
- Sell to, or store with, a licensed gun dealer, or turn in to a law enforcement agency, any guns or other firearms within your immediate possession or control. Do so within 24 hours of being served with this order.
- Within 48 hours of receiving this order, file with the court a receipt that proves guns have been turned in, stored, or sold. (You may use Form DV-800, *Proof of Firearms Turned In, Sold, or Stored,* for the receipt.) Bring a court filed copy to the hearing.

c. ☒ The court has received information that you own or possess a firearm. ~as in allegation only in ① of the mutual request.~

**⑩ Record Unlawful Communications** *L.N.*

☐ Not requested   ☐ Denied until the hearing   ☒ Granted as follows:

The person in ① can record communications made by you that violate the judge's orders.

**⑪ Care of Animals**   ☒ Not requested   ☐ Denied until the hearing   ☐ Granted as follows:

The person in ① is given the sole possession, care, and control of the animals listed below. The person in ② must stay at least _____ yards away from and not take, sell, transfer, encumber, conceal, molest, attack, strike, threaten, harm, or otherwise dispose of the following animals:

_____ *L.N.* _____

**⑫ Child Custody and Visitation** ☐ Not requested ☒ Denied until the hearing ☐ Granted as follows:

Child custody and visitation are ordered on the attached Form DV-140, *Child Custody and Visitation Order* or *(specify other form):* _____ . The parent with temporary custody of the child must not remove the child from California unless the court allows it after a noticed hearing (Fam. Code, § 3063).

**⑬ Child Support**

Not ordered now but may be ordered after a noticed hearing.

**⑭ Property Control** ☒ Not requested   ☐ Denied until the hearing   ☐ Granted as follows:

Until the hearing, *only* the person in ① can use, control, and possess the following property:

_____

**⑮ Debt Payment** ☒ Not requested   ☐ Denied until the hearing   ☐ Granted as follows:

The person in ② must make these payments until this order ends:

Pay to: _____ For: _____ Amount: $ _____ Due date: _____
Pay to: _____ For: _____ Amount: $ _____ Due date: _____

**⑯ Property Restraint** ☒ Not requested   ☐ Denied until the hearing   ☐ Granted as follows:

If the people in ① and ② are married to each other or are registered domestic partners, ☐ the person in ① ☐ the person in ② must not transfer, borrow against, sell, hide, or get rid of or destroy any property, including animals, except in the usual course of business or for necessities of life. In addition, each person must notify the other of any new or big expenses and explain them to the court. *(The person in② cannot contact the person in① if the court has made a "no contact" order.)*

Peaceful written contact through a lawyer or a process server or other person for service of legal papers related to a court case is allowed and does not violate this order.

**This is a Court Order.**

Case Number: 

**(17) Spousal Support**

Not ordered now but may be ordered after a noticed hearing.

**(18) Rights to Mobile Device and Wireless Phone Account**

a. **Property control of mobile device and wireless phone account**

☒ Not requested   ☐ Denied until the hearing   ☐ Granted as follows:

Until the hearing, only the person in ① can use, control, and possess the following property:

Mobile device *(describe)* _____ and account *(phone number):* _____

Mobile device *(describe)* _____ and account *(phone number):* _____

Mobile device *(describe)* _____ and account *(phone number):* _____

☐ *Check here if you need more space. Attach a sheet of paper and write "DV-110 Rights to Mobile Device and Wireless Phone Account" as a title.*

b. **Debt Payment**   ☒ Not requested   ☐ Denied until the hearing   ☐ Granted as follows:

The person in ② must make these payments until this order ends:

Pay to *(wireless service provider):* _____ Amount: $ _____ Due date: _____

c. **Transfer of Wireless Phone Account**

Not ordered now but may be ordered after a noticed hearing.

**(19) Insurance**

☐ The person in ①   ☐ the person in ②   is ordered NOT to cash, borrow against, cancel, transfer, dispose of, or change the beneficiaries of any insurance or coverage held for the benefit of the parties, or their child(ren), if any, for whom support may be ordered, or both.

**(20) Lawyer's Fees and Costs**

Not ordered now but may be ordered after a noticed hearing.

**(21) Payments for Costs and Services**

Not ordered now but may be ordered after a noticed hearing.

**(22) Batterer Intervention Program**

Not ordered now but may be ordered after a noticed hearing.

**(23) Other Orders**   ☐ Not requested   ☐ Denied until the hearing   ☒ Granted as follows:

Kailin Wang shall refrain from, directly or indirectly, ~~harassing, defaming, impersonating, inflicting significant emotional distress on, &~~ disclosing confidential information (including ~~without limitation~~ confidential communications and intimate private information about ~~any~~ Protected Person, to any person. ~~SEE ATTACHED DV-110 TEMPORARY RESTRAINING ORDERS (CLETS-TRO) (Domestic Violence) Other Orders.~~

☒ *Check here if there are additional orders. List them on an attached sheet of paper and write "DV-110, Other Orders" as a title.*

**(24) No Fee to Serve (Notify) Restrained Person**

If the sheriff serves this order, he or she will do so for free.

Date: **FEB 15 2019**

_____
*Judge (or Judicial Officer)*
Rebecca L. Wightman

**This is a Court Order.**

**MC-025**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| — IN RE THYGESEN V. WANG | |

ATTACHMENT *(Number)*: _____3_____

*(This Attachment may be used with any Judicial Council form.)*

DV-110, Additional Protected Persons

| Full Name | Relationship to Person in 1 | Sex | Age |
|---|---|---|---|
| EMMA THYGESEN | SISTER | FEM. | 23 |
| JAMES THYGESEN | BROTHER | MALE | 20 |
| INGE THYGESEN | GRANDMOTHER WIFE OF NIELS | FEMALE | 83 |
| NIELS THYGESEN | GRANDFATHER | MALE | 84 |

DENIED PENDING HEARING

DENIED PENDING HEARING

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page ___1___ of ___1___

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 (Rev. July 1, 2009)

**ATTACHMENT
to Judicial Council Form**

www.courtinfo.ca.gov
Westlaw Doc & Form Builder

**DV-140** | **Child Custody and Visitation Order** | Case Number:

This form is attached to (check one):  ☒ DV-110  ☐ DV-130

**(1) Name of Protected Person:** CHRISTOFFER STANFORD THYGESEN    ☐ Mom  ☒ Dad  ☐ Other*

**(2) Other Parent's Name:** KAILIN WANG    ☒ Mom  ☐ Dad  ☐ Other*
* If Other, *specify relationship to child:* _____

**The Court Orders:** TEMPORARY

**(3) ☒ Child Custody** is ordered as follows:

Legal Custody to: *(Person who makes decisions about health, education. Check at least one.)*

Physical Custody to: *(Person the child lives with. Check at least one.)*

| Child's Name | Date of Birth | Mom | Dad | Other* | Mom | Dad | Other* |
|---|---|---|---|---|---|---|---|
| a. KAYSON THYGESEN WANG | 11/26/2018 | ☐ | ☒ | ☐ | ☐ | ☒ | ☐ |
| b. | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| c. | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

☐ *If more children, check here. Attach a sheet of paper and write "DV-140, Child Custody" for a title.*

* *If Other, specify relationship to child and name of person:* _____

**(4) ☒ Child Visitation** is ordered as follows:
a. ☒ No visitation to ☐ Mom  ☐ Dad  ☐ Other *(name):* _____
b. ☐ See the attached _____ - page document, dated: _____
c. ☐ The parties must go to mediation at: _____
d. ☐ Until the next court order, visitation for ☐ Mom  ☐ Dad  ☐ Other *(name):* _____ will be:

    (1) ☐ **Weekends** *(starting):* _____ *(The 1st weekend of the month is the 1st weekend with a Saturday.)*
    ☐ 1st  ☐ 2nd  ☐ 3rd  ☐ 4th  ☐ 5th weekend of month
    from _____ at _____ ☐ a.m. ☐ p.m. to _____ at _____ ☐ a.m. ☐ p.m.
    *(day of week)* *(time)* *(day of week)* *(time)*

    (2) ☐ **Weekdays** *(starting):* _____
    from _____ at _____ ☐ a.m. ☐ p.m. to _____ at _____ ☐ a.m. ☐ p.m.
    *(day of week)* *(time)* *(day of week)* *(time)*

    (3) ☐ **Other Visitation**

*Check here and attach a sheet of paper if there are other visitation days and times, like holidays, birthdays, sports events. List dates and times. Write "DV-140, Other Visitation" for a title.*

**(5) ☒ Supervised Visitation or Exchange**
Visits and/or exchanges of children are supervised as specified on Form DV-150, *Supervised Visitation and Exchange Order.*

**This is a Court Order.**

Judicial Council of California, www.courts.ca.gov
Rev. January 1, 2012, Mandatory Form
Family Code, §§ 3020, 3022, 3040–3043, 3100, 6340, 7604

**Child Custody and Visitation Order**
(Domestic Violence Prevention)

DV-140, Page 1 of 2
Westlaw Doc & Form Builder →

Case Number:

**(6)** ☒ **Responsibility for Transportation for Visitation**

"Responsibility for transportation" means the parent will ~~either~~ pick up the child or make arrangements for someone else to do so.

a. ☐ Mom ☒ Dad ☐ Other *(name):* CHRISTOFFER S. THYGESEN ___ take children to the visits.

b. ☐ Mom ☒ Dad ☐ Other *(name):* CHRISTOFFER S. THYGESEN ___ pick up children from the visits.

c. ☒ Drop-off / pick-up of children will be at *(address):*
TO BE DETERMINED.

**(7)** ☒ **Travel with Children**

☒ Mom ☒ Dad ☐ Other *(name):* KAILIN WANG ___ *must* have written permission from the other parent, or a court order, to take the children outside of:

a. ☒ The State of ~~California~~ **DENIED PENDING HEARING**

b. ☒ The United States of America

c. ☒ Other place(s) *(list):* NO TRAVEL WITH KAY~~SEN~~ **DENIED PENDING HEARING**

**(8)** ☒ **Child Abduction**

There is a risk that one of the parents will take the children out of California without the other parent's permission. ☒ The orders in Form DV-145, *Order: No Travel with Children,* are attached and must be obeyed. *(Fill out and attach Form DV-145 to this form.)*

**(9)** ☐ **Other Orders**

*Check here and attach any other orders to this form. Write "DV-140, Other Orders" as a title.*

**(10)** **Jurisdiction**

This court has jurisdiction to make child custody orders in this case under the Uniform Child Custody Jurisdiction and Enforcement Act (part 3 of the California Family Code starting with § 3400).

**(11)** **Notice and Opportunity to Be Heard**

The responding party was given reasonable notice and an opportunity to be heard as provided by the laws of the State of California.

**(12)** **Country of Habitual Residence**

The country of habitual residence of the child or children in this case is ☒ The United States of America or ☐ Other *(specify):* ___ .

**(13)** **Penalties for Violating This Order**

If you violate this order, you may be subject to civil or criminal penalties, or both.

**(14)** **Duration of Child Custody, Visitation, and Support Orders**

If this form is attached to Form DV-130 *(Restraining Order After Hearing),* the custody and visitation orders in this form remain in effect after the restraining orders on Form DV-130 end.

**This is a Court Order.**

**DV-145**    **Order: No Travel With Children**

Case Number:

This form is attached to DV-140, *Child Custody and Visitation Order.*

① **Name of Protected Person:** CHRISTOFFER STANFORD THYGESEN    ☐ Mom  ☒ Dad  ☐ Other*

② **Other Parent's Name:** KAILIN WANG    ☒ Mom  ☐ Dad  ☐ Other*

*If Other, specify relationship to child:* _____

## The Court Finds:

③ There is a risk that *(name of parent)*: KAILIN WANG _____ might take the children without permission because that parent *(check all that apply)*:

a. ☐ Has violated—or threatened to violate—a custody or visitation order in the past

b. ☐ Does not have strong ties to California

c. ☒ Has done things that make it easy for him or her to take the child without permission.
He or she has *(check all that apply)*:

    ☐ Quit his or her job         ☐ Sold his or her home
    ☐ Closed a bank account     ☐ Ended a lease
    ☐ Sold or gotten rid of assets     ☐ Hidden or destroyed documents
    ☒ Applied for a passport, birth certificate, or school or medical records

d. ☒ Has a history of *(check all that apply)*:
    ☒ Domestic violence
    ☐ Child abuse
    ☐ Not cooperating with the other parent in parenting
    ☐ Taking the children without permission

e. ☒ Has a criminal record

f. ☒ Has family or emotional ties to another county, state or foreign country

*Note: If (f) is checked, at least one other item in items (a)–(e) must be checked also.*

## The Court Orders:

The Court makes the orders, checked below, to prevent the parent in ③ from taking the children without permission. These orders are valid in other states and any country that has signed The Hague Convention on the Civil Aspects of International Child Abduction.

④ ☒ **Post a Bond**
The parent in ③ must post a bond for $ 100000 .

⑤ ☒ **Do Not Move Without Written Permission of the Other Parent or Court Order**
The parent in ③ must *not* move with the children outside ☒ This county ☒ California
☒ The United States
Other *(specify)*: KAILIN WANG MAY NOT REMOVE THE CHILD FROM THE SUPERVISION LOCATION.
without written permission from the other parent or a court order.

⑥ ☒ **Do Not Travel Without Permission of the Other Person or Court Order**
The parent in ③ must *not* travel with the children outside *(check all that apply)*:
☒ This county ☒ California ☒ The United States ☒ Other *(specify)*: NO TRAVEL WITH CHILD.
without written permission of the other parent or a court order. _____

**This is a Court Order.**

Judicial Council of California, www.courts.ca.gov
Rev. January, 2012, Mandatory Form
Family Code, § 3048, 42 USC § 11601 et seq.
**Order: No Travel With Children**
**(Domestic Violence Prevention)**
DV-145, Page 1 of 2
Westlaw Doc & Form Builder ➔

Case Number: _____

**(7)** ☒ **Notify Other State of Travel Restrictions**
The parent in ③ must register this order in the state of  ANY STATE _____  before the children can travel to that state for visits.

**(8)** ☒ **Turn In and Do Not Apply for Passports or Other Vital Documents**
The parent in ③ must *not* apply for passports or other documents (such as visas or birth certificates) that can be used for travel, and must turn in the following documents:  BIRTH CERTIFICATE, PASSPORTS, ANY OTHER IDENTIFYING DOCUMENTS.

**(9)** ☒ **Provide Itinerary and Other Travel Documents**
The parent in ③ must give the other parent the following before traveling with the children:
- ☒ The children's travel itinerary
- ☒ Copies of round-trip airline tickets
- ☒ Addresses and telephone numbers where the children can be reached
- ☒ An open airline ticket for the other parent in case the children are not returned
- ☒ Other *(specify)*: KAILIN WANG IS NOT ALLOWED TO TRAVEL AT ALL.

**(10)** ☒ **Notify Foreign Embassy or Consulate of Passport Restrictions**
The parent in ③ must notify the embassy or consulate of  CHINA _____  of this order and provide the court with proof of that notification within  3 _____  calendar days.

**(11)** ☒ **Foreign Custody and Visitation Order**
The parent in ③ must get a foreign custody and visitation order equal to the most recent U.S. order before the children can travel to that country for visits. The court recognizes that foreign orders may be changed or enforced depending on the laws of that country.

**(12)** ☒ **Enforcing the Order**
The court authorizes any law enforcement officer to enforce this order. In this county, contact the Child Abduction Unit of the Office of the District Attorney at:
Bureau of Investigations, 850 Bryant Street, #301, San Francisco, CA., 94103, PH: (415)551-1630, Fax: (415) 553-1410; Court Also authorizes any law enforcement officer in any state where Kayson Thygesen Wang is located.

**(13)** ☒ **Other**
KAILIN WANG MAY NOT TRAVEL AT ALL WITH KAYSON THYGESEN WANG.

### Notice to Authorities in Other States and Countries

This court has jurisdiction to make child custody orders under California's Uniform Child Custody Jurisdiction and Enforcement Act (California Family Code, part 3, § 3400 et seq.) and The Hague Convention on the Civil Aspects of International Child Abduction (42 U.S.C. § 11601 et seq.). If jurisdiction is based on other factors, they will be listed in paragraph 13 above.

**This is a Court Order.**

**DV-150**   Supervised Visitation and Exchange Order

~~DENIED PENDING HEARING~~
~~DENIED PENDING HEARING~~

Case Number:

This form is attached to    ☒ DV-110, *Temporary Restraining Order*    ☐ DV-130, *Restraining Order After Hearing*
☒ DV-140, *Child Custody and Visitation Order*

**(1)** **Name of Protected Person:** CHRISTOFFER STANFORD THYGESEN    ☐ Mom  ☒ Dad  ☐ Other*

**(2)** **Other Parent's Name:** KAILIN WANG    ☒ Mom  ☐ Dad  ☐ Other*

*If Other, *specify relationship to child:*_____

## The Court Orders:

**(3)** **Mediation, Visitation and Exchange**

a. ☐ Parties must go to mediation at: _____

b. ☒ Visitation of children is supervised.
   Parent to be supervised is:   ☒ Mom   ☐ Dad   ☐ Other *(name):*_____

c. ☒ Exchanges of children are supervised.

**(4)** **Schedule of Supervised Visits**

a. ☐ All visits as provided in the schedule on Form DV-140, item (4)(d) are to be supervised.

b. ☐ Supervised visits shall be TBD visit(s) per week of TBD hours(s) each, to be arranged with the provider.

c. ☐ Other schedule of supervised visits is attached. *(Check here and attach a sheet of paper with "DV-150, Other Schedule" for a title.)*

**(5)** **Type of Provider**

a. ☒ Professional (individual or supervised visitation center)

b. ☐ Nonprofessional

**(6)** **Provider's Information**

Name: To Be Determined. _____

Telephone number: TBD _____

Address: TBD _____

**(7)** **Costs Will Be Paid As Follows:**

☒ Mom to pay: 100 %
☒ Dad to pay: 0 %
☐ Other: _____

**(8)** **Contact With Provider**

☐ Mom to contact provider before *(date):* _____

☒ Dad to contact provider before *(date):* TBD _____

☐ Other: _____

**(9)** **The court also orders** *(specify):* SUPERVISED CONTACT ONLY AFTER FURTHER ORDER OF COURT IF THE COURT DETERMINES THAT KAILIN WANG MAY SAFELY INTERACT WITH THE PROTECTED CHILD.

**This is a Court Order.**

| Exhibit D | Holysmoke.org IP Log & Post Screenshots — Feb. 15 – Mar. 6, 2019 |
|---|---|
| **Exhibit Ref.** | Exhibit D (IP Log Component) |
| **Source** | Holysmoke.org server logs produced in response to SFPD Search Warrant (Mar. 8, 2019); T-Mobile device screenshots (Bates 000402–000406); printed desktop view of full comment thread captured 3/12/2019 (holysmoke.org/bad-business/christoffer-thygesen/). |
| **Additional Content** | Desktop-printed thread (3/12/2019, holysmoke.org/bad-business/christoffer-thygesen/): Shows Kill Baby K post under "Kailin Wang," March 6, 2019, followed immediately by a comment posted under the name "Walker Stone," also March 6, 2019: "Walker Stone stop impersonating someone you've never met and get a life." Also shows a reply posted Feb. 16, 2019 under "Walker Stone" following the first "Kelly" post: "Walker Stone there are 3 Stalking Injunctions against you in Utah. This is a clear violation. I'm reporting u." |
| **Post 1** | 02/15/19 — "Kelly," Kelly@kell.com, IP 172.68.47.104. "Kailin Wang back at it… look into her arrest in Spanish Fork Utah. She's an unfit parent." Same day: SFPD first contacts Walker Stone (1731). |
| **Post 2** | 02/17/19 — "nope," nope@nope.com, IP 108.162.219.54. Accuses Wang of probation violations and multiple arrests; predicts "easy win for Chris to get full custody." |
| **Post 3** | 02/18/19 — "Jj," Jj@jj.com, IP 172.68.34.108. "Kailin is getting locked up soon." Directs C.T.: "You're fucked. Need to get this kid away from her." |
| **Post 4** | 02/27/19 — wht91123@lycos.com. Content: "STOP IT." |
| **Post 5** | 02/28/19 — "GG," GG@gg.com, IP 108.162.219.54. Directs C.T. to "do whatever it takes." References "plenty of court documentation" about cyberstalking. (Same IP as 2/17 post.) |
| **Post 6** | 03/06/19 — "Kailin Wang," Kailin@wang.com, IP 108.162.219.228. The Kill Baby K post. Only post in the sequence using a real legal name. |
| **IP Pattern** | All six IPs are Cloudflare edge nodes. IP .54 (Cloudflare) appears on posts 2 and 5. The Kill Baby K IP (.228) is a different Cloudflare node in the same /16 block. None appear in any warrant return for Wang's accounts. |

**SIGNIFICANCE TO PSR OBJECTION**

The complete IP log is the backbone of the Section First forensic argument. Six posts over 19 days, all under aliases, all using Cloudflare VPN/proxy infrastructure — then a final post under Wang's real legal name, still through a different Cloudflare VPN node. Each post contains operational intelligence specific to C.T.'s legal strategy (Spanish Fork arrest, probation status, custody hearing timing).

Case 2:24-cr-00163-TS    Document 157-3    Filed 04/19/26    PageID.8406    Page 23



# Kelly

<mark>February 15, 2019</mark>

## Kailin Wang back at it again!!



If this guy was smart he'd look into her arrest in Spanish fork Utah. She's an unfit parent.

Did you find this review helpful? 👍 Yes

👎 No (1)

REPLY ↩



# Walker Stone

February 16, 2019

## Walker Stone



Walker Stone there are 3 Stalking Injunctions against you in Utah. This is a clear violation. I'm reporting u

000402

Case 2:24-cr-00163-TS    Document 157-3    Filed 04/19/26    PageID.8407    Page 24 of 271

🔒 holysmoke.org

woman, pressure her into an 18 week abortion, then not paying for the Abortion and ultimately abandoning his child when's he's born ?!!

Did you find this review helpful?   Yes     No



REPLY

**nope**

February 17, 2019

# Kailin Wang is probably in violation of her probation



She has been arrested many times for assault, harrassment, and cyber stalking. It's all public record. Unfit parent and this should be an easy win for Chris to get full custody.

Did you find this review helpful?   Yes     No

REPLY

000403

Case 2:24-cr-00163-TS    Document 157-3    Filed 04/19/26    PageID.8408    Page 25 of 271



**REPLY** ⬅

## Jj

February 18, 2019

## Kailin is getting locked up soon



Kailin you better cut it out or you're going back to jail babe.

Christoffer. You're fucked. Need to get this kid away from her.

Did you find this review helpful?  👍 Yes    👎 No

**REPLY** ⬅

# Rate and Write a Review on Christoffer Thygesen

Your overall rating of this report:



Case 2:24-cr-00163-TS    Document 157-3    Filed 04/19/26    PageID.8409    Page 26

🔒 holysmoke.org      ↻

Did you find this review helpful?   👍 Yes (1)

👎 No



REPLY ↩

## GG

February 28, 2019

Christoffer, you need to get this child away from Kailin. Do whatever it takes.

She is an unfit mother who does not take care of this child. It is a very dangerous situation.

There is plenty of court documentation out there about her cyberstalking, harassing, etc.

Praying for you.

REPLY ↩

Case 2:24-cr-00163-TS   Document 157-3   Filed 04/19/26   PageID.8410   Page 27 of 271

🔒 holysmoke.org



## Kailin Wang

<mark>March 6, 2019</mark>

REPLY

I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!

REPLY

# Rate and Write a Review on Christoffer Thygesen Sperm Bank

Your overall rating of this report:

★ ★ ★ ★ ★

## Title of your review:

Summarize your opinion or highlight an interesting de

000406

**40 yr. Old Preggers**

March 3, 2019

Christoffer Thygesen was Fully aware of Baby mamas charges, employment status Before intercourse and yet he still dived in No Condom and Came inside this unaware woman. How nasty, Christoffer Thygesen's known as "Tinder Man TiGGY", bangs soooo many Tinder hoes. How many kids has Christoffer Thygesen really fathered?



REPLY

**Kailin Wang**

March 6, 2019

I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!



REPLY

**Walker Stone**

March 6, 2019

**Walker Stone**
★★★★★

Walker Stone stop impersonating someone you've never met and get a life.

Did you find this review helpful?  👍 Yes (2)   👎 No (1)




REPLY

**Christoffers Abused Baby by father**

March 7, 2019

**Allan Thygesen/Terry Thygesen/Christoffer Thygesen**
★★★★★

Allan Thygesen, President of Google America's, Terry Thygesen former President of the Board Menlo Park School District, Stanford University Christoffer Thygesen former Square inc., Carnegie Mellon alum. Continues thier harassment of immigrants whom they refer to as "Chinks/Japs/Gooks", all because Christoffer Thygesen impregnated what the Thygesens refer to as a "Chink". Because Christoffer Thygesen likes to have sex w/ No Condoms spreading his seed in unaware women, he impregnated what he refers to as a " Chink Baby", and now to AVOID financial and physical responsibilities, the Thygesen clan has waged a harassment campaign to falsely report Child Abuse allegations, which Christoffer lies and made up as he has never seen his child nor provided ANY financial suppport to. That way he can Dodge child support, gain temporary custody by making up fabricated allegations of abuse then he will Murder his own son all in an attempt to cover up his deviant sexual appetite to cum inside chunks, niggers and spics. Christoffer Thygesen is a very sick, sexually deviant and disgusting man who will sleep with anything and everything but avoid all responsible and then even engage in seriously illegal behavior to Dodge child support. I'd be scared for your life and ur child's of Anyone were to be impregnated by this disgusting racist man.

Did you find this review helpful?  👍 Yes (1)   👎 No (1)



REPLY

| Exhibit E | Judge Darwin Mini Minutes & Reporter's Transcript, March 6, 2019 |
|---|---|

| Exhibit Ref. | Exhibit E |
|---|---|

| Case | In re Thygesen v. Wang, Case No. FDV-19-814465, SF Superior Court, Dept. 404 |
|---|---|

| Date & Time | Wednesday, March 6, 2019, 8:30 a.m. PST |
|---|---|

| Judicial Officer | Hon. Richard C. Darwin, Judge |
|---|---|

| Court Reporter | Vicki Gross, CSR #5525 (Certified, State of California). Transcript dated March 10, 2019. |
|---|---|

| Appearances | Petitioner (C.T.) present with Darrick Chase (Kaye-Moser-Hierbaum-Ford LLP) and Erica Johnstone (Ridder, Costa & Johnstone). Respondent (Wang): NOT SERVED, NOT PRESENT. |
|---|---|

| Orders Issued | Amended DV-110 Temporary Restraining Order and DV-116 Order on Request to Continue Hearing. Temporary sole legal and physical custody granted to C.T. No visitation for mother until further orders. Hearing continued to 4/10/19. |
|---|---|

| Critical RT Citation | RT pp. 22–23: Judge Darwin states on the record — "I am going to take off the extra section on these findings because this is being done on an ex parte basis. So I am not making any findings at this point" and "I haven't made any findings. There's been no evidence, there has not been an evidentiary proceeding, so I don't want to imply that there has." |
|---|---|

| Motion Denied | C.T.'s oral motion to substitute service via email or via Wang's parents' home address: DENIED. Personal service required. |
|---|---|

**SIGNIFICANCE TO PSR OBJECTION**

This is the most important document in Exhibit E. Judge Darwin's on-the-record statement at RT pp. 22–23 is a direct judicial disclaimer: the custody order granting C.T. sole custody was entered without evidence, without an evidentiary proceeding, and expressly without factual findings. The entire March 6 custody transfer that precipitated DCFS involvement was built on an order the court itself characterized as preliminary and non-adjudicative. This forecloses any argument that Judge Darwin's 3/6/19 order reflects a judicial finding that the Kill Baby K post was genuine.

FDV-19-814465

CHRISTOFFER STANFORD THYGESEN VS. KAILIN WANG

## MINI MINUTES FOR MAR-06-2019 08:30 AM FO

(404) 3/6/2019

Judge: Richard Darwin
Reporter: Vicki Gross #5525

Clerk: Sadie Li
Bailiff: Deputy Anasse

Petitioner present with Darrick Chase and Erica Jahnstone. Respondent not served and not present. Petitioner's oral motion to substitute service via email or via Respondent's parents' home address - DENIED. Personal service is required for restraining order requests.

Petitioner's request to continue hearing and modify temporary restraining order - granted. Petitioner granted temporary sole legal and physical custody of minor child, Kayson Thygesen Wang (DOB 11/26/18). The mother shall receive no visitations till further orders of the Court.

Court signed Amended DV-110 Temporary Restraining Order and DV-116 Order on Request to Continue Hearing. File endorsed copies provided to counsel.

Matter continued to 4/10/19 at 8:30am in Dept. 404 for Domestic Violence Restraining Order Hearing. Court finds good cause to continue matter beyond 21 days.

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

UNIFIED FAMILY LAW COURT

DEPARTMENT 404

---oOo---

HONORABLE RICHARD C. DARWIN, JUDGE

_____

IN RE THE MATTER OF            )
                               )
CHRISTOFFER STANFORD           )
THYGESEN,                      )
             PETITIONER,       )   CASE NO. FDV-19-814465
                               )
VS.                            )
                               )
         KAILIN WANG,          )
         RESPONDENT.           )
_____

---oOo---

REPORTER'S TRANSCRIPT
OF
PROCEEDINGS

WEDNESDAY, MARCH 6, 2019

---oOo---

A P P E A R A N C E S:
  FOR THE PETITIONER:        KAYE•MOSER•HIERBAUM•FORD LLP
                             BY:  DARRICK T. CHASE
                             101 California Street, Suite 2300
                             San Francisco, CA, 94111

                             RIDDER, COSTA & JOHNSTONE
                             BY:  ERICA T. JOHNSTONE
                             12 Geary St., Suite 70
                             San Francisco, CA, 94108

REPORTED BY: VICKI GROSS, CSR
        CERTIFICATE NO. 5525

MR. CHASE:  They have all received harassing communications, yes.

Let me double-check one thing.

(Discussion off the record)

THE COURT:  I am going to -- part of the DV-140, which is the child custody and visitation order, says no visits for mom, and then there is a separate supervised visits for mom.

MR. CHASE:  We prefer no visits.  We just, I wanted to make sure that I covered everything on the forms.

THE COURT:  I am going to cross out supervised visitation because I think that's jumping the gun.

Now I am going to take off the extra section on these findings because this is being done on an ex parte basis.  So I am not making any findings at this point other than he's established, and the Court already did that, found that there was domestic abuse sufficient to issue a temporary restraining order.  I don't want to make it that we've done anything beyond that.  I haven't made any findings.  There's been no evidence, there has not been an evidentiary proceeding, so I don't want to imply that there has.

So it doesn't change what the relief I'm giving you.  I just want to make sure it's clear that I am not making those findings.

MR. CHASE:  Yes.

THE COURT:  And I will sign it.

MR. CHASE:  And is the effecting order on there as well?  The granting of the orders, are these granted other orders part of this order?

THE COURT:  All I am taking off are the findings that you

23

attached and the supervised visitation component, which is inconsistent with the no visit.

So Ms. Li, I just need you to fill in the dates for those.

Okay.  And let's see if Ms. Wang shows up.

MR. CHASE:  Yes.  Thank you very much, Your Honor.


---oOo---

STATE OF CALIFORNIA          )

                             )

COUNTY OF SAN FRANCISCO    )


     I, VICKI GROSS, Certified Shorthand Reporter Licensed in the State of California, License No. 5525, Official Court Reporter of the Superior Court of the State of California, in and for the City and County of San Francisco, do hereby certify that the foregoing proceeding was reported by me and was thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceeding.

     I further certify that I am not of counsel or attorney for either or any of the parties in the foregoing proceeding and caption named, or in any way interested in the outcome of the cause named in said caption.


     Dated:  March 10, 2019

     _____

            VICKI GROSS CSR, #5525

| Exhibit E.1 | Judge Darwin Reporter's Transcript, June 25, 2019 — Darwin Reverses Himself: Sends Custody to Utah; Grants Visitation Over Thygesen's Kill Baby K Objection |
|---|---|
| **Case** | In re Thygesen v. Wang, Case No. FDV-19-814465, SF Superior Court |
| **Date & Time** | Tuesday, June 25, 2019. Contested evidentiary hearing on C.T.'s application for permanent DVRO and custody. Compared with March 6, 2019 (Exhibit E): Wang present, represented by counsel, testifying under oath, offering documentary evidence. |
| **Judicial Officer** | Hon. Richard C. Darwin, Judge — the same judge who had issued the March 6 ex parte TRO and sole custody order. |
| **Background: Who Darwin Was on 3/6/19** | On March 6, 2019, Judge Darwin granted Thygesen ex parte temporary sole legal and physical custody of Kayson — a child he had never previously met and had at one point sought to abort — based entirely on Thygesen's ex parte presentation, which included the Kill Baby K post. As documented in Exhibit E (RT pp. 22–23), Darwin simultaneously disclaimed making any factual findings: "I am not making any findings at this point"; "there's been no evidence, there has not been an evidentiary proceeding." The March 6 order was expressly preliminary and non-adjudicative. |
| **6/25/19: Jurisdictional Reversal** | After hearing Wang's sworn testimony and reviewing her documentary evidence, Judge Darwin reversed his earlier jurisdictional posture entirely. He found that Kayson was born in Utah and had lived there for approximately 70 of the 80 days between birth and filing. Darwin ruled Utah — not California — was the child's "home state" under UCCJEA, and held that long-term custody and visitation would be litigated in Utah, with California retaining only temporary emergency jurisdiction under Family Code § 3424. The same judge who had been persuaded on March 6 to issue a California custody order reversed course three and a half months later, once he had heard from both parties. |
| **6/25/19: Visitation Granted Over Kill Baby K Objection** | Most critically for the PSR: on June 25, Thygesen's counsel asked Darwin to prohibit all contact between Wang and Kayson — including Rally-center supervised visits — arguing Wang's alleged threats to "kill the child" made any contact unsafe "even at Rally," and requesting no visitation occur until Wang's "psychological well-being" was fully vetted. Darwin declined. He ordered weekly supervised visitation for Wang at Rally in San Francisco, stated on the record that Rally was a safe, hospital-based environment, and stated he was "very confident" no harm would come to the child there. Darwin simultaneously maintained temporary sole custody for Thygesen only as an emergency bridge while Utah assumed jurisdiction, and re-issued the TRO with a carve-out permitting "brief and peaceful contact for court-ordered visitation." |
| **The Inference** | A judge who genuinely believed a mother authored a post threatening to kill herself and her child does not order that mother weekly unsupervised visits at a hospital center over the father's explicit safety objection. If Darwin had actually credited the Kill Baby K narrative, the result on June 25 would have been no contact at all. Darwin's ruling is the strongest available evidence that after hearing Wang's sworn testimony and reviewing the record, he did not treat the Kill Baby K post as a credible predicate to bar her from her child. |
| **Taken Together With Exhibit E** | Exhibit E establishes that Darwin's March 6 order was expressly non-adjudicative and made no factual findings. Exhibit E.1 establishes what the same judge did when he heard both sides: (1) reversed his California jurisdictional posture; (2) transferred long-term custody and visitation to Utah; and (3) granted visitation at Rally over Thygesen's Kill Baby K safety objection. The March 6 ex parte order cannot be re-packaged as a judicial endorsement of the Kill Baby K post. The June 25 ruling |

|  | confirms the opposite. This is not 'deference to a state judicial finding'; it is deference to an admitted non-finding, followed by a functional rejection of the post's credibility by the only judge who actually heard adversarial evidence on it. |
|---|---|

**SIGNIFICANCE TO PSR OBJECTION**

Exhibit E.1 is the evidentiary complement to Exhibit E and together they close the argument that a California court 'already found' the Kill Baby K post real and dangerous. Exhibit E establishes Darwin made no factual findings on March 6 — his own words. Exhibit E.1 establishes what the same judge did once he heard from both parties: reversed himself on jurisdiction, sent the custody dispute to Utah, and granted Wang weekly contact with her child over Thygesen's Kill Baby K safety objection. Thygesen had asked Darwin to treat the post as so dangerous that no contact of any kind was safe; Darwin's response was to order weekly visits at a hospital center and state on the record he was 'very confident' no harm would come to the child. The June 25 ruling is a functional rejection of Thygesen's Kill Baby K narrative by the only judge who actually heard sworn adversarial testimony on it. The government's effort to re-package Darwin's March 6 ex parte order as a considered judicial endorsement of the HolySmoke post is flatly inconsistent with what Darwin said and did on June 25. This is not 'deference to a state judicial finding' — it is deference to an admitted non-finding, followed by a functional rejection of the post by the court that mattered most.

*Document follows on subsequent pages.*

1

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

UNIFIED FAMILY LAW COURT

DEPARTMENT 404

---oOo---

HONORABLE RICHARD C. DARWIN, JUDGE


CHRISTOFFER STANFORD THYGESEN,          )
                                        )
            PETITIONER,                 )
                                        )COURT NO. FDV-19-814465
     vs.                                )
                                        )
KAILIN WANG,                            )
            RESPONDENT.                 )
_____ )

**REPORTER'S TRANSCRIPT Of PROCEEDINGS**

**JUNE 25, 2019**

APPEARANCES OF COUNSEL:
     **FOR PETITIONER:**
     KAYE, MOSER, HIERBAUM
     BY:  DARRICK TRACEY CHASE
     101 California Street, Suite 2300
     San Francisco, California  94111

     RIDDER, COSTA & JOHNSTONE LLP
     BY:  ERICA JOHNSTONE
     12 Geary Street, Suite 701
     San Francisco, California  94108

     SUCHERMAN & INSALACO LLP
     BY:  MICHELENE INSALACO
     100 Spear Street
     San Francisco, California  94105

     **FOR RESPONDENT:**
     LAW OFFICES OF SAMI MADDEN MASON
     BY:  SAMI MADDEN MASON
     141 Bryce Canyon Road
     San Rafael, California  94903


Reported By:  Ann Delgado, CSR No. 11185

2

**INDEX OF WITNESSES**

**WITNESSES:**                                                **PAGE**
**KAILIN WANG**
Direct Examination By Ms. Mason                               31
Cross-Examination By Mr. Chase                               52
Redirect Examination By Ms. Mason                            69

**EXHIBIT INDEX**

**PLAINTIFF'S EXHIBITS:**

| NO. | DESCRIPTION | ID | EVD |
|-----|-------------|-----|-----|
| A | Birth Certificate | 59 | 59 |
| C | Emails | 64 | 64 |
| D | Email containing New York address | 64 | 64 |
| H | 1/24/19 email | 65 | 65 |

**RESPONDENT'S EXHIBITS:**

| NO. | DESCRIPTION | ID | EVD |
|-----|-------------|-----|-----|
| A | Amended birth certificate | 70 | 71 |
| O | Photographs | 51 | 51 |

and authorities, which were very helpful.  I've reviewed them, and I wanted to make sure I could come in and be ready to make some rulings.

Here is my ruling on the threshold question that Ms. Insalaco just raised of whether procedurally I can revisit the order I made in March regarding this being home state and so I can thus being able to issue those custody and visitation orders as I did back in March.

Keep in mind that was an ex parte order.  It was not a contested proceeding.  So it was issued without evidence from one side, which is typical for DVROs.  That's how it works.  Like almost all orders issued on an ex parte basis and certainly those under the Domestic Violence Prevention Act, it's a temporary order pending contested evidentiary hearing.  That's what happened on March 6.

At the evidentiary hearing, which was scheduled for, I believe, May 8, after it was continued once, the responding party may challenge any or all components of that ex parte order -- stay away, move-out, if it's ordered, custody, visitation.  And they can challenge it on any basis on an evidentiary basis -- legal basis and jurisdictional basis. That's what the evidentiary hearing is for.

I don't think you waive your right to challenge any component of an order that was issued ex parte by failing to file a motion for reconsideration or appeal.  And that applies to whether the -- I mean, that applies to any component of a temporary restraining order.

Remember, that temporary order contains stay-away orders,

7

personal conduct orders, and the visitation and custody orders.  I was asked to come back here to have a hearing -- evidentiary contested hearing on all of those issues.

So the very first time the respondent appeared -- actually, the day before, on the 7th, she said, "I will be challenging, among other things, the jurisdictional basis of that TRO."

So I find she hasn't waived her right to challenge custody and visitation, either on the merits -- you know, what's in the best interest of the child -- or on jurisdictional basis on which that order was issued.  She has the right to present evidence on that critical issue.

And I would analogize it to a restraining order that was issued against someone who's going to contest personal jurisdiction and they were served in New York and said, "Look, I was never in California.  You have no personal jurisdiction against me."  That person can specially appear.  It's not an exact analogy, but close -- having a hearing and saying, "You didn't have jurisdiction to that issue."

So I don't think she has waived her right to challenge jurisdiction.  I think in that she can present evidence on whether on February 15, 2019, when the issue in this action was initiated, California really was the home state or Utah was the home state.  And there are plans for that evidence to be presented today, and I will make a decision this afternoon as to whether California or Utah is home state.

So that's -- I'm happy, if you think I got some component of that analysis wrong -- I know that's not consistent with

8

what petitioner is asking for, and I invite you to tell me now, because that's the way I see it.  Just like any other component of that TRO, she can challenge it at the evidentiary hearing, which is what we are doing.

MS. INSALACO:  So respectfully, I do believe the Court is --

THE COURT:  What did I miss?

MS. INSALACO:  You're missing the fact that under UCCJEA, when you make a custody determination, that is a final finding.  And if you look at Family Code 3402, it says -- this is the California version of the UCCJEA -- "A child custody determination means a judgment, decree, or other order, and it includes a permanent, temporary, initial or modification order."

So when you make a temporary order, if you make a custody order as part of that, you're making a decision that you have jurisdiction.  You can't do it part way.  You can't say, "Well, I'm going to make a custody order and then decide jurisdiction later."  You have to decide jurisdiction.  You have it, and then you go ahead and make the custody order, which this Court did.  And that order is -- that decision is, under the code, a custody determination for purposes of UCCJEA.

And once you have done that, this is the state that has asserted jurisdiction.  And unless you -- unless that decision is properly challenged, we submit it's final.  And if a person from New Jersey got served with papers there and the judge made a ruling against him or her and then they were served

with it, they would typically have to do something.  They would challenge that order under the procedural civil rules.

They would come to court and ask to have it be found void or repeal it or ask to reconsider it.  You can't just sit there and not do anything.  She was personally served on June 18.

THE COURT:  March 18.

MS. INSALACO:  Yes, sorry.  March 18.

So she was clearly on notice of the order at that point.  She had an attorney at that point.  She didn't make any effort to seek review of it in any way.

THE COURT:  So here is what bothers me about that argument, because I thought about all of this all day yesterday AND all day last night.

It would -- I can't see how due process is served if a jurisdictional decision under UCCJEA can be made and considered to be final with only evidence presented by one side.

That's -- because it -- I know how it played out here, and it just so happened she called in.  But literally anybody can file a DVRO request, and they are always heard.  I hear them every day.  They land on my desk, and they are uncontested.  It's just the application and a request for a temporary restraining order and whatever evidence they presented.

And that would be whether it happened the way it did here or even in that situation where I say, "Okay.  Looks like the kid is in California or born here," and I check the box saying

you get your custody visitation orders, and that's done, that's a done deal, even though if you look at the papers that respondents are served with, they get the notice of hearing, they get something called a DV-120 information packet that says if you disagree with these orders here is how you come in and contest it.

And they would say, "Okay.  Well, clearly the judge got it wrong on that custody part; so I will come in and follow the directions of my papers I just got served with and then to be told "Sorry.  You're too late on that one issue.  You had to do something completely different that is not mentioned in these papers."

And that's why I struggle with this idea that my determination on March 6 with one side here and the other side not was a final determination, and at this point it's final forever absent an appeal that she would not even know to make.

MR. CHASE:  She could have filed a motion to reconsider. She could have filed a motion for a new trial.  She had an attorney making UCCJEA arguments in Utah.  So that attorney clearly knew the rules.  And you have to keep in mind on the fact pattern you described, the original order was filed and there was actual notice.  She chose not to come here for the hearing.  She called in and Your Honor said from the bench, "Oh, she knows this is happening."

She knew it was happening.  It's not like this was purely ex parte on the very first appearance where someone comes in completely ex parte, no notice, and you make a decision then.

15

to be determined -- that this child was a resident of this state from the date of birth until the filing of the initial action, which I believe was around February 15.

And that's the evidence that we need to put on here today. And I think we -- all of us have briefed it all for you. So I don't think we need to go back into that argument.

THE COURT: Okay. Look, in my view this process is working, actually, the way it's supposed to, which is I am presented with one side's papers, and I make what is called an ex parte order and set it for an evidentiary hearing where the ex parte order is either continued on a long-term basis, modified or denied. But the respondent is able to present any and all evidence and arguments they want to at the evidentiary hearing, which is what we are doing.

I did not make on a contested basis custody and visitation orders. I made it on the basis of evidence that was presented by one party. There was no proof of service. Otherwise I would have proceeded with the full DVRO hearing that morning if I thought that I had the basis for doing so. It was an ex parte proceeding, and I believe that respondent has not waived her rights to challenge any part of that.

So today we're going to proceed with the presentation of evidence on the question of what was the child's home state as of February 15, 2019. And I -- I believe the burden of establishing that is on the petitioner who is asserting that California is the home state as the person seeking issuance of those orders.

And just so we're clear, if I conclude that California is

16

not the home state and that Utah was the home state, I just want you to understand that what I would do is exercise emergency jurisdiction to keep the current orders in place, however arrange a call with the judge in Utah and let them know the decision that I made so that custody and visitation proceedings can -- I think they are currently stayed in Utah -- can proceed there.

So that doesn't mean the DVRO doesn't go forward here. It will, and it will cover everything except custody and visitation. But I would keep -- I'm not -- just so we have a custody and visitation order in place until another decision is made in Utah.

This is, again, if I conclude Utah is the home state. I would exercise emergency jurisdiction under 3424, which I believe I have because the child is in the state now and I have already concluded, at least on a temporary basis, that the child needs protection. But I would then proceed as required by the Family Code, to call the judge, Judge Low in Utah.

MS. INSALACO:  Can I make a couple of comments?  The issue is whether there's a basis for jurisdiction under the UCCJEA.  Home state was one of four.  We argued two different bases could apply.  Number two, if this Court found that Utah was the home state, there would be a different proceeding in Utah where Mr. Thygesen would ask the court there to decline jurisdiction in favor of California because of inconvenient forum.

THE COURT:  Which he would be entitled to do.

MS. INSALACO:  -- unjustifiable actions.

THE COURT:  Sure.  It wouldn't be the end of the story, but that's what would happen next.

MS. INSALACO:  I have one other housekeeping question. We are requesting that the Court remove from the public file the photos and private information about Kayson.  There has been most recently a photo of his genitals when he was born. There's all sorts of medical information about him.  There's all sorts of extremely confidential, private information that has been put into the file relating to him -- his birth certificate, welfare applications.

THE COURT:  Let me stop you.  Have you made this request in writing or just something you're just asking me to do right now?

MS. INSALACO:  We're requesting either that you do it now just based on the clear evidence that it's necessary and under the -- you may be aware that effective January 2018, there is a new section of the Family Code to permit the court to put information about a minor in a DV case into the confidential section of the file.

THE COURT:  Right.

MS. INSALACO:  You have the --

THE COURT:  Let me just -- I prefer to get it in writing so I know exactly which -- it's a big record -- and I can find things that you want me to deem confidential, rather than trying to dig through it in this hearing because we have limited time.  I'm not opposed to what you're asking.  But there may be a picture with a kid and a rattle.  I don't think

Ann Delgado, CSR No. 11185

18

that has to be confidential unless you tell me why it should. But medical information and that sort of thing generally does have to --

MS. INSALACO:  We also would like to ask that the Court would modify the caption of the case to use the parties' initials because that's the best way to be sure that Kayson's information isn't located down the road when he is older.  And if you prefer a separate -- I have a brief I have prepared, but if you prefer a separate motion, we can do that.  I don't know if respondent opposes the request.

THE COURT:  Does respondent oppose the request to modify the caption to be the initials rather than full names?

MS. WANG:  They're probably changing his name without my permission, but okay.

MS. MASON:  I'm sorry, Your Honor.  What was the question?

THE COURT:  To modify the caption to initials rather than full names, particularly of Kayson.

MS. MASON:  I'm sorry.

THE COURT:  This is why I think it has to be in writing. I want them to have a better understanding of what you're asking the Court to do and identify specific materials in this big record that you want sealed or deemed confidential.

MS. MASON:  Can we deal with that as the evidence gets presented?

THE COURT:  Well --

MS. INSALACO:  These are things that are already in the court file.

THE COURT:  Right.  So I'm not ruling on it.  I just want -- I don't want to try to do it as an oral motion.

MS. INSALACO:  Could we set a hearing date?

THE COURT:  Sure.  But let's do that after we are done with the evidentiary portion of this.

So the burden is going to be on the petitioner to establish California is the home state.

And let me just ask counsel, how do you want to proceed?  Do you have witnesses?  Do you want to -- you asked to stipulate certain documents into evidence.  How would you like to --

MR. CHASE:  I have both a direct and a cross-examination of Ms. Wang.

THE COURT:  Okay.

MR. CHASE:  I would like to reserve that.  I would like to reserve my full 776.  I do have questions that I want to ask her with respect to both evidence I want to go in and that I think bears on her credibility in this case.  So if I could reserve that until after she testifies.

THE COURT:  All right.  Do you have any evidence to present in your case in chief?

MR. CHASE:  Mr. Thygesen submitted a declaration with respect to his --

THE COURT:  To California?

MR. CHASE:  Yes, the baby being subject to -- Mr. Thygesen has had the baby since March 7, and we would be willing to submit his testimony there and prior testimony that is on the record without the need to put him up on the stand.

MS. MASON:  Yeah.

THE COURT:  But having taken everything into account and having listened to respondent's testimony, while I have some difficulty with her credibility on a number of issues, I do find that Utah is the home state.  I think Kayson was born there.  He lived there for, by my count, about 70 days out of 80, between his birth and the date that this action was initiated in mid February.  There was some indication that he -- from emails -- that he was back and forth between other states, but none of the other evidence suggests that.

So my conclusion is that custody and visitation issues will have to be litigated and decided by a Utah court.

So as I mentioned earlier, again, I make that determination based on everything that I heard and notwithstanding some concerns I have about the credibility of the respondent's testimony and some contradictory emails and communications, I think a great weight of the evidence supports that the child was in Utah almost continuously up until the day he was -- when this action was initiated.

So as I mentioned earlier, at the moment there is no custody and visitation order in Utah.  There is only custody and visitation order here.

MR. CHASE:  There actually is one out of Utah.

THE COURT:  For now I'm keeping -- I'm keeping the existing custody and visitation order in place under emergency UCCJEA jurisdiction under Family Code Section 3424 until the matter is picked up by the Utah court.

I will grant the previous request by respondent for

77

supervised visitation at Rally, which I will grant pending hearing on the restraining order. It's been a long time. I think a Rally supervised visit will allow respondent to see the child in a safe setting. So we will get that order out.

MS. MASON: Can the decision on child custody in Utah -- mother can have --

THE COURT: Supervised visitation.

MS. MASON: Okay.

THE COURT: At Rally in San Francisco.

MS. MASON: What is the name?

THE COURT: It's called Rally. It's up on the corner of Hyde and Bush, the Rally Project.

So petitioner will continue to have sole legal and physical until this -- until the matter is taken up by the Utah court. Supervised visitation once a week for respondent at the Rally Project. I am going to communicate with the Utah court as quickly as possible to let them know about my decision on home state. And from that point forward, it will be up to the parties and counsel to arrange that litigation there.

MS. MASON: How long --

THE COURT: I'm also reissuing the temporary restraining order. It will continue to exist subject to modification of allowing brief and peaceful contact for court-ordered visitation so the respondent can have supervised visitation, and it will include the supervised visitation order.

MS. MASON: How long will those visits be?

THE COURT: Rally provides for one-hour long visits. So

the parties are ordered to register.  You have to do an intake process with Rally to allow supervised visits to begin.  I'm going to have the petitioner for the moment -- given the financial inequality -- petitioner will pay the fees for the supervised visitation.  They're not significant.

And at this point, the parties are going to have to go back to 405 to set a trial; right?  What is going to happen on the trial date for the actual --

MS. INSALACO:  We would like Your Honor to set the trial date.  We would like to proceed and get a trial date.

THE COURT:  The trial date is going to be in 405.  This is going to be a long trial, just evidenced by how this proceeding went.  There is going to be a lot of testimony.  My guess is -- I can't -- if we were to do it in 404, we would string you out over six-and-a-half days -- afternoons -- over the course of three months and your trial would be in November.  I don't think anyone wants that.

MS. INSALACO:  I submit that once we have the subpoenaed documents it will be completely clear who posted the threatening posts, and it will be quite simple because that's the whole basis of --

MS. WANG:  Plus impersonation posts made by Christopher.

THE COURT:  Okay.  Look, I don't think I can try this case.  I don't think -- we have a separate trial department solely for longer trials.  This is going to be a longer trial.  So I can't do it in 404.  I can't give you a trial date anytime in the near future, and it will be a lots and lots of

79

afternoons.  It just doesn't make sense.  It'll be broken up by days and days.  I think you need to go back to 405.

MS. INSALACO:  Can you give us a date to go back to 405?

THE COURT:  We can go off the record.

(Discussion off the record.)

THE COURT:  Back on the record.

MS. INSALACO:  We would request there not be visits until the DV hearing, because there are threats to kill the child.  And whether they are at Rally or not, the child is potentially at risk until the court has heard the evidence and assessed, perhaps, the psychological well-being of the respondent.  It could put the child at risk to have any visits even at Rally.

THE COURT:  That argument was made the last time we were here.  And I have ordered Rally supervised visitations in other situations.  I'm very confident that they are well-equipped to make sure no harm will come to your son.  So I think you should feel confident.  It's a hospital.  There is staff everywhere, and the whole visit is observed.  So I am confident that it is a safe environment for those visits.  Okay.  Off the record.

(Proceedings concluded.)

80

STATE OF CALIFORNIA                        )
                                           )   SS.
COUNTY OF SAN FRANCISCO                     )
                                           )

REPORTER'S CERTIFICATE

          I, ANN DELGADO, Certified Shorthand Reporter of the Superior Court of the County of San Francisco, State of California, hereby certify that the foregoing is a full, true, and correct transcript of the proceedings had in the above-entitled matter, and that the same is a full, true, and correct transcription of my shorthand notes as taken by me in said matter.

Dated this July 3, 2019


                                    *ann delgado*
                                    ANN DELGADO, CSR NO. 11185


Ann Delgado, CSR No. 11185

| Exhibit F | Utah 911 Dispatch Transcript — March 6, 2019, 2:12 p.m. MST |
|---|---|

| Exhibit Ref. | Exhibit I (911 Call Component) |
|---|---|

| Case Caption | Kailin Wang v. Christoffer Stanford Thygesen, Case No. 194400718 PT, Fourth Judicial District, Utah County |
|---|---|

| CAD Number | C6050525 |
|---|---|

| Date & Time | March 6, 2019, 14:12:23 MST (approximately 6 hours after the 8:30 a.m. SF Superior Court ex parte hearing) |
|---|---|

| Transcriber | Natalie Lake, OCT, 152 E. Katresha St., Grantsville, UT 84029, (435) 590-5575 |
|---|---|

| Participants | Mark Brenzinger (Hillard Heintze, Chicago, 847-306-2220 / backup 312-229-9806); Darrick Chase (C.T.'s attorney, Kaye-Moser-Hierbaum-Ford LLP); Terry Thygesen (C.T.'s mother, provides vehicle/license plate details) |
|---|---|

| Subject of Call | Brenzinger reports Holysmoke post as "a threat posted two hours ago." States Wang is "mentally unstable" and has "just got bad news." Requests emergent welfare check at 2481 Fairway Drive, Spanish Fork. |
|---|---|

| Key Chase Quote | Darrick Chase states directly on the 911 call: "We want to get the baby at the time we do the welfare check." (Transcript p. 9.) |
|---|---|

| Brenzinger Quote | Brenzinger: "We have a court order coming out of California that's allowing … law enforcement to go and remove a child that is at risk right now and hand that child over to the biological father, who is en route." (Transcript p. 2.) |
|---|---|

| Vehicle Info | Terry Thygesen provides: gold BMW SUV, B538EA; red Lexus SUV, D569XT. "We believe the baby seat is usually in the red Lexus." |
|---|---|

**SIGNIFICANCE TO PSR OBJECTION**

The 911 call transcript documents the operational execution of the custody transfer: Brenzinger (paid by C.T.'s family), Chase (C.T.'s attorney), and C.T.'s mother coordinating in real time to convert the Holysmoke post into an emergency welfare check and simultaneous child removal. Chase's statement "we want to get the baby at the time we do the welfare check" makes clear this was not a genuine safety concern — it was a planned custody transfer using law enforcement as the delivery mechanism. The Kill Baby K post was the stated predicate.

IN THE FOURTH JUDICIAL DISTRICT COURT
OF UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| KAILIN WANG, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 194400718 PT |
| | ) |
| CHRISTOFFER STANFORD THYGESEN, | ) |
| | ) |
| Respondent. | ) |

911 Call
Electronically Recorded on
March 6, 2019

Transcribed by: Natalie Lake, OCT

152 E. Katresha St.
Grantsville, UT 84029
Telephone: (435) 590-5575

-1-

P R O C E E D I N G S

(Electronically recorded on March 6, 2019)

OPERATOR:  March 6, 2019, 14:12:23.

911 OPERATOR:  Police and fire dispatch.

MR. BRENZINGER:  Hi.  My name is Mark Brenzinger. I'm calling from Chicago.  I work at a private security risk management firm, and we have an emergent situation in your jurisdiction.  I was hoping to speak with -- we've been working with your constable in the area, and he's been working with a sergeant, and we have some information we want to share with you in a fresh court order.  Is there any way you can get connected to a watch commander or a sergeant?

911 OPERATOR:  For what city, sir?

MR. BRENZINGER:  Spanish Fork's.

911 OPERATOR:  Let's see.  Yeah, I can go ahead and get your information and then ask a sergeant to give you a call back.

MR. BRENZINGER:  Okay.  The long and the short of it is we have a court order coming out of California that's allowing -- it's allowing law enforcement to go and remove a child that is at risk right now and hand that child over to the biological father, who is en route.

911 OPERATOR:  Okay.  Sir, can I have your phone number?

MR. BRENZINGER:  Yes.  It's 847-306-2220.

-2-

911 OPERATOR:  Again, what is your first and last name again?

MR. BRENZINGER:  First name Mark, M-a-r-k, last name Brenzinger, B as in boy, r-e-n, z as in zebra, i-n-g-e-r.

911 OPERATOR:  Okay.  What agency did you say you're with, Mark?

MR. BRENZINGER:  Hillard Heintze, H-i-l-l-a-r-d, H-e-i-n-t-z-e.  We're based in Chicago.

911 OPERATOR:  Okay.  That's a private investigation firm, you said?

MR. BRENZINGER:  Private investigation firm, yes, ma'am.

911 OPERATOR:  Okay.  Is the 847 number a good call back number for Hillard Heintze?

MR. BRENZINGER:  It's a good call back number for me. I'll give you a back up number of 312-229 --

MS. TERRY THYGESEN:  9806.

MR. BRENZINGER:  -- 9806.

911 OPERATOR:  Okay.  Mark, could you just update for me, please, the -- I'm sorry, that's not necessary.  I'll just take that out.  Okay.  I'm going to have a sergeant from Spanish Fork give you a call back.

MR. BRENZINGER:  Okay.  Can we make this -- with all due respect -- a priority?  We believe our subject is mentally unstable, has just got bad news, and she just posted a threat

-3-

me give you both of them.  Hold on one second.

911 OPERATOR:  Do you guys know the baby's name and what sex the baby is?

MR. DARRICK CHASE:  Yes.  Baby's name is Kayson, K-a-y-s-o-n.  His middle name is Thygesen, T-h-y-g-e-s-e-n, last name Wang.  He's a boy.  His birth date is 11/26/2018.

911 OPERATOR:  Okay.

MR. DARRICK CHASE:  He's a white baby.  Well, as far as we know.

911 OPERATOR:  Okay.  Then the vehicle information for Kailin?

MS. TERRY THYGESEN:  Give me one second.  I'm opening it up.  Okay.  It's a -- there are two cars.  One is a gold BMW SUV.  The license plate is Boy, 5, 3, 8, Edward, Apple.

911 OPERATOR:  Okay.

MS. TERRY THYGESEN:  I'll read that back to you, Boy, 5, 3, 8, Edward Apple.  The second car is a red Lexus SUV.  The license plate is David, 5, 6, 9, X-ray, Tango.  We believe the baby seat is usually in the red Lexus, FYI.

911 OPERATOR:  Okay.  So I have all the information that I need.  We're going to send out for us to do a welfare check, and then I've put in here a note for someone to contact you by phone after they've made contact.

MS. TERRY THYGESEN:  Can we do that before just to give more information?

-8-

911 OPERATOR:  Actually, our main priority right now is to make sure everything is okay, and then we'll have someone give you a call when they're done.

MR. BRENZINGER:  Okay.  Then we can send over the orders at that time as well, if that's okay?

911 OPERATOR:  Okay.

MR. DARRICK CHASE:  We want to get the baby at the time we do the welfare check.

911 OPERATOR:  When the officer does call you, he'll likely be calling from a blocked or a private number, so just look out for that.

MR. BRENZINGER:  Yes, ma'am.  Thank you.

911 OPERATOR:  Okay.  Thank you.

MS. CHASE:  Thank you.

911 OPERATOR:  Okay.  Bye-bye.

MR. DARRICK CHASE:  Bye.

(Conclusion of 911 call)

-9-

## REPORTER'S CERTIFICATE

STATE OF UTAH           )
                        ) ss.
COUNTY OF TOOELE        )

I, Natalie Lake, a Notary Public in and for the State of Utah, do hereby certify:

That this proceeding was transcribed under my direction from the transmitter records made of these meetings.

That I have been authorized by Beverly Lowe to prepare said transcript, as an independent contractor working under her court reporter's license, appropriately authorized under Utah statutes.

That this transcript is full, true, correct, and contains all of the evidence and all matters to which the same related which were audible through said recording.

I further certify that I am not interested in the outcome thereof.

That certain parties were not identified in the record, and therefore, the name associated with the statement may not be the correct name as to the speaker.

WITNESS MY HAND AND SEAL this 11th day of May 2020.

My commission expires:
January 9, 2024

Natalie Lake
NOTARY PUBLIC
Residing in Tooele County

Beverly Lowe, RSR, CCR



Natalie Lake
Notary Public, State of Utah
Commission # 709897
My Commission Expires
January 9, 2024

| Exhibit G | Dr. Mark Brenzinger — Hillard Heintze Profile & Psychology Today Listing |
|---|---|

| | |
|---|---|
| **Exhibit Ref.** | Supplemental / Exhibit F (911 Call) Context |
| **Individual** | Mark Brenzinger, PsyD — Clinical Psychologist, Licensed in Illinois |
| **Practice** | Midwest Behavioral Risk Management, P.C., 869 East Schaumburg Road, Suite 252, Schaumburg, IL 60194. Tel: (847) 603-4745. |
| **Firm (on 911 Call)** | Hillard Heintze — private security/risk management firm based in Chicago. Retained by C.T.'s family. |
| **Specialties** | Violence Risk and Threat Assessment (Workplace, K-12, University, Private Individuals); DCFS Evaluations; Psychosexual Risk Evaluation; Fitness for Duty (public safety and corporate personnel). IL-FOID Mental Health Certification. |
| **Profile Date** | Psychology Today profile captured September 7, 2019 (Bates 000419–000420). |
| **Role in Events** | Brenzinger placed the 3/6/19 911 call that triggered the DCFS welfare check and child removal. He described Wang's post as evidence she is "mentally unstable" — a professional risk assessment based solely on an anonymous Holysmoke post of unknown provenance. |

**SIGNIFICANCE TO PSR OBJECTION**

Brenzinger's profile establishes that C.T.'s family retained a specialist in violence risk assessment and DCFS evaluations specifically to operationalize the Holysmoke post as an emergency child-removal predicate. His credentials meant that when he called 911 and characterized Wang as "mentally unstable," dispatchers and Spanish Fork PD treated the assessment as coming from a credentialed forensic psychologist. The post's evidentiary value as a "threat" was laundered through Brenzinger's professional authority without any independent verification of its authorship.

Case 2:24-cr-00163-TS   Document 157-3   Filed 04/19/26   PageID.8445   Page 62 of 271

City, Zip or Name



# Mark Brenzinger
Psychologist, PsyD

|                 |                  |
| :-------------: | :--------------: |
|   **Email Me**  | (847) 603-4745   |



(847) 603-4745

**Email Me**

---

Midwest Behavioral Risk Management, P.C.
869 East Schaumburg Road
Suite 252
Schaumburg, Illinois 60194
**(847) 603-4745**

---

I provide Forensic and Clinical Evaluations / Consultation Services in the Chicagoland area and Nationally. Psychological Evaluation Services: Psychosexual Risk Evaluation (Pre-Trial, Post-Conviction / Pre-Sentence, Post-Sentence and for DCFS); Sex Offender Evaluation (State and Federal Cases); Psychosexual Evaluation (Sexually Problematic Behaviors / Addiction); Violence Risk and Threat Assessment (Workplace, K-12, University, and Private Individuals); Mental Health Certification for Firearm Possession Evaluation (IL-FOID). Clients include adult and adolescent males and females.

I also provide Fitness for Duty Evaluation (Public Safety Personnel and Corporate Employees); Independent Medical Examination (IME); and General Evaluation (Mental Status, Cognitive Functioning, Psychopathology, Substance Use).

I hold the following Illinois Licenses: Clinical Psychologist, Sex Offender Evaluator and Treatment Provider. I am a Member of the Cook County SOMB; Approved Provider for

| Exhibit H | Utah DCFS Case Records, Case #2503301 (Mar. 6 – Mar. 20, 2019) |
|---|---|

| Case | Utah DCFS Case #2503301 (Child: Kayson T. Wang) |
|---|---|

| Documents Included | DCFS Intake Narrative (3/6/19); Allegation Narrative; Staffing Notes; Activity Logs (3/6/19 – 3/20/19); Terry Thygesen email to DCFS caseworker Robbie Adams (9 Mar. 2019); Terry Thygesen email to Robbie Adams (10 Mar. 2019); CW Webb voicemail log (9 Mar. 2019) |
|---|---|

| Third-Party Contacts | Intake form lists: Mark Brenzinger (Clinical Psychologist) and Darrick Chase (attorney) as the third-party referents. Wang's parents listed as "Other(s) in Home" — "Referent doesn't know their names." |
|---|---|

| Allegation Narrative | Summarizes DCFS intake: "mother posted on social media … was going to kill herself and baby if [father] doesn't start paying child support." Notes C.T. "will arrive around 9:42 pm" from San Francisco with protective order signed 3/6/19 by Darrick Chase. Referent notes camera in front window and blinds down. |
|---|---|

| Terry Thygesen Email (3/9/19) | To Robbie Adams (DCFS caseworker): "I expect that Christoffer will retain sole physical and legal custody of his son forever." States SFPD "expects the DA will be pressing felony charges against Ms. Wang very soon." |
|---|---|

| Terry Thygesen Email (3/10/19) | Update on baby's health checkup in Park City; notes strong father-son bond; "the climate is less dry" in California. No discussion of safety concerns for baby. |
|---|---|

**SIGNIFICANCE TO PSR OBJECTION**

The DCFS case records expose the full structure of the March 6 operation: (1) DCFS was provided Wang's location by C.T.'s team before they could knock; (2) the allegation narrative was written entirely from Brenzinger/Chase's account — no independent verification; (3) Terry Thygesen's 3/9/19 email to the DCFS caseworker reveals the intended outcome ("custody forever") and confirms SFPD was actively sought as a partner in a criminal prosecution. Her 3/10/19 email discusses climate, not safety — the child was never at risk; the operation was a custody transfer.



## DEPARTMENT OF HUMAN SERVICES

*ANN SILVERBERG WILLIAMSON*
*Executive Director*

**State of Utah**

GARY R. HERBERT
*Governor*

SPENCER J. COX
*Lieutenant Governor*

## DIVISION OF CHILD AND FAMILY SERVICES

*DIANE MOORE*
*Acting Director*

September 18, 2019

Christoffer Stanford Thygesen
294 Ewing Terrace
San Francisco, California 94118

Dear Requester:

Your request for records from the Division of Child and Family Services has been reviewed and completed. I have denied in whole or in part, your request for these records. Please see remarks below for explanation regarding your specific records request.

## PARTIAL DENIAL

❑ Pursuant to Utah Code Ann. § 62A-4a-412, the following information has been redacted (blocked out):

   ☒ The names, addresses, telephone numbers, and specific information that could identify or lead to the discovery of the identity of the person(s) making the initial report (referent). (UCA §62A-4a-412(3)).

   ❑ Information received from the Bureau of Criminal Identification.

   ☒ The names, addresses, telephone numbers, and specific information that could identify or lead to the discovery of the identity of person(s) involved in the investigation of the report. (UCA §62A-4a-412(3)).

   ❑ Information that could impede a criminal investigation. (UCA §62A-4a-412(3)).

   ❑ Information that could endanger a person's safety. (UCA §62A-4a-412(3)).

❑ Pursuant to Utah Code Ann. §63G-2-202, a record contained in the DCFS Management Information System that is found to be unsubstantiated, unsupported, or without merit may not be disclosed to any person except the person who is alleged in the report to be a perpetrator of abuse, neglect, or dependency.

❑ Pursuant to Utah Code Ann. § 63G-2-304, information classified as controlled has been withheld; this includes records containing medical, psychiatric or psychological data about an individual and the party who has created the record has identified it as being confidential.

❑ Pursuant to 34 C.F.R. § 99.10; 34 C.F.R. § 99.4, educational information has been withheld.

☒ Pursuant to Utah Code Ann. § 63G-2-302, information classified as private has been withheld. Other people's personal information.

❑ Pursuant to Utah Code Ann. § 63G-2-305, information classified as protected has been withheld.

---

❑ Pursuant to Utah Code Ann. § 42 C.F.R., Part 2, you do not qualify to receive the records.

☒ Pursuant to Utah Code Ann. §63G-2-305(17), you do not qualify for records that are subject to attorney client privilege.

Family Functioning Summary

Parental resilience: Kailin is currently sturggling with mental illness.
Social support: Both Kailin and Christoffer have the support from their parents who they have been able to lean on in times of need.
Concrete supports: The parents are aware of the resources that are available to them.
Knowledge of parenting and child development: Christoffer is aware of Kayson and is needs and has been consistent in taking Kayson to see his pediatrician.
Social emotional competence of children: Kayson is only a few months old but is meeting the developmental milestones for his age.

## Referral Narrative

| | |
|---|---|
| Person Narrative: | Special Considerations: Please call Referent ███████████<br><br>Family Language:  English<br>Site and date of Occurrence: Mother's home on 3.6.19<br>Address Verification: Provided by Referent<br>Custody Arrangements: See Narrative<br>Other(s) in Home: Maternal Grandparents' Home - Referent doesn't know their names.<br><br>Children(s) Special Needs/Disabilities: Unknown to Referent<br>Mother's Employment: Unknown to Referent<br>Father's Employment: Unknown to Referent<br>eRep Services: Open for Services<br><br>Police Report: See Notification/Aux<br>Third Party Contact: Mark Brenzinger, Clinical Psychologist ███████████ and Father's Attorney, Darrick Chase, ███████████<br><br>ICWA: N/A<br>Utah Sex and Kidnap Registry: N/A |
| Allegation Narrative: | ███████████████████████ mother posted on a social media page "Holy Smoke" on 3.6.19 she was going to kill herself and the baby he doesn't start paying her child support and that she hopes his parents will be happy. Father lives in San Francisco, CA and is on his way to Utah to pick up Kayson and will arrive around 9:42 pm ███████████ Protective Order from father's attorney (Darrick Chase) dated 3.6.19. Apparently the Constable has been trying to find mother to serve her with paperwork and has been unsuccessful. The protective order was signed on 3.6.19 which is awarding father temporary legal and physical custody of Kayson. ███████████<br><br>Referent said when they tried to make contact with mother at the home there is a big camera in the front window and the front door was covered so you couldn't see in and all the blinds were down. Mother's vehicle was in front of the home, but nobody answered the door.<br><br>Referent said father will be arriving tonight at 9:42 pm to pick up Kayson and will call law enforcement for help in getting Kayson. ███████████ |

## Additional Info(s)

| Referral # | Disposition Date | Narrative |
|---|---|---|
| | | |

Father's Employment:

3rd Party contacts: none
Special Considerations for CPS: Open CPS - 2503301 - PA; no new allegations added
Language(s) in home: English
Location of incident: Spanish Fork
eRep: open services
Sex Offender Registry: none
Native American: no

Referent stated that Kayson has rash and dry skin issues, and he needs a special lotion for his skin. Referent stated that the lotion was not taken with Kayson. Referent stated that grandparents would like to speak with the caseworker about getting the lotion to Kayson, and setting up a visit with Kayson.

## Referral Details

| | |
|---|---|
| Staffing Notes: | Mother threatened on social media on 3.6.19 to kill herself and Kayson because father isn't paying child support. Father will arrive in Utah at 9:42 pm tonight from San Francisco. This case will be assigned to Supervisor Robbie Adams. |
| Resources recommended to Referent: | |
| Notification sent to LE: | Spanish Fork PD - This report is being sent to you in compliance with mandatory child abuse reporting laws. The Division of Child and Family Services (DCFS) does not anticipate a need for law enforcement involvement at this time. However, if your agency has information which indicates that an officer should be assigned, please do so and have the assigned officer contact the CPS worker identified above. |

## Case Allegations

| Allegation | Perpetrator/ Alleged Perpetrator | Victim/ Alleged Victim | Incident Date | Perp Rel to Victim | Juv Perp |
|---|---|---|---|---|---|
| Physical Abuse | Wang, Kaitlin | Wang, Kayson T. | 06 Mar 2019 | Parent | Yes |

## Allegation Findings & Review Details

### Physical Abuse

| Alleged Perpetrator: Wang, Kaitlin | | Approx. Age at Incident Date: 36 | |
|---|---|---|---|
| Alleged Victim: Wang, Kayson T. | | Approx. Age at Incident Date: 0 | |

| Review Date | Review Type | Finding Severity | Summary |
|---|---|---|---|
| 20 Mar 2019 | Case Closure | Supported – Non Severe/Chronic | Kaitlin posted a threat to end her life and Kayson's on social media. |

## Case Overview

| Economic Status | Upper Class | Services Provided | None Needed |
|---|---|---|---|
| Family Structure | Unmarried Couple with Children | | |
| OOH Abuse Type | None | | |

## Child Interviews

| Child | DCFS Interviewer | Location | Support Person | Date | Time | Description |
|---|---|---|---|---|---|---|
| Kayson T. Wang | Kimberly Webb | Child's home | Support person not requested | 07 Mar 2019 | 09:30 AM | No interview, child non-verbal and unable to communicate |

## Removals

Finalized By: Adams, Robbie Date: 20Mar19

**Policies:**  *None*

Email from Paternal grandmother Terry Thygesen

Baby and Daddy are both doing very well, and they are totally in love with each other. We are staying at the home of some friends in Park City through the hearing on Tuesday, and will then fly home with baby Tuesday evening. Christoffers lawyer has spoken to someone high up in the State Attorneys office to understand the shelter hearing process, and he thinks it will go smoothly. The Wangs have apparently hired an attorney who is making lots of threats, but weve got the facts on our side, so that will go nowhere. I dont fear the longer term custody process either given the facts in the case and also given that San Francisco PD expects the DA will be pressing falony charges against Ms. Wang very soon. I expect that Christoffer will retain sole physical and legal custody of his son forever. My husband is flying in today to stay with us here through the hearing. The hearing is this Tuesday at 2:40pm. Will you be around then?

| Start Date and Time | Duration(min) | Status | Activity Type | Author |
|---|---|---|---|---|
| 09Mar19 01:52 PM | 2 | FINAL | CLTP-Client Telephone | Webb, Kimberly |

Finalized By: Webb, Kimberly Date: 26Mar19

**Policies:**  *None*

CW received a voicemail from MO stating that she would not be able to attend the shelter hearing because she could not make it back in time. She stated that she would need to extend the hearing and asked if I could inform her of that process.

| Start Date and Time | Duration(min) | Status | Activity Type | Author |
|---|---|---|---|---|
| 10Mar19 06:30 PM | 5 | FINAL | CLEM-Client Email/Text | Adams, Robbie |

Finalized By: Adams, Robbie Date: 20Mar19

**Policies:**  *None*

Terry Thygesen
Mar 10, 2019, 8:28 PM (10 days ago)
to me

Hi Robbie,

I wanted to let you know that Christoffer and I took baby to see a pediatrician here in Park City for a complete check up. The mark on the back of his head is definitely a birthmark. Baby has a few little patches of rough skin that the doc recommended we tend to with a combo of 1% hydrocortisone cream on the worst spots and cetaphil body cream all over. Doc said this would likely not be necessary anymore after he gets home with us to CA where the climate is less dry. Baby also has a bit of a hernia in his groin that we need to keep an eye on. We also got his vaccination records which were on file with Utah, so we also now know what needs doing next on that front when we get home to CA. Christoffer is doing such a great job as a new dad, and he and baby are completely in love with each other. The have already formed a very strong father/son bond.
Best Regards, Terry Thygesen

| Start Date and Time | Duration(min) | Status | Activity Type | Author |
|---|---|---|---|---|
| 11Mar19 09:00 AM | 10 | FINAL | CLTP-Client Telephone | Webb, Kimberly |

Finalized By: Webb, Kimberly Date: 26Mar19

**Policies:**  *None*

Primary Person: Wang, Kayson T.

Case ID: 2503301

ACTIVITY LOGS 1.0 - Rev. Oct 2015, Report Date:9/16/2019

8 of 10

| Exhibit I | DCFS Reversal to Unsupported (November 2019) |
|---|---|
| **Exhibit Ref.** | Exhibit I (Final Decision & Order) + (Reversal Letter) |
| **Document 1** | State of Utah, Department of Human Services, Office of Administrative Hearings, Final Decision and Order. DCFS v. Kailin Wang, OAH Case No. 2503301. ALJ: Eric M. Stott. Dated November 2019. |
| **OAH Order Text** | Notice of Agency Action (3/27/19) had found Wang "substantially responsible for Physical Abuse." On November 6, 2019, DCFS filed a Motion to Reverse Supported Finding to Unsupported. ALJ Stott dismissed Wang's request for hearing because, once the finding became Unsupported, she was no longer entitled to a hearing. Hearing scheduled for 11/21/19 was vacated. |
| **Document 2** | Utah DCFS letter, November 14, 2019, to Kailin Wang, 2481 S Fairway Dr, Spanish Fork, UT 84660. From Jaimie Graham, Western Region Administrative Hearing Tracker. States: "The Division of Child and Family Services has conducted an Internal Review of your case and has determined that we will be changing the supported finding in the Management Information System to unsupported on case #2503301." |
| **September 18, 2019 Letter** | DCFS Records Response to Christoffer Stanford Thygesen, 294 Ewing Terrace, San Francisco CA 94118. Partial denial of records request. C.T.'s request for DCFS records denied in part under Utah Code § 62A-4a-412(3) (identity of referent and investigators redacted) and § 63G-2-302 (private information of others). |
| **Timing** | DCFS reversed its finding on November 6, 2019 — eight months after the 3/6/19 removal, after subpoenas and search warrants confirmed the post could not be linked to Wang. The initial "Supported" finding was based entirely on Brenzinger/Chase's 911 call and the Holysmoke server log. |

**SIGNIFICANCE TO PSR OBJECTION**

The DCFS Final Decision and Order is decisive: the agency that removed a three-month-old infant from her mother's parents' home on March 6, 2019 reversed its own "Supported" finding eight months later. The reversal followed the Cloudflare investigation that confirmed IP 108.162.219.228 was a VPN/proxy relay with no attribution to Wang. DCFS did not reverse because of a technicality — it reversed because it could not sustain the finding after the forensic record was developed. This is the most direct institutional confirmation that the Kill Baby K post was not traceable to Wang.



COPY

STATE OF UTAH

DEPARTMENT OF HUMAN SERVICES

OFFICE OF ADMINISTRATIVE HEARINGS

| | | |
|---|---|---|
| DIVISION OF CHILD AND FAMILY SERVICES, | : | |
| Claimant, | : | FINAL DECISION AND ORDER |
| vs. | : | |
| KAILIN WANG, | : | Case No. 2503301 |
| Respondent. | : | |

This action was initiated with a Notice of Agency Action dated March 27, 2019, which informed Respondent that Claimant made a determination that Respondent is substantially responsible for Physical Abuse. Following service of the Notice, Respondent requested a hearing to challenge the Supported finding. Accordingly, the matter was set for hearing.

On November 6, 2019, Claimant filed a Motion to Reverse Supported Finding to Unsupported and Vacate the In-Person Informal Hearing ("Motion"), based on Claimant's determination to change the finding of Physical Abuse to Unsupported.

### I. FINDINGS AND CONCLUSIONS

The right of an individual to contest Claimant's finding in an informal administrative hearing is limited to when such finding is designated as "Supported." See, Utah Code Ann. § 62A-4a-1009 (2019). Accordingly, given that Claimant has changed its finding of Physical Abuse to Unsupported, Respondent is no longer entitled to an administrative hearing in the present matter, and the request for hearing should be dismissed.

### II. ORDER

Wherefore, based upon the foregoing and Claimant changing the finding of Physical Abuse in case number 2503301 to Unsupported, it is herewith ordered that Respondent's Request for Administrative Hearing is dismissed. The in-person informal hearing scheduled Thursday, November 21, 2019, at 10:00 a.m. is vacated.

Any information that identifies the victim or any other subject of the child abuse and neglect report, including the victim or other subject's name or other identifiers, must be kept confidential pursuant to Utah Code section 62A-4a-412 (2019) and/or sections 63G-2-302, 304 (2019) unless the victim or other subject, or the victim or other subject's legal representative, consents to the release of the information.

**RECONSIDERATION** of this Order may be obtained by any party by filing a written Request for Reconsideration with the Office of Administrative Hearings, Department of Human Services, 195 North 1950 West, Salt Lake City, Utah 84116, within twenty (20) days after the date this Order was issued. The Request must state the specific grounds upon which relief is sought and a copy of the Request must be mailed to the opposing party. The opposing party may file a response within ten (10) days of receiving the Request for Reconsideration with the Office of Administrative Hearings and a copy must be mailed to the party requesting reconsideration. If no Order granting or denying Reconsideration is issued within twenty (20) days after the filing of the Request, the Request for Reconsideration shall be considered denied in accordance with Utah Code section 63G-4-302 (2019); **AND/OR:**

**JUDICIAL REVIEW** of this Order may be obtained by filing a Complaint in the Juvenile Court in the county where the petitioner resides or maintains his or her principal place of business within thirty (30) days after the date this Order was issued **OR** an order on reconsideration is issued or is considered to have been issued under Utah Code section 63G-4-302 (2019). A copy of the Complaint should be served upon each party to the action in accordance with the provisions in Utah Code section 63G-4-402 (2019).

Dated this ___8TH___ day of ___NOVEMBER___, 2019.

_Eric M. Stott_
Eric M. Stott
Administrative Law Judge
Department of Human Services
Office of Administrative Hearings
195 North 1950 West
Salt Lake City, Utah 84116
Telephone (801) 538-3900

MAILING CERTIFICATE

I hereby certify that on this ___8th___ day of __November__ , 2019, I caused to

be mailed, postage prepaid, a true and correct copy of the foregoing Final Decision and Order to the following

parties of record:

KAILIN WANG
2481 FAIRWAY DR
SPANISH FORK UT 84660

D. GRANT DICKINSON
ATTORNEY AT LAW
2525 N. CANYON RD
PROVO UT 84604

and to the following parties via inter-office mail:

SHALA REYNOLDS, GARY BELL
OFFICE OF THE UTAH ATTORNEY GENERAL
55 N UNIVERSITY AVE, #219
PROVO UT 84606

KIMBERLY WEBB, ROBBIE ADAMS
DEPARTMENT OF HUMAN SERVICES
DIVISION OF CHILD AND FAMILY SERVICES
609 N STATE RD
198 SALEM UT 84653

JAIMIE GRAHAM
DEPARTMENT OF HUMAN SERVICES
DCFS HEARING TRACKER
150 E CENTER ST, STE 5100
PROVO UT 84606

_Brianna Erikson_
Secretary



DEPARTMENT OF HUMAN SERVICES

ANN SILVERBERG-WILLIAMSON
*Department Executive Director*

Division of Child and Family Services

DIANE MOORE
**Division Director**

GARY R. HERBERT
*Governor*

CASEY CHRISTOPHERSON
**Western Region Director**

SPENCER J. COX
*Lieutenant Governor*

November 14, 2019

Kailin Wang
2481 S Fairway Dr
Spanish Fork, UT 84660

Dear Kailin:

The Division of Child and Family Services has conducted an Internal Review of your case and has determined that we will be changing the supported finding in the Management Information System to unsupported on case #2503301.

Please feel free to contact me with any questions at 385-268-2766.

Sincerely,

*Jaimie Graham*

Jaimie Graham
Western Region Administrative Hearing Tracker
Division of Child and Family Services

Address 150 East Center, Suite 5100, Provo UT  84606
Telephone 801-374-7005 Facsimile 801 374-7822 www.hsdcfs.utah.gov



| Exhibit J | Jeff Rifleman Subpoena Email Chain (Mar 13–15, 2019) HolySmoke.org Subpoena Records & Kill Baby K Post Evidence |
|---|---|
| Case | Thygesen v. Wang, Case No. FDV-19-814465, SF Superior Court; Criminal Case 3-6-19 |
| Dates | February 8 – March 15, 2019 |
| Source | HolySmoke.org (pope@holysmoke.org); Rifleman Law (jeff.rifleman@gmail.com) |
| Jeff Rifleman Subpoena Email Chain (Mar 13–15, 2019) | Utah attorney Jeff Rifleman contacts HolySmoke.org requesting user name, email address, IP posting address, and date for all entries in the Christoffer Thygesen threads. HolySmoke.org confirms it will comply and provides IP records. Rifleman forwards to John Wang and Melisa Todd (Spencer & Collier). Subpoena submitted same week as March 6, 2019 custody hearing. |
| HolySmoke.org Comment Thread Screenshots (holysmoke.org/scam/christoffer-thygesen/) | Full comment thread showing multiple posts under aliases ("Christoffer Thygesen Abandoned Child," "Judge," "Christoffers Abused Baby by father," etc.) with IP addresses logged by HolySmoke.org. All logged IPs resolve to Cloudflare edge nodes (108.162.x.x, 172.68.x.x, 172.69.x.x ranges). Fake email pattern uniform across all posts (grr.la, jj.com, kell.com, nope.com, gg.com). |
| "Kailin Wang" Kill Baby K Post (3/6/2019, IP 108.162.219.228) | Post under name "Kailin Wang" with email Kailin@wang.com, IP 108.162.219.228, dated March 6, 2019 — the same date as the custody hearing where C.T. received sole custody. Text states: "I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first-degree murder." The email address Kailin@wang.com follows the same fabricated pattern as all other alias posts in the thread. |
| Kailin Wang Email to Attorneys re: Subpoena to | Kailin Wang forwards the complete list of posts to counsel Karl Kronenberger and Audrey Courson, noting the 3/6/19 Kill Baby K post was published the same day as the hearing where C.T. received sole |

| | |
|---|---|
| **Cloudflare (3/8/2026)** | custody. Wang identifies the uniform fake email address pattern across all posts and identifies the Cloudflare IP addresses. |

**SIGNIFICANCE TO PSR OBJECTION**

The Jeff Rifleman subpoena to HolySmoke.org was filed by Utah counsel representing C.T.'s parents, not by law enforcement. The subpoena produced IP addresses from HolySmoke.org that Cloudflare later confirmed were edge node addresses shared by thousands of users — not actual poster IPs. The Kill Baby K post of 3/6/19 shares the identical fake email pattern (Kailin@wang.com) used in every other hostile post in the thread. The timing of the post — same day as the custody hearing — and the uniform alias pattern strongly support fabrication. Cloudflare's subsequent confirmation that the site was logging wrong IPs makes all IP-based attribution in this thread unreliable.

Case 2:24-cr-00163-TS    Document 157-3    Filed 04/19/26    PageID.8458    Page 75 of 271

 **Gmail**

**K Yg <voplan310@gmail.com>**

## Fwd: Request for information and service/acceptance of Subpoena

1 message

**John Wang** <johnwangphoto@yahoo.com>                Fri, Mar 15, 2019 at 8:22 AM
To: Kailin NYC Wang <voplan310@gmail.com>

Sent from my iPhone

Begin forwarded message:

> **From:** Jeff Rifleman <jeff.rifleman@gmail.com>
> **Date:** March 15, 2019 at 6:36:50 AM MDT
> **To:** Melisa Todd <melisa@spencerandcollier.com>, John Wang <johnwangphoto@yahoo.com>
> **Subject: Fwd: Request for information and service/acceptance of Subpoena**
>
> ---------- Forwarded message ---------
> From: **Holy Smoke!** <pope@holysmoke.org>
> Date: Fri, Mar 15, 2019, 12:35 AM
> Subject: Re: Request for information and service/acceptance of Subpoena
> To: Jeff Rifleman <jeff.rifleman@gmail.com>
>
>> Here is the information we have on our servers -
>>
>> For - https://www.holysmoke.org/scam/**christoffer-thygesen**/
>>
>> Published on: **Feb 12, 2019 @ 12:57**
>>
>> IP address - 162.158.63.102
>>
>> Information from comments -

Gmail - FOIA Request for information and service/acceptance of subpoena

———

For https://www.holysmoke.org/bad-business/**christoffer-thygesen/**

Published on: **Feb 8, 2019 @ 20:41**

On 15 Mar 2019, 5:46 AM +0530, Jeff Rifleman <jeff.rifleman@gmail.com>, wrote:

Please let me know a date this will be available. I am filing some documents tonight with the court.

Thank you for your assistance.

Cordially,

Jeff Rifleman

 Virus-free. www.avast.com

On Wed, Mar 13, 2019 at 12:49 PM Jeff Rifleman <jeff.rifleman@gmail.com> wrote:

Thank you.

Here is what I neeed:

Threads that contain posting and users names.  I need user name, the alias used in the posting, email address of the user, the ip posting address and date (and any and all other indentifying information) for each of the entries in the below threads.)

On Wed, Mar 13, 2019 at 12:42 PM Holy Smoke! <pope@holysmoke.org> wrote:

> In fact, to save time, just let me know what information you seek, and I'll send it over to you immediately.

> On 13 Mar 2019, 10:51 PM +0530, Holy Smoke! <pope@holysmoke.org>, wrote:

>> It really is sad, and confusing.

>> We've been assisting the police regarding these particular posts since there was claims of self-harm. We were also served with another subpoena regarding the information just yesterday by perhaps another lawyer representing one of the parties involved.

>> We'll be more than happy to help. Just email us the subpoena digitally and the information will be sent to you immediately.

>> Pope
>> On 13 Mar 2019, 10:47 PM +0530, Jeff Rifleman <jeff.rifleman@gmail.com>, wrote:

>>> Hello,

>>> I am an attorney in Utah and have a client with interest in postings in the below mentioned threads. There have been concerns over a specific post in which a Kailin Wang posted that she would cause harm to herself and her child. I represent the grandparents and there is currently an action in Utah and California regarding the child, and parents of the child. I am preparaing a subpoena to be served and would like to know if who I would send that to and if accepted as a Subpoena from a Utah jurisdiction.

>>> Threads that contain posting and users names.  (I will be requesting the user name, email address, ip posting address and date (and any and all other indentifying information) for each of the entries in the below threads.)

>>> https://www.holysmoke.org/scam/christoffer-thygesen/

>>> and

>>> https://www.holysmoke.org/bad-business/christoffer-thygesen/

>>> Please let me know at your earliest convenience.

>>> Cordially,

>>> Jeff Rifleman

>>> --



# do it in chronolgical order

Here is the chronological table with the subpoena/MaxMind mapping, as requested. [1] [2]

## Chronological IP–MaxMind mapping

| Date | Email / Actor | Site / Post summary | IP address | MaxMind city, state (6/4/2019) |
|---|---|---|---|---|
| 2/12/2019 | (Christoffer thread start) | Holysmoke: Christoffer Post Thread Started | 162.158.63.102 | Newark, New Jersey, USA [2] |
| 2/15/2019 | Kelly@kell.com | Holysmoke: "Kailin Wang is an unfit parent, easy full custody win" | 172.68.47.104 | Los Angeles, California, USA [1] [2] |
| 2/17/2019 | nope@nope.com | Holysmoke: "Kailin Wang is in violation of her probation… easy win for Chris" | 108.162.219.54 | Newark, New Jersey, USA [1] [2] |
| 2/17/2019 | nope@nope.com | Holysmoke (alt capture): same text, additional IP | 172.69.42.84 | Salt Lake City, Utah, USA [1] [2] |
| 2/18/2019 | Jj@jj.com | Holysmoke: "Kailin is getting locked up soon… Need to get this kid away from her" | 172.68.34.108 | Denver, Colorado, USA [1] [2] |
| 2/27/2019 | wht91123@lycos.com | Holysmoke: "STOP IT" | 172.69.22.10 | San Jose, California, USA [1] [2] |
| 2/28/2019 | GG@gg.com | Holysmoke: "Kailin Wang is an unfit mother… dangerous situation… court documentation" | 108.162.219.54 | Newark, New Jersey, USA [1] [2] |
| 3/6/2019 | Kailin@wang.com | Holysmoke: "I'm going to kill myself and our baby… first degree murder…" | 108.162.219.228 | Newark, New Jersey, USA [1] [2] |
| 5/16/2019 | ██████@gmail.com | TheDirty: "apology / olive branch… Take good care of our son" | 185.220.101.45 | Anonymous Proxy (Tor / anonymizer) [2] |

Do you want a separate column added to this same table marking each entry as "Cloudflare edge" versus "Anonymous proxy (Tor)" for direct use as an exhibit label?



# GeoIP2 City Database Demo

## GeoIP2 Precision Services

| Country |
| City |
| Insights |
| Free Trial Account |

## GeoIP2 Databases

| Country |
| City |
| City Database by Continent |
| ISP |
| Domain Name |
| Connection Type |
| GeoLite2 Commercial Redistribution |

## GeoIP2 Enterprise Product Suite

| Anonymous IP |

### IP Addresses

```
172.69.42.84
162.158.63.102
172.68.47.104
172.69.42.84
172.68.34.108
108.162.219.54
108.162.219.228
172.69.22.10
```

Enter up to 25 IP addresses separated by spaces or commas. You can also test your own IP address.

Submit

## GeoIP2 City Results

| IP Address | Country Code | Location | Postal Code | Approximate Coordinates* | Accuracy Radius (km) | ISP | Organization | Domain | Metro Code |
|---|---|---|---|---|---|---|---|---|---|
| 172.69.42.84 | US | Salt Lake City, Utah, United States, North America | 84138 | 40.7592, -111.8875 | 50 | Cloudflare | Cloudflare | | 770 |

Enterprise

User Count

| IP Address | Country Code | Location | Postal Code | Approximate Coordinates* | Accuracy Radius (km) | ISP | Organization | Domain | Metro Code |
|---|---|---|---|---|---|---|---|---|---|
| 162.158.63.102 | US | Newark, New Jersey, United States, North America | 07175 | 40.739, -74.1697 | 500 | Cloudflare | Cloudflare | | 501 |
| 172.68.47.104 | US | Los Angeles, California, United States, North America | 90009 | 34.0544, -118.244 | 500 | Cloudflare | Cloudflare | | 803 |
| 172.69.42.84 | US | Salt Lake City, Utah, United States, North America | 84138 | 40.7592, -111.8875 | 50 | Cloudflare | Cloudflare | | 770 |
| 172.68.34.108 | US | Denver, Colorado, United States, North America | 80208 | 39.7388, -104.9868 | 500 | Cloudflare | Cloudflare | | 751 |

| IP Address | Country Code | Location | Postal Code | Approximate Coordinates* | Accuracy Radius (km) | ISP | Organization | Domain | Metro Code |
|---|---|---|---|---|---|---|---|---|---|
| 108.162.219.54 | US | Newark, New Jersey, United States, North America | 07175 | 40.739, -74.1697 | 200 | Cloudflare | Cloudflare | | 501 |
| 108.162.219.228 | US | Newark, New Jersey, United States, North America | 07175 | 40.739, -74.1697 | 200 | Cloudflare | Cloudflare | | 501 |
| 172.69.22.10 | US | San Jose, California, United States, North America | 95141 | 37.3388, -121.8914 | 500 | Cloudflare | Cloudflare | | 807 |

ISP and Organization data is included with the purchase of the GeoIP2 ISP database or with the purchase of the GeoIP2 Precision City or Insights services.

Domain data is included with the purchase of the GeoIP2 Domain Name database or with the purchase of the GeoIP2 Precision City or Insights services.

* Latitude and Longitude are often near the center of population. These values are not precise and should not be used to identify a particular address or household.

| Exhibit K | (Kronenberger Rosenfeld LLP) on behalf of Wang Cloudflare Investigation: IP Attribution Evidence, MaxMind Analysis & Kronenberger Correspondence |
|---|---|
| Case | Thygesen v. Wang, Case No. FDV-19-814465, SF Superior Court |
| Dates | May 14 – July 5, 2019 |
| Source | Cloudflare, Inc. (Trust & Safety); Kronenberger Rosenfeld LLP; MaxMind GeoIP2 City Database Demo (6/4/2019) |
| Deposition Subpoena to Cloudflare (May 16, 2019) — Case No. FDV-19-814465 | California SUBP-010 Deposition Subpoena for Production of Business Records issued by Karl S. Kronenberger (Kronenberger Rosenfeld LLP) on behalf of Respondent Kailin Wang, directed to Cloudflare, Inc., c/o Registered Agent Solutions, Inc., Sacramento, CA. Attachment 3 requests all documents identifying the user account holder for IP address 108.162.219.228 on March 6, 2019, including names, addresses, email addresses, phone numbers, MAC addresses, IMEI numbers, and user agents. |
| Cloudflare Trust & Safety Response (May 17–18, 2019) — Report #2586627 | Cloudflare Trust & Safety representative David N. responds: "We can't produce any data based on an IP address. It appears the website in question (which is a Cloudflare customer) was logging the wrong IP addresses." Cloudflare directs counsel to the MaxMind GeoIP2 demo for geolocation only. Attorney Karl Kronenberger confirms to client that Cloudflare stated HolySmoke.org was logging incorrect IPs and that the IP address shared by thousands of users yields no identifying data. |
| MaxMind GeoIP2 City Database Demo Results (6/4/2019) | GeoIP2 lookup of all HolySmoke.org post IPs confirms every address in the thread is a Cloudflare edge node. IP 108.162.219.228 (Kill Baby K post) resolves to Newark, NJ — Cloudflare, ISP: Cloudflare, accuracy radius 200 km. IP 172.69.42.84 resolves to Salt Lake City, UT — Cloudflare. IP 172.68.47.104 resolves to Los Angeles, CA — Cloudflare. All seven IPs in the thread resolve to Cloudflare infrastructure with accuracy radii of 50–500 km, confirming none can identify a specific user. |

| Chronological IP–MaxMind Mapping Table (Feb 12 – May 16, 2019) | Nine-entry chronological table mapping each HolySmoke.org and TheDirty.com post to its logged IP, email alias, post content summary, and MaxMind city/state result. Dates range from 2/12/19 (Christoffer thread start, IP 162.158.63.102, Newark NJ Cloudflare) through 3/6/19 (Kailin@wang.com Kill Baby K post, IP 108.162.219.228, Newark NJ Cloudflare) to 5/16/19 (TheDirty apology/olive branch post, IP 185.220.101.45, Anonymous Proxy — Tor/anonymizer). |
|---|---|
| Karl Kronenberger Email to Kailin Wang (May 20, 2019) | Kronenberger advises Wang that Cloudflare confirmed HolySmoke.org was logging incorrect IPs. Kronenberger recommends returning to court "with our hair on fire" to seek reversal of any custody ruling that relied on the Kill Baby K post as evidence. Cloudflare's position renders all IP-based attribution from HolySmoke.org unreliable for evidentiary purposes. |
| Karl Kronenberger Email re: SGT Martinez Conference (May 22, 2019) | Kronenberger reports that SFPD SGT Martinez independently confirmed the Kill Baby K post is "meaningless" to her investigation because it came from a VPN and is not provable. SGT Martinez also stated the Utah attorney (Rifleman) was misrepresenting what she said. Kronenberger notes he was in "full advocacy mode" and made no admissions. SGT Martinez asks for any further evidence to review. |
| Impersonation Posts on TheDirty.com (May 16, 2019) | Lanie Lee (lancewr12@gmail.com) reports to SFPD SGT Martinez new impersonation posts discovered May 16, 2019 on TheDirty.com and HolySmoke.org. TheDirty post is published under "Kailin Wang," dated May 16, 2019, written as a fabricated apology/olive branch message to the Thygesen family. FBI IC3 complaint and SGT Martinez statement attached. This post used IP 185.220.101.45 — an anonymous Tor proxy — consistent with deliberate identity concealment. |
| Kronenberger Rosenfeld LLP Attorney Invoices (June–July 2019) | Invoice #18201 (through 5/31/2019): $27,229.48 total; $12,229.48 balance due after $15,000 trust payment. Invoice #18273 (through 6/30/2019): $2,349.63 balance due. Combined legal fees for subpoena defense, motion to quash Google/Charter/Cloudflare subpoenas, and Cloudflare investigation: $29,579.11. Timekeeper summary: Karl S. Kronenberger (Partner, $575/hr), Liana Chen ($385/hr), Leah Vulic — Paralegal ($205/hr). Total 76.51 hours for May period; 6.93 hours for June period. |

## SIGNIFICANCE TO PSR OBJECTION

Cloudflare's written confirmation that HolySmoke.org was logging incorrect IP addresses — and that no user-identifying data can be produced from those IPs — destroys the evidentiary foundation for any claim that Wang authored the Kill Baby K post. SFPD SGT Martinez independently reached the same conclusion: the post is unprovable. The MaxMind GeoIP2 results demonstrate that every IP in the HolySmoke thread is a shared Cloudflare edge node with accuracy radii spanning entire metro areas. The TheDirty.com impersonation post (5/16/19) using a Tor exit node confirms a pattern of deliberate anonymous fabrication. The attorney invoices document $29,579.11 in legal costs Wang incurred to defend against subpoenas targeting her identity based on posts Cloudflare confirmed cannot be attributed to any individual.

SUBP-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Karl S. Kronenberger (226112)<br>KRONENBERGER ROSENFELD, LLP<br>150 Post St., Suite 520, San Francisco, CA 94108<br>TELEPHONE NO.: 415-955-1155    FAX NO.: 415-955-1158<br>E-MAIL ADDRESS: karl@KRInternetLaw.com<br>ATTORNEY FOR *(Name):* Respondent Kailin Wang | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Francisco
STREET ADDRESS:    400 McAllister St.
MAILING ADDRESS:   400 McAllister St.
CITY AND ZIP CODE:  San Francisco, CA 94108
BRANCH NAME:   Civic Center Courthouse

PLAINTIFF/PETITIONER:  Christoffer Stanford Thygesen

DEFENDANT/RESPONDENT: Kailin Wang

| DEPOSITION SUBPOENA<br>FOR PRODUCTION OF BUSINESS RECORDS | CASE NUMBER:<br>FDV-19-814465 |
|---|---|

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of deponent, if known):*

Cloudflare, Inc. c/o Registered Agent Solutions, Inc. 1220 S St., Ste. 150, Sacramento, CA 95811

1. YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS described in item 3, as follows:

To *(name of deposition officer):* Karl S. Kronenberger
On *(date)* : May 27, 2019                    At *(time):* 10:00 a.m.
Location *(address):* 150 Post St., Suite 520, San Francisco, CA 94108
**Do not release the requested records to the deposition officer prior to the date and time stated above.**

a. ☐ by delivering a true, legible, and durable **copy** of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

b. ☑ by delivering a true, legible, and durable **copy** of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or **by** check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

c. ☐ by making the **original** business records described in item 3 available for inspection at your business address by the attorney's representative and permitting **copying** at your business address under reasonable conditions during normal business hours.

2. *The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.*

3. *The records to be produced are described as follows (if electronically stored information is demanded, the form or forms in which each type of information is to be produced may be specified):*

   ☑ Continued on Attachment 3.

4. IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.

| DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY. |
|---|

Date issued: May 7, 2019

Karl S. Kronenberger
_____          ▶ _____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PERSON ISSUING SUBPOENA)

Attorney for Respondent
_____
(TITLE)

*(Proof of service on reverse)*                                                           Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUBP-010 [Rev. January 1, 2012]

DEPOSITION SUBPOENA FOR PRODUCTION
OF BUSINESS RECORDS

Code of Civil Procedure, §§ 2020.410–2020.440;<br>Government Code, § 68097.1<br>www.courts.ca.gov

*Thygesen v. Wang*                                         Case No. FDV-19-814465

## Attachment 3

1.    Documents sufficient to identify the user data and account holder for following Internet Protocol (IP) addresses on the following dates and times, including any associated names, addresses, email addresses, phone numbers, recovery email addresses, IP addresses used on other dates, Media Access Control (MAC) addresses, IMEI numbers, and user agents:

| IP Address | Date and Time |
|---|---|
| 162.158.63.102 | Feb 12, 2019 @ 12_57 |

*"Document(s)" shall mean all writings under Cal. Evid. Code §250 in whatever form or medium, including electronically stored information.*

**The subpoena requests documents in your possession, custody, or control and includes any and all archived data or logs.**

The subpoena specifically excludes any communications, contents of a user's private mail messages, or stored content files held or maintained on behalf of a user that are protected by the Stored Communications Act, 18 U.S.C. §2701, et seq.

Tuesday, September 17, 2019 at 2:03:04 PM Pacific Daylight Time

**Subject:** Report updated: (#2586627) Cloudflare - Subpoena - No FDV-19-814465

**Date:** Tuesday, May 14, 2019 at 2:57:35 PM Pacific Daylight Time

**From:** Cloudflare Trust & Safety

**To:** Karl Kronenberger

##– Please type your reply above this line –##

Hello karl@krinternetlaw.com,

Your report (#2586627) has been been replied to. Note –– When responding please make sure to keep #2586627 in the subject line.

---

**David N.** (Cloudflare Trust & Safety)

May 14, 10:57 PM BST

Karl,

The IP is controlled by Cloudflare but we can't produce any data based on an IP address. This was explained in the first email stating:

> We would not be able to produce private customer data based on just a Cloudflare IP address. The IPs Cloudflare provides to a domain using our service are both dynamic and shared. Dynamic in the sense that they could be reallocated to a different domain at any time to balance network traffic. They are shared in the sense that a given IP address could be shared among several hundred domains at any point in time. As such, we would view a request to produce private customer data based solely on an IP address to be overly broad.

Based on the situation you explained, the hosting provider of holysmoke should have the data you're requesting. Cloudflare isn't able to produce data based on who is making a specific post at a specific time.

---

This email is a service from Cloudflare Trust & Safety. Delivered by **Zendesk**

**Page 1 of 1**

 Gmail

Kailin Wang <kaywg2372@gmail.com>

---

## FW: Subpoena to Cloudflare

---

**Kay Wg** <kaywg2372@gmail.com>                                    Tue, May 14, 2019 at 3:49 PM
To: Karl Kronenberger <karl@krinternetlaw.com>, Leah Vulic <leah@krinternetlaw.com>, Liana Chen <liana@krinternetlaw.com>

Hey,

I'm looking at the subpoena to cloud-fare and the IP address for the "Kailin Wang I'm going to kill my baby if I don't receive Child Support". And the IP address from cloud_fare is 108.162.219.228.

**I would like to find out who posted all the posts that are circled in red in the attachment to this email.**

I have posted on the Holysmoke.org site, so the originating post will trace back to me, Its the commenter posters towards me and hurting the baby we need to identify those posters. Because it is that " Kill baby post that prompted law enforcement".

 

Can we get a Cloudfare Subpeona for 108.162.219.228 and all the IP addresses of the posts thats circled on the attached PDF?

Thanks,

Kailin Wang 917-432-4181
[Quoted text hidden]

---

**3 attachments**

📄 **Respondent's Objections to Petitioner's Subpoena to Charter (FILED 5.7.19).pdf**
1310K

📄 **Respondent's Subpoena to Cloudflare, with Attachments (FINAL 5.7.19).pdf**
1836K

📄 **3-15-19_Holysmoke_Request for information and service_acceptance of Subpoena.pdf**
753K

 Gmail

**Kailin Wang <kaywg2372@gmail.com>**

## FW: Subpoena to Cloudflare

**Karl Kronenberger** <karl@krinternetlaw.com>                                    Tue, May 14, 2019 at 4:43 PM
To: Kay Wg <kaywg2372@gmail.com>, Leah Vulic <leah@krinternetlaw.com>, Liana Chen <liana@krinternetlaw.com>

Kailin,

I just got off the phone with Cloudflare. We believe that what is happening is that the person who posted that message was using a VPN that uses Cloudflare. So, in addition to HolySmoke.org using Cloudflare, the VPN also used Cloudflare.

Cloudflare says that thousands of people share these IP addresses, and that they don't have any data for us.

Importantly, do you know the date and time for the .228 post below? Just to make sure Cloudflare is right, I want to email them a subpoena. He should respond pretty quickly.

-Karl

[Quoted text hidden]

Case 2:24-cr-00163-TS    Document 157-3    Filed 04/19/26    PageID.8473    Page 90 of 271



**Kailin Wang <kaywg2372@gmail.com>**

---

## FW: Subpoena to Cloudflare

---

**Karl Kronenberger** <karl@krinternetlaw.com>                    Tue, May 14, 2019 at 4:43 PM
To: Kay Wg <kaywg2372@gmail.com>, Leah Vulic <leah@krinternetlaw.com>, Liana Chen <liana@krinternetlaw.com>

Kailin,

I just got off the phone with Cloudflare. We believe that what is happening is that the person who posted that message was using a VPN that uses Cloudflare. So, in addition to HolySmoke.org using Cloudflare, the VPN also used Cloudflare.

Cloudflare says that thousands of people share these IP addresses, and that they don't have any data for us.

Importantly, do you know the date and time for the .228 post below? Just to make sure Cloudflare is right, I want to email them a subpoena. He should respond pretty quickly.

-Karl

[Quoted text hidden]

**From:** **Kay Wg** kaywg2372@gmail.com 📎
**Subject:** Re: FW: Subpoena to Cloudflare
**Date:** May 14, 2019 at 5:15 PM
**To:** Karl Kronenberger karl@krinternetlaw.com, Audrey Courson audrey@coursonlaw.com
**Cc:** Leah Vulic leah@krinternetlaw.com, Liana Chen liana@krinternetlaw.com

KW

3/6/19 Kailin@wang.com     108.162.219.228     Kailin Wang, I'm going to kill myself and our baby
It was posted in 3/6/19. Same day as the hearing where he got Sole Custody.
All the posts made against me have the same Fake email address pattern.

Here are all the posts made against me:

2/15/19 Kelly@kell.com     172.68.47.104     Kailin Wang back at it ; If this guy was smart he'd look into her arrest in Spanish fork Utah. She's an unfit parent.
2/17/19 nope@nope.com     108.162.219.54     Kailin Wang is probably in violation of her probation. She has been arrested many times for assault, harrassment, and cyber stalking. It's all pı

                                            Kailin is getting locked up soon. Kailin you better cut it out or you're going back to jail babe.
2/18/19 Jj@jj.com         172.68.34.108     Christoffer. You're fucked. Need to get this kid away from her.
2/27/19 wht91123@lycos.com                  STOP IT
                                            Christoffer, you need to get this child away from Kailin. Do whatever it takes.
                                            She is an unfit mother who does not take care of this child. It is a very dangerous situation.
                                            There is plenty of court documentation out there about her cyberstalking, harassing, etc.
2/28/19 GG@gg.com         108.162.219.54    Praying for you.

3/6/19 Kailin@wang.com     108.162.219.228 Kailin Wang, I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murde

On Tue, May 14, 2019 at 4:43 PM Karl Kronenberger <karl@krinternetlaw.com> wrote:

Kailin,

I just got off the phone with Cloudflare. We believe that what is happening is that the person who posted that message was using a VPN that uses Cloudflare. So, in addition to HolySmoke.org using Clo

Cloudflare says that thousands of people share these IP addresses, and that they don't have any data for us.

Importantly, do you know the date and time for the .228 post below? Just to make sure Cloudflare is right, I want to email them a subpoena. He should respond pretty quickly.

-Karl

**SUBP-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Karl S. Kronenberger (226112)<br>KRONENBERGER ROSENFELD, LLP<br>150 Post St., Suite 520, San Francisco, CA 94108<br>TELEPHONE NO.: 415-955-1155 FAX NO.: 415-955-1158<br>E-MAIL ADDRESS: karl@KRInternetLaw.com<br>ATTORNEY FOR *(Name)*: Respondent Kailin Wang | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS: 400 McAllister St.
CITY AND ZIP CODE: San Francisco, CA 94108
BRANCH NAME: Civic Center Courthouse

PLAINTIFF/PETITIONER: Christoffer Stanford Thygesen

DEFENDANT/RESPONDENT: Kailin Wang

| DEPOSITION SUBPOENA<br>FOR PRODUCTION OF BUSINESS RECORDS | CASE NUMBER<br>FDV-19-814465 |
|---|---|

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of deponent, if known)*:
Cloudflare, Inc. c/o Registered Agent Solutions, Inc. 1220 S St., Ste. 150, Sacramento, CA 95811

1. **YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS described in item 3, as follows:**

To *(name of deposition officer)*: Karl S. Kronenberger
On *(date)* : June 5, 2019 At *(time)*: 10:00 a.m.
Location *(address)*: 150 Post St., Suite 520, San Francisco, CA 94108

**Do not release the requested records to the deposition officer prior to the date and time stated above.**

a. ☐ by delivering a true, legible, and durable **copy** of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

b. ☑ by delivering a true, legible, and durable **copy** of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

c. ☐ by making the **original** business records described in item 3 available for inspection at your business address by the attorney's representative and permitting **copying** at your business address under reasonable conditions during normal business hours.

2. *The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.*

3. *The records to be produced are described as follows (if electronically stored information is demanded, the form or forms in which each type of information is to be produced may be specified):*

☑ Continued on Attachment 3.

4. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued: May 16, 2019

Karl S. Kronenberger ▷ _____
(TYPE OR PRINT NAME) (SIGNATURE OF PERSON ISSUING SUBPOENA)

Attorney for Respondent

(Proof of service on reverse) (TITLE) Page 1 of 2

*Thygesen v. Wang*                                                Case No. FDV-19-814465

## **Attachment 3**

1.      Documents sufficient to identify the user data and account holder for following Internet Protocol (IP) addresses on the following date and time, including any associated names, addresses, email addresses, phone numbers, recovery email addresses, IP addresses used on other dates, Media Access Control (MAC) addresses, IMEI numbers, and user agents:

| IP Address | Date |
|---|---|
| 108.162.219.228 | March 6, 2019 |

*"Document(s)" shall mean all writings under Cal. Evid. Code §250 in whatever form or medium, including electronically stored information.*

**The subpoena requests documents in your possession, custody, or control and includes any and all archived data or logs.**

The subpoena specifically excludes any communications, contents of a user's private mail messages, or stored content files held or maintained on behalf of a user that are protected by the Stored Communications Act, 18 U.S.C. §2701, et seq.

**Tuesday, September 17, 2019 at 2:02:13 PM Pacific Daylight Time**

**Subject:** Report updated: (#2586627) Cloudflare - Subpoena - No FDV-19-814465

**Date:** Friday, May 17, 2019 at 7:53:53 PM Pacific Daylight Time

**From:** Cloudflare Trust & Safety

**To:** Karl Kronenberger

##- Please type your reply above this line -##

Hello karl@krinternetlaw.com,

Your report (#2586627) has been been replied to. Note -- When responding please make sure to keep #2586627 in the subject line.

---

**David N.** (Cloudflare Trust & Safety)

May 18, 3:53 AM BST

Hi Karl,

We can't produce any data based on an IP address. It appears the website in question (which is a Cloudflare customer) was logging the wrong IP addresses. The best information we can provide is the geo location of the IP address.

https://www.maxmind.com/en/geoip-demo

Regards,
David

---

This email is a service from Cloudflare Trust & Safety. Delivered by **Zendesk**

**Page 1 of 1**

Case 2:24-cr-00163-TS          Document 157-3          Filed 04/19/26          PageID.8478          Page 95
of 271

 Gmail

<div align="right">Kailin Wang &lt;kaywg2372@gmail.com&gt;</div>

## FW: Report updated: (#2586627) Cloudflare - Subpoena - No FDV-19-814465

**Karl Kronenberger** &lt;karl@krinternetlaw.com&gt;                    Mon, May 20, 2019 at 8:18 PM
To: "Kay Wg (kaywg2372@gmail.com)" &lt;kaywg2372@gmail.com&gt;
Cc: Liana Chen &lt;liana@krinternetlaw.com&gt;, Leah Vulic &lt;leah@krinternetlaw.com&gt;

Hello Kailin,

We served the new subpoena on Cloudflare regarding the IP address responsibility for the "kill my baby" post, and a very interesting response came back. The Cloudflare representative said, "It appears the website in question (which is a Cloudflare customer) was logging the wrong IP addresses." See below, referencing HolySmoke.org.

What is confusing is that he also recommends using the Maxmind database, which frankly does not make sense if the IP address was logged incorrectly.

I will keep following up.

IMPORTANTLY:  if this particular post is a foundational piece of evidence for the petitioner, then we may have an opportunity to re-open any decision that was made relying on this evidence. Bear in mind that I am not a family court practitioner, but my gut tells me that we should go back to the court "with our hair on fire" demanding that all rulings that relied on this piece of evidence be thrown out immediately. Is Audrey still counsel on this? If so, we can loop her in.

What are your thoughts on this?

Very best regards,

Karl

---

**From:** Karl Kronenberger
**Sent:** Saturday, May 18, 2019 1:48 PM
**To:** Cloudflare Trust & Safety
**Subject:** RE: Report updated: (#2586627) Cloudflare - Subpoena - No FDV-19-814465

Hello David,



**Karl Kronenberger** <karl@krinternetlaw.com>

to me, Leah, Liana, Terry ▼

Wed, May 22, 2019, 10:54 AM

Hi Kailin,

Thanks for letting me know about this. SGT Martinez reached out, we played phone tag over the last 30 minutes, and I finally got her on the phone.

My plan was to inform her of the "new evidence" from Cloudflare, where they say the IP address used for the "kill my baby" was not accurate/incorrectly logged by HolySmoke.org. However, she quickly admitted that that post is meaningless to her because it was from a VPN or otherwise not provable. The main thing she asked is that if there is any evidence that we want her to look at, we should give it to her. I told her I would review all the information and get back to her.

She also said that the Utah attorney is misrepresenting what SGT Martinez said.

Btw – I did not (obviously) make any admissions, and I was in full advocacy mode, discussing how Thygesen's attorneys are drowning you in litigation because of their massive financial advantage.

So, now there are two things I need from you, or to discuss with you.

1.   Since I have mostly been working on incoming subpoenas, if there is anything out there that you want me to examine further so we can convey it to SGT Martinez, let me know.
2.   On the child custody side of things, I still do not understand how important the "kill my baby" post is to Thygesen's entire case. Can you help me understand that?

Very best regards,

Karl

| Exhibit L | Kronenberger Rosenfeld Billing Records —Subpoenas (May–June 2019) |
|---|---|
| **Case** | Thygesen v. Wang, No. FDV-19-814465, SF Superior Court |
| **Dates** | May 1 – July 5, 2019 |
| **Source** | Kronenberger Rosenfeld, LLP — Invoices #18201 and #18273 |
| **Invoice #18201 (through 5/31/2019)** | Total fees: $26,440.85. Total costs: $788.63. Total invoice: $27,229.48. Payment from trust: ($15,000.00). Balance due: $12,229.48. Work period: May 1–31, 2019. Timekeepers: Karl S. Kronenberger, Partner ($575/hr, 10.83 hrs); Liana Chen, Attorney ($385/hr, 37.50 hrs); Leah Vulic, Paralegal ($205/hr, 25.76 hrs); Iyah Turminini ($205/hr, 2.42 hrs). Total professional hours: 76.51. |
| **Invoice #18273 (through 6/30/2019)** | Total fees: $2,300.42. Total costs: $49.21. Total invoice: $2,349.63. Previous balance paid: ($12,229.48). Balance due: $2,349.63. Work period: June 3–27, 2019. Timekeepers: Karl S. Kronenberger ($575/hr, 2.67 hrs); Liana Chen ($385/hr, 0.75 hrs billed; 0.34 hrs no-charge). |
| **Combined Total (Both Invoices)** | Total legal fees billed: $28,741.27. Total costs billed: $837.84. Combined total: $29,579.11. All work was directed at combatting subpoenas arising from the Kill Baby K post and related impersonation posts. |
| **Primary Work Described in Time Entries** | Motion to quash subpoenas directed at Google, Cloudflare, Charter, and Comcast; drafting and filing supporting declarations, memoranda of points and authorities, and exhibits; meet-and-confer correspondence with opposing counsel; court appearances at SF Family Court (5/8/2019 and 6/6/2019); review of Cloudflare subpoena responses; correspondence with SFPD (5/22/2019); capture and documentation of impersonation posts; preparation of reply briefs; Westlaw legal research. NOTE: 5/8/2019 — KSK billed 2 hours, noting actual time was 3.5 hours but self-reduced. |
| **Costs Detail** | SF Superior Court courier $67.50; FedEx shipments $121.92; Memo of Points and Authorities printing 150 pages $292.00; Reply ISO Motion to Quash $110.50; Westlaw research $245.06; FedEx (June) $49.21. |
| | |

**SIGNIFICANCE TO PSR OBJECTION**

Wang spent $29,579.11 in internet-law attorney fees during May–July 2019 exclusively to combat subpoenas and pursue third-party discovery proving that the Kill Baby K post was not attributable to her. This spending was directed at Cloudflare, Google, Charter, and Comcast — entities that would only matter if the IP-based attribution were false. A guilty party who actually authored the post would have no rational motive to spend tens of thousands of dollars generating forensic paper trails showing the IPs are shared Cloudflare edge nodes.

**KRONENBERGER | ROSENFELD**

150 Post Street
Suite 520
San Francisco, CA 94108

Phone  415.955.1155
Fax    415.955.1158
www.krinternetlaw.com

June 10, 2019

Kailin Wang
2481 Fairway Dr.
Spanish Fork, UT 84660

**Re**: **Invoice 18201**

Enclosed is Invoice No. 18201, which covers services through 5/31/2019.  This invoice is for $27229.48.  Your total balance, including past charges, is $12229.48.

Billing Summary

| | |
|---|---:|
| **Total Legal Fees** | $26,440.85 |
| **Total Expenses** | $788.63 |
| **Total interest and finance charges** | $0.00 |
| **Total payments and other transactions** | ($15,000.00) |
| **Total previous balance** | $0.00 |
| **Balance Due** | $12,229.48 |

This invoice is due upon receipt.  We thank you in advance for your prompt payment.

If you have questions about the attached invoice, please contact Elan Lee at 415.955.1155, ext. 101.

Sincerely,

Kronenberger Rosenfeld, LLP

*Enclosure*

KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, CA 94108

Kailin Wang                                                                  June 10, 2019
2481 Fairway Dr.
Spanish Fork, UT 84660

**Invoice #**                    **18201**

| **Please Remit:** | **$12,229.48** |
|---|---|

Professional Services

| | | | Hours | Amount |
|---|---|---|---|---|
| 5/1/2019 | LV | Process and route client documents into document management system; review same. | 0.33 | 68.33 |
| 5/2/2019 | KSK | Review background material; internal conference re: same; email client re: notices from Google and background information. | 1.08 | 622.92 |
| | LC | Internal conference re: motion to quash; review background; research for meet-and-confer and motion; research and draft meet-and-confer to opposing counsel and Google research subpoena; correspond with client re: same. | 4.42 | 1,700.42 |
| | LV | Process and route additional case documents into document management system; review same; internal conference with attorneys re: background, arguments, and strategy. | 1.92 | 392.92 |
| 5/3/2019 | KSK | Review and edit correspondence to counsel and to Google; internal conference re: same; conference with family law counsel re: subpoena strategy. | 0.92 | 527.08 |
| | LC | Review and revise meet and confer letter; internal conference re: same; correspond with client re: subpoenas; review further same and notices from third parties; research Krinsky and writs. | 1.25 | 481.25 |
| | LV | Draft notice of motion and motion to quash, memorandum of points and authorities, declaration, and separate statement in support thereof, and proposed order; internal conferences with attorney re: same; conferences with attorney and client re: moving to quash additional subpoenas. | 3.17 | 649.17 |

Kailin Wang                                                                    Page    2

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 5/5/2019 | LC | Review opposing counsel's response to meet-and-confer letter; research response to same. | 0.50 | 192.50 |
| 5/6/2019 | LC | Conference with co-counsel re: motion to quash; conference with opposing counsel re: same; internal conference re: same; review further background documents for same; correspond with client re: subpoenas; review and revise objections to Charter; review transcript from hearing. | 3.58 | 1,379.58 |
|  | KSK | Conference with counsel for Wang; internal conference re: same; review of correspondence; conference with counsel for petitioner; review hearing transcript; conference with client and family law counsel. | 2.58 | 1,485.42 |
|  | LV | Process and route response letter from opposing counsel re: meet-and-confer into document management system; review same; telephone call with co-counsel re: petitioner's response to meet-and-confer correspondence; draft subpoena to Cloudflare and attachment thereto; revise, finalize, and dispatch correspondence to Google re: motion to quash; telephone calls with opposing counsel and client re: motion to quash and objections to Charter subpoena; draft objections to subpoena to Charter; process and route transcript of hearing and documents from opposing counsel into document management system; review same. | 3.58 | 734.58 |
| 5/7/2019 | LC | Internal conference re: objections to Charter subpoena and motion for Google subpoena; correspond with opposing counsel re: same; research for potential motion to quash. | 1.25 | 481.25 |
|  | KSK | Internal conference re: offer to limit Google subpoena; review documents from opposing counsel; review subpoena to Cloudflare. | 0.42 | 239.58 |
|  | LV | Review objections to subpoena to Charter; internal conferences with attorney and co-counsel re: same; prepare enclosure correspondence and dispatch same to Charter; telephone calls with Charter re: same; revise, finalize, and dispatch for process serving and service on opposing counsel subpoena to Cloudflare. | 1.92 | 392.92 |
| 5/8/2019 | KSK | Court appearance in San Francisco Family Court; multiple conferences with client and co-counsel re: same. (TOTAL TIME WAS 3.5 HOURS, BUT REDUCED TO 2 HOURS) | 2.00 | 1,150.00 |
|  | LV | Review counter-proposal from opposing counsel; process and route background documents into document management system; internal conference with attorney re: hearing. | 0.42 | 85.42 |
| 5/9/2019 | KSK | Review and edit motion to quash; internal conference re: same. | 0.33 | 191.67 |
|  | LC | Review and revise notice of motion to quash; internal conference re: same; continue to research and draft motion to quash documents documents; review client further client documents. | 5.83 | 2,245.83 |
|  | LV | Update calendar re: hearing on motion to quash and related deadlines; revise, finalize, and dispatch to opposing counsel notice of motion to quash; prepare copies of same for filing with court; internal conferences with attorneys re: same and providing notice to subpoena recipients; | 2.33 | 478.33 |

Kailin Wang                                                                                      Page    3

| | | | Hours | Amount |
|---|---|---|---|---|
| | | email communications with opposing counsel re: Charter's production and obtaining copies of subpoenas. | | |
| 5/10/2019 | LC | Draft and revise motion to quash subpoenas; internal correspondence re: notice to third parties re: same. | 2.00 | 770.00 |
| | LV | Review email from Cloudflare re: subpoena; process and route filed notice of motion to quash into document management system; revise, finalize, and dispatch cover fax sheet and motion to quash to Comcast; internal conferences with attorneys re: same; telephone call to Comcast re: same. | 0.83 | 170.83 |
| 5/12/2019 | LC | Review and revise motion to quash and declarations. | 1.42 | 545.42 |
| 5/13/2019 | KSK | Correspond with Cloudflare; internal conference re: same. | 0.17 | 95.83 |
| | LC | Review and revise motion to quash and supporting papers; correspond with co-counsel re: same; internal conference re: same; review subpoena response from Cloudflare. | 2.75 | 1,058.75 |
| | LV | Draft, finalize, and dispatch enclosure correspondence and filed motion to quash to Google and Charter; process and route client's response to request for temporary restraining order into document management system; review same; review motion to quash; internal conference with attorney re: same; draft second subpoena to Cloudflare and attachment thereto. | 1.00 | 205.00 |
| 5/14/2019 | LC | Review additional petitioner subpoena; internal conference re: motion to quash; review and revise same. | 1.83 | 705.83 |
| | KSK | Conference with Cloudflare re: subpoena;internal conference re: same; review and edit motion. | 1.00 | 575.00 |
| | LV | Process and route client documents evidencing harassment into document management system; review same; internal conferences with attorney re: HolySmoke subpoena response and subpoena to Cloudflare. | 0.58 | 119.58 |
| 5/15/2019 | KSK | Review and edit motion to quash. | 0.08 | 47.92 |
| | LC | Internal conference re: motion to dismiss; correspond with co-counsel re: same; review Google subpoena exhibits; review and revise motion to dismiss; review client declaration; correspond with client re: same and background documents/evidence. | 2.33 | 898.33 |
| | LV | Internal conferences with attorney re: motion to quash; prepare exhibits for same; process and route client background documents into document management system. | 0.92 | 187.92 |
| 5/16/2019 | LC | Time after motion invoice: review and revise motion to quash documents; internal conference re: same. | 0.50 | 192.50 |

Kailin Wang                                                                                                  Page    4

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 5/16/2019 | LC | Internal conference re: motion to quash and Cloudflare subpoena; review and revise motion to quash documents; research forced consent; internal conference re: same. | 0.58 | 224.58 |
|  | LV | Process and route executed client declaration into document management system; draft tables of contents and authorities; prepare exhibits; revise, finalize, and dispatch for electronic filing and service motion to quash, declarations and exhibits in support thereof. | 3.17 | 649.17 |
|  | KSK | Review and edit motion to quash; internal conference re: same. | 0.83 | 479.17 |
| 5/17/2019 | KSK | Correspond with Cloudflare. | 0.17 | 95.83 |
|  | LV | Process and route filed versions of motion to quash into document management system. | 0.17 | 34.17 |
| 5/20/2019 | LC | Review correspondence with Cloudflare. | 0.25 | 96.25 |
|  | KSK | Email client update from Cloudflare; multiple internal conferences re: same. | 0.25 | 143.75 |
|  | LV | Process and route proof of service of subpoena to Cloudflare into document management system; internal conference with attorney re: Cloudflare's response to second subpoena. | 0.17 | 34.17 |
| 5/21/2019 | LC | Correspond with client re: additional background. | 0.17 | 64.17 |
|  | LV | Capture evidence of impersonation posts; review client emails re: same; internal conference with attorneys re: same; process and route transcript of hearing into document management system; review same. | 0.58 | 119.58 |
| 5/22/2019 | KSK | Conference with SF Police Department; update client by email. | 0.42 | 239.58 |
|  | LV | Process and route client background documents into document management system; review client's email re: status. | 0.17 | 34.17 |
| 5/23/2019 | LV | Review background documents re: timing of murder-suicide post; internal conference with attorney re: same. | 0.25 | 51.25 |
| 5/24/2019 | IT | Internal conference re: reply drafts; review local rules and requirements for replies; draft reply to petitioner's opposition to motion to quash, declaration of K. Kronenberger, declaration of K. Wang, proposed order, and corresponding proof of service; process and route petitioner's opposition to motion to quash, proposed order, proof of service, declaration of D. Chase, and declaration of E. Johnstone into internal document management system; update calendar accordingly; modify reply drafts. | 2.42 | 495.42 |
| 5/25/2019 | LC | Review further opposition to motion to quash; correspond with co-counsel re: same; start to draft reply for same. | 0.92 | 352.92 |
| 5/26/2019 | LC | Research and draft reply for motion to quash. | 3.25 | 1,251.25 |

Kailin Wang                                                                                                            Page      5

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 5/27/2019 | LC | Research and draft reply for motion to quash. | 2.17 | 834.17 |
| 5/28/2019 | KSK | Review and edit reply brief. | 0.33 | 191.67 |
|  | LC | Review and revise reply for motion to quash; draft declaration for same; conference with new family law counsel. | 1.75 | 673.75 |
|  | LV | Briefly review petitioner's opposition to motion to quash and reply in support thereof; process and route client background documents into document management system; review same. | 0.42 | 85.42 |
| 5/29/2019 | LC | Review and revise reply for motion to quash; correspond with client re: same; review briefly hearing transcript for same; internal correspondence re: evidence and deadlines. | 0.33 | 128.33 |
|  | LV | Process and route client background documents into document management system; review calendar re: motion to quash deadlines; email communications with attorney re: same. | 0.33 | 68.33 |
| 5/30/2019 | KSK | Review emails from client and new family law counsel and respond re: evidentiary issues and issues related to the June 6 hearing. | 0.25 | 143.75 |
|  | LC | Internal conference re: next steps; correspond with client re: background. | 0.17 | 64.17 |
|  | LV | Process and route client background documents into document management system; briefly review same; process and route petitioner's notice of change of address into document management system; advise attorneys re: receipt of same. | 0.33 | 68.33 |
| 5/31/2019 | LC | Review and revise motion to quash reply; internal correspondence re: same. | 0.25 | 96.25 |
|  | LV | Revise, finalize, and dispatch for electronic filing and service respondent's reply in support of motion to quash subpoenas and supporting declaration and exhibits; internal conferences with attorneys re: same; process and route filed versions of reply documents into document management system; dispatch same to client; preparation and assembly of documents for hearing. | 3.17 | 649.17 |

**For professional services rendered**                                                           **76.51** **$26,**440**.85**

Additional Charges :

| 5/2/2019 | SF superior court courier | 67.50 |
|---|---|---|
| 5/10/2019 | FedEx Tracking No. 775192731319 | 31.11 |
| 5/17/2019 | FedEx Tracking No. 775232017894 | 21.07 |
|  | Memo of Points and Authorities, Delcaration of K. Kronenberger, Proposed Order, Proof of Service150 pages.One legal 11824141 | 292.00 |

Kailin Wang                                                                               Page     6

|  |  | Amount |
|---|---|---:|
| 5/22/2019 | FedEx Tracking No. 775232015181 | 21.39 |
| 5/31/2019 | Legal research database charge (Westlaw). | 245.06 |
|  | Reply ISO Motion to Quash<br>One legal 11845662 | 110.50 |

**Total costs**                                                                          **$788.63**

**Total amount of this bill**                                                            **$27,229.48**

6/10/2019  Payment from Trust Account to Kronenberger Rosenfeld                           ($15,000.00)

**Balance due**                                                                          $12,229.48

## Timekeeper Summary

| Name | Hours | Rate | Amount |
|---|---:|---:|---:|
| Karl S. Kronenberger - Partner | 10.83 | 575.00 | $6,229.17 |
| Liana Chen | 37.50 | 385.00 | $14,437.50 |
| Leah Vulic - Paralegal | 25.76 | 205.00 | $5,278.76 |
| Iyah Turminini | 2.42 | 205.00 | $495.42 |

TRUST ACCOUNT

| | | |
|---|---|---:|
| | **Previous balance of Trust Account** | **$0.00** |
| 5/3/2019 | Client Deposit to Trust Account | $15,000.00 |
| 6/10/2019 | Payment from Trust Account to Kronenberger Rosenfeld | ($15,000.00) |
| | **New balance of Trust Account** | **$0.00** |

K R O N E N B E R G E R | R O S E N F E L D

150 Post Street
Suite 520
San Francisco, CA 94108

Phone 415.955.1155
Fax 415.955.1158
www.krinternetlaw.com

July 5, 2019

Kailin Wang
2481 Fairway Dr.
Spanish Fork, UT 84660

**Re**: **Invoice 18273**

Enclosed is Invoice No. 18273, which covers services through 6/30/2019.  This invoice is for $2349.63.  Your total balance, including past charges, is $2349.63.

Billing Summary

| | |
|---|---:|
| **Total Legal Fees** | $2,300.42 |
| **Total Expenses** | $49.21 |
| **Total interest and finance charges** | $0.00 |
| **Total payments and other transactions** | ($12,229.48) |
| **Total previous balance** | $12,229.48 |
| **Balance Due** | $2,349.63 |

This invoice is due upon receipt.  We thank you in advance for your prompt payment.

If you have questions about the attached invoice, please contact Elan Lee at 415.955.1155, ext. 101.

Sincerely,

Kronenberger Rosenfeld, LLP

*Enclosure*

**KRONENBERGER ROSENFELD, LLP**
150 Post Street, Suite 520
San Francisco, CA 94108

Kailin Wang
2481 Fairway Dr.
Spanish Fork, UT 84660

July 5, 2019

| | | |
|---|---|---|
| **Invoice #** | | **18273** |

| | |
|---|---|
| **Please Remit:** | **$2,349.63** |

Professional Services

| | | | Hours | Amount |
|---|---|---|---|---|
| 6/3/2019 | LV | Continue preparation and assembly of documents for hearing on motion to quash. | 0.58 | 119.58 |
| 6/4/2019 | LC | Correspond with client re: further background; review petitioner's amended declaration. | 0.25 | 96.25 |
| | LV | Process and route evidence of additional impersonation into document management system; process and route supplemental attorney declaration in opposition to motion to quash into document management system; advise attorneys re: receipt of same; update documents for hearing re: same. | 0.42 | 85.42 |
| 6/5/2019 | LC | Review tentative ruling re: motion to quash; internal conference re: same; review documents for same. | 0.42 | 160.42 |
| | KSK | Conference with Utah counsel for client in preparation for hearing; review tentative ruling and prepare for hearing. | 1.42 | 814.58 |
| | LV | Process and route tentative ruling on motion to quash into document management system; review same; advise attorneys re: same; telephone calls to opposing counsel and court re: contesting tentative ruling. | 0.50 | 102.50 |
| 6/6/2019 | KSK | Court Appearance at motion to quash subpoenas; travel to and from court; conference with client after court. | 1.08 | 622.92 |
| | LV | Internal conference with attorneys re: murder-suicide post and hearing on motion to quash; process and route client's timeline of events into document management system. | 0.25 | 51.25 |
| 6/17/2019 | LV | Process and route petitioner's proposed findings and order after hearing into document management system; internal conference with attorney re: same.. | 0.17 | 34.17 |

Kailin Wang                                                                                    Page    2

| | | | Hours | Amount |
|---|---|---|---|---|
| 6/18/2019 | LV | Internal conference with attorney and email communications with Google re: order on motion to quash; process and route search warrant to Google into document management system; internal conference with attorney re: same. | 0.25 | 51.25 |
| | LC | Internal correspondence re: criminal warrant. | 0.17 | NO CHARGE |
| 6/21/2019 | LC | Review docket re: proposed order. | 0.08 | 32.08 |
| | LV | Internal conference with attorney re: proposed order. | 0.17 | 34.17 |
| 6/26/2019 | KSK | Review correspondence from counsel re: final order on motion to quash and correspond with client re: same. | 0.17 | 95.83 |
| 6/27/2019 | LC | Voicemail from Google re: subpoena; internal conference re: same. | 0.17 | NO CHARGE |
| | LV | Telephone call to Google re: motion to quash search warrant; internal conference with attorneys re: same; internal conference with attorneys re: limited scope representation notice and substitution of attorney; draft notice of limited scope representation and substitution of attorney. | 0.83 | NO CHARGE |

SUBTOTAL:                                                          [    6.93    2,300.42]

**For professional services rendered**                              **6.93    $2,300.42**

Additional Charges :

5/31/2019  FedEx Tracking No. 775358571247                                           31.85

FedEx Tracking No. 775358562459                                                      17.36

SUBTOTAL:                                                                          [    49.21]

**Total costs**                                                                    **$49.21**

**Total amount of this bill**                                                    **$2,349.63**

**Previous balance**                                                            **$12,229.48**

6/13/2019  Payment - Thank You                                                 ($12,229.48)

**Balance due**                                                                  $2,349.63

Timekeeper Summary

| Name | Hours | Rate | Amount |
|---|---|---|---|
| Karl S. Kronenberger - Partner | 2.67 | 575.00 | $1,533.33 |
| Liana Chen | 0.75 | 385.00 | $288.75 |
| Liana Chen | 0.34 | 0.00 | $0.00 |

**415-955-1155**

**www.KRInternetLaw.com**

1

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

UNIFIED FAMILY LAW COURT

DEPARTMENT 404

---oOo---

HONORABLE RICHARD C. DARWIN, JUDGE

CHRISTOFFER STANFORD THYGESEN,        )
                                      )
                PETITIONER,           )
                                      )COURT NO. FDV-19-814465
        vs.                           )
                                      )
KAILIN WANG,                          )
                RESPONDENT.           )
_____  )

**REPORTER'S TRANSCRIPT Of PROCEEDINGS**

**JUNE 25, 2019**

APPEARANCES OF COUNSEL:
    **FOR PETITIONER:**
    KAYE, MOSER, HIERBAUM
    BY:  DARRICK TRACEY CHASE
    101 California Street, Suite 2300
    San Francisco, California  94111

    RIDDER, COSTA & JOHNSTONE LLP
    BY:  ERICA JOHNSTONE
    12 Geary Street, Suite 701
    San Francisco, California  94108

    SUCHERMAN & INSALACO LLP
    BY:  MICHELENE INSALACO
    100 Spear Street
    San Francisco, California  94105

    **FOR RESPONDENT:**
    LAW OFFICES OF SAMI MADDEN MASON
    BY:  SAMI MADDEN MASON
    141 Bryce Canyon Road
    San Rafael, California  94903

Reported By:  Ann Delgado, CSR No. 11185

2

<div align="center">

**INDEX OF WITNESSES**

</div>

| WITNESSES: | PAGE |
|---|---|
| **KAILIN WANG** | |
| Direct Examination By Ms. Mason | 31 |
| Cross-Examination By Mr. Chase | 52 |
| Redirect Examination By Ms. Mason | 69 |

<div align="center">

**EXHIBIT INDEX**

</div>

**PLAINTIFF'S EXHIBITS:**

| NO. | DESCRIPTION | ID | EVD |
|---|---|---|---|
| A | Birth Certificate | 59 | 59 |
| C | Emails | 64 | 64 |
| D | Email containing New York address | 64 | 64 |
| H | 1/24/19 email | 65 | 65 |

**RESPONDENT'S EXHIBITS:**

| NO. | DESCRIPTION | ID | EVD |
|---|---|---|---|
| A | Amended birth certificate | 70 | 71 |
| O | Photographs | 51 | 51 |

and authorities, which were very helpful.  I've reviewed them, and I wanted to make sure I could come in and be ready to make some rulings.

Here is my ruling on the threshold question that Ms. Insalaco just raised of whether procedurally I can revisit the order I made in March regarding this being home state and so I can thus being able to issue those custody and visitation orders as I did back in March.

Keep in mind that was an ex parte order.  It was not a contested proceeding.  So it was issued without evidence from one side, which is typical for DVROs.  That's how it works.  Like almost all orders issued on an ex parte basis and certainly those under the Domestic Violence Prevention Act, it's a temporary order pending contested evidentiary hearing.  That's what happened on March 6.

At the evidentiary hearing, which was scheduled for, I believe, May 8, after it was continued once, the responding party may challenge any or all components of that ex parte order -- stay away, move-out, if it's ordered, custody, visitation.  And they can challenge it on any basis on an evidentiary basis -- legal basis and jurisdictional basis.  That's what the evidentiary hearing is for.

I don't think you waive your right to challenge any component of an order that was issued ex parte by failing to file a motion for reconsideration or appeal.  And that applies to whether the -- I mean, that applies to any component of a temporary restraining order.

Remember, that temporary order contains stay-away orders,

7

personal conduct orders, and the visitation and custody orders. I was asked to come back here to have a hearing -- evidentiary contested hearing on all of those issues.

So the very first time the respondent appeared -- actually, the day before, on the 7th, she said, "I will be challenging, among other things, the jurisdictional basis of that TRO."

So I find she hasn't waived her right to challenge custody and visitation, either on the merits -- you know, what's in the best interest of the child -- or on jurisdictional basis on which that order was issued. She has the right to present evidence on that critical issue.

And I would analogize it to a restraining order that was issued against someone who's going to contest personal jurisdiction and they were served in New York and said, "Look, I was never in California. You have no personal jurisdiction against me." That person can specially appear. It's not an exact analogy, but close -- having a hearing and saying, "You didn't have jurisdiction to that issue."

So I don't think she has waived her right to challenge jurisdiction. I think in that she can present evidence on whether on February 15, 2019, when the issue in this action was initiated, California really was the home state or Utah was the home state. And there are plans for that evidence to be presented today, and I will make a decision this afternoon as to whether California or Utah is home state.

So that's -- I'm happy, if you think I got some component of that analysis wrong -- I know that's not consistent with

Ann Delgado, CSR No. 11185

8

what petitioner is asking for, and I invite you to tell me now, because that's the way I see it.  Just like any other component of that TRO, she can challenge it at the evidentiary hearing, which is what we are doing.

MS. INSALACO:  So respectfully, I do believe the Court is --

THE COURT:  What did I miss?

MS. INSALACO:  You're missing the fact that under UCCJEA, when you make a custody determination, that is a final finding.  And if you look at Family Code 3402, it says -- this is the California version of the UCCJEA -- "A child custody determination means a judgment, decree, or other order, and it includes a permanent, temporary, initial or modification order."

So when you make a temporary order, if you make a custody order as part of that, you're making a decision that you have jurisdiction.  You can't do it part way.  You can't say, "Well, I'm going to make a custody order and then decide jurisdiction later."  You have to decide jurisdiction.  You have it, and then you go ahead and make the custody order, which this Court did.  And that order is -- that decision is, under the code, a custody determination for purposes of UCCJEA.

And once you have done that, this is the state that has asserted jurisdiction.  And unless you -- unless that decision is properly challenged, we submit it's final.  And if a person from New Jersey got served with papers there and the judge made a ruling against him or her and then they were served

9

with it, they would typically have to do something.  They would challenge that order under the procedural civil rules.

They would come to court and ask to have it be found void or repeal it or ask to reconsider it.  You can't just sit there and not do anything.  She was personally served on June 18.

THE COURT:  March 18.

MS. INSALACO:  Yes, sorry.  March 18.

So she was clearly on notice of the order at that point.  She had an attorney at that point.  She didn't make any effort to seek review of it in any way.

THE COURT:  So here is what bothers me about that argument, because I thought about all of this all day yesterday AND all day last night.

It would -- I can't see how due process is served if a jurisdictional decision under UCCJEA can be made and considered to be final with only evidence presented by one side.

That's -- because it -- I know how it played out here, and it just so happened she called in.  But literally anybody can file a DVRO request, and they are always heard.  I hear them every day.  They land on my desk, and they are uncontested.  It's just the application and a request for a temporary restraining order and whatever evidence they presented.

And that would be whether it happened the way it did here or even in that situation where I say, "Okay.  Looks like the kid is in California or born here," and I check the box saying

you get your custody visitation orders, and that's done, that's a done deal, even though if you look at the papers that respondents are served with, they get the notice of hearing, they get something called a DV-120 information packet that says if you disagree with these orders here is how you come in and contest it.

And they would say, "Okay.  Well, clearly the judge got it wrong on that custody part; so I will come in and follow the directions of my papers I just got served with and then to be told "Sorry.  You're too late on that one issue.  You had to do something completely different that is not mentioned in these papers."

And that's why I struggle with this idea that my determination on March 6 with one side here and the other side not was a final determination, and at this point it's final forever absent an appeal that she would not even know to make.

MR. CHASE:  She could have filed a motion to reconsider. She could have filed a motion for a new trial.  She had an attorney making UCCJEA arguments in Utah.  So that attorney clearly knew the rules.  And you have to keep in mind on the fact pattern you described, the original order was filed and there was actual notice.  She chose not to come here for the hearing.  She called in and Your Honor said from the bench, "Oh, she knows this is happening."

She knew it was happening.  It's not like this was purely ex parte on the very first appearance where someone comes in completely ex parte, no notice, and you make a decision then.

to be determined -- that this child was a resident of this state from the date of birth until the filing of the initial action, which I believe was around February 15.

And that's the evidence that we need to put on here today. And I think we -- all of us have briefed it all for you. So I don't think we need to go back into that argument.

THE COURT: Okay. Look, in my view this process is working, actually, the way it's supposed to, which is I am presented with one side's papers, and I make what is called an ex parte order and set it for an evidentiary hearing where the ex parte order is either continued on a long-term basis, modified or denied. But the respondent is able to present any and all evidence and arguments they want to at the evidentiary hearing, which is what we are doing.

I did not make on a contested basis custody and visitation orders. I made it on the basis of evidence that was presented by one party. There was no proof of service. Otherwise I would have proceeded with the full DVRO hearing that morning if I thought that I had the basis for doing so. It was an ex parte proceeding, and I believe that respondent has not waived her rights to challenge any part of that.

So today we're going to proceed with the presentation of evidence on the question of what was the child's home state as of February 15, 2019. And I -- I believe the burden of establishing that is on the petitioner who is asserting that California is the home state as the person seeking issuance of those orders.

And just so we're clear, if I conclude that California is

16

not the home state and that Utah was the home state, I just want you to understand that what I would do is exercise emergency jurisdiction to keep the current orders in place, however arrange a call with the judge in Utah and let them know the decision that I made so that custody and visitation proceedings can -- I think they are currently stayed in Utah -- can proceed there.

So that doesn't mean the DVRO doesn't go forward here. It will, and it will cover everything except custody and visitation. But I would keep -- I'm not -- just so we have a custody and visitation order in place until another decision is made in Utah.

This is, again, if I conclude Utah is the home state. I would exercise emergency jurisdiction under 3424, which I believe I have because the child is in the state now and I have already concluded, at least on a temporary basis, that the child needs protection. But I would then proceed as required by the Family Code, to call the judge, Judge Low in Utah.

MS. INSALACO: Can I make a couple of comments? The issue is whether there's a basis for jurisdiction under the UCCJEA. Home state was one of four. We argued two different bases could apply. Number two, if this Court found that Utah was the home state, there would be a different proceeding in Utah where Mr. Thygesen would ask the court there to decline jurisdiction in favor of California because of inconvenient forum.

THE COURT: Which he would be entitled to do.

Ann Delgado, CSR No. 11185

17

MS. INSALACO:  -- unjustifiable actions.

THE COURT:  Sure.  It wouldn't be the end of the story, but that's what would happen next.

MS. INSALACO:  I have one other housekeeping question. We are requesting that the Court remove from the public file the photos and private information about Kayson.  There has been most recently a photo of his genitals when he was born. There's all sorts of medical information about him.  There's all sorts of extremely confidential, private information that has been put into the file relating to him -- his birth certificate, welfare applications.

THE COURT:  Let me stop you.  Have you made this request in writing or just something you're just asking me to do right now?

MS. INSALACO:  We're requesting either that you do it now just based on the clear evidence that it's necessary and under the -- you may be aware that effective January 2018, there is a new section of the Family Code to permit the court to put information about a minor in a DV case into the confidential section of the file.

THE COURT:  Right.

MS. INSALACO:  You have the --

THE COURT:  Let me just -- I prefer to get it in writing so I know exactly which -- it's a big record -- and I can find things that you want me to deem confidential, rather than trying to dig through it in this hearing because we have limited time.  I'm not opposed to what you're asking.  But there may be a picture with a kid and a rattle.  I don't think

18

that has to be confidential unless you tell me why it should. But medical information and that sort of thing generally does have to --

MS. INSALACO:  We also would like to ask that the Court would modify the caption of the case to use the parties' initials because that's the best way to be sure that Kayson's information isn't located down the road when he is older.  And if you prefer a separate -- I have a brief I have prepared, but if you prefer a separate motion, we can do that.  I don't know if respondent opposes the request.

THE COURT:  Does respondent oppose the request to modify the caption to be the initials rather than full names?

MS. WANG:  They're probably changing his name without my permission, but okay.

MS. MASON:  I'm sorry, Your Honor.  What was the question?

THE COURT:  To modify the caption to initials rather than full names, particularly of Kayson.

MS. MASON:  I'm sorry.

THE COURT:  This is why I think it has to be in writing. I want them to have a better understanding of what you're asking the Court to do and identify specific materials in this big record that you want sealed or deemed confidential.

MS. MASON:  Can we deal with that as the evidence gets presented?

THE COURT:  Well --

MS. INSALACO:  These are things that are already in the court file.

Ann Delgado, CSR No. 11185

19

THE COURT:  Right.  So I'm not ruling on it.  I just want -- I don't want to try to do it as an oral motion.

MS. INSALACO:  Could we set a hearing date?

THE COURT:  Sure.  But let's do that after we are done with the evidentiary portion of this.

So the burden is going to be on the petitioner to establish California is the home state.

And let me just ask counsel, how do you want to proceed?  Do you have witnesses?  Do you want to -- you asked to stipulate certain documents into evidence.  How would you like to --

MR. CHASE:  I have both a direct and a cross-examination of Ms. Wang.

THE COURT:  Okay.

MR. CHASE:  I would like to reserve that.  I would like to reserve my full 776.  I do have questions that I want to ask her with respect to both evidence I want to go in and that I think bears on her credibility in this case.  So if I could reserve that until after she testifies.

THE COURT:  All right.  Do you have any evidence to present in your case in chief?

MR. CHASE:  Mr. Thygesen submitted a declaration with respect to his --

THE COURT:  To California?

MR. CHASE:  Yes, the baby being subject to -- Mr. Thygesen has had the baby since March 7, and we would be willing to submit his testimony there and prior testimony that is on the record without the need to put him up on the stand.

Ann Delgado, CSR No. 11185

76

MS. MASON:  Yeah.

THE COURT:  But having taken everything into account and having listened to respondent's testimony, while I have some difficulty with her credibility on a number of issues, I do find that Utah is the home state.  I think Kayson was born there.  He lived there for, by my count, about 70 days out of 80, between his birth and the date that this action was initiated in mid February.  There was some indication that he -- from emails -- that he was back and forth between other states, but none of the other evidence suggests that.

So my conclusion is that custody and visitation issues will have to be litigated and decided by a Utah court.

So as I mentioned earlier, again, I make that determination based on everything that I heard and notwithstanding some concerns I have about the credibility of the respondent's testimony and some contradictory emails and communications, I think a great weight of the evidence supports that the child was in Utah almost continuously up until the day he was -- when this action was initiated.

So as I mentioned earlier, at the moment there is no custody and visitation order in Utah.  There is only custody and visitation order here.

MR. CHASE:  There actually is one out of Utah.

THE COURT:  For now I'm keeping -- I'm keeping the existing custody and visitation order in place under emergency UCCJEA jurisdiction under Family Code Section 3424 until the matter is picked up by the Utah court.

I will grant the previous request by respondent for

supervised visitation at Rally, which I will grant pending hearing on the restraining order.  It's been a long time.  I think a Rally supervised visit will allow respondent to see the child in a safe setting.  So we will get that order out.

MS. MASON:  Can the decision on child custody in Utah -- mother can have --

THE COURT:  Supervised visitation.

MS. MASON:  Okay.

THE COURT:  At Rally in San Francisco.

MS. MASON:  What is the name?

THE COURT:  It's called Rally.  It's up on the corner of Hyde and Bush, the Rally Project.

So petitioner will continue to have sole legal and physical until this -- until the matter is taken up by the Utah court.  Supervised visitation once a week for respondent at the Rally Project.  I am going to communicate with the Utah court as quickly as possible to let them know about my decision on home state.  And from that point forward, it will be up to the parties and counsel to arrange that litigation there.

MS. MASON:  How long --

THE COURT:  I'm also reissuing the temporary restraining order.  It will continue to exist subject to modification of allowing brief and peaceful contact for court-ordered visitation so the respondent can have supervised visitation, and it will include the supervised visitation order.

MS. MASON:  How long will those visits be?

THE COURT:  Rally provides for one-hour long visits.  So

78

the parties are ordered to register.  You have to do an intake process with Rally to allow supervised visits to begin.  I'm going to have the petitioner for the moment -- given the financial inequality -- petitioner will pay the fees for the supervised visitation.  They're not significant.

And at this point, the parties are going to have to go back to 405 to set a trial; right?  What is going to happen on the trial date for the actual --

MS. INSALACO:  We would like Your Honor to set the trial date.  We would like to proceed and get a trial date.

THE COURT:  The trial date is going to be in 405.  This is going to be a long trial, just evidenced by how this proceeding went.  There is going to be a lot of testimony.  My guess is -- I can't -- if we were to do it in 404, we would string you out over six-and-a-half days -- afternoons -- over the course of three months and your trial would be in November.  I don't think anyone wants that.

MS. INSALACO:  I submit that once we have the subpoenaed documents it will be completely clear who posted the threatening posts, and it will be quite simple because that's the whole basis of --

MS. WANG:  Plus impersonation posts made by Christopher.

THE COURT:  Okay.  Look, I don't think I can try this case.  I don't think -- we have a separate trial department solely for longer trials.  This is going to be a longer trial. So I can't do it in 404.  I can't give you a trial date anytime in the near future, and it will be a lots and lots of

79

afternoons.  It just doesn't make sense.  It'll be broken up by days and days.  I think you need to go back to 405.

MS. INSALACO:  Can you give us a date to go back to 405?

THE COURT:  We can go off the record.

(Discussion off the record.)

THE COURT:  Back on the record.

MS. INSALACO:  We would request there not be visits until the DV hearing, because there are threats to kill the child. And whether they are at Rally or not, the child is potentially at risk until the court has heard the evidence and assessed, perhaps, the psychological well-being of the respondent.  It could put the child at risk to have any visits even at Rally.

THE COURT:  That argument was made the last time we were here.  And I have ordered Rally supervised visitations in other situations.  I'm very confident that they are well-equipped to make sure no harm will come to your son.  So I think you should feel confident.  It's a hospital.  There is staff everywhere, and the whole visit is observed.  So I am confident that it is a safe environment for those visits. Okay.  Off the record.

(Proceedings concluded.)

Ann Delgado, CSR No. 11185

80

STATE OF CALIFORNIA                    )
                                       )    SS.
COUNTY OF SAN FRANCISCO                 )
                                       )


                     REPORTER'S CERTIFICATE


          I, ANN DELGADO, Certified Shorthand Reporter of

the Superior Court of the County of San Francisco, State of

California, hereby certify that the foregoing is a full, true,

and correct transcript of the proceedings had in the

above-entitled matter, and that the same is a full, true, and

correct transcription of my shorthand notes as taken by me in

said matter.


Dated this July 3, 2019



                              *ann delgado*
                              _____
                              ANN DELGADO, CSR NO. 11185

| Exhibit M | Wang Financial Hardship Evidence — Irrationality of Self-Incrimination Spending |
|---|---|
| **Case** | Thygesen v. Wang, No. FDV-19-814465, SF Superior Court |
| **Dates** | July 25, 2019 and related period |
| **Source** | Lanie Lee (Wang) email to Darrick Chase, Esq. (Kaye Moser) — July 25, 2019, 11:25 PM; Aaron Minc correspondence; Kronenberger billing records (see Exhibit K) |
| **Lanie Lee (Wang) Email to Darrick Chase — July 25, 2019** | Wang wrote to petitioner's family law counsel Darrick Chase stating: "I'm bankrupted from this unlawful litigation brought on by your client." She describes the Thygesens as wealthy clients "drowning a first time ethnic mother and her family in unlawful litigation." She identifies that no posts regarding baby Kayson's well-being exist besides those made by Christoffer Thygesen, including the Kill Baby K post and posts urging Wang to kill herself, and numerous others discovered since 3/6/19. She forwarded this same correspondence to Nickolas Pope at HolySmoke.org on August 10, 2019. |
| **Aaron Minc Response (Screenshot Attachment)** | Aaron Minc (internet defamation attorney) advised that his firm has subpoenaed beware.org (possibly now the owner of HolySmoke) before. He acknowledged the Cloudflare problem, noting that in other cheater-site cases he had to hire forensic experts and access actual server files to obtain real IPs — describing it as requiring general server traffic review. He stated that approach had previously identified perpetrators. This exchange confirms that identifying the true poster of the Kill Baby K post would require server-level forensic access, not merely Cloudflare's edge-node logs. |
| **Financial Irrationality Analysis** | Wang described herself as bankrupt at the time she was simultaneously spending $29,579.11 at Kronenberger Rosenfeld (see Exhibit K). This creates a logical paradox under any theory of guilt: a person who authored the Kill Baby K post could have simply confessed at zero cost, stopping all litigation instantly. Instead, a financially devastated single mother paid San Francisco internet-law specialists — billing at $575/hr — to pursue Cloudflare, Google, Charter, and Comcast subpoenas. Spending near $30,000 to generate forensic evidence demonstrating non-attribution is the conduct of an innocent person, not the conduct of someone with any rational incentive to conceal authorship. |
| **Petitioner's Litigation Strategy** | The Thygesens, described by Wang as wealthy, used subpoena litigation as an offensive tool: the HolySmoke subpoena was filed by Rifleman Law (Utah), engaged by the Thygesen grandparents, not by law enforcement. Each of Wang's defensive subpoenas seeking to identify the true author were opposed and denied by petitioner's counsel. A party with financial resources and five attorneys suppressed the very discovery that would have resolved the attribution question — the |

| | opposite of what a party confident in their attribution evidence would do. |
|---|---|
| | |

**SIGNIFICANCE TO PSR OBJECTION**

Wang's own contemporaneous statement that she was bankrupt, combined with her $29,579.11 expenditure to prove non-attribution, demolishes any theory that she authored the Kill Baby K post. Rational actors do not spend money they do not have to create forensic evidence against themselves. Petitioner's systematic blocking of every attribution subpoena — while Wang spent her last funds on defensive discovery — is consistent with deliberate suppression of evidence that would identify the true poster.

 Gmail

Lanie Lee <lancewr12@gmail.com>

## Aaron Minc

**Lanie Lee** <lancewr12@gmail.com>                    Thu, Jul 25, 2019 at 11:25 PM
To: Darrick Chase <dchase@kayemoser.com>

Mr. Chase,

As you know there are no posts regarding the well being of Kayson besides the ones made by Christoffer Thygesen in regards to " Kill baby K" and for Ms. Wang to kill herself and numerous others ones discovered since 3/6/19.

I do want to offer this suggestion  that can be helpful to your discoveries.
Though to prove Christoffer did'nt do it you can always seek out this Aaron Minc, he can maybe uncover the truth. And I'm bankrupted from this unlawful litigation brought on by your client. There is
 no shame in clients as wealthy as the Thygesen's drowning a first time ethinic mother and her family in unlawful litigation as your clients have.

But my feeling is, you won't do more discovery on that post and on holysmoke because your client posted it.  The Thygesen's certainly financially have the capacity to find the identity of that poster. But it's your client who did it, that's why Christoffers legal team deliberately avoid discovery on that site like a plague.

I hope this suggestion can be helpful to both of us.

Regards,



**Screenshot_20190725-221337_Gmail.jpg**
882K



| Exhibit N | T-Mobile CSLI — Wang Phone Located in New York City on March 6, 2019; IP 108.162.219.228 Not Linked to Wang |
|---|---|
| **Case** | Thygesen v. Wang, No. FDV-19-814465, SF Superior Court |
| **Dates** | March 5–7, 2019 (CSLI records); August 6, 2020 (T-Mobile declaration) |
| **Source** | T-Mobile US, Inc. Law Enforcement Relations, 4 Sylvan Way, Parsippany, NJ 07054; Custodian Deisi Franco; T-Mobile / MetroPCS Tracking ID: 2847939 |
| **T-Mobile Custodian Declaration** | Deisi Franco, Custodian of Records for T-Mobile US, Inc., attested under penalty of perjury (28 U.S.C. Section 1746) on August 6, 2020 that records produced are true and complete copies of T-Mobile business records. Records cover MSISDN 917-432-4181 (Wang) and 917-957-3166 for period 8/6/2018–12/31/2019, including Call Details With Cell Sites and Subscriber Info. |
| **CSLI Data — March 6, 2019 (All Day)** | T-Mobile cell site location data places Wang's phone (917-432-4181) at 65 West 70th Street, New York, NY 10023 continuously throughout March 5–7, 2019. Records show calls from midnight through 11:59 PM on 3/6/2019 all registering the same NYC cell site. Wang was physically in New York City on the day the Kill Baby K post was made. |
| **Geographic Distance Analysis** | Cloudflare IP 108.162.219.228 (used in Kill Baby K post, 3/6/2019) resolves via MaxMind GeoIP2 to Newark, New Jersey — approximately 15.2 miles (24,462 meters) from 60 West 70th Street, New York, NY. Drive time: 53 minutes via NJ-495 W. The IP's geographic center is in Newark, NJ — a Cloudflare data center city, not a residential location. |
| **IP Non-Attribution Finding** | Per law enforcement analysis: "T-Mobile Law Enforcement Response on Cell Site Location Information (CSLI) — On March 6, 2019 Wang's phone showed her in the vicinity of 60 West 70th St., NY, NY. The Cloudflare IP address for the 3/6/19 Kill Baby K post is identified as 108.162.219.228. That IP address has NOT been matched to the 21,000 IP addresses from the Medium Account nor the 100,000 IP addresses contained in the IP addresses found in the Search Warrant returns from the 16 Gmail Accounts. Thus, it is not possible Wang made the March 6, 2019 Kill Baby K post." |
| **Scope of IP Search Conducted** | Law enforcement compared Kill Baby K IP 108.162.219.228 against: (1) 21,000 IP addresses from Wang's Medium account; (2) 100,000 IP addresses from search warrant returns covering 16 Gmail accounts associated with Wang. No match was found. The Cloudflare edge-node IP is a shared infrastructure address used by thousands of internet users simultaneously, making attribution to any individual user technically impossible without server-level logs that HolySmoke.org did not maintain. |

| Cell Site Records Sample (3/6/2019) | Representative entries: 03/06/2019 01:03:38 — incoming call, cell site 65 West 70th Street, NY; 03/06/2019 05:01:21 — incoming call, 65 West 70th Street, NY; 03/06/2019 16:30:13 — incoming, 65 West 70th Street, NY; 03/06/2019 18:28:34 — outgoing, 65 West 70th Street, NY; 03/06/2019 20:48:34 — outgoing, 65 West 70th Street, NY; 03/06/2019 23:08:01 — incoming, 65 West 70th Street, NY. All 3/6/2019 entries show same NYC location. |
| | |

**SIGNIFICANCE TO PSR OBJECTION**

T-Mobile CSLI definitively places Wang in New York City for the entirety of March 6, 2019. The Kill Baby K IP (108.162.219.228) resolves to a Cloudflare node in Newark, NJ — 15.2 miles away — and was not matched to Wang's phone IP, Medium account IPs, or any of 100,000 IPs from 16 Gmail search warrant returns. Law enforcement expressly concluded it was "not possible Wang made the March 6, 2019 Kill Baby K post." Despite this conclusion, the post continued to be weaponized in litigation.

## STATE OF CALIFORNIA, CITY and COUNTY OF SAN FRANCISCO
## RETURN TO SEARCH WARRANT

I Sgt. Michele Martinez, being sworn, says that he/she conducted a search pursuant to the below described search warrant:

**Search Warrant/Case number:** 190112228

**Issuing Magistrate:**

**Magistrate's Court:** Superior/Municipal Court # 23___, City and County of San Francisco.

**Date of Issuance:**___4/17/19_____.

**Date of Service:**___4/17/19_____.

and searched the following:

Comcast Corporation
Comcast Legal Response Center
650 Centerton Road
Moorestown, NJ 08057

and seized the following:

Subscriber records

I further swear that this is a true and detailed account of all the property taken by me pursuant to the search warrant and that pursuant to Penal Code Sections 1528 and 1536 this property will be retained in my custody, subject to the order of this court or of any other court in which the offense in respect to which the seized property is triable.

Be advised that pursuant to California Penal Code Sections 1539 and 1540, you may file a written motion in the court of the above-named magistrate who issued the search warrant, seeking the return of the property seized pursuant to this warrant. For further information concerning this search warrant contact Sgt. Michele Martinez at telephone number (415) 553-1133.

_____
(Signature of Affiant)
Sworn to and subscribed before me this 07 day of ___M__, 2019.

_____
(Signature of Magistrate)
**Judge of the Superior Court, Department__13__**
**City and County of San Francisco, California**

distress on, and disclosing confidential information. Wang was not present in court at the time of the hearing. On 3/18/19, Deputy Ventura personally served Wang with a copy of the Temporary Restraining Order, Child Custody and Visitation Order, and Travel Order.

The following website and account names were used by Wang to post articles or contact friends, family and acquaintances. Medium.com: @lancewr12, @eggfu45, @zbarken, @christofferthygesensexchild, @kaywg4456, @jbarketn345, @10006259, @tvnpvn688, @bonb4905, @hanjun083, @qtempert.

On 3/8/19, Judge Quinn of the San Francisco Superior Court signed a search warrant commanding me to search A Medium Corporation to obtain information associated with the listed accounts, including IP addresses. On 3/14/19, I received the results from the search warrant served on A Medium Corporation.

A Medium Corporation provided over 21,000 IP addresses used to access the accounts. Once the duplicate IP addresses were removed, there were 876 unique IP addresses. Four IP Addresses came back to the Internet Service Providers, Comcast Cable Communications (73.3.98.183), CenturyLink Communiations (65.126.127.202), Stealth Communications (207.251.101.104) and Charter/Spectrum Communications (66.65.126.174).

I know from my training, experience and consulting with other investigators that Internet Service Providers like Comcast Corporation stores and maintains Subscriber Information and Internet Protocol (IP) Logs of their users as a regular course of business. I believe that a search of these specific IP Addresses at the specific times they were used to access the listed accounts will provide evidence of stalking and electronic/online harassment by Wang.

Based on the above facts, which I swear under penalty of perjury are true and correct to the best of my knowledge and belief, I have probable cause to believe, and do believe, that evidence of the violation of 646.9(a) pc (Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking), and 653m(a) pc (Every person who, with intent to annoy, telephones or makes contact by means of an electronic communication device with another and addresses to or about the other person any obscene language or addresses to the other person any threat to inflict injury to the person or property of the person addressed or any member of his or her family, is guilty of a misdemeanor.) will be obtained from the requested information provided by Comcast Corporation.

It has been my experience that it takes some companies considerable time beyond the statutory 10-day search warrant return period to collect and provide materials sought in this search warrant. Therefore, I request permission to return this search warrant within 10 days from the date all materials are received from this company.

As required by Section 1546.1(d) of the California Penal Code. Any information obtained through the execution of this warrant that is unrelated to the objective of the warrant shall be sealed and shall not be subject to further review, use, or disclosure absent an order from the court.

Wherefore, Affiant prays that a search warrant be issued, commanding the immediate search of the business records described above, for the property or things described and that such property be brought before a magistrate or retained as provided in Section 1536 of the California Penal Code. I request that a Search Warrant be issued based upon the aforementioned facts, commanding the search of the person, premise(s) or vehicles(s) designated above for the property or things described, or any part thereof, and

that such items or property be brought before this magistrate or retained subject to the order of the court pursuant to Section 1536 of the Penal Code.

Based on the above facts, which I swear under penalty of perjury the information in this document to be true to the best of his knowledge

Signature of Affiant

Sworn to be true and subscribed to me this __17__ day of __April__ , 2019 at __8:15__ A.M./P.M.

Hobbs Sealing Authorized:  YES___  NO _X_
Nighttime Search Authorized:  YES___  NO _X_

Signature of Judge

Judge Christopher C. ...
Judge of the Superior Court of California, City and County of San Francisco; Dept.# __23__

**60 W 70th St, New York, NY 10023**

**Newark, New Jersey**



**53 min** (15.2 mi) via NJ-495 W

Directions

**56 min** (18.2 mi) via I-95 S

**59 min** (19.2 mi) via NJ-3 W and NJ-21 S

Go Back to Req. to Mdify Opinion

Law Enforcement Relations

4 Sylvan Way, Parsippany, N.J. 07054

Phone: (973) 292-8911 Fax: (973) 292-8697

August 06, 2020

---

T-Mobile / MetroPCS Tracking ID: 2847939

I, Deisi Franco, attest, under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. Section 1746, that the information contained in this declaration is true and correct. I am a United States citizen and am over eighteen years of age. I am employed by T-Mobile US, Inc. (hereinafter, "the Company") as a custodian of records and therefore am qualified as a result of my position to make this declaration. My official title is Custodian of Records.

I certify that all of the records described below and attached hereto are duplicates of the original and are true and complete copies of records maintained by the Company. Said records consist of several electronic files produced in T-Mobile US, Inc. Case No.2847939 in response to a lawful request issued to the company.

Description of records:

| MSISDN/Identifier | Start Date | End Date | Requested Item |
|---|---|---|---|
| 9174324181 | 08/06/2018 | 12/31/2019 | Call Details With Cell Sites |
| 9174324181 | 02/01/2018 | 12/31/2019 | Subscriber Info |
| 9179573166 | 02/01/2018 | 12/31/2019 | Subscriber Info |
| 9179573166 | 08/06/2018 | 12/31/2019 | Call Details With Cell Sites |

I further state that:

A) Such records were made at or near the time of the occurrence of the matters set forth by (or from information transmitted by) a person with knowledge of those matters;

B) Such records were kept in the course of regularly conducted business activity;

C) The business activity made such records as a regular practice; and

D) If such record is not the original, such record is a duplicate of the original.

This certification is intended to satisfy Rules 803(6), 902(11), 902(13) and / or 902(14) of the Federal Rules of Evidence and / or any state equivalents.

I hereby certify that the foregoing statement made by me is true. I understand that if any of the statements made by me herein are willfully false, I am subject to punishment.

Sincerely

Law Enforcement Relations Group

51

| Date | Time | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/05/2019 | 23:28:15 | | SMSC | | 13476689744 | | | | | |
| 03/05/2019 | 23:35:50 | 463 | moc | Outgoing | 19174324181 | 14155287000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:43:57 | 32 | moc | Outgoing | 19174324181 | 14156559479 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:45:04 | 156 | moc | Outgoing | 19174324181 | 14157806300 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:47:57 | 3 | moc | Outgoing | 19174324181 | 14155287000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:48:25 | 51 | moc | Outgoing | 19174324181 | 16505130484 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:50:27 | 6 | moc | Outgoing | 19174324181 | 16507570800 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:50:51 | 31 | mtc | Incoming | 14158341120 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:50:52 | 31 | moc | Outgoing | 14158341120 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:51:08 | 37 | moc | Outgoing | 19174324181 | 16507520800 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:51:26 | | SMSC | | 128 | | | | | |
| 03/05/2019 | 23:52:20 | 55 | moc | Outgoing | 19174324181 | 14158341120 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:53:21 | 627 | mtc | Incoming | 16505242144 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 00:04:40 | | SMSC | | 19174324181 | | | | | |
| 03/06/2019 | 00:05:24 | | SMSC | | 13476689744 | | | | | |
| 03/06/2019 | 00:05:36 | | SMSC | | 13476689744 | | | | | |
| 03/06/2019 | 01:03:38 | 32 | mtc | Incoming | 14159922322 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 01:04:09 | 32 | moc | Outgoing | 14159922322 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 01:04:44 | | SMSC | | 128 | | | | | |
| 03/06/2019 | 01:08:00 | 26 | moc | Outgoing | 19174324181 | 14157816500 | 65 West 70thStreet | New York | NY | 10023 |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

Page: 88 of 201

153 / 405

140

| 03/06/2019 | 01:12:49 | | mtc | Incoming | 14153470584 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/06/2019 | 01:12:59 | 11 | moc | Outgoing | 19174324181 | 14153470584 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 01:13:47 | 962 | mtc | Incoming | 14159922322 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 05:01:21 | 1450 | mtc | Incoming | 17074301893 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 05:40:33 | 11 | moc | Outgoing | 19174324181 | 14155513637 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 15:18:48 | | mtc | Incoming | 12183964489 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 16:30:13 | 52 | mtc | Incoming | 16466794947 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 16:32:06 | 46 | moc | Outgoing | 19174324181 | 16466794947 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 16:32:57 | | moc | Outgoing | 19174324181 | 14153470584 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:18:21 | | mtc | Incoming | 18014815843 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:28:34 | 44 | moc | Outgoing | 19174324181 | 14155513744 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:29:44 | | moc | Outgoing | 19174324181 | 14155513900 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:30:36 | | moc | Outgoing | 19174324181 | 14155513903 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:32:16 | 153 | mtc | Incoming | 182404 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:44:40 | 292 | mtc | Incoming | 13854281000 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 19:47:51 | | mtc | Incoming | 18007477804 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 19:52:41 | | SMSC | | 32665 | | | | | |
| 03/06/2019 | 19:52:42 | | SMSC | | 19174324181 | | | | | |
| 03/06/2019 | 19:53:12 | 25 | mtc | Incoming | 17076581296 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |

Information Provided By:
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

Page: 89 of 201

154 / 405

141

| Date | Time | | Type | Direction | Number | Number | Address | City | State | Zip |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/06/2019 | 19:53:43 | 25 | moc | Outgoing | 17076581296 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 19:54:11 | | SMSC | | 128 | | | | | |
| 03/06/2019 | 19:54:39 | 28 | moc | Outgoing | 19174324181 | 14158341120 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:08:24 | 6 | moc | Outgoing | 19174324181 | 14155513900 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:09:53 | 2 | moc | Outgoing | 19174324181 | 14155513903 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:20:05 | 19 | moc | Outgoing | 19174324181 | 14155513744 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:21:23 | | moc | Outgoing | 19174324181 | 14158341120 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:22:42 | | moc | Outgoing | 19174324181 | 14155513903 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:22:48 | | SMSC | | 19294130709 | | | | | |
| 03/06/2019 | 20:48:34 | 791 | moc | Outgoing | 19174324181 | 18669013212 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:56:57 | | mtc | Incoming | 18007477804 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 21:51:44 | 996 | moc | Outgoing | 19174324181 | 18669013212 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 22:00:03 | | SMSC | | 19174324181 | | | | | |
| 03/06/2019 | 22:00:03 | | SMSC | | 732873 | | | | | |
| 03/06/2019 | 23:08:01 | 726 | mtc | Incoming | 17074301893 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:21:07 | 29 | moc | Outgoing | 19174324181 | 18015386155 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:21:48 | 182 | moc | Outgoing | 19174324181 | 18664357414 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:25:41 | 43 | moc | Outgoing | 19174324181 | 18018518026 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:26:40 | | moc | Outgoing | 19174324181 | 18014291000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:26:55 | | moc | Outgoing | 19174324181 | 18014291000 | 65 West 70thStreet | New York | NY | 10023 |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

142

| Date | Time | Duration | Type | Direction | Number | Number | Address | City | State | Zip |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/06/2019 | 23:43:48 | | moc | Outgoing | 19174324181 | 18014291000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:08:14 | 566 | moc | Outgoing | 19174324181 | 18017879755 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:19:39 | 58 | moc | Outgoing | 19174324181 | 18015368500 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:28:55 | 340 | moc | Outgoing | 19174324181 | 14156668000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:55:51 | | mtc | Incoming | 18018044700 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:56:20 | 28 | mtc | Incoming | 18018044700 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:56:51 | 28 | moc | Outgoing | 18018044700 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:57:22 | | SMSC | | 128 | | | | | |
| 03/07/2019 | 01:31:09 | 249 | moc | Outgoing | 19174324181 | 14155530123 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 01:37:45 | 323 | mtc | Incoming | 14155530123 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 04:59:52 | 6 | mtc | Incoming | 18014008982 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 04:59:58 | 6 | moc | Outgoing | 18014008982 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 05:00:22 | 3 | mtc | Incoming | 18014008982 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 05:00:25 | 3 | moc | Outgoing | 18014008982 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 06:46:57 | | mtc | Incoming | 18014008982 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 14:23:38 | | SMSC | | 19174324181 | | | | | |
| 03/07/2019 | 14:23:38 | | SMSC | | 24273 | | | | | |
| 03/07/2019 | 15:32:19 | | mtc | Incoming | 18007477815 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 16:48:24 | 101 | moc | Outgoing | 19174324181 | 18015384100 | 65 West 70thStreet | New York | NY | 10023 |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

Page: 91 of 201

156 / 405

143

| Exhibit O | Procedural Catch-22 — CT (V1) Blocked Attribution Discovery While Opposing Subpoena to Cloudflare Custodian (2019–2022) |
|---|---|
| **Case** | Thygesen v. Wang, No. FDV-19-814465, SF Superior Court |
| **Dates** | May 16, 2019 – October 18, 2022 |
| **Source** | Kailin Wang Declaration in Support of FL-300 (9/25/2022); Douglas Rappaport Opposition to Request for Filing by Vexatious Litigant (9/26/2022); Cloudflare subpoena proceedings; SUBP-002 filed by Wang pro per |
| **The Procedural Catch-22** | Cloudflare's May 17–18, 2019 email (Report #2586627, David Ngo) stated that HolySmoke.org was "logging the wrong IP addresses" and that a VPN was used — making user identification impossible. However, Cloudflare refused to issue a declaration signed under penalty of perjury. Without such a declaration, the email was inadmissible hearsay under California evidence rules. To obtain the required declaration, Wang needed a court-issued subpoena to compel Cloudflare custodian testimony. Each time Wang sought that subpoena, petitioner opposed it and the court denied it — leaving Cloudflare's exculpatory statement permanently locked out of evidence. |
| **Wang's 9/25/2022 SUBP-002 (Pro Per)** | Three years into litigation, Wang filed a SUBP-002 Civil Subpoena (Duces Tecum) for Personal Appearance of David Ngo, Trust and Safety Manager at Cloudflare Inc., 101 Townsend St., San Francisco, CA 94107. Subpoena called for appearance at 5-day DVRO trial beginning 10/18/2022, Dept. 405. Attachment A requested subscriber identification data for all HolySmoke.org IPs: 2/12/2019: 162.158.63.102; 2/15/2019: 172.68.47.104; 2/17/2019: 108.162.219.54; 2/18/2019: 172.68.34.108; 2/28/2019: 108.162.219.54; 3/6/2019: 108.162.219.228. Wang stated good cause: "The requested IP addresses belong to Cloudflare and are not otherwise available to the undersigned." |
| **Rappaport Opposition (9/26/2022) — Strategic Withdrawal** | Petitioner's criminal attorney Douglas Rappaport (McManus Faulkner) opposed the subpoena, describing Wang as a "vexatious litigant" and characterizing the request as an 11th-hour delay tactic. However, petitioner's opposition simultaneously agreed to withdraw the Kill Baby K post from trial evidence entirely: "it is hereby agreed that Petitioner will not present any evidence whatsoever pertaining to the Kill Baby K post unless first raised by Respondent, and then only in rebuttal." Rappaport argued Wang's subpoena request was therefore moot and cited In re Marriage of Deal, 80 Cal. App. 5th 71, 79 (2022), that denials of VL requests are not appealable. |
| **Significance of Petitioner's Withdrawal** | Petitioner had used the Kill Baby K post aggressively from March 6, 2019 through the DVRO proceedings to justify removing Wang's custody and support criminal prosecution. The moment Wang was positioned to compel Cloudflare custodian testimony — which would |

| | |
|---|---|
| | have produced a sworn declaration confirming the IP was a shared edge node — petitioner immediately agreed to withdraw the post entirely. This strategic retreat at the precise moment of compelled testimony reveals awareness that sworn Cloudflare testimony would have been exculpatory. |
| **CT Blocked Discovery — 9/28/2022 Filing** | Per Wang's court filing: "CT (V1) has blocked Wang from obtaining further discovery on this March 6, 2019 Kill Baby K post for the 10/18–10/20/22 DV-Trial. Each time, C.T. opposed these efforts and the subpoenas were denied." The filing notes: "A person who actually authored the Holysmoke post would have every incentive not to generate this kind of forensic paper trail or push for expert examination of IP logs and VPN usage." |
| **Wang's Declaration (9/25/2022) Key Points** | Wang stated: Kill Baby K post found to have no merit by multiple law enforcement agencies, judges, and government entities; not criminally charged; reversed by Utah DCFS and Utah Juvenile Court Judge Richard Smith. IP 108.162.219.228 used in the post belongs to Cloudflare (a CDN/DDoS mitigation company, not an ISP). No identifiable IP linking to a particular ISP has been identified. Petitioner's internet attorneys (Erica Johnstone and Erik Rasmussen) were involved as consultants in People v. Wang 19016407 — the parallel criminal case — yet no charges were filed after multiple search warrants, subpoenas, experts, and FBI involvement. |
| | |

**SIGNIFICANCE TO PSR OBJECTION**

The three-year pattern of petitioner blocking every subpoena that would have produced sworn Cloudflare testimony — followed by immediate withdrawal of the Kill Baby K post the moment sworn testimony was imminent — constitutes strong circumstantial evidence of deliberate suppression of exculpatory evidence. Had petitioner been confident in the post's attribution to Wang, compelling Cloudflare testimony would have served his interests. Instead, every attribution subpoena was opposed as a "delay tactic." Wang's observation that a true author "would have every incentive not to generate this kind of forensic paper trail" describes her own conduct precisely: she spent $29,579.11 creating exactly such a trail.

Kailin Wang
2481 Fairway Dr.
Spanish Fork, Utah 84660
801-645-1060
kaywg2372@gmail.com

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF SAN FRANCISCO

CHRISTOFFER STANFORD THYGESEN,

Petitioner,

v.

KAILIN WANG,

Respondent.

Case No.  FDV-19-814465

DECLARATION IN SUPPORT OF FL-300 FOR CLERK STAMP/COURT ORDER TO ISSUE  SUBP-002 FOR WITNESS DAVID NGO FROM CLOUDFLARE TO TESTIFY/AND/OR PRODUCE DECL. IN/FOR 3/6/19 MURDER/SUICIDE POST FOR 5-DAY DVRO TRIAL STARTING ON 10/18/22

Judge: FLORES

Department: 404, 405 (5-day DVRO Trial in Dept. 405)

Although the 3/6/19 Kill Baby K post was found you have no merit by multiple law enforcement agencies, judges and other government entitles, it was  not charged, and reversed by Utah DCFS and Utah Juvenile Court Judge Richard Smith, Thygesen will seek to re-introduce this to falsely incriminate me while I am pro per before a new, inexperienced judge on this case at the 5-day DVRO trial starting on 10/18/22. There are several IP addresses belonging to Cloudflare (not an internet service provider) involving posts posted on Holysmoke.org around those dates, which are necessary to prove accuracy of the location data, as no identifiable IP address lining to a particular Internet Service Provider has been identified.

I am forced to be Pro Per by this Court against Thygesen's 5 attorneys at that trial, and Thygesen is currently represented by  internet attorneys (Erica Johnstone and Erik Rasmussen),

1

Expert Witness (Erik Rasmussen), in addition to Criminal Attorney Douglas Rappaport, Michael Reedy, Darrick Chase, thus the IP address 3/6/19:  (108.162.219.228)  used to make the Kill Baby K post is from Cloudflare,[1] thus I must be provided access to witnesses who have personal knowledge of this IP address or you cannot allow it in  the DVRO trial and that decision must be made immediately in an order to avoid me having to file  for additional relief.

**May 16, 2019 Subpoenas to Cloudflare**

While on May 16, 2019 my previous internet attorney Karl Kronenberger had issued 2 subpoenas requesting info on Cloudflare IP addresses, one of them for 3/6/19 Kills Baby K Post with IP address 108.162.219.228, a Cloudflare IP address, however Cloudflare refused to issue a declaration signed under penalty of perjury on the response from David Ngo per Cloudflare's email (Exhibit).

Cloudflare responded that they are unable to identify the IP address to any subscriber, thus either this post which SFPD & DA who have worked with and hired on Erik Rasmussen in People v. Wang 19016407 as a consultant on whether they could tie Wang to that post------ however,  after several search warrants, subpoenas, experts, including the FBI they  declined to Criminally Charge Wang,---- as no evidence exists tying Wang to the 3/6/19 Kill Baby K post. (Exhibit)

Thus, again either  the 3/6/19 post is not allowed to be introduced at all as it concerns the child which invokes  child custody and visitation issues and the court awarded no Need Based Attorney Fees as on 9/15/22 the court stated custody and visitation issues will not be litigated in the DVRO.  No allegations of any threats to the child were ever upheld or alleged that resulted in findings in any civil nor criminal court, and certainly resulted in no evidence  for any DA in 3 states to file any charges. I'm fine with litigating this post in the child custody and visitation proceeding  with expectations that the court grants me reasonable attorney fees.

---

[1] **Cloudflare, Inc.** is an American content delivery network and DDoS mitigation company,[3] founded in 2010. It primarily acts as a reverse proxy between a website's visitor and the Cloudflare customer's hosting provider.[4][5] Its headquarters are in San Francisco, California.[3] According to *The Hill*, it is used by more than 20 percent of the entire Internet for its web security services.[6] https://en.wikipedia.org/wiki/Cloudflare

2

And since Thygesen attempted to fool Judge Flores with this previously this 3/6/19 rejected post, which whom Judge Darwin and Judge Wiley and Utah Judge Richard Smith either disregarded and or reversed findings Wang was a danger to the child due to lack of evidence related to this 3/6/19 post, this. 3/6/19 cannot be litigated at all at the 5-day DVRO trial starting 10/18/22, or the court must grant attorney fees as this 3/6/19 "Kill baby K" post completely touches on best interests of the child issues, or the court grants attorney fees as it seriously only relates to Best Interests of the Child.

Since this post has already been proven to be false by many, many law enforcement agencies, disregarded, reversed by numerous judges, Wang either requests for the court to issue a subpoena for David Ngo to personally testify at the DVRO trial commending on 10/18/22 and/or produce relevant documents with a declaration signed under penalty of perjury on previous emails exchanged in May/June of 2019. (Exhibit)

In the alternative I request the court issue an order that this 3/6/19 Kill Baby K post will not be litigated at all at the 5 day DVRO commencing on 10/18/22 and no Judges Flores you can't prejudice me again, by first not granting a penny of attorney fees for a 5-day trial, forcing Wang to be in pro per against 5 attorneys and experts, then secretly voiding out Judge Wiley's 12/22/22 and 4/19/22 Orders ordering a custody evaluation which would mean there would be little to no litigation left after the 5-day DVRO trial.

if there is no custody evaluation and the court wants me to litigate the DVRO trial which is 99% of the case in Pro Per without allowing Wang to issue any subpoenas for her witnesses to testify, ------ sorry but stating you may grant fees after the 5 day trial when there aren't any issues left to be litigated is dishonest and fraudulently coercing Wang to agree to lift the stay, to the DVRO if a custody evaluation is ordered, and then not fulfilling the other end of the obligation which is a custody evaluation is ordered seriously shows the lack of integrity on your part, and violation of the law that one judge from the same court cannot overrule another judge's rulings.

## CONCLUSION

Thus, the court either the court grants me a subpoena for this witness and/or produce documents in order to prove my case or eliminate this post from being presented at all.

3

I declare under penalty of perjury the laws of the State of California that the foregoing is true and correct.

Dated: 9/25/22

_____

KAILIN WANG
IN PRO PER

4

**SUBP-002**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br><br>Kailin Wang 2481 Fairway Dr. Spanish Fork Utah 84660<br><br>TELEPHONE NO.: 801-645-1060     FAX NO.:<br>E-MAIL ADDRESS: kaywg2372@gmail.com<br>ATTORNEY FOR *(Name)*: | **FOR COURT USE ONLY** |

| |
|---|
| NAME OF COURT: SAN FRANCISCO SUPERIOR COURT |
| STREET ADDRESS: 400 MCALLISTER ST. |
| MAILING ADDRESS: SAME |
| CITY AND ZIP CODE: SAN FRANCISCO     CA   94102 |
| BRANCH NAME: UFC |

PLAINTIFF/ PETITIONER: CHRISTOFFER STANFORD THYGESEN

DEFENDANT/ RESPONDENT: KAILIN WANG

| | |
|---|---|
| **CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION** | CASE NUMBER:<br><br>FDV-19-814465 |

**THE PEOPLE OF THE STATE OF CALIFORNIA, TO** *(name, address, and  telephone number of witness, if known)*:

David Ngo, Trust & Safety Manager @ Cloudflare inc. 101 Townsend St, San Francisco, CA 94107

1. **YOU ARE ORDERED TO APPEAR AS A WITNESS in this action at the date, time, and place shown in the box below UNLESS your appearance is excused as indicated in box 3b below or you make an agreement with the person named in item 4 below.**

| |
|---|
| a. Date: 10/18/19     Time: 9:00 a.m.   ☐ Dept.: 405   ☐ Div.:   ☐ Room: |
| b. Address: 400 MCALLISTER ST.SAN FRANCISCO, CA 94102 |

2. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

3. **YOU ARE** *(item a or b must be checked)*:

   a. ☒ Ordered to appear in person and to produce the records described in the declaration on page two or the attached declaration or affidavit. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

   b. ☐ Not required to appear in person if you produce (i) the records described in the declaration on page two or the attached declaration or affidavit and (ii) a completed declaration of custodian of records in compliance with Evidence Code sections 1560, 1561, 1562, and 1271. (1) Place a copy of the records in an envelope (or other wrapper). Enclose the original declaration of the custodian with the records. Seal the envelope. (2) Attach a copy of this subpoena to the envelope or write on the envelope the case name and number; your name; and the date, time, and place from item 1 in the box above. (3) Place this first envelope in an outer envelope, seal it, and mail it to the clerk of the court at the address in item 1. (4) Mail a copy of your declaration to the attorney or party listed at the top of this form.

4. **IF YOU HAVE ANY QUESTIONS ABOUT THE TIME OR DATE YOU ARE TO APPEAR, OR IF YOU WANT TO BE CERTAIN THAT YOUR PRESENCE IS REQUIRED, CONTACT THE FOLLOWING PERSON BEFORE THE DATE ON WHICH YOU ARE TO APPEAR:**

   a. Name of subpoenaing party or attorney: Kailin Wang     b. Telephone number: Email/Phone above

5. **Witness Fees:** You are entitled to witness fees and mileage actually traveled both ways, as provided by law, if you request them at the time of service. You may request them before your scheduled appearance from the person named in item 4.

| |
|---|
| **DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.** |

Date issued:

_____     ▶ _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PERSON ISSUING SUBPOENA)

(Declaration in support of subpoena on reverse)          (TITLE)          **Page 1 of 3**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUBP-002 [Rev. January 1, 2012] | **CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION** | Code of Civil Procedure,<br>§ 1985 et seq.<br>www.courts.ca.gov |

CEB  **www.ceb.com**

SUBP-002

| | |
|---|---|
| PLAINTIFF/PETITIONER: CHRISTOFFER STANFORD THYGESEN | CASE NUMBER: |
| DEFENDANT/RESPONDENT: KAILIN WANG | FDV-19-814465 |

The production of the documents, electronically stored information, or other things sought by the subpoena on page one is supported by *(check one)*:

[ ] the attached affidavit or     [X] the following declaration:

**DECLARATION IN SUPPORT OF CIVIL SUBPOENA (DUCES TECUM) FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS AT TRIAL OR HEARING**
**(Code Civ. Proc., §§ 1985,1987.5)**

1. I, the undersigned, declare I am the  [ ] plaintiff  [ ] defendant  [ ] petitioner  [X] respondent
   [ ] attorney for *(specify)*:        [X] other *(specify)*: Respondent in Pro Per
   in the above-entitled action.

2. The witness has possession or control of the documents, electronically stored information, or other things listed below, and shall produce them at the time and place specified in the Civil Subpoena for Personal Appearance and Production of Records at Trial or Hearing on page one of this form *(specify the exact documents or other things to be produce; if electronically stored information is demanded, the form or forms in which each type of information is to be produced may be specified)*:

   See Attachment A

   [X] Continued on Attachment 2.

3. Good cause exists for the production of the documents, electronically stored information, or other things described in paragraph 2 for the following reasons:

   The requested IP addresses belong to Cloudflare  and are not otherwise available to the undersigned. 3/6/19: 108.162.219.228

   [X] Continued on Attachment 3.

4. The documents, electronically stored information, or other things described in paragraph 2 are material to the issues involved in this case for the following reasons:  this is a,criminal and civil domestic violence matter where there are allegations of murder, suicide involving an infant, to determine the true author of that post if possible is relevant to the DVRO 5 day trial starting on 10/18/22

   [X] Continued on Attachment 4.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

| | |
|---|---|
| KAILINWANG | *(signature)* |
| (TYPE OR PRINT NAME) | (SIGNATURE OF [X] SUBPOENAING PARTY   [ ] ATTORNEY FOR SUBPOENAING PARTY) |

---

**Request for Accommodations**

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the date on which you are to appear. Contact the clerk's office or go to *www.courts.ca.gov/forms* for *Request for Accommodations by Persons With Disabilities and Response* (form MC-410). (Civil Code, § 54.8.)



*(Proof of service on page 3)*

| | | |
|---|---|---|
| SUBP-002 [Rev. January 1, 2012] | **CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION** | **Page 2 of 3** |



www.ceb.com

ATTACHMENT A

Previous correspondence has not included a declaration verifying that these IP addresses cannot be identified thus, this is requested.

 If Cloudflare is unable to accurately identify the subscriber, the request is for Cloudflare to state so in a declaration thus to avoid further litigation.

And while Cloudflare has suggested using maxi mind for approx. location however if it is a VPN that's masked the true identify cannot  be deciphered from using a simple maxi mind app  correct?

1) All documents, records or other information that identify or may lead to the identification or location of the person(s) using the IP addresses listed below, including, but not limited to, all first and last names, present or last known mailing addresses, billing information, subscriber information, telephone numbers, e-mail addresses, location information, and other identifying information for the subscriber who was assigned and/or using the  following IP addresses at the times listed below, exclusive of the contents of any communications stored, carried, or maintained by Cloudflare:

| | |
|---|---|
| 2/12/2019   162.158.63.102 | |
| 2/15/19:    172.68.47.104 | |
| 2/17/19:   108.162.219.54 | |
| 2/15/19: 172.68.47.104 | |
| 2/17/19:  108.162.219.54 | |
| 2/18/19:   172.68.34.108 | |
| 2/28/19:    108.162.219.54 | |
| 3/6/19:   108.162.219.228 | |

2) All documents, records or other information that identify or may lead to the identification or location of the person(s) using the IP addresses listed in **"Attachment A,"** including, but **not** limited to, all first and last names, present or last known mailing addresses, billing information, subscriber information, telephone numbers, e-mail addresses, location information, and other identifying information for the subscriber who was assigned and/or using the listed IP addresses at the times indicated in "Attachment A," exclusive of the contents of any communications stored, carried, or maintained by Cloudflare.

Cloudflare Corporation shall verify the authenticity of information that it produces by providing an affidavit from the Custodian of Records, and a declaration from the Custodian of Records to be included with the records/report.

MICHAEL REEDY (161002)
McMANIS FAULKNER
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:    (408) 279-8700
Facsimile:    (408) 279-3244
Email:        mreedy@mcmanislaw.com

DOUGLAS RAPPAPORT (136194)
LAW OFFICES OF DOUGLAS L. RAPPAPORT
260 California Street, Suite 1002
San Francisco, CA 94111
Telephone:   (415) 989-7900
Facsimile:    (415) 989-7950
Email:        admin@sfcrimlaw.com

Attorneys for Petitioner,
CHRISTOFFER THYGESEN

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**09/26/2022**
**Clerk of the Court**
BY: TIM KYU
**Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| In re the Matter of: | Case No.:  FDV-19-814465 |
| CHRISTOFFER THYGESEN | **OPPOSITION TO REQUEST FOR FILING BY VEXATIOUS LITIGANT, KAILIN WANG** |
| Petitioner, | |
| and | |
| | Dept.:        404 |
| KAILIN WANG | Judge:      The Hon. Daniel Flores |
| Respondent. | |

///

///

///

///

///

///

1

*In re Matter of Thygesen v. Wang,* Case No.:  FDV-19-814465; OPPOSITION TO REQUEST FOR FILING BY VEXATIOUS LITIGANT, KAILIN WANG
`

This opposition is in response to Respondent, Kailin Wang ("Respondent" or "KW"). I am one of the attorneys of record for Petitioner, Christoff Thygesen ("Petitioner" or "CT").

Despite the fact that this trial was originally scheduled to begin on October 22, 2019, it is only now, nearly three years later, that Respondent has made for the first time a request to issue a trial subpoena to a company called Cloudflare seeking information pertaining to a March 6, 2019 post which Respondent refers to as the "Kill Baby K post." Given that Respondent's Sunday, September 25, 2022 FL300 has been made at the proverbial 11th hour, it is strongly believed that this is an attempt to delay the trial, either by a request for more time to review what may turn out to be thousands of pages of records and/or to give Respondent Wang the ability to file yet another appeal requesting a Stay of the DVRO proceedings if the court denies her request.

Petitioner has waited for almost three years for this trial in order to prove that Ms. Wang has perpetrated domestic violence. Given that Petitioner never presented the March 6, 2019 "Kill Baby K" post at the hearing before Judge Darwin on March 6, 2019, it was not considered by the Court when continuing the TRO and removing all physical and legal custody of the baby on a temporary basis. What the court saw that day, and what the court will see in our trial, is that there is ample—in fact overwhelming—other evidence that Ms. Wang has perpetrated domestic violence.

In her most recent Request for Order (FL-300) of September 25, 2022, Respondent has stated that she needs the ability to issue the Cloudflare subpoena *or* requests that the Court not allow the Kill Baby K post to be considered at the DVRO trial. Thus, *as requested by Respondent*, it is hereby agreed that Petitioner will not present any evidence whatsoever pertaining to the Kill Baby K post unless first raised by Respondent, and then only in rebuttal.

///
///
///
///
///

2

Therefore, Respondent's request to issue subpoenas for trial witnesses and records pertaining to the March 6, 2019 "Kill Baby K" post is hereby moot and should be denied. (Denials of VL Requests are not appealable. *In re Marriage of Deal*, 80 Cal. App. 5th 71, 79 (July 20, 2022))

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  September 26, 2022                    LAW OFFICES OF DOUGLAS L. RAPPAPORT

*Douglas Rappaport*

_____
DOUGLAS L. RAPPAPORT

Attorney for Petitioner,
CHRISTOFFER THYGESEN

---

3

*In re Matter of Thygesen v. Wang*, Case No.:  FDV-19-814465; OPPOSITION TO REQUEST FOR FILING BY VEXATIOUS LITIGANT, KAILIN WANG
`

CHRISTOFFER STANFORD THYGESEN vs. XAILIN WANG (VEXATIOUS LITIGANT)

## MINI MINUTES FOR OCT-18-2022 09:00 AM fo

Honorable Daniel A. Flores
Dept.404
Courtroom Clerk: Lydia Mancilla
Court Reporter: Robert Bailian CSR #5220
Bailiff: Deputy Tuascher

---

Matter on calendar for:

REQUEST FOR ORDER (DOMESTIC VIOLENCE)
MOVING PARTY: CHRISTOFFER STANFORD THYGESSEN

---

Petitioner and Petitioner's attorneys Douglass Rappaport and Erica Johnstone present in the courtroom
Christopher Brenner present in the courtroom with Petitioner's counsel to assist counsel with technology.

Respondent present in pro per by video.

All remote appearances are conducted through BlueJeans (a video platform) in accordance with San Francisco Local Rules of Court.

---

Counsel for Petitioner and Respondent present argument.

Testimony given and Exhibits admitted. See scanned witness and exhibit list.

Having read and considered the pleadings, declarations, and other evidence submitted in this matter, the Court makes the following findings and orders:
1. Respondent's request to continue the trial - Denied.
2. Respondent's Motion in Limine filed 10/12/22 - Moot
3. Subpoena for Rally report for visitation date 8/8/22- Parties stipulate that the report in its entirety can be admitted.
4. Respondent's Motion in limine filed 10/17/22 - Denied.
5. Respondent's request to continue - Denied.
6. Respondent's motions in limine are ruled upon as follows;
   1)All documents, exhibits, and testimony pertaining to the UCCJEA jurisdiction of either the California or Utah courts -Granted without prejudice
   2)All documents, exhibits, and testimony relating to who should have custody of the child or the terms of child visitation. - Granted
   3)All motions, documents, exhibits, and testimony relating to adding the child Kayson to the DV order. - Granted
   4)All documents, exhibits, and testimony relating to the "kill the baby" post allegedly made by Wang. - Granted
   5)All documents, exhibits, and testimony relating to posts allegedly made by Respondent on public blogs and websites, not addressed to any of the Protected Parties because they are protected by my First Amendment right to "free speech." - Denied.
   6)All documents, exhibits, and testimony relating to the financial condition of the Wang, now or in the past, including bank statements, credit card statements, income tax returns, public assistance applications or benefits, employment wages, unemployment compensation, 1099 income, and similar information. - Denied
   7)All documents, exhibits, and testimony, which refer to past or pending criminal proceedings involving Wang or may lead to the criminal prosecution of Wang. - Denied.
   8)All documents, exhibits, and testimony relating to my physical or mental health or medical records, including before and after the pregnancy with my son, during the pregnancy, and subsequent to the birth of Respondent's son. - Denied, will be considered on a case-by-case basis.
   9)All documents, exhibits, and testimony relating to my son, Kayson Wang's, health or medical records. - Denied, any issues can be addressed or re-argued on a case-by-case basis.

7. Petitioner's motions in limine filed on 10/3/22 - The court defers the motions in limine until the court knows where that stands.
8. Respondent admonished about her 5th amendment rights.
9. The court false Respondent's accusations against Mr. Rappaport - False.
10. Both parties are to file a brief with the court as to whether or not the scope should include Adults who don't live together by tomorrow morning 10/19/22.
11. Matter is continued to 10/19/22 at 9 am Dept. 404 (to be heard in Dept. 416) for Day 2 of the Request for Order (Domestic Violence) hearing, as previously set.

2565

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE DANIEL FLORES, JUDGE PRESIDING

UNIFIED FAMILY COURT

DEPARTMENT 416

--o0o--

CHRISTOFFER STANFORD THYGESEN,           )  COURT NO. FDV-19-814465
                                         )
          Petitioner,                    )  Pages  1 - 162
                                         )
VS.                                      )  Volume 1
                                         )
KAILIN WANG,                             )
                                         )
          Respondent.                    )
_____)

Reporter's Transcript of Proceedings

Tuesday, October 18, 2022

APPEARANCES OF COUNSEL:

For The Petitioner:

    Law Offices of Douglas L. Rappaport,
    260 California Street, Suite 1002
    San Francisco, California  94111-4360
    By:  DOUGLAS LEE RAPPAPORT,
        Attorney at Law

For The Petitioner:

    Ridder, Costa & Johnstone, LLP.
    440 N. Barranca Avenue, # 7750
    Covina, California  91723
    By:  ERICA JOHNSTONE,
        Attorney at Law

APPEARANCES OF COUNSEL:   (Continued)


For the Respondent:

     By:   KAILIN WANG, (Appearing via BlueJeans)
           In Propria Persona

REPORTED BY:
ROBERT K. BALIAN, CSR No. 5220
PRO TEM COURT REPORTER
SAN FRANCISCO SUPERIOR COURT

violence restraining order at this late in the proceedings, in the process of this case. I agree that it's a fundamental notice issue. I have to -- I agree in part with Ms. Wang about the fact that that would make this more of a custody related proceeding. That much I agree. But it's important that I point out, Ms. Wang, it -- I think the record will speak for itself. The motion for attorneys fees the Court found it also defective, right? So it's not only this DVRO trial is -- has a limited scope. It's also that the prior motion for attorneys fees was defective, and I invited you to do your best to find an attorney that would help you fix that to bring that up. So I'm just making a distinction there. It's not only because the case is not added to this DVRO. It's also because the Court awaits a properly brought attorneys fee motion. I'll move on to the next motion in limine.

Category four is at the very last line of page four. All documents, exhibits, and testimony relating to the kill baby post -- the "kill baby" post allegedly made by Wang.

Mr. Rappaport?

MR. RAPPAPORT: There is going to be -- unless it's raised by Ms. Wang herself, we are not presenting any evidence related to that.

THE COURT: Yeah, I thought that was already addressed.

MR. RAPPAPORT: I believe it was.

THE COURT: Thank you. That motion is granted.

Ms. Wang?

MS. WANG: Yes. Yes. That -- that -- I believe that was already addressed, Category four.

| Exhibit P | Side-by-Side Comparison — Sgt. Martinez 3/8/19 Search Warrant Affidavit vs. 10/17/19 Arrest Warrant: Kill Baby K Post Absent from Criminal Charges |
|---|---|
| **Case** | People v. Wang, No. 19016407, SF Superior Court (Criminal); Thygesen v. Wang, No. FDV-19-814465, SF Superior Court (Family/DVRO) |
| **Dates** | March 8, 2019 (Search Warrant Affidavit); October 17, 2019 (Arrest Warrant and Charging Documents) |
| **Source** | SFPD Sgt. Michele Martinez #1208 — Search Warrant Affidavit (3/8/19); SFPD Sgt. Michele Martinez — Declaration in Support of Issuance of Warrant of Arrest (10/17/19); Request for Judicial Notice — Exhibit A (CA 1st District Court of Appeal) |
| **The Critical Divergence** | Both documents were authored by the same officer (Sgt. Michele Martinez), cover the same investigation, the same alleged course of conduct, the same online accounts, and the same alleged harassment campaign. They diverge in one unmistakable respect: the March 6, 2019 HolySmoke.org Kill Baby K post appears prominently in the 3/8/19 Search Warrant Affidavit as a basis for investigation — and is entirely absent from the 10/17/19 Arrest Warrant and charging documents. |
| **3/8/19 Search Warrant Affidavit — Kill Baby K Included** | Sgt. Martinez's 3/8/19 affidavit states: "On 3/6/19, a comment is posted to https://www.holysmoke.org/bad-business/christoffer-thygesen/ by 'Kailin Wang' which states, 'I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!'" The affidavit further notes: "On each of the posts, there are numerous additional comments which I believe may be posted by Wang." The Search Warrant was issued by Judge Joseph M. Quinn, Dept. 607, on March 8, 2019 at 7:30 AM, and directed at Holysmoke.org / pope@holysmoke.org for all IP logs, subscriber data, and associated records. |
| **10/17/19 Arrest Warrant — Kill Baby K Absent** | The October 17, 2019 Declaration in Support of Issuance of Warrant of Arrest charges Wang with: 646.9(a) PC (x2) [stalking], 646.9(b) PC, 530.5 PC [identity theft], 273.6 PC (x2) [violating protective order], and 653.2 PC (x4) [electronic harassment]. The affidavit covers the same factual period (December 2018 through spring 2019) and lists the same Medium.com accounts, Instagram accounts, and harassment conduct. The 3/6/19 Kill Baby K post on HolySmoke.org is entirely omitted. No charge was filed based on it. The Arrest Warrant affidavit is reproduced as Request for Judicial Notice — Exhibit A, received by the CA 1st District Court of Appeal. |
| **Charged Conduct (Arrest Warrant)** | Charges based on: Medium.com posts by @jbarketn345 (accessed from 2481 Fairway Dr., Spanish Fork UT — Wang's Utah address); @tvnpvn688, @bonb4905, @hanjun083 (accessed from 9 W 70th St |

| | |
|---|---|
| | Apt. 4R, New York — Wang's NY address); Instagram accounts rachel_chi6776 and christofferpaidsexpregnant (accessed from Wang's addresses); Facebook Messenger alias "David Wallace"; contacts to Victim1's family, friends, employers. The 3/6/19 HolySmoke post: NOT INCLUDED. |
| **Uncharged Conduct — Kill Baby K Post** | The Kill Baby K post on HolySmoke.org was investigated (Search Warrant 3/8/19), Cloudflare identified the IPs as shared edge nodes with no user data available (May 2019), T-Mobile CSLI placed Wang in New York City throughout 3/6/19, and law enforcement expressly concluded the IP could not be attributed to Wang (see Exhibit M). The DA declined to charge Wang based on this post despite charging her on 11 other counts arising from the same investigation period. |
| | |

---

**SIGNIFICANCE TO PSR OBJECTION**

The DA's deliberate exclusion of the Kill Baby K post from the 10/17/19 Arrest Warrant — while charging Wang on 11 other counts spanning the same period — constitutes prosecutorial acknowledgment that the post could not be proven to be Wang's. The same officer who included it in the 3/8/19 Search Warrant affidavit omitted it entirely from the charging document seven months later, after IP investigation revealed shared Cloudflare nodes and T-Mobile CSLI confirmed Wang was in New York. Yet petitioner's family law counsel continued using this uncharged post in custody proceedings for years afterward.



## Affidavit of Sergeant Michele Martinez

My name is Michele Martinez. I am currently employed as a Sergeant of Police in and for the City and County of San Francisco, California. I have been so employed for more than twelve years. I am currently assigned to the Special Investigations Division. Prior to my current assignment, I was assigned to Southern Station, Mission Station, Richmond Station in both Plain Clothes and Uniformed Patrol and Northern Station Investigations Team.

My training includes the Robert Presley Institute of Criminal Investigation, the San Francisco Police Department Detective School, and ongoing instruction while working uniformed patrol and in plainclothes assignments. In addition to the experience and training listed above, I have the below listed work experience and have successfully completed the following courses:

1) University of California Polytechnic State University, BA Degree
2) Basic Course intensive - (San Francisco Police Academy)
3) 76 Hour- Institute of Criminal Investigation Core Course

During the course of my employment, I have participated in over fifty arrests for various violations of the California Vehicle Code, Health and Safety Code and Penal Code, including firearms/weapons related crimes. Additionally, I have participated in the execution of more than fifteen warrants, during which narcotics and weapons (firearms) were seized. During the course of my career, I have also been involved in the investigation of numerous incidents including, but not limited to robberies, burglaries and narcotics related crimes.

## Statement of Probable Cause of Sergeant Michele Martinez

The facts alleged in this affidavit do not necessarily represent all facts known gathered to date regarding this investigation, but the affidavit does include all known exculpatory information and has not had any illegal conduct or observations redacted or excised from it. The facts averred herein I believe are those necessary to establish the probable cause necessary to search and seize the things identified in this warrant application.

On 2/13/19, I was assigned to investigate the harassment, and possible stalking of the Victim and his/her family by Kailin Wang. I initially contacted (RW1) Reportee1 who told me that the Victim and Wang had met online and had a brief intimate relationship, which resulted in the birth of a child. Reportee1 told me that Wang has been posting a variety of defamatory articles online about the Victim, and has been reaching out to his friends and family. Reportee1 provided me with the contact information for the Victim.

I conducted interviews with the Victim, who in summary, told me the following. The Victim met Wang through "Tinder", which is an online dating service. They went on two dates in February and March of 2018, and engaged in unprotected sexual intercourse on both of those dates. In June of 2018 Wang contacted the Victim and told him that she was pregnant, and believed that it was his child. Wang told the Victim that she had decided to abort the baby, and asked him for money, which he provided. Wang ultimately decided not to have the abortion. The Victim told me that he had infrequent communication with Wang between June and October of 2018. The Victim described their conversations as "pointless and destructive." Wang threatened to block communication with the Victim, so he decided to cease contact with her until closer to the birth of the baby. On October 11, 2018, The Victim contacted Wang, requesting a pre-natal paternity test, and offered assistance. On December 6, 2018, Wang told the Victim that the baby was born on November 26, 2018.

The Victim told me that on December 24, 2018, posts began appearing about him online, and Wang started messaging friends, family and acquaintances of his. The online posts stated that the Victim was coercing Wang into an abortion, referred to the Victim as a "dead beat dad," and stated that he was trying to avoid responsibility. The Victim's attorney sent a Cease and Desist letter to Wang, but the postings and contacts continued. The postings were made to multiple websites and social media platforms, using different aliases believed to belong to Wang. On February 5, 2019, a message was sent to a friend of the Victim's father mentioning that the Victim is in a child support battle and needs his help. On February 6, 2019, a message was sent to a friend of the Victim

---

## DECLARATION IN SUPPORT OF ISSUANCE OF WARRANT OF ARREST

The undersigned hereby declares, upon information of belief:

That she is a Sergeant in the **San Francisco Police Department** assigned to the **Special Investigations Division.**

That a complaint charging **Kailin Wang** with the crimes of **646.9(a) PC (x2), 646.9(b) PC, 530.5 PC, 273.6 PC (x2) and 653.2 PC (x4)** has been issued and is filed with the Clerk of the Court.

That said defendant, **Kailin Wang** committed said offenses in the manner and by means as set forth and described in the following affidavit:

### Arrest Warrant Affidavit

My name is Michele Martinez, and I am currently employed as a Sergeant of Police in and for the City and County of San Francisco, California. I have been so employed for approximately thirteen years. I am currently assigned to the Special Investigations Division. Prior to being assigned to Special Investigations, I was assigned to the Northern Station Investigations Team, and numerous District Police Stations, including Southern Station, Mission Station and Richmond Station where I operated in uniform and in a plainclothes capacity.

Included in my duties is to investigate all different types of criminal activities within the City and County of San Francisco.

Training:
1. California Polytechnic State University, BA Degree
2. Basic Course Intensive – San Francisco Police Academy
3. 76 hour – Institute of Criminal Investigation Core Course
4. Basic Robbery Apprehension Training (San Francisco Police Academy)
5. Drug Alcohol Recognition Update (San Francisco Police Academy)
6. Police Crisis Intervention Training (San Francisco Police Academy)
7. San Francisco Police Department Detective School
8. POST Supervisory Course

On 2/13/19, I was assigned to investigate the harassment, and possible stalking of Victim1 and his family by Kailin Wang. I conducted interviews with Victim1, who in summary, told me the following. Victim1 met Wang through "Tinder", which is an online dating service. They went on two dates in February and March of 2018, and engaged in unprotected sexual intercourse on both of those dates. In June of 2018 Wang contacted Victim1 and told him that she was pregnant, and believed that it was his child. Victim1 told me that he had infrequent communication with Wang between June and October of 2018. Victim1 described their conversations as "pointless and destructive." Wang threatened to block communication with Victim1, so he decided to cease contact with her until closer to the birth of the baby. On December 6, 2018, Wang told Victim1 that the baby had been born on ████

On 2/8/19, "Christoffer Thygesen Sperm Bank" was posted on https://www.holysmoke.org/bad-business/christoffer-thygesen/. The content published says, "Christoffer Thygesen or should we say dead beat father this Sperm Bank is spreading his seed all over Tinder shooting his load up numerous cunts. He's fathered a child with a woman twice his age according to court doucments. and he is being SUED For CHILD SUPPORT in Los Angeles Superior Court. He will hit it and quit it, impregnate u and leave u with a child to raise all by yourself. He will spend money on Tinder pussy but won't spend a dime on his own child. This one is destined to father at least 5 baby mamas by the time he is 30. @tiggamaroo." The website linked to this post is http://www.instagram.com/tiggamaroo, which is the Victim's personal Instagram account.

On 2/12/19, "Christopher Thygesen" was posted on https://www.holysmoke.org/scam/christoffer-thygesen. The content published says, "Christoffer Thygesen Forced me to Kill 18 Week old Baby," and "Christoffer Thygesen Impregnated me and abandoned his Son." The post also mentions the Victim's father, and his grandfather. The website linked to this post is http://www.instagram.com/tiggamaroo, which is the Victim's personal Instagram account.

On 3/6/19, a comment is posted to https://www.holysmoke.org/bad-business/christoffer-thygesen/ by "Kailin Wang" which states, "I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!"

On each of the posts, there are numerous additional comments which I believe may be posted by Wang. Four of the comments are posted in the name of the victim in the Utah case, where Wang is charged with fifty counts of electronic communications harassment. The most recent comment from the Utah victim was made on 3/6/19. I contacted the Utah victim who told me that he/she has never commented on Holysmoke.org or any of the other websites.

The following are links to content published by Wang on Holysmoke.org. I believe that a search of this content, as well as all data associated with the content, will provide evidence stalking and electronic/online harassment by Wang.

https://www.holysmoke.org:
https://www.holysmoke.org/bad-business/christoffer-thygesen
https://www.holysmoke.org/scam/christoffer-thygesen

I know from my training, experience and consulting with other investigators that companies/websites like Holysmoke.org stores and maintains Subscriber Information and Internet Protocol (IP) Logs of their users. IP Logs are logs that capture your IP address when you connect to or use Holysmoke.org website/products. An IP address is analogous with that of a physical building address used to identify the location of a building. The IP address can be researched and resolved back to a physical building address such as a business address, residential address or internet service provider. This information can assist an investigator in identifying the general location where a user may have been during a particular access connection.

Based on the above facts, which I swear under penalty of perjury are true and correct to the best of my knowledge and belief, I have probable cause to believe, and do believe, that evidence of the violation of 646.9(a) pc (Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking), and 653m(a) pc (Every person who, with intent to annoy, telephones or makes contact by means of an electronic communication device with another and addresses to or about the other person any obscene language or addresses to the other person any threat to inflict injury to the person or property of the person addressed or any member of his or her family, is guilty of a misdemeanor.) will be obtained from the requested information provided by Holysmoke.org.

It has been my experience that it takes some companies considerable time beyond the statutory 10-day search warrant return period to collect and provide materials sought in this search warrant. Therefore, I request

---

After learning of the birth of the child, Victim1 hired a family law attorney to assist in determining if he was the father. On February 11, 2019 a DNA test confirmed that Victim1 is the father of the child. The attorney also informed Victim1 that Wang was currently a defendant in a criminal harassment case in Utah involving another man (Victim2) from San Francisco. Victim1 later learned that Wang was also previously charged with stalking and harassing a man in New York, as well as violating an Order of Protection issued in that case. In that case, it is alleged that Wang threatened the New York man that if he wouldn't be with her, she was going to go to his residence with a gun. Wang pled guilty to second degree harassment in New York.

Victim1 told me that beginning on December 24, 2018, Wang began contacting people in his "network" and making defamatory and untrue statements about him. He also found the content of the posts and messages to be threatening and put him in fear for his safety, his family's safety, and especially the safety of his child. Victim1 provided me with a list of people believed to have been contacted by Wang, as well as an index of websites and social media accounts that Wang has posted to, or used to contact people associated with him. These include Facebook, Instagram and Twitter, as well as websites such as cheaterxposed.us, medium.com, scribd.com, holysmoke.org, bloglovin.com, internetcheaters.com, dirtycheater.org, thedirty.com, and many others.

I reviewed some of the posts made to the various websites provided by Victim1.

On 2/11/19, a post was made to Medium.com by account @▮▮▮▮▮The post includes photos of Victim1 and a photo of a dead and dismembered baby. Through various search warrants I know that Medium account @▮▮▮▮▮ has been accessed from ▮▮▮▮▮ which is the address listed on Wang's Utah Driver's License.

On 2/12/19, a post was made to Medium.com by account @▮▮▮▮▮The post includes photos of Victim1, the DNA test, text messages between Victim1 and Wang, and describes the child as "sick, starving and homeless." Through various search warrants I know that Medium account @▮▮▮▮▮ has been accessed from ▮▮▮▮▮ which is the address listed on Wang's New York Identification Card.

On 2/13/19, a post was made to Medium.com by account @▮▮▮▮▮ The post includes photos of Victim1, a photo of a dismembered fetus, the DNA test, and text messages between Victim1 and Wang. Through various search warrants I know that Medium account @▮▮▮▮▮ has been accessed from ▮▮▮▮▮ ▮▮▮▮▮

On 2/15/19, a post was made to Medium.com by account @▮▮▮▮▮ The post includes photos of Victim1, the DNA test, and a photo of a dead and dismembered baby. Through various search warrants I know that Medium account @▮▮▮▮▮ has been accessed from ▮▮▮▮▮ ▮▮▮▮▮

I reviewed the list of people who have been contacted by Wang. Included in this list are Victim1's parents, siblings, grandparents, an aunt and uncle, and numerous friends, housemates and bandmates. Also contacted were friends, classmates, co-workers and family members of Victim1's family and friends. Most of these contacts were made through some form of social

On 2/12/19, "Christopher Thygesen" was posted on https://www.holysmoke.org/scam/christoffer-thygesen. The content published says, "Christoffer Thygesen Forced me to Kill 18 Week old Baby," and "Christoffer Thygesen Impregnated me and abandoned his Son." The post also mentions the Victim's father, and his grandfather. The website linked to this post is http://www.instagram.com/tiggamaroo, which is the Victim's personal Instagram account.

On 3/6/19, a comment is posted to https://www.holysmoke.org/bad-business/christoffer-thygesen/ by "Kailin Wang" which states, "I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!"

On each of the posts, there are numerous additional comments which I believe may be posted by Wang. Four of the comments are posted in the name of the victim in the Utah case, where Wang is charged with fifty counts of electronic communications harassment. The most recent comment from the Utah victim was made on 3/6/19. I contacted the Utah victim who told me that he/she has never commented on Holysmoke.org or any of the other websites.

The following are links to content published by Wang on Holysmoke.org. I believe that a search of this content, as well as all data associated with the content, will provide evidence stalking and electronic/online harassment by Wang.

https://www.holysmoke.org:
https://www.holysmoke.org/bad-business/christoffer-thygesen
https://www.holysmoke.org/scam/christoffer-thygesen

I know from my training, experience and consulting with other investigators that companies/websites like Holysmoke.org stores and maintains Subscriber Information and Internet Protocol (IP) Logs of their users. IP Logs are logs that capture your IP address when you connect to or use Holysmoke.org website/products. An IP address is analogous with that of a physical building address used to identify the location of a building. The IP address can be researched and resolved back to a physical building address such as a business address, residential address or internet service provider. This information can assist an investigator in identifying the general location where a user may have been during a particular access connection.

Based on the above facts, which I swear under penalty of perjury are true and correct to the best of my knowledge and belief, I have probable cause to believe, and do believe, that evidence of the violation of 646.9(a) pc (Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking), and 653m(a) pc (Every person who, with intent to annoy, telephones or makes contact by means of an electronic communication device with another and addresses to or about the other person any obscene language or addresses to the other person any threat to inflict injury to the person or property of the person addressed or any member of his or her family, is guilty of a misdemeanor.) will be obtained from the requested information provided by Holysmoke.org.

It has been my experience that it takes some companies considerable time beyond the statutory 10-day search warrant return period to collect and provide materials sought in this search warrant. Therefore, I request permission to return this search warrant within 10 days from the date all materials are received from this company.

As required by Section 1546.1(d) of the California Penal Code. Any information obtained through the execution of this warrant that is unrelated to the objective of the warrant shall be sealed and shall not be subject to further review, use, or disclosure absent an order from the court.

Wherefore, Affiant prays that a search warrant be issued, commanding the immediate search of the business records described above, for the property or things described and that such property be brought before a

---

media, and in some cases via email. Various aliases and email addresses were used in these contacts.

On 2/7/19, a Facebook Messenger message was sent to Victim1's three siblings from "█████████." The messages stated, "Ur an Uncle now." and "If u do end up in politics I hope u make Abortions more accessible for women." and "Maybe you'll get to c ur Nephew at the hospital one day. As he is sick and on Welfare." Each message included a copy of text messages sent between Victim1 and Wang, as well as a photo of the child. Based on the content of the messages, I believe that "███████" is an alias for Wang.

On 2/15/19, an Instagram follow request was sent from ██████████ to a friend of Victim1's brother. The account states, "Victim1 Impregnated me forced me to KILL his 21 week child. Victim1 has NEVER contributed a Dime to his child!!!!" Included in the account are photos of Victim1, text messages between Victim1 and Wang, and a photo of a dead and dismembered baby. Through various search warrants I know that the Instagram account ███████████ has been accessed from ████████.

On 2/22/19, an Instagram follow request was sent from ██████████ to two of Victim1's friends. The account states, "Victim1 will pay to harass u and have sex with u but won't pay a dime of Child Support !!" Included in the account are photos of Victim1, the DNA test results for the child and a photo of an aborted fetus. Through various search warrants I know that the Instagram account ████████████ has been accessed from ████████ and ████████.

On 3/6/19, Judge Richard Darwin of the San Francisco Superior Court, granted an amended Temporary Restraining Order protecting Victim1, his parents, his three siblings, and two grandparents from Wang (Case Number: FDV-19-814465). It was ordered that Wang must not harass, attack, strike, threaten, assault, hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, impersonate or block movements. Wang must also not contact either directly or indirectly, in any way, including but not limited to, by telephone, mail, e-mail or other electronic means. Wang must also not take any action, directly or through others, to obtain the addresses or locations of the persons protected. Wang was also ordered to refrain from, directly or indirectly, harassing, defaming, impersonating, inflicting significant emotional distress on, and disclosing confidential information to any person. Judge Darwin also ordered custody of the child be granted immediately to Victim1, with no visitation awarded to Wang. Although Wang was not present in court on the day the Orders were granted, she did call into court and was aware of the hearing. I was advised on 3/8/19, that the child was removed from the custody of Wang's parents and given to Victim1, where he remains at this time. On 3/18/19, Deputy Ventura personally served Wang with a copy of the Temporary Restraining Order, Child Custody and Visitation Order, and Travel Order.

On 3/22/19 at 1814 hours, Wang called San Francisco Police dispatch and requested a well-being check at the Victim's residence in San Francisco. Wang stated that she and Victim1 have restraining orders against each other and that she is concerned for her child's safety. Wang told the Dispatcher that the Victim lives with roommates and that they are possibly drug users. Officers responded to Victim1's residence, but there was no answer at the door. Wang was advised of the result of the well-being check.

003054



| Exhibit Q | Sgt. Martinez 3/8/19 Search Warrant — HolySmoke.org Issued by Judge Quinn; Kill Baby K as Investigative Basis; Warrant Directed at IP Logs |
|---|---|
| Case | People v. Wang, No. 19016407; Thygesen v. Wang, No. FDV-19-814465 |
| Dates | March 8, 2019 |
| Source | State of California, City and County of San Francisco — Search Warrant; Affiant: Sgt. Michele Martinez #1208, SFPD Special Investigations Division; Issued by: Judge Joseph M. Quinn, SF Superior Court Dept. 607 |
| Search Warrant Issuance | Signed and sworn before Judge Joseph M. Quinn on March 8, 2019 at 7:30 A.M. Hobbs Sealing: NO. Nighttime Search: NO. Issued under Cal. Penal Code Section 1524(a)(4) [tends to show a felony has been committed] and 1524(a)(7) [electronic communication service records]. Warrant certified April 17, 2019 by Clerk of the Superior Court, County of San Francisco. |
| Target of the Warrant | Holysmoke.org and pope@holysmoke.org. URL targets: https://www.holysmoke.org/bad-business/christoffer-thygesen and https://www.holysmoke.org/scam/christoffer-thygesen. |
| Evidence Commanded to be Seized | All published content including all reviews/comments, logins, date of creation and date of removal, device and browser type used, originating and destination Internet Protocol addresses, user/subscriber information, associated email addresses and phone numbers. All information associated with each review/comment left on the published content, including email addresses, IP addresses, and user/subscriber information. Custodian of Records affidavit and declaration required with production. |
| Kill Baby K Post as Probable Cause Basis | Sgt. Martinez's affidavit cites the 3/6/19 comment by "Kailin Wang" stating: "I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!" Martinez states she believes numerous additional comments on the posts "may be posted by Wang." She further notes that four comments were posted in the name of the Utah case victim — and that she contacted the Utah victim who confirmed never commenting on HolySmoke.org. |
| Martinez's IP Address Theory in the Warrant | Sgt. Martinez wrote: "I know from my training, experience and consulting with other investigators that companies/websites like Holysmoke.org stores and maintains Subscriber Information and Internet Protocol (IP) Logs of their users. IP Logs are logs that capture your IP address when you connect to or use Holysmoke.org website/products. An IP address is analogous with that of a physical building address used to identify the location of a building. The IP address can be researched and resolved back to a physical building |

| | |
|---|---|
| | address such as a business address, residential address or internet service provider." |
| **Result of HolySmoke Warrant Execution** | HolySmoke.org owner Jeff Rifleman (Pope) responded to the search warrant. The IPs produced were all Cloudflare edge nodes (108.162.x.x, 172.68.x.x, 172.69.x.x series). Cloudflare subsequently confirmed in writing (May 17-18, 2019, Report #2586627, David Ngo) that "the website was logging the wrong IP addresses" and no user data could be produced. The warrant's entire probable cause theory — that HolySmoke IP logs would identify the poster — was defeated by the actual technical reality of Cloudflare's CDN infrastructure. |
| **Comparison to Arrest Warrant** | The 3/8/19 Search Warrant affidavit mentions the Kill Baby K post. The 10/17/19 Arrest Warrant affidavit (by the same Sgt. Martinez) covering the same case entirely omits the Kill Baby K post. The post was investigated, found unattributable, and excluded from criminal charges — yet continued to appear in family court proceedings. |

**SIGNIFICANCE TO PSR OBJECTION**

The Search Warrant establishes that as of March 8, 2019, law enforcement's entire theory that the Kill Baby K post was attributable to Wang rested on the assumption that HolySmoke.org maintained user-identifiable IP logs. That assumption was factually wrong: HolySmoke was proxied through Cloudflare, logging only shared edge-node IPs. The warrant's IP-based probable cause theory collapsed upon execution. Sgt. Martinez's own subsequent investigation then led her to omit the post from criminal charges entirely.

## State of California, City and County of San Francisco,
## SEARCH WARRANT

I, Sgt. Michele Martinez #1208, swear under oath and penalty of perjury that the facts expressed by him/her in the attached and incorporated **Statement of Probable Cause** are true and that based thereon he/she has probable cause to believe and does believe that the articles, property, and persons described below are lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below, and are now located at the locations set forth below.   Wherefore, Affiant requests that this Search Warrant be issued.

_____,
(Signature of Affiant)

Hobbs Sealing Requested:  YES_____ NO _X_ .
Nighttime Search Requested:  YES _____ NO _X_ .

### (SEARCH WARRANT)

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICE OFFICER OR PEACE OFFICER IN THE COUNTY OF SAN FRANCISCO, CA:** proof by affidavit, under penalty of perjury, having been made before me by Sgt. **Michele Martinez**, that there is probable cause to believe that the property or person described herein may be found at the location(s) set forth herein and that it is lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below by "☒ "(s), in that:

- ☐ It was stolen or embezzled – [1524(a)(1) PC];
- ☐ It was used as the means of committing a felony – [1524(a)(2) PC];
- ☐ It is possessed by a person with the intent to use it as means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery – [1524(a)(3) PC];
- ☒ It tends to show that a felony has been committed or that a particular person has committed a felony – [1524(a)(4) PC];
- ☐ It tends to show that sexual exploitation of a child, in violation of PC Section 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Section 311.11, has occurred or is occurring – [1524(a)(5) PC];
- ☐ An arrest warrant is outstanding for the person to be seized – [1524(a)(6) PC];
- ☐ A Child Protective Custody Warrant is outstanding for the person to be seized – [1524(a)(6) and Family Code 3134.5];
- ☒ A provider of "electronic communication service" or "remote computing service", as defined in Penal Code Section 1524.2(a) (including "California corporations" defined as any corporation or other entity that is subject to Section 102 of the Corporations Code and "Foreign corporations" defined as any corporation that is qualified to do business in this state pursuant to Section 2105 of the Corporations Code), has records or evidence regarding a subscriber or customer which (1) is of a type specified in Penal Code Section 1524.3 (i.e. the subscriber/customer's name, address, telephone number or other subscriber number or identity; the types of services the subscriber/customer utilized; the length of time the person has been a subscriber/customer of that service; and the local and long distance telephone toll billing records); and (2) which records or evidence shows that property was stolen or embezzled constituting a misdemeanor, or that property or things are in possession of any person with intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery – [1524(a)(7) PC];

## You are therefore COMMANDED to SEARCH:

Holysmoke.org
pope@holysmoke.org

## For the FOLLOWING EVIDENCE:

Holysmoke website: **https://www.holysmoke.org** for information related to the below listed posts:

https://www.holysmoke.org/bad-business/christoffer-thygesen
https://www.holysmoke.org/scam/christoffer-thygesen

Any and all information associated with each of the listed Holysmoke posts, holysmoke.org, including:
Published content, including all reviews/comments, logins, date of creation and date of removal, device and browser type used, originating and destination Internet Protocol addresses, user/subscriber information, associated email addresses and phone numbers.  All information associated with each review/comment left on the published content, such as email addresses, IP addresses and user/subscriber information.

THE ANNEXED INSTRUMENT IS A CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE. ATTEST  CERTIFIED

APR 1 7 2019

CLERK           COURT
Superior Court of C.          of San Francisco
BY:____
DEPUTY CLERK

Holysmoke shall verify the authenticity of electronic information that it produces by providing an affidavit from the Custodian of Records, and a declaration from the Custodian of Records to be included with the records/report.

Holysmoke shall be compensated by the San Francisco Police Department for reasonable expenses incurred in complying with the court's order. Additionally, it is the ORDER of this court that:
This Search Warrant is submitted in compliance with 1546.1(h) of the California Penal Code. It is ordered that all information obtained through the execution of the warrant that is unrelated to the objective of the warrant shall be sealed and not subject to further review, use, or disclosure without a court order.

This Search Warrant and Affidavit and attached and incorporated Statement of Probable Cause were sworn to as true and subscribed before me on this _8th_ day of _March_____, 2019, at _7:30_____ A.M.(/ P.M)
Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

Hobbs Sealing Authorized:  YES___  NO_X
Nighttime Search Authorized:  YES___  NO_X

_____,
Signature of Magistrate
Joseph M. Quinn

Judge of the Superior Court Department _608_,
City and County of San Francisco, California

## Affidavit of Sergeant Michele Martinez

My name is Michele Martinez. I am currently employed as a Sergeant of Police in and for the City and County of San Francisco, California. I have been so employed for more than twelve years. I am currently assigned to the Special Investigations Division. Prior to my current assignment, I was assigned to Southern Station, Mission Station, Richmond Station in both Plain Clothes and Uniformed Patrol and Northern Station Investigations Team.

My training includes the Robert Presley Institute of Criminal Investigation, the San Francisco Police Department Detective School, and ongoing instruction while working uniformed patrol and in plainclothes assignments. In addition to the experience and training listed above, I have the below listed work experience and have successfully completed the following courses:

1) University of California Polytechnic State University, BA Degree
2) Basic Course intensive - (San Francisco Police Academy)
3) 76 Hour- Institute of Criminal Investigation Core Course

During the course of my employment, I have participated in over fifty arrests for various violations of the California Vehicle Code, Health and Safety Code and Penal Code, including firearms/weapons related crimes. Additionally, I have participated in the execution of more than fifteen warrants, during which narcotics and weapons (firearms) were seized. During the course of my career, I have also been involved in the investigation of numerous incidents including, but not limited to robberies, burglaries and narcotics related crimes.

## Statement of Probable Cause of Sergeant Michele Martinez

The facts alleged in this affidavit do not necessarily represent all facts known gathered to date regarding this investigation, but the affidavit does include all known exculpatory information and has not had any illegal conduct or observations redacted or excised from it. The facts averred herein I believe are those necessary to establish the probable cause necessary to search and seize the things identified in this warrant application.

On 2/13/19, I was assigned to investigate the harassment, and possible stalking of the Victim and his/her family by Kailin Wang. I initially contacted (RW1) Reportee1 who told me that the Victim and Wang had met online and had a brief intimate relationship, which resulted in the birth of a child. Reportee1 told me that Wang has been posting a variety of defamatory articles online about the Victim, and has been reaching out to his friends and family. Reportee1 provided me with the contact information for the Victim.

I conducted interviews with the Victim, who in summary, told me the following. The Victim met Wang through "Tinder", which is an online dating service. They went on two dates in February and March of 2018, and engaged in unprotected sexual intercourse on both of those dates. In June of 2018 Wang contacted the Victim and told him that she was pregnant, and believed that it was his child. Wang told the Victim that she had decided to abort the baby, and asked him for money, which he provided. Wang ultimately decided not to have the abortion. The Victim told me that he had infrequent communication with Wang between June and October of 2018. The Victim described their conversations as "pointless and destructive." Wang threatened to block communication with the Victim, so he decided to cease contact with her until closer to the birth of the baby. On October 11, 2018, The Victim contacted Wang, requesting a pre-natal paternity test, and offered assistance. On December 6, 2018, Wang told the Victim that the baby was born on November 26, 2018.

The Victim told me that on December 24, 2018, posts began appearing about him online, and Wang started messaging friends, family and acquaintances of his. The online posts stated that the Victim was coercing Wang into an abortion, referred to the Victim as a "dead beat dad," and stated that he was trying to avoid responsibility. The Victim's attorney sent a Cease and Desist letter to Wang, but the postings and contacts continued. The postings were made to multiple websites and social media platforms, using different aliases believed to belong to Wang. On February 5, 2019, a message was sent to a friend of the Victim's father mentioning that the Victim is in a child support battle and needs his help. On February 6, 2019, a message was sent to a friend of the Victim

about creating a fund for the Victim's starving child. On February 7, 2019 a message was sent to the Victim's sibling stating that the baby was sick and on welfare. On February 11, 2019, a message was sent to a bandmate of the Victim suggesting that band earning could be subject to child support. On February 13, 2019, a message was sent to the Victim's friend from college with links to online posts about the Victim. On February 16, 2019, "friend requests" were made to a friend of the Victim's sibling. The account linked to an anti-abortion Facebook page. On February 21, 2019 an Instagram follow request was sent to a friend of the Victim with screen shots of a fetus head. On February 28, 2019, emails were sent to former co-workers of the Victim's mother, mentioning a child support case. On March 6, 2019, Wang posted in the comments section of an online article she had previously posted about the Victim, "I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!" Based on this comment, Spanish Fork Police officers responded to Wang's last known address in Utah, in an attempt to conduct a well-being check on the child. They were unable to locate Wang or the child at that time. On March 7, 2019, Utah Division of Child and Family Services responded to Wang's last known address where they found the child in the home with Wang's parents. Wang was not in the home at that time.

The Victim has provided me with a list of people believed to have been contacted by Wang, as well as an index of websites and social media accounts that Wang has posted to, or used to contact people associated with the Victim. The Victim told me that in September of 2018, he lost his job due to poor performance. Since that time, the Victim has been looking for another job, and has applied to numerous places. The Victim told me that he believes he is qualified, and has gotten along in the interview process at a number of places, but continues to be turned down. Although attorneys for the Victim have been able to remove some of the online postings, an internet search on the Victim's name still reveals a number of negative articles. The Victim believes that this has kept him from obtaining a new job.

The Victim is aware of two criminal cases involving Wang for similar acts towards other men she has met online. In the New York case, Wang threatened to go to the victim's home with a gun. She also created an online account in the New York victim's name, and solicited nonconsensual sexual encounters for him. Wang was charged with stalking and harassment. Wang is currently being charged in Spanish Fork Utah with numerous counts of electronic communications harassment against another individual.

Based on the postings made online by Wang, which include photos of aborted fetuses, and the claims that the child is sick, and the previous allegations of stalking and harassment made against Wang, The Victim told me that he is in fear for his safety, the safety of his family, and especially the safety of his child. On 2/11/19 a DNA test confirmed that the Victim is the father of the child.

On 3/6/19, Judge Richard Darwin granted an amended Temporary Restraining Order for the Victim, his parents, his three siblings, and two grandparents. Judge Darwin also ordered custody of the child be granted immediately to the Victim, with no visitation awarded to Wang. Wang was also ordered to refrain from, directly or indirectly, harassing, defaming, impersonating, inflicting significant emotional distress on, and disclosing confidential information. Wang was not present in court at the time of the hearing.

Holysmoke.org is a website, and describes itself as "an attempt to provide an unbiased, secure, unadulterated and free platform where you can create alerts, contribute and refer to information which may help you avoid risks and damages, both emotionally and financially." It is believed that Wang used Holysmoke.org to publish content about the Victim. It also appears that she made comments on these posts and forwarded links to associates of the Victim.

On 2/8/19, "Christoffer Thygesen Sperm Bank" was posted on https://www.holysmoke.org/bad-business/christoffer-thygesen/. The content published says, "Christoffer Thygesen or should we say dead beat father this Sperm Bank is spreading his seed all over Tinder shooting his load up numerous cunts. He's fathered a child with a woman twice his age according to court doucments. and he is being SUED For CHILD SUPPORT in Los Angeles Superior Court. He will hit it and quit it, impregnate u and leave u with a child to raise all by yourself. He will spend money on Tinder pussy but won't spend a dime on his own child. This one is destined to father at least 5 baby mamas by the time he is 30. @tiggamaroo." The website linked to this post is http://www.instagram.com/tiggamaroo, which is the Victim's personal Instagram account.

On 2/12/19, "Christopher Thygesen" was posted on https://www.holysmoke.org/scam/christoffer-thygesen. The content published says, "Christoffer Thygesen Forced me to Kill 18 Week old Baby," and "Christoffer Thygesen Impregnated me and abandoned his Son." The post also mentions the Victim's father, and his grandfather. The website linked to this post is http://www.instagram.com/tiggamaroo, which is the Victim's personal Instagram account.

On 3/6/19, a comment is posted to https://www.holysmoke.org/bad-business/christoffer-thygesen/ by "Kailin Wang" which states, "I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!"

On each of the posts, there are numerous additional comments which I believe may be posted by Wang. Four of the comments are posted in the name of the victim in the Utah case, where Wang is charged with fifty counts of electronic communications harassment. The most recent comment from the Utah victim was made on 3/6/19. I contacted the Utah victim who told me that he/she has never commented on Holysmoke.org or any of the other websites.

The following are links to content published by Wang on Holysmoke.org. I believe that a search of this content, as well as all data associated with the content, will provide evidence stalking and electronic/online harassment by Wang.

https://www.holysmoke.org:
https://www.holysmoke.org/bad-business/christoffer-thygesen
https://www.holysmoke.org/scam/christoffer-thygesen

I know from my training, experience and consulting with other investigators that companies/websites like Holysmoke.org stores and maintains Subscriber Information and Internet Protocol (IP) Logs of their users. IP Logs are logs that capture your IP address when you connect to or use Holysmoke.org website/products. An IP address is analogous with that of a physical building address used to identify the location of a building. The IP address can be researched and resolved back to a physical building address such as a business address, residential address or internet service provider. This information can assist an investigator in identifying the general location where a user may have been during a particular access connection.

Based on the above facts, which I swear under penalty of perjury are true and correct to the best of my knowledge and belief, I have probable cause to believe, and do believe, that evidence of the violation of 646.9(a) pc (Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking), and 653m(a) pc (Every person who, with intent to annoy, telephones or makes contact by means of an electronic communication device with another and addresses to or about the other person any obscene language or addresses to the other person any threat to inflict injury to the person or property of the person addressed or any member of his or her family, is guilty of a misdemeanor.) will be obtained from the requested information provided by Holysmoke.org.

It has been my experience that it takes some companies considerable time beyond the statutory 10-day search warrant return period to collect and provide materials sought in this search warrant. Therefore, I request permission to return this search warrant within 10 days from the date all materials are received from this company.

As required by Section 1546.1(d) of the California Penal Code. Any information obtained through the execution of this warrant that is unrelated to the objective of the warrant shall be sealed and shall not be subject to further review, use, or disclosure absent an order from the court.

Wherefore, Affiant prays that a search warrant be issued, commanding the immediate search of the business records described above, for the property or things described and that such property be brought before a

magistrate or retained as provided in Section 1536 of the California Penal Code. I request that a Search Warrant be issued based upon the aforementioned facts, commanding the search of the person, premise(s) or vehicles(s) designated above for the property or things described, or any part thereof, and that such items or property be brought before this magistrate or retained subject to the order of the court pursuant to Section 1536 of the Penal Code.

Based on the above facts, which I swear under penalty of perjury the information in this document to be true to the best of his knowledge

_____

Signature of Affiant

Sworn to be true and subscribed to me this _8th_ day of _March_ , 2019 at _2:70_ A.M./P.M.

Hobbs Sealing Authorized:  YES___  NO _X_
Nighttime Search Authorized:  YES___  NO _X_

_____

Signature of Judge

Judge of the Superior Court of California, City and County of San Francisco; Dept.# _608_

Judge for the Superior Court of California, County of San Francisco: __JOSEPH M. QUINN__

(Printed Name of Magistrate)

**SEARCH WARRANT ISSUED DATE:** _3/8/19_    **SEARCH WARRANT RETURN DATE:** _____

| Exhibit R | SFPD Chronological Report (5/22/19) — Sgt. Martinez Tells Kronenberger "IP Addresses Are Spoofed"; Kill Baby K Excluded from 10/17/19 Arrest Warrant |
|---|---|
| **Case** | People v. Wang, No. 19016407; Thygesen v. Wang, No. FDV-19-814465 |
| **Dates** | May 22, 2019 (SFPD Chronological Report); October 17, 2019 (Arrest Warrant charges) |
| **Source** | San Francisco Police Department Chronological Report of Investigation — Page 17 of 31; Sgt. Michele Martinez, SFPD Special Investigations Division |
| **5/22/19 SFPD Log Entry — Kronenberger Call (0932)** | The SFPD Chronological Report records the following on May 22, 2019: "I spoke with Karl Kronenberger (attorney for Wang). Kronenberger told me that Wang has not made any of the threatening posts. He mentioned the 'kill my baby' post on Holysmoke. I told Kronenberger that I have to prove that a post came from a specific person, and sometimes IP addresses are spoofed. I told him to let me know if there is something that he would like me to look at that would help his client." |
| **Context of the 5/22/19 Call** | The 5/22/19 log entries also show: at 0842 — Martinez emailed Kronenberger inviting him to contact her to discuss the Wang matter; at 0855 — received email back, returned call, left message; at 0932 — spoke with Kronenberger. Earlier same day: 1225 — Facebook search warrant served; 1315 — spoke with SVU re CPS report; 1322 — received CPS report; 1325 — received impersonation post emails from Wang. At the same time Cloudflare was responding to Kronenberger's subpoenas confirming the IPs were unattributable (May 17-18, 2019), Martinez independently acknowledged to Kronenberger that IP addresses can be spoofed and the post could not be proven to be Wang's. |
| **Sgt. Martinez's Own Admission: IP Attribution Unproven** | "I have to prove that a post came from a specific person, and sometimes IP addresses are spoofed." This admission by the investigating officer — made contemporaneously with Cloudflare's written confirmation that HolySmoke was logging the wrong IPs — establishes that SFPD itself recognized the Kill Baby K post's IP attribution was legally insufficient. This is the same officer who authored the 3/8/19 Search Warrant using the post as probable cause, and who ultimately excluded it entirely from the 10/17/19 Arrest Warrant. |
| **Kill Baby K — Not in Arrest Warrant (10/17/19)** | When Sgt. Martinez filed the Arrest Warrant seven months later, she charged Wang with 646.9(a) PC (x2), 646.9(b) PC, 530.5 PC, 273.6 PC (x2), and 653.2 PC (x4) — eleven counts spanning the same investigation period. The Kill Baby K post was not among the charged conduct. The charged counts were based exclusively on Medium.com and Instagram posts accessed from Wang's confirmed home addresses (Spanish Fork UT and 9 W 70th St., New York) through search warrant returns — i.e., accounts with actual IP-to-subscriber attribution. The |

| | |
|---|---|
| | Kill Baby K post, using Cloudflare edge IPs with no user data, was excluded. |
| **Three-Tier Law Enforcement Conclusion** | By October 2019, three independent law enforcement determinations had effectively cleared Wang on the Kill Baby K post: (1) Cloudflare's Trust & Safety written response (May 17-18, 2019) — site logged wrong IPs, no user data available, VPN used; (2) Sgt. Martinez's oral statement to Kronenberger (May 22, 2019) — "IP addresses are spoofed," cannot prove attribution; (3) DA's charging decision (October 17, 2019) — Kill Baby K post excluded from all 11 criminal counts. Despite all three determinations, petitioner's family court attorneys continued relying on the post in custody and DVRO proceedings through 2022. |
| **Petitioner's Use of Uncharged Post in Family Court** | Petitioner's counsel Darrick Chase (Kaye Moser LLP) and Douglas Rappaport (McManis Faulkner/Law Offices of Douglas L. Rappaport) continued referencing the Kill Baby K post in family court litigation after: (a) SFPD confirmed IP attribution was unproven; (b) Cloudflare confirmed wrong IPs; (c) the DA declined to charge it; (d) T-Mobile CSLI placed Wang in New York. The family court's use of this post to justify custody orders — made without knowledge of the Cloudflare response or the SFPD chronological report — was based on information that law enforcement itself had abandoned. |

**SIGNIFICANCE TO PSR OBJECTION**

Sgt. Martinez's own contemporaneous statement — "IP addresses are spoofed" — made to Wang's attorney on May 22, 2019, is the investigating officer's acknowledgment that the Kill Baby K post could not be proven to be Wang's. When combined with Cloudflare's written confirmation (May 17-18, 2019) and the DA's exclusion of the post from all 11 criminal charges (October 17, 2019), this creates a three-source law enforcement consensus that the post was legally unattributable.

**SAN FRANCISCO POLICE DEPARTMENT**
**CHRONOLOGICAL REPORT OF INVESTIGATION**   Page 17 of 31

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | I provided Wang with my email address if she would like to contact me in the future. |
| | 1225 | Facebook SW served on Facebook via email. |
| | 1315 | Spoke with Tate Zheng at SVU regarding CPS report filed.  Zheng told me that he will provide me with the report. |
| | 1322 | Received CPS report from Zheng at SVU. |
| | 1325 | Received Emails from Wang with "impersonation" posts. Provided email address of attorney. <span style="background:black">████████████</span> |
| 5/22/19 | 0842 | Emailed Karl Kronenberger and advised that he could contact me if he wished to discuss the Wang matter. |
| | 0855 | Received email from Kronenberger, and returned his call.  Left Message. |
| | 0932 | I spoke with Karl Kronenberger (attorney for Wang). Kronenberger told me that Wang has not made any of the threatening posts. He mentioned the "kill my baby" post on Holysmoke.  I told Kronenberger that I have to prove that a post came from a specific person, and sometimes IP addresses are spoofed. I told him to let me know if there is something that he would like me to look at that would help his client. |

## DECLARATION IN SUPPORT OF
## ISSUANCE OF WARRANT OF ARREST

The undersigned hereby declares, upon information of belief:

That she is a Sergeant in the **San Francisco Police Department** assigned to the **Special Investigations Division.**

That a complaint charging **Kailin Wang** with the crimes of **646.9(a) PC (x2), 646.9(b) PC, 530.5 PC, 273.6 PC (x2) and 653.2 PC (x4)** has been issued and is filed with the Clerk of the Court.

That said defendant, **Kailin Wang** committed said offenses in the manner and by means as set forth and described in the following affidavit:

### Arrest Warrant Affidavit

My name is Michele Martinez, and I am currently employed as a Sergeant of Police in and for the City and County of San Francisco, California. I have been so employed for approximately thirteen years. I am currently assigned to the Special Investigations Division. Prior to being assigned to Special Investigations, I was assigned to the Northern Station Investigations Team, and numerous District Police Stations, including Southern Station, Mission Station and Richmond Station where I operated in uniform and in a plainclothes capacity.

Included in my duties is to investigate all different types of criminal activities within the City and County of San Francisco.

Training:
1. California Polytechnic State University, BA Degree
2. Basic Course Intensive – San Francisco Police Academy
3. 76 hour – Institute of Criminal Investigation Core Course
4. Basic Robbery Apprehension Training (San Francisco Police Academy)
5. Drug Alcohol Recognition Update (San Francisco Police Academy)
6. Police Crisis Intervention Training (San Francisco Police Academy)
7. San Francisco Police Department Detective School
8. POST Supervisory Course

On 2/13/19, I was assigned to investigate the harassment, and possible stalking of Victim1 and his family by Kailin Wang. I conducted interviews with Victim1, who in summary, told me the following. Victim1 met Wang through "Tinder", which is an online dating service. They went on two dates in February and March of 2018, and engaged in unprotected sexual intercourse on both of those dates. In June of 2018 Wang contacted Victim1 and told him that she was pregnant, and believed that it was his child. Victim1 told me that he had infrequent communication with Wang between June and October of 2018. Victim1 described their conversations as "pointless and destructive." Wang threatened to block communication with Victim1, so he decided to cease contact with her until closer to the birth of the baby. On December 6, 2018, Wang told Victim1 that the baby had been born on November 26, 2018.

Document received by the CA 1st District Court of Appeal.

Request for Judicial Notice - Exhibit A

After learning of the birth of the child, Victim1 hired a family law attorney to assist in determining if he was the father. On February 11, 2019 a DNA test confirmed that Victim1 is the father of the child. The attorney also informed Victim1 that Wang was currently a defendant in a criminal harassment case in Utah involving another man (Victim2) from San Francisco. Victim1 later learned that Wang was also previously charged with stalking and harassing a man in New York, as well as violating an Order of Protection issued in that case. In that case, it is alleged that Wang threatened the New York man that if he wouldn't be with her, she was going to go to his residence with a gun. Wang pled guilty to second degree harassment in New York.

Victim1 told me that beginning on December 24, 2018, Wang began contacting people in his "network" and making defamatory and untrue statements about him. He also found the content of the posts and messages to be threatening and put him in fear for his safety, his family's safety, and especially the safety of his child. Victim1 provided me with a list of people believed to have been contacted by Wang, as well as an index of websites and social media accounts that Wang has posted to, or used to contact people associated with him. These include Facebook, Instagram and Twitter, as well as websites such as cheaterxposed.us, medium.com, scribd.com, holsymoke.org, bloglovin.com, internetcheaters.com, dirtycheater.org, thedirty.com, and many others.

I reviewed some of the posts made to the various websites provided by Victim1.

On 2/11/19, a post was made to Medium.com by account @jbarketn345. The post includes photos of Victim1 and a photo of a dead and dismembered baby. Through various search warrants I know that Medium account @jbarketn345 has been accessed from 2481 Fairway Dr., Spanish Fork UT, which is the address listed on Wang's Utah Driver's License.

On 2/12/19, a post was made to Medium.com by account @tvnpvn688. The post includes photos of Victim1, the DNA test, text messages between Victim1 and Wang, and describes the child as "sick, starving and homeless." Through various search warrants I know that Medium account @tvnpvn688 has been accessed from 9 W 70th St Apt. 4R, New York, which is the address listed on Wang's New York Identification Card.

On 2/13/19, a post was made to Medium.com by account @bonb4905. The post includes photos of Victim1, a photo of a dismembered fetus, the DNA test, and text messages between Victim1 and Wang. Through various search warrants I know that Medium account @bonb4905 has been accessed from 9 W 70th St Apt. 4R, New York.

On 2/15/19, a post was made to Medium.com by account @hanjun083. The post includes photos of Victim1, the DNA test, and a photo of a dead and dismembered baby. Through various search warrants I know that Medium account @hanjun083 has been accessed from 9 W 70th St Apt. 4R, New York.

I reviewed the list of people who have been contacted by Wang. Included in this list are Victim1's parents, siblings, grandparents, an aunt and uncle, and numerous friends, housemates and bandmates. Also contacted were friends, classmates, co-workers and family members of Victim1's family and friends. Most of these contacts were made through some form of social

Document received by the CA 1st District Court of Appeal.

Request for Judicial Notice - Exhibit A

media, and in some cases via email. Various aliases and email addresses were used in these contacts.

On 2/7/19, a Facebook Messenger message was sent to Victim1's three siblings from "David Wallace." The messages stated, "Ur an Uncle now." and "If u do end up in politics I hope u make Abortions more accessible for women." and "Maybe you'll get to c ur Nephew at the hospital one day. As he is sick and on Welfare." Each message included a copy of text messages sent between Victim1 and Wang, as well as a photo of the child. Based on the content of the messages, I believe that "David Wallace" is an alias for Wang.

On 2/15/19, an Instagram follow request was sent from rachel_chi6776 to a friend of Victim1's brother. The account states, "*Victim1* Impregnated me forced me to KILL his 21 week child. *Victim1* has NEVER contributed a Dime to his child!!!!" Included in the account are photos of Victim1, text messages between Victim1 and Wang, and a photo of a dead and dismembered baby. Through various search warrants I know that the Instagram account rachel_chi6776 has been accessed from 2481 Fairway Dr., Spanish Fork UT.

On 2/22/19, an Instagram follow request was sent from christofferpaidsexpregnant to two of Victim1's friends. The account states, "*Victim1* will pay to harass u and have sex with u but won't pay a dime of Child Support !!" Included in the account are photos of Victim1, the DNA test results for the child and a photo of an aborted fetus. Through various search warrants I know that the Instagram account christofferpaidsexpreganant has been accessed from 2481 Fairway Dr., Spanish Fork UT and 9 W 70th St Apt. 4R, New York.

On 3/6/19, Judge Richard Darwin of the San Francisco Superior Court, granted an amended Temporary Restraining Order protecting Victim1, his parents, his three siblings, and two grandparents from Wang (Case Number: FDV-19-814465). It was ordered that Wang must not harass, attack, strike, threaten, assault, hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, impersonate or block movements. Wang must also not contact either directly or indirectly, in any way, including but not limited to, by telephone, mail, e-mail or other electronic means. Wang must also not take any action, directly or through others, to obtain the addresses or locations of the persons protected. Wang was also ordered to refrain from, directly or indirectly, harassing, defaming, impersonating, inflicting significant emotional distress on, and disclosing confidential information to any person. Judge Darwin also ordered custody of the child be granted immediately to Victim1, with no visitation awarded to Wang. Although Wang was not present in court on the day the Orders were granted, she did call into court and was aware of the hearing. I was advised on 3/8/19, that the child was removed from the custody of Wang's parents and given to Victim1, where he remains at this time. On 3/18/19, Deputy Ventura personally served Wang with a copy of the Temporary Restraining Order, Child Custody and Visitation Order, and Travel Order.

On 3/22/19 at 1814 hours, Wang called San Francisco Police dispatch and requested a well-being check at the Victim's residence in San Francisco. Wang stated that she and Victim1 have restraining orders against each other and that she is concerned for her child's safety. Wang told the Dispatcher that the Victim lives with roommates and that they are possibly drug users. Officers responded to Victim1's residence, but there was no answer at the door. Wang was advised of the result of the well-being check.

Document received by the CA 1st District Court of Appeal.

Request for Judicial Notice - Exhibit A

| Exhibit S | Wang's VL-110 Request to File New Litigation by Vexatious Litigant — May 30, 2023 |
|---|---|
| **Case** | Christoffer S. Thygesen v. Kailin Wang, Case No. FDV-19-814465, SF Superior Court (UFC Branch) |
| **Date Filed** | May 30, 2023 (electronically filed; Deputy Clerk Joshua Mandapat) |
| **Form** | Judicial Council Form VL-110 (Rev. Sept. 1, 2018) — Request to File New Litigation by Vexatious Litigant, pursuant to Cal. Code Civ. Proc. § 391.7. Filed pro se by Kailin Wang, 2481 Fairway Dr., Spanish Fork, UT 84660. |
| **Documents Sought to File (¶ 2)** | (1) FL-300 RFO requiring Thygesen to file a noticed motion, request briefing, discovery, and scheduling order; (2) FL-300 for Subp-010 Court Clerk Stamp for subpoenas to Google and Cloudflare to rebut the termination-of-visitation request. |
| **Merit Statement (¶ 3)** | Wang states: "This evidence to identify who these anonymous posters are is imminent to a child visitation hearing for another Termination of all Visitation even Supervised request by Thygesen currently set for 9/18, 9/21/2023." Requests pre-evidentiary hearing scheduling order covering discovery cut-off, expert disclosures, pre-trial motions, and fees. States: "I won't be able to conduct discovery when I have no idea what, where, who, how, the content of these postings constitutes a violation of RO." |
| **Catch-22 Statement (¶ 4)** | Wang's ¶ 4 articulates the structural problem: she asks the court to require Thygesen to file a noticed contempt or RFO motion "with specific allegations, with all exhibits, page vault captures, expert disclosures, witnesses, etc." Pursuant to Judge Flores' Findings and Order after Hearing (4/6/23 from 2/23/23 hearing). Specifically asks: "(1) Where are these posts? (3) Was it a Post Wang made? (4) Was the post made in Response to Someone else's Post? (5) Was this a comment someone made as to an article of Kailin Wang or Post made by me or someone else?" |
| **Vexatious Litigant Status** | Wang had been declared a vexatious litigant, requiring her to obtain prior court approval before filing any new litigation under Cal. Code Civ. Proc. § 391.7. This form was the only mechanism available to her to seek discovery subpoenas to Google and Cloudflare. |
| **Procedural Context** | Filed May 30, 2023 — the same day C.T. once again falsely alleged to the newly assigned judge (Judge Roeca) that Wang made the 3/6/19 Kill Baby K post, triggering Wang's effort to obtain discovery to rebut those allegations. When Wang requested further discovery to rebut the post allegations, C.T. objected — and then simultaneously argued the post was "irrelevant." |

**SIGNIFICANCE TO PSR OBJECTION**

This VL-110 documents the structural trap Wang was placed in by her vexatious litigant designation: she could not file discovery motions as of right, but had to seek pre-approval for each filing under § 391.7. When she used this mechanism to request Google and Cloudflare subpoenas — the only tools available to identify the anonymous

USA v. Wang, No. 2:24-CR-163-TS-003 — Appendix to PSR Objection to ¶¶ 36–38

posters — the request was denied. Her ¶ 4 questions ("Was it a Post Wang made?" / "Was the post made in Response to Someone else's Post?") are not rhetorical: they are the questions no court has ever answered on the merits. C.T.'s simultaneous conduct — invoking the post to seek termination of all visitation while also opposing discovery into the post's authorship and calling it irrelevant when discovery was sought — is the clearest statement of the double-bind in the record.

*Document follows on subsequent pages.*

**VL-110**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY    STATE BAR NUMBER:<br>NAME: KAILIN WANG<br>FIRM NAME:<br>STREET ADDRESS: 2481 FAIRWAY DR.<br>CITY: SPANISH FORK    STATE: UT  ZIP CODE: 84660<br>TELEPHONE NO.: 801-645-1060    FAX NO.:<br>E-MAIL ADDRESS: kaywg2372@gmail.com<br>ATTORNEY FOR (name): | *FOR COURT USE ONLY*<br><br>ELECTRONICALLY<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br><br>**05/30/2023**<br>**Clerk of the Court**<br>**BY: JOSHUA MANDAPAT**<br>**Deputy Clerk** |

⊂ **COURT OF APPEAL,**         **APPELLATE DISTRICT, DIVISION**
⊗ **SUPERIOR COURT OF CALIFORNIA, COUNTY OF**  SAN FRANCISCO
 STREET ADDRESS:  400 MCALLISTER ST.
 MAILING ADDRESS:  SAME
 CITY AND ZIP CODE:  SAN FRANCISCO, CA 94102
 BRANCH NAME:  UFC

  PLAINTIFF/PETITIONER:  CHRISTOFFER S. THYGESEN
 DEFENDANT/RESPONDENT:  KAILIN WANG
           OTHER:

| | |
|---|---|
| **REQUEST TO FILE**<br>**NEW LITIGATION BY VEXATIOUS LITIGANT**<br>Type of case: ⊂ Limited Civil   ⊂ Unlimited Civil   ⊂ Small Claims<br>⊗ Family Law   ⊂ Probate   ⊂ Other | CASE NUMBER:<br>FDV-19-814465 |

1.  I have been determined to be a vexatious litigant and must obtain prior court approval to file any new litigation in which I am not represented by an attorney. Filing new litigation means (1) commencing any civil action or proceeding, or (2) filing any petition, application, or motion (except a discovery motion) under the Family or Probate Code.

2.  I have attached to this request a copy of the document to be filed and I request approval from the presiding justice or presiding judge of the above court to file this document *(name of document):*

    (1) FL-300 RFO for Thygesen to file a  noticed Motion,  Req. Briefing, Discovery, Scheduling Order, (2) FL-300 for Subp-010 Court Clerk Stamp for Google, Cloudflare to Rebut Termination Visit

3.  The new filing has merit because *(Provide a brief summary of the facts on which your claim is based; the harm you believe you have suffered or will suffer; and the remedy or resolution you are seeking):*

    This evidence to identify who these anonymous posters are is imminent to a child visitation hearing for another Termination of all Visitation even Supervised request by Thygesen currently set for 9/18, 9/21/2023. Request for Pre Evidentiary Hearing Scheduling Order on Discovery cut-off, Expert Disclosures, Pre-trial motions, updated Fees Motions, etc.I won't be able to conduct discovery when I have no idea what, where, who, how, the content of these postings constitutes a violation of RO.

4.  The new filing is not being filed to harass or to cause a delay because *(give reasons):*

    Request for Thygesen to file a noticed Contempt or at RFO motion requesting for affirmative relief of Termination of all Visitation even Supervised with specific allegations, with all exhibits, page vault captures, expert disclosures, witnesses, etc.←– Pursuant to Judge Flore's Findings and Order after Hearing signed on 4/6/23 from the 2/23/23 hearing. ←–Furthermore, the motion must identify at least the following: (1) Where are these posts? (3) Was it a Post Wang made? (4) Was the post made in Response to Someone's else's Post? (5) Was this a comment someone made as to an article of Kailin Wang or Post made by me or someone else?

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: May 30, 2023

KAILIN WANG
          (TYPE OR PRINT NAME)

▶  (SIGNATURE)

**Page 1 of 1**

Form Approved for Optional Use<br>Judicial Council of California<br>VL-110 [Rev. September 1, 2018]

**REQUEST TO FILE**
**NEW LITIGATION BY VEXATIOUS LITIGANT**

Code of Civil Procedure, § 391.7
*www.courts.ca.gov*

**Print this Form**

| Exhibit T | More of CT's Oppositions to Wang to conduct further discovery on the March 6, 2019 "Kill baby K" Post— September 8, 2023 |
|---|---|

| Case | In re Thygesen v. Wang, Case No. FDV-19-814465, SF Superior Court, Dept. 403 |
|---|---|

| Date Filed | September 8, 2023 (electronically filed; Deputy Clerk Joshua Mandapat) |
|---|---|

| Hearing | September 21, 2023, 9:00 a.m., Dept. 403, before Hon. Russell S. Roeca |
|---|---|

| Counsel | Douglas L. Rappaport (136194), Law Offices of Douglas L. Rappaport, 260 California Street, Suite 1002, San Francisco, CA 94111. Attorney for Petitioner, Christoffer Thygesen. |
|---|---|

| Relief Sought | That Kailin Wang's proposed subpoena to Cloudflare should be denied, and the subpoena to Google should be in the form proposed by Thygesen. |
|---|---|

| Significance | C.T.'s own attorney submitted the Utah criminal charging document and a Utah court order to the San Francisco Superior Court as judicially noticeable — not to prove facts, but to establish the existence of those proceedings. This confirms the state and federal cases were being actively used as collateral leverage in the California custody litigation as late as September 2023. |
|---|---|

**SIGNIFICANCE TO PSR OBJECTION**

C.T.'s counsel filed this RJN to oppose Wang's own discovery request — seeking to have the Court take judicial notice of the Utah criminal case (First Amended Information) and a Utah court order as a basis to deny Wang's subpoenas to Google and Cloudflare. The filing illustrates how the California court proceedings were used to suppress Wang's ability to develop the forensic record that could have established she did not author the Kill Baby K post.

*Document follows on subsequent pages.*

DOUGLAS RAPPAPORT (136194)
LAW OFFICES OF DOUGLAS L. RAPPAPORT
260 California Street, Suite 1002
San Francisco, CA 94111
Telephone:  (415) 989-7900
Facsimile:  (415) 989-7950
Email:        admin@sfcrimlaw.com

Attorney for Petitioner,
CHRISTOFFER THYGESEN

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**09/08/2023**
**Clerk of the Court**
BY: JOSHUA MANDAPAT
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

UNIFIED FAMILY COURT

| | |
|---|---|
| In re the Matter of: | Case No.:  FDV-19-814465 |
| CHRISTOFFER THYGESEN, | **PETITIONER'S RESPONSE TO RESPONDENT'S REQUEST TO SERVE THIRD PARTY DISCOVERY TO GOOGLE, CLOUDFLARE** |
| Petitioner, | |
| and | Date:        September 21, 2023 |
| KAILIN WANG, | Time:        9:00 a.m. |
| Respondent. | Dept.:        403 |
| | Judge:        The Hon. Russell Roeca |

## **INTRODUCTION**

On May 30, 2023, Respondent Kailin Wang ("Respondent" or "KW") filed an FL-300 RFO, seeking that the Court approve two proposed subpoenas: one to Google, and one to Cloudflare.  For the reasons discussed herein, the Court should deny the subpoena to Cloudflare, and approve a subpoena to Google, provided that the Google subpoena is: (i) jointly served by the parties, and (ii) tailored to obtain only the data sought in the FL-300: the IP address of the person who posted the comment from "Anonymous," timestamped 4/19/23 at 7:05 a.m. MDT (13:05 UTC) that says, "I can track this IP address for you and help you get [the minor child] back. Send me a DM," on the document located at https://drive.google.com/file/d/1Yr_hKSxCIYh_ReZgGE5HvOC2YRJOt3wq.

1

## LEGAL ARGUMENT

**I.     This Court's Subpoena Order Was Entered to Curb Serious and Ongoing Subpoena Abuse by Respondent**

To address Respondent's ongoing litigation misconduct, and subpoena abuse in particular, the Court (Judge Wiley) issued an order on May 12, 2021 requiring that "[p]ermission to serve a subpoena through the instant case must be requested in the form of a noticed motion to this Court."  (The "Subpoena Order" 5/12/2021 FOAH.)

There is good reason why Judge Wiley issued this Order given Respondent's long record for criminally misusing the legal system in general, and subpoenas in particular, to stalk and terrorize her victims.  Respondent has a documented 20+ year history of domestic violence, stalking, stalking with death threats, assault with a deadly weapon, impersonation, identity theft, and submitting fabricated evidence in multiple court proceedings, which in at least one instance caused one of her victims to be arrested and prosecuted for crimes he did not commit.[1]

In a related case in Utah involving (unwarranted) litigation Respondent filed against Petitioner in that state,[2] Respondent Wang sought and obtained court approval to issue several

---

[1] In October of 2013, a man named Rory Will ("Victim") got a protective order against KW.  KW violated the Victim's protective order and retaliated against Victim by obtaining a protective order against Victim.  For that violation, and other conduct, KW was prosecuted in People of the State of New York v. Kailin Wang, Case No. 20217-2013 (N.Y. County).  (Certified records from State of New York v. KW were admitted in this Court's October 2022 DVRO trial at PT 166.) KW then manufactured fake evidence against Victim, which she gave to law enforcement in a different county as "evidence" that Victim was purportedly harassing her.  This resulted in Victim being criminally prosecuted for eight months in People v. [Victim], Case No. 20014QN000495 (Queens County).  Ultimately, after eight months, Victim was vindicated and charges were dismissed once Victim's subpoena to TraceBust resulted in the production of business records that showed KW was impersonating Victim and "self-inflicting" harassment on herself to make it look like Victim was harassing her.  The April 18, 2014 TraceBust subpoena results that vindicated Victim are attached to the previously filed 9/1/2022 Declaration of Erica Johnstone.  KW then quickly accepted a plea deal in the criminal proceeding against her on May 5, 2014, which required, inter alia, completion of a six-month psychotherapeutic program for stalkers.  People of the State of New York v. Kailin Wang, Case No. 20217-2013 (N.Y. County).

[2] Ms. Wang committed perjury in the San Francisco UCCJEA hearing which resulted in an erroneous finding that Utah was the child's home state.  The San Francisco ruling was later reversed on appeal, and the California appellate court found that Ms. Wang had engaged in forum shopping.  However, in the interim, Petitioner was improperly subjected to years of Ms. Wang's extensive UCCJEA litigation against him in Utah.  Although Utah quickly ruled to dismiss her litigation, stating that it was not the Home State and that even if it were, California was the more convenient jurisdiction, Ms. Wang was able to extend her litigation in the Utah courts with her objections and appeals and (failed) attempts to get the Utah judge disqualified, before her case was ultimately dismissed.  She has also been deemed by the Utah court to be a vexatious litigant due to her conduct in her litigation against Petitioner.

*In re the Matter of Thygesen v. Wang*, Case No.:  FDV-19-814465; PET'R'S RESP. TO RESP'S REQ. TO SERVE THIRD PARTY DISC. TO GOOGLE, CLOUDFLARE

subpoenas.  Once she got her hands on subpoenas, she then forged additional subpoenas to obtain, inter alia, the child's passport from the U.S. Dept. of State and the minor child's nursery school records, including times of attendance and authorized release forms, in what law enforcement believed may be a plot to abduct the minor child. (*See* Search Warrant Affidavit of Sergeant Richard Hales attached to Petitioner's concurrently filed RJN at Exhibit A.)

For falsifying evidence against Petitioner in Utah, and felony forgery in connection with at least 12 unauthorized subpoenas wherein she forged court signatures and seals, Respondent is now being prosecuted for felony perjury and 12 counts of felony forgery related to the subpoenas unlawfully seeking information about Petitioner, the minor child, and various others.  (*See State of Utah vs. Kailin Wang*, Case No. 211100167 (Utah County, UT) attached to Petitioner's concurrently filed RJN at Exhibit B.)

Respondent also served forged subpoenas targeting a Utah law enforcement official who was tasked with personally serving Respondent with this Court's Temporary Restraining Order, for which she was evading service.  Respondent served a forged subpoena on Facebook to obtain user data about the law enforcement officer, and then served a subpoena on Google to obtain every IP address the law enforcement officer had used in connection with the Google account associated with the law enforcement officer's Facebook account.  Ultimately, the subpoena was quashed by the Court. (*See* June 1, 2021 Order of the Court signed by The Hon. Thomas Low, the presiding judge in the Utah Case No. 194400718, attached to Petitioner's concurrently filed RJN at Exhibit C [quashing the subpoenas that Ms. Wang was serving to personally target the accounts of law enforcement that "were never issued or authorized by the Court," are "highly improper," and "it is not appreciated that she has taken the court's signatures and reused the signatures for other purposes."])

///

///

///

///

///

3

*In re the Matter of Thygesen v. Wang*, Case No.:  FDV-19-814465; PET'R'S RESP. TO RESP'S REQ. TO SERVE THIRD PARTY DISC. TO GOOGLE, CLOUDFLARE

## II.   Respondent's Proposed Subpoenas to Google and Cloudflare

### A.  Respondent's Proposed Subpoena to Google (FL-300, Exhibit A)

In the wee hours of 4/18/23, at 12:18 A.M. and 12:23 A.M. Utah time, Respondent made two separate tweets to her legion of Twitter followers,[3] each containing allegations against Petitioner and linking to a PDF document that she had loaded to her Google account. Respondent had set her Google account permissions to make the PDF document available to anyone with the link.  The next day, on 4/19/2023, Petitioner was notified by the security firm protecting his family from Respondent that an anonymous poster had commented through Google on Respondent's PDF document timestamped at 7:05 A.M.  (Utah time) of 4/19/23, offering to "help [Respondent] get [the minor child] back."  On 5/15/23, Petitioner filed a declaration that included multiple examples of Respondent's reckless, hateful online conduct; examples of how her conduct had already resulted in threatening, unconsented third-party contacts to his family and his counsel; and he further included a screenshot of the PDF document Respondent had tweeted out and the anonymous comment on it as another example of the danger Respondent's online conduct poses to the minor child, himself, and others.  At the 5/25/23 hearing, the Court stated that it was very concerned about Respondent's conduct described in Petitioner's 5/15/23 Declaration, and it *sua sponte* set an evidentiary hearing to give Respondent notice and an opportunity to defend herself given that the gravity of her alleged conduct had put termination of visitation at issue.

---

[3] Respondent created her Twitter account in February of 2018 — not coincidentally, this is the same month that she selected Petitioner to target for conception of a child by deceit. She "confided" in Petitioner on their Feb 28, 2018 date that she'd been diagnosed with infertility and could not have children, but that she was on birth control anyway just to "regulate her periods."  This was false.  She told Petitioner her tale in order to lay the groundwork for her plan so that Petitioner could be more easily seduced into sex without a condom later that evening because he believed her story and did not suspect that she had actually timed their encounter to coincide with peak fertility during her regular menstrual cycle and that she was not on birth control as she had claimed (see October 20, 2022 Court's Rulings and Orders related to DVRO trial, RT at 5-6).  What followed was a campaign of abuse that the Court found at the October 2022 DVRO trial to be "almost unprecedented." (RT at 6.)  From the creation of her Twitter account in February of 2018 through the 4/18/23 date of her Tweets involved here, she methodically grew her Twitter following to 615 followers.  Since then, through her increasingly aggressive attacks on Petitioner and his family, his counsel, and the judges and law enforcement professionals tasked with holding her accountable, Respondent has dramatically accelerated the growth of her Twitter following to over 1,200.

4

*In re the Matter of Thygesen v. Wang*, Case No.:  FDV-19-814465; PET'R'S RESP. TO RESP'S REQ. TO SERVE THIRD PARTY DISC. TO GOOGLE, CLOUDFLARE

Respondent's stated reason for subpoenaing Google is that her subpoena is "necessary to identify the anonymous poster, who posted the attached." (FL-300 at Item 8.). While Respondent provides no explanation in her RFO for why the identity of the commenter is relevant to the upcoming evidentiary hearing, in Respondent's online postings to her followers, she has (baselessly and falsely) alleged that Petitioner is actually the "Anonymous" poster. See, e.g., May 17, 2023 tweet from Respondent's Twitter account (see screenshot below and the full PageVault capture is attached as Exhibit A to the concurrently filed Declaration of Counsel):

Respondent's allegation to her legion of Twitter followers that Petitioner is manufacturing evidence against her would appear to be her rationale for why the identity of the commenter is relevant to the upcoming evidentiary hearing. Although it is Respondent's conduct that is at issue at the upcoming evidentiary hearing, for security reasons Petitioner would also

5

like to know the identity of the anonymous poster, and he would therefore support the parties jointly serving a subpoena that is appropriately targeted to unmask the anonymous poster who posted the 4/19/23 comment on Respondent's PDF document in her Google account.  However, her subpoena as drafted is fatally ambiguous, overbroad, and not calculated to reveal any admissible evidence.

Respondent's subpoena is ambiguous, in that it requests that Google identify the anonymous poster who posted "the attached," but does not identify what "the attached" is.  There are two documents attached to Respondent's proposed Google subpoena: (i) Respondent includes her own screenshot from her Google account of a portion of the 28-page PDF document she publicly tweeted to her Twitter followers, which she had made accessible to any member of the general public to view and comment on (FL-300 RFO page 11); and (ii) Respondent includes an excerpt of a declaration filed by Petitioner on May 15, 2023, in which Petitioner had included a screenshot of the same 28-page PDF Respondent tweeted on April 18, 2023, that the security firm protecting his family from Respondent had taken after the anonymous commenter had posted on it (FL-300 RFO page 12).

Because the "poster" of  28-page PDF document that Respondent tweeted out was the Respondent, and the person who filed the declaration was Petitioner, "the attached" must necessarily be limited solely to the comment purportedly posted to the Google document on April 19, 2023, by "Anonymous," stating that "I can track this IP address for you and help you get [the minor child] back."

However, Respondent's subpoena does not appear calculated to lead to the identity of the anonymous commenter, as Respondent's proposed subpoena does not include the information that Google would need to identify the document Respondent tweeted out to her followers, nor does it provide the information that Google would need to identify the anonymous comment. Respondent's proposed subpoena only requests information that "include[s] the following account: Anonymous 7:05 AM Apr 19."  "Anonymous" is not a valid Google account; no time zone is provided; the Google document is not identified in any way; and no other information is provided that would allow Google to identify the document or the anonymous post in question.

6

Instead, Respondent's document requests seek information about the "following email addresses," along with a host of information that would be irrelevant to determining the identity of the person who posted the anonymous comment. Because the comment was anonymous, Google will have only an IP address belonging to the commenter, not any of the other information requested in Respondent's proposed subpoena (such as username, phone number, user profile details, etc). The vague and ambiguous wording of the subpoena seems calculated to cause Google to assume that the subpoena is directed not to the anonymous comment, but rather to the list of email addresses in the Google document that the comment was left in, but which are irrelevant to obtaining the IP address of the commenter.

The email addresses on the portion of Respondent's 28-page PDF document attached to her proposed subpoena are related to threatening and abusive posts that were submitted to the website HolySmoke.org in February, 2019, and the parties have known about these email addresses since 2019. The parties already conducted significant discovery concerning the HolySmoke posts years ago, and the parties already litigated subpoena matters related to those posts. At the time, Respondent had counsel assisting her with third party discovery: in addition to her parents subpoenaing HolySmoke through their counsel, Respondent served two subpoenas on Cloudflare through her own counsel, and had ample opportunity to subpoena Google if she wanted to. Because further discovery related to those email addresses would be irrelevant to the identity of the 4/19/23 anonymous commenter, and because Petitioner only requested in her FL-300 that this subpoena be directed to the anonymous poster who posted the comment "I can track this IP address for you and help you get [the minor child] back," any subpoena to Google should be clearly limited to identifying that commenter.

Respondent's proposed subpoena to Google is intentionally vague and ambiguous, and in its present form seeks information that is irrelevant, is not calculated to obtain the evidence it was purportedly issued to uncover, and would be unduly burdensome and harassing to Google. Respondent has previously served four forged subpoenas on Google related to matters at issue in this proceeding, two of which are the subject of her Utah criminal prosecution: (i) a Google subpoena E-Filed on 11/25/2020; (ii) a Google subpoena "E-Filed" on 2/16/2021 (Felony

7

Forgery Count 3 of the Utah criminal prosecution); (iii) a 3/23/2021 subpoena to Google (Felony Forgery Count 4 of the Utah criminal prosecution); and (iv) a Google subpoena "E-Filed" on 4/13/2021, all seeking "to obtain personal and sensitive personal identifying information for which she was not authorized." (RJN Exh. B.)

Because of Respondent's past subpoena abuse, including of this specific third party, and because Petitioner also has an interest (i.e. the safety and security of his child and his family) in unmasking the anonymous commenter, Petitioner believes that a joint subpoena with Respondent would be appropriate in this case.

Accordingly, Petitioner proposes to issue a joint subpoena to Google that is appropriately, and effectively, targeted to identify the anonymous poster in question. In particular, the subpoena should identify the Google document in question by its URL; it should contain an accurate timestamp; and the information requested should be strictly limited to the IP address of the person who posted the comment. Petitioner is providing herewith a Proposed Order that includes proposed language for the parties' joint subpoena. Because the Google document in question resides in Respondent's Google account, Google may seek confirmation that Respondent has expressly consented to disclosure of the requested information, and the Proposed Order addresses that, as well.

## B. Respondent's Proposed Subpoenas to Cloudflare (FL-300, Exhibit B)

Respondent's Exhibit B is addressed to Google, but from its context Petitioner construes it as a proposed subpoena to Cloudflare. Respondent's stated reason for subpoenaing Cloudflare is that the subpoena "is needed for the Kill Baby K post also posted by an IP address for Cloudflare." (FL-300 at Item 8.) The "Kill Baby K" post is Respondent's shorthand for a 3/6/19 online post on the website HolySmoke.org authored by "**Kailin Wang**" which stated, "**I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this !!!!**" The post was discovered by the security firm protecting Petitioner and his family on the afternoon after Judge Darwin issued his 3/6/19 custody/visitation and amended DVTRO orders (the

8

original TRO was issued 2/15/19, and at the 3/6/19 hearing the Court amended the TRO and also made custody orders).[4]

Petitioner and Respondent's parents, each through their respective counsels at the time, served subpoenas on Holysmoke, and either served subpoenas (Respondent) or engaged in conversations with Cloudflare (Petitioner), and learned that HolySmoke had configured its servers to only log the IP address of whichever server Cloudflare, its content delivery network (a service used to speed up web traffic), had used to transmit the post to HolySmoke.  In other words, HolySmoke had not logged the actual IP address of the posting party — thus, the IP addresses that HolySmoke logged are not the IP addresses of the poster who made the "Kill Baby K" and all the other abusive and threatening posts on HolySmoke, and the IP addresses that were logged can only identify the specific Cloudflare server that carried each post to HolySmoke. Cloudflare generally routes posts through the Cloudflare server located closest to the poster's location; however, for load balancing, sometimes Cloudflare might route a post through a different Cloudflare server than the one closest to the poster's location.  Cloudflare informed both parties that MaxMind provides the most accurate geolocation for each IP address of the Cloudflare server that HolySmoke logged for a particular post, such as the "Kill Baby K" post. In the case of the "Kill Baby K" post, the IP address geolocates to a Cloudflare server in the New York/New Jersey area.  Respondent has already admitted she was in New York on 3/6/19, whereas Petitioner was in the Bay Area, attending the hearing in San Francisco Superior Court before Judge Darwin on the morning of 3/6/19.  Petitioner is confident that he can meet the applicable standard of proof, when necessary, to demonstrate that Respondent was responsible

---

[4] Respondent has repeatedly, falsely stated that due to the "Kill Baby K" post, Judge Darwin ordered the minor child, who was a three-month-old infant at the time, removed from her custody.  Respondent continues to promulgate that falsehood, despite the fact that she is well aware that neither Judge Darwin nor Petitioner was aware of that post during the 3/6/19 hearing where Judge Darwin ordered the infant removed from her custody.  None of the documentation — not the pleadings, not the full transcript, and not the 3/6/19 Order — make any mention of any "Kill Baby K" post, since that post wasn't discovered until after the hearing was over, Judge Darwin had already made his Orders, and Petitioner had already left the courthouse.  (2019-06-04 Supplemental Declaration of Erica T. Johnstone To Identify And Correct False Statement By Ms. Wang's Counsel Re: Basis Of the March 6, 2019 Amended DVTRO, Custody Order, & Effecting Language.)Yet, since May of 2019, Respondent has repeatedly, knowingly falsely claimed, both in court filings and in myriad of her online postings to her followers, that the Court took away her custody of the Minor Child at the 3/6/19 hearing due to that post.

*In re the Matter of Thygesen v. Wang*, Case No.:  FDV-19-814465; PET'R'S RESP. TO RESP'S REQ. TO SERVE THIRD PARTY DISC. TO GOOGLE, CLOUDFLARE

for posting the "Kill Baby K" post, but issuing yet another subpoena to Cloudflare will not provide either party with additional useful information on who made the post.

Respondent already served <u>two</u> subpoenas on Cloudflare, through her then-counsel Karl Kronenberger, in 2019, after all of the Holysmoke posts at issue had been made.  (See concurrently filed Declaration of Counsel at <u>Exhibit B</u> and <u>Exhibit C</u>.)  According to Respondent's own exhibit to her FL-300 filing, Cloudflare was very clear with Respondent's counsel back in May, 2019 that "We can't produce any data based on an IP address."  (See concurrently filed Declaration of Counsel at <u>Exhibit D</u>).  Cloudflare didn't have the data then, and it will not have the data now.  Respondent was represented by counsel and could have continued to push Cloudflare or move to compel, but she elected not to.  The parties had an opportunity to conduct discovery concerning Holysmoke and Cloudflare in 2019, and Respondent already served two subpoenas on Cloudflare in 2019. Respondent has articulated no reason why she should be able to serve yet more subpoenas on this party.

## CONCLUSION

For the foregoing reasons, Respondent's proposed subpoena to Cloudflare should be denied, and the subpoena to Google should be in the form proposed by Petitioner.

DATED:  September 8, 2023                    LAW OFFICES OF DOUGLAS RAPPAPORT


                                              *Douglas L. Rappaport*
                                              DOUGLAS L. RAPPAPORT

                                              Attorney for Petitioner,
                                              Christoffer Thygesen

10

*In re the Matter of Thygesen v. Wang*, Case No.:  FDV-19-814465; PET'R'S RESP. TO RESP'S REQ. TO SERVE THIRD PARTY DISC. TO GOOGLE, CLOUDFLARE

DOUGLAS RAPPAPORT (136194)
LAW OFFICES OF DOUGLAS L. RAPPAPORT
260 California Street, Suite 1002
San Francisco, CA 94111
Telephone:   (415) 989-7900
Facsimile:   (415) 989-7950
Email:       admin@sfcrimlaw.com

Attorney for Petitioner,
CHRISTOFFER THYGESEN

ELECTRONICALLY
**F I L E D**
*Superior Court of California,
County of San Francisco*

**09/08/2023**
**Clerk of the Court**
BY: JOSHUA MANDAPAT
**Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

|  |  |
|---|---|
| In re the Matter of:<br><br>CHRISTOFFER THYGESEN<br><br>   Petitioner,<br><br>  and<br><br>KAILIN WANG,<br><br>   Respondent. | Case No.: FDV-19-814465<br><br>**PETITIONER'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF HIS RESPONSE TO RESPONDENT'S REQUEST TO SERVE THIRD PARTY DISCOVERY TO GOOGLE, CLOUDFLARE** |
|  | Date:   September 21, 2023<br>Time:   9:00 a.m.<br>Dept.:   403<br>Judge:  The Hon. Russell Roeca |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Petitioner hereby requests that the Court take Judicial Notice of the following pleadings and court records and the existence of the statements made therein pursuant to Section 452 of the Evidence Code as either "Records of (1) any court of this state or (2) any record of the United States or of any state in the United States" (Evid. Code Section 452(d)(1), (2) or "Facts or Propositions that are not reasonably subject to dispute and are

1

*In re the Matter of Thygesen v. Wang*, Case No.: FDV-19-814465; PET'R'S REQ. FOR JUDICIAL NOTICE IN SUPP. OF HIS RESP. TO RESP'T'S REQ. TO SERVE THIRD PARTY DISC. TO GOOGLE, CLOUDFLARE

capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code Section 452(h).)

<u>Exhibit A</u>: Search Warrant Affidavit of Sergeant Richard Hales.

<u>Exhibit B</u>: First Amended Information, *State of Utah v. Kailin Wang*, Case No. 211100167.

<u>Exhibit C</u>: June 1, 2021 Order of the Court signed by The Hon. Thomas Low, the presiding judge in the Utah Case No. 194400718.

DATED:  September 8, 2023

LAW OFFICES OF DOUGLAS RAPPAPORT

*Douglas L. Rappaport*
DOUGLAS L. RAPPAPORT

Attorney for Petitioner,
Christoffer Thygesen

2

*In re the Matter of Thygesen v. Wang*, Case No.:  FDV-19-814465; PET'R'S REQ. FOR JUDICIAL NOTICE IN SUPP. OF HIS RESP. TO RESP'T'S REQ. TO SERVE THIRD PARTY DISC. TO GOOGLE, CLOUDFLARE

| Exhibit U | Declaration of Erica Johnstone in Support of CT's (V1's) Opposition to Wang to conduct further discovery on the March 6, 2019 "Kill baby K" Post — September 8, 2023 |
|---|---|

| Case | In re Thygesen v. Wang, Case No. FDV-19-814465, SF Superior Court, Dept. 403 |
|---|---|

| Date Filed | September 8, 2023 (electronically filed; Deputy Clerk Joshua Mandapat) |
|---|---|

| Declarant | Erica T. Johnstone (242067), Ridder, Costa & Johnstone LLP, 440 N Barranca Ave #7550, Covina, CA 91723. Designated as "Internet Counsel for Protected Parties." Licensed since 2006; firm focuses on intellectual property, internet, and privacy law. |
|---|---|

| Decl. ¶ 2 | Johnstone states her firm was hired in 2019 to investigate harassment "by an anonymous individual who was seeking to evade detection through many accounts, multiple aliases, and identity and location-concealing technologies" and to "forensically tie Respondent to the conduct" through civil subpoenas. |
|---|---|

| Decl. ¶ 3 | Johnstone states Wang "fought strenuously to prevent Petitioner from gathering this data," retained Karl Kronenberger for $30,000 to quash subpoenas to Google, Comcast, and Charter, and that Judge Darwin denied Wang's motion to quash, finding C.T. had made a prima facie showing of actionable communications constituting domestic abuse under the DVPA. |
|---|---|

| Decl. ¶¶ 5–6 | Johnstone attaches as Exhibits B and C Wang's two Cloudflare subpoenas served through Kronenberger — both issued after all Holysmoke posts were made, confirming Wang was attempting to investigate the posts, not conceal them. |
|---|---|

| CRITICAL — Decl. ¶ 7 | Johnstone attaches as Exhibit D an email from Cloudflare to Wang's counsel stating that Cloudflare "can't produce any data based on an IP address." This is C.T.'s own attorney submitting, in C.T.'s own filing, the single most direct forensic concession in the record: Cloudflare itself told Wang's counsel it cannot produce data from the IP. |
|---|---|

| Decl. ¶ 4 | Attaches Wang's May 17, 2023 tweet as Exhibit A (PageVault capture obtained by Petitioner's technical consultant), cited in the context of the pending evidentiary hearing set for February–March 2024. |
|---|---|

> **SIGNIFICANCE TO PSR OBJECTION**
>
> Paragraph 7 of the Johnstone Declaration is the most significant item in this tab. C.T.'s own internet law counsel — hired specifically to forensically tie Wang to the Holysmoke posts — filed with the San Francisco Superior Court an email from Cloudflare stating they "can't produce any data based on an IP address." This is not Wang's evidence: it is Petitioner's own filing, by Petitioner's own counsel, in Petitioner's own opposition to Wang's discovery. It is the definitive third-party confirmation that the Cloudflare IP cannot be used to identify any individual — submitted by the party who had every incentive to argue the opposite.

ERICA T. JOHNSTONE (242067)
RIDDER, COSTA & JOHNSTONE LLP
440 N Barranca Ave #7550
Covina, CA 91723
Telephone: (650) 466-0336

Internet Counsel for Protected Parties

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**09/08/2023**
**Clerk of the Court**
BY: JOSHUA MANDAPAT
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| In re the Matter of:<br><br>CHRISTOFFER THYGESEN<br><br>Petitioner,<br><br>and<br><br>KAILIN WANG,<br><br>Respondent. | Case No.:  FDV-19-814465<br><br>**DECLARATION OF COUNSEL IN SUPPORT OF PETITIONER'S RESPONSE TO RESPONDENT'S REQUEST TO SERVE THIRD PARTY DISCOVERY TO GOOGLE, CLOUDFLARE**<br><br>Date:       September 21, 2023<br>Time:       9:00 a.m.<br>Dept.:       403<br>Judge:      The Hon. Russell Roeca |

I, Erica Johnstone, declare as follows:

1.  I am an attorney admitted to practice law in the State of California and before this Court. I have been continuously licensed since 2006. I am a partner at Ridder, Costa & Johnstone LLP, a law firm focusing on intellectual property, internet, and privacy law.  Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration.

2.  In 2019, my firm was hired to investigate the harassment, stalking, and abuse of

1

*In re the Matter of Thygesen v. Wang*, Case No.:  FDV-19-814465; DECL. OF COUNSEL IN SUPP. OF PET'R'S RESP. TO RESP'T'S REQ. TO SERVE THIRD PARTY DISC. TO GOOGLE, CLOUDFLARE

Petitioner and his entire family by an anonymous individual who was seeking to evade detection through many accounts, multiple aliases, and identity and location-concealing technologies.  In the course of my work, my law firm issued civil subpoenas that would unmask through business records the identity of the perpetrator and forensically tie Respondent to the conduct.

3.    Respondent fought strenuously to prevent Petitioner from gathering this data.  According to Respondent's declarations and I&E filed with this court, Respondent paid $30,000 to Karl Kronenberger, a prominent Bay Area attorney who specializes in internet law, to (unsuccessfully) attempt to quash Petitioner's subpoenas to Google, Comcast, and Charter to prevent the unmasking of the person who was terrorizing Petitioner and his family. The Court (Judge Darwin) denied Respondent's Motion To Quash, finding that the relevant standards had been satisfied for each of the subpoenas, and that Petitioner had "made a prima facie showing that the communications at issue are actionable, that they constitute domestic abuse under the Domestic Violence Prevention Act, and are not protected by the First Amendment."

4.    Attached hereto as Exhibit A is a fair and accurate representation of Respondent's May 17, 2023 tweet from Respondent's Twitter account. This exhibit is a PageVault capture that was obtained by a technical consultant for Petitioner's legal team, at the date and time reflected in the footer at the bottom of each page in the exhibit. PageVault is a service for legal professionals that preserves and accurately portrays web-based content, along with a timestamp, URL, and other metadata that documents the authenticity of each capture. PageVault copies the web-based content from its own servers, so a PageVault user has no opportunity to alter the captured content.

5.    Attached hereto as Exhibit B is a true and correct copy of Respondent's first subpoena served on Cloudflare, through her counsel Karl Kronenberger, after all of the Holysmoke posts at issue had been made.

6.    Attached hereto as Exhibit C is a true and correct copy of Respondent's second subpoena served on Cloudflare, through her counsel Karl Kronenberger, after all of the Holysmoke posts at issue had been made.

<div align="center">2</div>

---

*In re the Matter of Thygesen v. Wang*, Case No.:  FDV-19-814465; DECL. OF COUNSEL IN SUPP. OF PET'R'S RESP. TO RESP'T'S REQ. TO SERVE THIRD PARTY DISC. TO GOOGLE, CLOUDFLARE

7.   Attached hereto as Exhibit D is a true and correct copy of an email from Cloudflare to Respondent's counsel, explaining that Cloudflare "can't produce any data based on an IP address."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  September 8, 2023                    RIDDER, COSTA & JOHNSTONE LLP


                                             *Erica T. Johnstone*
                                             ERICA T. JOHNSTONE

3

*In re the Matter of Thygesen v. Wang*, Case No.:  FDV-19-814465; DECL. OF COUNSEL IN SUPP. OF PET'R'S RESP. TO RESP'T'S REQ. TO SERVE THIRD PARTY DISC. TO GOOGLE, CLOUDFLARE

| Exhibit V | Reporter's Transcript — September 21, 2023 (Judge Roeca, Dept. 403) |
|---|---|

| Case | Christopher Stanford Thygesen v. Kailin Wang, Case No. FDV-19-814465, SF Superior Court, Dept. 403 |
|---|---|

| Date & Time | Thursday, September 21, 2023, 9:00 a.m. Morning Session |
|---|---|

| Judicial Officer | Hon. Russell S. Roeca, Judge Presiding |
|---|---|

| Court Reporter | Rocio M. Lopez, CSR #11194, Official Reporter. Transcript certified October 5, 2023. Designated NOT FOR REPRODUCTION per Gov. Code § 69954(d). |
|---|---|

| Appearances | For Petitioner: Douglas L. Rappaport (Law Offices of Douglas L. Rappaport). Respondent: Kailin Wang, in propria persona, appearing via BlueJeans. |
|---|---|

| Issue Before Court | Wang's objection to the Court's prior order denying her requests to serve third-party discovery subpoenas to Google and Cloudflare. Relevant to evidentiary hearing set for February–March 2024 (3 days) on whether all visitation, including supervised, should be terminated. |
|---|---|

| Court's Ruling (RT 3:1-4) | Judge Roeca denied Wang's subpoenas as "too broad and not relevant" — "basically for those reasons." |
|---|---|

| Wang's Cloudflare Argument (RT 5:1-11) | Wang argues the Cloudflare subpoena is independently necessary under Cal. Evid. Code § 1561: even if Cloudflare cannot identify the IP, an Evidence Code § 1561 custodian declaration to that effect is required for the Kronenberger/Cloudflare email to be admissible. Without a court-ordered subpoena, she cannot obtain the declaration; without the declaration, the email is inadmissible hearsay. The Court declined to engage on this point. |
|---|---|

| Wang's Alternative (RT 5:8-11) | Wang asks: "is opposing counsel willing to stipulate that the IP address cannot be identified for the Cloudflare subpoena?" Rappaport does not respond to this offer. The court moves on. |
|---|---|

| Procedural Posture | Wang notes she has been permitted zero subpoenas while C.T. has issued over 20 out of this case. The Court declines to address disparity. Continued readiness conference to October 2, 2023. Evidentiary hearing set for February 27, March 1 (29 was listed in error), March 12 at 1:45 p.m. |
|---|---|

**SIGNIFICANCE TO PSR OBJECTION**
This transcript is the documentary record of the procedural catch-22 described in PSR Objection Section Fourth. Wang explains precisely why the Cloudflare subpoena is necessary: without it, the Cloudflare email produced to

posters — the request was denied. Her ¶ 4 questions ("Was it a Post Wang made?" / "Was the post made in Response to Someone else's Post?") are not rhetorical: they are the questions no court has ever answered on the merits. C.T.'s simultaneous conduct — invoking the post to seek termination of all visitation while also opposing discovery into the post's authorship and calling it irrelevant when discovery was sought — is the clearest statement of the double-bind in the record.

*Document follows on subsequent pages.*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE RUSSELL S. ROECA, JUDGE PRESIDING

DEPARTMENT 403

---oOo---

CHRISTOPHER STANFORD THYGESEN,      )
                                    )
              PETITIONER,           )
                                    )
         vs.                        ) No. FDV-19-814465
                                    )
KAILIN WANG,                        )
                                    )
              RESPONDENT.           )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

THURSDAY, SEPTEMBER 21, 2023

A P P E A R A N C E S:

FOR PETITIONER:

        LAW OFFICES OF DOUGLAS L. RAPPAPORT
        BY:  DOUGLAS L. RAPPAPORT, Attorney at Law
        260 California Street, Suite 1002
        San Francisco, California  94111


FOR RESPONDENT:

        KAILIN WANG
        IN PROPIA PERSONA

REPORTED BY:  ROCIO M. LOPEZ, CSR #11194
              OFFICIAL REPORTER

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

2

SAN FRANCISCO, CALIFORNIA                    MORNING SESSION

--OoO--

THE COURT:  Let's call Line 6 on the second 9:00 a.m. calendar, the matter of Christopher Stanford Thygesen versus Kailin Wang.

MR. RAPPAPORT:  Good morning.  Doug Rappaport on behalf of Mr. Thygesen who is present.

THE COURT:  Good morning both of you.

MR. THYGESEN:  Good morning.

MS. WANG:  Hi.  Kailin Wang, Respondent and pro se via BlueJeans.

THE COURT:  Good morning, Ms. Wang.

MS. WANG:  Good morning.

THE COURT:  All right.

All right.  The Court issued its order denying the requests, and Ms. Wang, you objected?

MS. WANG:  Yes, I did.

THE COURT:  All right.

MS. WANG:  And well, the Court provided no reason about issuing subpoenas.  I mean, this is for Thygesen's Evidentiary Hearing set for three days in February, March of next year to terminate all visitation even supervised.  These subpoenas are relevant.  There was no reason provided.  So let's just hear you out first before I move forward with other questions.

THE COURT:  I'm not here to answer questions.  I'm here to listen to the reasons for the objection.  I

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

think the requests are too broad and not relevant to the case; and so, it's basically for those reasons the Court denied the first request. The second request, frankly, I'm not going to order Mr. Thygesen to do things; he and his attorney can determine their own legal strategy.

MS. WANG: Well, which is -- well, that's the thing, if there's no OSC, the Court can't appointment me counsel. And since I'm not allowed to do discovery either, and there's been no attorney's fees granted, well, not for this Evidentiary Hearing.

I mean, how do you expect me to proceed and litigate my case and properly defend myself if I'm not allowed any of those things?

THE COURT: Mr. Rappaport, do you have anything to say?

MR. RAPPAPORT: I don't believe it's the Court's position to provide legal advice to any party.

MS. WANG: It's not legal advice.

MR. RAPPAPORT: The matter is submitted on our behalf.

THE COURT: All right. Anything further, Ms. Wang?

MS. WANG: I -- well, that's the thing. These subpoenas are relevant. So let's talk about -- well, one of them was an agreement, it was relevant. Mr. Thygesen -- they wrote up a proposed order as well, I did not agree to those, the opposing party doing discovery on that Google matter.

I mean, I'm not sure why you think it's not

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

relevant because it is opposed that they are accusing of these people for going to potentially kidnap the child; you would think it's relevant.  It's in exhibit they included.

THE COURT:  Go ahead.

MS. WANG:  And Your Honor, sorry.  You did see how many subpoenas they issued out of this case, right.  They issued over 20, and I've been able to issue none.  It's just not fair.

MR. RAPPAPORT:  My response is this, is that it's not in a number of subpoenas.  It's in the relevance of the subpoenas.  We agree with the Court on its ruling.

MS. WANG:  Well, that's the thing, even if you agree with the Court, they did say one of those subpoenas I requested was relevant.  It was just that disputed, as far as methods of who was going to issue it.  That's the Google one.  I mean, would you like me to repeat what the post said?

THE COURT:  I've read the post.

MS. WANG:  It's okay.  It is -- it is their allegations.  So they are accusing me of insighting people to kidnap the child.  It's a very serious allegation, so it's relevant that we find out who this anonymous person is.

Oh, another thing I'd like to add.  I mean, never mind.  Oh, another thing about the --

THE COURT:  Go ahead, Ms. Wang.

MS. WANG:  In addition to that, was the Google one

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

the Cloudflare one is still relevant.  It is relevant because under Evidence Code 1561, for it to be admissible in court because, you know, the Cloudflare could not identify the IP address, but you would need an Evidence Code 1561 declaration from, let's say Cloudflare declaring that they can actually not identify that IP address where it's not admissible, and the record has to be preserved as far as admissibility, or is opposing counsel willing to stipulate that the IP address cannot be identified for the Cloudflare's subpoena.  So there's a Google one and a Cloudflare.

THE COURT:  And they both were also very much overbroad.  But that all being said, anything else, Ms. Wang?

MS. WANG:  Well, why do you think it's overbroad? It specifies the IP address in the post.

THE COURT:  Anything else?

MS. WANG:  Well, we have quite a few hearings coming up with you, so I guess, and --

THE COURT:  I'm sorry.  Go ahead.

MS. WANG:  Oh, yes.  We have quite a few hearings going on with you.  We have one on 9/25, a readiness calendar, then one 9/28 for a fees.

THE COURT:  Yes, I show --

MS. WANG:  And also there's -- yeah.

THE COURT:  I show that we have two matters on for readiness on September 25, at 9:00 a.m.  We have a law and motion hearing on September 28th at 9:00 a.m.  We

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

have a readiness calendar hearing for October 2 at 9:00 a.m.  We have a readiness calendar hearing on October 9 at 9:00 a.m.  We have a law and motion hearing set for October 17th at 9:00 a.m.  We have a special trial setting for February 27, 29, and March 12th, those are long cause hearings in the afternoon at 1:45 p.m. That's what I'm showing we have on calendar currently.

MS. WANG:  Yes, that is what I'm hearing.  But yeah.  So, yeah, that's -- that's the thing about overbroad.  I'm not sure.  I don't understand why you believe it's overbroad because it does tailor and is specific.  We can always narrow it, if that's what Your Honor is suggesting.

Also, there's a number of subpoenas I do also need to issue because depositions need to be taken of these people who are posting things because -- let's see.

Mr. Thygesen's May 15th, 2023 declaration, it accuses people wishing us death wishes who are putting my family and I in danger and the child.  So these people are identified.  We do want to know what their intentions are.

I mean, some of these people live in Massachusetts. Some of these people live in -- on the East Coast and Brooklyn.  Those people do need to be deposed as far as if they're going to kidnap the child if they were insighted by something I posted.

I mean, these do need to be -- that is a motion I just filed.  So I'm waiting for that Vexatious Litigant

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

calendar are these, is Ms. Wang requesting additional time with the child for holiday visits.  There's no changed circumstances other than the Court has changed through Judge Flores to yourself; but nevertheless, I'm not addressing the factual issues.

She's also asking for appointment of custody evaluator.  I'm going to ask for two reasons that that hearing be continued, the readiness hearing and for this reason.

One, is that until we determine whether this child is safe, and that's what Judge Flores said, we need to have an Evidentiary Hearing to determine if the child is safe.  There should be no additional time, nor should there be an appointment of a custody evaluator.

Excuse me, excuse me, excuse me, Ms. Wang.

MS. WANG:  He's never ruled.

THE COURT:  Don't interrupt, and then I'll let you respond.

MR. RAPPAPORT:  So, consequently, those two issues should come after a determination whether she is jeopardizing the safety of the child and in violation of court orders.  Also, I inadvertently set it on a holiday, and I am going to be elsewhere as of 10:00 in the morning.  I will be fasting, and so, consequently, I don't know how I did that, but --

THE COURT:  Just one moment.  Mr. Gutierrez, do we have a status conference set on 10:00 a.m. on the 25th? I know that we have -- my calendar reflects a readiness

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

reason.

THE COURT:  All right.  All right.  I'm going to -- All right.  I'm going to terminate because we're off the rails in terms of why we're here this morning.

MR. RAPPAPORT:  Yes.

THE COURT:  There has -- any communication that came to me, and it was just that one, I instructed to have it sent to counsel both sides, period.  That's my knowledge of what's going on.

MR. RAPPAPORT:  What this Court is saying is, it hasn't seen this most recent e-mail?

THE COURT:  No, I have not seen it.

MR. RAPPAPORT:  Fine.  Very good.  Thank you for establishing the record.

THE COURT:  All right.

MS. WANG:  It's been filed, sir.  It's been filed in the pleading that's pending, so you will see that soon, Your Honor.

THE COURT:  All right.

MS. WANG:  And we'll deal with it another time.

THE COURT:  We --

MS. WANG:  Scheduling though.

THE COURT:  We certainly will.  So there's nothing further to schedule.  We've continued the readiness conference that was set for the 25th to October 2, and that's one week.

MS. WANG:  Your Honor, well, he's trying to postpone because if holidays have always been compelled

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

like I said, but I do need a month ahead of time to schedule those with supervised visitation facilities. At this rate, it's going to go past the holidays and his birthday, and that's just inappropriate, and that's exactly what he's trying to do.

THE COURT:  All right.

MS. WANG:  On 10/2, I did -- I tend to -- I can't, also is because I'm going to go on the road driving from Utah to California for Rally two hours supervised visitation which Mr. Thygesen is attempting to terminate.

THE COURT:  Well, this matter is set on the 2nd already.  So we've had this calendered already, so that's where everything will go on October 2.

MR. RAPPAPORT:  Thank you very much.

THE COURT:  Thank you all.

MS. WANG:  Okay.  Okay.  Then we're done.

THE COURT:  Thank you.

(Whereupon proceedings conclude.)

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

State of California            )
                               )
County of San Francisco        )


I, Rocio M. Lopez, Official Reporter for the Superior Court of California, County of San Francisco, do hereby certify:

That I was present at the time of the above proceedings;

That I took down in machine shorthand notes all proceedings had and testimony given and also the via tele/video conferencing to the best of my ability;

That I thereafter transcribed said shorthand notes with the aid of a computer;

That the above and foregoing pages 1 through 18, inclusive, is a full, true and correct transcription of said shorthand notes, and a full, true and correct transcript of all proceedings had and testimony taken on September 21, 2023;

That I am not a party to the action or related to a party or counsel;

That I have no financial or other interest in the outcome of the action.


Dated:   October 5, 2023

_____
        Rocio M. Lopez, CSR No. 11194


NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

| Exhibit W | CT's (V1's) January 13, 2025 Filings — Declaration in Advance of 1/23/25 & FC § 217 Evidentiary Hearing Request |
|---|---|

| | |
|---|---|
| **Cases** | In re Thygesen v. Wang, Case No. FDV-19-814465, SF Superior Court, Dept. 403, before Hon. Russell S. Roeca |
| **Date Filed** | January 13, 2025 (electronically filed; Deputy Clerk Aurelie Sciaroni) |
| **Hearing Date** | January 23, 2025, 9:00 a.m., Dept. 403 |
| **Documents** | (1) Petitioner's Declaration in Advance of 1/23/25; Req. for Continuance; Req. for 217 Hearing on Any "Interim" Orders (FC § 217); Req. for Affirmative Relief (FC § 213). (2) Petitioner's Request for Family Code Section 217 Evidentiary Hearing on Any "Interim" Visitation Orders and Best Interest of the Child. |
| **Kill Baby K Re-Allegation** | Petitioner alleges in these filings that Wang made the 3/6/19 Kill Baby K post — the identical allegation raised on 5/30/23, 9/8/23, 9/21/23 (Exhibit S, T, U,V)— as a basis to oppose the Court ordering international visitation in Denmark. Wang again requested further discovery on the post. C.T. objected again. |
| **Context** | The Court had earlier moved to Denmark with the child under C.T.'s custody. Wang had filed in Danish court on January 5, 2025 to open a case for Danish visitation orders. C.T.'s 1/13/25 filings seek to prevent the California court from ordering international visitation and to require a 3-day evidentiary hearing before any "interim" orders issue. |
| **Witness List (FC § 217 Req.)** | Petitioner's requested witness list (10 named witnesses plus current treating providers) includes Dr. Reid Meloy (forensic violence risk), Dr. Robert Kaufman (psychopathy), Molly Amman JD (violence/abduction risk), Dr. Stephanie Leite (psychological harm to child), C.T., Terry Thygesen, Dr. Karli Cleary, Dr. Jennifer Denton, Qizhong Wang and Yunjing Cheng (Wang's parents), and Kailin Wang for cross-examination. Estimated hearing time: three days. |
| **Federal Case Context** | By 1/13/25, Wang had been federally indicted (USA v. Wang, 24-cr-00163, D. Utah) and was on house arrest with GPS ankle monitor awaiting trial. The federal indictment had been unsealed 5/28/24 and included Count 1 and Count 3 charges related to threatening to kill the minor child. |

### SIGNIFICANCE TO PSR OBJECTION

These two filings mark the third documented instance in this litigation in which C.T. invoked the Kill Baby K post — specifically to block Wang's access to discovery that could disprove his allegation — and the second time he did so to oppose a court order for international visitation in Denmark. The pattern is now established across three filing dates: 5/30/23, 9/8/23, 9/21/23 (Exhibit S, T, U, V)and 1/13/25 (this Exhibit). Each time C.T. raised the post, Wang requested discovery; each time, C.T. objected. The 1/13/25 Declaration is significant for a further reason: C.T. introduces new material — the federal indictment, house arrest, and the SFDA Consolidated First Amended Domestic Violence Felony Complaint — as additional grounds to deny visitation, making the Kill Baby K post one of several layered allegations. This contextual stacking is relevant to the PSR's reliance on the post: by January 2025, C.T.'s own filings reflect that the post was a residual allegation being carried forward strategically, not an independently evaluated fact.

*Document follows on subsequent pages*

Christoffer Thygesen
℅ Brev Box Centret — Box 604
Vesterbrogade 208
1800 Fredericksberg C
DENMARK
Telephone:    ℅ (415) 989-7900
Email:        ℅ admin@sfcrimlaw.com

In Pro Per

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**01/13/2025**
**Clerk of the Court**
BY: AURELIE SCIARONI
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| In re the Matter of:<br><br>CHRISTOFFER THYGESEN<br><br>Petitioner,<br><br>And<br><br>KAILIN WANG,<br><br>Respondent. | Case No.: FDV-19-814465<br><br>**PETITIONER'S DECL. IN ADVANCE OF 1/23/25; REQ. FOR CONTINUANCE; REQ. FOR 217 HEARING ON ANY "INTERIM" ORDERS (FC § 217); REQ. FOR AFFIRMATIVE RELIEF (FC § 213)**<br><br>Date:        January 23, 2025<br>Time:        9:00 a.m.<br>Dept.:        403<br>Judge:      The Hon. Russell Roeca |

I, Christoffer Thygesen, am the Petitioner in this matter. All dates are 2024 unless otherwise stated.

<u>STATEMENT OF ISSUES</u>

**Ms. Wang Has Filed To Open A Case In Denmark Requesting Visitation Orders**

1.    Contrary to Ms. Wang's intimations to this Court that she cannot access the Danish courts, I have been notified by the Danish Ministry of Social Affairs that Ms. Wang has filed (for the first time) to open a case in Denmark requesting Danish visitation orders. Ms. Wang's authorization to open a Danish case [see the last page of <u>Exhibit A</u>] is dated January 5, 2025.  See also on page 1 of Exhibit A that Ms. Wang backed off when questioned by the US State Department about her allegation of abduction, and she is not

1

---

*In re the Matter of Thygesen v. Wang,* Case No.: FDV-19-814465; PETITIONER'S DECL. IN ADVANCE OF 1/23/25; REQ. FOR CONTINUANCE; REQ. FOR 217 HEARING ON ANY "INTERIM" ORDERS (FC § 217); REQ. FOR AFFIRMATIVE RELIEF (FC § 213)

- Dr. Denton (child's former psychologist) observed first-hand Ms. Wang repeatedly psychologically abusing the child.

9.      In addition to using visitation to abuse the child, there are new findings by the Federal Grand Jury (unsealed 5/23/24), after the Move-Away Order, that make any contact incompatible with California's Best Interests of the Child mandate. In addition to whatever the Court already knew about Ms. Wang's conduct (which has always been unclear given that the November 2022 DVRO hearing only covered a small fraction of the abuse,[4] and even that first-hand knowledge was lost when Judge Roeca took over the case), a Federal Grand Jury convened on May 8 and found by probable cause (the burden of proof required for the federal indictment) against Ms. Wang that she:

- Threatened to kill the minor child; and
- Continued her stalking in violation of numerous protective/restraining orders through the time of the indictment which was shortly before the time of her Federal arrest. (NOTE: she was engaging in this conduct while simultaneously putting blinders on the Court with her 14 motions to disqualify); and
- Was federally indicted as a repeat offender. I am Ms. Wang's third known stalking victim. I am, however, the only victim with whom she successfully conceived a child (through an additional act of abuse under California law as this Court found in the DVRO trial). In this case, her threats were not to kill me (as she had threatened her former victims); rather, her threats were to kill my infant child — *the most frightening threat imaginable to me*. (See Indictment at Counts 1 and 3.) The Indictment in *USA v. Wang*, 24-cr-00163 (D. Utah), is attached to my June 1 Declaration (Transaction ID #73286476).

10.     This surely demonstrates that there is no form of access that is compatible with the Cal Fam Code § 3020(c) mandate (i.e., the health, safety, and welfare of the child, and ensuring the safety of all family members, is paramount and must be prioritized over the abusive parent's access rights).

11.     Moreover, in a restrained-party case (which this is[5]), if the Court awards any visitation at all (Cal Fam Code § 3100), the Court "shall consider" the § 3100 (b)(2) factors: the nature of the acts that led to the protective order; the period of time that has elapsed since that order; and whether the restrained party has committed further acts of abuse.

---

[4] My presentation of evidence against Ms. Wang at the DVRO trial was cut short given the "avalanche of evidence against Ms. Wang" that quickly "went far beyond the burden of proof needed in a domestic violence restraining order under California jurisprudence." (10/20/22 DVRO Rulings and Orders Transcript at page 3.)

[5] The child, I, and the rest of my family are named as protected persons under an active State Criminal Protective Order, an active Federal Criminal Protective Order (attached to my 7/22/24 Update Declaration, FSX #73745226), as well as an active Domestic Violence Restraining Order ("DVRO"). Included in the protective/restraining orders is that Ms. Wang is prohibited from taking any action to discover the addresses/locations of protected parties. Therefore, MC and I are registered with a protected address in Denmark, and in California we had a similar protection setup. Ms. Wang's passport was confiscated in 2019 in the California state case. She is currently in USA Federal custody confined to her home, i.e. "house arrest", with a GPS ankle-bracelet monitor and other restrictions while she is awaiting trial on Federal criminal charges following her indictment by a Federal Grand Jury for criminal acts, including threatening to kill MC.

4

---

16.    Any temporary visitation orders forcing contact at this point would be recklessly uninformed. Without an evidentiary hearing, it would be impossible for this Court to get up to speed on everything Ms. Wang prevented it from knowing for over a year (see Exhibit B) and what she has continued to do in violation of this Court's Orders. Given that Judge Roeca has not yet held *any* substantive hearings on Ms. Wang's conduct and the safety of visitation, there is no reason why Denmark, the State where the child lives, would be any less well-positioned than California to make decisions.

**Denmark Must Make Its Own Orders, Regardless of What California Does**

17.    While researching the prompts identified in Judge Roeca's May 2 Order regarding potential post-move interim supervised visitation,[7] I learned that Danish orders are required if there is to be any visitation with a child who resides in Denmark, and Denmark cannot recognize or enforce any USA court orders on visitation. This is particularly important because supervision by professionals in a monitored facility is needed for any contact (if there should be contact), which is why I filed a request for the Court to make the 3422 finding which would trigger the process for California to relinquish jurisdiction. I explained what I knew about Danish supervised visitation in my August 19 Update (Transaction ID #74094410).

18.    I believe this Court has only ordered further process in California (where neither the child nor any parent resides) because it does not understand that (1) Denmark can and must process a request for a decision by a Danish court on visitation, and (2) Denmark cannot recognize or enforce any USA orders on visitation, regardless of what California does. This would seem to be critical context for the Court. The child is well-settled in Denmark where he has resided with me for over 7 months. Denmark, not California, is where all current evidence on the child's schooling, medical care, and relationships exists.

19.    Denmark is clearly better positioned than California to preside over this case and make all decisions going forward. Moreover, there is a duty on the part of the Danish authorities to protect a child living permanently in Denmark; California has no knowledge concerning the prevailing circumstances of the child's life in Denmark; California is unfamiliar with the operation of the Danish family law and child protection systems; California is unable to make any realistic determination as to the effect of its orders in Denmark (even if they were able to be recognized and enforced, which they are not); and therefore in conclusion California is unable to ascertain the extent to which any measures it might order at this point will be in the child's best interest and meaningful in Denmark.

---

[7] In this case, there are no visitation orders currently in effect.  The most recent visitation order was issued on May 14 and permitted Ms. Wang to have "two supervised visitation sessions at Rally during the month of May 2024. Future sessions subject to further order of this court." In its prior May 2 move-away Order, the Court set out a hypothetical general plan for future interim supervised visitation, to be heard at a later date after input from the parties.  (May 9th Order 5:17-23.)  The location for in-person therapeutic sessions needed to be resolved; supervisors for therapeutic sessions, whether for in-person or via video visits, needed to be identified; and the court did not resolve how the parties would pay for supervised therapeutic visitation.  The Court directed the parties to research these issues, submit briefing, and return to court for a review hearing on June 11.  (May 9th Order 5:24-6:2.)  Moreover, the Court (and I) did not know on May 2 that important new information would come to light on May 10 (SFDA motion to detain and amend), May 23 (FBI arrest), May 28 (federal indictment unsealed), and December 16 (SFDA Consolidated First Amended Domestic Violence Felony Complaint in Case No. Case 19016407) that created a significant change in circumstances since the Court set the June 11 hearing to consider interim visitation orders (which Ms. Wang called into from jail and got delayed).

6

---

== AKT 21495628 == Dokument 10 == [ Boligministeriet videresender bilag fra mor ] ==

Prepared by the Court

**FILED**
Superior Court of California
County of San Francisco

**MAY 02 2024**

CLERK OF THE COURT
BY: _Tyler Entum_
Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA**

**CITY AND COUNTY OF SAN FRANCISCO**

CHRISTOFFER STANFORD THYGESEN,

vs.

KAILIN WANG

) FDV-19-814465
)
) **FINDINGS AND ORDER AFTER**
) **HEARING**
)
)
)
)
)
)
)

This matter was heard on Thursday, April 25, 2024 at 9:00 AM in Dept. 403 on Petitioner (Father)'s motion to move with the minor child to Denmark. This Court has jurisdiction to make child custody orders in this case under the Uniform Child Custody Jurisdiction and Enforcement Act. The Court grants Father's request along with additional orders set forth below.

1. **The Move Away Request**

There is no final custody order in this matter. However, there is a five-year Domestic Violence Restraining Order (DVRO) in place and Father has sole legal and sole physical custody. On October 21, 2022, following an evidentiary hearing, the Court found that Respondent (Mother) had committed domestic violence against Father and his family members and issued the DVRO.

SBU -PRIVACY OR PII

Page 1 of 8

are among the very highest in the entire world; the Danish education system will also ensure that the child remains fully fluent in English; Denmark is a safe country; schooling and after-school care are provided at no cost in Denmark; and the Danish work culture is very family friendly. Mother has not contested these assertions.

i. The extent to which the parents are currently sharing custody. Father has had sole legal and sole physical custody of the child for over five years. Mother's visitation has been limited to twice monthly supervised visitation through Rally and supervised video visitation until cancelled by the provider.

The automatic 30-day stay pursuant to Code of Civil Procedure Section 917.7 shall commence upon the entry of this order.

This Court shall retain its jurisdiction under the UCCJEA.

2. **Ongoing Visitation Pending Evidentiary Hearing Regarding Request for Termination of Visitation and the Newly Filed Request for Child Custody and Rebuttal of the 3044 Presumption.**

Mother shall continue to have therapeutic sessions with Rally as ordered by this Court. Father shall be responsible for having the child travel every other month to the Bay Area for visitation. Alternatively, at Father's discretion, Father shall arrange for supervised therapeutic sessions with an authorized provider in Denmark so Mother can have supervised therapeutic visitation every other month. Additionally, Father shall provide this Court with authorized professional providers for approval by this court. In the months where there is no in person visitation, Father shall also arrange for the retention of authorized professional supervisors in Denmark to set up twice monthly supervised video visitation.

The Court will hold a review hearing on Tuesday, June 11, 2024 at 9:00 AM in Dept. 403 to confirm and order the visitation schedule. Father shall file and serve his proposals reflecting the foregoing visitation orders ten days in advance. Mother shall file and serve her response declaration five days in advance of the hearing. Neither brief is to be more than ten pages. Both parties shall file and serve updated

Income and Expense Declarations ten days in advance of the hearing. The Court will consider cost allocation in the event Father choses the alternative to have supervised visitation in Denmark.

## 3. Child Custody Evaluation

Mother's request for a child custody evaluation is granted. The Court finds that it is in the child's best interest to order a custody evaluation because of extensive allegations of criminal conduct, the findings of domestic violence and stalking, as well as serious allegations of psychological instability and challenges to parental fitness. The Court orders a full custody evaluation, investigation, and assessment addressing all issues related the child's health, safety, welfare, and best interests. The evaluation shall include recommended custody orders and a proposed parenting plan. The Court will review the parties' Income and Expense declarations to be filed to determine allocation for payment of the expert custody evaluator fees.

The parties are ordered to meet and confer on the selection of a custody evaluator. A list of custody evaluators maintained by the Unified Family Court Family Court Services will be sent to the parties. If the parties are unable to come to an agreement on the custody evaluator by the close of business on June 10, 2024, then each party shall submit the names of three (3) custody evaluators to the court by June 18, 2024, and the court will select the custody evaluator. Any contact that a party makes with a prospective custody evaluator shall be in writing by email or letter and shall be copied to the other side. Neither party shall contact a prospective evaluator by telephone. Neither party shall allow a third-party designee or agent to contact a prospective custody evaluator.

The evidentiary hearing regarding Father's request to terminate visitation shall remain on calendar as currently scheduled starting July 24, 2024. If the Child Custody Evaluation is not concluded the hearing dates will be addressed so the Court has available the recommendations of the Child Custody Evaluation.

///

///

///

///

///

All prior orders not inconsistent with this order shall remain in full force and effect.

IT IS SO ORDERED.

Dated:   5/2/24

Hon. Russell Roeca
Judge of the Superior Court

Christoffer Thygesen
℅ Brev Box Centret — Box 604
Vesterbrogade 208
1800 Fredericksberg C
DENMARK
Telephone:    ℅ (415) 989-7900
Email:          ℅ admin@sfcrimlaw.com

In Pro Per

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**01/13/2025**
**Clerk of the Court**
BY: AURELIE SCIARONI
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| In re the Matter of:<br><br>CHRISTOFFER THYGESEN<br><br>Petitioner,<br><br>And<br><br>KAILIN WANG,<br><br>Respondent. | Case No.:  FDV-19-814465<br><br>PETITIONER'S  REQUEST FOR FAMILY CODE SECTION 217 EVIDENTIARY HEARING ON ANY "INTERIM" VISITATION ORDERS AND BEST INTEREST OF THE CHILD<br><br>Date:        January 23, 2025<br>Time:        9:00 a.m.<br>Dept.:       403<br>Judge:       The Hon. Russell Roeca |

1.      I, Christoffer Thygesen, am the Petitioner in this matter.  I hereby request an evidentiary hearing to permit me to present live testimony and other evidence and to cross-examine Kailin Wang ("Respondent"), pursuant to Family Code section 217, with respect to the issues of any temporary or "interim" visitation orders, and what is in the best interests of the child in regard to any potential "interim" supervised visitation with Respondent Kailin Wang.

2.      So much new dangerous and harmful conduct by Ms. Wang has occurred (1) since the DVRO was issued, (2) since Judge Flores ordered the evidentiary hearing to consider

<div align="center">1</div>

---

*In re the Matter of Thygesen v. Wang,* Case No.:  FDV-19-814465; PETITIONER'S REQUEST FOR FAMILY CODE SECTION 217 EVIDENTIARY HEARING ON ANY "INTERIM" VISITATION ORDERS AND BEST INTERESTS OF THE CHILD

termination, and (3) since this Court issued its Move-Away Order. For the best interests of the child, the Court needs to properly hear and fully understand all of this. I believe that any visitation whatsoever is too risky at this time given the current circumstances and should not be considered until a full psychological evaluation and risk assessment of Ms. Wang has been conducted. Moreover, the child's safety in visitation, both physical and psychological, cannot be ensured until the Court has heard all the evidence required to fully understand the risks that Ms. Wang poses. Therefore, if this Court still chooses to move forward with holding any hearings at this time, I request a 217 Hearing on any consideration of "interim" visitation orders.

3.      I ask that the Court set the matter for a long cause, evidentiary hearing pursuant to Family Code section 217 and Rule 5.113 of the Rules of Court so that it can consider all relevant evidence about Respondent's behavior, including expert testimony about her conduct, her mental disorder, and the danger she poses to the child. The public policy in California is to "ensure that the health, safety, and welfare of children shall be the court's primary concern when making any orders regarding the physical or legal custody or visitation of children." Cal Fam Code § 3020(c). "Children have the right to be free from abuse, and the perpetration of domestic violence is detrimental to the health, safety, and welfare of a child." Cal Fam Code § 3020(a). "In determining the type of visitation with the restrained party, if any, is in the best interest of the child . . . , the court shall consider the nature of the acts that led to the protective order, the period of time that has elapsed since that order, and whether the restrained party has committed further acts of abuse." Cal Fam Code § 3100.

4.      TIME ESTIMATE: Three days, based on my belief that I will need nine to ten hours to present my witnesses, and assuming the Respondent will need a similar time-frame.

5.      PETITIONER'S WITNESS LIST:

- Dr. Reid Meloy:  I will ask Dr. Meloy to testify about his May 7, 2023 forensic violence risk and threat assessment as well as a January 5, 2024 addendum that he provided to my counsel in the criminal case.  His threat assessment focuses on the risk of physical violence, as well as the risks of stalking persistence and recurrence in her behavior toward the protected parties. (This report renders no opinions concerning custody of the child.) The Meloy Report was previously disclosed to Respondent in my 2024-01-08 Amended Declaration Pursuant To CCP 2034.230 and LRSF 11.13(A) (Transaction ID #71763086). I have already litigated Respondent's RFO motion in limine to exclude any and all evidence and hearsay evidence contained in the reports by reports by J. Reid Meloy, Molly Amman, and Stephanie Leite. It was "denied without prejudice to specific

2

---

objections at trial." The Board of Psychology found no merit to the complaint Respondent filed against Dr. Meloy (case closed 12/9/24). Dr. Meloy is one of the preeminent clinicians, researchers, and scholars in the areas of psychopathy and violence assessment.

- Dr. Robert Kaufman: As stated in his 1/9/23 declaration, Dr. Kaufman's "review of the history of this matter, including but not limited to Dr. Meloy's 1/9/23 declaration, suggests that the risks of NOT adequately assessing for psychopathy are enormous." (Transaction ID #68838398.) I will ask Dr. Kaufman to explain the impact that a person with "high to very high psychopathic traits" would have on a child, and why he stated in his 1/9/2023 declaration: "there would be a high likelihood of very serious threat to the child both in the short and long-term." (Transaction ID #68838398).

- Molly Amman: I will ask Molly Amman, JD, CTM, to testify about Respondent's risk of perpetrating violence against our family, including the child; her risk of abducting the child; and the risk of third party violence. The Amman Report was previously disclosed to Respondent in my 2024-01-08 Amended Declaration Pursuant To CCP 2034.230 and LRSF 11.13(A) (Transaction ID #71763086).

- Dr. Stephanie Leite:  I will ask Dr. Leite to testify about the psychological harm that Respondent's conduct is having on the child and to provide this Court with information it needs to keep the child's health, safety, and welfare as its top priority. The Leite Report was previously disclosed to Respondent in my 2024-01-08 Amended Declaration Pursuant To CCP 2034.230 and LRSF 11.13(A) (Transaction ID #71763086).

- Christoffer Thygesen (Petitioner):  I will testify about my observations of my son, my history with Respondent Kailin Wang, the impact of Respondent's abuse on the child and the rest of my entire family, what I believe is in the best interests of the child, and related issues.

- Terry Thygesen (Petitioner's mother):  To testify about her first-hand observations of Respondent Kailin Wang's abuse on the child during the video visits, the impact of Ms. Wang's abuse on her grandchild and the rest of her family members, her first-hand observations of the role Respondent's parents have played in the abuse of the child, what she believes is in the best interests of the child, and related issues.

- Dr. Karli Cleary, Pediatrics Chair of the Menlo Medical Clinic at Stanford Health Care, the child's former pediatrician:  To testify on her first-hand observations of the child's physical symptoms of distress and the underlying cause.

- Dr. Jennifer Denton, the child's former psychologist:  To testify about her first-hand observations of Ms. Wang's psychological abuse of the child and its impact on the child.

- The child's current pediatrician (name withheld for now):  To testify to their first-hand observations of the child.

3

- The child's current psychologist (name withheld for now):  To testify to their first-hand observations of the child.

- The child's teachers (names withheld for now):  To testify to their first-hand observations of the child.

- Qizhong Wang (aka John Wang, Respondent's father): To testify to the physical and emotional abuse inflicted on him by Respondent Kailin Wang (his 42-year-old daughter), why he and his wife have needed to call for police intervention on multiple occasions to prevent further assault, and related issues.

- Yunjing Cheng (aka Jan Wang, Respondent's mother):  To testify to the physical and emotional abuse inflicted on her by her daughter/Respondent, why she and her husband have needed to call for police intervention on multiple occasions to prevent further assault, and related issues.

- Kailin Wang (Respondent):  To cross-examine Respondent on matters raised in her pleadings, her participation in the 52-week batterer's intervention program, her history of dangerous and threatening behavior, her abusive conduct during her visitation sessions with the child that has been observed first-hand and documented by witnesses, and related issues.

6.    I reserve the right to supplement or modify the witness list and to call rebuttal witnesses.

I thank the Court for its consideration of my Section 217 hearing request.


January 13, 2025                          *Christoffer Thygesen*

_____
Christoffer Thygesen, Petitioner


4

_In re the Matter of Thygesen v. Wang,_ Case No.:  FDV-19-814465; PETITIONER'S REQUEST FOR FAMILY CODE SECTION 217 EVIDENTIARY HEARING ON ANY "INTERIM" VISITATION ORDERS AND BEST INTERESTS OF THE CHILD

| Exhibit X | Wang's VL-110 — Refile of Request to Subpoena Cloudflare (March 27, 2025) |
|---|---|

| Case | Christoffer S. Thygesen v. Kailin Wang, Case No. FDV-19-814465, SF Superior Court (UFC Branch) |
|---|---|
| Date Filed | March 27, 2025 (electronically filed; Deputy Clerk Aurelie Sciaroni) |
| Form | Judicial Council Form VL-110 (Rev. Sept. 1, 2018) — Request to File New Litigation by Vexatious Litigant, pursuant to Cal. Code Civ. Proc. § 391.7. Filed pro se by Kailin Wang, 2481 Fairway Dr., Spanish Fork, UT 84660. |
| Document Sought to File (§ 2) | FL-300 Refile of subpoena for Cloudflare. Wang states: "Thygesen continues to block Wang from discovery on the 3/6/19 post and continues to make false allegations about the 3/6/19 'Kill Baby K' post that was posted under the alias 'Kailin Wang' that CT and/or his agents posted in order to fraudulently obtain custody of the minor child back on 3/6/19. No permission is needed for discovery." |
| Merit Statement (§ 3) | Wang states that C.T. continues to make false allegations about the 3/6/19 post that was posted under the alias "Kailin Wang" by C.T. and/or his agents to fraudulently obtain custody on 3/6/19. Requests Subp-010 subpoena to Cloudflare. |
| Precipitating Event | Filed in direct response to C.T.'s January 13, 2025 filings (Exhibit W) in which he again falsely alleged Wang authored the Kill Baby K post as a basis to defer international visitation. The 3/27/25 filing is Wang's third formal attempt to obtain Cloudflare discovery since 2023. |

**SIGNIFICANCE TO PSR OBJECTION**

This VL-110 filing documents the continuing structural trap: every time C.T. invokes the Kill Baby K post to obtain a tactical advantage in the custody case, Wang attempts to obtain the only evidence that could definitively refute the allegation — Cloudflare's server records identifying the originating device behind the Cloudflare edge node. And every time Wang seeks that evidence, C.T. objects. The 3/27/25 refile is particularly significant because it was triggered not by a new discovery opportunity but by C.T.'s January 2025 re-allegation of the post to block Danish visitation orders. Wang's § 3 statement — that C.T. and/or his agents posted the Kill Baby K content under her name to fraudulently obtain custody — is sworn under penalty of perjury. The filing is not collateral; it is the operative rebuttal to a specific false allegation in active litigation. The court's handling of this refile, and C.T.'s simultaneous invocation and opposition pattern, is described in the transcript at Tab Z.

*Document follows on subsequent pages.*

VL-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | | FOR COURT USE ONLY |
|---|---|---|
| NAME: Kailin Wang    STATE BAR NUMBER: | | |

ATTORNEY OR PARTY WITHOUT ATTORNEY
NAME: Kailin Wang                    STATE BAR NUMBER:
FIRM NAME:
STREET ADDRESS: 2481 Fairway Dr.
CITY: Spanish Fork            STATE: UT      ZIP CODE: 84660
TELEPHONE NO.: 801-787-9755      FAX NO.:
E-MAIL ADDRESS: kaywg2372@gmail.com
ATTORNEY FOR (name): Pro Per

[ ] COURT OF APPEAL,        APPELLATE DISTRICT, DIVISION
[x] SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS: 400 MCallister St.
MAILING ADDRESS: 400 MCallister St.
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: UFC

PLAINTIFF/PETITIONER: Christoffer S. Thygesen
DEFENDANT/RESPONDENT: Kailin Wang
OTHER:

**FOR COURT USE ONLY**

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**03/27/2025**
**Clerk of the Court**
**BY: AURELIE SCIARONI**
**Deputy Clerk**

## REQUEST TO FILE
## NEW LITIGATION BY VEXATIOUS LITIGANT

Type of case: [ ] Limited Civil   [ ] Unlimited Civil   [ ] Small Claims
[x] Family Law   [ ] Probate   [ ] Other

CASE NUMBER:
FDV-19-814465

1. I have been determined to be a vexatious litigant and must obtain prior court approval to file any new litigation in which I am not represented by an attorney. Filing new litigation means (1) commencing any civil action or proceeding, or (2) filing any petition, application, or motion (except a discovery motion) under the Family or Probate Code.

2. I have attached to this request a copy of the document to be filed and I request approval from the presiding justice or presiding judge of the above court to file this document *(name of document):*

   FL-300  Refile of subpoena for Cloudflare. Thygesen continues to block Wang from discovery on the 3/6/19 post and continues to make false allegations about the 3/6/19 "Kill Baby K" post that was posted under the alias "Kailin Wang" that CT and/or his agents posted in order to fraudulently obtain custody of the minor child back on 3/6/19. No permission is needed for discovery.

3. The new filing has merit because *(Provide a brief summary of the facts on which your claim is based; the harm you believe you have suffered or will suffer; and the remedy or resolution you are seeking):*

   Thygesen continues to block Wang from discovery on the 3/6/19 post and continues to make false allegations about the 3/6/19 "Kill Baby K" post that was posted under the alias "Kailin Wang" that CT and/or his agents posted in order to fraudulently obtain custody of the minor child back on 3/6/19.

4. The new filing is not being filed to harass or to cause a delay because *(give reasons):*

   For obvious reasons that do not need to be repeated here.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 3/27/25

Kailin Wang
_____
(TYPE OR PRINT NAME)

▶         _____
                    (SIGNATURE)

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
VL-110 [Rev. September 1, 2018]

**REQUEST TO FILE**
**NEW LITIGATION BY VEXATIOUS LITIGANT**

Code of Civil Procedure, § 391.7
www.courts.ca.gov

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]   [ Save this form ]   [ Clear this form ]

| Exhibit Y | CT's (V1's) May 30, 2025 Opposition — FL-320 Responsive Declaration & Response in Opposition to Wang's Refile of Cloudflare Subpoena for Discovery on the 3/6/19 "Kill Baby K" Post |
|---|---|

| | |
|---|---|
| **Case** | In re Thygesen v. Wang, Case No. FDV-19-814465, SF Superior Court, Dept. 403 |
| **Date Filed** | May 30, 2025 (electronically filed; Deputy Clerk Jonathan J. Wong) |
| **Hearing Date** | June 12, 2025, 9:00 a.m., Dept. 403 |
| **Documents** | (1) FL-320 Responsive Declaration to Request for Order (Petitioner Christoffer Thygesen; signed May 30, 2025). (2) Petitioner's Response to Respondent's Refiling of Request to Subpoena Cloudflare. |
| **FL-320 Position** | Petitioner checks Box 1(b): DVRO in effect. Does not consent to custody, visitation, or child support orders. Under Box 7(b), requests the Court deny Wang's 4/4/2025 FL-300 "Refile of Subpoena for Cloudflare" (VL-110 dated 3/27/2025, Trans. ID #75945115) with prejudice. |
| **Relevance Argument** | In his Response, C.T. argues the Cloudflare data is "no longer relevant" because the upcoming trial concerns Wang's conduct after the issuance of the DVRO on October 21, 2022 — and the 3/6/19 Kill Baby K post predates the DVRO. (Response at § 9.) |
| **Prior History Recited** | C.T. acknowledges (Response §§ 4–7) that: (1) Wang served two Cloudflare subpoenas through Kronenberger in 2019 specifically directed to the Kill Baby K post; (2) he opposed Wang's 6/5/23 FL-300 in his 9/8/23 briefing; (3) the Court denied that request on 10/16/23; and (4) "nothing has changed with respect to Cloudflare since the Court denied her request on October 16, 2023." |
| **Prior Discovery Admission** | C.T.'s 9/8/23 opposition (Exhibit 5 to his 5/30/25 Response) confirmed Wang served at least one Cloudflare subpoena specifically directed to the Kill Baby K post and received a response confirming the IP could not be attributed to any subscriber — the same forensic conclusion Wang has consistently sought to place in evidence. |

> **SIGNIFICANCE TO PSR OBJECTION**
>
> The May 30, 2025 opposition filings complete the evidentiary loop and reveal the full contradiction at the center of the Kill Baby K issue in this case: C.T. has repeatedly invoked the post to obtain tactical advantages (TRO on 3/6/19; DVRO in 2022; opposition to visitation on 10/18/22, 5/30/23, 9/21/23, and 1/13/25); he has simultaneously and consistently opposed every attempt by Wang to obtain the forensic evidence that would resolve the post's authorship; and he now argues, when the discovery is sought again, that the post is "no longer relevant." The relevance argument is self-serving and internally inconsistent: C.T. cannot simultaneously use the post to obtain custody and visitation outcomes and then declare it irrelevant when the subject of its authorship is raised. His acknowledgment that Wang served Cloudflare subpoenas in 2019 directed specifically to the Kill Baby K post — and that Cloudflare responded to those subpoenas — further establishes that the forensic record was actively developed and then suppressed. This is the document that sets up Judge Roeca's June 12, 2025 ruling at Tab Z.

*Document follows on subsequent pages.*

**FL-320**

| | | |
|---|---|---|
| PARTY WITHOUT ATTORNEY OR ATTORNEY | STATE BAR NUMBER: | **FOR COURT USE ONLY** |

NAME: Christoffer Stanford Thygesen
FIRM NAME: c/o Brev Box Centret – Box 604
STREET ADDRESS: Vesterbrogade 208
CITY: 1800 Frederiksberg C; DENMARK     STATE:     ZIP CODE:
TELEPHONE NO.: % (415) 989-7900     FAX NO.:
EMAIL ADDRESS: % Douglas L. Rappaport at admin@sfcrimlaw.com
ATTORNEY FOR (name): In Pro Per

ELECTRONICALLY
**F I L E D**
*Superior Court of California,
County of San Francisco*

**05/30/2025**
**Clerk of the Court**
BY: JONATHAN J. WONG
**Deputy Clerk**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center Courthouse

PETITIONER: CHRISTOFFER THYGESEN
RESPONDENT: KAILIN WANG
OTHER PARENT/PARTY:

| **RESPONSIVE DECLARATION TO REQUEST FOR ORDER** | CASE NUMBER: |
|---|---|
| | FDV-19-814465 |

| HEARING DATE: | TIME: | DEPARTMENT OR ROOM: |
|---|---|---|
| June 12, 2025 | 9:00 a.m. | 403 |

Read *Information Sheet: Responsive Declaration to Request for Order* (form FL-320-INFO) for more information about this form.

1. [x] RESTRAINING ORDER INFORMATION
   a. [ ] No domestic violence restraining/protective orders are now in effect between the parties in this case.
   b. [x] I agree that one or more domestic violence restraining/protective orders are now in effect between the parties in this case.

2. [ ] CHILD CUSTODY
   [ ] VISITATION (PARENTING TIME)
   a. [ ] I consent to the order requested for child custody (legal and physical custody).
   b. [ ] I consent to the order requested for visitation (parenting time).
   c. [ ] I do not consent to the order requested for   [ ] child custody   [ ] visitation (parenting time)
      [ ] but I consent to the following order:

3. [ ] CHILD SUPPORT
   a. I have completed and filed a current *Income and Expense Declaration* (form FL-150) or, if eligible, a current *Financial Statement (Simplified)* (form FL-155) to support my responsive declaration.
   b. [ ] I consent to the order requested.
   c. [ ] I consent to guideline support.
   d. [ ] I do not consent to the order requested [ ] but I consent to the following order:

4. [ ] SPOUSAL OR DOMESTIC PARTNER SUPPORT
   a. I have completed and filed a current *Income and Expense Declaration* (form FL-150) to support my responsive declaration.
   b. [ ] I consent to the order requested.
   c. [ ] I do not consent to the order requested [ ] but I consent to the following order:

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
FL-320 [Rev. January 1, 2025]

**RESPONSIVE DECLARATION TO REQUEST FOR ORDER**

Code of Civil Procedure, § 1005
Cal. Rules of Court, rule 5.92
www.courts.ca.gov

**FL-320**

| | CASE NUMBER: |
|---|---|
| PETITIONER: CHRISTOFFER THYGESEN<br>RESPONDENT: KAILIN WANG<br>OTHER PARENT/PARTY: | FDV-19-814465 |

5. ☐ **PROPERTY CONTROL**
   a. ☐ I consent to the order requested.
   b. ☐ I do not consent to the order requested ☐ but I consent to the following order:

6. ☐ **ATTORNEY'S FEES AND COSTS**
   a. I have completed and filed a current *Income and Expense Declaration* (form FL-150) to support my responsive declaration.
   b. I have completed and filed with this form a *Supporting Declaration for Attorney's Fees and Costs Attachment* (form FL-158) or a declaration that addresses the factors covered in that form.
   c. ☐ I consent to the order requested.
   d. ☐ I do not consent to the order requested ☐ but I consent to the following order:

7. ☒ **OTHER ORDERS REQUESTED**
   a. ☐ I consent to the order requested.
   b. ☒ I do not consent to the order requested ☒ but I consent to the following order:

   Respondent's 4/4/2025 FL-300 "Refile of Subpoena for Cloudflare" (VL-110 dated 3/27/2025) (Transaction ID #75945115) is denied with prejudice.

8. ☐ **TIME FOR SERVICE / TIME UNTIL HEARING**
   a. ☐ I consent to the order requested.
   b. ☐ I do not consent to the order requested ☐ but I consent to the following order:

9. ☒ **FACTS TO SUPPORT** my responsive declaration are listed below. The facts that I write and attach to this form cannot be longer than 10 pages, unless the court gives me permission. ☐ Attachment 10.

   Petitioner respectfully requests the Court deny Respondent's 4/4/2025 FL-300 "Refile of Subpoena for Cloudflare" for the reasons set forth in Petitioner's Response to Respondent's Refiling of Request to Subpoena Cloudflare.

I declare under penalty of perjury under the laws of the State of California that the information provided in this form and all attachments is true and correct.

Date: May 30, 2025

Christoffer Thygesen
_____
(TYPE OR PRINT NAME)

▶ *Christoffer Thygesen*
_____
(SIGNATURE OF DECLARANT)

Christoffer Thygesen
℅ Brev Box Centret — Box 604
Vesterbrogade 208
1800 Fredericksberg C
DENMARK
Telephone:        ℅ (415) 989-7900
Email:              ℅ Douglas L. Rappaport at  admin@sfcrimlaw.com

In Pro Per

ELECTRONICALLY
**F I L E D**
*Superior Court of California,
County of San Francisco*

**05/30/2025**
**Clerk of the Court**
BY: JONATHAN J. WONG
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| In re the Matter of:<br><br>CHRISTOFFER THYGESEN<br><br>Petitioner,<br><br>And<br><br>KAILIN WANG,<br><br>Respondent. | Case No.:  FDV-19-814465<br><br>PETITIONER'S RESPONSE TO RESPONDENT'S REFILING  OF REQUEST TO SUBPOENA CLOUDFLARE<br><br>Date:        June 12, 2025<br>Time:       9:00 a.m.<br>Dept.:       403<br>Judge:      The Hon. Russell Roeca |

1.        I am the Petitioner in this matter. I refer to the six-year old minor child in these pleadings as "the child" to protect his privacy. I make this declaration in support of my Response to Respondent Kailin Wang's FL-300 Refile of subpoena for Cloudflare.

2.        On March 27, 2025[1], Ms. Wang submitted a VL-110 to which she attached a proposed FL-300 to be filed entitled,

---

[1] All dates are 2025 unless otherwise stated.

1

In re the Matter of Thygesen v. Wang, Case No.:  FDV-19-814465; PETITIONER'S RESPONSE TO RESPONDENT'S REFILING  OF REQUEST TO SUBPOENA CLOUDFLARE

FL-300 Refile of subpoena for Cloudflare. Thygesen continues to block Wang from discovery on the 3/6/19 post and continues to make false allegations about the 3/6/19 "Kill Baby K" post that posted under the alias "Kailin Wang" that CT and/or his agents posted in order to fraudulently obtain custody of the minor child back on 3/6/19. No permission is needed for discovery.

This document is referred to herein as the "Refiled Cloudflare Motion."

3.      It's unclear to me why the Court granted Ms. Wang's VL-110 request to "**refile**" her Cloudflare Motion, given that the Cloudflare issue was fully briefed and heard on September 21, 2023, and this Court already denied it in this Court's October 16, 2023 Order.

4.      On 9/8/23, I opposed Ms. Wang's 6/5/23 FL-300 on the ground that she had already served two subpoenas on Cloudflare in 2019, through her then-counsel Karl Kronenberger, after all of the Holysmoke posts at issue had been made. (See 9/8/2023 CT FL-320 re Discovery, at 10). At least one of the subpoenas Ms. Wang served on Cloudflare in 2019 was specifically directed to the post on Holysmoke wherein she threatened to kill herself and the child, the 3/6/2019 post on Holysmoke that Ms. Wang refers to as the "Kill Baby K" post. (Id.)

5.      My prior 9/8/2023 briefing concerning Ms. Wang's 6/5/23 FL-300 request for a Cloudflare subpoena is attached hereto as Exhibits 1-5 and is incorporated herein by reference. It includes:

Exhibit 1: This Court's 10/16/2023 Order denying Ms. Wang's 6/5/23 Request for a Cloudflare subpoena

Exhibit 2: 2023-09-08 CT Response to RFO Discovery (Specifically, see **Section II. B. "Respondent's Proposed Subpoena to Cloudflare"**)

Exhibit 3: 2023-09-08 CT Declaration of Counsel to RFO Discovery

Exhibit 4: 2023-09-08 CT Request for Judicial Notice to RFO Discovery

Exhibit 5: 2023-09-08 CT FL-320 to RFO Discovery

2

6.      Both parties had ample opportunity to conduct discovery concerning Holysmoke and Cloudflare in 2019, and Ms. Wang availed herself of those opportunities. Ms. Wang's counsel served two subpoenas on Cloudflare.

7.      Following the parties' briefing on the issue in 2023, the Court denied Ms. Wang's May 30, 2023 FL-300 request to serve another subpoena on Cloudflare. (See October 16, 2023 FOAH).

8.      Nothing has changed with respect to Cloudflare since the Court denied her request on October 16, 2023. Moreover, as discussed immediately below, the Cloudflare data is no longer relevant.

9.      The upcoming trial concerns Ms. Wang's conduct *after* the issuance of the DVRO on October 21, 2022. The information from Cloudflare sought by Ms. Wang pertains to the 2019 "Kill Baby K" post–a post which pre-dates the issuance of the DVRO. The information from Cloudflare is therefore not relevant to the issues in the upcoming trial.

May 30, 2025

*Christoffer Thygesen*

_____
Christoffer Thygesen, Petitioner

3

| Exhibit Z | Reporter's Transcript — June 12, 2025 (Judge Roeca, Dept. 403) — Court Finds Kill Baby K Post Irrelevant to Trial; Discovery Denied |
|---|---|
| Case | Christopher Stanford Thygesen v. Kailin Wang, Case No. FDV-19-814465, SF Superior Court, Dept. 403 |
| Date & Time | Thursday, June 12, 2025, 11:19 a.m., Morning Session |
| Judicial Officer | Hon. Russell S. Roeca, Judge Presiding |
| Court Reporter | Linda S. Heras, CSR No. 13286. Transcript certified July 22, 2025. |
| Appearances | Petitioner (C.T.): In Pro Per, appearing via Zoom from Denmark (approximately 8:20 p.m. local time). Respondent (Wang): In Pro Per, appearing via Zoom (audio only; no video). |
| Issue Before Court | Wang's objection to tentative ruling. Paragraph B: denial of Wang's refile of Cloudflare subpoena (filed 3/27/25, Trans. ID #75945115). Wang objects and asks the Court to explain the basis for denial. |
| Court's Ruling on Cloudflare (RT 4:13–19) | Judge Roeca states that the record shows the issue was raised before the DVRO hearing, subpoenas were served in 2019 regarding the Kill Baby K post, the DV ruling was affirmed on appeal, and the issue was again raised in June 2023 and denied in October 2023. Court stands by its tentative ruling denying the subpoena. |
| Critical Exchange (RT 4:20–6:6) | The Court directly asks C.T.: "Do you plan to introduce this post in the long cause hearing?" (RT 4:20–21.) C.T. responds: "That's not my expectation." (RT 4:24.) Wang then asks: "[T]hen you're finding it irrelevant as to trial; is that correct?" (RT 6:3–5.) The Court responds: "That's correct." (RT 6:6.) |
| Wang's Admissibility Argument (RT 5:5–18) | Wang argues that Cloudflare informed her that the Holy Smokes website was logging IP addresses incorrectly; that a Cloudflare employee (David N.) confirmed this by email; and that for any Cloudflare evidence to be admissible at trial, a declaration under penalty of perjury from the custodian of records is required under California Evidence Code § 1561 — which was never obtained from the prior subpoenas. |
| Transcript Certification | Certified by Linda S. Heras, CSR No. 13298, dated July 22, 2025. |

**SIGNIFICANCE TO PSR OBJECTION**

This transcript is the final chapter in the six-year discovery dispute over the Kill Baby K post. The Court's exchange with the parties at RT 4:20–6:6 produces the clearest possible judicial record: (1) C.T. states, under oath before the court, that he does not expect to introduce the Kill Baby K post at trial; and (2) when Wang asks the Court to confirm this constitutes a finding of irrelevance, the Court confirms it on the record. The legal consequence of this exchange is significant: C.T. cannot simultaneously disclaim any intention to introduce the post at the long-cause trial — the very proceeding for which the entire discovery phase was conducted — and then ask a federal sentencing court to treat the post as an established adverse fact. C.T.'s own statement under oath is a judicial admission. The Court's confirmation is an on-the-record relevance determination. Together, they complete the loop opened at Exhibit P (search warrant vs. arrest warrant): the post was used to justify a search warrant in 2019, abandoned in the criminal charging decision in 2019, used to block visitation in 2023 and 2025, and finally disclaimed under oath by C.T. himself in June 2025. Wang's admissibility argument (RT 5:5–18) — that a custodian declaration under Cal. Evid. Code § 1561 was never obtained — restates the procedural catch-22 documented in Exhibit O and establishes that it was never resolved. The catch-22 therefore persists to the eve of the long-cause trial. The post has never been admitted into evidence, no court has made a factual finding that

Wang authored it, and the only party with standing to introduce it at trial has now stated on the record that he does not intend to do so.

*Document follows on subsequent pages.*

Reporter's Transcript of Proceeding
THURSDAY, JUNE 12, 2025

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE **RUSSELL S. ROECA,** JUDGE

DEPARTMENT 403

---oOo---

CHRISTOPHER STANFORD THYGESEN,    )
                                  )
            Petitioner,           )
                                  )  COURT NO: FDV-19-814465
        vs.                       )
                                  )
KAILAN WANG,                      )
                                  )
            Respondent.           )
_____ )


**<u>Reporter's Transcript of Proceeding</u>**

THURSDAY, JUNE 12, 2025


---oOo---


TRANSCRIPT PRODUCED PURSUANT TO Government Code 69954(d):

     Any court, party or person who has purchased a transcript may, without paying a further fee to the reporter, reproduce a copy or portion thereof as an exhibit pursuant to court order or rule, or for internal use, but shall not otherwise provide or sell a copy or copies to any other party or person.

---oOo---


Reported by:  Linda S. Heras, CSR NO. 13286

**APPEARANCES OF COUNSEL:**


FOR PETITIONER:

IN PRO PER
(APPEARING VIA ZOOM)


FOR RESPONDENT:

IN PRO PER
(APPEARING VIA ZOOM)

Linda S. Heras, CSR No. 13286

THURSDAY, JUNE 12, 2025, 11:19 A.M., MORNING SESSION

P-R-O-C-E-E-D-I-N-G-S

---oOo---

THE COURT:  Calling Line 5 on the second 9 a.m. calendar, the matter of Christoffer Thygesen vs. Kailin Wang.

Can I have parties' appearances please.

MR. THYGESEN:  Hello, Your Honor.  This is Christoffer Thygesen appearing remotely from Denmark.  It is about 8:20 here.  Not sure if I can say good morning, but hello.

THE COURT:  Well, good evening to you.

MS. WANG:  This is Kailin Wang, Respondent, appearing by Zoom.

THE COURT:  All right.  Good morning, Ms. Wang.

Could I have both parties be sworn.

THE CLERK:  We need confirmation that Ms. Wang is raising her right hand.

THE COURT:  Do you have video availability, Ms. Wang?

MS. WANG:  No.

THE COURT:  Do you solemnly state under penalty of perjury that the testimony you're about to give in this matter before the Court is the truth, the whole truth, and nothing but the truth?

MS. WANG:  I do.

MR. THYGESEN:  I do.

THE COURT:  Ms. Wang, you objected to the tentative ruling.

Linda S. Heras, CSR No. 13286

MS. WANG:  Yes, I did.  So, there's a number of things.

First, there is a disqualification pending.

THE COURT:  I have not seen any disqualification, and it certainly has not been served on me.  We will proceed this morning.

MS. WANG:  Okay.

Well, I dispute everything, since you denied everything again.  We'll go with this -- we'll go in order for the tentative ruling.

Paragraph B, to serve the subpoena on Cloudfare (phonetic) is denied.  First of all, why is that denied?  There's no reason.  So, it's hard for me to prepare.

THE COURT:  Well, in large part, Mr. Thygesen's paperwork and the court docket reflects that this issue has been raised before the domestic violence restraining order hearing, and the subpoenas were issued regarding that 2019 post.  The DV ruling was affirmed on appeal.  Then this issue was raised again in June '23 and denied in October '23.

Mr. Thygesen, let me ask you, do you plan to introduce this post in the long cause hearing?

MR. THYGESEN:  Sorry, the post you're referring to?

THE COURT:  The kill baby post.

MR. THYGESEN:  That's not my expectation.

MS. WANG:  That's not a clear answer; but regardless, Your Honor, if you look at Judge Flores' 10/18/2019 minute order, it clearly says, this DVRO is not going to incorporate the kill Baby K. post.  You said that it was

Linda S. Heras, CSR No. 13286

going to be an issue in your 2/14/2025 order.  So, it is going to be at issue.  It is certainly at issue in the criminal case as it pertains to the child that has not been litigated.

The purpose for this subpoena, besides the previous ones served, was we did receive a response from somebody at Cloudfare who said that the Holy Smokes website is logging in the IP addresses incorrectly.

He sent that by email.  It was a man named David, N-G.  Then Mr. Thygesen's counsel has submitted Justin Payne (phonetic), the director of security, just emailed though.

You understand that under -- for it to be admissible at trial, there's a -- we need a declaration from these people.  That was never received in any of the subpoenaed issues.

So, for me, or anybody, to introduce this evidence at trial, we're going to need a declaration under penalty of perjury from the custodian of records.  We never got that from the previous subpoenas issued.

THE COURT:  Your response, Mr. Thygesen?

MR. THYGESEN:  Sorry.  I'm not really clear what the ask is?

THE COURT:  She wants to serve the subpoena on Cloudfare, and it's been denied twice before at least.

MR. THYGESEN:  I would say my opinions on the matter are contained in my papers.  I have nothing further beyond what I submitted.

THE COURT:  And I reviewed everything, and I went back in the docket and I looked at the request and the orders

Linda S. Heras, CSR No. 13286

6

that followed therefrom.  So, I'm going to stand by my tentative ruling.

MS. WANG:  Okay.  Well, then it's not going to be introduced as -- then you're finding it irrelevant as to trial; is that correct?

THE COURT:  That's correct.

MS. WANG:  Okay.  Well, then there's -- we have that on the record.

So, moving on to Part C, request to depose Dr. Karli Cleary was denied.  Can we get on the record that Mr. Thygesen will not be introducing Dr. Karli Cleary at any trial in this case?

THE COURT:  Mr. Thygesen, it's my understanding, based upon your witness list, that you're not calling Dr. Cleary.

MR. THYGESEN:  My tentative witness list stands.

THE COURT:  So, you're not calling Dr. Cleary; correct?

MR. THYGESEN:  That's not my expectation, no.

THE COURT:  All right.  That answers it.

Ms. Wang, you'll have your ability to cite to this.

MS. WANG:  Okay.

THE COURT:  Line D -- what's is your next objection?

MS. WANG:  Line D.

MR. THYGESEN:  Your Honor, sorry.  One point of clarification.

So, in general, the witness list is -- tentative witness list is about the witnesses, the primary witnesses that I will be bringing; however, if it becomes relevant due to say issues brought up in, say, Ms. Wang's testimony for

Linda S. Heras, CSR No. 13286

State of California                    )
                                       )
City and County of San Francisco)


     I, Linda S. Heras, Official Reporter for the
Superior Court of the State of California, City and County
of San Francisco, do hereby certify:
     That I was present at the time of the above
proceedings;
     That I took down in machine shorthand notes of all
proceedings had and testimony given;
     That I thereafter transcribed said shorthand notes with
the aid of a computer;
     That the above and foregoing is a full, true, and
correct transcription of said shorthand notes, and a full,
true, and correct transcript of all proceedings had and
testimony taken;
     That I am not a party to the action or related to a
party or counsel;
     That I have no financial or other interest in the
outcome of the action.


     Date:  July 22, 2025



_____

          Linda S. Heras, CSR No. 13298

| Exhibit AA | Reporter's Transcript — July 15, 2025 (Judge Roeca, Dept. 403) — Wang's Objections to Tentative Ruling on Inconvenient Forum; Court Takes Under Submission |
|---|---|
| **Case** | Christoffer Stanford Thygesen v. Kailin Wang, Case No. FDV-19-814465, SF Superior Court, Dept. 403 |
| **Date & Time** | Tuesday, July 15, 2025, 9:23 a.m.–9:46 a.m., Morning Session |
| **Judicial Officer** | Hon. Russell S. Roeca, Judge Presiding |
| **Court Reporter** | Linda S. Heras, CSR No. 13286. Transcript certified September 4, 2025. |
| **Appearances** | Petitioner (C.T.): In Pro Per, appearing via Zoom. Respondent (Wang): In Pro Per, appearing via Zoom (audio only; no video). |
| **Issue Before Court** | Wang's objections to the Court's tentative ruling on Father's request for a finding that California is an inconvenient forum under UCCJEA, with jurisdiction to transfer to Denmark. Wang had filed written objections the morning of the hearing. |
| **Wang's Objections (RT pp. 3–12)** | (1) Factual correction: The Court of Appeal reference should be First District, not Fourth District. (2) Factual error: Tentative states Wang is "under house arrest"; Wang states she is on home detention, can travel to California, and recently did so for the five-day SF criminal preliminary hearing (March 6–11, 2025) and in February 2025. The Danish court cannot be allowed to treat inability to travel as a fact. (3) The duration of the child's absence from California was caused by the Court's own refusals to order visitation on 8/1/24, 11/15/24, 1/23/25, 3/17/25, 5/15/25, 6/12/25, and 7/15/25. (4) Child support: C.T. has never filed for child support; Wang cannot be faulted for not providing financial assistance. (5) Nature and location of evidence: C.T.'s witnesses listed in his 1/13/25 filing were California-based; his Danish witnesses are anonymous and unverifiable. (6) No trial scheduled in Denmark — only a hearing in October; the California evidentiary hearing (August, then September) was vacated by the Court itself. (7) All DV allegations originated in California or within the U.S.; Denmark enacted cyberstalking laws only in 2022; California has superior jurisdictional standing. (8) A "stay" under UCCJEA § 3477 is not appropriate if Denmark has already commenced proceedings; the ruling amounts to a permanent jurisdiction termination and cannot be disguised as a stay to prevent appeal. |
| **Wang's Kill Baby K Argument (RT p. 14)** | Wang argues that C.T.'s stated basis for the 1/13/25 request for interim visitation evidentiary hearing — his list of 10 expert witnesses — is no longer valid because C.T. "testified under penalty of perjury at the 6/12/2025 hearing that he is no longer using any of those expert witnesses and witnesses he declared in 1/13/2025 with the request for the 217 hearing." Wang argues C.T. cannot bring up those same reasons again to deny visitation. |
| **C.T.'s Response (RT p. 13)** | C.T. states he agrees in full with the tentative and hears no merit in Wang's objections. His only requested change: that the history paragraph note the last ordered visitation occurred May 17, 2024, and the Court denied ordering further visitation pending the long-cause hearing scheduled for September 2025. |
| **Court's Ruling** | The Court takes the matter under submission and states it will issue an order. Hearing concluded 9:46 a.m. |

**SIGNIFICANCE TO PSR OBJECTION**

This transcript is the procedural capstone of the inconvenient forum dispute and establishes several facts critical to the PSR objection. First, Wang's RT p. 14 argument directly ties C.T.'s 6/12/25 sworn disclaimer of his expert witnesses (Exhibit Z) to the ongoing visitation dispute: she argues that because he disclaimed those witnesses under oath, the stated basis for his 1/13/25 opposition to visitation no longer stands. The Kill Baby K post was one of the factual predicates C.T. offered in those January 2025 filings (Exhibit W) to oppose visitation; by disclaiming the expert witnesses on 6/12/25, C.T. undermined the evidentiary scaffolding he built around the post's alleged significance. Second, Wang's point (3) — that the length of the child's absence from California was caused by the Court's own serial refusals to order visitation, not by Wang's conduct — is directly responsive to the PSR's use of the child custody posture as an adverse background fact. Third, Wang's point (8) identifies the inconvenient forum "stay" as a permanent jurisdiction transfer disguised procedurally — meaning the California court was effectively removing itself from oversight of the case at the same moment the Kill Baby K post remained unrebutted in the record. The court taking the matter under submission without ruling from the bench means the forum issue remained unresolved as of the transcript date.

*Document follows on subsequent pages.*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE **RUSSELL S. ROECA**, JUDGE

DEPARTMENT 403

---oOo---

CHRISTOFFER STANFORD THYGESEN,   )
                                      )
         Petitioner,        )
                                       )  COURT NO: FDV-19-814465
    vs.                     )
                                       )
KAILAN WANG,              )
                                       )
         Respondent.       )
_____)

**<u>Reporter's Transcript of Proceeding</u>**

TUESDAY, JULY 15, 2025

---oOo---

TRANSCRIPT PRODUCED PURSUANT TO Government Code 69954(d):

    Any court, party or person who has purchased a transcript may, without paying a further fee to the reporter, reproduce a copy or portion thereof as an exhibit pursuant to court order or rule, or for internal use, but shall not otherwise provide or sell a copy or copies to any other party or person.

---oOo---

Reported by:  Linda S. Heras, CSR NO. 13286

2

**APPEARANCES OF COUNSEL:**

FOR PETITIONER:

IN PRO PER
(APPEARING VIA ZOOM)

FOR RESPONDENT:

IN PRO PER
(APPEARING VIA ZOOM)

**TUESDAY, JULY 15, 2025, 9:23 A.M., MORNING SESSION**

**P-R-O-C-E-E-D-I-N-G-S**

---oOo---

THE COURT: Calling Line 4, the matter of Christoffer Stanford Thygesen vs. Kailin Wang.

Can I have appearances, please.

MR. THYGESEN: Yes. This is Christoffer Thygesen representing myself appearing via Zoom.

MS. WANG: Kailin Wang representing herself appearing by Zoom.

THE COURT: Ms. Wang, can you make yourself visible on video?

MS. WANG: No, I cannot.

THE COURT: All right.

THE COURT REPORTER: She's hard to hear.

THE COURT: You're difficult to hear according to the court reporter, so you're going to have to make sure you speak loudly.

MS. WANG: Okay.

THE COURT: We're here on your objection.

MS. WANG: Yes, I filed a list of objections. I'll go over them one by one.

THE COURT REPORTER: She needs to speak louder.

Ms. Wang, this is Linda, the court reporter. I'm having a hard time hearing you, and I want to make sure I get everything. So, I don't know if you need to be closer to your microphone. Plus, it's hard that I can't see you. We listen with more than just our ears.

Linda S. Heras, CSR No. 13286

**MS. WANG:**  I want to be clear that I'm incorporating all the previous arguments I made on this inconvenient forum matter.  I filed an objection this morning -- not sure if you received that, but you certainly will -- and you looked it over and read it before you make a final Findings In Order After Hearing.  So, I'm not going to repeat those arguments here.

Your tentative ruling has several errors I need you to correct.

In Paragraph 8, Father's request for a finding. California is an inconvenient forum.  You put the Fourth District Court of Appeal and --

**THE COURT:**  Slow down a moment, so I can follow you.

**MS. WANG:**  Sure.  Are you looking at your ruling?

**THE COURT:**  I'm looking at it.

**MS. WANG:**  Okay.  So, Paragraph A, it says Fourth District Court of Appeal.  It's the First District Court of Appeal.

Do you see it?

**THE COURT:**  Yes, I have that.  Thank you.

**MS. WANG:**  I need you to make that correction.

Paragraph 3 -- Paragraph 3, I disagree about inconvenient forum being a non-substantive issue.

I need you to change that Mother is currently under house arrest in Utah.  Clearly, I'm not in custody, so.

**THE COURT:**  You're currently on home detention; correct?

**MS. WANG:**  Yes, and I can travel to California though.

5

I provided proof of that, so it's not proper for this Court to assume and speculate, especially when the Danish Court has to look at this order.  So, you're going to have to change that because clearly I'm not in custody; and with home detention, I have the ability to travel to California.

You are aware of this.  I traveled to California recently for a five-day, in-person hearing in the San Francisco criminal court, and I traveled to California in February as well.

So, why would you speculate what the federal court is going to do about whether I can travel to California for family court proceedings or court-ordered visitation.

**THE COURT:**  Ms. Wang, the reason for that was in part based upon your statements at the last hearing that you may have been put in custody at a federal detention center somewhere in Riverside County.  You made that comment.  So, it was unclear what your status would be at the time of this hearing, but now I know that --

**MS. WANG:**  That's not what I said.

**THE COURT:**  Let's move on.

**MS. WANG:**  Yeah, but I'm going to need that changed.  I can't have the Danish Court assume this is a fact that you actually based off of evidence because I can't have another court -- you're undermining my arguments and my case already in Denmark by making a factual statement that I cannot travel to California.  Yes, I can.

**MR. THYGESEN:**  Your Honor, I'd ask that the parties be sworn.  It's not really this argument being made here.

Linda S. Heras, CSR No. 13286

THE COURT: That's correct, and I apologize. I did not do so.

Please, both parties raise your right hands.

And Ms. Wang, would you state that your right hand is raised?

MS. WANG: Yes.

THE CLERK: Do you solemnly state under penalty of perjury that the testimony you're about to give in this matter before the Court is the truth, the whole truth, and nothing but the truth?

MS. WANG: Correct. Yes, I do.

MR. THYGESEN: I do.

THE CLERK: Thank you.

MS. WANG: So again --

THE COURT: Let's move on. I heard your point there. Let's move to the next point.

MS. WANG: Well, that's the thing, you cannot put that I cannot travel to California. That is all.

THE COURT: I've heard your remarks. Move on to the next one, please.

MS. WANG: Also, there are material facts that are in dispute as listed. It's a long list. I shouldn't have to go over them. I filed on 6/23 a declaration in support of the 217 evidentiary hearing.

Also, there is currently a domestic violence restraining order. You need to, again, like you did in your amended April 4th, 2025 order from the 1/23/2024 hearing that the trial does not have a restraining order in family

law cases.

If you put down the criminal protective order, again, in Box 16 that allows for peaceful contact. You cannot just put that in a restraining order, period, because it does not incorporate the child. That needs to be specified. You have done that previously in your April order.

This Court also previously granted to be supervised between Mother for the child's protection. No such order ever says that. No conclusion has ever been made. I don't know why you put that in there because supervised visitation was ordered with Mr. Thygesen in the case, but certainly -- and the allegations pertain to Christoffer Thygesen. They never pertained to the child. None of the orders for supervised visitation say that.

So, where did you get this?

**THE COURT:** I hear your objections. Now, let's move on to the next one.

**MS. WANG:** Okay.

Supervised visitation between Mother and child was then temporarily suspended due to concerns about the child's wellbeing.

I don't agree with that because it was Judge Flores who suspended it. It was only for seven days, which it says nothing about the seven days here. If you want to know where it is, I'm telling you where it is. It's March 21st, 2024, that's when he issued the ex parte order suspending visitation from March 21st to March 28th.

Judging from what Thygesen's arguments were to suspend

at the time, and what my arguments were -- his were, basically, reports from his pediatrician and the forensic psychologist which was all refuted once the Rally reports became available which was after that date.  That was also told to Judge Flores.

So, whether he suspended it for seven days because he wanted me to stop coming to California because Thygesen was no-notice/no-showing to supervised visitation or because he wanted protection of the child, it never says that in the ex parte order.  So, you can't assume that is why he suspended it for seven days.

**THE COURT:**  All right.  Your next statement.

**MS. WANG:**  Yeah.

So, it was reinstated thereafter for therapeutic supervised visitation.  You made that order, and you, strangely, don't put a reason why.  I mean, you're the one who made that order, yet you assume and speculate when Judge Flores terminated it -- suspended it, for seven days only, that it was due to concerns for the child's wellbeing.

You can't substitute what he was assuming or thinking, and you did here.

**THE COURT:**  Okay.  Your next point.

**MS. WANG:**  I'm looking at the next line.

Next line is the length of time the child resided outside the state.  You find he has been absent for a significant length of time.  While, yes, but these delays have been caused by you.  You refused to order interim visitation.

Since I've been out of custody, a long time ago in July 2024, you failed to order of visitation on August 1st; and then again after the Court of Appeals gave you permission to November 15th, 2024, failed to do so on January 23, 2024, at the trial setting conference, March 17th, 2024, the hearings for 5/15/2025 -- Oh, misstate.  I'm so sorry.

You failed to order visitation.  These delays were caused by you.  Refusing to order visitation on 8/1/2024, 11/15/2024, 1/23/2025, 3/17/2025, 5/15/2025, 6/12/2025, and of course, today, 7/15/2025.

So, he had a significant length of time were due to you vacating trials that would have already scheduled and evidentiary hearings that were already scheduled, and a refusal to actually order the visitation you yourself ordered the 5/2/2024 move-away order as well as the 5/9 amended move-away order.

The distance between the Court -- again, you said the Court finds the distance between California and Denmark significant; however, Mother is currently under house arrest in Utah or is already in custody due to criminal charges.

Well, I'm not in custody.  This factual statement is changed.  Mother is unable to travel to either California or Denmark in any event, and would need to participate in either proceedings remote.

Denmark does not allow for remote proceedings.  You're aware that you have been in contact with the Danish judge. I want the Court to put a record of that in the docket.

The degree of hardship.  So, this part I also object to.  It says, Father works full-time in Denmark and is financially supporting the child with his income with no assistance from Mother.

Again, I cannot provide assistance if Mr. Thygesen has never filed for child support.  This has been repeated numerous times.  He's the one who has not filed for child support.  He certainly can, but he refuses to do so.  So, that should not fall on me and be blamed on me because of him not filing for child support.

And requiring the Father to litigate custody and visitation motions brought by Mother in California would disrupt his employment, interrupt his ability to financially provide for the child.

You have -- there's been no evidence whatsoever for you to conclude -- to make this conclusion.  It is just pure speculation, and Mr. Thygesen is the one who brought this entire case.  That was verified again in a recent Court Of Appeal that it is him that has brought this action back in February 2019.

So, for to you to say that you defer to him to litigate the very motion for custody and visitation that Mr. Thygesen brought in San Francisco is ridiculous and biased.

And not only that, Mr. Thygesen does have ability to travel for multi-day evidentiary hearings in San Francisco. He traveled in March, when he testified against me in person, traveling from Denmark for a five-day preliminary hearing which is a part of this record from March 6th --

approximately, March 6, 2025 to March 11th, 2025.

He was available to testify physically in person every day.  He had also made assertions that he will be available to testify against me in the federal criminal case in Utah in August of 2025.

So, none of this appears to interrupt his ability to -- or disrupt his employment.  So, for you to conclude this without him providing any admissible evidence, I -- it's ridiculous and -- because he's the one who brought this initial motion for custody and visitation.

Also, I object that you would describe this as a burden on Mr. Thygesen when you are the one who ordered the visitation as part of your move-away order.  You can't blame me for asking you to enforce your own order when Thygesen fails and refuses to abide by that order.  Okay?

And the nature and location of the evidence required to resolve.  You put everything is over there in Denmark.  I object because Mr. Thygesen provided a list of unidentified anonymous witnesses.

He did identify the witnesses that lived in California as part of his 1/13/2025 request for evidentiary hearing interim visitation, which you granted him.  So, I -- he cannot say that there's more witnesses in Denmark when they're unidentified an d there's no verification.

Hold on one second.

The evidentiary hearing is scheduled for September.  There is no trial scheduled in Denmark.  What Mr. Thygesen said is a lie.  There's a hearing scheduled in October, but

it's not a trial.  So, there's no trial scheduled, period, over there, and there is an evidentiary scheduled in August in this court that you vacated for no reason whatsoever; and there's one scheduled for September, which you are, again, going to vacate.  So, absolutely, Denmark will not be deciding this is case more expediently than this case.

Also, the evidence -- you know, Mr. Thygesen is attempting to use the -- his allegations of cyber stalking as a reason why he should have custody, among other reasons, or limited visitation, whatever that is.

The DV -- all the DV that he alleges certainly happened either in California or within the United States.  In Denmark, they stalking laws that were enacted in 2022.  It is uncertain if cyber stalking is even considered a crime in Denmark.  Denmark did enact cyber stalking laws in 2022, when California had implemented stalking laws since 1999 -- or 1990.  So, definitely, with criminal proceedings happening in the U.S., the United States is in a better position to hear the facts of this case.

No stay is warranted because a stay under 3477 is only because for the other party to commence proceedings in Denmark.  Since, they've already been commenced, this is a permanent ruling that terminates California jurisdiction.  You cannot have it downplayed as final decision by disguising it as a stay to prevent on appeal.

That's is all.  And the rest are included within the arguments I've already made and in my objections I filed which I just read to you on the record.

THE COURT:  All right.

Mr. Thygesen?

MR. THYGESEN:  Your Honor, I agree in full with the tentative; and from what I heard, I'm assuming Ms. Wang is referencing something not really looking at that; but from just hearing it, I'm not hearing any merit.

My only point was a minor edit to Paragraph 4A-9.  Let me know when you're looking at it.

THE COURT:  I'm looking at it.

MR. THYGESEN:  Following this sentence where it goes through to the history and says, it was thereafter reinstated as therapeutic supervised visitation.  I would ask the history go on to say that the last ordered visitation occurred on May 17th, 2024, and that the Court denied ordering any further visitation pending a long cause hearing which had been scheduled for September 2025.  And then the rest of the paragraph go on as is.

Other than that, I have no comment other than general --

MS. WANG:  I object to that --

MR. THYGESEN:  -- disagreements.  I would defer to the Court if you have any direction of points you would like me to discuss.

MS. WANG:  I do object to Mr. Thygesen's because, again, the reasoning for asking for an evidentiary hearing for interim visitation back in January of 2023, first of all, that was unnoticed; and it was again, based on Mr. Thygesen's motion.

Linda S. Heras, CSR No. 13286

He listed out all of these expert witnesses, which you refused to grant attorney's fees for, and he recently said he's not going to use any of those experts; therefore, he has provided absolutely no evidence from when you ordered visitation to happen internationally; therefore, that is not valid for the reasoning that he changed his complete list of expert witnesses and witnesses for that reason.

So, you can't say, oh, I'm going to designate 10 expert witnesses, which he did in his 1/13/2025, request for interim visitation hearing -- evidentiary hearing, which you granted, and now you're vacating, again, that you refuse to advance.  So, you deliberately time the trial has resided out of this state.

The reasoning for my interim visitation is no longer valid because he himself testified under penalty of perjury at the 6/12/2025 hearing that he is no longer using any of those expert witness and witnesses he declared in 1/13/2025 with the request for the 217 hearing.  So, he cannot bring up those same reasons again.

**THE COURT:**  All right.

**MS. WANG:**  He made it clear that you made the May 2nd -- May 9th order for visitation and that just never happened because the evidentiary hearing never happened.

I will agree to the May 17, 2025 claim that that was the last recorded Rally visit.  I'm not going to -- I'm going to totally object to you terminating it later, suspending it because it was based off of no evidence, and it was unnoticed because only an enforcement proceeding was

supposed to go on calendar that day.

Also, I will repeat myself again, using any of the criminal cases, when there isn't a conviction. Just because there's an indictment, indictments are not considered evidence. That is the jury instructions for the federal jury instructions, and it's also in the jury instructions for California CALCRIM.

So, you cannot assume just because someone has been indited is guilty of all of this especially when none of these charges have anything to do with the child. The child is not a victim in any of the cases. This is not a child abuse case.

**THE COURT:** All right. You've stated your objections. You said you had concluded, and now you're rerunning through various issues.

So, anything else? I want to conclude this.

**MS. WANG:** I don't have anything else.

**THE COURT:** The Court is going to take this under submission and I'll issue an order. Talk to you later.

**MS. WANG:** Okay. Thank you.

**MR. THYGESEN:** Thank you, Your Honor.

(Whereupon, the hearing concluded at

9:46 a.m.)

---oOo---

Linda S. Heras, CSR No. 13286

16

State of California                    )
                                       )
City and County of San Francisco)


        I, Linda S. Heras, Official Reporter for the

Superior Court of the State of California, City and County

of San Francisco, do hereby certify:

        That I was present at the time of the above

proceedings;

        That I took down in machine shorthand notes of all

proceedings had and testimony given;

        That I thereafter transcribed said shorthand notes with

the aid of a computer;

        That the above and foregoing is a full, true, and

correct transcription of said shorthand notes, and a full,

true, and correct transcript of all proceedings had and

testimony taken;

        That I am not a party to the action or related to a

party or counsel;

        That I have no financial or other interest in the

outcome of the action.


        Date:  September 4, 2025



        _____

        Linda S. Heras, CSR No. 13298

| Exhibit BB | Consolidated Timeline of Legal Events — Civil and Criminal (Pages 1–2, 2018–2019) |
| --- | --- |
| **Document** | Consolidated Timeline of Legal Events — Civil and Criminal, Pages 1–2 (2018–2019) entries). Multi-column chronological exhibit prepared and filed by C.T. in Danish family court proceedings to oppose Wang's request for Danish visitation orders and to support C.T.'s inconvenient forum arguments before Judge Roeca. |
| **CT's 6/12/25 Sworn Disclaimer (Exhibit Z)** | At the June 12, 2025 hearing before Judge Roeca, C.T. was asked directly whether he planned to introduce the Kill Baby K post at the long-cause trial. C.T. answered under oath: "That's not my expectation." Wang then asked the Court to confirm that constituted a finding of irrelevance. Judge Roeca confirmed on the record: "That's correct." The Court then told Wang: "You'll have your ability to cite to this." That statement was an explicit judicial invitation for Wang to hold C.T. to his sworn representation in any subsequent proceeding. |
| **CT's Re-Allegation in Denmark (This Document)** | Notwithstanding his sworn disclaimer to Judge Roeca on June 12, 2025, C.T. filed the Consolidated Timeline in Danish proceedings in which he once again attributes the March 6, 2019 Kill Baby K post to Wang. Under the March 6, 2019 entry, the Timeline states: "After the court meeting is concluded, a new post is discovered on the website HolySmoke.org. This post is signed by 'Kailin Wang'..." — presented as Wang's act without qualification, without hedging, and without any reference to the six-year forensic record that never attributed the post to her. This is the fourth documented forum in which C.T. has invoked the Kill Baby K post to obtain custody or visitation advantages (2019 TRO; 2022 DVRO; 2023–2025 California motions; 2025 Danish proceedings), and the first in which he did so after swearing before a U.S. court that the post was irrelevant to the case. |
| **Denmark's Evidentiary Framework: The Principle of Free Assessment** | Denmark's civil procedure is governed by the Danish Administration of Justice Act (Retsplejeloven). Under Section 3.1 of the Lex Localis treatise on Danish civil evidence law (Waage & Herborn, Evidence in Civil Law — Denmark, 2015), Danish courts operate under a principle of free assessment of evidence. This principle is defined as the opposite of statutory assessment — a system where courts are bound by mandatory legislation in their judgment. In Denmark, no such binding rules exist. The court evaluates the trustworthiness of evidence based on the general impression it makes in court, without being bound by specific evidentiary rules. Crucially, as Waage & Herborn state at Section 4: "No formal rules of evidence exist and no 'minimum standard of proof' exists before a fact can be established." Danish law provides no enumerated list of evidentiary means, and the numerus clausus principle (which would restrict allowable evidence types) does not apply. |
| **Denmark's Evidentiary Framework: Electronic Documents and Authentication** | Unlike California's Evidence Code ŧ 1401, which requires a proponent to authenticate a document before it may be admitted, Danish law imposes no authentication prerequisite. Waage & Herborn explain at Section 4.6 that all forms of electronic documents can in principle be used as evidence in court, and that no general proof rules govern evaluation of electronic evidence by a Danish court. Authentication goes only to weight: "The authenticity of a document will obviously be of importance in the courts evaluation of evidence." But there is no threshold bar. Further, under Section 4.7, there is no requirement that a document be in original form — copies are generally sufficient. There is no Danish analog to Cal. Evid. Code ŧ 1562 (business records certification) or the Cloudflare custodian-of-records declaration requirement that Wang identified as the admissibility barrier at the 9/21/23 hearing (Exhibit M) and the 6/12/25 hearing (Exhibit Z). A Holysmoke.org printout that would be |

| | |
|---|---|
| | excluded in California for lack of foundation can be submitted to a Danish court and weighed by the judge. |
| **Denmark's Evidentiary Framework: Unlawfully Obtained Evidence** | The contrast with U.S. common law is sharpest on unlawfully obtained evidence. Waage & Herborn document at Section 7.1 that Danish procedural literature has stated that in both civil and criminal cases, use of evidence may be justified "even if there is doubt about the validity of evidence and even if evidence has been taken by means that are dubious or illegal." The Danish permanent advisory board on civil procedure (Retsplejerådet) confirmed this view in a 1972 announcement. The general position in Danish law is that no rule in civil procedure forbids illegally obtained evidence, and such evidence may under some circumstances be produced. This is the direct inverse of the California exclusionary framework that resulted in the Kill Baby K evidence being denied discovery consideration throughout this litigation. |
| **Denmark's Evidentiary Framework: Formal vs. Material Truth** | Waage & Herborn explain at Section 3.2 a distinction fundamental to understanding why the Kill Baby K allegation is more dangerous in Denmark than in California. Danish civil procedure is governed by the principle of formal truth — which means the court will establish as fact something the parties have agreed upon, even if the court knows it is not true. The principle of material truth (which would require truth-seeking) applies only in narrow categories such as paternity determination. Danish civil procedure, the authors state, "does not operate with a guarantee of truth-seeking." In the context of this case, if C.T. presents the Kill Baby K post as Wang's act and Wang is not present or not heard, a Danish court may simply accept it as formally established. |
| **Denmark's Evidentiary Framework: Prior Judgments as Evidence** | Waage & Herborn note at Section 4.2 that prior judicial and administrative decisions are treated as evidence in Danish proceedings. A judgment from another court, where evidence was taken under similar conditions, may be regarded as established fact. However, the authors also note that Danish civil precedent does not bind subsequent courts in the manner of Common Law countries. This creates a selective risk: C.T. can present the California criminal proceedings as evidentiary background — including the indictment and the DVRO — while the six-year forensic record showing that the Kill Baby K post was never attributed to Wang may be treated as merely one competing piece of evidence, weighted at the Danish court's discretion. There is no mechanism in Danish civil procedure equivalent to issue preclusion or collateral estoppel under U.S. law that would bind the Danish court to prior California findings. |
| **The Judicial Admission and Forum-Shopping Pattern** | Under California law, C.T.'s June 12, 2025 statement to Judge Roeca constitutes a judicial admission — a formal act in judicial proceedings that dispenses with proof of the admitted fact. (Witkin, Cal. Evidence (5th ed.) ŧ 309.) The Court's on-the-record confirmation and explicit statement that Wang could cite the disclaimer in future proceedings makes C.T.'s reversal in Denmark particularly significant. C.T. told the California court the post was irrelevant because California's evidentiary standards would require proof of authorship he could not provide. He then re-alleged it in Denmark because Danish courts, operating without authentication requirements or formal exclusionary rules, will receive the allegation and weigh it without those procedural protections. The pattern across six years is consistent: the Kill Baby K post appears in every forum where Wang cannot compel forensic accountability for it, and disappears in every forum where she can. |

---

**SIGNIFICANCE TO PSR OBJECTION**

This Exhibit documents the most direct evidence of deliberate forum manipulation in the record. On June 12, 2025, under oath, after six years of California litigation over the Kill Baby K post, C.T. told Judge Roeca the post

was not his expectation to introduce — and the court confirmed on the record that it was irrelevant to trial, then explicitly told Wang she could cite that in future proceedings. C.T. then filed, in Danish proceedings that apply no authentication requirements and no formal exclusionary rules (Waage & Herborn, Evidence in Civil Law — Denmark, 2015, ₢ 3.1, 4, 7.1), a timeline presenting the Kill Baby K post as Wang's act without qualification. The strategic logic is transparent and documented: in California, where the evidence was subject to Cal. Evid. Code ₢ 1401 authentication, Cloudflare custodian certification, and adversarial forensic scrutiny, the post could not survive. In Denmark, where the principle of free assessment of evidence governs, no minimum standard of proof exists before a fact can be established, and copies of electronic documents are admitted without foundation, the same allegation faces no procedural barrier. C.T.'s own position confirms the pattern: the post is irrelevant whenever Wang can compel forensic accountability for it, and is re-alleged whenever she cannot. The PSR's reliance on this post as an established adverse fact against Wang — without acknowledging that the only court to formally address its relevance found it irrelevant, and that the one party with standing to introduce it disclaimed intent under oath — incorporates into the federal sentencing record exactly the evidentiary irregularity that this Appendix documents.

VTs

<u>Consolidated timeline of legal events - civil and criminal</u>

Page 1

| DATE | California Family Law | New York Family Law | Utah Family Law | California Criminal Law | Utah Criminal Law | Federal Criminal Law |
|---|---|---|---|---|---|---|
| December 2018 through January 2019 | Los Angeles Family Court (18CWCS16140) - Paternity and child support cases<br><br>KW files a paternity and child support case, naming CT as the father and "Colin T. Jones" as another potential father.<br><br>December 20: CT goes to court in San Francisco to be served voluntarily so the case can begin. January 3: CT files his response with a request for DNA testing to establish paternity.<br>January 31: The infant is tested in Los Angeles; CT is tested in San Jose, California. | | Utah Office of Vital Records and Statistics - December 6: A birth certificate is issued to KW. According to the certificate, the child's name is "Kayson Thygesen Wang", date of birth is November 26, 2019, KW is the mother, and KW's residence is "Los Angeles, California". No father is listed. | | | |
| February 8 2019 | | | | CT seeks help from the police due to KW's communication under alias accounts about the infant's condition, including a direct Instagram message to CT's younger sister on February 7, which states: "Maybe you'll get to c ur Nephew at the hospital one day. As he is sick and on Welfare." This results in the San Francisco Police Department initiating criminal case 19016407 in California. In the following months, many further direct communications and online posts follow about the infant's safety and life. On October 17, 2019, the San Francisco District Attorney's Office files charges against KW.<br><br>Note: California law gives the defendant the right to a preliminary examination of the basis for the charges filed ("preliminary hearing") within 10 court days. If the defendant requests it, the prosecution must be able to demonstrate that the basis for suspicion for the indictment is present. The prosecution must be able to prove that there is "probable cause" that a crime has been committed and that the crime was committed by the defendant. When the prosecution filed charges against KW on October 17, 2019, it was after an extensive investigation, where the police, based on 16 orders for addition (see list below) had collected evidence in the form of IP addresses, email addresses and related information about the internet provider's subscription. This evidence showed that it was KW who had written directly to CT and his immediate family and also made online posts - all containing threats to the infant's welfare. KW waived her right to a preliminary examination of the basis for the charges filed ("preliminary hearing"). On August 15, 2022 and August 23, 2022 and evidence obtained on the basis of the orders removed from the case. KW's motion was rejected on July 11, 2023, where the court (Judge Quinn) found that KW's behavior constituted "a sustained and ongoing course of harassing conduct against Thygesen that involved threats to his son's welfare and was apparently designed to put him in fear for his son's safety." The issued orders and the San Francisco Police's chronological investigation report are attached to KW's motion to exclude the evidence:<br><br>1. March 8, 2019: Order against Holysmoke (KW's motion to exclude Exh. P)<br>2. March 8, 2019: Order against Medium (KW's motion to exclude Exh. N)<br>3. March 8, 2019: Order against Google (No. 1) (KW's motion to exclude Exh. O)<br>4. March 14, 2019: Order against Facebook/Instagram (No. 1) (KW's motion to exclude Exh. R) March 14, 2019: Order against Metro PCS/T-Mobile (KW's motion<br>5. to exclude Exh. Q) April 2, 2019: Order against Deadbeatsexposed (KW's motion to<br>6. exclude Exh. S) April 17, 2019: Order against Comcast (KW's motion to exclude<br>7. Exh. T) April 17, 2019: Order against Stealth (KW's motion to exclude Exh. V) April<br>8. 17, 2019: Order against CenturyLink (KW's motion to exclude Exh. X)<br>9.<br>10. April 17, 2019: Order against Charter (KW's motion to exclude Exh. Z)<br>11. May 16, 2019: Order against Google (No. 2) (KW's motion to exclude Exh. AA)<br>12. May 16, 2019: Order against Facebook/Instagram (No. 2) (KW's motion to exclude Exh. EE)<br>13. August 23, 2019: Order against Google (No. 3) (KW's motion to exclude Exh. BB)<br>14. October 9, 2019: Order against Adhoc Labs (KW's motion to exclude Exh. CC)<br>15. October 16, 2019: Order against Lexington Hotel (KW's motion to exclude Exh. W)<br>16. October 16, 2019: Order against Experian (KW's motion to exclude Exh. DD) | | |

Consolidated Timeline of Legal Events - Civil and Criminal

Page 2

| DATE | California Family Law | New York Family Law | Utah Family Law | California Criminal Law | Utah Criminal Law | Federal Criminal Law |
|---|---|---|---|---|---|---|
| February 11 2019 | Los Angeles Family Court (18CWCS16140) DNA test results show that CT is the father. | | | | | |
| February 15 2019 | San Francisco Family Court (FDV19814465) CT requests a restraining order due to "Domestic violence" ("DVRO") and a decision on custody. With the request, CT submits a statement with documentation of KW's threats to the child's safety.  The court (Commissioner Wightman) issues a temporary restraining order ("DV-TRO") with notice of a hearing on March 6. | | | | | |
| February 19 2019 | | New York City Family Court (Case Number P-02059-19) KW files a case for paternity and child support. KW does not report her case in Los Angeles on the same subject. New York Family Court schedules the case for action on March 26. | | | | |
| February 19 2019 | | New York City Family Court (Case Number O-02057-19) KW submits her first of three separate requests for restraining orders against CT. KW's request for a restraining order is rejected pending the court meeting on March 26. | | | | |
| March 5, 2019 | | New York City Family Court (Case Number O-2784-19) KW submits her second of three separate requests for restraining orders against CT. This request is also rejected pending the court meeting on March 26. | | | | |
| March 6, 2019 | San Francisco Family Court (FDV19814465) March 4:        CT submits a supplementary statement that includes KW's behavior since CT's original statement of 15.  February. The supplementary statement contains an overview of 142 internet posts and 77 direct contacts. The material contains repeated threats that the minor child in KW's custody is sick, starving or dead, as well as grotesque color images of beheaded and dismembered infants.  The statement contains documentation in the form of sworn statements ("affidavits") from the authorities in Utah, which shows that the authorities have made several unsuccessful attempts to personally serve the temporary restraining order and the summons to the court meeting on March 6 for KW in homes owned by KW's parents (including their property at 2481 Fairway Drive, Spanish Fork, Utah). There is also corresponding documentation that service has been attempted at an address in New York City that KW had provided to CT's lawyer (9 West 70th Street, Apartment 4R, New York, New York). For the court meeting on March 6 the court (Commissioner Darwin) notes that KW briefly participated  by telephone during the court meeting, and that "she is clearly aware that this is happening" (Transcription on page 20). Nevertheless, the court is prevented from issuing a permanent DVRO, as personal service is a requirement under the law. The court issues a revised DV-TRO and postpones the court meeting on the permanent DVRO to April 10 because "KW has deliberately evaded service of process of this Court's DV-100 Temporary Domestic Violence Restraining Order issued and filed on 2/15/2019'  Regarding the issue of custody, the court finds during the court meeting that California has jurisdiction as "home state". The court makes a decision on temporary physical and legal sole custody to CT and no contact to KW. The court finds that KW poses a risk of abduction and orders measures to prevent this, including ordering KW to "turn in and not apply for []: BIRTH CERTIFICATE, PASSPORTS, ANY OTHER IDENTIFYING DOCUMENTS."  Note: After the court meeting is concluded, a new post is discovered on the website HolySmoke.org. This post is signed by "Kailin Wang" and says "I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!" This post is immediately reported to the police in several states. The California court is informed of this post in CT's statement of April 5 to the hearing on April 10. | | Spanish Fork Police, Utah  The police are notified of the ruling from the family court in San Francisco and of the new post. The police in Utah conduct a traffic stop of KW's mother, Yinjing (also known as "Jan") Cheng. The police observe a child seat in Cheng's car. Cheng tells the police that she does not know where KW and the baby are, and that she does not know how she can | | | |

 *BLOG*

IP intelligence

# How accurate is IP geolocation?

by Luna · 14 min read
Published on July 1, 2021
Last updated February 2, 2026





With more than two decades in the business of IP geolocation, we spend a lot of time thinking about accuracy, but, as with all things big data, a simple question ("How accurate is IP geolocation?") usually has a complex answer. In this post, we'll talk about some common assumptions about how IP geolocation works and contextualize those assumptions in light of the structure of the internet and the distribution of the IP space across geographical regions. In light of these considerations, we'll develop a deeper understanding of the constraints and opportunities for IP geolocation.

## Is IP geolocation about a pin on a map?

When we start thinking about IP geolocation, we might imagine a process of pinpointing, with some accuracy, the location of an end-user on the internet. On some level, it makes sense that we would think it this way because a lot of applications of IP geolocation are based on the user's true location in the world. There's often a lot riding on your ability to locate the user with

Ask me anything...

confidence. Targeting your content to users accurately can mean a significant increase in revenue, less friction for your customers, and in some cases the preservation of lucrative licenses and business relationships. Whether you're localizing content, implementing geofencing, or gathering data for security and analytics, you start with an IP address and hope for something like the latitude and longitude of the end-user.



*All of our IP geolocation data comes with an accuracy radius field. The actual geolocation of the IP address is likely within the circle with its center at the geolocation coordinates and a radius equal to the accuracy radius field. While the pin on the map might lead us to think that the IP address is close to the center of this circle, in reality we're defining a region in which the IP address is very likely to be.*

Our data does a good job of estimating the approximate location of IP addresses (see the accuracy for our GeoIP City database). But if you use any of our geolocation or fraud prevention products you've probably already seen the caveat we post throughout our documentation, that our data is never precise enough to locate the street address of a particular household. If you start with the premise of finding an end-user's location, you might wonder why we repeat this disclaimer so often. Will we be able to improve GeoIP data so that, one day, we can locate street addresses? Do we already have a method to produce that kind of data, but withhold it for legal and ethical reasons?

While it *is* possible to map some IP addresses to street addresses, one of the major constraints on the accuracy of IP geolocation has to do with the infrastructure of the internet itself and the nature of IP addresses.

## Understanding IP addresses

There are tools to find your IP address all over the web, including on our website. The phrase "your IP address" might lead you to believe that the IP address being located is really yours in the same way that a street address is yours. You may imagine that when you sign up for internet service, your ISP assigns you an IP address, and this IP address is your gateway to the internet until you move, or switch ISPs. This assumption may be reinforced if you infrequently check your IP address using one of these tools and notice that the address seems to remain the same. People often extend this assumption from the IP address of their personal computer to all kinds of devices that communicate online, from smart TVs to phones, leading them to imagine a relatively stable structure of IP addresses communicating across the web—but the reality is that IP addresses are far more mutable than this assumption would lead you to believe.

Both IP addresses used to serve content and receive it vary greatly, in terms of how frequently they may move location, who may be using them, and whether they are directly associated with the end-user or organization doing the communicating.

## Content server IP addresses

When we dig just beneath the surface of the internet, the variability of IP addresses becomes obvious. People tend to understand this more readily when they think about servers hosting content instead of end-users browsing that content. A lot of people have a basic understanding that websites and applications may be hosted on computers that aren't owned and operated by the organization that develops and maintains the website. We understand that many websites from different organizations may be hosted from the same data center server.

Whenever you go to a website, your device makes a DNS request, essentially asking "What IP address should I access for the content at this domain name?" It isn't surprising that the IP address returned is the same for multiple domain names. Many of us know about name-based virtual hosting, for example, which allows content for multiple different domain names to be served from a single IP address. If you aren't familiar with this terminology, Wikipedia has a good overview, but even if you're not familiar with the phrase you may have used this technology. If you've ever set up a simple web hosting solution, you probably had to enter an IP address from your web hosting server into the domain name server where you purchased your domain. In this case, you may host more than one website on a single server, providing the same IP address for multiple domain names.



*A web server may host several very different sites or apps behind a single IP address.*

On a grander scale, content delivery networks (CDNs) like Cloudflare serve a high volume of domain names from a small set of IP addresses. These IP addresses point to "edge servers" that cache content and provide increased security, acting as intermediaries between the end-user who is requesting content, and the origin server (with its own, distinct IP address) that hosts it. CDNs may add, move, or change the edge servers that provide content to end-users, and as they do so the IP address associated with a website can change as well. If you want to learn more, software developer Nicholas C. Zakas has a great overview of CDNs.





*In a content delivery network, the end-user communicates with an edge server, which in turn communicates with many origin servers that host content. In these cases, the end-user knows the IP address of the edge server, but not the actual origin server that hosts the website or application they're trying to access.*

In all of these cases, the end-user never needs to know the IP address of the origin server providing them with content. Even if the origin server that hosts the content of a website has a single, fixed geolocation, the end-user would have no way of knowing that location based on the IP address they were communicating with.

## Residential and business IP addresses

It's easy to understand why a content server's IP address would change or would be linked to a device in a different location from where the content was hosted and maintained. What about end-users? One of the first things that may come to mind when we ask this question are VPNs (virtual private networks).

### VPNs and other proxies

Almost anyone can sign up for an account with a VPN, allowing end-users to route their outgoing requests through an anonymizing network of intermediary servers. These servers function similarly to the edge-servers of CDNs discussed above. The end-user's requests are routed to a server, often located

in a data center or hosting facility. That server relays the end-user's request for content, and the website or application that receives the request only sees the IP address associated with the server.

In spite of their sometimes questionable reputation, people use VPNs for any number of reasons. Due to effective advertising and media coverage, VPNs have entered the consciousness of a broader section of the general public and VPN usage continues to see an upward trend. It's true that fraudsters and digital pirates may use VPNs, but privacy-conscious end-users may also use a VPN to protect their identity from casual data-gathering, express political dissent, or circumvent censorship.



*When people use an anonymizing proxy, a server makes requests for content on behalf of the end-user. This means that the server's IP address is being used to browse the internet, not the end-user's, and it is not possible to determine the geolocation of the end-user.*

To make matters more complicated, VPNs are only one kind of proxy an end-user might use to browse the internet. As more people work from home, corporate proxies may be used to protect access to sensitive data. Residential proxies, which function like VPNs but use computers and devices on residential internet connections, instead of servers in hosting centers, to route traffic. These residential proxies are becoming more popular, and they're increasingly difficult to detect.

The use of VPNs and other proxies for work or privacy effectively masks the IP address of the end-user so that their true geolocation cannot be accurately determined. Only the IP address of the proxy can be geolocated, and often this isn't what you're looking for at all. You can read more about VPNs and other anonymizers on our blog. We provide solutions for proxy detection through the GeoIP Anonymous IP database, GeoIP web service, and the minFraud Insights and Factors services, but geolocation of the end-user isn't possible.

## Static IPs and multiple users

IP geolocation of end-users is complicated even when a proxy isn't involved. While it may be easy to think of the IP address assigned to us by our ISP as "belonging to us" in the way that a street address belongs to a house, this isn't the case. Many of us have heard of the difference between "static" and "dynamic" IP addresses (if you haven't, there's a good primer on Lifewire). Most residential IP addresses are dynamic, and ISPs reassign these for any number of reasons. ISPs will sometimes offer static IP

addresses as an additional service to their customers, but even in these cases the IP addresses only remain fixed to a particular geolocation as long as the customer continues to subscribe to this service.

To make matters more complicated, ISPs do not always move IP addresses within fixed geographic areas. While some IP addresses remain in a particular region for long durations of time, this can change suddenly due to business, technical, or even automated decisions made by ISPs to help manage their infrastructure. In this way, it's better to think of the distinction between a static and dynamic residential IP address less as a binary and more as a spectrum. The question isn't *whether* an IP is dynamic, it's a question of *how dynamic* it is. At some point its geolocation may be subject to change, even if that's because an end-user moves house and no longer retains the same static IP.



*Internet service providers have a huge portion of the IP space to distribute among their customers. They may change the IP address of an end-user for any number of reasons.*

In addition to reassigning IP addresses, there are a number of circumstances in which an end-user may share an IP address with others. In the same way that name-based virtual hosting allows multiple domain names to be served by a single IP address, ISPs sometimes place multiple end-users behind a single IP address, often in offices, apartment complexes or other spaces where the infrastructure for internet access is more deeply integrated into the construction. As a result, the number of end-users associated with an IP address should also be understood less as a static, knowable quantity, and more as a shifting scale with some IPs being used by very few people, and others being used by a high volume of end-users.

## Mobile and other kinds of end-users

Mobile users present additional challenges to IP geolocation. Cellular ISPs may be even more flexible in the geographic standards by which they assign IP addresses. Even when those IP addresses remain tied to particular coverage areas, the end-user is often, well, mobile—commuting or walking across areas

that could never be reduced to a single street address. When people use the internet on the go, they may also rely on public or paid wifi networks as much as they rely on their cellular data carriers. Android phones even come with a feature that prompts users to connect to public wifi networks via a VPN, and some ISPs offer public wifi hotspots to their subscribers as a perk. Mobile users conscious of their data consumption may jump from network to network, whether as part of a day to day routine or while vacationing. A single device in these cases may jump between an IP address assigned to a cellular region, to one assigned to a cafe, back to their cell network, to a grocery store, back to their cell network, and then to their home wifi network.



*Mobile users may be assigned several different IP addresses as they travel, as they browse using their cellular data plan and public wifi available at a variety of businesses.*

More and more people browse, shop, and even perform sensitive transactions like banking from their smartphones. This means that applications that rely on geolocation data to deliver an efficient, secure customer experience have to reckon with the complications posed by mobile usage. Some applications may attempt to get more precise location data by relying on a device's GPS location permissions, but end-users are increasingly reluctant to grant location access even to applications from well-known businesses. Businesses have to choose whether they want to lose potential customers who are unwilling to grant location permissions or learn how to understand and leverage IP geolocation data as a fallback or alternative.

## The impact of privacy opt-outs on IP addresses

Under a number of laws and regulations (e.g. GDPR and CCPA), individuals may request to opt out of the sale of their personal information which includes IP address data. Although these regulations are generally meant to protect the privacy of individuals, and MaxMind data cannot be used to locate individual people, we honor these data privacy requests in compliance with local and international regulations.

When MaxMind receives a valid opt-out request, we remove the IP address from most of our databases. MaxMind does sell specialized databases (GeoIP Shield) which contain these IP addresses, and which can only be used for specific use cases in which these regulations do not apply—fraud prevention,

compliance, and many security use cases. If you are interested in GeoIP Shield, please contact enterprise@maxmind.com or your MaxMind Customer Success Manager to discuss if this specialized database is suitable for your use case.

An IP address may be missing for reasons other than data privacy requests. An IP address may not be routed on the internet, or MaxMind may exclude some ranges for other reasons. MaxMind is unable to confirm whether an IP is missing due to an opt-out request for privacy reasons.

## Rethinking IP Geolocation Accuracy

The first step in learning how to leverage IP geolocation is understanding the nature of IP addresses and the underlying infrastructure that connects them. We need to set aside our basic preconceptions of the internet as a highly-ordered grid of stable routes and end-points. Even in the case of a straightforward request from an end-user without a VPN to a content host, a complicated relay may ensue. The end-user may share an IP address with several other users, or they may be switching between IP addresses as they travel, and the content host may be serving its resources from a shared origin server that hosts many sites to an edge-server in a CDN. This relay of requests introduces complexity into the question of, "Where on Earth is this IP address located?"

Complexity doesn't mean that IP geolocation can't be done, but in order to use it effectively we have to understand its limitations. Geolocation also isn't the only tool in your toolbox when it comes to analyzing IP addresses. In addition to geolocation, MaxMind offers IP intelligence data and tools that can help you to (among other things) contextualize and make better use of geolocation data itself. These tools include things like an accuracy radius that comes in all of our GeoIP City products and services, as well as confidence factors in our GeoIP Enterprise database. Looking beyond raw indicators of accuracy, we provide a diverse array of IP intelligence data through GeoIP products and web services that can be used to help answer the underlying questions that you may be attempting to answer with geolocation—questions like, "What content would be most advantageous to serve this customer?" or "What can I learn about trends in this user's behavior?"

In the coming months we'll dig a little deeper into how we assess the accuracy and confidence of our GeoIP products. We'll also talk about how we structure our data to be as valuable as possible to our customers, in light of what we know about the structure of the internet. And we'll dive deeper into the concept of IP intelligence, to help you learn how to reshape and expand the questions you're asking about IP addresses to get answers that you can use with confidence.

IP geolocation accuracy      IP network data



## Luna •

Luna is the Senior Product Manager taking MaxMind's GeoIP product line to new and exciting places. They helped to develop GeoIP Exchange, a free platform between network operators and MaxMind to ensure closer collaboration and the most accurate geolocation of partner networks. Before MaxMind, they co-founded an experimental private high school in Durham.

--------------------------------------

## Never miss out

Get notified whenever a new article is posted.

First name*

| Products | Resources |
|---|---|
| minFraud services | Knowledge base |
| GeoIP web services | GeoIP demo |
| GeoIP databases | ✅ System Status |
| GeoIP Anonymous IP database | Submit a data correction |
| GeoIP Enterprise database | ✕ Your privacy choices |
| GeoLite free geolocation data | Notice of collection |

| Developers | About us |
|---|---|
| Developer portal | Our story |
| Affiliate program | Why choose MaxMind |
| | Working at MaxMind |
| | Commitment to security |
| | Contact us |

© 2026 MaxMind, Inc. MaxMind, GeoIP, minFraud, and related trademarks belong to MaxMind, Inc.

Terms of Use  |  Privacy Policy