*Democracy Dies in Darkness*

**Local Crime & Public Safety**

# Misconduct hearing underway for prosecutor in anti-Trump-protest cases

Jennifer Kerkhoff Muyskens faces a range of penalties including disbarment if the panel finds she engaged in professional misconduct while prosecuting defendants arrested the day of the 2017 inauguration.

Updated today at 5:19 p.m. EDT

🎧 6 min

  By Keith L. Alexander

A federal prosecutor accused of manipulating evidence alongside a D.C. police detective in an apparent attempt to convict anti-Trump demonstrators of rioting in the nation's capital was overwhelmed by an avalanche of cases brought over widespread disruption pegged to Donald Trump's 2017 inauguration, her lawyers said Tuesday.

In the opening day of her misconduct case tried by prosecutors with D.C.'s Office of Disciplinary Counsel, defense lawyers for Jennifer Kerkhoff Muyskens painted a picture of an office in disarray as she sought to lead the prosecution of more than 200 cases stemming from mass arrests made over several chaotic hours in the District.

Trump supporters and protesters clashed throughout the day at several locations, with demonstrations escalating into rioting that authorities estimate caused about $100,000 in property damage across 16 blocks downtown. But the sweeping arrests yielded fewer than two dozen convictions. Prosecutors allege that as the cases fell apart, Kerkhoff Muyskens withheld evidence from defense attorneys, worked with veteran D.C. police officer Gregg Pemberton to edit videos of people planning the protests, and later misrepresented the matter to D.C. Superior Court judges.

Kerkhoff Muyskens's defenders denied she manipulated the videos or failed to hand over evidence. But what they largely characterized as mishaps stemming from overwork and overreliance on the guidance of supervisors, prosecutors on Tuesday cast as a deliberate effort to alter material that was central to the government's case against the demonstrators.

The excised video showed organizers discussing nonviolence, according to court filings, which defense lawyers could have used to undercut claims that protesters conspired to foment unrest as Trump was sworn in as president. Prosecutors also allege Kerkhoff Muyskens initially hid that the material came from Project Veritas, a conservative activist group that uses secret recordings to target the mainstream news media and left-leaning groups.

"She understood Project Veritas's bias and decided then to conceal Veritas's involvement," the panel's lead prosecutor, Sean O'Brien, told the three-person disciplinary hearing panel during his opening statements. "She made repeated false statements and intentionally suppressed information, which is evidence of her guilt. She made a conscious decision not to disclose."

The cases fell apart. Just 21 defendants pleaded guilty before trial, and the D.C. government agreed to pay $1.6 million to settle two lawsuits stemming from the treatment of protesters.

Kerkhoff Muyskens faces a range of penalties, including disbarment, if the panel finds she engaged in professional misconduct. She left the U.S. attorney's office shortly after the cases were resolved after spending 18 years with the office, said one of her attorneys, Adam Hoffinger. She no longer practices law. On Tuesday and Wednesday, she sat among her attorneys, scribbling on a notepad during the proceedings. She is not facing any criminal charges. Her attorneys told the panel she also plans to testify later in the hearings.

Hoffinger in opening statements previewed what the panel is likely to hear: The former prosecutor and her family received death threats, and a deputy U.S. marshal had to escort her to and from her home. She was navigating direction from a judge to be judicious in the volume of material she delivered to defense lawyers so close to trial and guidance from supervisors about what should be disclosed.

"This case was endlessly and hopelessly complicated, with no blueprint or road map with multiple moving parts. The office was grossly understaffed on the case, and all of this was on the shoulder of Mrs. Muyskens," her attorney told the panel.

Pemberton, who worked as the lead detective on the cases, now serves as the head of the D.C. police Union. He was not present at the hearing and did not return requests for comment after the day's proceedings.

The first case dismissals came in 2018, after Superior Court Judge Robert E. Morin determined that Kerkhoff Muyskens and her office misrepresented information and withheld evidence from the defense. During hearings at the time, she repeatedly told the judges and defense attorneys that her office possessed only one video of a protest-planning meeting, secretly recorded by Project Veritas. Morin later issued a ruling saying that he did not believe Kerkhoff Muyskens purposefully withheld evidence.

But days later, the U.S. attorney's office, under then-U.S. Attorney and appointee Jessie K. Liu, acknowledged in an email to defense attorneys that 69 undercover videos or audio recordings existed. Prosecutors then dismissed cases against seven defendants.

Prosecutors are obligated by law to share their evidence with defense lawyers at the earliest possible time, even if that evidence weakens their case. They also must provide information about any potential credibility issues associated with evidence, including information about potential bias of anyone who provides evidence.

The board's first witness, D.C. defense attorney Sara Kropf, who represented one of the protesters who was acquitted, testified how defense attorneys were not initially told that Project Veritas had recorded the videos. Attorneys also did not know that video footage existed of participants discussing at planning meetings how to avoid violence and outlining how to demonstrate peacefully, she said.

"At the time of the trial, we believed no other videos existed," Kropf said. "We did not have the opportunity to examine the government's file. We relied on what the prosecutors said."

Defense attorneys for the hundreds of protesters argued that their clients were peacefully protesting during Trump's first inauguration. But prosecutors and police officers accused some of smashing windows and using "black bloc" tactics — wearing dark clothing and hiding their faces by wearing masks and goggles as they upended downtown D.C. on Jan. 20, 2017.

The disturbance, also called DisruptJ20, included advocates of Black Lives Matter, Trade Justice and the Future is Feminist, among others, O'Brien told the board.

In all, 234 people were charged in connection with the Inauguration Day disturbances. Before trial, 21 individuals pleaded guilty.

The first trial in 2017 resulted in acquittals for all six defendants after jurors said they found no evidence that the six were personally involved in the destruction. Then in 2018 and 2019, prosecutors dismissed the remaining cases.

Alexei Wood, who was acquitted in the first round of trials, sat in the audience at Tuesday's hearing.

"It is very nerve-racking to be here. But I had to come," Wood said. "I wanted to see her face again. She deserves all of this. She tried to ruin our lives."





While Jennifer Kerkhoff Muyskens waits for a D.C. case to proceed, federal court records in Utah show she's withdrawn or been replaced by another attorney in dozens of cases. News4's Ted Oberg reports.

In a court filing this week, one-time D.C. Assistant U.S. Attorney Jennifer Kerkhoff Muyskens denied any wrongdoing while prosecuting hundreds of protesters arrested in D.C. during Donald Trump's 2017 inauguration.

In July, the D.C. Bar's Board of Professional Responsibility alleged Kerkhoff Muyskens hid key video evidence and made false statements about video evidence at least 12 times to judges, defense attorneys and even internal investigators at the Department of Justice.

**Watch News4 now: Stream NBC4 newscasts for free right here, right now.**

The D.C. Bar case could result in her losing her law license, but that could take years.

The D.C. ACLU's Interim Legal Director Michael Perloff called the Kerkhoff Muyskens case "an egregious example of prosecutorial misconduct."

On Jan. 20, 2017, hundreds of protesters took to D.C.'s streets to protest Trump's inauguration. D.C. police mass arrested more than 200 people, and many were later indicted on felony rioting charges.

Alexei Wood, one of the arrested protesters who was acquitted at trial, said Kerkhoff Muyskens, "really had absolutely nothing [at trial]. And she just kept going and going and going and going."

In court, not a single person was convicted, and dozens of cases were eventually dismissed.

In her denial filed Monday, Kerkhoff Muyskens, who is now an assistant U.S. attorney in Utah, acknowledged she was the prosecutor in the protest cases but denied any misconduct, paragraph by paragraph.



Ex-DC prosecutor facing ethics claims is removed from all cases - NBC4 Washington



While she waits for the D.C. case to proceed, federal court records in Utah show she's withdrawn or been replaced by another attorney in dozens of cases that just weeks ago she was prosecuting.

The records don't currently show a single case she's actively working on in Utah. The bulk of the removals came days after the D.C. ethics case was filed and started the same day the I-Team reached out to the U.S. attorney in Utah. That office is not commenting except to confirm she's an employee.

The News4 I-Team found Utah lawyers are paying attention. At least one asked for a delay in sentencing of their client to review the ethics charges against Kerkhoff Muyskens. A judge granted it.

Attorneys in Utah told the I-Team other delay requests may soon follow.

Kerkhoff Muyskens and an attorney linked to her have not returned the I-Team's repeated requests for comment.

*This story was reported by News4 Investigative Reporter Ted Oberg and News4 Investigative Producer Rick Yarborough, and shot by News4 Photojournalist Carlos Olazagasti*





# 5 Defense Lessons From Prosecutors' Recent Evidence Flubs

By **Anden Chow and Jonathan Porter** (August 14, 2024)

With two recent high-profile cases in the headlines involving prosecutors withholding or misrepresenting evidence, it is worth highlighting the takeaways from those cases and what steps white collar defense attorneys can take if they are concerned evidence has been withheld or misrepresented.

This article seeks to highlight those lessons, first by taking a closer look at the two recent cases, and then offering some best practices for white collar defense attorneys to keep in mind.



Anden Chow



Jonathan Porter

### Case One: Alec Baldwin's Dismissed Charges

Alec Baldwin's much-publicized indictment in New Mexico state court over the unfortunate shooting death of a cinematographer on the set of the film "Rust" was upended on July 12, when the trial judge dismissed all charges with prejudice due to the failure of prosecutors to turn over potentially exculpatory evidence.

The prosecutor in New Mexico v. Baldwin was alleged to have withheld from the defense live ammunition evidence that was in the custody of law enforcement.

According to reports, the prosecutor believed that the live ammunition did not match other live rounds found on the movie set, and therefore had no relevance or value in the case. Based on that determination, the prosecutor did not disclose that the live ammunition had been received.

Moreover, law enforcement is alleged to have inventoried the live ammunition evidence in a separate case file, which was done, according to the defense, to avoid the ammunition showing up on an inventory log that would have been discoverable by the defense.

When the defense learned of the ammunition evidence on the second day of trial, defense counsel moved to dismiss the charges,[1] arguing that the prosecution's failure to notify them of the ammunition and logging of the ammunition under a different case file was conduct that was "egregious and require[d] dismissal."

First Judicial District Judge Mary Marlowe Sommer agreed with the defense, stating, "The late discovery of this evidence during trial has impeded the effective use of evidence in such a way that it has impacted the fundamental fairness of the proceedings."

With that, the judge ended the trial against Baldwin and dismissed the charges with prejudice. In recent filings, the prosecutor has argued that the judge "misunderstood the testimony," about the ammunition and should not have thrown the case out.

### Case Two: Inauguration-Protesting Defendants' Cases

During the 2017 inauguration of former President Donald Trump, police in Washington, D.C., arrested more than 200 people accused of destroying property, blocking traffic and

fighting with police.

The local U.S. attorney's office decided to charge all those arrested — even individuals who had not engaged in any violent activity — on a theory that they had all participated a conspiracy to, among other aims, incite a riot.

Prosecuting those 200-plus individuals proved difficult. Only 20 pled guilty. Six were acquitted on all charges in the first trial in December 2017. At the second trial, four defendants were acquitted on some charges and the jury hung on the rest of the charges. The prosecutors ultimately dropped charges against the remaining defendants in mid-2018.

Central to these cases was a video surreptitiously recorded by Project Veritas, a group that infiltrated the protestors' planning meeting. Project Veritas edited their infiltrators' covert footage and provided the edited version of the video to law enforcement.

The prosecutor, Jennifer Kerkhoff Muyskens, allegedly then further edited the video to remove certain portions of the footage that revealed the identity of the infiltrating operative who obtained the covert footage, and produced only the further edited version to the defense (1) without identifying that a Project Veritas operative was the source of the video, and (2) without alerting the defense that it was not producing other portions of the video that revealed the identity of the operative.

Counsel for one of the defendants realized the video had been altered and sought discovery about the video, including the identity of the person filming and whether the government made any edits to the video.

The prosecutor allegedly responded, "I decline to provide you any information about who recorded the meetings or the circumstances under which they were recorded." With that, the prosecutor refused to produce the original files, though she acknowledged that redactions were made to protect the recording operative's identity.

Before trial in U.S. v. Macchio, the defense filed a motion to exclude the video footage on the grounds that the video had been edited in a misleading way.

The Superior Court of the District of Columbia did not rule on the pretrial motions, and during the 2017 trial the prosecutor represented to the court that defense counsel had been provided "the full entirety of those videos" in discovery, though the prosecutor did finally acknowledge that the source of the videos was Project Veritas.

The defendants in that trial were all acquitted.[2]

After investigating the prosecutor's actions, the D.C. Office of Disciplinary Counsel brought charges before the Board on Professional Responsibility on July 15, alleging violations of the rules of professional conduct.

**Best Practices for White Collar Defense Attorneys**

What follows are some — though certainly not all — best practices for white collar defense attorneys to consider if they are concerned evidence is being withheld or misrepresented.

***1. Know your discovery, and think critically about what could be missing.***

The road to the disciplinary review of the prosecutor in the inauguration-protesting defendants' case began with a defense attorney who paid enough attention to video files in the discovery to surmise that portions could be missing.

The road to Baldwin's dismissal began with a defense attorney's careful scrutiny of what physical evidence had been made available for inspection in discovery.

Future defendants' rights to a prosecution that complies with the government's discovery obligations rely on defense attorneys' close attention to detail when it comes to discovery.

To help with that, request that the prosecutor provide a table of contents or index that meaningfully identifies and describes the discovery produced. Some courts' local rules specifically require this, and even when the rules do not, prosecutors have proved willing to do so in some cases.

Though defense lawyers cannot trust that such table of contents or index will be complete or accurate, even an incomplete index can help counsel identify missing evidence.

### 2. Take all reassurances with a grain of salt.

While the people, the state or the U.S. are all referred to as monolithic entities in case captions, the prosecution of cases remains a human endeavor.

Prosecutors, while mostly well-meaning, are not omniscient. They frequently rely on information and representations provided by other parties, including case agents, paralegals and third parties responding to subpoenas. Along the way, details can be missed.

If something does not feel right, do not let mere reassurance from the prosecution deter you from demanding and conducting further diligence, even if it means a delay in proceedings.

In the Baldwin case, law enforcement investigators had decided years earlier that the live ammunition did not match the ammunition that resulted in the shooting death, and filed it away under a different case number.

Based on that decision, prosecutors incorrectly represented that they had turned over all available evidence. That was at odds with information defense counsel had learned through other sources, and so Baldwin's counsel focused its cross-examination of witnesses to establish the truth.

### 3. Make a record.

Ask explicitly if evidence has been destroyed or altered. If the prosecution provides verbal reassurance that the evidence you suspect is missing does not exist, seek to have the representation memorialized in a written communication from the prosecution or in a court transcript.

Defense counsel for the inauguration defendants repeatedly asked the prosecutor to make statements on the record regarding the authenticity of the video evidence turned over.

While it appears that this did not change that prosecutor's approach, the pressure of memorializing the representation will often persuade a prosecutor to double-check their sources and perhaps uncover the information you seek. And, without a record, defendants

are left with a difficult path to remedy improper situations down the road.

### 4. Request and review source data.

In many white collar cases, the data involved in the case is voluminous. There exists a powerful urge to rely solely on seemingly reliable summaries of that data — agent affidavits and charts, expert reports, grand jury presentations — but the answers sought often lie in the source data underlying those summaries.

The defense is entitled to that data, and it should make sure it is included in the discovery. The defense should also ensure that the prosecutor has produced the data in a way that identifies the data's authors and custodians.

Once in possession of source data, defense attorneys should ensure that the metadata supports the prosecution's theory of the evidence. This depends on the nature of the data, but often metadata can be used to check whether the author or custodian is truly who the prosecution claims, and whether the document or data in question was created at a time that fits with the prosecution's theory.

For example, access to the metadata underlying the videos turned over in the case of the inauguration defendants might have showed that the final edit date was after the recording allegedly took place.

### 5. Look at the bigger picture.

If it turns out that certain evidence has been withheld or misrepresented, consider whether it is strategically more effective to move to suppress the evidence in advance of trial, or to save the issue for trial, when it can be used on cross-examination to demonstrate the unreliability of the evidence and investigation.

And this consideration should include what larger implications such deficiencies may have besides just the admissibility of that specific piece of evidence. Further relief may be justified.

For example, were any representations regarding the withheld or misrepresented evidence made to a magistrate judge in seeking approval for legal process to obtain other evidence? Were any representations regarding the withheld or misrepresented evidence made to the grand jury in seeking an indictment?

In communicating concerns to the court, defense counsel should learn from the approach of Baldwin's attorney to frame the issue as one that is not harmless, but rather is tied inextricably to an articulable theory of the case that prejudices the defendant.

Focusing the court's attention on specific representations by the prosecution, and the harm caused, will put the defense in a position to receive the remedy requested.

### Conclusion

In sum, defense attorneys can help protect their clients from evidentiary mishaps — whether intentional or not — by proactively considering the possibility that evidence is missing or misrepresented.

The Baldwin and inauguration-protesting prosecutions show that defense counsel must

remain diligent at all stages of factual development to ensure that defendants are protected against injustice when it comes to evidence provided in discovery.

---

*Anden Chow is a partner at MoloLamken LLP. He previously served as an assistant U.S. attorney in the U.S. Attorney's Office for the Southern District of New York.*

*Jonathan A. Porter is a partner at Husch Blackwell LLP. He previously served as an assistant U.S. attorney in the U.S. Attorney's Office for the Southern District of Georgia.*

*The opinions expressed are those of the author(s) and do not necessarily reflect the views of their employer, its clients, or Portfolio Media Inc., or any of its or their respective affiliates. This article is for general information purposes and is not intended to be and should not be taken as legal advice.*

[1] assets.law360news.com/1857000/1857611/baldwin%20motion%20to%20dismiss.pdf.

[2] See United States v. Macchio et al., 2017 CF2 001183, et seq.

# Anti-Trump Protesters Cleared of Charges After Gov't Caught Withholding 69 Critical Recordings

**COLIN KALMBACHER**  |  May 31st, 2018, 2:53 pm

**387 comments**

SHARE



Government Attorneys Caught Hiding Evidence and Lying | Law & Crime                                    8/26/24, 9:17 PM

☰    ▶ f ♪ ⊙ ⦿    **LAW & CRIME**    WATCH LIVE          ON DEMAND



Ten men and women facing various felonies related to Inauguration Day protests against President **Donald Trump** had charges against them dismissed on Thursday, after unconstitutional and untoward behavior by the prosecution was discovered.

Assistant U.S. Attorney **Jennifer Kerkhoff** and her team appeared to have hid 69 recordings from the defense. Those recordings include 66 videos and three audio samples of the defendants originally made by employees at undercover media outlet Project Veritas.

The recordings reportedly show the defendants discussing methods to de-escalate tense situations and reveal their intent not to initiate violence with anyone else at the protest, a far cry from what the government has alleged in the case. Kerkhoff previously told Judge **Robert Morin** that no recordings existed from the meetings where those 69 recordings were made. In fact, at least 35 of those newly-revealed recordings were made at the meetings in question.

Defense attorney **Andrew Clarke** noted the alleged malfeasance in an overnight filing with the Washington D.C. Superior Court on Wednesday. He wrote:

> The Government has succeeded in misleading over 200 co-defendants, their attorneys, and three Honorable Superior Court Judges to believe there were only seven videos in its possession from Project Veritas. Only by Order of the Court and more recently, its own disclosures, we now know the truth, that the Government withheld 69 additional recordings by Project Veritas and altered others.

Clarke's motion continues, "As the government admitted in its May 30, 2018 email to the Court, many of these videos from the action camp at American University involved discussions of de-escalation tactics. So if [a police officer] did see co-defendants at the action camp, it is disturbing that the government is taking the position that videos showing co-defendants teaching other codefendants how not to engage in violent protest is irrelevant to a case about violent protests."

Advertisement



TRY BEFORE

Such evidence, Clarke noted, is "relevant, material, and exculpatory." While hiding said evidence and performing subterfuge in front of a

federal court to conceal said evidence, Kerkhoff has spent the past several months arguing that the defendants played direct and key roles in an alleged conspiracy to riot.

Judge **Robert Morin** agreed with the defense, saying, "'I do think it's a serious violation."

Kerkhoff originally indicted in excess of 200 journalists and activists on those and related charges. After losing outright in a case against the first six defendants last December, Kerkhoff dropped charges against all but 59 individuals. Some of those individuals are going free on Thursday or soon thereafter. As noted by First Amendment attorney **Chip Gibbons** and others, however, multiple defendants still remain in other cases nominally related to those anti-Trump protests. The impact Wednesday's disclosures will have on those cases is presently unclear.

This isn't the first instance of prosecutorial misbehavior in the present case. Last week, Kerkhoff's team admitted to hiding a 55-minute-long video and purposely misrepresenting edits made to a different video. In sum, the 71 altered or hidden files suggest a wide-ranging conspiracy to conceal potentially exculpatory evidence in order to secure convictions. In federal law, that's known as a Brady violation.

The other Assistant U.S. Attorneys who took part in the government's prosecution of the #J20 journalists and activists are AUSAs **Ahmed Baset** and **Rizwan Qureshi**. *Law&Crime* repeatedly attempted to discuss Thursday's dismissals and the government's bad behavior leading to said dismissals. Neither Qureshi nor Kerkhoff responded to multiple voicemails.

Baset answered his phone but declined to comment on the case, saying, "I cannot take any media inquiries." When further pressed as to whether he personally took part in the apparent evidentiary cover-up, Baset replied, "I cannot answer any questions."

Advertisement



On Baset's request, *Law&Crime* then followed up with the public affairs line for the U.S. Attorney's Office for the District of Columbia. Multiple voicemails were left with that office as well, but no responses were forthcoming at the time of publication.

[image via Joe Raedle/Getty Images]

Follow Colin Kalmbacher on Twitter: @colinkalmbacher

*Have a tip we should know?* tips@lawandcrime.com

---

**Filed Under:**

**Follow Law&Crime:**  ▶ f ♪ ⊚ ⓣ 𝕏 👻 ✺

Tabꞷla Feed

# DOJ LAWYER CHARGED WITH VIOLATING SIX RULES OF PROFESSIONAL CONDUCT: THIS ONE FEELS PERSONAL

AUGUST 7, 2024

**By Sara Kropf**

In late 2017, I represented a client who participated in a protest against the inauguration of Donald Trump in the District of Columbia on January 20, 2017. She was charged with conspiracy to engage in felony rioting, among other things, and faced the potential of decades in prison. The bizarre part is that she did nothing violent that day and the government knew it.

In the "J20" case, the DC U.S. Attorney's Office adopted an incredibly broad theory of criminal liability that tried to hold peaceful protestors (like my client) criminally liable for the acts of a few people in the crowd who destroyed property (like breaking a Starbucks window and setting a limousine on fire). The theory was that if you showed up to the protest dressed all in black, you had joined a conspiracy. The indictment referred to the protestors as the "Black Bloc." According to the indictment, one overt act in furtherance of the conspiracy was that "members of the conspiracy wore black or dark colored clothing . . . to conceal their identities in an effort to prevent law enforcement from being able to identify the individual perpetrators of violence or destruction."

Another overt act was that they "cheered and celebrated the violence and destruction by members of the conspiracy and chanted 'Fuck it up,' 'Fuck Capitalism,' and "Whose streets? Our streets."

(I am not making this up. This was really the theory of the case.)

Search …

302s
Acquittal After Jury Trial
Advice of Counsel Defense
Antitrust
Appeal
Arrest
Attorney client privilege
Bail
Bank fraud
Blackmail/extortion
Brady violations
Bribery
CFTC case
Civil case
Civil forfeiture
Civil Litigation Strategy
Classifiied information
Commercial Bribery
Compliance
Computer fraud
Conflict of interest
Congressional investigation
Conspiracy
Continuing education
Conviction After Jury Trial

The DC USAO charged over 230 people in the case. My client was in the first trial group of six defendants. It was a six-week trial. One of the key pieces of evidence for the government were videos taken by the right wing group Project Veritas of the protest organizing meetings. Although the defense moved to exclude them from evidence, the judge admitted them anyway. She, as so many judges do, believed the prosecutor when the prosecutor insisted that she had met all her *Brady* obligations with respect to the videos.

At the end of our trial, all six defendants were acquitted of every single charge.

## *The Revelation of Brady Violations*

Our acquittals did not stop the USAO from continuing with this ridiculously overbroad prosecution. Things went seriously awry, for the government, however, as the next two trial groups pushed for *Brady* material related to the videos and did an excellent job making their case. Specifically, they uncovered evidence that the versions of the Project Veritas videos that had been shown to the jury in our case had been altered and that the USAO had not disclosed all the videos in DOJ's possession to the defense so we could evaluate how the videos had been altered.

The judge in the second trial dismissed the charges based on this *Brady* violation. And the USAO then dismissed the charges against the remaining defendants. It was a massive black eye for that office—not only because it was, to use a legal term, a stupid prosecution, but because the result was the revelation of serious prosecutorial misconduct.

The lead prosecutor was Jennifer Kerkhoff. She now goes by Jennifer Kerkhoff Muyskens. (I am resisting calling it an "alias.") After the J20 case, she apparently moved to Utah, where she is an AUSA.

Criminal Discovery

Criminal Forfeiture

Criminal Investigation

Deferred Prosecution Agreement

Detention issues

Discovery/Brady

Dismissal of charges in indictment

Disposition

DOJ Policy and Practice

DOJ Statements

Double Jeopardy

Due Diligence

Electronic surveillance

Environmental Crimes

Ethics

Evidence

False Claims Act

False statements

FARA

FBI policy and practice

FCPA

Federal program fraud

Fifth Amendment

First Amendment

Forensic evidence

Fourth Amendment

Gag order

Government contracting fraud

Government Ethics

Grand Jury

Let me say that again: Even though a judge found that she had engaged in what he called a "serious violation" and even though the judge had determined that the prosecutor had misled the court and defense counsel about the undisclosed videos, Ms. Kerkhoff Muyskens **remains a lawyer with the Department of Justice**.

But the case is not over. Not surprisingly, someone (likely more than one person) reported Ms. Kerkhoff Muyskens to the bar. That ethics complaint turned into serious ethics charges against her.

## The Ethics Complaint

It is worth reading the entire ethics 46-page complaint. It contains quite a bit of detail about the undisclosed videos and the statements that Ms. Kerkhoff Muyskens made to the court about them. For example, it quotes her as telling that Court that "she had provided defense counsel with 'the full entirety of those videos from that day.'" (Paragraph 57) And it goes on to allege:

> [Kerkhoff Muyskens] called [MPD Detective] Pemberton in rebuttal and elicited his testimony to "verify the authenticity as well as the accuracy and non-editing" of the Planning Meeting Video and confirm that the defendants "have exactly what we have." Pemberton testified falsely that Project Veritas had produced only the four disclosed video segments of the Planning Meeting Video, and the only editing the government did was to combine the first three video segments into one exhibit to be played at trial. [Kerkhoff Muyskens] and Pemberton did not disclose how they had edited the original videos they received from Project Veritas, nor did they disclose that they had omitted from discovery many other videos Project Veritas videos of DisruptJ20's planning meetings. (Paragraph 59)

I have written before urging judges not to let DOJ lawyers get

| |
|---|
| Grand Jury Subpoena |
| Health care fraud |
| Honest Services |
| Immunity |
| Indictment |
| Insider Trading |
| Internal investigation |
| International Trade Violations |
| Investor fraud |
| Joint Defense Agreements |
| Juries |
| Jury Instructions |
| Jury issues |
| Kickbacks |
| Legal profession |
| Mail Fraud |
| Money Laundering |
| Non-Prosecution Agreement |
| Obstruction |
| OIG investigations |
| Perjury |
| Personal Stories |
| Plea Agreement |
| Policy issues |
| Pre-Trial Motions Practice |
| Proffers |
| Prosecutorial misconduct |
| Public Corruption |
| Research misconduct |

away with *Brady* violations. And the District of Columbia has a somewhat unique rule that effectively makes it an ethics violation not to disclose *Brady* material. Rule 3.8 says:

> The prosecutor in a criminal case shall not . . .
> (e) Intentionally fail to disclose to the defense, upon request and at a time when use by the defense is reasonably feasible, any evidence or information that the prosecutor knows or reasonably should know tends to negate the guilt of the accused or to mitigate the offense, or in connection with sentencing, intentionally fail to disclose to the defense upon request any unprivileged mitigating information known to the prosecutor and not reasonably available to the defense, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal;

In the ethics complaint, Ms. Kerkhoff Muyskens is charged with violating six ethics rules:

> **a. Rule 3.3(a) (Candor to Tribunal)**, by knowingly making false statements, offering false evidence, and failing to correct material false statements to the court;
> **b. Rule 3.4(a), (c), & (d) (Fairness to Opposing Party and Counsel)**, by obstructing the defense's access to evidence and altering or concealing evidence, or assisting another person to do so when she reasonably should have known that the evidence was or may have been subject to discovery; knowingly disobeying the court's direct orders to produce information in the government's possession without openly asserting that no valid obligation existed; and/or failing to make reasonably diligent efforts to comply with the defense's discovery requests;
> **c. Rule 3.8(d) & (e) (Special Responsibilities of a Prosecutor)**, by intentionally avoiding pursuit of evidence and information because it may have damaged the prosecution's case or aided the defense; and by intentionally failing to disclose to the defense, upon request

Resource Guide

Restitution

Reversal

RICO

Search warrant

SEC Investigation

SEC policy and practice

SEC Settlement

Securities fraud

Sentencing

Speedy Trial Act

Statute of Limitations

Stored Communications Act

Subpoenas

Taint teams

Tax fraud

Technology

Top 10 posts

Trade Secrets

Travel Act

Trial preparation

Trial Strategy

Trials

Trump case

Venue

Wire Fraud

Wiretaps

Witness Preparation

Witness tampering

and at a time when use by the defense was reasonably feasible, evidence and information that she knew or reasonably should have known tended to negate the guilt of the accused or mitigate the offense;

d. **Rule 8.4(a)**, by knowingly assisting or inducing another to violate the Rules of Professional Conduct and/or doing so through the acts of another;

e. **Rule 8.4(c) (Dishonesty, Misrepresentation, Deceit, and Fraud)**, by engaging in conduct that involved reckless or intentional dishonesty, misrepresentations, deceit, and fraud, which misled the grand jury, the defense, the court, the government, and disciplinary authorities about the evidence in the government's possession and the government's conduct; and

f. **Rule 8.4(d) (Serious Interference with the Administration of Justice)**, by engaging in conduct that seriously interfered with the administration of justice.

## *Where Was OPR?*

You may be wondering, where was the Office of Professional Conduct (OPR)? After all, the supposed purpose of OPR is to investigate prosecutors who do things like this. According to its website, "OPR's primary mission is to ensure that Department attorneys perform their duties in accordance with the high professional standards expected of the nation's principal law enforcement agency."

Huh. Well. Ok. Not so much.

According to the ethics complaint, Ms. Kerkhoff Muyskens made misrepresentations to OPR during its investigation. So, there was at least an OPR investigation into her. As the ethics complaint alleges:

During the government's investigation into [Kerkhoff Muyskens'] conduct, including the disciplinary investigation conducted by the Office of Professional Responsibility

> (OPR), and during Disciplinary Counsel's investigation, [Kerkhoff Muyskens] repeated her false statements and material omissions about Pemberton's and her responsibility for (a) omitting and editing the original January 8 Spokes Council videos to create the Planning Meeting Video; (b) withholding videos of Action Camp and Spokes Council meetings; (c) suppressing relevant information and evidence; (d) failing to produce complete Jencks material; and (e) making misrepresentations and omissions to the grand jury, the defense, and the court, and failing to correct known misrepresentations to the court. (Paragaph 136)

To be clear, OPR's work is done behind the scenes. It does not make public any of its investigative reports and only brief summaries of findings without the prosecutor's name. I have no issue with not disclosing the prosecutor's name if OPR does not find wrongdoing but it's kind of a weird policy for DOJ not to make public findings of wrongdoing against DOJ lawyers when DOJ literally exists to make public its allegations of wrongdoing against defendants.

For the most part, OPR is a "black box" (not to be confused with a Black Bloc, of course). So we will never know whether OPR found a violation and chose to do nothing about it, whether OPR simply slapped her on the wrist and decided she could stay an AUSA, or whether OPR ignored the whole situation entirely.

There are a few summaries on the OPR website that could be about Ms. Kerkhoff Muyskens. Maybe this one? We'll never know.

## *Everyone &lt;Gritting Teeth&gt; Should be Treated Fairly, Even This Prosecutor*

Of course, Ms. Kerkhoff Muyskens deserves the same presumption of innocence as anyone else in the disciplinary

system. It will be up to Disciplinary Counsel in DC to prove these charges. I hope that Disciplinary Counsel treats her more fairly than she treated my client in the J20 cases. I hop she gets to see the evidence gathered against her in an unaltered format. I hope Disciplinary Counsel doesn't keep evidence from her that she could use to defend herself.

One final note: This ethics complaint made its way around the criminal defense community quite speedily. There were a lot of us involved in this case in some way. No one seemed to be surprised, or unhappy, about this development. For all my criticisms of DOJ, the vast, *vast*, **vast** majority of prosecutors are diligent and honest. I have found the DC USAO to generally have a fair approach to criminal discovery. Perhaps that's what makes this whole saga all the more disappointing.

The site is not intended to be legal advice.

Contacting the firm or reading the materials on this website does not create an attorney-client relationship between you and Kropf Moseley PLLC. If you want to discuss hiring us, please click on the "contact" button above.

No confidential information should be sent over the internet.

© Kropf Moseley PLLC 2024



Cordless Pool Va

Long lasting battery.

☰  🔍  **4 🏅 WASHINGTON**    **LOCAL**    **WEATHER**    …    ● Watch News 24/7

**TRENDING**    🏅 Paris Olympics    🌡 Forecast    🏃 Olympics Schedule    🏈 Commanders …    ✓ 21 WEATHER

## NEWS4 I-TEAM

# Federal prosecutor under ethics cloud still prosecuting; few DC prosecutors ever punished

Years after mass DC arrest, prosecutor must explain allegedly missing or edited evidence

By **Ted Oberg, News4 Investigative Reporter**, Caroline Tucker, **Rick Yarborough** and **Jeff Piper** •
Published 6 hours ago • Updated 4 hours ago





NBC Universal, Inc.



**PARIS** 2024    **Medal Count**



Seven years after hundreds of people were arrested in

| # | 🟡 | ⚪ | 🟤 | Total |
|---|---|---|---|---|
| 1. United States | 27 | 35 | 32 | 94 |
| 2. China | 25 | 23 | 17 | 65 |
| 3. France | 13 | 17 | 21 | 51 |
| 4. Great Britain | 12 | 17 | 20 | 49 |

**COMPLETE OLYMPIC COVERAGE**


VIVAIA
Water-Repellent    Arch Support
Roomy Toe Box    Flexible Upper
**Designed For All-Day Walking**
Walk 8+ Hours without Getting Tired
Shop Now

Seven years after hundreds of people were arrested in D.C. protesting Donald Trump's inauguration, those prosecutions are suddenly back in the spotlight after ethics violations were raised against the federal prosecutor in the case.

The group that investigates complaints against D.C. lawyers, the D.C. Bar Board on Professional Responsibility, recently filed a complaint against Jennifer Kerkhoff Muyskens. After the complaint was filed, Kerkhoff, the prosecutor, was ordered to respond and deny or explain her actions in a proceeding that could take away her law license.

At the time of the arrests, she was an assistant U.S. attorney in D.C. and the lead prosecutor on the cases. No one was ever convicted, but now the prosecutor been accused of lying a dozen times.

On Jan. 20, 2017, hundreds of protesters took to D.C.'s streets. That afternoon, D.C. police mass arrested more than 200 people.

## Trending Stories


**2024 PARIS OLYMPICS**
Romania appeals gymnast score after Jordan Chiles floor inquiry drama at 2024 Olympics


**GYMNASTICS**
Gymnasts notice something unusual during balance beam final at 2024 Olympics


**2024 PARIS OLYMPICS**
16-year-old sprinting phenom Quincy Wilson is the 'real deal'

Federal prosecutor under ethics cloud still prosecuting; few DC prosecutors ever punished – NBC4 Washington    8/7/24, 10:32 PM

Alexei Wood was among the arrestees. He told the News4 I-Team he was there as an independent journalist.

"I was there; I didn't do anything illegal," Wood told the I-Team from his Colorado home.

Olivia Alsip, a recent college graduate at the time, was there, too.

## Investigations

Investigations by the News4 I-Team



**NEWS4 I-TEAM · AUG 6**

**Family says it could not get through to…**



**WASHINGTON DC · AUG 5**

**Why a DC 911 system went down as a ba…**

"It was very feasible, in my mind, that I could go to prison for the rest of my life," she told the I-Team from Chicago.

Reporting from that day and since makes clear few of the 230 people arrested were directly involved in the violence, but more than 200 of them were indicted on felony rioting offenses. Some of the protesters, including Wood, were acquitted at trial. Charges against more than



**2024 PARIS OLYMPICS**

Ryan Lochte reveals why US swimmers can't leave the Olympic Village



**2024 PARIS OLYMPICS**

People are sharing wipeout memes while teasing they 'did not make the cut' for the Olympics

**SPONSORED**

Meet the powerful tools everyone needs to thrive at work.

Adobe Systems Incorporated

100 other protesters, including Alsip, were dropped.

Lead prosecutor Kerkhoff worked with Gregg Pemberton, who was the lead detective on the cases. Pemberton is now chairman of the D.C. police union.

They came to court armed with plenty of undercover video from protest planning meetings they were going to use to try to convict the protesters. The I-Team obtained and reviewed some of the video entered as evidence from one of the defendants.

The investigation by the D.C. Bar Board on Professional Responsibility found there was more in the videos prosecutors didn't turn over, including protesters talking about nonviolence and de-escalation. According to the recently filed ethics complaint against the prosecutor, those key moments in the video were either edited out or never turned over to the defense team.

Now the prosecutor must explain if it's true and why it was apparently done.

In a recently filed specification of charges, the D.C. Bar Office of Disciplinary Counsel alleges Kerkhoff hid key evidence and made false



VIVAIA

The Perfect Shoes for Those with Mobility Issues

1. Wrap-Around Heel Support
2. Seamlessly Slip On
3. Extra Arch Support

Shop Now

**Weather Forecast**

WASHINGTON, DC

statements about it at least 12 times during the cases — to judges, defense attorneys, even to internal investigators at the Department of Justice. That's not allowed. Long-standing rules insist prosecutors share all the evidence with the defense, especially evidence which could help prove their innocence.



| 78° | ☁ | TONIGHT | |
|---|---|---|---|
| | | 74° | 🌧 |
| Cloudy | | TOMORROW | |
| 0.04% Precip | | 82° | 🌧 |

In 2018, a D.C. Superior Court judge in one of the protesters' rioting cases ruled Kerkhoff "acted intentionally to withhold evidence." D.C.'s American Civil Liberties Union complained to the Department of Justice about the prosecutor in 2019, but five years later, the News4 I-Team found Kerkhoff is still prosecuting federal cases. She now works for the U.S. attorney in Utah.

When asked about the prosecutor's move to Utah, DOJ said it was not to avoid scrutiny over professional misconduct accusations.

Beyond that the U.S. attorneys in D.C. and Utah and DOJ headquarters all "declined to comment on the D.C. Bar allegations." Jessie Liu, the former U.S. attorney for D.C. who was in charge at the time of the arrests and is now in private practice, did not reply to the I-Team's emails.

"What we're talking about is an egregious



VIVAIA

**The Perfect Shoes for Those with Mobility Issues**

1. Wrap-Around Heel Support
2. Seamlessly Slip On
3. Extra Arch Support

Shop Now

example of prosecutorial misconduct," Michael Perloff, interim legal director of ACLU of DC, told the I-Team. "She absolutely shouldn't be prosecuting cases today."

Neither Kerkhoff nor her lawyer replied to I-Team email requests for comment. According to the D.C. Bar, Kerkhoff's reply is due Sept. 2. A hearing date has not been set.

"This really goes to what I think is a is a is a reason why people don't trust our criminal legal system institutions," Perloff said, "because those institutions which we rely on to uphold and enforce the law too often will not follow the law themselves."

Georgetown Law's Philip Schrag studies cases like this and explained to the I-Team, "Judge (Alex) Kozinski of the Ninth Circuit once said in the opinion that Brady violations, withholding evidence from the defense, are an epidemic in this country. If that's the case, the only way to cure the epidemic is to hold prosecutors seriously accountable."
"If that's the case," Schrag said, "the only way to cure the epidemic is to hold prosecutors seriously accountable."

This case is just at the beginning of the disciplinary process. The I-Team found five

similar cases in D.C. – they each took years to resolve — and only one prosecutor lost their law license as a result.

Years after their cases ended, the drama isn't over for Olivia Alsip and Alexei Wood.

"I don't think you should be able to continue practicing law," Alsip said, "if you can't be trusted to be an ethical person."

The D.C. Bar complaint discusses Gregg Pemberton's actions, as well. Numerous times throughout the complaint, the D.C. Bar says Pemberton acted with Kerkhoff to withhold or edit evidence. The D.C. Bar, however, has no authority to discipline him as he is a D.C. police officer, not an attorney.

While they admit they are aware of the complaint, a spokesperson for D.C. police would not comment on Pemberton's connection to the cases, and neither is Pemberton replying to text or email messages.

*Reported by Ted Oberg, produced by Caroline Tucker and Rick Yarborough, and shot and edited by Jeff Piper.*

This article tagged under:

**NEWS4 I-TEAM**



---

Taboola Feed

**MARTHA STEWART & MARLEY SPOON** | SPONSORED

## People in Gardner are Loving Martha Stewart's Meal Kit

**HEALTH INSIGHT JOURNAL** | SPONSORED

## New Neuropathy Device Leaves Experts Speechless (It's Genius!)

**HEALTH INSIGHT JOURNAL** | SPONSORED

Learn More

## Drain Edema Fluid: Do This if You Have Swollen Feet or Ankles

**DR. MARTY** | SPONSORED

Learn More

## Never Do This With An Aging Cat

**TRUE SEACHES** | SPONSORED

## Senior Stairlifts 2024 (See Prices)

**HEALTH INSIGHT JOURNAL** | SPONSORED

## The Unexpected Sciatica Relief: See Why Everyone's Talking

**BEVERLY HILLS MD** | SPONSORED

## Surgeon Reveals: Forget Collagen, Use This Household Item Instead (For Wrinkles)

**DOG FOOD EXPOSED** | SPONSORED

## Cesar Millan Shares The #1 Meat You Should Never Give Your Dog

**GYMNASTICS**

**Gymnasts notice something unusual during
balance beam final at 2024 Olympics**

DECISION 2024

**Obama, Clinton react to Harris' pick Tim Walz
as running mate**

   

ABOUT NBC4 WASHINGTON

OUR NEWS STANDARDS

SUBMIT TIPS FOR

INVESTIGATIONS

NEWSLETTERS

CONNECT WITH US

XFINITY: INTERNET, TV,

STREAMING, MORE

WRC Public Inspection File

WRC Accessibility

WRC Employment Information

Send Feedback

FCC Applications

Terms of Service

Privacy Policy

Your Privacy Choices

Advertise with us

CA Notice

Ad Choices

Copyright © 2024 NBCUniversal Media, LLC. All rights reserved



**reason**

FREE MINDS AND FREE MARKETS

PROSECUTORS

# Prosecutor of Anti-Trump Protesters Allegedly Withheld Exculpatory Evidence and Lied About It

According to disciplinary charges against Jennifer Kerkhoff Muyskens, she suppressed video evidence that would have helped DisruptJ20 defendants.

JACOB SULLUM | 8.2.2024 4:00 PM



(Pacific Press/Sipa USA/Newscom)

After black-clad demonstrators protested Donald Trump's inauguration in an "Anti-Capitalist/Anti-Fascist Bloc" march on January 20, 2017, federal prosecutors in Washington, D.C., charged over 200 of them with rioting. While 21 defendants pleaded guilty, all of the other cases ended in acquittals, mistrials, or charges dismissed with prejudice. One reason for that fiasco, according to recently filed disciplinary charges, was the discovery that the federal prosecutor who oversaw the cases persistently withheld exculpatory evidence and repeatedly lied about it to judges and defense attorneys.

In a "specification of charges" filed with the D.C. Court of Appeals Board of Professional Responsibility last month, Disciplinary Counsel Hamilton P. Fox III alleges that Jennifer Kerkhoff Muyskens, who is now a federal prosecutor in Utah but previously worked at the U.S. Attorney's Office for the District of Columbia, violated six rules of professional conduct while trying to convict "DisruptJ20" protesters, including many who had not participated in vandalism or violence. Muyskens "knew that most defendants did not commit violent acts themselves," Fox notes, but "she argued that these defendants were still liable for felony rioting and felony property destruction because they joined a criminal conspiracy to use the protest march to further the violence and destruction that occurred."

To support that theory, Muyskens presented video of a DisruptJ20 planning meeting that had been clandestinely recorded by an "operative" from Project Veritas, a conservative group that frequently has been accused of using misleadingly edited videos to portray progressive and leftist organizations in a negative light. Although Muyskens "understood Project Veritas had a reputation for editing videos in a misleading way," Fox says, she initially concealed the source of the video, saying in court that "who provided it is irrelevant." And although Muyskens "knew that Project Veritas had omitted and edited some of its videos" before releasing them, Fox adds, she "did not request or obtain Project Veritas's missing videos or unedited footage."

According to Fox, Muyskens and Metropolitan Police Department (MPD) Detective Greggory Pemberton edited the meeting footage in ways that bolstered the prosecution's case, and Muyskens covered up the extent of those edits. Fox says Muyskens also withheld Project Veritas videos of other DisruptJ20 meetings that would have been helpful to the defense, pretending that they did not exist. And she allegedly concealed the fact that Pemberton, in testimony to a grand jury, had erroneously identified one of the DisruptJ20 defendants as a woman who appears in the video of the planning meeting.

The material that Muyskens and Pemberton excised included footage that would have revealed the provenance of the video. They also cut footage of a phone call in which a Project Veritas infiltrator told a colleague, "I don't think they know anything about the upper echelon stuff."

According to the Supreme Court's 1963 ruling in _Brady v. Maryland_, due process requires prosecutors to share potentially exculpatory evidence with the defense. Fox says Muyskens violated that rule by excising footage that could have been useful in rebutting the prosecution's case.

The excised footage "revealed that the video was filmed as part of Project Veritas's infiltration of DisruptJ20, which tended to undermine the credibility and reliability of the government's evidence," Fox writes. "In addition, the operative's post-meeting report indicated that some DisruptJ20 protest organizers did not know anything about plans or decisions that were being made by an 'upper echelon.' This lack of knowledge supported the non-violent defendants' theory that, assuming a plan to riot existed at all, only a small group was involved, which they knew nothing about. Alternatively, if the operative was discussing protest organizers being unaware of Project Veritas's 'upper echelon' plans, the statements supported…claims that Project Veritas conspired to frame DisruptJ20 defendants for third-party violence, including by possibly inciting violence themselves. Both judges who later considered the issue…found that the complete, unedited footage was exculpatory."

The videos that Muyskens withheld included evidence that, contrary to the prosecution's narrative, the DisruptJ20 protest was supposed to be peaceful. Those videos "were exculpatory," Fox explains, "because they showed that DisruptJ20 planning meetings consistently involved training and instructing protesters how to participate in its unpermitted 'Actions,' including the anti-capitalist march, as non-violent protests, using nonviolence and de-escalation techniques, which supported the non-violent defendants' claim that their intent was merely to peacefully protest."

The undisclosed videos also "showed Project Veritas operatives discussing their infiltration operation of DisruptJ20, which supported the defense's theory that Project Veritas conspired to blame DisruptJ20 for others' misconduct," Fox notes. "For example, the undisclosed videos showed Project Veritas operatives discussing—_before_ the Inauguration protests—how they were providing information on DisruptJ20 to the FBI, how there was likely to be violence from 'outside influencers,' and how DisruptJ20 would 'catch the blame' for outsiders' misconduct because the FBI was 'going to say' that they incited it."

In court, Fox says, Muyskens "falsely said that the government had made only two edits, which were both to redact the identity of the videographer and an undercover officer," and "that, other than the two redactions, the defense had the same videos as the government." She "falsely told the court that she had provided defense counsel with 'the full entirety of those videos from that day.'"

According to Fox, "Pemberton testified falsely that Project Veritas had produced only the four disclosed video segments of the [planning meeting video]" and that "the only editing the government did was to combine the first three video segments into one exhibit to be played at trial." Muyskens and Pemberton "did not disclose how they had edited the original videos they received from Project Veritas," and they did not "disclose that they had omitted from discovery many other videos Project Veritas videos of DisruptJ20's planning meetings."

Muyskens told a judge that Project Veritas had "provided unedited video" at Pemberton's request and that "we posted the video" to the discovery portal. Those statements, Fox says, "were false and misleading." Muyskens also "falsely said that other than redacting the identities of the Project Veritas operative and [the undercover officer], 'the defense has the exact video we have.'" The judge "later found that [Muyskens] 'left a clear impression' that she had disclosed everything that Project Veritas had produced."

Muyskens told another judge that "the government had 'provided the clips as we have them'" and that "'the only editing' by the government 'was to combine the three clips' of the anti-capitalist 'breakout' into a single video exhibit for trial." Those statements also "were false and misleading," Fox says.

Muyskens eventually "acknowledged that the government had additional, undisclosed Project Veritas videos of DisruptJ20's planning meetings." But she "mischaracterized them and falsely suggested that they were irrelevant."

During the investigation of her conduct, Fox says, Muyskens "repeated her false statements and material omissions" regarding the video edits, the withheld videos, her suppression of "relevant information and evidence," her failure to produce grand jury transcripts from the misidentified defendant's case, her "misrepresentations and omissions to the grand jury, the defense, and the court," and her failure to "correct known misrepresentations to the court." She also "made additional false statements and material omissions to falsely explain her conduct." She claimed, for example, that the undisclosed videos "were irrelevant and did not discuss the anti-capitalist march."

Fox says Muyskens' actions violated the District of Columbia's <u>Rules of Professional Conduct</u> in half a dozen ways:

1. She allegedly violated <u>Rule 3.3(a)</u> by "knowingly making false statements, offering false evidence, and failing to correct material false statements to the court."

2. She allegedly violated three sections of <u>Rule 3.4</u> by "obstructing the defense's access to evidence and altering or concealing evidence, or assisting another person to do so when she reasonably should have known that the evidence was or may have been subject to discovery;

knowingly disobeying the court's direct order to produce information in the government's possession without openly asserting that no valid obligation existed; and/or failing to make reasonably diligent efforts to comply with the defense's discovery requests."

3. She allegedly violated two sections of <u>Rule 3.8</u> by "intentionally avoiding pursuit of evidence and information because it may have damaged the prosecution's case or aided the defense; and by intentionally failing to disclose to the defense, upon request and at a time when use by the defense was reasonably feasible, evidence and information that she knew or reasonably should have known tended to negate the guilt of the accused or mitigate the offense."

4. She allegedly violated <u>Rule 8.4(a)</u> by "knowingly assisting or inducing another to violate the Rules of Professional Conduct and/or doing so through the acts of another."

5. She allegedly violated <u>Rule 8.4(c)</u> by "engaging in conduct that involved reckless or intentional dishonesty, misrepresentations, deceit, and fraud, which misled the grand jury, the defense, the court, the government, and disciplinary authorities about the evidence in the government's possession and the government's conduct."

6. She allegedly violated <u>Rule 8.4(d)</u> by "engaging in conduct that seriously interfered with the administration of justice."

Possible sanctions against Muyskens range from "temporary suspension of her law license to full disbarment," *Washington City Paper* <u>notes</u>. *The Washington Post* <u>reports</u> that lawyers for Muyskens did not respond to requests for comment and that "Pemberton also did not respond to an inquiry." The U.S. attorney's offices in D.C. and Utah "declined to comment." So did the MPD, which "would not say whether the department has opened an investigation of Pemberton, who now chairs the police labor union."

The failed prosecutions and the disciplinary charges against Muyskens are not the only embarrassments stemming from the Inauguration Day march. In 2021, the *Post* notes, "the D.C. government agreed to pay $1.6 million to settle two lawsuits" by protesters who argued that the police response to the DisruptJ20 march violated their First Amendment rights.

"It speaks volumes that the District has chosen to settle rather than defend MPD's obviously unconstitutional actions in court," Jeffrey Light, one of the protesters' attorneys, <u>said</u> when the settlement was announced. Scott Michelman, legal director at the American Civil Liberties Union of the District of Columbia, added that "MPD's unconstitutional guilt-by-association policing and excessive force, including the use of chemical weapons, not only injured our clients physically but also chilled their speech and the speech of countless others who wished to exercise their First Amendment rights but feared an unwarranted assault by D.C. police."

**JACOB SULLUM** is a senior editor at *Reason*.

PROSECUTORS   GOVERNMENT ABUSE   ACCOUNTABILITY   CRIMINAL JUSTICE   DUE PROCESS   PROTESTS   ANTIFA   DONALD TRUMP   FIRST AMENDMENT   COURTS   EVIDENCE



# US ATTORNEY'S OFFICE THAT PROSECUTED INAUGURATION DAY PROTESTERS HAS HISTORY OF MISCONDUCT FINDINGS

Prosecutors on the "J20" case faced grave allegations of misconduct after withholding exculpatory evidence contained in videos from defense attorneys. But this is far from the first time that this office has found itself in hot water.



Police and demonstrators clash in downtown Washington after a limo was set on fire following the inauguration of President Donald Trump on January 20, 2017

Spencer Platt/Getty Images

**Ethan Brown**, **Jessica Brand**

Jul 30, 2018

Oliver Harris finally felt vindicated when he heard the jury announce "not guilty" last December, as the first of the J20 trials came to a close.  Relief would come later. The then 28-year-old, disturbed by what he perceived as Donald Trump's violent and fascist language on the campaign trail, had traveled to Washington, D.C., on Inauguration Day—Jan. 20, 2017—to protest the Trump administration as part of a direct action organized by the group #DisruptJ20.

During the protest, which was hundreds strong, a small group destroyed property, including a police car and business windows.  The Metropolitan Police Department (MPD), in turn, used pepper spray, tear gas, and Sting-Ball grenades against the protestors.  By the end of the day, Harris was arrested, along with over 230 others, charged under the D.C. rioting statute despite no credible evidence he incited or engaged in a riot or caused any property damage. The United States Attorney's Office for the District of Columbia, which handles

both local and federal cases, later added numerous other charges against 214 defendants.

Throughout 2017, Harris, who faced up to 60 years in prison, joined the other charged protestors and hundreds of defense attorneys to prepare for their trials.  But thanks to his acquittal in December, he could go home to his partner who was pregnant with twins, return to his teaching job at Drexel University and his Ph.D. studies in chemical engineering, and resume a normal life. Earlier this month, after another trial that ended with no convictions, prosecutors finally dropped the charges against all defendants.

One of the prosecutors in the case, Rizwan Qureshi, shook the defense attorneys' hands.  But not Jennifer Kerkhoff, the lead prosecutor and a central figure in the J20 legal saga.  Harris told *The Appeal* that she refused.  "She does this thing," Harris explained, "where she just kind of—it's like her jaw is really clenched and she is just grinding her teeth and she just stares at the table. She seemed livid."

"Even in little kid soccer," Harris continued, you still have to "shake the other team's hands.  I think it says a lot about her as a person."

The J20 trials captured national attention, featuring media coverage in the *Washington Post*, *The Intercept*, and on CNN.com, as commentators weighed in with their disgust at the government's decision to charge hundreds for destruction committed by a few.  And the prosecutors also made headlines after defense lawyers accused it of withholding evidence that could have damaged its case and helped hundreds of defendants prove their innocence.  The government's malfeasance—and Kerkhoff's in particular—caused the chief judge of the Superior Court to dismiss numerous charges against one group of defendants and preclude future prosecution on the primary charge. "I do think it's a serious violation," he concluded. "It was intentional in the sense that the government made intentional decisions that it made not to disclose." These trials revealed something, as Harris put it, more "sinister" about the D.C. United States Attorney's office: its willingness to hide evidence to win.

An examination of Kerkhoff's prior cases by *The Appeal* suggests that this misconduct did not occur in a vacuum.  It is present in other

cases prosecuted by Kerkhoff, who was promoted to <u>chief</u> of the felony major trial division after she lost Harris's trial, a division regularly given the office's most important cases. And it speaks to a greater culture problem in the D.C. United States Attorney's office. The J20 trials placed this misconduct in the national spotlight.

# The J20 trials

On Feb. 8, 2017, a grand jury in the District of Columbia <u>handed down an indictment</u> charging the J20 defendants with felony rioting, and two months later, they issued a superseding indictment charging 214 people with eight different felonies. Lacking evidence that most of the more than 200 defendants caused any property damage, the government needed to show that the protesters engaged in a <u>conspiracy to riot</u>—in other words, that they agreed to participate in a protest that would cause destruction to persons or property. If prosecutors could prove this, each charged protester could be responsible for the damage caused by the other.

As evidence, the government relied primarily on an undercover video filmed by Project Veritas of a Jan. 8 meeting by #DisruptJ20 as organizers planned the inauguration protests. During the meeting, organizers <u>discussed using blockades</u>, and one organizer said he would make the inauguration a "giant clusterfuck." The government's use of the video drew extraordinary criticism on social media and in the press, in large part because of Project Veritas founder James O'Keefe's reputation for <u>deceptively editing videos</u>. (In 2009, he disguised himself as a pimp and shot a video that falsely accused the voter-registration group ACORN of offering advice on using underage girls in the sex trade. In late 2017, he also tried to plant a false story with the *Washington Post* during the Alabama election involving the <u>failed U.S. Senate candidate Roy Moore</u>.)

Kerkhoff introduced the Veritas video at the first J20 trial on November 28 to demonstrate that activists (but not Harris or his co-defendants) discussed disrupting inauguration activities. She relied on it in her opening and her closing statements as significant evidence of a conspiracy. Nothing that occurred during the protest was "a coincidence," she argued—it was planned. She also assured the

court this was the only Project Veritas video in existence, and that it was unaltered, "in complete, unredacted form."

This was not true. In May of this year, long after the acquittals in Harris's December trials and during the second set of trials, defense attorneys learned that the Veritas video was edited. Either the prosecutor or the lead detective — defense lawyers could not figure out which — removed a section of the video where the Veritas mole stated, "I was talking to one of the organizers ... and I don't think they know anything about any of the upper echelon stuff." That statement could blow apart the government's theory that the protesters engaged in a highly organized plan to commit violence. As one defense lawyer wrote in a pleading: "What better exculpatory evidence for the defense than the words from the person sent to capture a nefarious meeting stating right after the meeting 'I don't think they know anything.'" The court found a *Brady* violation.

Later that week, defense attorneys learned that Kerkhoff had also failed to disclose 69 additional Project Veritas videos, 35 of which captured "action camps" or planning meetings for J20 where those present discussed how to de-escalate violence—the opposite of the government's theory that the attendees were planning violence to ruin the inauguration. Kerkhoff did not attend the May 31, 2018, hearing on the defense's motion for *Brady* sanctions, allowing Assistant U.S. Attorney Ahmed Baset to respond to D.C. Superior Court Chief Judge Robert Morin's repeated questions about why Kerkhoff misled the court. Baset had no response. Judge Morin dismissed the conspiracy charges against the six defendants before him and barred prosecution on that count forever, finding the government intentionally suppressed the video evidence. "It was a glorious day for all of us," Harris told *The Appeal.* (The United States Attorney's Office has since asked Judge Morin to reconsider his finding in a pleading that Kerkhoff did not sign, describing the court's finding that an "Assistant United States Attorney made an intentional misrepresentation" as a "serious matter.")

These were not the only *Brady* violations that defense counsel alleged in the J20 cases. Harris says that just before the first trial, the government dropped a mountain of MPD body cameras—at least 933 video recordings—that had never been disclosed. Harris says that many of the videos depicted officer violence — notable also given

that one of the government's key testifying witnesses, Officer William Chatman, <u>wore a T-shirt</u> that read, "Police brutality ... or doing what their parents should have?" as he entered Superior Court to testify during the second trial.

In another pleading, defense lawyer Roy Austin accused Kerkhoff of committing a "fraud on this Court." Kerkhoff previously believed Austin's client had attended a planning meeting. Kerkhoff then changed her mind, but failed to correct her prior representation to the court or alert defense counsel. "AUSA Kerkhoff has ignored and continues to ignore her *Brady*-related discovery obligations," Austin wrote.

# Past allegations against Kerkhoff

Defense attorneys told *The Appeal* that this is far from the first time that Kerkhoff has exhibited questionable behavior in court, often in cases with even higher stakes involving poorer defendants.

In 2011, for example, Kerkhoff and another prosecutor tried five men for a series of 2008 shootings that rocked the Trinidad neighborhood of Washington, D.C., leaving a 13-year old boy <u>caught in the cross-fire</u> dead and several others injured.  Defense attorneys immediately requested any *Brady* material, but only a few weeks before trial, two years later, did they receive medical records showing that Kerkhoff's key eyewitness reported experiencing bipolar disorder, schizophrenia or schizoaffective disorder, and hallucinations, and to hearing voices, around the time of the shooting. They also learned, for the first time, that the witness had used alcohol, marijuana, and PCP since the age of 7.  Defense attorneys wrote in a pleading filed with the court, this undermined the witness' ability to "distinguish reality from fantasy," accurately observe, and fairly report events. It was just the kind of information that should have been disclosed to the defense two years prior.

Kerkhoff and her team received no sanctions from the court for this late disclosure and trial proceeded.  A jury nonetheless found all but one of the five defendants not guilty, and the D.C. Court of Appeals <u>overturned that sole conviction in 2013</u>, finding that the trial  judge's instructions had coerced at least one juror into voting for guilt.

Kerkhoff's assertions in a September 2017 federal court filing also reveal either her misunderstanding of her *Brady* obligations or her willingness to ignore them. Responding to the defense's request for early disclosure of *Giglio* material—a subset of *Brady* that includes any material that negatively affects a witness's credibility (like prior inconsistent statements about the same incident or examples of previous lies), she wrote that "the government need not disclose this material until after the witness has testified on direct examination." This interpretation, albeit one often advanced by prosecutors, ignores the Supreme Court's clear directive that prosecutors' *Brady* obligations extend to any information that casts doubt on its case, regardless of label.  They must disclose that evidence before trial, not after it has already started.

Other examples include an allegation in a 2011 child sex abuse case, for example, Kerkhoff ran into the jury foreman on another colleague's case.  The foreperson was an MPD detective she knew, and the jury was still deliberating. That night, she wrote an email to the prosecuting attorney, in which she said that she "spent the evening drowning my sorrows with a familiar face. You will have the remainder of the verdict tomorrow. Congrats on the guilty verdicts." It is, of course, impermissible for jurors to talk anyone about the case that has not concluded, and prosecutors should never talk to a jury member about a case active in their office, lest they risk influencing the outcome, even inadvertently. The defense attorney moved for a mistrial, but Kerkhoff claimed that she merely spoke to the foreperson about whether he would soon be able to return to work.  The trial judge accepted her explanation and found no misconduct.

# A broader problem

But allegations, and often findings of misconduct, are a problem that is office-wide.  Court pleadings and decisions reflect a broader culture problem in the office.  In 2010, for example, then-Assistant U.S. Attorney Amanda Haines stood proudly after a jury convicted Ingmar Guandique of murdering Chandra Levy—the Capitol Hill intern who had an affair with Congressman Gary Condit—as she ran through Rock Creek Park in the early morning hours of May 1, 2001. Because of Levy's involvement with Condit, the case captivated the

country for years as it went unsolved. In 2016, the government dismissed the case, (also standing before Judge Morin), as allegations mounted that prosecutors lied and allowed perjured testimony when its key witness, jailhouse informant Armando Morales, denied asking for any favors in exchange for testifying that Guandique confessed to the murders. As *The Appeal* recently reported, jailhouse informants "are a particularly risky and unreliable category of criminal informant" responsible for widespread wrongful convictions.

Haines also found herself in hot water in 2005, when she tried Thomas Zanders for murdering Allen Lancaster as part of a retaliation for a robbery.  A jury convicted him, but the D.C. Court of Appeals found that while she disclosed that someone else had an argument with Lancaster at some point before the murder, she failed to mention the argument actually occurred *the day before* the murder in the *exact same place* as the subsequent shooting.  Ms. Haines went on to become a federal death penalty prosecutor for several years.

Similar allegations against the office abound in other less newsworthy but no less significant cases. In 2009, a trial judge granted Joseph Harrington a new trial in a stabbing death case after Assistant U.S. Attorney Vivien Cockburn failed to disclose to the defense that witness "L.G." saw the government's key eyewitness, "R.M.," with a knife attached to her dress soon after the stabbing, looking disheveled.  She also never mentioned that R.M. stated: "Self-preservation is the first rule of law" when L.G. asked if she was involved in the stabbing. That evidence certainly implicated R.M. in the murder and provided her with a motive to falsely implicate Harrington. The trial judge called the nondisclosure "conscious and deliberate." After an investigation, the D.C. Bar issued only an informal admonition to Cockburn. Cockburn continues to prosecute cases for the office.

And there are other  examples. In 2011, the D.C. Court of Appeals reversed Tyree Miller's assault with attempt to commit murder conviction because the government waited until after the trial started to disclose that the eyewitness believed the shooter used his left hand—a critical fact because Miller was right-handed.  In 2014, it reversed Carl Morton's convictions for assaulting a Delaware prison guard because the government never mentioned officials were investigating the accusing officer eyewitness for making a false

allegation in another prison guard attack case. And in 2016, it found that the trial court erred when it failed to adequately consider sanctions in Terry Johnson's second-degree murder trial, because the government waited for over a year to disclose that someone other than Johnson had a motive to kill the decedent, and that this person was rumored to have placed a $20,000 bounty on the decedent's head.

And yet this is just the misconduct available in published pleadings or captured by reporters watching high profile cases. According to Phil Andonian, one of the attorneys on the J20 case: "Brady violations are nothing new, and are hardly ever treated this seriously.  The difference in the J20 cases, sadly, is that hundreds of lawyers from all over the city — from solo practitioners to Big Law institutions — worked together to hold the government accountable in a case that was unpopular from the beginning.  This magnitude of defense resources and public backlash are rarely features of the criminal-justice system.  Which is why the government so often flies comfortably under the radar."

(Asked about the misconduct allegations in the J20 case and whether there is a *Brady* violation or culture problem in the United States Attorney's Office, a spokesman told *The Appeal*, "We have no comment beyond what we have submitted or stated to the Court.")

Perhaps change will come to the D.C. United States Attorney's office because of the high-profile failures in the J20 trials. Several of the J20 defendants recently expressed their intent to file a complaint with the Office of Disciplinary Counsel.  They are well positioned to do so, with all eyes watching and little chance of future repercussions.

But prosecutors rarely receive meaningful punishment.  Often, bar counsel never learns about alleged prosecutorial misconduct.  Defense attorneys are usually in the best position to report it, but tend to worry that prosecutors will stop giving favorable plea deals to their clients or will even target their clients for enhanced or future prosecution. And even if aware that a prosecutor is violating the Constitution, bar counsel rarely acts. There is the occasional exception: In 2012, bar counsel suspended U.S. Attorney Paul Howes's license after attorneys learned that he distributed $42,000 in illegal witness payments in various cases, failed to tell defense

attorneys about those payments, and also lied about them in court. But just five years later, the D.C. Court of Appeals reinstated his law license after an initial suspension. Until trial judges, the bar, and the United States Attorney's office, whose mantra is "the fair and impartial administration of justice for all," punishes bad behavior, it most likely will be business as usual in D.C. Superior Court.

# SUPPORT THE APPEAL

If you valued this article, please help us produce more journalism like this by making a contribution today.

PROSECUTION     CRIMINAL JUSTICE     CRIMINAL JUSTICE REFORM

DONALD TRUMP     POLICE     POLITICS     PROSECUTOR

PROSECUTORIAL MISCONDUCT     PROTEST     SENTENCING

SURVEILLANCE     WASHINGTON DC

Privacy - Terms

JUSTICE DEPARTMENT

# DOJ attorney who led prosecution of anti-Trump protesters hit with ethics charges

Assistant U.S. Attorney Jennifer Kerkhoff Muyskens faces an ethics complaint over her use and handling of videos from Project Veritas in cases against Trump inauguration protesters.



— Polce surround protesters on the sidelines of the inauguration in Washington, D.C., in January 2017.    Adrees Latif / Reuters

July 17, 2024, 5:54 PM MDT

**By Ryan J. Reilly**

WASHINGTON – A Justice Department attorney who led the attempted prosecutions of hundreds of anti-Trump and anti-fascist protesters swept up in a mass arrest on the day former President Donald Trump was inaugurated in 2017 faces rare ethics charges, with the D.C. Office of Disciplinary Counsel alleging she hid exculpatory evidence from the defendants, edited videos to omit crucial context and then lied in court about her actions.





7/28/24, 9:27 PM



—    Assistant U.S. Attorney Jennifer Kerkhoff and Washington Police Detective Greggory Pemberton outside D.C. Superior Court in 2017.    Ryan J. R

Assistant U.S. Attorney Jennifer Kerkhoff Muyskens, who went by Jennifer Kerkhoff at the time of the alleged misconduct, was the lead prosecutor in the more than 230 cases that arose out of the mass arrests of protesters near Trump's inauguration on Jan. 20, 2017. Protesters were arrested after police trapped them in a "kettle" after some people smashed windows, destroyed a limousine and threw objects at officers during a demonstration against the incoming president.

The government adopted the extraordinary tactic of charging hundreds of people arrested on a public street with felony crimes based on the theory that their choice of black clothing meant they were part of a felony rioting conspiracy. But the #J20 prosecutions, as activists dubbed them, were largely a bust for the government. Jurors acquitted the first six defendants to go to trial in late 2017, a judge ordered charges against 10 other defendants dropped because prosecutors withheld evidence, and charges against all remaining defendants were dropped in mid-2018.

Kerkhoff Muyskens and Washington Police Detective Greggory Pemberton were "primarily responsible for the government's investigation" into the events of Jan. 20, 2017, according to the ethics complaint, which alleges Kerkhoff Muyskens violated six of the D.C. Bar's rules of professional conduct. The Office of the Disciplinary Counsel in Washington, which serves as the chief prosecutor for attorney disciplinary matters, wants the D.C. Board of Professional Responsibility, which is the disciplinary arm of the D.C. Court of Appeals, to consider imposing sanctions on her.



—    Police use pepper spray against anti-Trump protesters in Washington in 2017.    Jewel Samad / AFP via Getty Images file

Pemberton, who now heads the Washington police union, faced questioning during trials from defense attorneys about his "anti-liberal biases," the complaint noted. When defense counsel raised "troubling" edits to video evidence that they believed Pemberton made, Kerkhoff Muyskens "falsely told the court that only she – not Pemberton – was responsible for the edits," according to the complaint.

At issue is video from Project Veritas, a conservative group that recorded undercover videos, which was essential to prosecutors' case.

Both Kerkhoff Muyskens and Pemberton understood that Project Veritas "had a reputation for editing videos in a misleading way," the complaint says. Kerkhoff Muyskens and Pemberton also "omitted and cut footage from the original videos, in part, to remove footage of the operative that could reveal his identity or reveal the identity of Project Veritas as the source of the video," it says.

Even though Project Veritas provided videos of another training session

that occurred at American University on Jan. 14-15, Kerkhoff Muyskens didn't turn them over to defense lawyers, the complaint alleges. The complaint says the undisclosed videos "consistently showed that protesters were trained and instructed to expect a non-violent protest; to remain non-violent; to use non-violence and de-escalation techniques with police and counter-protesters; to be wary of counter-protester infiltrators, including Project Veritas; to rely on [Washington police] to handle any violence from either protesters or counter-protesters; to stay close with their protest group for safety and security; and to comply with police instructions and 'police lines.'"

—— Anti-Trump protesters set a limousine on fire during clashes with police in 2017.    Samuel Corum / Anadolu via Getty Images file

Neither Kerkhoff Muyskens nor Pemberton responded to requests for comment from NBC News. Federal court records show that Kerkhoff Muyskens, now just going by Jennifer Muyskens, has been working as an assistant U.S. attorney in Utah, bringing new cases as recently as last month. James O'Keefe, who founded Project Veritas and headed it at the time of Trump's inauguration but was removed last year, did not respond

to a request for comment; neither did the U.S. Attorney's Office for the District of Columbia.

The U.S. attorney's office – which is running the prosecutions of more than 1,400 defendants in connection with the Jan. 6, 2021, attack on the U.S. Capitol – is unique in that it prosecutes both "local" crimes in D.C. Superior Court and federal crimes in U.S. District Court. The #J20 prosecutions were brought in Superior Court, while the Jan. 6 cases have almost entirely been brought in federal court. Prosecutors have already secured more than 1,000 convictions in connection with Jan. 6, with sentences from probation to 22 years in federal prison, for a former Proud Boys chairman convicted of seditious conspiracy.

The government's botched prosecutions of anti-Trump inauguration protesters have informed the handling of the Jan. 6 prosecutions, and in some ways, Capitol attack defendants have benefited from the lessons learned.

In contrast to the prosecution of Jan. 6 defendants, the extraordinary #J20 prosecutions got very little attention at the time from the national media, which was largely focused on the chaos of Trump's first year in office and Robert Mueller's special counsel probe, which began in May 2017.

During her theatrical presentations to the first J20 jury, Kerkhoff Muyskens referred to a "sea of black masks" and walked jurors through the often relatively benign contents of defendants' backpacks, even though she conceded that there was zero evidence that the six protesters, who were ultimately acquitted of felony charges, had engaged in any property damage or violence and that they were arrested en masse on a public street.

"Each of them made a choice, and each of them played a role," Kerkhoff told jurors in her opening statement. "You don't personally have to be the one who breaks the window to be guilty of rioting."

---

Ryan J. Reilly

Ryan J. Reilly is a justice reporter for NBC News.

---

# ABOVE THE LAW

 Subscribe     Send Tips

Biglaw  Small Law  Law Schools  In-House  Legal Tech  Bonuses  AI  Career Center  Non-Event  Appellate Court Blog 🔍

FEATURED:   LMA on ATL »     ILTA on ATL »     Sponsorships With Guaranteed ROI »



COURTS

# Prosecutor In Hot Water After Allegedly Altering Evidence In Cases Against Anti-Trump Protestors

Not a great look for the prosecutor.

By KATHRYN RUBINO  on July 18, 2024 at 3:48 PM

   ✉



*Anti-Trump protests on January 20, 2017. (Photo by JEWEL SAMAD/AFP via Getty Images)*

A lot of questions about the vital judgment calls that get made by



SPONSORED

**Rise Above Redlines: How AI Is Setting A New Benchmark For Contracting**

Our friends at LegalOn

government attorneys get waved away under the hopeful banner known as prosecutorial discretion. And that makes at least some sense as it would be nearly impossible to create the perfect set of rules and guidelines that apply to the specific cases a prosecutor sees. One thing that is unquestionably never okay is tampering with evidence. But that's the exact allegation facing federal prosecutor Jennifer Kerkhoff Muyskens.

Muyskens helmed 200+ cases against defendants facing felony rioting, conspiracy to riot, and destruction of property charges from the anti-Trump protests. According to a complaint (available below) filed by the District of Columbia Office of Disciplinary Counsel, Muyskens used videos that were deceptively edited in the prosecution of people protesting the 2017 inauguration of Donald Trump. As reported by the ABA Journal:

SPONSORED

**Referral Fees The Key To Growing A Modern Practice? Overture Thinks So.**

Overture digitizes your existing attorney networks and makes it easy to share referrals and ethically split fees with attorneys you already trust.

From OVERTURE

*Muyskens allegedly removed footage from videos recorded by conservative activist group Project Veritas that could have helped clear the protestors of criminal charges, according to the complaint. It showed protestors discussing plans to remain non-violent and use de-escalation tactics with police, and included footage showing an undercover Metropolitan Police Department officer attending a planning meeting.*

Despite the well-documented issues with Project Veritas (or perhaps because of them), Muyskens kept the source of the footage hidden, removing references to the group from the clips. Moreover, Muyskens is alleged to have made "false and misleading" statements about the disputed footage to the court as well as during the course of the investigation into her conduct.

While Muyskens no longer works in the U.S. Attorney's Office in D.C., she's

share how AI can solve the work of contract review, and more.

From LEGALON TECHNOLOGIES

**Recommended**



**Nikki Haley Threatens Legal Action Because Her Supporters Are More Principled Than She Is**



**303 Creative Web Designer Needs Somebody To Cover Her Legal Fees**



SPONSORED
**How Thomson Reuters' CoCounsel Battles The '1,000 Papercuts' Of**

Prosecutor In Hot Water After Allegedly Altering Evidence In Cases Against Anti-Trump Protestors - Above the Law    7/28/24, 9:40 PM

still a federal prosecutor, now based in Utah.

**Legal Work**

From ABOVE THE LAW



Page 1 / 46    —  +   Zoom 100%

### DISTRICT OF COLUMBIA COURT OF APPEALS
### BOARD ON PROFESSIONAL RESPONSIBILITY

RECEIVED

July 15, 2024 6:28 pm
Board on Professional
Responsibility

In the Matter of                              :
                                             :
JENNIFER KERKHOFF MUYSKENS,     :        Disciplinary Docket Nos.
                                             :        2018-D218
Respondent,                          :        2018-D262
                                             :        2018-D300
A Member of the Bar of the           :
District of Columbia Court of Appeals :
Bar Registration No. 475353          :
                                             :

#### SPECIFICATION OF CHARGES

The disciplinary proceedings instituted by this petition are based on conduct that violates the standards governing the practice of law in the District of Columbia as prescribed by D.C. Bar Rule X and Rule XI, § 2(b).

1. Pursuant to D.C. Bar R. XI, § 1(a), jurisdiction is found because Respondent, Jennifer Kerkhoff Muyskens, is a member of the D.C. Bar, having been admitted on December 3, 2001, and assigned Bar number 475353.

2. During the relevant period, Respondent was an Assistant United States Attorney ("AUSA") for the District of Columbia.

3. Respondent was the lead prosecutor in over 200 related criminal cases against defendants charged with felony rioting, conspiracy to riot, and destruction of property during the inauguration of President Donald J. Trump, on January 20, 2017.



Page 1 / 46    —  +   Zoom 100%

SPONSORED

**Raising The Bar in Bar Prep**

In fallout from 2017 anti-Trump riot, federal prosecutor in Utah now faces ethics complaint

7/28/24, 9:30 PM



# Federal prosecutor now in Utah doctored evidence in anti-Trump protests, ethics complaint alleges

She is accused of editing and concealing videos that were key to felony rioting charges against hundreds of demonstrators.



In fallout from 2017 anti-Trump riot, federal prosecutor in Utah now faces ethics complaint    7/28/24, 9:30 PM



(Mark Tenally | AP) In this Jan. 20, 2017, file photo, police deploy smoke and pepper grenades during clashes with protesters in northwest Washington. When Washington police arrested more than 200 anti-Trump protesters on inauguration day 2017, it touched off a long-term battle of wits and wills. Now a federal prosecutor in Utah faces an ethics complaint for her handling of the criminal cases.



*The Salt Lake Tribune*

SUBSCRIBE    LOG IN    SUBSCRIBE

💬 Comment

An assistant U.S. attorney in Utah faces an ethics complaint alleging that she withheld and doctored evidence when she was prosecuting more than 200 demonstrators at [Donald Trump's presidential inauguration](#) in Washington in 2017.

Jennifer Kerkhoff Muyskens is accused of using undercover footage taken by the conservative activist group [Project Veritas](#) and concealing the source of it when prosecuting protesters for rioting after some in the group smashed windows, damaged a limousine and threw objects at police.

Some 230 individuals were charged with felonies as a result of their participation in the protests, whether or not they had committed violent acts. The first batch of defendants won acquittals, and a judge dismissed charges against a second group based on the prosecution concealing evidence. The charges against the remaining protesters were dropped in 2018.



AdChoices ▷

Ski

The Project Veritas footage, taken at a series of planning and training meetings before the protest, was critical to the case, the complaint states, since it purportedly showed participants conspiring to

was critical to the case, the complaint states, since it purportedly showed participants conspiring to plan the riot.

Project Veritas turned over a number of videos to authorities. Despite knowing the group's reputation for selectively editing footage, Muyskens is accused of not divulging the source of the video. Nor did she disclose that she and an officer assigned to the case had edited the footage to conceal the presence of an undercover police officer and the Project Veritas operative who recorded the video, the ethics complaint alleges.

Report this ad

Additional Project Veritas videos, which showed the participants being told to practice nonviolence and taught de-escalation techniques, were also withheld from defense lawyers, the complaint alleges. Two judges who viewed the complete, unedited videos found that they would have helped the defense team.

After a judge explicitly ordered Muyskens to provide all of the videos it had, she added some new videos, but not all of them, the complaint states, and still did not disclose the source or the edits that had been made.

"The undisclosed videos consistently showed that protesters were trained and instructed to expect a nonviolent protest," Hamilton P. Fox III, disciplinary counsel for the Washington, D.C., Board of Professional Responsibility, wrote in the charges filed with the board this week.

Fox is asking the board to impose sanctions for six violations of professional conduct.

The ethics complaint alleges that Muyskens misrepresented the nature of the videos to the grand jury, made false and misleading statements to the court about the origin and editing of the videos, and misled the ethics investigators.

Home  /  Daily News  /  Federal prosecutor facing discipline for...

PROSECUTORS

# Federal prosecutor facing discipline for altering video evidence against anti-Trump protesters

BY AMANDA ROBERT (HTTPS://WWW.ABAJOURNAL.COM/AUTHORS/64780/)

JULY 18, 2024, 8:30 AM CDT

              Email        Print



*Jennifer Kerkhoff Muyskens is facing scrutiny over the prosecution of defendants charged with felony rioting, conspiracy to riot and destruction of property during the Jan. 20, 2017 inauguration. (Photo by Jahi Chikwendiu/The Washington Post via Getty Images)*

A federal prosecutor who allegedly edited videos to use as evidence in criminal cases involving anti-Trump protesters in 2017 is now facing disciplinary charges.

In a complaint (https://fingfx.thomsonreuters.com/gfx/legaldocs/mypmajwajpr/In%20the%20Matter%20of%20JENNIFER%20KERKHOFF%20MUYSKENS%20-%20Complaint.pdf) filed on Monday, the D.C. Bar Office of Disciplinary Counsel said that as an assistant U.S. attorney in the District of Columbia, Jennifer Kerkhoff Muyskens led the prosecution in more than 200 cases against defendants charged with felony rioting, conspiracy to riot and destruction of property during Donald Trump's inauguration as president.

"Respondent and the government decided to charge all the arrested participants—even individuals who were non-violent—on the theory that everyone took part in a conspiracy to use a 'black-bloc tactic' by using all-black clothing, face coverings, and coordinated group tactics, to frustrate law enforcement and help the rioters," the complaint says.

Muyskens allegedly removed footage from videos recorded by conservative activist group Project Veritas that could have helped clear the protesters of criminal charges, according to the complaint. It showed protesters discussing plans to remain non-violent and use de-escalation tactics with police, and included footage showing an undercover Metropolitan Police Department officer attending a planning meeting.

Case 2:24-cr-00163-TS    Document 159-2    Filed 04/21/26    PageID.9795    Page 61 of 90

The complaint also says Muyskens made "false and misleading" statements to the court when asked if the government had altered the videos or disclosed all of its footage. She allegedly continued to make false statements and omissions during an investigation into her conduct.

Reuters (https://www.reuters.com/legal/legalindustry/prosecutor-2017-anti-trump-protest-cases-faces-attorney-ethics-charges-2024-07-16/), which has coverage, said Muyskens is now a federal prosecutor in Utah. She and spokespersons for the U.S. Justice Department and the U.S. Attorney's Offices in Utah did not respond to Reuters' requests for comment.

Monday's complaint was filed with the District of Columbia Court of Appeals Board on Professional Responsibility.

CNN (https://www.cnn.com/2024/07/16/politics/doj-prosecutor-accused-of-mishandling-evidence-in-trump-inauguration-protest-cases/index.html) and the Hill (https://thehill.com/regulation/court-battles/4776040-federal-prosecutor-accused-withholding-evidence-trump-cases/) also have coverage.

*Give us feedback, share a story tip or update, or report an error.*

Copyright 2024 American Bar Association. All rights reserved.

*Democracy Dies in Darkness*

LOCAL CRIME & PUBLIC SAFETY

# D.C. prosecutor accused of misconduct at trials of anti-Trump protesters

A police detective is also named in charging documents as helping the prosecutor selectively edit videos to support conspiracy charges.

 7 min

 By Peter Hermann

July 24, 2024 at 9:42 a.m. EDT

A federal prosecutor who oversaw sweeping arrests of anti-Trump demonstrators in the nation's capital manipulated evidence alongside a D.C. police detective in an apparent attempt to strengthen the case, according to an office that investigates misconduct complaints against attorneys in the District.

Jennifer Kerkhoff Muyskens, who has since left the U.S. attorney's office for D.C., worked with a detective, Greggory Pemberton, to edit video of people planning protests of the president's 2017 inauguration, and later falsely told the court about it, the D.C.'s Office of Disciplinary Counsel alleges.

The administrative charges filed July 15 — which could lead to a range of sanctions for Muyskens that include disbarment — mark the latest troubled turn in the mass arrest of more than 200 people that day, in rioting that authorities estimate caused about $100,000 in property damage across 16 blocks downtown. The cases fell apart. Just 21 defendants pleaded guilty before trial. And the D.C. government agreed to pay $1.6 million to settle two lawsuits stemming from the treatment of protesters.

The disciplinary counsel alleges that Pemberton and Muyskens altered evidence that was central to the government's case against the demonstrators. The pair excised portions of a protest planning meeting discussing nonviolence to bolster claims of conspiracy, thereby depriving defendants of evidence to counter the charges, the complaint states. The documents also allege Muyskens and Pemberton initially hid the video's origins. The material came from Project Veritas, a conservative activist group that uses secret recordings to target the mainstream news media and left-leaning groups.

---

 **Follow** D.C. region

 **Follow** +

---

Attorneys for Muyskens, now a federal prosecutor in Utah, did not respond to a request for comment on the charges, which include allegations she violated the rules of professional conduct, knowingly made false statements, obstructed defense attorneys' access to evidence, and concealed or altered evidence.

## Make the most of the DMV with our newsletter

Make living in D.C. a little easier and more fun. Sign up for the Post Local newsletter to get local news, weather and expert advice — where to eat, where to drink and how to get around — every weekday.

(The Washington Post)

Spokespeople for the U.S. attorney's office in Utah and D.C. also declined to comment. Pemberton also did not respond to an inquiry. A D.C. police spokesman declined to comment on the allegations and would not say whether the department has opened an investigation of Pemberton, who now chairs the police labor union.

D.C. prosecutor accused of misconduct in Trump inauguration cases - The Washington Post
Case 2:24-cr-00163-TS    Document 159-2    Filed 04/21/26    PageID.9798    Page 64 of 90
7/28/24, 9:39 PM

Political tensions are again high following the attempted assassination of Trump, who is on the ballot in November. Authorities say privately they are concerned about the coming months given the Jan. 6, 2021, insurrection that occurred at the Capitol the last time Trump lost.

The allegations raised by the disciplinary counsel come seven years after protests against the inauguration of Trump on Jan. 20, 2017, which were largely lawful but at times interspersed with violence. Some people that day broke windows of businesses and vehicles and set a limo on fire. Police said a group used "black bloc" tactics most commonly linked to an international anarchist movement. They dressed in dark colors and ski masks to blend in with peaceful demonstrators, and were armed with crowbars and hammers.

The American Civil Liberties Union of D.C., which in 2021 settled the two lawsuits against the District alleging demonstrators were unlawfully detained, said the new accusations against the prosecutor and police detective are concerning.

"Prosecutors' power to enforce the law makes it particularly important that they abide by it themselves," Michael Perloff, the organization's interim legal director, said in a statement. "Jennifer Kerkhoff Muyskens failed that duty and subjected Inauguration Day protesters to serious hardship and a risk of unjustified incarceration. She should be held accountable for her conduct."

Perloff also said the ACLU is disappointed in prosecutors and D.C. police "for allowing such an incident to occur. As we watch another election season unfold, we expect [D.C. police and the U.S. attorney's office] to better uphold their constitutional obligations."

Shortly after the 2017 inauguration riot, the ACLU compared the police tactics to mass arrests during the World Bank protests in Pershing Park in 2002. D.C. police then used a "trap and detain" strategy that led to more than $13 million in legal settlements, $11 million of it paid by the District.

Police arrested 234 people that day in 2017, but only a handful went to trial, resulting in acquittals or hung juries. Prosecutors dropped the vast majority of cases, including charges against 188 defendants at a single court hearing. Defense attorneys argued their clients were exercising their constitutional rights and being blamed for the actions of a small group of vandals. The disciplinary counsel said Muyskens "decided to charge all the arrested participants — even individuals who were nonviolent — on the theory that everyone took part in a conspiracy."

Allegations of police and prosecutorial misconduct in the cases first arose in early court hearings when discrepancies in testimony and evidence arose, in one case over whether a particular demonstrator had attended a meeting to discuss protest tactics. At a 2019 court hearing, Assistant U.S. Attorney David Goodhand told a judge that false information had been given to a grand jury.

An internal investigation by the U.S. attorney's office found that Muyskens had misrepresented information about one of the defendants, Goodhand said then. A prosecutor who spoke to The Washington Post on the condition of anonymity then to discuss an ongoing investigation said it appeared the omissions were unintentional due to an overwhelming caseload.

Defense attorneys at the time objected to prosecutors' use of Project Veritas materials to bolster their charges of a vast conspiracy. Two judges ruled that Muyskens failed to either supply all of the Project Veritas videos to defense attorneys before trial or edited the videos and failed to disclose all of the edits to attorneys.

In November 2018, a Superior Court judge found that Muyskens intentionally withheld evidence but did not do so maliciously, according to the disciplinary counsel's charging document.

The new allegations brought by the Office of Disciplinary Counsel state that Muyskens and Pemberton knew Project Veritas "had a reputation for editing videos in a misleading way," and that Muyskens planned to use an undercover D.C. police officer who had infiltrated the DisruptJ20 meetings to testify that the secret Project Veritas videos were an accurate representation of the events to avoid disclosing the video's origin.

The documents allege Muyskens and Pemberton omitted three segments of one video by cutting footage, omitting material that "consistently showed that protesters were trained and instructed to expect a nonviolent protest."

"The edited Planning Meeting Video was central to the government's alleged conspiracy and aiding-and-abetting theories of liability," the charging document from the disciplinary counsel alleges. "It was the only video of planning that [Muyskens] relied on at trial. ... The video was the government's primary evidence that there was a conspiracy to riot using black bloc tactics at the anti-capitalist march."

The disciplinary counsel wrote that Muyskens "assured the court" that she and Pemberton had reviewed the planning video and "confirmed it 'was provided in what appears to be complete, unredacted form.'" Muyskens "falsely told the court that she had provided defense counsel with 'the full entirety of those videos from that day,'" the charging documents allege.

Muyskens's attorneys in case filings requested they be given until Aug. 26 to file a formal answer to the complaint. A hearing will then be scheduled.

*Keith L. Alexander contributed to this report.*

Litigation
July 16, 2024, 2:42 PM MDT; Updated: July 16, 2024, 5:03 PM MDT

# Prosecutor of Trump Protesters Accused of Ethics Violations (1)

By Mike Vilensky

**Documents**

 [Petition](#)

---

- Videos used against defendants were edited, petition says
- D.C. Bar counsel asks ethics board to consider sanctions

A Department of Justice attorney who prosecuted alleged rioters at Donald Trump's 2017 inauguration failed to turn over exculpatory evidence, according to a Washington, D.C. Bar disciplinary petition.

The petition Monday accuses federal prosecutor Jennifer Kerkhoff Muyskens of violating six D.C. Bar rules of professional conduct. Those rules include a prohibition on making false statements to the court, a bar on obstructing defense access to evidence, and a requirement to act fairly toward opposing counsel.

The petition from the D.C. bar counsel went to the Board of Professional Responsibility, the disciplinary arm of the DC Court of Appeals, to consider sanctions against Muyskens.

Muyskens didn't respond to requests for comment. The U.S. Attorney's Office for the District of Columbia said: "We cannot comment on ongoing matters."

The accusations stem from Muyskens' 2017-2019 role in overseeing over 200 related criminal cases against defendants who protested now-former President Trump's January 20, 2017 inauguration. The defendants were charged with felony rioting, conspiracy to riot, and destruction of property.

Muyskens allegedly "knew but did not disclose" that videos put forth by the government as evidence of the defendants planning an inauguration day riot were edited, the petition says.

Muyskens also allegedly knew but didn't initially disclose that videos used to prosecute the defendants came from Project Veritas, which "had a reputation for editing videos in a misleading way," the Bar counsel said.

The government argued in its trial against the protesters that they "got the memo" at pre-protest planning meetings that they were planning a riot. But, the undisclosed parts of the videos "supported the defense's counter-theory" that the protesters "did not 'get the memo' for a riot," the petition says. "Rather, they expected and planned to participate in a non-violent protest march."

Even after a judge overseeing some of the prosecutions ordered Muyskens to "disclose everything in the government's possession," including "'any statements about non-confrontation, nonviolence,'" Muyskens "remained silent about the undisclosed videos," the petition says.

During a DOJ probe into her conduct, Muyskens "repeated her false statements and material omissions" about "suppressing relevant information and evidence," the petition says.

The Bar disciplinary counsel requested that the Board consider whether Muyskens' alleged conduct violated D.C. ethics rules for attorneys and, if so, requested that it recommend appropriate discipline for the DC Court of Appeals to consider imposing.

The case is In the Matter of Jennifer Kerkhoff Muyskens, D.C., 2018-D218, petition 7/15/24.

**(Updates throughout with additional reporting and context, including response from D.C. US Attorney's Office in 4th paragraph)**

---

To contact the reporter on this story: Mike Vilensky at mvilensky@bloombergindustry.com

To contact the editor responsible for this story: Martina Stewart at mstewart@bloombergindustry.com

© 2024 Bloomberg Industry Group, Inc.   All Rights Reserved

# Federal Attorney Accused of Deceit in Prosecuting Trump Inauguration Protesters

19, 2024    **by Tom Ramstack**

Sign in with Google

Use your Google Account to sign in to TWN Newsletter

No more passwords to remember. Signing in is fast, simple and secure.

Continue



District of Columbia Court of Appeals. (Photo by Dan McCue)

WASHINGTON — A Justice Department attorney who led prosecutions of anti-Trump and anti-fascist protesters during the 2017 presidential inauguration is facing allegations that she hid evidence that would have exonerated the defendants.

Assistant U.S. Attorney Jennifer Kerkhoff Muyskens faces a possible loss of her license as an attorney.

The D.C. Office of Disciplinary Counsel this week accused her of hiding exculpatory evidence from the defendants, editing videos to take out parts that would minimize their liability and then lying in court to cover up her misdeeds.

Withholding exculpatory evidence is considered a violation of constitutional rights of due process that allows a judge to dismiss charges against a defendant, similar to the dismissal last week of involuntary manslaughter charges against actor Alec Baldwin.

Kerkhoff Muyskens was the lead prosecutor in about 230 of the cases from the 2017 inauguration protests.

The disciplinary counsel accuses her of violating six rules of professional responsibility. They include the ban on "dishonesty, misrepresentation, deceit and fraud" as well as "serious interference with the administration of justice."

Kerkhoff Muyskens "knew that most defendants did not commit violent acts themselves," the **ethics complaint** against her says. "She argued that these defendants were still liable for felony rioting and felony property destruction because they joined a criminal conspiracy to use the protest

march to further the violence and destruction that occurred."

Some of the protesters at the 2017 inauguration broke storefront windows, set a limousine on fire and threw objects at police officers. Police used the black clothing of many self-proclaimed #J20 protesters as an indication they should be arrested.

The prosecutions turned into a fiasco for the Justice Department.

The first six defendants to reach trial were acquitted in D.C. Superior Court. A judge dropped charges against 10 others based on evidence prosecutors withheld exculpatory evidence. Charges against all other defendants were dropped in 2018.

Kerkhoff Muyskens and Washington Police Detective Greggory Pemberton were "primarily responsible for the government's investigation," the ethics complaint says. It asks the D.C. Court of Appeals to impose sanctions on her that could include suspension as an attorney or disbarment.

One of the strongest pieces of evidence against her was a video the Justice Department introduced in court showing a planning meeting by activists that indicated they planned to disrupt the inauguration.

Defense attorneys argued it was deceptively edited to help the prosecution, which Kerkhoff Muyskens denied.

"She told the court that the government had 'provided the clips as we have them,' and 'the only editing' by the government 'was to combine the three clips' of the anti-capitalist 'breakout' into a single video exhibit for trial," the ethics complaint says. "Her statements to the court were false and misleading."

In addition, Kerkhoff Muyskens never turned over to defense attorneys a second video of a planning meeting that "showed that protesters were trained and instructed to expect a non-violent protest; to remain non-violent; to use non-violence and de-escalation techniques with police and counter-protesters," the ethics complaint says.

Kerkhoff Muyskens has most recently been working as an assistant U.S. attorney in Utah.

During a trial for the first six defendants D.C. Superior Court, Kerkhoff Muyskens based her allegations largely on the fact they were present during the protest.

"Each of them made a choice, and each of them played a role," she told jurors in her opening

statement. "You don't personally have to be the one who breaks the window to be guilty of rioting."

Defense attorneys argued there was no evidence that personally linked the defendants to a crime. All of them were acquitted.

*You can reach us at editors@thewellnews.com and follow us on* **Facebook** *and* **Twitter**

A+    a-



Asst. U.S. Attorney Accused of Ethics Breach in Prosecuting Trump Inauguration Protesters    7/28/24, 11:21 PM




Save up to 90% on Temu
Temu

## Asst. U.S. Attorney Accused of Ethics Breach in Prosecuting Trump Inauguration Protesters

...

 **Tom Ramstack**
The Legal Forum, offering legal representation, language translation, media services.
Published Jul 25, 2024

+ Follow

### Explore topics



Sales

Marketing

Business Administration

HR Management

Content Management

Engineering

Soft Skills

See All

WASHINGTON -- A Justice Department attorney who led prosecutions of anti-Trump and anti-fascist protesters during the 2017 presidential inauguration is facing allegations that she hid evidence that would have exonerated the defendants.

Assistant U.S. Attorney Jennifer Kerkhoff Muyskens faces a possible loss of her license as an attorney.

The D.C. Office of Disciplinary Counsel this month accused her of hiding exculpatory evidence from the defendants, editing videos to take out parts that would minimize their liability and then lying in court to cover up her misdeeds.

Withholding exculpatory evidence is considered a violation of constitutional rights of due process that allows a judge to dismiss charges against a defendant, similar to the dismissal last week of involuntary manslaughter charges against actor Alec Baldwin.

The disciplinary proceedings play into the rhetoric of attorneys representing protesters from the Jan. 6, 2021 riot at the U.S. Capitol. They say the roughly 1,400 defendants are being subjected to a political witch hunt by the Justice Department.

Asst. U.S. Attorney Accused of Ethics Breach in Prosecuting Trump Inauguration Protesters

7/28/24, 11:21 PM

Case 2:24-cr-00163-TS   Document 159-2   Filed 04/21/26   PageID.9808   Page 74 of 90

The Jan. 6, 2021 cases represent the largest mass prosecutions in American history with more than 1,000 convictions so far. The sentences range from probation to 22 years in prison.

Kerkhoff Muyskens was the lead prosecutor in about 230 of the cases from the 2017 inauguration protests.

The disciplinary counsel accuses her of violating six rules of professional responsibility. They include the ban on "dishonesty, misrepresentation, deceit and fraud" as well as "serious interference with the administration of justice."

Kerkhoff Muyskens "knew that most defendants did not commit violent acts themselves," the **ethics complaint** against her says. "She argued that these defendants were still liable for felony rioting and felony property destruction because they joined a criminal conspiracy to use the protest march to further the violence and destruction that occurred."

Some of the protesters at the 2017 inauguration broke storefront windows, set a limousine on fire and threw objects at police officers. Police used the black clothing of many self-proclaimed #J20 protesters as an indication they should be arrested.

The prosecutions turned into a fiasco for the Justice Department.

The first six defendants to reach trial were acquitted in D.C. Superior Court. A judge dropped charges against 10 others based on evidence prosecutors withheld exculpatory evidence. Charges against all other defendants were dropped in 2018.

Kerkhoff Muyskens and Washington Police Detective Greggory Pemberton were "primarily responsible for the government's investigation," the ethics complaint says. It asks the D.C. Court of Appeals to impose sanctions on her that could include suspension as an attorney or disbarment.

One of the strongest pieces of evidence against her was a video the Justice Department introduced in court showing a planning meeting by activists that indicated they planned to disrupt the inauguration.

Defense attorneys argued it was deceptively edited to help the prosecution, which Kerkhoff Muyskens denied.

"She told the court that the government had 'provided the clips as we have them,' and 'the only editing' by the government 'was to combine the three clips' of the anti-capitalist 'breakout' into a single video exhibit for trial," the ethics complaint says. "Her statements to the court were false and misleading."

      

| | | | | | |
|---|---|---|---|---|---|
| Articles | People | Learning | Jobs | Games | Join now    Sign in |

violence and de-escalation techniques with police and counter-protesters," the ethics complaint says.

Kerkhoff Muyskens has most recently been working as an assistant U.S. attorney in

Utah.

During a trial for the first six defendants D.C. Superior Court, Kerkhoff Muyskens based her allegations largely on the fact they were present during the protest.

"Each of them made a choice, and each of them played a role," she told jurors in her opening statement. "You don't personally have to be the one who breaks the window to be guilty of rioting."

Defense attorneys argued there was no evidence that personally linked the defendants to a crime. All of them were acquitted.

For more information, contact The Legal Forum (**www.legal-forum.net**) at email: **tramstack@gmail.com** or phone: 202-479-7240.

---

👍 Like          💬 Comment          ↪ Share

---

To view or add a comment, **sign in**

## More articles by this author



**Casa Ruby Founder Pleads Guilty to Diverting**

Jul 27, 2024



**D.C. Council Legislation Seeks to Divert Truant**

Jul 26, 2024



**Senator Menendez's Claims of Reprisal**

Jul 26, 2024

**D.C. Mayor Braces fo Trump Presidency At Threats of Federal Takeover**

See all →

Linked🅸🅽 © 2024    About    Accessibility    User Agreement    Privacy Policy    Your California Privacy Choices    Cookie Policy    Copyright Policy    Brand Policy    Guest Controls

Community Guidelines    Language ⌄



Body of missing child found in San Carlos, police say

**LOOSE LIPS**

# Federal Prosecutor and D.C. Police Union President Accused of Manipulating Evidence in Trial of Trump Inauguration Protesters

*Jennifer Kerkhoff Muyskens, who led the prosecution of Jan. 20, 2017, protesters, could soon face discipline for her misconduct.*

by **ALEX KOMA**



JULY 18TH, 2024

Credit: Darrow Montgomery

The wheels of justice turn slowly, and nowhere is that more true than in the convoluted process

of prosecuting a prosecutor.

A complaint against federal prosecutor **Jennifer Kerkhoff Muyskens**, filed Monday by D.C.'s Office of Disciplinary Counsel, is roughly seven years in the making. Muyskens has faced questions for years about her handling of the rioting charges against protesters at **Donald Trump**'s Jan. 20, 2017, inauguration. But she is only now facing potential sanction from the D.C. courts for her alleged manipulation of evidence.

The ODC, which investigates misconduct claims against attorneys licensed in the District, has formalized many of the complaints about Muyskens' handling of these cases leveled by the protesters, defense attorneys, and even judges over the past several years. But this complaint also offers new details about the role of the lead police detective investigating these cases: **Gregg Pemberton**, the combative, outspoken head of the D.C. Police Union.

Pemberton and Muyskens worked together to deceptively edit videos of the organizers of the so-called "J20" protests, the complaint alleges, in order to remove footage that would be helpful for the protesters' defense and obscure the source of the videos. The ultra right-wing group Project Veritas, which has made a habit of secretly recording liberal groups and then selectively editing those videos, had infiltrated the groups organizing the inauguration demonstrations and handed over footage of their meetings to investigators. The ODC claims that police and prosecutors knew it would undermine their case against the protesters if they revealed the source of the videos, noting that Project Veritas' involvement only came to light because of various defense attorneys' work on the matter.

Muyskens' handling of this evidence has proven so controversial that it was a key factor in a jury's acquittal of six of the protesters tried on rioting charges, and it played a major role in the government's decision to drop the charges against the vast majority of the 234 people arrested during the demonstration. The ODC also alleges that Pemberton aided Muyskens with these improper practices every step of the way, claiming that Muyskens misled various judges about the detective's role in editing the videos. Muyskens has since left D.C. for another job as a prosecutor in Utah, but the complaint also raises major questions about Pemberton's conduct.

"Prosecutors' power to enforce the law makes it particularly important that they abide by it themselves. Jennifer Kerkhoff Muyskens failed that duty and subjected Inauguration Day

protestors to serious hardship and a risk of unjustified incarceration," **Michael Perloff**, the interim legal director of the ACLU's D.C. chapter, writes in a statement to LL. The ACLU was **among those to sue the city** over MPD's handling of the protests that day. "She should be held accountable for her conduct," he adds. "We are disappointed not only in the USAO but also MPD for allowing such an incident to occur."

Spokespeople for both MPD and Muyskens' former employer, the United States Attorney's Office for D.C., declined to comment on the matter. But the USAO has **defended Muyskens' actions** in court in the past, describing her omissions as unintentional rather than malicious. "I don't believe she intentionally lied about anything. I just think it became too much for one person to oversee," an unnamed prosecutor **told the _Washington Post_** in 2019.

But claims that Pemberton and Muyskens made some honest mistakes in these cases are undermined by the extensive evidence provided by the disciplinary counsel, indicating that the pair knew they'd provided incomplete footage to defense attorneys and repeatedly misled judges about the videos. For instance, the complaint claims that even though Pemberton and Muyskens "knew that Project Veritas had omitted and edited some of its videos before producing them, they did not request or obtain Project Veritas's missing videos or unedited footage."

Pemberton and Muyskens initially claimed that they only edited the videos to obscure the **identity of an undercover MPD officer**, **Bryan Adelmeyer**, who had also infiltrated the protest groups. But ODC cites several instances where they edited the videos to obscure references to Project Veritas operatives. (There have been **persistent questions** about MPD's **ties** to right-wing organizations like Project Veritas in the wake of this case, even **prompting a lawsuit** from a transparency nonprofit seeking records about the department's interactions with the group.) The complaint also claims Pemberton and Muyskens removed "exculpatory context" that could've helped defense attorneys.

Prosecutors rested their case on the **novel theory** that all of the hundreds of protesters arrested on Jan. 20 were responsible for vandalism committed by a small handful of attendees, arguing that everyone involved in the event knew that violence and destruction of property was likely and that they encouraged these acts. But some of the videos captured by Project Veritas showed organizers explicitly describing the protests as nonviolent demonstrations, undermining law enforcement's argument. Pemberton and Muyskens removed those sections, in what appears to

be a **clear violation of their obligation** to turn over all evidence that could help defense attorneys, as outlined by the landmark 1963 Supreme Court case *Brady v. Maryland*.

"Both judges who later considered the issue … found that the complete, unedited footage was exculpatory," the ODC complaint adds.

In addition to the controversy over the video footage, the ODC alleges that Pemberton and Muyskens **tried to cover up their incorrect** claim that one person facing rioting charges, **Cassandra Beale**, attended planning meetings for the protests when in fact she had not.

Pemberton told a grand jury that he could identify Beale as an attendee at one of those meetings in order to obtain an indictment against her. But when Beale's defense attorneys challenged that assertion, Muyskens asked Pemberton to "double check" the video, the ODC wrote, and he later admitted he made a mistake. But Muyskens neglected to tell Beale's attorneys over a period of several months of inquiries, the complaint alleges. At one point, she insisted it was merely her opinion that Beale could be seen on the video in an effort to obscure Pemberton's role, which the ODC deems among her "material, false statements" to the court.

The disciplinary counsel also wrote that Muyskens "made additional false statements and material omissions to falsely explain her conduct" over the course of its own investigation into the matter, as well as during an internal review by her superiors at the Department of Justice. The complaint does not outline a potential penalty for Muyskens, which would be handed down from the city's Board of Professional Responsibility. The board **can issue** anything from a temporary suspension of her law license to full disbarment.

The ODC complaint could result in serious consequences for Muyskens, deemed by her peers as an aggressive prosecutor of murder cases during her time in D.C. "I want to see [her] disbarred," **Elizabeth Lagesse**, one of the protesters charged by Muyskens, **told the *Intercept*** in 2018, shortly after her case was dropped. "In my view, everyone in D.C. under her jurisdiction is in danger."

Pemberton, on the other hand, isn't up for any consequences, despite his well-documented role in this case. (And the public wouldn't necessarily know if he was due to **secrecy** around police

discipline in D.C.) How can Pemberton serve as a credible witness when a defense attorney could reasonably point to his conduct in this case as evidence that a jury shouldn't take his claims seriously? For someone who spends a lot of his time on **Fox News** or social media demanding that D.C. get tougher on crime, he sure has undermined a lot of prosecutions in this city.



Women's March on Washington (Photo by Sarah Burris / RawStory.com)

▶ Li... [A文] (10) (10) 1.0×

00:00 ──────── 01:55

# D.C. prosecutor 'manipulated evidence' in cases against anti-Trump protesters: report

 **By Brad Reed**
July 25, 2024 8:31 PM ET

A prosecutor in Washington, D.C. is being accused of "manipulating evidence" to strengthen criminal cases against demonstrators who years ago protested against former President Donald Trump.

---

ADVERTISEMENT



**Fork**
**Ising To Get**



**Trick Ame**
**Residents**




The Washington Post reports that prosecutor Jennifer Kerkhoff Muyskens is being accused of working with Washington, D.C., Police Detective Greggory Pemberton of deceptively editing videos of people who demonstrated at Trump's inauguration in 2017.

The allegations are being leveled by Washington, D.C.'s Office of Disciplinary Counsel, which is charged with investigating complaints of

D.C. prosecutor manipulated evidence in cases against anti-Trump protesters: report – Raw Story                                                     7/28/24, 11:02 PM

prosecutorial misconduct.

According to the Post,

 **PLAY RAW WORD DAILY.**



including disbarment if the charges against her — which include allegations that "she violated the rules of professional conduct, knowingly made false statements, obstructed defense attorneys' access to evidence, and concealed or altered evidence" — are upheld.

**ALSO READ: <u>Kamala Harris overwhelmed as applause drowns speech to teachers</u>**

The charges against Muyskens claim that she and Pemberton not only cut out

not only cut out portions of the videos in which the demonstrators discussed engaging in nonviolent action, but also concealed the fact that they obtained footage of the protesters from Project Veritas, a right-wing sting organization that has faced widespread criticism in the past for using deceptive editing to portray political opponents in an unfavorable light.

ADVERTISEMENT

As the Post's report notes, Muyskens' case against the roughly 200 demonstrators arrested for their actions at Trump's inauguration largely fell apart, as just 10

percent of the demonstrators pleaded guilty ahead of the trial and the D.C. government wound up paying $1.6 million to settle lawsuits that alleged mistreatment of the demonstrators.

Do Not Sell or Share My Personal Information

# THE HILL

**News** | **Policy** | **Business** | **Heal**

TRENDING: **DONALD TRUMP**    **PARIS OLYMPICS**    SPONSORED:

**MARK MEADOWS**    **KAMALA HARRIS VP**    **CONTENT FROM GUARDANT HEALTH**



**JUST IN**

**Mark Kelly seen most favorably of potential VP picks, followed by Shapiro, Beshear, Buttigieg: Poll**

2 HOURS AGO

**Hunter Biden's attorneys say they 'never tried to mislead' court in**

COURT BATTLES

# Federal prosecutor accused of withholding evidence in Trump protest cases

BY NICK ROBERTSON - 07/16/24 7:16 PM ET

 SHARE     POST



*Secret Service agents escort President Donald Trump's vehicle along the inauguration day parade route after he*



Choose love.

Federal prosecutor accused of withholding evidence in Trump protest cases    7/28/24, 11:00 PM

**response to judge's sanction threat**

3 HOURS AGO

**Bangladesh ends 11-day mobile internet blackout after deadly protests**

4 HOURS AGO

**Mark Meadows asks Supreme Court to move Georgia election case to federal court**

5 HOURS AGO

**Paradise, Calif., decimated by 2018 wildfire, under new evacuation warning**

*was sworn in as the 45th President of the United States, Friday, Jan. 20, 2017, in Washington. (AP Photo/Evan Vucci)*

A former federal prosecutor who oversaw more than 200 cases related to protests of former President Trump's 2017 inauguration has been accused of withholding evidence, according to an attorney disciplinary claim.

Jennifer Kerkhoff Muyskens, formerly of the D.C. district attorney's office, allegedly attempted to edit or obscure video evidence used against the defendants that otherwise could have been used to clear them of criminal charges, argued the D.C. Office of Disciplinary Counsel (ODC).

ADVERTISEMENT





At LoveHasNoLabels.com

love has no labels

ad COUNCIL

## Most Popular

**1** **Elon Musk calls Harris an 'extinctionist'**

**2** **Mark Kelly seen most favorably of potential VP picks, followed by …**

**3** **Mark Meadows asks Supreme Court to move Georgia election case**

**4** **Paris Olympics organizer says drag performance was nod**

Federal prosecutor accused of withholding evidence in Trump protest cases                                                    7/28/24, 11:00 PM

**5 HOURS AGO**

**Blood test has a 90 percent accuracy rate in determining whether memory loss is due to Alzheimer's: Study**

**6 HOURS AGO**

**Second man injured during Trump rally shooting has been released from the hospital**

**7 HOURS AGO**

**Harris's rise comes amid new political landscape for women**

**7 HOURS**

Muyskens's cases involved charges of rioting, conspiracy and destruction of property during Trump's 2017 inauguration, mostly targeting protest group DisruptJ20. A total of 230 people were arrested as part of the protests.

Disciplinary counsel Hamilton Fox claims that Muyskens relied upon video evidence provided by Project Veritas, a conservative activist group infamous for undercover video, to back the prosecutions, knowing the video was misleadingly edited.

Fox also claims Muyskens attempted to hide from the court that Project Veritas was the source of the video evidence by removing references to the group and editing out some clips, which it argued deprived the defendants of a complete legal defense.

<div align="center">

| 5 | **The most chilling words today: I'm from NewsGuard and I am** |

| 6 | **JD Vance acknowledges white** |

**Load more**

</div>



ADVERTISING

**AGO**

**VIEW ALL**



Barista All You

Muyskens knew that her "editing of the original videos could hurt the prosecution and help the defense," the complaint said. Fox also claimed Muyskens's "statements and omissions to the government … were false and misleading."

Muyskens's charges against more than 100 defendants were eventually dropped after some early trials ended in acquittals.

Fox also claims Muyskens made false claims during investigations into the alleged misconduct, both to the disciplinary office and the

## What Do You Think? ⚑ ⋮

Do you typically read any email newsletters in the morning to start your day? 📧

◯ Yes, every day

◯ Yes, most days

◯ Sometimes I do

◯ No, I never do

◯ Other / Does not apply

\* By clicking "NEXT" I submit my answers and consent to the use of cookies for research and advertising purposes; I have read and agree to the CivicScience Privacy Policy and Terms of Service

**NEXT \***

## Sponsored Content



**How Rex Pursues His Culinary Dreams While Navigating His Hemophilia A**

BY **BAYER HEALTHCARE USA**