Kailin Wang
2481 Fairway Dr.
Spanish Fork, Utah 84660
801-787-9755
kaywg2372@gmail.com

FILED
2026 APR 21
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**KAILIN WANG**,<br><br>Defendant. | DEFENDANT'S MOTION IN LIMINE TO EXCLUDE OR LIMIT DR. J. REID MELOY'S OPINION THAT DEFENDANT'S OCTOBER 3, 2025 CALIFORNIA COURT FILING CONSTITUTES EVIDENCE OF STOCHASTIC VIOLENCE RISK<br><br>Case No. 2:24-cr-00163-TS<br><br>Judge Ted Stewart<br><br>Magistrate Judge Dustin Pead |

## I. INTRODUCTION

The government's sentencing presentation relies on the expert opinion of Dr. J. Reid Meloy that Defendant Kailin Wang's October 3, 2025 Request for Judicial Notice, filed in California Superior Court ("the Filing"), constitutes evidence of stochastic violence risk. The government's sole concrete exhibit purporting to demonstrate that the Filing actually incited a third party is Discovery Item RM0016162: a LinkedIn message sent by Julie Haskell (J.H.) to TT (V1's Mother) (Ex. A)—a public figure—the day after the October 3, 2025 Filing (Ex. B). The government characterizes this message as a "threatening communication to a protected party" caused by Defendant's October 3, 2025 court filing (Ex. B).

Additionally, the assertion that the San Francisco Superior Court prohibited Wang from making factual assertions in her court filings is false. Judge Roeca—a highly controversial, openly gay judge widely documented as having deeply favored male litigants—misquoted a nonexistent order to obscure his own misrepresentations, as the record reflects (Ex. C).

Both the characterization and the causal claim collapse under scrutiny. Ms. Haskell has since provided a clarification—available to the government—establishing that: (1) she acted entirely on her own initiative without any contact or instruction from Defendant; (2) her message contained no threats; and (3) far from being placed in fear, TT (V1's Mother)-subsequently liked Ms. Haskell's LinkedIn posts. When the government's sole stochastic violence exhibit is examined against Ms. Haskell's own words, Dr. Meloy's opinion is left without any factual foundation.

Defendant moves in limine to exclude or limit Dr. Meloy's opinion on the October 3, 2025 Filing on two independent grounds. First, the First Amendment prohibits using a protected court filing as evidence of violent intent at sentencing. Second, the government's only evidentiary support for actual stochastic violence—RM0016162—is affirmatively refuted by Ms. Haskell's own statement and does not satisfy any element of the true threats or incitement doctrine under controlling Supreme Court authority.

## II. THE GOVERNMENT'S SOLE STOCHASTIC VIOLENCE EXHIBIT IS REFUTED BY ITS OWN AUTHOR

### A. RM0016162: The Message the Government Relies Upon

On October 4, 2025—the day after Defendant filed the October 3 judicial notice motion—Julie Haskell, a Legal Abuse Advocate and self-described independent activist, sent a LinkedIn InMail message to TT. The message reads in its entirety:

> *What you have done to that little [Redacted Child's name] and the Wang family is truly despicable. It's deeply concerning and unacceptable. That little boy and the Wang family are forever ruined due to you and your husband's reprehensible behavior. Karma always finds a way. Julie*

The government has designated this message as RM0016162 and described it in AUSA Blanch's April 21, 2026 discovery letter as a "LinkedIn private message sent by third-party J.H. to a protected party in Victim-1's family, the day after Defendant filed allegations in San Francisco Superior Court." The government's sentencing materials and Dr. Meloy's supplemental assessment cite this as evidence that Defendant's Filing caused a third party to contact and threaten a protected party—the paradigm example of stochastic violence.

### B. Ms. Haskell's Own Statement Destroys Every Element of the Government's Theory

On April 16, 2026—nearly six months after sending the original LinkedIn message—Ms. Haskell proactively forwarded her clarification and expressly authorized it to be transmitted to TT (V1's Mother)-- and all of TT (V1's Mother's)-- attorneys. The clarification reads:

> *Tell* TT (V1's Mother's) *that I sent this message to her on my own accord. **There is no way shape or form that Kailin instructed me to direct communication** to* TT (V1's Mother's). *I was simply expressing my disgust with the horrific abuse they*

*have inflicted on Kailin and her son. If they have a problem with anything they can contact my attorney Paul Frassetto. My email was in no way threatening only expressing how karma can be bad for all humans who conduct themselves as do the [V1's Public Figure Family]. BTW –TT went on to like some of my posts on LinkedIn. Please be free to send my email to TT and her attorneys. If the attorneys have any questions they can contact my attorney. Additionally, let TT know moving forward I will not contact her again, since it was so upsetting to her.*

Ms. Haskell further provided her attorney's direct contact information: Paul Frassetto, telephone 415-307-5383, noting that he is currently traveling abroad but will be available within two weeks. The government has therefore had full opportunity to contact Ms. Haskell's independent counsel to verify or challenge her account. It has not done so.

Ms. Haskell's statement dismantles the government's theory at every element:

**Causation is absent. Ms. Haskell states unambiguously:** "There is no way shape or form that Kailin instructed me to direct communication to TT." Stochastic violence theory requires a causal pathway from the defendant's speech to the third party's action. See *Amman & Meloy* (2021, 2022). Ms. Haskell—the very third party at issue—has severed that causal chain herself. She acted entirely on her own accord, having formed her own independent views about the V1's Family family. The government cannot establish that the October 3, 2025 Filing caused or contributed to Ms. Haskell's decision to send the message when the sender herself categorically denies any connection.

**The message contains no threat. Ms. Haskell states:** "My email was in no way threatening only expressing how karma can be bad for all humans who conduct themselves as do the [Redacted CT's Family]." The message's actual content confirms this. The words "karma always finds a way" express a moral sentiment—not a threat of bodily harm or death. Under *Watts v. United States*, 394 U.S. 705, 708 (1969), even a statement far more alarming—"the first man I want to get in my sights is L.B.J."—did not constitute a true threat when viewed in context. A reference to karma does not come within any cognizable reading of Watts or its progeny as a true threat.

There was no victim fear. A true threat requires that a speaker direct a communication "to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Virginia v. Black*, 538 U.S. 343, 360 (2003). Ms. Haskell reports that TT "went on to like some of my posts on LinkedIn" after receiving the message. A person placed in genuine fear of bodily harm or death does not subsequently seek out and affirmatively like the sender's social media posts. TT's own LinkedIn conduct is direct, observable evidence that she was not placed in fear—and it is evidence created by TT herself, not by Defendant.

Ms. Haskell acted through independent legal counsel. Ms. Haskell retained her own attorney, Paul Frassetto (415-307-5383), directed all follow-up inquiries to him, committed proactively to no further contact with the V1's Family family, and expressly authorized the transmission of her

statement to opposing counsel. This is the conduct of an independent person managing her own affairs through proper legal channels—not a radicalized follower acting under the direction or influence of Defendant.

**C. Without RM0016162, Dr. Meloy's Stochastic Violence Opinion Has No Evidentiary Anchor**

The government's discovery letter of April 21, 2026 identifies seven specific exhibits produced in connection with Dr. Meloy's updated assessment. Six of those exhibits (RM0012763, RM0013053, RM0014156, RM0014159, RM0014160, RM0014166) relate to Defendant's discovery materials posted online—a separate issue not addressed in this motion. RM0016162 is the only exhibit reflecting alleged actual third-party contact with a protected party as a result of Defendant's conduct. It is, in other words, the government's only concrete evidence of stochastic violence having actually occurred in connection with the October 3, 2025 Filing.

When that exhibit is assessed in light of Ms. Haskell's own clarification—which the government has had since April 16, 2026—it does not show stochastic violence. It shows an independent advocate sending a civil message to a public figure expressing moral disapproval, a message the recipient found untroubling enough to respond to by liking the sender's posts. Dr. Meloy's supplemental assessment, to the extent it relies on RM0016162 as evidence that the October 3, 2025 Filing triggered third-party threatening conduct, rests on a factual premise that the record affirmatively refutes.

### III. THE FIRST AMENDMENT INDEPENDENTLY BARS USING THE OCTOBER 3, 2025 FILING AS EVIDENCE OF VIOLENT INTENT

Even if RM0016162 were not refuted by Ms. Haskell's statement, the October 3, 2025 Filing itself is constitutionally protected speech that may not be used to enhance Defendant's sentence. The government's broad authority under 18 U.S.C. § 3661 to present relevant conduct at sentencing does not override the First Amendment. See *Dawson v. Delaware*, 503 U.S. 159, 167 (1992) (First Amendment limits use of protected speech at sentencing). The question is whether the Filing is protected speech. It plainly is.

**A. The Filing Contains No True Threat**

The Supreme Court has held that only true threats fall outside First Amendment protection. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992). In *Watts v. United States*, 394 U.S. 705, 708 (1969), the Court held that speech must be interpreted "with the commands of the First Amendment clearly in mind" before being stripped of protection, and that even alarming political statements may constitute mere "political hyperbole." In *Counterman v. Colorado*, 600 U.S. 66, 79 (2023), the Court added a subjective recklessness requirement: the speaker must have "consciously disregard[ed] a substantial [and unjustifiable] risk that the conduct will cause harm to another."

The October 3, 2025 Filing is a procedural motion for judicial notice submitted to a California Superior Court clerk. It contains no statements directed at any person expressing intent to harm. Filing a court motion cannot constitute conscious disregard of a risk of harm to others. The Counterman mens rea requirement is not remotely satisfied.

## B. The Filing Does Not Constitute Incitement Under Brandenburg or Claiborne Hardware

In *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), the Supreme Court protected speech far more inflammatory than anything in Defendant's court filing. An *NAACP* official told an assembled crowd that boycott-breakers would "have their necks broken," language the Court acknowledged "might have been understood as inviting an unlawful form of discipline or, at least, as intending to create a fear of violence." 458 U.S. at 900 n.29. The Court nonetheless held the speech protected, reasoning that an advocate "must be free to stimulate his audience with spontaneous and emotional appeals for unity and action in a common cause. When such appeals do not incite lawless action, they must be regarded as protected speech." 458 U.S. at 927-28.

The October 3, 2025 Filing is a judicial notice motion. It was not delivered to an assembled audience. It contains no calls to action. It does not identify CT's (V1's) or any protected party as a target to be confronted. If Charles Evers' in-person exhortation to a crowd about broken necks is protected speech, Defendant's court filing is protected by a margin that admits of no serious argument.

## C. Virginia v. Black Forbids Prima Facie Presumptions of Threatening Intent

In *Virginia v. Black*, 538 U.S. 343, 364-65 (2003), the Supreme Court struck down a statute allowing the mere act of cross burning to serve as prima facie evidence of an intent to intimidate, holding that such a presumption creates "a chill on constitutionally protected speech." A true threat requires showing that the speaker directed a communication "to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." 538 U.S. at 360.

Dr. Meloy's opinion commits the same error *Virginia v. Black* condemned: it treats the act of filing a court motion as presumptive evidence of stochastic violence risk, without identifying threatening content within the Filing, without proof of intent to place any person in fear, and without a reliable causal mechanism connecting the Filing to actual danger. This is precisely the unconstitutional presumption Black prohibits.

## IV. CT'S (V1'S)'S OWN COUNSEL PUBLICLY FILED DEFENDANT'S NUDE PHOTOGRAPH, JUVENILE RECORDS, AND GYNECOLOGICAL RECORDS IN SAN FRANCISCO FAMILY COURT—CONDUCT DR. MELOY HAS WHOLLY IGNORED

Any serious stochastic violence analysis of this case must confront a profound asymmetry that Dr. Meloy's supplemental assessment ignores entirely: it is CT's (V1's) Christoffer V1's Family—through his attorneys Douglas Rappaport and Erica T. Johnstone—who publicly filed Defendant's

intimate photograph, juvenile records, and gynecological records in the San Francisco Superior Court public docket. These acts, which created permanent public exposure of Defendant's most private information in a searchable court record, are the kind of conduct that actually generates third-party outrage and sympathy for a victim. Dr. Meloy has assessed the risk that Defendant's supporters might be inflamed on her behalf while saying nothing about why they might be inflamed—and the documented answer is CT's (V1's)'s own litigation conduct.

**A. CT's (V1) Counsel Threatened to File and Display Defendant's Nude Photograph in Open Court**

On October 7, 2022, CT's (V1's)'s attorney Erica T. Johnstone sent Defendant an email on behalf of Douglas Rappaport advising that trial Exhibit DC 1A—identified as containing Defendant's nude photograph—would be provided "in the unredacted version at trial." That email constituted a direct, written threat by CT's (V1's)'s counsel to display Defendant's intimate photograph in open court proceedings in San Francisco Superior Court Case No. FDV-19-814465. In response, Defendant filed on October 8, 2022 a Request to File New Litigation by Vexatious Litigant (VL-110) in that same court, seeking an order to strike and prohibit CT's (V1's) from filing or presenting Defendant's nude photographs at the DVRO trial. (Ex. D)

The VL-110 filing states the harm plainly: CT's (V1's) threatened "unlawful dissemination of explicit nude pictures of Wang at the DVRO Trial," in potential violation of California Penal Code provisions governing the dissemination of intimate images without consent. CT's (V1's)'s counsel proceeded to place Exhibit DC 1A—containing Defendant's nude photograph—into the San Francisco Superior Court's file in a domestic violence proceeding, creating a public court record containing Defendant's intimate image. This is not a disputed fact: CT's (V1's)'s own counsel confirmed in writing that the exhibit would be presented in unredacted form. (Ex. D)

**B. CT's (V1's) Filed Defendant's Juvenile Records and Gynecological Records on the San Francisco Family Court Public Docket**

The same public docket in Case No. FDV-19-814465 contains Defendant's juvenile records and gynecological records, filed by CT's (V1's)'s legal team in the course of this domestic violence and custody litigation. These are among the most sensitive categories of personal records that exist—records that carry their own statutory privacy protections under California law. Their placement into a publicly accessible court file by CT's (V1's)'s attorneys created permanent public exposure of Defendant's most private health and legal history, accessible to any member of the public who searches the San Francisco Superior Court docket. (Ex. E)

**C. Dr. Meloy's Silence on CT's (V1's)'s Conduct Renders His Stochastic Violence Analysis Selectively and Fatally Incomplete**

Dr. Meloy opines that Defendant's supporters may be inflamed by information about this case and motivated to act against CT's (V1's) and his family. He attributes this risk to Defendant's online

communications and court filings. But he has not asked—and apparently has not considered—why any member of the public who becomes aware of this litigation might be sympathetic to Defendant and hostile toward CT's (V1's). The documented record provides a clear answer: CT's (V1's)'s attorneys threatened to display Defendant's nude photograph in open court; filed her intimate image in a public court record; placed her juvenile and gynecological records in a publicly accessible docket; and litigated this custody case in ways that any reasonable observer could view as designed to humiliate and harm Defendant. (Ex. F)

A threat assessment expert who evaluates only the defendant's conduct while ignoring the documented provocations by the opposing party has not conducted a neutral or reliable assessment. He has conducted advocacy. Stochastic violence theory, to the extent it has any scientific validity, must account for the full context in which third-party sympathizers form their views. When that full context includes CT's (V1's)'s attorneys publicly filing a nude photograph of Defendant and threatening to display it in open court, the conclusion that Defendant's court filings are the source of third-party outrage is not science—it is selection bias.

This causation failure is compounded by a basic feature of these proceedings that Dr. Meloy has not addressed: the California family court hearings at issue are public. Hearing links are publicly accessible on the court's docket, and any member of the public may independently click through and observe the proceedings without any prompting, direction, or communication from Defendant whatsoever. What any such independent observer will see is CT's (V1's) side of the litigation prosecuted by a team of multiple retained attorneys—at various stages including Douglas Rappaport and Erica T. Johnstone—arrayed against Defendant: an indigent minority woman appearing pro se. The raw and observable disparity of that posture is itself an independent cause of third-party sympathy for Defendant and indignation toward CT's (V1's) side. No communication from Defendant is required to produce that reaction; CT's (V1's) own conduct in these public proceedings produces it directly.

The stochastic violence framework, as Amman and Meloy themselves describe it, requires a causal pathway from the defendant's speech to third-party action. That framework has no application where the third-party reaction flows independently from the opposing party's own publicly observable conduct. Defendant cannot be held responsible for others' reactions to what CT's (V1's) attorneys have done in open court—conduct that anyone with a public docket link may independently witness and judge for themselves. If members of the public observe these proceedings and are angered by what they see, the cause of that anger is CT's (V1's) own actions. Defendant did not manufacture those actions; she is their victim. Attributing the public's reaction to CT's (V1's) own conduct to Defendant's speech inverts the causal reality and is, again, not threat assessment science—it is advocacy.

The Court should require Dr. Meloy to address, in any supplemental assessment, the role of CT's (V1's)'s own litigation conduct—including the public filing of Defendant's nude photograph,

juvenile records, and gynecological records—as a cause of any third-party sympathy for Defendant and hostility toward CT's (V1's) before that assessment is credited at sentencing.

## V. CONCLUSION

The government's stochastic violence theory as applied to the October 3, 2025 Filing rests on a single evidentiary exhibit—RM0016162—that is affirmatively refuted by its own author. Julie Haskell has confirmed that she acted independently without any instruction from Defendant, that her message contained no threats, and that TT demonstrated no genuine fear by subsequently liking her LinkedIn posts. Stripped of RM0016162, Dr. Meloy's opinion has no factual anchor. Stripped of the First Amendment's protection, the October 3, 2025 Filing—a court motion containing no threats, no targeting, and no calls to action—cannot constitutionally be used as evidence of violent intent at sentencing under Watts, Claiborne Hardware, Counterman, and Virginia v. Black. And Dr. Meloy's assessment is fatally incomplete for its silence on CT's (V1's)'s own documented conduct—the public filing of Defendant's nude photograph, juvenile records, and gynecological records—as the more credible source of any third-party outrage directed at CT's (V1's).

Defendant respectfully requests that this Court:

- Exclude or decline to credit Dr. Meloy's opinion insofar as it characterizes the October 3, 2025 Request for Judicial Notice as evidence of stochastic violence risk;
- Find that RM0016162 does not establish third-party threatening conduct caused by Defendant's Filing, in light of Ms. Haskell's sworn clarification that she acted independently, made no threats, and that the recipient demonstrated no fear;
- Rule that the October 3, 2025 Filing is constitutionally protected petitioning activity that may not be used as evidence of violent intent at sentencing under Watts, Claiborne Hardware, Counterman, and *Virginia v. Black*;

Dated: April 21, 2026

Respectfully submitted,

Kailin Wang

Defendant, Pro Se