## COMPARABLE SENTENCES — FEDERAL CYBERSTALKING AND RELATED THREAT-COMMUNICATION CASES

> Recent § 2261A and closely analogous threat-communication cases confirm that even markedly more aggravated conduct than Ms. Wang's has consistently resulted in noncustodial sentences or custodial terms well below her negotiated 12-month ceiling. Notably, *Sandoval* and *Suman*—involving covert nude recording paired with a knife display in a military workplace, and explicit death and bomb threats backed by an arsenal of firearms, respectively—resulted in sentences of only 7 and 9 months' imprisonment. This pattern reinforces that any term of incarceration in Ms. Wang's far less dangerous case would create, not avoid, unwarranted sentencing disparity under § 3553(a)(6).

| CASE | KEY AGGRAVATING FACTORS | SENTENCE | PDF PAGES |
|---|---|---|---|
| **United States v. Cutler**<br>No. 2:24-cr-00053 (D. Utah) | – Two victims; two counts of cyberstalking<br>– Campaign spanning more than three years (2017–2020)<br>– More than 40 anonymized accounts and phone numbers; locked victim out of his own online accounts, causing documented financial loss<br>– Filed false reports with federal law enforcement authorities<br>– Same district as Wang | **36 months' probation**<br>First 6 months: home detention<br>Restitution: $17,639.46<br>Rule 11(c)(1)(C) plea | pp. 1–11 |
| **United States v. Chand**<br>No. 2:21-cr-00158 (E.D. Cal.) | – Prior 2017 conviction involving the same victim, who was 15 years old at the time; offense included eliciting child sexual exploitation material (CSAM)<br>– Served two years in jail on prior case<br>– Cyberstalking commenced while defendant was on parole<br>– Approximately 176 calls and 63 threatening voicemails, often from blocked numbers<br>– Explicit threats of physical violence against victim and her family | **36 months' probation**<br>Restitution: $8,025.70<br>https://www.justice.gov/usao-edca/pr/sacramento-county-man-pleads-guilty-cyberstalking | pp. 12–20 |
| **United States v. Roe**<br>No. 1:24-cr-00200 (D. Md.) | – Six victims; five counts of making harassing phone calls (47 U.S.C. § 223(a)(1)(C))<br>– Campaign spanning more than one year (December 2019–January 2021)<br>– Thousands of spoofed calls, texts, and emails using Prankowl, PrankDial, and VPN services to mask identity<br>– Filed frivolous police reports and sought a protective order against Victim 1 in New York, forcing her to retain counsel to defend the proceeding<br>– Targeted victims' employers and businesses; two businesses were overwhelmed by the volume of communications<br>– 481+ attempted unauthorized Apple account accesses<br>– Victim 1 incurred more than $50,000 in legal expenses<br>– Two prior comparable episodes (2011–2012 and 2015–2016) | **60 months' probation**<br>6 months' home confinement<br>500 hours community service<br>Restitution: $418,343.10<br>Rule 11(c)(1)(C) plea<br>https://www.cbsnews.com/baltimore/news/maryland-cyberstalking-dating-app-new-york-sentenced/<br>https://www.fbi.gov/contact-us/field-offices/baltimore/news/seeking-victim-information-in-richard-michael-roe-investigation | pp. 21–27 |
| **United States v. Garcia**<br>No. 5:23-cr-00238 (W.D. Tex.) | – Registered 18 website domains using variations of victim's name<br>– More than 750 blog posts targeting victim by name | **60 months' probation** | pp. 28–33 |

FILED
2026 APR 28
CLERK
U.S. DISTRICT COURT

| CASE | KEY AGGRAVATING FACTORS | SENTENCE | PDF PAGES |
|---|---|---|---|
| | – Emailed victim's employer; explicitly stated intent to "ruin your fucking life" and cause his termination<br>– Created multiple fake social media accounts impersonating victim on Facebook, Instagram, and Twitter<br>– Sophisticated, sustained campaign designed to destroy victim's professional livelihood | 180 days in residential re-entry center | |
| **United States v. Sandoval**<br>No. 3:23-cr-00178 (S.D. Cal.) | – Pleaded guilty to stalking under 18 U.S.C. §§ 2261A(2)(B) and 2261(b)(5)<br>– Covertly installed a hidden camera in victim's workplace office without her knowledge<br>– Secretly recorded victim undressed and changing clothes in her office<br>– Rifled through victim's office and personal belongings despite her repeated objections<br>– Displayed a knife to victim in her office<br>– Emailed victim her own nude images and threatened to send all videos of her changing<br>– Continued sending messages through multiple online platforms after victim directed him to stop | 7 months' imprisonment<br>3 years' supervised release<br>Fine: $2,000 | pp. 34–42 |
| **United States v. Suman**<br>No. 7:24-cr-00700 (S.D.N.Y.) | – Pleaded guilty to threatening interstate communications under 18 U.S.C. § 875(c) (closely analogous federal threat-communication offense)<br>– Explicit, hate-based threats of death and serious bodily harm sent over Facebook and email to a news reporter and to a retired police sergeant<br>– Threatened to kill victim and her family; separately threatened to blow up her residence<br>– Boasted of possessing "more guns than ever," including fully automatic weapons<br>– Search of residence recovered 11 firearms and ammunition, a "Full Auto Modification Manual," and a packed "go bag" suggesting readiness to act<br>– Sent additional threatening messages believed directed at the retired police sergeant's minor daughter<br>– Prior history of threatening law enforcement (2011) | 9 months' imprisonment<br>3 years' supervised release<br>(Government sought 16 months within a Guidelines range of 10–16 months)<br><br>https://www.justice.gov/usao-sdny/pr/south-carolina-man-arrested-hate-based-threats-kill-news-reporter-and-her-family | pp. 43–51, 53–54 |
| **United States v. Dennis**<br>No. 20 CR 623 (S.D.N.Y.) | TRIAL CONVICTION<br>– Three counts; multiyear campaign against three former law partners<br>– Thousands of threatening emails sent at all hours; explicit threats including "sleep with one eye open," "I will find you," and "people will be dying daily"<br>– Threatened to "chase down" a victim's minor children<br>– Victims relocated, upgraded security systems, and slept with loaded firearms<br>– Defendant represented himself pro se at trial | 24 months' imprisonment<br>3 years' supervised release<br>(Government sought 54 months) | pp. 73–76 |
| **United States v. Yung**<br>No. 19-1640 (D. Del.) | – 18-month campaign targeting victim (a Georgetown admissions interviewer) and his family | 46 months' imprisonment<br><br>https://law.justia.com/cases/federal/appellate-courts/ca3/19-1640/19-1640-2022-06-13.html | pp. 62–72 |

| CASE | KEY AGGRAVATING FACTORS | SENTENCE | PDF PAGES |
|------|-------------------------|----------|-----------|
| | – Thousands of posts across multiple platforms: fake obituaries for victim's wife and son; KKK-themed profiles created in victim's name; false accusations of rape, lynching, and child sexual molestation<br>– Posted Craigslist sex advertisements directing strangers seeking violent sexual encounters to victim's home address; unknown men physically appeared at the home on multiple occasions at night<br>– Impersonated victim's wife in fetish-site sex-slave advertisements; hundreds of calls routed to the family<br>– Filed false Better Business Bureau complaints accusing victim of sexual assault<br>– Conducted campaign in part using government computers while employed as a state law clerk | 3 years' probation<br>Restitution: ~$70,000 (investigative costs) | |
| **United States v. Krezoub**<br>No. SACR 23-00042 (C.D. Cal.) | – Two counts: stalking (18 U.S.C. §§ 2261A(2)(B), 2261(b)(5)) and interstate extortion (18 U.S.C. § 875(d))—a more serious charge profile than Wang's single count<br>– Used multiple phone numbers to evade victim's blocking efforts<br>– Extortionate texts demanding approximately $500,000 in luxury goods (Chanel, Dior) as the price of silence | **Time served**<br>1 year supervised release<br>$200 special assessment<br>Fines waived; deported to France | pp. 77–82 |
| **United States v. Bracken**<br>No. 2:24-cr-00132 (D. Utah) | – TRIAL CONVICTION<br>– Repeated explicit death threats directed at the Salt Lake County Sheriff, government offices, and a private law firm<br>– Defendant blamed officials for a property foreclosure; threatened to kill law enforcement for "treason," stating the penalty was death | **60 months' imprisonment**<br>3 years' supervised release | See PDF[*] |
| **United States v. Wang**<br>No. 2:24-cr-00163 (D. Utah)<br>*Present Case* | • Two victims; conduct toward CT (V1) arising from custody dispute via indirect social media posts (i.e.; Medium.com) calling V1 a deadbeat father, referencing pressure for an abortion, ousting him as a sperm bank — derogatory but not defamatory, no threats No violence, weapons, or in-person contact<br>**WS (V2) — The Same 2017 Conduct, Charged Three Times**<br>Nov. 20, 2017 – First charging (Utah)<br>• Utah cites Ms. Wang for Class B misdemeanor electronic harassment against WS (V2) (Case No. 171301350).<br>• All charged conduct falls within October–November 2017. Oct. 17, 2019 – Second charging (San Francisco)<br>• San Francisco files a felony stalking complaint re-charging<br>• the same October–November 2017 WS (V2) conduct.<br>[*]<br><br>• The WS (V2) allegations are bundled together with the CT (V1) case, which by itself involves only non-threatening, derogatory custody-related posts.<br>• May 2024 – Third charging (Federal, Utah)<br>• The identical 2017 WS (V2) conduct is charged for a third time, now in a federal indictment in Utah.<br>• This occurs at the behest of CT (V1)'s family, even though the underlying facts have not changed since 2017. | **Requested: 60 months' probation**<br>Stipulated Rule 11(c)(1)(C) range:<br>5 years' probation to 12 months' imprisonment | pp. 52, 55–61 |

TRINA A. HIGGINS, United States Attorney (#7349)
Luisa Gough, Assistant United States Attorney (#17221)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

FILED US District Court-UT
NOV 21 '24 AM 09:16

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TRACY CUTLER formerly known as TRACY LUTTMER,<br><br>Defendant. | Case No. 2:24-cr-00053-CW<br><br>STATEMENT BY DEFENDANT IN ADVANCE OF PLEA OF GUILTY AND PLEA AGREEMENT PURSUANT TO FED. R. CRIM. P. 11(c)(1)(C)<br><br>Judge Clark Waddoups |

I hereby acknowledge and certify that I have been advised of and that I understand the following facts and rights, and that I have had the assistance of counsel in reviewing, explaining, and entering into this agreement:

1. As part of this agreement with the United States of America, I intend to plead guilty to Count I of the Indictment. My attorney has explained the nature of the charge against me, and I have had an opportunity to discuss the nature of the charge with my attorney. I understand the charge and what the United States is required to prove in order to convict me. The elements of Count I of the Indictment, a violation of 18 U.S.C. § 2261A (Cyberstalking) are as follows:

    a. I engaged in a course of conduct that caused substantial emotional distress to that person;

1

counsel, must be answered truthfully and, if I give false answers, I can be prosecuted for perjury.

11.     I stipulate and agree that the following facts accurately describe my conduct. These facts provide a basis for the Court to accept my guilty plea:

Beginning on or around March 2022 and continuing through at least May 2023, I engaged in a course of conduct with the intent to injure, harass, and intimidate J.P., his family, friends, and others connected to him, and his girlfriend D.R.—who, along with J.P., is located in another state—by sending hundreds of harassing electronic messages utilizing computers and electronic communication services that are systems or facilities of interstate commerce. My course of conduct would reasonably be expected to cause substantial emotional distress, and did in fact cause substantial emotional distress to J.P. My course of conduct included using more than forty (40) anonymized numbers, social media accounts, and email addresses to send harassing messages to J.P. and D.R.; modifying or locking J.P. out of his own on-line accounts, resulting in lost income; pretending to send messages from J.B., falsely implicating him in the campaign. I engaged in this conduct with the intent to harass or intimidate other persons, specifically J.P.

12.     The only terms and conditions pertaining to this plea agreement between me and the United States are as follows:

a.  **Guilty Plea.** I will plead guilty to Count I of the Indictment.

b.  **Stipulated Sentence.** Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the sentence imposed by the Court will be thirty-six (36) months' probation with the first six (6) months on home detention. Additionally, I will abide by a comprehensive mental health treatment plan coordinated by my provider. The plan will include specific terms covering therapy requirements and prescription needs. I agree this is a reasonable sentence.

(1)     I understand that this agreement, including my plea, the agreed upon sentence, and all other terms referenced herein, are subject to the approval of, and acceptance by the Court. I further understand that the Court will likely order the preparation of a Presentence Report to assist in the determination of whether this plea and the agreement are appropriate, and I agree to fully cooperate in the preparation of the Presentence Report.

(2)    If, after receiving all relevant information, the Court rejects the plea agreement and determines that a sentence different from the agreed upon sentence of thirty-six (36) months' probation with the first six (6) months on home detention will be imposed, I will have the right to withdraw the plea of guilty and the terms of this agreement will become null and void. Likewise, if the Court rejects the plea agreement and determines that the sentence should be less than thirty-six (36) months' probation with the first six (6) months on home detention, I understand that the United States will have the right to move to vacate this agreement, and all terms of this agreement will become null and void.

c.  **Dismissal of Counts.** The United States agrees to move for leave to dismiss Count II at the time of sentencing.

d.  **Relevant Conduct.** I understand and agree that the Presentence Report may include descriptions of conduct I engaged in which either was not charged against me, will not be pleaded to by me, or both. I understand and agree that the Court will take these facts into consideration in determining the reasonableness of the stipulated sentence.

e.  **Appeal Waiver.**

(1)    Fully understanding my limited right to appeal my sentence, as explained above in paragraph 8, and in consideration of the concessions and/or commitments made by the United States in this plea agreement, I knowingly, voluntarily, and expressly waive my right to appeal any sentence imposed upon me, except that I do not waive the right to appeal as set forth in 18 U.S.C. § 3742(c)(1), which states that I may not file a notice of appeal unless the sentence imposed is greater than the sentence set forth in this agreement. I also knowingly, voluntarily, and expressly waive any argument (1) that the statute(s) to which I am pleading guilty is/are unconstitutional or (2) that my admitted conduct does not fall within the scope of the statute(s).

(2)    I also knowingly, voluntarily, and expressly waive my right to challenge my sentence, unless the sentence imposed is greater than the sentence set forth in this agreement, and my conviction, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under 28 U.S.C. § 2255, except to raise an ineffective assistance of counsel claim. This waiver includes any motion for modification of my sentence under 18 U.S.C. § 3582(c)(2).

3

h. **Waiver of Interest.** The United States agrees to recommend that the Court waive interest for fines and restitution assessed against me.

13.     I understand and agree that this plea agreement is solely between me and the United States Attorney for the District of Utah and does not bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

14.     I understand that I have a right to ask the Court any questions I wish to ask concerning my rights about these proceedings and the plea.

\*     \*     \*     \*

I make the following representations to the Court:

1.     I am _52_ years of age. My education consists of _high school diploma_ + _Associates degree_. I ___can___ [(can)/cannot] read and understand English.

2.     This Statement in Advance contains all terms of the agreement between me and the United States; if there are exceptions, the Court will be specifically advised, on the record, at the time of my guilty plea of the additional terms. I understand the United States and I cannot have terms of this plea agreement that are not disclosed to the Court.

3.     No one has made threats, promises, or representations to me that have caused me to plead guilty, other than the provisions set forth in this agreement.

4.     Neither my attorney nor the United States has promised me that I would receive probation or any other form of leniency because of my plea.

5.     I have discussed this case and this plea with my lawyer as much as I wish, and I have no additional questions.

6.     I am satisfied with my lawyer.

7.     My decision to enter this plea was made after full and careful thought; with the advice of counsel; and with a full understanding of my rights, the facts and circumstances of the case and the consequences of the plea. I was not under the influence of any drugs, medication, or intoxicants when I made the decision to enter the plea, and I am not now under the influence of any drugs, medication, or intoxicants.

8.     I have no mental reservations concerning the plea.

7

4

9.      I understand and agree to all the above. I know that I am free to change or delete anything contained in this statement. I do not wish to make changes to this agreement because I agree with the terms and all the statements are correct.

DATED this __19th__ day of __November__, 2024.

$$\text{TRACY OUTLER}$$
TRACY OUTLER
Defendant

I certify that I have discussed this plea agreement with the defendant, that I have fully explained her rights to her, and that I have assisted her in completing this written agreement. I believe that she is knowingly and voluntarily entering the plea with full knowledge of her legal rights and that there is a factual basis for the plea.

DATED this __19th__ day of __November__, 2024.

ED JONES
Attorney for Defendant

I represent that all terms of the plea agreement between the defendant and the United States have been, or will be at the plea hearing, disclosed to the Court, and there are no undisclosed agreements between the defendant and the United States.

DATED this __19th__ day of __November__, 2024

TRINA A. HIGGINS
United States Attorney

Peter Reichman for

LUISA GOUGH
Assistant United States Attorney

8

5

# UNITED STATES DISTRICT COURT

### District of Utah

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) |
| TRACY CUTLER | ) Case Number:  DUTX 2:24-CR-00053-001 CW |
|  | ) USM Number:  04388-511 |
| **Date of Original Judgment:**  2/11/2025 | ) Edward Jones |
| *(Or Date of Last Amended Judgment)* | ) Defendant's Attorney |

**THE DEFENDANT:**

☑ pleaded guilty to count(s)  1 of the Indictment

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2261A | Interstate Cyberstalking |  | 1 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

5/12/2025
Date of Imposition of Judgment

Signature of Judge

Clark Waddoups          U.S. District Judge
Name and Title of Judge

5/12/2025
Date

6

DEFENDANT:  TRACY CUTLER
CASE NUMBER:  DUTX 2:24-CR-00053-001 CW

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of :

None.

☐    The court makes the following recommendations to the Bureau of Prisons:

☐    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

☐    at _____    ☐  a.m.   ☐  p.m.    on _____    .

☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐    before 2 p.m. on _____    .

☐    as notified by the United States Marshal.

☐    as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____    to _____

at _____    with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

7

Case 2:24-cr-00053-TSW   Document 158   Filed 04/28/25   PageID.12462   Page 3 of 80

(NOTE: Identify Changes with Asterisks (*))

Judgment—Page __3__ of __7__

DEFENDANT:  TRACY CUTLER
CASE NUMBER:  DUTX 2:24-CR-00053-001 CW

## PROBATION

You are hereby sentenced to probation for a term of:

36 months.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of placement on probation and at least two periodic drug tests thereafter, as determined by the court.
    ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
5. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901 *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
6. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*
7. ☑ You must make restitution in accordance with 18 U.S.C. § 2248, 2259, 2264, 2327, 3663, 3663A, and 3664. *(check if applicable)*
8. You must pay the assessment imposed in accordance with 18 U.S.C. § 3013.
9. If this judgment imposes a fine, you must pay in accordance with the Schedule of Payments sheet of this judgment.
10. You must notify the court of any material change in your economic circumstances that might affect your ability to pay restitution, fines, or special assessments.

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

8

AO 245C (Rev. 09/19) Amended Judgment in a Criminal Case
Sheet 4D — Probation
(NOTE: Identify Changes with Asterisks (*))

Case 2:24-cr-00053-TSW Document 158 Filed 04/28/25 PageID 12483 Page 5 of 80

Judgment—Page 5 of 7

DEFENDANT: TRACY CUTLER
CASE NUMBER: DUTX 2:24-CR-00053-001 CW

## SPECIAL CONDITIONS OF SUPERVISION

1. You must submit to drug/alcohol testing, up to 4 tests per month, under a copayment plan, as directed by the U.S. Probation Office. This may be modified/terminated after 6 months of testing by U.S. Probation Office.

2. You must participate in and successfully complete a substance-abuse evaluation and/or treatment, under a copayment plan, as directed by the U.S. Probation Office. During the course of treatment, you must not consume alcohol, nor frequent any establishment where alcohol is the chief item of order.

3. You must participate in and successfully complete a mental-health evaluation and/or treatment program, under a copayment plan, as directed by the U.S. Probation Office, take any mental-health medications as prescribed, and not possess or consume alcohol, nor frequent businesses where alcohol is the chief item of order, during the course of treatment or medication. You must abide by a comprehensive mental health treatment plan coordinated by your provider.

4. You shall refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing, which is required as a condition of supervision.

5. You shall not use, possess, or ingest products containing tetrahydrocannabinol (THC) or cannabidiol (CBD) in any form unless they are approved by the Food and Drug Administration and obtained from a pharmacy by prescription from a licensed medical professional. For purposes of this condition, an authorization for THC or CBD issued under the law of any state is not valid; a state-issued marijuana medical card is not a prescription; and a THC/CBD dispensary is not a pharmacy. You are not allowed under any circumstances to market any product containing THC or CBD.

6. You must submit to Remote Alcohol Testing, and abide by all of the program requirements as directed by the probation officer. You must pay all or part of the costs of participation in the program as directed by the probation officer.

7. You must submit your person, property, house, residence, office, vehicle, papers, computers [as defined in 18 U.S.C. § 1030(e)(1)], other electronic communications or data storage devices or media, to a search, conducted by the U.S. Probation Office, at a reasonable time and in a reasonable manner based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; you must warn any other residents that the premises may be subject to searches pursuant to this condition.

8. You must cooperate with the United States Probation and Pretrial Services Computer and Internet Monitoring program; Appendix A, Computer and Internet use (Not Applicable to Third Party Employment). Cooperation shall include, but not be limited to, identifying computer systems (as identified in 18 U.S.C. § 1030(e)(1)), internet capable devices, networks (routers/modems), and/or similar electronic devices (external hard drives, flash drives, etc.) to which you have access. All devices are subject to random inspection/search, configuration, and the installation of monitoring software and/or hardware at your expense.

9. You must inform all parties who access approved computer(s) or similar electronic device(s) that the device(s) is subject to search and monitoring. You may be limited to possessing only one personal computer and/or internet capable device to facilitate the ability to effectively monitor your internet-related activities.

10. You must refrain from incurring new credit charges or opening additional lines of credit unless in compliance with any established payment schedule and obtain the approval of the U.S. Probation Office.

11. You must not transfer, sell, give away, or otherwise convey any asset with a value of $500 or more without the approval of the U.S. Probation Office.

12. You must be placed on the Statefinder and Treasury Offset programs, requiring any state and federal tax refunds be intercepted for purposes of Court-ordered financial obligations.

13. You must notify the U.S. Probation Office and the Office of the United States Attorney of any material change in your economic circumstances that might affect your ability to pay Court-ordered financial obligations. You must also notify the U.S. Probation Office and the Office of the United States Attorney of any loss of employment or increase or decrease in income.

14. You must participate in the following location restriction program components and abide by its requirements as the probation officer instructs for a period of 6 months. Pay all or part of the cost of location monitoring based upon your ability to pay as determined by the probation officer. No overnight travel without Court approval.

Home Detention. You are restricted to your residence at all times except for employment, education, religious services, medical, substance-abuse or mental-health treatment, attorney visits, court appearances, court-ordered obligations, or other activities preapproved by the probation officer.

(NOTE: Identify Changes with Asterisks (*))

Judgment — Page __6__ of __7__

DEFENDANT: TRACY CUTLER
CASE NUMBER: DUTX 2:24-CR-00053-001 CW

## CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 17,639.46 | $ 0.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| SEE SEALED RESTITUTION LIST | $17,639.46 | $17,639.46 | |
| **TOTALS** | $ 17,639.46 | $ 17,639.46 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☑ the interest requirement is waived for ☐ fine ☑ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

10

Judgment — Page __7__ of __7__

DEFENDANT:   TRACY CUTLER
CASE NUMBER:   DUTX 2:24-CR-00053-001 CW

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A**  ☑  Lump sum payment of $ ____100.00____ due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance with  ☐  C,  ☐  D,  ☐  E, or  ☐  F below; or

**B**  ☐  Payment to begin immediately (may be combined with  ☐  C,  ☐  D, or  ☐  F below); or

**C**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of  $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of  $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☑  Special instructions regarding the payment of criminal monetary penalties:

    Restitution shall be paid at a rate of $100 per month.  The court waives the accrual of interest.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate. |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

11

ORIGINAL

PHILLIP A. TALBERT
United States Attorney
ADRIAN T. KINSELLA
CHRISTINA McCALL
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

## IN THE UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:21-cr-00158-JAM |
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE:   AUGUST 20, 2024<br>Time:   9:00 a.m. |
| MICHAEL JAMESON CHAND, | Court:   Hon. John A. Mendez |
| Defendant. | |

## I.   INTRODUCTION

### A.   Scope of Agreement.

The indictment in this case charges the defendant with a violation of 18 U.S.C. § 2261A(2)(B) – cyberstalking. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B.   Court Not a Party.

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in

PLEA AGREEMENT                                          1

12

the indictment.  The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.    DEFENDANT'S OBLIGATIONS

### A.    Guilty Plea.

The defendant will plead guilty to the sole count in the indictment (cyberstalking).  The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this plea agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this plea agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this plea agreement generally.

### B.    Restitution.

18 U.S.C. § 2264 requires the Court to order restitution to the victims of certain offenses.  Defendant agrees that his conduct is governed by 18 U.S.C. § 2264.  Defendant agrees to pay restitution pursuant to 18 U.S.C. § 2264 to the victim of the cyberstalking offense in an amount between $4,046.84 and up to $50,000.00.  The amount of restitution will be determined by the Court.  Restitution payments shall be by cashier's or certified check made payable to the Clerk of the Court.

13

## IX.    APPROVALS AND SIGNATURES

### A.    Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 8/12/24

_____
HOOTAN BAIGMOHAMMADI
Attorney for Defendant

### B.    Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated:

8/12/24

_____
MICHAEL JAMESON CHAND
Defendant

### C.    Attorney for United States:

I accept and agree to this plea agreement on behalf of the government.

Dated: 8/20/2024

PHILLIP A. TALBERT
United States Attorney

_____
ADRIAN T. KINSELLA
CHRISTINA McCALL
Assistant United States Attorneys

PLEA AGREEMENT                                11

14

EXHIBIT "A"

Factual Basis for Plea

Between December of 2019 and November of 2020, in the Eastern District of California, the defendant, Michael Jameson Chand, intentionally engaged in a course of conduct to harass or intimidate the victim, Jane Doe, and used facilities of interstate commerce and interactive computer service to do so. This course of conduct caused Jane Doe substantial emotional distress.

### Prior Case Against the Same Victim

Mr. Chand was convicted in 2017 in California for extortion (Penal Code 520), contact with a minor to commit a felony (Penal Code 288.3(a)), and sending obscene material to a minor (Penal Code 311.1(a)). His victim, "Jane Doe," who is the same victim as in the instant case, was 15 years old at the time of the defendant's prior criminal conduct. The offense conduct included eliciting child sexual exploitation material from Jane Doe. Mr. Chand was sentenced to two years in jail for this offense.

### Cyberstalking Charge

On December 23, 2019, while on parole, after release from the jail sentence mentioned in the paragraph above, Mr. Chand posted a public Facebook post under the false name of Adrian Adrela, including Jane Doe's full name, falsely claimed that she was dating a murderer, and asking, "please everybody help me get her into a mental hospital if you want her contact info let me know please." Between this post and June 2, 2020, there is no evidence Mr. Chand harassed or intimidated the victim. Between June 3, 2020 and October 16, 2020, he called her approximately 176 times. From early September 2020 to November 1, 2020, he left her 63 voicemail messages, often calling her from blocked numbers.

In some of his voicemail messages, Mr. Chand called Jane Doe names such as "dumb ass" and "bitch." Many of the voicemail messages contained threats against Jane Doe and her family. For example, on October 8, 2020, Mr. Chand told Jane Doe, in an angry tone, that he would resolve a perceived dispute on her "front lawn with [him] breaking down the damn fucking front door." In another voicemail, he yelled at her that he would keep calling and "fill up her voicemail," and claimed that he was "not harassing [her] because [she] didn't tell [him] to stop." In another voicemail on October 9, 2020, he told Jane Doe, from whom he had previously elicited child sexual exploitation

PLEA AGREEMENT                          A-1

15

material images from when she was a minor, "I can find your aunt's Facebook, [her family member of friend's] Facebook, your real Facebook .... I can send them everything, [Jane Doe], I really have nothing to lose at this point." Mr. Chand contends that this last message pertains to money he believed the victim owed him, and not to redistribution of CSAM.

Additionally, between these December 2019 and November 2020 contacts, Mr. Chand created multiple social media accounts, some under aliases, to contact and harass Jane Doe. Using such accounts, he made posts publicly naming Jane Doe, and saying things that were designed to harass and intimidate Jane Doe. For example, in a public Facebook post made on August 5, Mr. Chand listed Jane Doe's full name, her city and state of birth, and included a photo from her social media account, and falsely stated that "she killed her ex[-boyfriend]." He also falsely claimed that Jane Doe had planned to move in with and would expose her "baby" to a "rapist," and wrote, "Please help me find a way to get the poor kid away from her."

Mr. Chand made the above phone calls and Facebook posts from Sacramento, California, using his cellular phone, which was connected to a nationwide cellular network, and utilized the internet. At all times during defendant's cyberstalking activity, Jane Doe lived outside of California. Mr. Chand made the phone calls and internet posts with the intent to harass and intimidate Jane Doe. As part of this plea agreement, Mr. Chand admits that his angry voicemail messages and Facebook postings about Jane Doe constitute a course of conduct that would be reasonably expected to cause, and did in fact cause, substantial emotional distress to Jane Doe.

I have reviewed the "Factual Basis" information above with my attorney, and agree that it is accurate.

Dated: 8/12/24 _____    _____
                                          MICHAEL JAMESON CHAND,
                                          Defendant

PLEA AGREEMENT                    A-2

16

Page 1 of 7

Case 2:24-cr-00163-TS    Document 192    Filed 04/28/26    PageID.10831    Page 20 of 80
Case 2:21-cr-00158-JAM    Document 94    Filed 02/19/25    Page 1 of 7

AO 245B-CAED (Rev. 09/2019) Sheet 1 - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## Eastern District of California

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | Case Number: **2:21CR00158-1** |
| **MICHAEL JAMESON CHAND** | Defendant's Attorney: Hootan Baigmohammadi, Assistant Federal Defender |

**THE DEFENDANT:**

[✓]  pleaded guilty to count __1__ of the Indictment.
[ ]  pleaded nolo contendere to count(s) ___ , which was accepted by the court.
[ ]  was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2261A(2)(B) | Cyberstalking (Class D Felony) | 11/30/2020 | 1 |

The defendant is sentenced as provided in pages 2 through __7__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ]  The defendant has been found not guilty on count(s) ___ .
[ ]  Count(s) ___ dismissed on the motion of the United States.
[ ]  Indictment is to be dismissed by District Court on motion of the United States.
[✓]  Appeal rights given.          [✓]  Appeal rights waived.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution or fine, the defendant must notify the court and United States attorney of material changes in economic circumstances.

| |
|---|
| **2/11/2025** |
| Date of Imposition of Judgment |
| /s/ John A. Mendez |
| Signature of Judicial Officer |
| **John A. Mendez**, Senior U. S. District Judge |
| Name & Title of Judicial Officer |
| 2/19/2025 |
| Date |

17

Page 2 of 7

Case 2:24-cr-00163-TS    Document 192    Filed 04/28/26    PageID.10832    Page 21 of
80
Case 2:21-cr-00158-JAM    Document 94    Filed 02/19/25    Page 2 of 7

AO 245B-CAED (Rev. 09/2019) Sheet 4 - Probation

DEFENDANT: **MICHAEL JAMESON CHAND**                                            Page 2 of 7
CASE NUMBER: **2:21CR00158-1**

## PROBATION

You are hereby sentenced to probation for a term of:
36 months.

## MANDATORY CONDITIONS

You must not commit another federal, state or local crime.
You must not unlawfully possess a controlled substance.
You must refrain from any unlawful use of controlled substance. You must submit to one drug test within 15 days of placement on probation and at least two (2) periodic drug tests thereafter, not to exceed four (4) drug tests per month.

[ ]    The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse.

[✔]    You must cooperate in the collection of DNA as directed by the probation officer.

[ ]    You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense.

[ ]    You must participate in an approved program for domestic violence.

[✔]    You must make restitution in accordance with 18 U.S.C. §§ 2248, 2259, 2264, 2327, 3663, 3663A, and 3664.

You must pay the assessment imposed in accordance with 18 U.S.C. § 3013.
If this judgment imposes a fine, you must pay in accordance with the Schedule of Payments sheet of this judgment.
You must notify the court of any material change in your economic circumstances that might affect your ability to pay restitution, fines, or special assessments.

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

18

Page 4 of 7

Case 2:24-cr-00163-TS    Document 192    Filed 04/28/26    PageID.10833    Page 22 of 80
Case 2:21-cr-00158-JAM    Document 94    Filed 02/19/25    Page 4 of 7

AO 245B-CAED (Rev. 09/2019) Sheet 4 - Probation

DEFENDANT: **MICHAEL JAMESON CHAND**
CASE NUMBER: **2:21CR00158-1**

## SPECIAL CONDITIONS OF PROBATION

1.  You must submit your person, property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer or any law enforcement officer at any time, based upon reasonable suspicion of unlawful conduct or a violation of a condition of supervision, without a search warrant. Failure to submit to a search may be grounds for revocation. You must warn any other occupants that the premises may be subject to searches pursuant to this condition.

2.  Your residence must be pre-approved by the probation officer.

3.  You must participate in an outpatient substance abuse/alcohol abuse treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program.

4.  You must submit to substance abuse/alcohol abuse testing to determine if you have used a prohibited substance. You must not attempt to obstruct or tamper with the testing methods.

5.  You must participate in an outpatient mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program.

6.  You must take all mental health medications, which may include oral and/or injectable psychotropic medications, that are prescribed to you by your treating physician.

7.  You must not communicate or otherwise interact with C.W., either directly or through someone else, without first obtaining the permission of the probation officer.

8.  You will be monitored for a period of up to 6 months, with location monitoring technology, which may include the use of Radio Frequency (RF), Global Positioning System (GPS) devices, Voice Recognition or Virtual Monitoring Technology, at the discretion of the probation officer, and comply with its requirements.
    The location monitoring technology will be used to monitor the following restriction on your movement in the community: You are restricted to your residence at all times except for employment, education, religious services, medical, substance abuse, or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities in advance as pre-approved by the supervising officer. (home detention)
    You must follow the rules and regulations of the location monitoring program. Your co-payment will be determined utilizing a Sliding Fee Scale based on your disposable income.

9.  You must not possess or use a computer or any device that has access to any "on-line computer service" unless approved by the probation officer. This includes any Internet service provider, bulletin board system, or any other public or private computer network.

10. You must consent to the probation officer and/or probation service representative conducting periodic unannounced examinations of (a) any computer, or (b) computer-related device, or (c) equipment that has an internal or external modem that is connected to the internet which is in your possession or control. You must consent to retrieval and copying of all data from any such computer, computer-related device, or equipment as well as any internal or external peripherals to ensure compliance with this condition. You consent to removal of such computer, computer-related device, and equipment for purposes of conducting a more thorough inspection, and analysis.

11. You must possess and use only those cellular phones and phone numbers (including Voice over Internet Protocol [VoIP] services) that have been disclosed to the probation officer upon commencement of supervision. Any changes or additions are to be disclosed to the probation officer prior to the first use.

12. You must make payments toward any unpaid criminal monetary penalty in this case during supervised release at the rate of at least 10% of your gross monthly income. Payments are to commence no later than 60 days from placement on supervision. This payment schedule does not prohibit the United States from collecting through all available means any unpaid criminal monetary penalty at any time, as prescribed by law.

13. You must participate in a co-payment plan for treatment, testing and/or medication and shall make payment directly to the vendor under contract with the United States Probation Office. Your co-payment will be determined utilizing a Sliding Fee Scale based upon your disposable income.

19

Page 6 of 7

Case 2:24-cr-00163-TS   Document 192   Filed 04/28/26   PageID.10834   Page 23 of
80
Case 2:21-cr-00158-JAM   Document 94   Filed 02/19/25   Page 6 of 7

AO 245B-CAED (Rev. 09/2019) Sheet 5B - Criminal Monetary Penalties

DEFENDANT: **MICHAEL JAMESON CHAND**                                          Page 6 of 7
CASE NUMBER: **2:21CR00158-1**

## RESTITUTION PAYMENTS

Restitution of $8,025.70 to:

C.W.                                          MONTANA CRIME VICTIM COMPENSATION PROGRAM
ARLEE, MT 59821                               HELENA, MT 59620
$3,900.00                                     $4,125.70

20



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of Virginia*

---

| | | | |
|---|---|---|---|
| *Alessandra P. Serano* | *Vanessa Strobbe* | *Office Location:* | *DIRECT: 703-299-3768* |
| *Assistant United States Attorney* | *Assistant United States Attorney* | *2100 Jamieson Ave.* | *MAIN: 703-299-3700* |
| *Alessandra.serano@usdoj.gov* | *vanessa.strobbe@usdoj.gov* | *Alexandria, VA 22314* | |

December 8, 2025

✓ FILED ___ ENTERED
____ LOGGED _____ RECEIVED

3:24 pm, Dec 15 2025
AT  BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____KMT_____Deputy

Andrew White, Esq.
Jonathan Fahey, Esq.

> Re: **United States v. Richard Michael Roe,**
>      Criminal No. 24-cr-200-BAH

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Richard Roe (hereinafter "Defendant"), by the United States Attorney's Office for the Eastern District of Virginia ("this Office") as the District of Maryland is recused from this case. If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. **The plea agreement is entered into and will be submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).** If this offer has not been accepted by December 8, 2025, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1.      The Defendant agrees to plead guilty to Counts 2-6 of the Indictment filed against him, which each count charges the Defendant with Making Harassing Phone Calls in violation of 47 U.S.C. § 223(a)(1)(C).  The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offense

2.      The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:  that on or about and between January 2020 and continuing to on or about January 2021, in the District of Maryland, and elsewhere (1) in interstate or foreign communications, the Defendant made repeated telephone calls or utilized a telecommunication device such as the Internet, (2) without disclosing his identity; and (3) with the intent to abuse, threaten or harass any specific person.



Penalties

3.    The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Counts | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessments |
|---|---|---|---|---|---|---|
| 2-6 (penalties for each count) | 47 U.S.C. § 223(a)(1)(C) | N/A | 2 years | 1 year | $250,000 | $100 |

a.    Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.    Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.    Restitution: The Court shall order the Defendant to pay full restitution pursuant to 18 U.S.C. §§ 2264, 3663, 3663A, and/or 3664.

d.    Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.    Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.    Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

Rev. August 2018

22

involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.    There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11 (c) (1) (C) Plea

9.    The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a **term of probation for five years** is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful fine, order of restitution, or to set any lawful conditions of probation, other than incarceration. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Obligations of the Parties

10.    At the time of sentencing, the parties will request that the Court impose a sentence of **five years probation**. This Office and the Defendant reserve the right to otherwise advocate for a fine and conditions of supervision considering any appropriate factors under 18 U.S.C. § 3553(a). At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

11.    This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

LINDSEY HALLIGAN
UNITED STATES ATTORNEY AND
SPECIAL ATTORNEY

TODD W. BLANCHE
DEPUTY ATTORNEY GENERAL

ROBERT K. MCBRIDE
FIRST ASSISTANT UNITED STATES
ATTORNEY

_____
Alessandra P. Serano
Vanessa Strobbe
Special Attorneys Acting Under Authority Conferred by
28 U.S.C. § 515

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12-8-2025
Date

_____
Defendant

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

12/8/2025
Date

_____
Counsel for Defendant

Rev. August 2018

9

24



## ATTACHMENT A
## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

On or about and between January 2020 and January 2021, in interstate or foreign communications, as defined by 47 U.S.C. §153(21) and (28), the Defendant, initiated numerous phone calls and other communications using a telecommunication device for the purpose of harassing Victims 1, 2, 3, 4, 6, and Victim Businesses 1 and 2 (collectively "victims"). Defendant used various programs such as Prankowl and PrankDial and VPN programs to mask his true identity and make it appear that someone else was making the calls, texts, messages, and other communications toward the victims. The messages were sent to each victim for the purpose of harassing each of them would sometimes contain personal and private information about the victim's location, what the victim was doing or other personal information such as commenting on Victim 1's father's death, the license plate of a car the person was driving, credit card numbers, and email addresses.

For example, on April 4, 2020, Roe sent the following text message to Victim 1: "2012 Ford Escape!!! License plate [license plate redacted]!!!! Just walked right past that crap car Danny!!!!"

A second example is on July 28, 2020, Roe sent the following message to Victim 1 and others:

> "mike we all know u have a pi stalking leenzy and the [last name redacted] and danny!!!! Its so obvious!!!! How else would u know about leenzy hiding danny from u???? or her sleeping at [address redacted]???? how would u know about danny??? Or Paris??? Or there inn at[location redacted]??? Joe and danny dog??? That leenzys entire fam but mostly pat is paying for her lawyer????? where leenzy was on new years or Jan 3 and 4???? her new email [email redacted]??? danny poundin her out after watching lsu clemson???? Leenz going to post Malone concert???? watching super bowl with mc's friends???? her newest insta and fbook friends???? her family and friends criminal records???? how dolled up she got for dannys bday???? how quickly she told danny she loved him???? how quickly she met his family??? The Easter zoom with the [family name] and [family name] which Danny was on???? leenzy hangouT for Laura [last name redacted] bday???

Another example, on August 18, 2020, Roe sent the following text message to Victim 1 about her father's death:

> "mike r u goin to ed [last name redacted] viewing and mass on the 20th???? Thursday!!!! u know leenzys dad passed away on the 13th???? danny will be there!!!! u should come!!!! does that explain leenzys3 vacation last week???? and dannys?????"

Rev. August 2018

1

25



On August 19, 2020, Roe sent the following text message to Victim 1 about her father's death:

"mike and danny please RSVP for tomorrow!!!!! Mass and Visitation: [name of church redacted ] to follow at: [name redacted] Cemetery"

On August 28, 2020, Roe sent the following text message to Victim 1 about her father's death:

"mikey loves aug 20 2020 cuz it's the day leenzy dropped her dad in a hole 6ft down!!!! leenzy loves aug 20 2021 cu shell be dannys date for rhiners wedding!!!!"

The series of calls, texts, and other communications made by Roe towards the victims caused harm to each of them.. Roe filed frivolous police reports alleging that it was Victim 1 who was harassing him. Roe also sought an order for protection in New York (where he was living) against Victim 1 that caused her to hire an attorney to defend against the proceeding. After Victim 6 reported the harassment by Roe to law enforcement, Roe increased the harassment towards Victim 6. The two Victim Businesses were overwhelmed by Roe's communications.

On June 20, 2020, Roe sent the following text message to Victim 1:

"Leenz!!!! Watchout!!!! Big hedge fund guy said hell spend every dollar he has destroying u and ur family!!!! u no mike is a resentful and spiteful pig!!!! U no hell do it!!!!! how big are Patrickc, Linda, and helens wallets????? Look like U will need it!!!! danny really should help!!!! everyone knows how much they pay people at millennium!!!!! It's not [Victim Business name redacted] pay tho!!!!!! or [Victim Business name redacted]!!!!!"

For the relevant time period, all of the victims were residents of the District of Maryland.

//

//

//

//

//

//

//

//

26

SO STIPULATED:

_____
Alessandra P. Serano
Vanessa Strobbe
Special Attorneys Acting Under Authority
Conferred by 28 U.S.C. § 515

_____
Defendant

_____
Counsel for Defendant

Rev. August 2018

3

27

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

**UNITED STATES OF AMERICA,**

   *Plaintiff*,

**v.**                                                    Case No.  **SA-23-CR-00238-JKP**

**(1) ASHLEY TANYA GARCIA,**

   *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Ashley Tanya Garcia's Motion to Dismiss the Indictment. *See* ECF No. 34. The Government filed a response and Garcia filed a reply. *See* ECF Nos. 35, 36. After due consideration of the parties' briefings, legal arguments, and the applicable law, the Court **DENIES** the motion. *See* ECF No. 34.

## BACKGROUND

Defendant Ashley Tanya Garcia is charged with one Count of Cyberstalking, in violation of 18 U.S.C. § 2261A(2), and one Count of Identity Theft, in violation of 18 U.S.C. § 1028(a)(7). *See* ECF No. 12. The U.S. Government alleges that, between December 2020 and November 2022, Garcia registered 18 website domains, all variations on the victim's name and the terms which relate to the victim's employment and his alma mater. *See* Gov't Exhibit 1 (FBI GJ Serial 2, Report of Google Subpoena Returns). Garcia is alleged to have posted "blog entries" at these domains, and numerous other domains, relating to the victim. In total, the Government alleges Garcia posted over 750 blog entries just on the domains that used the victim's name. *See* Gov't Exhibit 2. As of the time of the Government's filing of its response brief, a Google search for the

28

victim's name returned websites owned and operated by Garcia, referring to the victim. *See* Gov't Exhibit 3.

According to the Government, on or about March 28, 2020, Garcia sent an email to the victim's employers entitled, "[C.K.] posts pictures of his penis and masturbates for people on Reddit…." *See* Gov't Exhibit 4. Garcia allegedly told the victim her intent was to "ruin your fucking life." *See* Gov't Exhibit 5. She also allegedly stated she hoped his employer "has a morality clause," implying that she hoped he would lose his job, "[a]nd that everyone in finance hears about your firing. You'll never work again lol." *See* Gov't Exhibit 6. Her animus was allegedly expressed in another message to the victim in which she stated she hoped he would "rot in hell you piece of shit." *See* Gov't Exhibit 7. Garcia is also accused of creating several social media accounts using the victim's name and picture, including on Facebook, Instagram and Twitter accounts. *See* Gov't Exhibit 8.

Garcia brings the instant motion arguing the Court should dismiss the indictment because, as to Count 1, § 2261A(2) is unconstitutional both facially and as applied to Garcia and, as to Count 2, the Government failed to state a viable § 1028(a)(7) offense against Garcia and, in the alternative, § 1028(a)(7) is unconstitutional as applied to Garcia. For the reasons discussed herein, the Court disagrees.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* Fed. R. Crim. P. 12(d) (permitting the court to rule

on a motion involving factual issues provided the court states its essential findings on the record); *see also, United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *See Flores*, 404 F.3d at 325.

## DISCUSSION

### I.  Count 1: Cyberstalking under § 2261A(2)

Count 1 charges Garcia with cyberstalking under 18 U.S.C. § 2261A(2). Garcia offers four reasons why the Court should dismiss this count: (1) the statute is facially unconstitutional under the First Amendment; (2) the Fifth Circuit narrowed the statute's application to "true threats" in *United States v. Conlan* and Garcia's alleged statements do not constitute true threats; (3) the statute is void for vagueness; and (4) the Government has failed to state a cognizable offense. The Court considers each of these arguments, in turn, below.

#### A.  First Amendment Facial Challenge

Garcia argues § 2261A(2) is facially unconstitutional because it criminalizes First Amendment protected speech. The First Amendment provides, in relevant part, "Congress shall make no law … abridging the freedom of speech…." U.S. Const. Amend. I. "[A]s a general matter, the First Amendment means the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468 (2010). This broad pronouncement is subject to certain exceptions, including for incitement, obscenity, defamation, fighting words, child pornography, speech integral to criminal conduct, and true threats. *United States v. Alvarez*, 567 U.S. 709, 717 (2012). Courts determine whether a

30

activity." Furthermore, the requirement that the unlawful activity constitutes a violation of Federal law or a felony under State or local law sufficiently discourages arbitrary or discriminatory enforcement. The Court, therefore, finds the statute is not impermissibly vague and rejects Garcia's "void for vagueness" argument as to this count.

## CONCLUSION

For the reasons discussed, the Court **DENIES** Defendant Ashley Tanya Garcia's Motion to Dismiss the Indictment. *See* ECF No. 34.

It is so ORDERED.
SIGNED this 12th day of January, 2024.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE

31

# UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA

v.

Case Number: 5:23-CR-00238-JKP(1)
USM Number: 52585-510

ASHLEY TANYA GARCIA

Defendant.

## JUDGMENT IN A CRIMINAL CASE
**(For Offenses Committed On or After November 1, 1987)**

The defendant, **ASHLEY TANYA GARCIA,** was represented by Marina Thais Douenat, Esq.

On motion of the United States, the Court has dismissed the remaining Count(s) as to this defendant.

The defendant pled guilty to **Count(s) One (1)** of the **Superseding Information** on April 17, 2024. Accordingly, the defendant is adjudged guilty of such Count(s), involving the following offense(s):

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1028(a)(4) and (b)(6) | Fraud in Connection with Identification Documents, Authentication Features, and Information | 04/05/2023 | One (1) |

As pronounced on April 17, 2024, the defendant is sentenced as provided in pages 2 through 5 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the Court and United States Attorney of material changes in economic circumstances.

Signed this 18th day of April, 2024.

_____
**JASON K. PULLIAM**
**United States District Judge**

32

DEFENDANT: **ASHLEY TANYA GARCIA**
CASE NUMBER: 5:23-CR-00238-JKP(1)

## PROBATION

The defendant is hereby placed on probation for a term of *five (5) years.*

     While on probation, the defendant shall comply with the mandatory and standard conditions that have been adopted by this Court on November 28, 2016, and shall comply with the following additional conditions:

1. The defendant shall not communicate, or otherwise interact with victim (C.K.), or the victim's family, friends, colleagues, employers, or Snowcap Research, either directly or through someone else, without first obtaining the permission of the probation officer.

2. You must allow the probation officer to install computer monitoring software on any computer [as defined in 18 U.S.C. § 1030(e)(1)], or other electronic communications or data storage devices or media, to a search.

3. The defendant shall participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, shall supervise participation in the program (provider, location, modality, duration, intensity, etc.). The defendant shall pay the costs of such treatment if financially able.

4. The defendant shall take all mental health medications that are prescribed by the treating physician.

5. The defendant shall not disseminate any communication or information, in narrative or imagery, related to the victim, C.K., in any form (including but not limited to: paper, internet, email, blogging, etc.).

6. The defendant shall cease and desist the maintaining of any and all of the web domains purchased as part of the instant offense.

7. To ensure compliance with the computer monitoring condition, when there is reasonable suspicion, the defendant shall allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring. These searches shall be conducted for the purposes of determining whether the computer contains any prohibited data prior to installation of the monitoring software; to determine whether the monitoring software is functioning effectively after its installation; and to determine whether there have been attempts to circumvent the monitoring software after its installation. The defendant shall warn any other people who use these computers that the computers may be subject to searches pursuant to this condition.

8. The defendant shall reside in a residential reentry center for a term of 180 days. The defendant shall follow the rules and regulations of the center.

33

RANDY S. GROSSMAN
United States Attorney
ANDREW SHERWOOD
Assistant United States Attorney
California Bar No. 342419
New York Bar No. 4518106
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-9690
Email: andrew.sherwood@usdoj.gov

Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | Case No. 23CR178-RSH |
|---|---|
| Plaintiff, | |
| v. | PLEA AGREEMENT |
| JONATHAN SANDOVAL, | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Randy S. Grossman, United States Attorney, and Andrew Sherwood, Assistant United States Attorney, and Defendant Jonathan Sandoval, with the advice and consent of Jeremy Warren, counsel for Defendant, as follows:

**I**

**THE PLEA**

Defendant agrees to plead guilty to Count 1 of the Indictment filed in 22cr178-RSH, incorporated herein by reference, that charges Defendant with violating 18 U.S.C. §§ 2261A(2)(B) and 2261(b)(5).

//

//

Plea Agreement                                                  Def. Initials JS 34

21CR2192-BAS

## II

### NATURE OF THE OFFENSE

A.   ELEMENTS EXPLAINED

The offense under 18 U.S.C. § 2261A(2)(B) to which Defendant is pleading guilty has the following elements:

1. The defendant acted with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person;

2. The defendant used the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct; and

3. The defendant's course of conduct caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that person, an immediate family member, or a spouse or intimate partner.

B.   ELEMENTS UNDERSTOOD AND ADMITTED – FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

1. Beginning on a date unknown, but no later than March 7, 2022 through on or about March 15, 2022, Defendant, while working at a Navy hospital and after he no longer worked at the hospital, in the Southern District of California, acted with the intent to harass and

Plea Agreement

Def. Initials JS 35

23CR178-RSH

intimidate Victim A, a military service member, when he sent images of Victim A to Victim A via email and the internet.

2. Email and the internet are electronic communication services and electronic communication systems of interstate commerce.

3. Defendant sought to harass and intimidate Victim A when he engaged in the following acts:

a. On a date unknown, Defendant installed a hidden camera in Victim A's office without her knowledge.

b. On a date or dates unknown, without Victim A's knowledge, Defendant recorded a video of Victim A undressed and changing in her office.

c. On March 8, 2022, Defendant rifled through Victim A's office and belongings while disregarding her requests to stop.

d. On or about March 8, 2022, Defendant displayed a knife to Victim A in Victim A's office. He explained to Victim A that he received the knife at a church retreat.

e. On or about March 15, 2022, Defendant emailed Victim A nude images of Victim A taken without her knowledge and wrote in the email: "This is you naked. I'll make sure to send all your videos of you changing. Have fun at work."

f. Defendant sent Victim A messages through various internet messaging platforms after Victim A told him to stop sending messages.

4. Defendant's email, images, messages and actions in Victim A's office constituted a course of conduct insofar as they were a pattern of conduct composed of two or more acts that evidenced a

Plea Agreement

Def. Initials __JS36__

23CR178-RSH

continuity of purpose, but did not constitute separate instances of stalking and harassment.

5. Defendants' conduct caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to Victim A.

**III**

**PENALTIES**

The crime to which Defendant is pleading guilty carries the following penalties:

A.    a maximum 5 years in prison;

B.    a maximum $250,000 fine;

C.    a mandatory special assessment of $100 per count; and

D.    a term of supervised release of up to 3 years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release.

**IV**

**DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES**

This guilty plea waives Defendant's right at trial to:

A.    Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B.    A speedy and public trial by jury;

C.    The assistance of counsel at all stages;

D.    Confront and cross-examine adverse witnesses;

E.    Testify and present evidence and to have witnesses testify on behalf of Defendant; and,

Plea Agreement

4

Def. Initials  JS

23CR178-RSH

**SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE**

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The Government has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the Government at sentencing also is not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

**X**

**PARTIES' SENTENCING RECOMMENDATIONS**

A.    SENTENCING GUIDELINE CALCULATIONS

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

|   |   |   |
|---|---|---|
| 1. | Base Offense Level [USSG § 2A6.2] | 18 |
| 2. | Acceptance of Responsibility [§ 3E1.1] | -3 |
| 3. | Full Appellate Waiver/Expeditious Resolution [USSG § 5K2.0] | -4 |

The parties further agree that Defendant's conduct does not constitute a "pattern of activity," as defined in USSG § 2A6.2 Application Note 1, insofar as the actions described above constitute a single course of conduct, rather than separate instances of cyberstalking and harassment.

Plea Agreement

7

Def. Initials JS 38

23CR178-RSH

//

/

//

## XV

## DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

RANDY S. GROSSMAN
United States Attorney

_____4/12/23_____     _____
DATED                                ANDREW SHERWOOD
                                     Assistant U.S. Attorney

_____04/11/2023_____     ____/s/ *Jeremy Warren*_____
DATED                                JEREMY WARREN
                                     Defense Counsel

**IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.**

_____04/11/2023_____     _____
DATED                                JONATHAN SANDOVAL
                                     Defendant


*Mario Peia (signed with permission)*
MARIO PEIA
Assistant U.S. Attorney

Plea Agreement

13

Def. Initials ___JS___

23CR178-RSH

AO 245B (CASD Rev. 1/19) Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| **V.** | (For Offenses Committed On or After November 1, 1987) |
| JONATHAN SANDOVAL (1) | |

Case Number:   3:23-CR-00178-RSH

Jeremy D Warren
_____
Defendant's Attorney

**USM Number**      08424-506

☒  Modification of Supervision Conditions (18 U.S.C. § 3563(c) or 3583(e))

THE DEFENDANT:

☒  pleaded guilty to count(s)      1 of the Indictment

☐  was found guilty on count(s)
      after a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offense(s):

| **Title and Section / Nature of Offense** | **Count** |
|---|---|
| 18:2261A(2)(B),2261(b)(5) - Stalking | 1 |

The defendant is sentenced as provided in pages 2 through _____6_____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐  The defendant has been found not guilty on count(s)

☐  Count(s) _____ is      dismissed on the motion of the United States.

☒  Assessment :  $100.00 imposed

☐  JVTA Assessment*: $

*Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.

☒  See fine page      ☐ Forfeiture pursuant to order filed                         , included herein.

IT IS ORDERED that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material change in the defendant's economic circumstances.

September 22, 2023
_____
Date of Imposition of Sentence

HON. ROBERT S. HUIE
UNITED STATES DISTRICT JUDGE

40

AO 245B (CASD Rev. 1/19) Judgment in a Criminal Case

| DEFENDANT: | JONATHAN SANDOVAL (1) | Judgment - Page **2** of **6** |
| CASE NUMBER: | 3:23-CR-00178-RSH | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: 7 months

☐ Sentence imposed pursuant to Title 8 USC Section 1326(b).
☒ The court makes the following recommendations to the Bureau of Prisons:

Incarceration at FCI Lompoc or in California to facilitate family visits.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant must surrender to the United States Marshal for this district:

☐ at _____ A.M. on _____

☐ as notified by the United States Marshal.

☒ The defendant must surrender for service of sentence at the institution designated by the Bureau of Prisons:

☒ on or before 11/02/2023 by 12:00 PM

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

3:23-CR-00178-RSH

41

AO 245S (CASD Rev. 08/13) Judgment in a Criminal Case

DEFENDANT: JONATHAN SANDOVAL           Judgment - Page 6 of 6
CASE NUMBER: 3:23-CR-00178-RSH

## FINE

The defendant shall pay a fine in the amount of    $2,000.00    unto the United States of America.

Pay a fine in the amount of $2,000 through the Clerk, U. S. District Court. Payment of fine shall be forthwith. During any period of incarceration the defendant shall pay fine through the Inmate Financial Responsibility Program at the rate of 50% of the defendant's income, or $25.00 per quarter, whichever is greater. The defendant shall pay the fine during his supervised release at the rate of $100 per month. These payment schedules do not foreclose the United States from exercising all legal actions, remedies, and process available to it to collect the fine judgment at any time.

Until fine has been paid, the defendant shall notify the Clerk of
the Court and the United States Attorney's Office of any change in the defendant's mailing or residence address, no later than thirty (30) days after the change occurs.

42

AO 245B (Rev. 09/19)    Judgment in a Criminal Case    (Form modified within District on October 3, 2024)
Sheet 1

# UNITED STATES DISTRICT COURT
Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) |
| AUSTIN SUMAN | ) Case Number:  7:24Cr.00700-01 (NSR) |
| | ) USM Number:  47149-511 |
| | ) _Rachel Martin, Esq._ |
| | ) Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    One (Indictment)

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 875(c) | Threatening Interstate Communications | 11/15/2024 | 1 |

The defendant is sentenced as provided in pages 2 through    7    of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)    2 and 3    ☐ is    ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

8/1/2025
Date of Imposition of Judgment

Signature of Judge

Nelson S. Román, U.S.D.J.
Name and Title of Judge

8/1/2025
Date

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  8 | 1 | 2025

43

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __2__ of __7__

DEFENDANT:   AUSTIN SUMAN
CASE NUMBER:   7:24Cr.00700-01 (NSR)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

Nine (9) Months. Defendant advised of his right to appeal under the plea agreement.

☐   The court makes the following recommendations to the Bureau of Prisons:

☑   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____   ☐ a.m.   ☐ p.m.   on _____ .

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on _____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

44



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

July 25, 2025

**BY ECF**

The Honorable Nelson Román
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

> Re: **SENTENCING SUBMISSION**
> ***United States v. Austin Suman,*** **24 Cr. 700 (NSR)**

Dear Judge Román:

The Government respectfully submits this letter before the sentencing of Austin Suman, which is scheduled for August 1, 2025. Suman pleaded guilty to one count of threatening interstate communications, in violation of 18 U.S.C. § 875(c). For the reasons set forth below, the Government submits that a sentence of 16 months' imprisonment, within the applicable Guidelines range of 10 to 16 months, would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

## I.   Offense Conduct and Procedural History

On November 8, 2024, Suman sent a series of violent and hate-based threats over Facebook and email to a news reporter (Victim-1) based in Orange County, New York. PSR ¶ 4.[1] Nearly six years prior, Victim-1 wrote a news article about Suman relating to his arrest for allegedly threatening a former roommate with a firearm, resulting in Suman's guns being taken away. PSR ¶ 6. Over the course of approximately 1 hour, Suman threatened to injure or kill Victim-1, writing, "I will end you," "I will end you and your family," "[I'll] see you soon," "we will end you we coming now," and "I would drag you by your legs naked with my horse."[2] PSR ¶ 5. He also threatened to blow up Victim-1's residence, writing, "I can blow your house off it's foundation tread lightly." PSR ¶ 7. He added that all his guns were returned, stating "I have more guns than ever," including "ful[ly] auto[matic]" weapons. PSR ¶ 6.

Suman's threats were motivated by Victim-1's gender, race, ethnicity, and national origin. "[D]umb fuckin cunt . . . female journalist what a joke." PSR ¶ 5. "[D]umb Mexican," and "dum[b]

---

[1] Since a final presentence report has not been submitted at the time of this filing, citations to the "PSR" refer to the Initial Presentence Report, dated July 14, 2025, filed by United States Probation.

[2] Direct quotes attributed to Suman are included as written by him, and therefore may include typographical or grammatical errors.

45

fuckin Spanish journalist" he said, while repeating ethnic slurs against people of Hispanic, Latin American, or Spanish descent, repeatedly referring to the victim as a "spick." *Id.* He wrote, "We are going to deport your family all of them . . . [u]seless life. Dumb bitch." PSR ¶ 5. "Guess what I have now? More [guns] than you or your family might know. Fucking spicks." PSR ¶ 6.

On November 15, 2024, Suman was arrested in South Carolina on a criminal Complaint out of the Southern District of New York. PSR ¶ 11. The results of the search of Suman's residence confirmed that his threats were not idle talk. He had both the means and motive to carry out his threats. Federal agents recovered 11 pistols, shotguns, and rifles, including ammunition, that were in Suman's possession—most of which were in his bedroom—as well as a "Full Auto Modification Manual" (instructions to modify semi-automatic firearms into fully automatic firearms). PSR ¶ 13. One of the firearms had a *sixty-round* drum fully loaded with ammunition. *Id.* Agents also recovered a "go bag" filled with weapons and other items, showing both a plan and intention to be able to leave his residence at a moment's notice. Images of some of these items are below:

  

After Suman was arrested, law enforcement learned that Suman's threats on November 8 went beyond just Victim-1. Suman also sent threatening messages to a retired New York police sergeant who had arrested him in the past. PSR ¶ 30. He wrote: "I don't give a fuck what you are, you are retarded joke. Come to the south and bring your pathetic self and fat family. You bug eyed fuck." *Id.* He later said, "You are a faggot. You and you gay blue line. You tyrant fuckin cult. C9me south I will end you." *Id.* There were additional messages that the FBI believes were directed to the officer's minor daughter. *Id.* The retired police sergeant also informed law enforcement that, in 2011, Suman threatened to kill the officer and his whole family. *Id.*

When law enforcement reviewed Suman's phone, it recovered other messages from November 8, including messages between someone who Suman reported was a close friend in New York. PSR ¶ 12. Law enforcement spoke with that close friend, who reported that Suman has "extremist" ideology. *Id.* After Suman made his threats to Victim-1 and the retired police sergeant, Suman wrote: "Yo[] I'm ripping up [the retired police sergeant] and [the reporter] [b]itch that wrote article on me. Fuck ny. I called his daughter fat. Lol. Dumb fuckin retarded cop."

46

On November 18, 2024, Suman had his initial appearance in South Carolina and was detained pending transfer to the Southern District of New York. PSR ¶ 11.

On December 17, 2024, Suman was indicted by a grand jury and charged with threatening interstate communications, in violation of 18 U.S.C. § 875(c); willfully making a threat involving explosives, in violation of 18 U.S.C. § 844(e); and interstate stalking, in violation of 18 U.S.C. § 2261A(2). ECF No. 6.

On December 20, 2024, Suman had his initial appearance in this District. After a bail hearing, the Honorable Andrew E. Krause ordered the defendant detained. PSR ¶ 11.

On April 30, 2025, Suman pleaded guilty as charged in Count 1 of a three-count Indictment, pursuant to a written plea agreement (the "Plea Agreement"). PSR ¶ 1. Count 1 charges that Suman knowingly and intentionally transmitted in interstate and foreign commerce a communication containing a threat to injure the person of another, in violation of 18 U.S.C. § 875(c). PSR ¶ 1. In the Plea Agreement, the parties stipulated that the applicable Guidelines range is 10 to 16 months' imprisonment (the "Stipulated Guidelines Range").

Probation has calculated a Guidelines range of 10 to 16 months' imprisonment, based on a total offense level of 12 and a criminal history category of I, which the Government agrees is the correct calculation of the Guidelines. PSR ¶ 84.

## II. Applicable Law

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). District courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49; *see also Booker*, 543 U.S. at 264 (explaining that district courts must "consult" the Sentencing Guidelines and "take them into account" when sentencing). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)–(7). *See Gall*, 552 U.S. at 50 & n.6.

47

In determining the appropriate sentence, Section 3553(a) directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### III.    A Sentence of 16 Months' Imprisonment is Appropriate

The Court should sentence Suman to a term of incarceration of 16 months, which the Government submits would be sufficient, but not greater than necessary, to satisfy the purposes of sentencing. Such a sentence is needed to deter future misconduct by the defendant and others similarly situated, and reflect the nature and seriousness of his offenses. *See* 18 U.S.C. § 3553(a).

Threats create an overall "climate of violence" that must be curtailed. *United States v. Kelner*, 534 F.2d 1020, 1027 (2d Cir. 1976). Title 18, United States Code, Section 875(c) reflects Congress's "constitutional responsibility to [e]nsure domestic tranquility . . . in an era of ever-increasing acts of violence . . . coupled with technological opportunities to carry out threats." *Id.* at 1020, 1026 (2d Cir. 1976). As the late Justice Powell put it:

> One of the hallmarks of a civilized society is the level and quality of discourse. We have witnessed in recent years a disquieting deterioration in standards of taste and civility in speech. For the increasing number of persons who derive satisfaction from vocabularies dependent upon filth and obscenities, there are abundant opportunities to gratify their debased tastes. But our free society must be flexible enough to tolerate even such a debasement provided it occurs without subjecting unwilling audiences to the type of verbal nuisance committed in this case. The shock and sense of affront, and sometimes the injury to mind and spirit, can be as great from words as from some physical attacks.

*Rosenfeld v. New Jersey*, 408 U.S. 901, 909 (1972) (Powell, J., dissenting).

Suman's actions were vicious and calculated to inflict terror on the victim and her family. A sentence of 16 months' imprisonment would be appropriate for several reasons:

First, Suman's sentencing submission—particularly the letters written by him and his mother—does not come across as expressing deep remorse but rather deep justification of the hurt feelings from which his hateful threats emanated. He explains that he "googled himself and was angry that the victim's article from so many years ago was still readily available to potential employers." The reporter's post was "a thorn in my side," he states, and "the gravity of her articles have made a huge negative impact on me." Suman's mother appears to directly shift blame—if not directly attack—the victim, painting her as "an internet reporter . . . who makes her living by posting booking shots," clearly attempting to diminish the victim's integrity and history of award-winning journalism and suggesting that the victim, not the defendant, is the real wrongdoer. This is not the apology that Victim-1 deserves.

While the defendant explains that he was "angry," "upset" and "hurt" after reading Victim-1's articles," which he said "made a huge negative impact on [him] and [his] family's well-being over the years," having grievances against people is a normal part of life. That does not justify committing crimes against people. Nobody deserves to be threatened for doing their job and serving their community. This is also not the first time that he has threatened to kill someone for simply doing their job. Around the same time as his threats to Victim-1, he targeted another New York individual who he had a vendetta against—a retired police sergeant with the who has known of Suman for over 20 years. "I don't give a fuck what you are, you are retarded joke." PSR ¶ 30. Suman also sought to denigrate law enforcement, calling it a "tyrant fucking cult." *Id.* He also said "You and you gay blue line." *Id.* To friends, Suman called the officer a "[d]umb fuckin retarded cop." Rather than focus on how others have wronged him, Suman should be looking inward and reflecting on how his past mistakes brought him to where he is today. Apparently, nearly 8 months in jail has not been enough.

Second, dismissing Suman's behavior as a "drunken verbal tirade" understates the intentional and deliberate nature of his threats, as well as the context in which the threats were made. Clearly, he harbored a yearslong resentment against Victim-1 and also the retired police sergeant he threatened on that same day. His threats against Victim-1 started at 8:49 P.M. and continued off and on for an hour and over various means of communication. At 11:26 P.M., his threats against the retired police sergeant and his family started. Not only this, Suman then bragged to others about the very threats he sent these two individuals. PSR ¶ 12. Nothing about Suman's threats on November 8, 2024 were aberrational or coincidental.

Third, while it is true that Suman did not carry out his threats before he was arrested, Section 875(c) criminalizes the making—not the execution—of a threat. Threats are harmful even if they are not acted on. *See United States v. Jeffries*, 692 F.3d 473, 478 (6th Cir. 2012) ("[T]he government has the right, if not the duty, to protect individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur") (cleaned up); *United States v. White*, 670 F.3d 498, 507 (4th Cir. 2012) ("true threats have the potential to cause such harm and imperil the security of individual citizens"); *United States v. Haddad*, No. 09 CR 115, 2014 WL 1493152, at *3 (N.D. Ill. Apr. 16, 2014) ("True threats always fall outside the ambit of First Amendment protections, because they inflict injury by their very

49

utterance.") (internal citations and quotations omitted). And although Suman was far away from Victim-1, from her perspective, he might as well have lived across the street.

Finally, a significant sentence is particularly important here given the need for general deterrence. It is easier today than ever before to threaten people from behind the safety of the Internet. As Victim-1 is expected to recount at sentencing, Suman's threats terrorized her and her family, and caused disruption at her work at News 12 Hudson Valley. When threats are directed at core participants in our society, such as the press and law enforcement, it undermines the very functioning of our country. Such conduct must be deterred.

Suman makes several arguments in support of a sentence below the Stipulated Guidelines Range. None of them justify a downward variance.

First, he references the amount of time it took to get him transported from South Carolina to New York. But the amount of time it took to transport him was reasonable and in line with usual procedures. He should not get a discount because he threatened his victim from South Carolina. Suman also cites physical injuries stemming from a motorcycle accident in 2021. However, federal correctional facilities are more than capable of accommodating defendants with physical injuries or disabilities. And although Suman refers to his condition as a "disability," he has provided no medical records supporting that claim, and he acknowledges that his disability benefits claim was denied (though he says he is appealing the denial). PSR ¶ 71. Throughout this case, the Government has not heard a single complaint about the quality of medical care the defendant is receiving.

Second, Suman next argues that a more lenient sentence would be commensurate with sentences imposed on similarly situated defendants. But that is not true. To start, Suman's reliance on cases involving deferred prosecutions is not on point because, clearly, the Government has not deferred prosecution in this case. To the extent Suman presents a selection of other cases in support of a time served sentence,[3] the Government submits that the Sentencing Guidelines, which reflect "extensive empirical evidence derived from the review of thousands of individual sentencing decisions," is a sounder proxy for what sentence is typical in these types of cases. *Gall*, 552 U.S.

---

[3] One of those cases is *United States v. Kareem Ford*, 23 Cr. 477 (NSR), which was a case before Your Honor that happened to involve the same victim as in this case. Ford, who was 21-years-old at the time of his threats, received a sentence of 4 months' imprisonment, even though both parties requested a time-served sentence. Ford's sentence was slightly higher than the middle of the 0 to 6 months' Guidelines range stipulated to by the parties. *See id.*, ECF No. 36 (Government Sentencing Submission). Unlike Suman's threats, Ford's case did not involve multiple graphic, racist, misogynist, and hate-filled threats through multiple forms of communication against not just the reporter but also her family. Ford also immediately acknowledged responsibility for his threats when interviewed by the FBI, as opposed to lying to law enforcement. Moreover, rather than deflect blame and seek to justify his actions, Ford was remorseful and provided a direct apology to the victim: "If I could speak to the reporter I would apologize and deeply tell her my regrets and tell her I am harmless and was being young and dumb. I meant no harm and had no intentions on any words I said. It was just wrong what I did, and stupid." *Id.*, ECF No. 35 (Ford's Sentencing Submission).

Case 2:24-cr-00243-TS-DBP Document 102 Filed 04/28/25 PageID.1865 Page 7 of 7 Case 2:24-cr-00243-TS-DBP Document 102 Filed 04/28/25 PageID.1865 Page 54 of 80

Page 7

at 46. Even still, the defendant's own cases support a lengthy sentence here, as the "timed served" sentences involved effective sentences of 19 months, 21 months, and 22 months.[4]

## IV.    Conclusion

Given the need for Suman's sentence to afford adequate deterrence to him and others similarly situated, reflect the nature and seriousness of his offense, and promote respect for the law, the Government submits that a Guidelines sentence of 16 months' imprisonment would be sufficient, but not greater than necessary, to satisfy the purposes of sentencing. *See* 18 U.S.C. § 3553(a).

Respectfully submitted,

JAY CLAYTON
United States Attorney
for the Southern District of New York

By:_____
Reyhan Watson
Assistant United States Attorney
(914) 993-1965
Reyhan.Watson@usdoj.gov

cc:    Rachel Martin, Esq. (By ECF and Email)

---

[4] In *United States v. Gruber*, No. 15 Cr. 712 (JPO) (S.D.N.Y.), the defendant's "time served" sentence was effectively 19 months' incarceration, resulting in "[n]ot a lot of difference" between a Guidelines sentence and a time served sentence. *Id.*, ECF No. 65 at 14 (Sentencing Transcript). In *United States v. Banfill*, No. 21 Cr. 468 (VM) (S.D.N.Y.), the defendant's "time served" sentence was effectively 21 months' imprisonment. *See id.*, ECF No. 44 (Defendant's Sentencing Submission). And in *United States v. Janczuk*, No. 24 Cr. 10 (VEC) (S.D.N.Y.), the Court sentenced the defendant to "time served" but, by the time of the Government's sentencing submission, the defendant had already spent over 22 months incarcerated. *Id.*, ECF No. 47 at 4 n.1. Additionally, Janczuk's Guidelines range was 0 to 6 months. *Id.* at 3.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___6___ of ___7___

DEFENDANT: AUSTIN SUMAN
CASE NUMBER: 7:24Cr.00700-01 (NSR)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Restitution** | **Fine** | **AVAA Assessment*** | **JVTA Assessment**** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0 | $ 0.00 | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $                0.00 | $              0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the    ☐ fine    ☐ restitution.

☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

53

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 3 — Supervised Release

Judgment—Page __3__ of __7__

DEFENDANT:   AUSTIN SUMAN
CASE NUMBER:   7:24Cr.00700-01 (NSR)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

Three (3) Years, subject to the standard conditions 1-12 as well as mandatory and special conditions.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

54

FELICE JOHN VITI, Acting United States Attorney (#7007) FILED IN UNITED STATES DISTRICT
JOEY L. BLANCH, Assistant United States Attorney (#16665)   COURT, DISTRICT OF UTAH
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

SEP 30 2025

GARY P. SERDAR
CLERK OF COURT
BY _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:24-CR-00163-TS |
| Plaintiff, | |
| vs. | STATEMENT BY DEFENDANT IN ADVANCE OF PLEA OF GUILTY AND PLEA AGREEMENT PURSUANT TO FED. R. CRIM. P. 11(c)(1)(C) |
| KAILIN WANG, | |
| Defendant. | Judge Ted Stewart |

I hereby acknowledge and certify that I have been advised of and that I understand the following facts and rights, and that I have had the assistance of counsel in reviewing, explaining, and entering into this agreement:

1. As part of this agreement with the United States of America, I intend to plead guilty to Counts 1 and 2 of the Indictment. My attorney has explained the nature of the charges against me, and I have had an opportunity to discuss the nature of the charges with my attorney. I understand the charges and what the United States is required to prove in order to convict me. The elements of Counts 1 and 2, both of which charge Cyberstalking, in violation of 18 U.S.C. § 2261A, are:

> (a) the defendant used facilities of interstate and foreign commerce, including an electronic communication service and/or an interactive computer service;

> (b) the defendant used the facility of interstate commerce to engage in a course of conduct – that is, a pattern of conduct composed of two or more acts, evidencing a continuity of purpose;

52

11.     I stipulate and agree that the following facts accurately describe my conduct. These facts provide a basis for the Court to accept my guilty plea:

At all relevant times, I was a resident of the District of Utah.

In 2017, I connected with Victim 2 on a social media site. We did not form a romantic or dating relationship. Nevertheless, beginning in and around September 2017 and continuing until at least 2019, I engaged in a course of conduct intended to harass and intimidate Victim 2 and his friends.

In order to harass and intimidate Victim 2, I used multiple email accounts, social media accounts, and phone numbers to send numerous derogatory and defamatory messages, texts and other communications to him. I sent similar messages and other communications about Victim 2 to his friends and posted harassing and defamatory things about him on public Internet sites. For example:

- On May 16, 2019, and again on June 15, 2019, I used the Internet to report Victim 2 to the federal Internet Crimes Complaint Center ("IC3"). In these reports, I claimed that Victim 2 had impersonated me online and posted defamatory and harassing statements on the Internet about me. I made the reports in order to have Victim 2 investigated by law enforcement in order to continue harassing and intimidating him.

In 2018, I met Victim 1 on a social media site. We had a brief sexual relationship resulting in the birth of a child ("Minor-1"). Beginning in or around December 2018 and continuing until at least 2020, I engaged in a course of conduct intended to harass and intimidate Victim 1 and his family.

In order to harass and intimidate Victim 1, I used multiple email accounts, social media accounts, and phone numbers to make numerous derogatory posts about Victim 1 on public Internet sites. I tagged him in these posts to to ensure he saw them, and to ensure anyone reading the posts would connect them to Victim 1. I also sent numerous derogatory messages, texts and other communications about him to his friends and families and posted harassing and derogatory things about them on public Internet sites. For example,

4

55

- On May 16, 2019, and again on June 15, 2019, I used the Internet to report Victim 1 to the federal Internet Crimes Complaint Center ("IC3"). In these reports, I claimed that Victim 1 had impersonated me online and posted defamatory and harassing statements on the Internet about me. I made the reports in order to have Victim 1 investigated by law enforcement in order to continue harassing and intimidating him.

As a result of sending these messages and making these posts, I caused Victims 1 and 2 and their friends and families substantial emotional distress.

I understand that the Internet is a means and facility of interstate and foreign commerce.

12. The only terms and conditions pertaining to this plea agreement between me and the United States are as follows:

a. **Guilty Plea.** I will plead guilty to Counts 1 and 2 of the Indictment.

b. **Stipulated Sentence.** Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the sentence imposed by the Court will be no less than a 5-year term of probation and no more than a term of imprisonment of 12 months, and if a term of imprisonment is imposed, it shall be followed by a 3-year term of supervised release; which I agree is a reasonable sentence.

(1) I understand that this agreement, including my plea, the agreed upon sentence, and all other terms referenced herein, are subject to the approval of, and acceptance by the Court. I further understand that the Court will likely order the preparation of a Presentence Report to assist in the determination of whether this plea and the agreement are appropriate, and I agree to fully cooperate in the preparation of the Presentence Report.

(2) If, after receiving all relevant information, the Court rejects the plea agreement and determines that a sentence different from the agreed upon sentence of no less than a 5-year term of probation and no more than a term of imprisonment of 12 months, I will have the right to withdraw the plea of guilty and the terms of this agreement will become null and void. Likewise, if the Court rejects the plea agreement and determines that the sentence should be less than a 5-year term of probation, and if a term of imprisonment is imposed, a term of supervised release less than 3 years, I understand that the United States will have the right to move to vacate this agreement, and all terms of this agreement will become null and void.

5

56

c. **Dismissal of Counts.** The United States agrees to move for leave to dismiss Counts 3 and 4 at the time of sentencing.

d. **Utah Case.** In addition to pleading guilty in this case (the "federal case"), I have also agreed to plead guilty in State of Utah v. Kailin Wang, Third District Court case number 211100167 (the "Utah case") pursuant to the following terms:

- I will plead guilty to Count 1 of the Utah case, amended to making false written statement in violation of Utah criminal code § 76-8-504, a Class B misdemeanor;
- I will plead guilty to Count 8 of the Utah case, which charges me with forgery in violation of Utah criminal code §76-6-501(2), a Class 3 felony, reduced to a Class A misdemeanor pursuant to Utah criminal code § 77-2.2.3;
- Counts 2-7 will be dismissed;
- The State will recommend a sentence to run concurrent with any period of incarceration imposed in the federal case, if any.

I understand that my guilty plea in the Utah case is an essential part of the agreement in the federal case. Notwithstanding paragraph 12(b)(2) above, I agree that if given the opportunity to plead guilty pursuant to those terms in the Utah case prior to the sentencing hearing in the federal case, and I do not do so, I may not withdraw my guilty pleas in the federal case and the United States will not be bound by its sentencing agreement and can seek up to the statutory maximum sentence.

e. **California Case.** The San Francisco District Attorney's Office agrees that if I plead guilty in the federal case and the Utah case as contemplated by this agreement, they will move to dismiss California v. Wang, Superior Court of the State of California, City and County of San Francisco, case numbers 19016407 and 24500827 (consolidated) (the "California case") after sentencing is imposed in the federal case. The parties agree that dismissal of the California case is an essential part of the agreement in the federal case.

f. **Motion to Revoke Pretrial Release** The government agrees to withdraw the motion to revoke pretrial release filed on June 4, 2025, at docket 76, and not to request that defendant be detained prior to sentencing, unless the defendant commits violations of her conditions of pretrial release that are currently unknown to the government.

g. **Relevant Conduct.** I understand and agree that the Presentence Report may include descriptions of conduct I engaged in which either was not charged against

6

57

I represent that the San Francisco District Attorney's Office has agreed to be bound by paragraph 12e of this plea agreement.

DATED this _26th_ day of ___September___, _2025_.

_____
DONALD DU BAIN
Assistant District Attorney
San Francisco District Attorney's Office

11

58

The Order of the Court is stated below:
Dated: November 10, 2025         /s/   DENISE M PORTER
        06:41:02 PM                    District Court Judge

IN THE FOURTH JUDICIAL DISTRICT COURT

UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| **STATE OF UTAH,**<br><br>Plaintiff,<br><br>vs.<br><br>**KAILIN WANG,**<br><br>Defendant. | **STATEMENT OF DEFENDANT IN SUPPORT OF GUILTY PLEA AND CERTIFICATE OF COUNSEL**<br><br>**Case No. 211100167**<br><br>**Judge DENISE PORTER** |

I, **KAILIN WANG** hereby acknowledge and certify that I have been advised of and that I understand the following facts and rights:

### NOTIFICATION OF CHARGES

I am pleading guilty to the following crimes:

| | Crime & Statutory Provision | Degree | Punishment Min/Max and/or Minimum Mandatory |
|---|---|---|---|
| I | Making a Written False Statement<br>Utah Code §76-8-504 | MB | Up to 180 days in jail; $1,000 fine + 90% surcharge; and $53 court security fee. |
| VIII | Forgery<br>Utah Code §76-6-501(2) pursuant to § 77-2.2.3 | MA | Up to 364 days in jail; $2,500 fine + 90% surcharge; and $53 court security fee. |

I have received a copy of the Information against me. I have read it, or had it read to me,

59

(iii)     **purports to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when an original did not exist.**

I understand that by pleading guilty I will be admitting that I committed the crimes listed above. I stipulate and agree that the following facts describe my conduct and the conduct of other persons for which I am criminally liable. These facts provide a basis for the court to accept my guilty pleas and prove the elements of the crime(s) to which I am pleading guilty:

*Count 1: On or about March 18, 2019, in Utah County, the defendant, Kailin Wang, knowingly created a false impression in a written application for a protective order by omitting information that would absolve the respondent of her accusation regarding the nude photograph.*

*Count 8: On or about December 23, 2020, in Utah County, defendant Kailin Wang issued a subpoena by repurposing a previously court-stamped form rather than obtaining a new blank subpoena form from the clerk as required under Utah R. Civ. P. 45(b)(2). The subpoena purported to be from the Fourth District Court and was directed to Menlo-Atherton Cooperative Nursery School for the records of her then 2-year-old son.*

*Defendant had authority pursuant to Judge Thomas Low's March 5, 2020 order in Case No. 194400718, which limited defendant's subpoena authority to:*

*"Petitioner [Defendant] may serve subpoenas on any Doctors, Pediatricians, etc., having treated, or is currently treating minor, KTW, including but not limited to; Hobble Creek Pediatrics, Utah Valley Pediatrics, and Stanford Health Care."*

*Menlo-Atherton Cooperative Nursery School is not a medical provider and falls outside the categories of authorized recipients specified in the Court's Order.*

## WAIVER OF CONSTITUTIONAL RIGHTS

I am entering these pleas voluntarily. I understand that I have the following rights under the constitutions of Utah and the United States. I also understand that if I plead guilty I will give up all the following rights:

**Counsel:** I know that I have the right to be represented by an attorney and that if I cannot afford one, an attorney will be appointed by the court at no cost to me. I understand that I might

60

attorney and myself.  All the promises, duties, and provisions of the plea bargain, if any, are fully

contained in this statement, including those explained below:

- **The State agrees to amend count 1 to Making a False Written Statement, a Class B Misdemeanor, under § 76-8-504.**
- **The State agrees to amend count 8 to a Class A Misdemeanor under § 77-2.2.3 3.**
- **I agree to plead guilty to the amended counts 1 and 8, with the remaining charges dismissed.**
- **The State will recommend a sentence to run concurrent with any period of incarceration imposed in the federal case, if any.**
- **The State Agrees to continue sentencing on this matter until the Sentencing in the Federal Court occurs.**
- **If the Federal Court does not sentence to any period of incarceration, the Defendant agrees to be simultaneously on Utah State Probation as well as any Federal Probation.**

**Trial judge not bound.**  I know that any charge or sentencing concession or

recommendation of probation or suspended sentence, including a reduction of the charges for

sentencing, made or sought by either defense counsel or the prosecuting attorney are not binding

on the judge.  I also know that any opinions they express to me as to what they believe the judge

may do are not binding on the judge.

## DEFENDANT'S CERTIFICATION OF VOLUNTARINESS

I am entering this plea of my own free will and choice.  No force, threats, or unlawful

influence of any kind have been made to get me to plead guilty.  No promises except those

contained in this statement have been made to me.

I have read this statement, or I have had it read to me by an attorney, and I understand its

61

17CR14-LPS

*filed in open court 10/23/18 UN*

## EXHIBIT B

In March of 2014, Terence Yung interviewed with JOHN DOE 1 in a local coffee shop. Yung was applying for admission into Georgetown's law school and JOHN DOE 1 is an alumnus. Based on the interview, JOHN DOE 1 did not recommend Yung for admission, and Georgetown ultimately denied his application a week later.

Despite gaining admission to the University of Texas Law School (and a full-ride scholarship to attend), Yung embarked on an 18-month cyberstalking campaign against JOHN DOE 1. Therein, he repeatedly harassed and intimidated JOHN DOE 1 and his family. This course of conduct left John Doe 1 and his family in a constant state of fear.

Yung published false, violent and sadistic statements about his victims on the Internet – including descriptions of rape, lynching, sexual molestation, and graphic violence. Moreover, the defendant repeatedly posted personal ads on Craigslist and other websites with the intent that individuals interested in violent and sadistic sexual activity would go to the victims' residence in the middle of the night. Below are a number of examples of this course of conduct.

Beginning in July 9, 2015, JOHN DOE 1's home telephone number – which Yung had from his emails with JOHN DOE 1 – began to receive telephone calls from individuals seeking escort services.

On October 26, 2015, at approximately 2 a.m., an unknown white male came to the front door of his residence because he was "looking" for JOHN DOE 1's wife. JOHN DOE 1 told the man to go away and the man left. The following night (October 27, 2015), at some point after midnight, JOHN DOE 1 indicated that an unknown Asian male came to the front door of his residence and rang the doorbell. JOHN DOE 1 again told the man to leave and he did.

On October 28, 2015, at approximately 2 a.m., the New Castle County Police Department ("NCCPD") responded to a 911 call from JOHN DOE 1's next-door neighbor. The neighbor called 911 to report a suspicious individual ringing his doorbell late at night. NCCPD made contact with a young black male, outside of the residence. The young man told NCCPD that he had come to JOHN DOE 1's house to meet a female named "K" – the first name of JOHN DOE 1's wife – in response to a Craigslist ad in the "casual encounters" section. The young man then showed the police several emails he received; the title of the emails was "petite slut for BBC – w4m." The young man explained that "BBC" stands for "Big Black Cock" and "w4m"

1

62

means "women looking for men."   The Craigslist email for "K" was listed as yg4ch-5286804345@pers.craigslist.org; the name "Linda Corless" was associated with the email.   "Linda Corless" was a pseudonym that the defendant used throughout his campaign.

The FBI obtained records from Craigslist concerning this post, which was created on October 26, 2015, at 4:19:44 p.m. (Pacific time), and was linked to email account   lindacorless333@gmail.com   and   Internet   Protocol   ("IP")   address, 70.114.207.210.   A copy is below.

```
------- DATABASE ENTRY NUMBER 1 ---------------------------------------------------

           posting_id: 5286804345
        poster_email: lindacorless333@gmail.com
             user_id: 272878172
           poster_ip: 70.114.207.210
     auth_user_phone: n/a
      record_created: Mon Oct 26 2015 04:19:44 PM (Pacific)
         posted_date: Mon Oct 26 2015 05:17:44 PM (Pacific)
 posting_renewal_dates: n/a
      record_modified: Mon Oct 26 2015 06:14:26 PM (Pacific)
    area_description: delaware
 subarea_description: n/a
        neighborhood: n/a
      geographic_area: n/a
category_description: casual encounters
       category_type: personals
           price/age: n/a
     invoice_item_id: n/a
             privacy: anonymized email address
        posted_state: flagged off

        posting_title: petite slut for BBC - w4m

           PostingBody
           ===========
```

I'm the type of girl you bring home to mom and on the way there I blow you in the car.
My favorite position is to lie on my back and desperately holding my panties to the side and have my right leg up in the air and my daddy grabbing on to it with his strong hands against his chest. And I like my toes sucked and moderately choked until I let go of my panties and cum.
After that I finish him off.



```
           Attributes
           ==========
```

2

This IP address is owned by Time Warner Cable. A subpoena to Time Warner revealed that on October 26, 2015, at 4:19 pm (Pacific) IP address 70.114.207.210 was associated with the defendant's then-address in Austin, Texas.

Based on subpoena results from Craigslist, the aforementioned email address (lindacorless333@gmail.com) and the defendant's IP address (70.114.207.210) were used to create two other postings around the same time period: (1) October 24, 2015 – for Wilmington, Delaware; (2) October 29, 2015, for Wilmington, Delaware. The latter states the following:

```
------- DATABASE ENTRY NUMBER 3 ----------------------------------------------

                posting_id: 5291744334
              poster_email: lindacorless333@gmail.com
                   user_id: 272878172
                 poster_ip: 70.114.207.210
           auth_user_phone: n/a
    auth_user_phone_modify: n/a
            record_created: Thu Oct 29 2015 05:22:23 PM (Pacific)
               posted_date: Thu Oct 29 2015 06:57:55 PM (Pacific)
     posting_renewal_dates: n/a
           record_modified: Thu Oct 29 2015 07:27:07 PM (Pacific)
          area_description: delaware
       subarea_description: n/a
              neighborhood: n/a
           geographic_area: wilmington
      category_description: casual encounters
             category_type: personals
                 price/age: 0
           invoice_item_id: n/a
                   privacy: anonymized email address
              posted_state: flagged off

             posting_title: i need a big strong man to punish me - w4m

                PostingBody
                ===========

i need a big strong man to dominate me tonight. i like it when a man puts
his hand around my throat and threatens me with a knife until i open my
mouth and suck him off. then you pull my hair and take out your gun and
threaten me until i let you put your cock and ram it inside of my pussy.
i'm a bad girl, and i need to be punished by a big strong man.
send me a picture with you holding your gun. all others will be ignored.
```

Based on Craigslist records, lindacorless333@gmail.com sent over 200 emails and received over 200 emails to individuals interested in the "petite slut – w4m" ad.

In addition to the postings on Craigslist, the defendant made repeated postings on a website called www.startclass.com – a self-described education site that provides information about colleges, medical schools and law schools. In particular, on

3

www.startclass.com, there is a page devoted to Georgetown Law. On October 27, 2015, the defendant used the pseudonym "lindacorless333" to make a post on the site that tracks a number of key details regarding Yung and his interview with JOHN DOE 1 at a local coffee shop – except that Yung falsely described himself as a blonde female who was sexually molested during the encounter.

The defendant wrote variations of this coffee-shop molestation story about JOHN DOE 1 on other web pages and forums, including:  reddit, tumblr, the top-law-schools.com forums, jdunderground.com, lawschooldiscussion.org, and lawschooli.com.  He also posted similar complaints with the Better Business Bureau, falsely claiming that JOHN DOE 1 sexually molested and assaulted "Linda Corless" – the same pseudonym that he used in the Craigslist ads.

The defendant posted one of these false complaints on October 29, 2015.  The FBI was able to trace this posting to the IP address 204.64.50.212, which belongs to the Texas Attorney General's Office.  Records demonstrate that Yung worked as a law clerk at that office during that time; indeed, his time card showed that he worked that particular day.

| LAW CLERK DAILY/WEEKLY TIME SHEET | | | | |
|---|---|---|---|---|
| *Submit weekly to HRD -025 or via fax to (512) 397-1686* | | | | |
| Name: Terence Yung     Week of: 10/26/2015 **Division: CMF** | | | | |

| Date<br>mm/dd/yy | Time<br>hr.quarter hour<br>(.25, .50,.75) | AG # or<br>Short Name | Activity<br>Code* | Extra Description |
|---|---|---|---|---|
| 10/29/2015 | 4.5 | | | Work |
| | | | | |
| | | | | |
| | | | | |

Beginning in April 2015, the defendant created a series of phony LinkedIn profiles in the name of JOHN DOE 1.  The profile picture for this account is a Klansman holding a rifle with the Member Name "[JOHN DOE 1], Imperial Kludd at the Ku Klux Klan Llc."  Another LinkedIn account associated with JOHN DOE 1 was created in May, 2015.  The profile picture for this account is a different Klansman with the Member Name "[JOHN DOE 1], Imperial Kludd at the Ku Klux

4

65

Klan Llc." In the "Summary" section, the page states "I WANT THE WHOLE WORLD TO KNOW I AM A KLANSMAN. I AM PROUD OF MY WHITE, WHITE POWER, AND MY WHITE POWER WIFE AND MY WHITE POWER KIDS..."

The defendant also created a series of false Twitter pages associated with JOHN DOE 1 and his son, JOHN DOE 2. One of these accounts was created on April 4, 2016, from the defendant's IP address. A tweet from this account states that "I was raped by my Goergetown [sic] U interview," with a follow-up Tweet that JOHN DOE 1 "ruthlessly attacked and degraded me, leaving me with mental wounds that took years to heal." The defendant also created a similar Twitter account on April 4, 2016, from his IP address with an image of a different woman. A Tweet from this account falsely states that "JOHN DOE 1 held me down and fucked me while I said no, stop."

The defendant created another Twitter account in the name of JOHN DOE 1's son, JOHN DOE 2. A copy of this page is shown below. The account falsely indicated that JOHN DOE 2 was also a member of the Ku Klux Klan; the profile photo was taken from the infamous Zapruder film showing the assassination of President John F. Kennedy.



The defendant also created false Pinterest accounts in the name of JOHN DOE 1 For example, on July 2, 2015, the defendant created an account in the name of JOHN DOE 1's company. That account included such phrases as "this country needs

5

66

to bring lynching back.   Beat those niggers. – [JOHN DOE 1], CFO.”   The page includes several historical pictures of individuals who had been killed during lynchings.   The defendant created another account in the name of JOHN DOE 1's son, JOHN DOE 2, with identical content.

In April 2015, the defendant created a blog in the name of JOHN DOE 1.   Blog postings associated with this account include a violently graphic false story of JOHN DOE 1 abducting and raping an eight-year old girl.   An image is below.

## My first time with an underage girl

April 15, 2015April 19, 2015  |     |    cock, dick, pedophile, rape, sick fuck, son of a bitch, underage  |  Leave a comment


. So it's like this. I was forty years old and I had never fucked a girl. Me and my buddy ▮ ▮ went to the elementary school one day. He rounds up a little girl and says let's fuck. So I said

of 19                                                                7/31/2015 2:41 PM

6

67

KKK White Power

yes. I said you have an incipient case of verbal diarrhea. But I want to fuck a little girl. I want to fuck her brains out.

So he has his guys take this little red read head at gun point. We take the kitchen knives and start to cut her clothes off. She starts to scream and cry. We tell her to shut the fuck up but you see she won't. So we take her little panties and stuff it in her mouth. That shuts her mouth up good.

I'm a sadistic fuck, so I take a cigar and torch her tits with it. She screams but we can't hear. Because we stuffed her mouth with panties.

She was only eight years old.

The defendant created false YouTube accounts in JOHN DOE 1's name. One such account created on January 8, 2016, and contains videos of women discussing being raped. There are also "playlists" in JOHN DOE 1's name, with titles such as "rape scenes" and "i hate niggers." Images are below.

7

68



8

Yung also used various emails to communicate with individuals associated with prostitution and fetish websites in order to harass and spy on JOHN DOE 1. Below is one example.

On January 7, 2016, the defendant created a FetLife account with the nickname of "Kaitlyn_gamma." Fetlife.com is a social networking website that serves people interested in bondage, discipline, sadism, and masochism ("BDSM"); fetishism; and kink. On its homepage, FetLife describes itself as, "like Facebook, but run by kinksters like you and me." Fetlife.com allows users to email each other and connect via SMS text messages. Based on a series of emails/text messages from January 2016, posing as "Kaitlyn" the defendant posted an ad in the "Philly/South Jersey/Delaware Personal Ads group." As set forth below, this account was used in attempts to have men go to the JOHN DOE 1 residence – similar to the Craigslist ads discussed above.

In a series of text messages, the defendant contacted a Fetlife user – i.e., a "slave" – about accomplishing a "task."

| From: | ▣     -2696 <████████████████@txt.voice.google.com> |
|-------|-----------------------------------------------------------|
| To: | ▣ Lindacorless333 <lindacorless333@gmail.com> |
| Sent: | Mon Jan 11 2016 14:21:02 EST |
| Subject: | **SMS from** ██████-2696 |

Your in delaware mistress

What are your favorite fetishes and things to do to your slaves

I serve my mistress

| From: | ▣    2696 <████████████████@txt.voice.google.com> |
|-------|-----------------------------------------------------------|
| To: | ▣ Lindacorless333 <lindacorless333@gmail.com> |
| Sent: | Wed Jan 13 2016 19:59:47 EST |
| Subject: | **SMS from** ██████-2696 |

Tell me bout my task

9

70

After the defendant supplied the Fetlife user with JOHN DOE 1's home address, the Fetlife user asked the following:

From:       ᴀ         2696 <                                    @txt.voice.google.com>
To:         ᴀ  Lindacorless333 <lindacorless333@gmail.com>
Sent:       Thu Jan 14 2016 12:26:21 EST
Subject:    **SMS from         2696**

Who am I looking for mistress I'm here to serve my mistress Tell me about
this person Tell me about yourself so I can serve u better Is this a
lover or sub I'm following in order to blackmail Wats their name Wat do
they look like R they dangerous I need to know so I can serve u better my
wyeen

This Fetlife user was interviewed by the FBI on February 8, 2017.   The user indicated that, in his text messages with the defendant, he thought he was speaking with a woman who wanted him to "watch" a man – specifically, an ex-boyfriend.

The defendant also utilized the website "backpage" to create false postings about JOHN DOE 1.   www.backpage.com is a classified advertising website that contains a section for adult postings.  Escorts advertise on various pages depending on region.  A review of the Google gmail search warrant results showed that a number of false escort ads were created to harass JOHN DOE 1 Yung linked these ads with the JOHN DOE 1 home telephone number and/or the cellular telephone of his company.

For example, on March 26, 2016, a backpage ad was posted in "Seattle adult entertainment > Seattle escorts" for a "Sexy BLONDE college girl fun," which listed the JOHN DOE 1s' home telephone number as a means of contact.  A number of scantily clad (and semi-nude) photos of a blonde female were included in the ad. Based on a subpoena response from www.backpage.com, this ad was created using the defendant's IP address.  A similar backpage post was made on the same day from the same email in the San Francisco location; it also listed the JOHN DOE 1s' home phone as a means of contact.

The next day, on March 27, 2016, the defendant placed an online obituary for JOHN DOE 1 on the obituariesfree.com website.

On or around August, 2016, Yung moved into a different residence in Austin, Texas.  Shortly after moving in, he obtained a new IP address with Time Warner Cable and used this address to further his cyberstalking campaign against JOHN DOE 1.

10

71

For example, beginning on or about September 25, 2016, the defendant created another blog at Wordpress in the name of JOHN DOE 1. The initial post describes "JOHN DOE 1" as a "rape story writer, collector, and enthusiast." Additional postings were added to this blog throughout October 2016, each of which appears as a story of rape committed by JOHN DOE 1 – including: (1) one that was named after the Donald Trump Access Hollywood quote, (2) "No Means Yes," (3) "Who Cares What The Dumb B***h Thinks?" (4) "My first time with a boy," and (5) "Raping Miss Jones."

On October 12, 2016, the defendant used his new IP address to create another Twitter account in the name of JOHN DOE 1. On page there are links to the JOHN DOE 1 Rape Stories WordPress blog site (referenced above), the stories set forth above, as well as various animated images of (naked) women being raped by animals and monsters.

AO 245C (Rev. 09/19)    Amended Judgment in a Criminal Case         (form modified within District on Sept. 30, 2019)       (NOTE: Identify Changes with Asterisks (*))
Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| v. | ) |
| Willie Dennis | ) Case Number: 20 CR 623-01 (JSR) |
| | ) USM Number: 91401-054 |
| **Date of Original Judgment:** 2/10/2023 | ) David J. Cohen, Esq. |
| *(Or Date of Last Amended Judgment)* | ) Defendant's Attorney |

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☑ was found guilty on count(s)    1, 2 and 4.
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| **Title & Section** | **Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|---|
| 18USC2261A(2)(B),and | Cyberstalking | | 1, 2 & 4 |
| 18USC 2 | | | |

The defendant is sentenced as provided in pages 2 through    7    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)  3 _____ ☑ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2/10/2023
Date of Imposition of Judgment

Signature of Judge

Hon. Jed S. Rakoff, U.S.D.J.
Name and Title of Judge

3/24/23
Date

73

DEFENDANT: Willie Dennis
CASE NUMBER: 20 CR 623-01 (JSR)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of :
On Counts 1, 2 and 4: Twenty Four (24) months, to run concurrent on all counts.

☑ The court makes the following recommendations to the Bureau of Prisons:
The Court recommends the defendant serve his sentence in a medical prison.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

   ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐ before 2 p.m. on _____ .

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

74

AO 245C (Rev. 09/19)    Amended Judgment in a Criminal Case
                  Sheet 5 — Criminal Monetary Penalties                                              (NOTE: Identify Changes with Asterisks (*))

                                                                          Judgment — Page ___6___ of ___7___

DEFENDANT:   Willie Dennis
CASE NUMBER:   20 CR 623-01 (JSR)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 300.00 | $ | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| TOTALS | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

   ☐ the interest requirement is waived for   ☐ fine   ☐ restitution.

   ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

75

Judgment—Page  3  of  7

DEFENDANT:  Willie Dennis
CASE NUMBER:  20 CR 623-01 (JSR)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

On counts 1, 2 and 4: Three (3) years. All terms on all counts to run concurrent to each other.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
     ☐  The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐  You must make restitution in accordance with 18 U.S.C. § 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.   ☑  You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐  You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐  You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

76

## United States District Court
## Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA vs. | Docket No.     SACR 23-00042-CJC |
| Defendant    Anastassia Krezoub | Social Security No.   N   O   N   E |
| akas:   Sylvia Kass | (Last 4 digits) |

## JUDGMENT AND PROBATION/COMMITMENT ORDER

|  | MONTH | DAY | YEAR |
|---|---|---|---|
| In the presence of the attorney for the government, the defendant appeared in person on this date. | MAY | 20 | 2024 |

**COUNSEL**      Terra Castillo-Laughton
(Name of Counsel)

**PLEA**   [X] **GUILTY,** and the court being satisfied that there is a factual basis for the plea.   [ ] **NOLO CONTENDERE**   [ ] **NOT GUILTY**

**FINDING**   There being a finding/verdict of **GUILTY,** defendant has been convicted as charged of the offense(s) of:

Stalking in violation of 18 U.S.C. §§ 2261A(2)(B), 2261(b)(5) as charged in Count 1 of the Indictment; and

Transmitting Interstate Communications with Intent to Extort in violation of 18 U.S.C. § 875(d) as charged in Count 2 of the Indictment.

**JUDGMENT AND PROB/ COMM ORDER**   The Court asked whether there was any reason why judgment should not be pronounced. Because no sufficient cause to the contrary was shown, or appeared to the Court, the Court adjudged the defendant guilty as charged and convicted and ordered that pursuant to the Sentencing Reform Act of 1984, the defendant, Anastassia Krezoub, be committed on Counts 1 & 2 of the Indictment to the custody of the Bureau of Prisons to be imprisoned for a term of **TIME SERVED. This term consists of the time served on each of Counts 1 and 2 of the Indictment.**

It is ordered that the defendant shall pay to the United States a special assessment of $200, which is due immediately.

Pursuant to Guideline §5E1.2(a), all fines are waived as the Court finds that the defendant has established that she is unable to pay and is not likely to become able to pay any fine.

The U.S. Marshal is ordered to transfer defendant to custody of the immigration authorities for deportation to France.

The defendant is hereby placed on supervised release for a term of one (1) year. This term consists of 1 year on each of Counts 1 and 2 of the Indictment, all such terms to run concurrently under the following terms and conditions:

1. The defendant shall comply with the rules and regulations of the United States Probation & Pretrial Services Office and Second Amended General Order 20-04;

2. During the period of community supervision, the defendant shall pay the special assessment in accordance with this judgment's orders pertaining to such payment;

3. The defendant shall cooperate in the collection of a DNA sample from the defendant;