DRAFT 1

11.     I stipulate and agree that the following facts accurately describe my conduct. These facts provide a basis for the Court to accept my guilty plea:

At all relevant times, I was a resident of the District of Utah.

In 2017, I connected with Victim 2 on a social media site. We did not form a romantic or dating relationship. Nevertheless, beginning in and around September 2017 and continuing until at least 2019, I engaged in a course of conduct intended to harass and intimidate Victim 2 and his family.

In 2018, I met Victim 1 on a social media site. We had a brief sexual relationship resulting in the birth of a child ("Minor-1"). Beginning in or around December 2018 and continuing until at least 2020, I engaged in a course of conduct intended to harass and intimidate Victim 1 and his family.

In order to harass and intimidate Victims 1 and 2, I used multiple email accounts, social media accounts, and phone numbers to send numerous messages, texts and other communications to them. I similarly sent numerous messages and other communications about Victims 1 and 2 to their friends and families and posted harassing and defamatory things about them and their families on public Internet sites.

As part of this course of conduct, on May 16, 2019, and again on June 15, 2019, I used the Internet to report Victims 1 and 2 to the federal Internet Crimes Complaint Center ("IC3"). In these reports, I claimed that Victims 1 and 2 had impersonated me online and posted defamatory and harassing statements on the Internet about me; in truth, I had made these posts about myself so that I could blame them.

As a result of sending these messages to and about Victims 1 and 2, I caused them and their families substantial emotional distress.

I understand that the Internet is a means and facility of interstate and foreign commerce.

12.     The only terms and conditions pertaining to this plea agreement between me and the United States are as follows:

    a.  **Guilty Plea.** I will plead guilty to Counts 1 and 2 of the Indictment.

9/15/25 Receipt of First Plea Draft fron AUSA Joey Blanch

 Gmail

John Wang < y u n l ong8 8 c ong@gmai l . c

## USA v. Wang Non-Negotiable Revisions Needed

2 messages

**John Wang** <yunlong88cong@gmail.com>  Mon, Sep 15, 2025 at 2:07 PM
To: Richard Sorenson <richard_sorenson@fd.org>, joey.blanch2@usdoj.gov

Sent on behalf of the defendant, note while negotiations are ongoing with jared Perkins and there is certainly a plea there to MA and MB in the Utah State case, these below are non negotiables. If more proof is needed for the requested changes, please have Rich reach out.

Wang would not pay $30,000 for an internet attorney if she actually posted the posts alleged in her 5/16/19 and June 2019 IC3 complaints, see Kronenberger Bill, and emails sent during that time sent to her attorneys and SF police.

Thank you for your attention to this matter.

> 5:16:19_Circumstantial Evidence Surrounding 5:…



*Plea Draft  Revisions in Black is what Wang will admit to.*

*In order to harass and intimidate Victim 2 (████ ████ I used multiple social media accounts and phone numbers to send num___ m___s, texts, and other communications **directly** to him. ←—I did not post anything related to ████ ████ family, nor am I aware of any allegation to that effect. Happy to plead if the prosecutor can show evidence to the contrary.*

*In order to harass and intimidate Victim 1 (* ███████ ███████ *) I posted harassing and derogatory statements about him and his family on public Internet sites.* <---- These statements cannot be considered defamatory if they were true. I am willing to admit to defamation if the government can prove that anything I said was provably false. However, characterizing ████████ █████████ as a "deadbeat father" cannot be defamatory when he blocked me following the birth of our child.

*I did not use social media accounts, email addresses, or phone numbers to send harassing messages* **directly** *to* ████████ █████████ *No such communications were ever made, and I am prepared to submit evidence or require the government to produce proof that any harassing messages were ever* **sent "directly"** *to him. Importantly, no criminal charges have ever been filed involving Victim 1 based on social media, phone numbers, or emails allegedly sent directly to* ████████ █████████

*I did, however, send numerous messages and other communications about Victim 2 (* ████ █████ *) to his friends and family and posted harassing and defamatory statements about him.* <span style="background-color: yellow">**←- Wang will admit to the term "defamatory" in relation to** ████ █████</span>

*I also sent numerous messages and other communications about Victim 1 (* ████████ █████████ *) to his friends and family and posted harassing and* **derogatory** *statements about him online.*

*Finally, I cannot accept a plea to the 2 counts of False Statements charges because the statements at issue are not false. I possess substantial circumstantial evidence (attached and more) supporting what I said, whereas* ████████ █████████ *has no evidence to the contrary, and* ████ █████ *has never reported the IC3 allegations that* ████████ *claims on his behalf.*

## DRAFT

that dismissal of the California case is an essential part of the agreement in the federal case.

    f. ~~**Motion to Revoke Pretrial Release** The government agrees to withdraw the motion to revoke pretrial release filed on June 4, 2025, at docket 76, and not to request that defendant be detained prior to sentencing, unless the defendant commits violations of her conditions of pretrial release that are currently unknown to the government.~~ This needs to be reworded or deleted. Motion contained inaccurate allegations as proven recently when defendant visited the California Court of Appeals on August 6, 2025, details in the attached email.

    g. **Relevant Conduct.** I understand and agree that the Presentence Report may include descriptions of conduct I engaged in which either was not charged against me, will not be pleaded to by me, or both. I understand and agree that the Court will take these facts into consideration in determining the reasonableness of the stipulated sentence.

**SAN FRANCISCO POLICE DEPARTMENT**
**CHRONOLOGICAL REPORT OF INVESTIGATION** Page 3 of 31

| DATE | TIME | ACTIVITY |
|---|---|---|
| | | C. Th█████ said that Wang has not made any direct threats towards him, but is afraid that her behavior will escalate. I asked C. Th█████ what he believes Wang's motivation is, and he told me that he didn't know. He believes that Wang just likes to hurt people. C. Th█████ does not know where Wang lives, but said that she has stayed in an apartment in New York and in Utah, where her parents live. C. Th█████ told me that Wang submitted a case in Los Angeles, and the DNA test was also in Los Angeles. C. Th█████ described Wang's lifestyle as "jet setting." |
| | 1245 | CDW search on Kailin Wang. Located a similar case involving Wang in San Francisco. Incident reports: 170945607, 170810414, 180132399 Reports retained in case file. |
| | 1402 | Obtained case number for Suspicious Occurrence report. Case: 190112228, Cad: 190452274. |
| | 1414 | Conducted computer query on Kailin Wang (1/20/83) |
| 2/15/19 | 1319 | I spoke with A. Th█████ who told me that he filed for the Temporary Restraining Order against Wang today. He is expecting a response from the court within the hour. A. Th█████ told me that he will provide me with those documents via email today. A. Th█████ told me that he does not believe that Wang has his email address, phone number or home address, and requested that those not be included in the police report. |
| | 1647 | Received Email from A. Th█████ providing me with a copy of the TRO (FDV-19-814465). The TRO hearing is scheduled for 3/6/19. |
| | 1700 | I received a phone call from Te██ Th███████, mother of (V) Ch███ Th█████. Th█████ wanted to inform me of Wang's prior stalking/harassment history. Stated that she was afraid of revenge porn setup of C. Th█████ based on Wang's history. |
| | 1731 | I spoke with W███ St███. In summary, S███ told me the following: Stone reported Wang approximately a year and a half ago for harassing, and defaming him. St███ told me that Wang "robo-called" everyone that he knew, non-stop. S███ stated that Wang has been charged with harassment against him, in Utah. Wang was arrested on 12/14/17, and the harassment continued. Harassment began September 2nd or 3rd of 2017, and the phone calls continued until November 2017. St███ old me that he never met Wang in person, and that they had only corresponded on a few dating apps. St███ told me that the Attorney handling the criminal case against Wang was Ana Burgi in Spanish Fork, UT. Stone's personal attorney is Ted Broomfield. TedBroomfieldlaw.com |

SFPD 298 (10/76) *

John Wang

# (385) 334-3308

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

**6 attachments**

**Plea Draft  Revisions Needed in Black.docx**
1318K

**Gmail - On August 6, 2025, at 1_44 p.m., Kailin Wang and her mother went to the Records Department of the California Court of Appeal at 350 McAllister St, #1042, San Francisco, CA 94102.pdf**
231K

**REDACTED Martinez Chronological Report.pdf**
1153K

**20250915102145311-REVISIONS NEEDED.pdf**
181K

**Gmail - Message to Jared Perkins-Statement in Advance of Plea Negotiations Forgery (F3) – Reduction Request under § 77-2.2.3 to Class A Misdemeanor (MA).pdf**
300K

 **3_6_19_Kill Baby K_Updated for Judge Hite.pdf**
16070K

---

**John Wang** <yunlong88cong@gmail.com>                                Wed, Oct 1, 2025 at 4:19 AM
To: Conrad_Kaufman@utp.uscourts.gov

John Wang

# 801-787-9755

---

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

---

**6 attachments**

📄 **Plea Draft  Revisions Needed in Black.docx**
1318K

📄 **Gmail - On August 6, 2025, at 1_44 p.m., Kailin Wang and her mother went to the Records Department of the California Court of Appeal at 350 McAllister St, #1042, San Francisco, CA 94102.pdf**
231K

📄 **REDACTED Martinez Chronological Report.pdf**
1153K

📄 **20250915102145311-REVISIONS NEEDED.pdf**
181K

📄 **Gmail - Message to Jared Perkins-Statement in Advance of Plea Negotiations Forgery (F3) – Reduction Request under § 77-2.2.3 to Class A Misdemeanor (MA).pdf**
300K

📄 **3_6_19_Kill Baby K_Updated for Judge Hite.pdf**
16070K

10/1/25, 4:17 AM Gmail - Re: USA v. Kailin Wang Case No. 2:24-CR-163-TS-003-for PSR reporting purposes in conjunction with the soon to be filed Statement in …

Case 2:24-cr-00163-TS   Document 205-1   Filed 04/30/26   PageID.11108   Page 6 of 40

 Gmail

John Wang < y u nl  ong8 8 c ong@gmai  l . c

## Re: USA v. Kailin Wang Case No. 2:24-CR-163-TS-003-for PSR reporting purposes in conjunction with the soon to be filed Statement in advance of Plea.

3 messages

**John Wang** <yunlong88cong@gmail.com>                                     Tue, Sep 16, 2025 at 3:54 AM
To: joey.blanch2@usdoj.gov, utdj_stewart@utd.uscourts.gov

See background information for PSR reporting purposes in conjunction with the hopefully soon to be filed Statement in advance of Plea.

John Wang

# (385) 334-3308

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

📊 **UPDATED September 11 2025-Denmark Case Timeline for ALL cases.xlsx**
6449K

**John Wang** <yunlong88cong@gmail.com>                                     Tue, Sep 16, 2025 at 5:04 AM
To: joey.blanch2@usdoj.gov

Attached is the PSR for ▓▓▓▓ ▓▓▓▓ and the events leading up to the filing of USA v. Wang in May 2024:

▓▓▓▓ lied to the Califo▓▓▓▓nal court on March 25, 2025, by falsely claiming that California had jurisdiction. ▓▓▓▓ then made false and contradictory state▓▓▓▓he California family court, asserting instead that Denmark had jurisdiction. Now, ▓▓▓▓ is misleading the Danish court by requesting the termination of Wang's entire parental visitation rights.

Also see context of Judge Flores co▓▓▓▓ which were NOT allowed to be put in the final DV Order entered on 10/21/22 DV-130. ▓▓▓▓ omitted a substantial part of the transcripts to show Wang did not testify, and Don dubain showed up to hear her testify in Pro Se to attempt to incriminate her when she had no attorney, please read the DV Transcripts excerpted in this CJP complaint.

📄 2024_9:9:24_CJP Corrective Action Against Judge Flo…

John Wang

# (385) 334-3308

---

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

---

**14 attachments**

- **VOLUME 2_█████ █████ July 5, 2017 to November 20, 2017 (Pages to 127 to 272 out of 755) (1).pdf**
  8961K

- **2024_04:08:24_█████ Ex Parte Move-Away RFO_Massullo.pdf**
  1043K

- **2024_02:29:24_CT FL-300 Temp. Emergency Ex Parte.pdf**
  2197K

- **2024_03:02:24_CT Cancellation w:Rally.pdf**
  265K

- **2024_03:09:24 CT 2nd No Notice No Show at Rallly.pdf**
  348K

- **2024_04:18:24_CT Update to Suspension of Visitation.pdf**
  4688K

- **2024_05:16:24_CT REQUEST TO RESCHEDULE JUNE 13 HEARING; AND REQUEST.pdf**
  719K

- **[FDV-19-814465] - [04-26-24]  - [Mini Minutes For Apr-26-2024 0130 Dept403].pdf**
  25K

- **[FDV-19-814465] - [04-26-24]  - [Order RE Rally Therapeutic Session] (1).pdf**
  81K

- **[FDV-19-814465] - [04-26-24]  - [Temporary Emergency (Ex Parte) Order] (1).pdf**
  1073K

- **[FDV-19-814465] - [04-26-24]  - [Request For Order (ex Parte)] (1).pdf**
  2897K

- **2025-03-25 Transcripts for People v. Wang D22.pdf**
  337K

- **2025-02-05 DK Ltr w-Expert Report-2024-44515.pdf**
  1356K

- **Rappaport Email to SFDA to Charge Wang w. Perjury (1).pdf**
  732K

---

**John Wang** <yunlong88cong@gmail.com>                                    Wed, Oct 1, 2025 at 4:16 AM
To: Conrad_Kaufman@utp.uscourts.gov

John Wang

10/1/25, 4:15 AM    Case 2:24-cr-00163-TS    Document 205-1    Filed 04/30/26    PageID.11110    Page 8

Gmail - USA v. Kailin Wang Case No. 2:24-CR-163-TS-003 Specific Examples.

of 40

 **Gmail**

John Wang <yunlong88cong@gmail.c

---

## USA v. Kailin Wang Case No. 2:24-CR-163-TS-003 Specific Examples.
4 messages

---

**John Wang** <yunlong88cong@gmail.com>                Thu, Sep 18, 2025 at 4:06 AM
To: joey.blanch2@usdoj.gov, Richard Sorenson <richard_sorenson@fd.org>

---

                                        Wed, Sep 17, 3:28 PM (12 hours ago)

to me ▾

**Richard Sorenson**

So, can you please write out a few specific examples what you did to both ████ and Thy████n to include in the plea form? Things that were harassing, defamatory, or derogatory and the approximate dates?

**\*\*\*\*\*\*\*\*\*\***

---

Below are some of the exhibits admitted at the Domestic Violence (DV) Trial, which occurred from October 18, 2022, through October 21, 2022, as well as those admitted during the California Preliminary Hearing held from March 6, 2025, through March 11, 2025.

Also we wanted me to tell Joey that we are a huge fan of her work (i.e.; **Operation Lost Boy (2023)**.👍

████████ alleged that Wang began harassing and posting about him on December 24, 2018, as he declared under penalty of perjury in his request for a domestic violence restraining order. This ultimately resulted in the issuance of a permanent DV-130 order on October 21, 2022.

Accordingly, Wang through her family here includes exhibits admitted at the Family Court DV Trial, in which she was forced to proceed in pro per against four attorneys, including the prosecutor, Donald Dubain, who actively prosecuted her while she appeared remotely via Zoom.

At the 10/18/22 through 10/21/22 DV Trial ████████ admitted in his testimony that Wang had sent him ==no direct communications,== so he could not have been threatened by her:

Q.: "I asked if I sent you any of these. You just told me your friend received these; is that correct?
A. Your initial question was, did you receive a text message. So I answered that to the word of the question. To answer your question now, I did not -- to answer your question directly, your current question directly now, **no I did not receive a direct text from you. In fact, the majority [all] of any communication I became aware of was through a friend or family member of mine or friends of friends or friends of family members receiving through follow up requests or messages notice of this material."** (10/18/22 RT 156:18-28)

BY MS. WANG:

Q. "Please identify any direct communications from me to you that you found harassing by text messages."

A. "During the relevant time period that you've previously mentioned? Sorry."

JUDGE FLORES: "That -- that question would be fine. Just the way it was asked, which has no time limitation."

Q. "There was a time limitation. It was after December 24th, 2018, up until March 6, 2019, when he got custody."

A. "**No, I did not receive text messages, phone calls, or e-mails from Kailin Wang directly**, knowingly, though she did have access to do so reaching out to me in any kind of context, not harassing, but she had the option to be productive in that line of communication. **I never received any kind of communication in those channels directly -- in those channels of communication directly**." (10/19/22 1RT 467:6-21; 1RT 468:14-18)



████████ repeatedly says that Wang's internet postings were on public blogs and ████████ only learned about them because his friends saw them, and then sent screenshots of the posts to ████████ However ████████ failed to identify any of these "friends" and none of them testified nor authenticated screenshots they sent to ████████

None of these posts in relation to ████████ meet the statutory elements of 18 U.S.C. § 2261A. However, given the risks inherent in defending against a federal trial—especially in light of ████████ considerable wealth (see attached SEC.gov records) and legal resources—Wang intends to enter a plea, though there are substantial and glaring holes in ████████ allegations.

Regarding ████████ there is no dispute that the robocalls constitute a misdemeanor under state law. Yet, ████████ succeeded in converting this seven-year-old misdemeanor case from Spanish Fork City Court into a California state felony and ultimately a federal felony. Only an Assistant United States Attorney such as Jennifer Kerkoff Muyskens would pursue charges under these circumstances.

The federal "cyberstalking" standard is analyzed below. The conduct alleged against ████████ does not meet the elements of cyberstalking, yet Wang now faces federal charges five years later—solely because ████████ through his resources, influence, and access to attorneys and experts, is able to do so.

In *U.S. v. Yung*, the Third Circuit court concluded that the federal "cyberstalking" statute covers only speech intended to "put the victim in fear of death or bodily injury" or to "distress the victim by threatening, intimidating, or the like."

Congress enacted the cyberstalking law in 2006 and broadened it in 2013. As amended, it makes a defendant a cyberstalker if he checks three boxes:

- *An act.* The defendant must "use[] the mail, any interactive computer service or electronic communication service or … system …, or any other facility of interstate or foreign commerce" at least twice. 18 U.S.C. § 2261A(2); see also 2266(2).

- *An intent.* He must have acted "with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person." § 2261A(2).

- *A result.* Finally, his actions must cause some emotional response. They must either put the target "in reasonable fear of … death … or serious bodily injury," or "cause[ ], attempt[] to cause, or … be reasonably expected to cause substantial emotional distress." § 2261A(2)(A), (B).

[I]f we can, we must read the statute narrowly enough to avoid constitutional problems. And here, a narrow reading of the statute's intent element is plausible….

By itself, the act element does not prevent overbreadth…. [W]e reject the government's position that the cyberstalking "statute focuses on conduct, not speech." Rather, it reaches a lot of speech: it targets emails, texts, and social media posts ….

The result element does little to confine the law to unprotected speech. The law, for instance, punishes people for acting in a way that **"causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress."** True, the "[s]ubstantial" emotional distress must be "fairly large," more than mere annoyance.

Even so, the law captures much speech, *in part because it does not require that emotional distress be objectively reasonable.* **Though we hope that Americans can discuss sensitive issues without taking offense, that is not always so.** And the law penalizes speech even when a listener's distress is unexpected or idiosyncratic.

**That is a problem. The First Amendment protects lots of speech that is substantially emotionally distressing.** Protesters may picket a marine's funeral with signs like "Thank God for Dead Soldiers," *"God Hates Fags,"* and **"You're Going to Hell."** *Snyder v. Phelps* (2011). And a pornographer may parody a famous minister as having drunken sex with his mother. *Hustler Mag. v. Falwell* (1988). These statements are deeply offensive, yet still covered by the First Amendment. So neither the act nor the result element suffices to narrow the law's wide reach….

**The intent element, narrowly construed, saves the statute**

[If we read] "intent to … harass [or] intimidate" … broadly, the law will reach protected speech. Take the verb "harass." It can mean aggression, even violence: "worry[ing] and imped[ing] by repeated attacks**." But "harass" can also mean "to vex, trouble, or annoy continually or chronically." These poles mark a spectrum from repeated annoyance to outright violence.**

Like harassment, intimidation has both narrow and broad meanings. To "intimidate" can mean a specific, violent action. It "esp[ecially]" means "to force [someone] to or deter [him] from some action by threats or violence." But "intimidate" can also mean broadly "[t]o render timid, inspire with fear; to overawe, cow."

Harassment and intimidation, **narrowly construed**, are punishable. "Intimidation in the constitutionally proscribable sense of the word … *plac[es] the victim in fear of bodily harm or death.*" Harassing debt collection and coercive threats are also unprotected. See, e.g., *Barr v. Am. Ass'n of Pol. Consultants* (2020) (suggesting that the Constitution lets Congress regulate the way people collect debts); *Saxe v. State Coll. Area Sch. Dist.* (3d Cir. 2001) (Alito, J.).

Yet the **broader definitions of "harass" and "intimidate" can describe nonviolent, nonthreatening speech.** Filling a city councilman's voicemail box with complaints about his vote on a controversial municipal ordinance may "vex" or "cow" him. Ranting in the comments section of a website that a senator voted to lock refugee kids in cages could well "annoy [her] continually or chronically" or "render [her] timid." Or, to take a couple more mundane examples, "negative restaurant reviews left on Google or Yelp, irate emails sent to service providers (contractors, plumbers, etc.),… or antagonistic comments left on news sites" are often persistently annoying or even scary. Each might satisfy the statute's act and intent elements, read broadly, and (depending on the recipient's reaction) the result element too.

But criminalizing that speech would collide with the First Amendment. The First Amendment protects at least some speech that persistently annoys someone and makes him fearful or timid. As then-Judge Alito observed: "There is no categorical 'harassment exception' to the First Amendment's free speech clause." Though "non-expressive, physically harassing conduct is entirely outside [its] ambit," "deeply offensive" speech is not. On the contrary, "the free speech clause protects a wide variety of speech that listeners may consider deeply offensive."

Thus, broad harassment laws that punish offensive speech "steer[] into the territory of the First Amendment." _DeAngelis v. El Paso Mun. Police Officers Ass'n_ (5th Cir. 1995) (Title VII); see also _Dambrot v. Cent. Michigan Univ._ (6th Cir. 1995) (university speech policy). And courts have often struck them down. See, e.g., _State v. Brobst_ (N.H. 2004) (holding overbroad a harassment statute covering any speech made "with the intent to annoy or alarm another"); _Ex parte Barton_ (Tex. Ct. App. 2019) (same); _Moreno_ (same). So here too, we must ensure that the cyberstalking statute does not "present[] a 'realistic danger' [that] the [Government] could compromise" First Amendment protections….

[The court then analyzes why a narrow reading is consistent with the text, even if a broader reading would be, too, and concludes that the narrow reading is called for to avoid First Amendment problems: -EV]

**To "intimidate," we hold, a defendant must put the victim in fear of death or bodily injury. And to "harass," he must distress the victim by threatening, intimidating, or the like.** That reading limits intent to harass to "criminal harassment, which is unprotected because it constitutes true threats or speech that is integral to proscribable criminal conduct." It also limits "intent to intimidate" to what it "especially" means, a form of true threats or speech integral to a crime. Those narrow readings ensure that protected speech largely escapes the law's net. Thus, we can avoid the "strong medicine" of invalidating the statute as facially overbroad….

John Wang

**(385) 334-3308**

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

Case 2:24-cr-00163-TS    Document 205-1    Filed 04/30/26    PageID.11114    Page 12 of 40

**8 attachments**



2018-02-14 Text Messages Entire Relationship of Two Dates.pdf
4894K

Pages from ███████ Plea Exhibits.pdf
3367K

████ ████ Plea Annoying Phone Calls.pdf
600K

Pages from 2018-12-05 Email to ████ ███████ and ████ Parents Re_ ████████ has a Baby.pdf
190K

Pages from 05_30_19_Los Angeles Child Support Action 18CWCS16140_Filed_05.16.19.pdf
83K

People v. Bethea.pdf
124K

Insider Trading Activity - ████████ ███ C_.pdf
553K

Court Limits Ban on Speech That Causes _Substantial Emotional Distress_ with _Intent to Harass or Intimdate_ - Reason.com.pdf
382K

---

**John Wang** <yunlong88cong@gmail.com>                    Thu, Sep 18, 2025 at 4:14 AM
To: joey.blanch2@usdoj.gov, Richard Sorenson <richard_sorenson@fd.org>

Oh, ██████ also filed the following Motion to Strike in the CA Court today, this is what he considers harassment, clearly ████████ fails to understand litigation privilege California Civil Procedure CCP Section 45.
https://www.onelegal.com/blog/understanding-california-litigation-privilege/

John Wang

# (385) 334-3308

---

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

---

**3 attachments**

2025-09-17 CT Motion to Strike from the Record.pdf
145K

2025-09-09 NOTICE OF ████████ actively opposing and:or restricting Wang's ability to travel to Denmark to attend and participate.pdf
844K

2025-09-18 REPLY AND OPPOSITION TO ████████ MOTION TO STRIKE.pdf
1236K

---

**John Wang** <yunlong88cong@gmail.com>                    Thu, Sep 18, 2025 at 4:20 AM

To: joey.blanch2@usdoj.gov, Richard Sorenson <richard_sorenson@fd.org>

Oh and what ███████ alleges in the 4/4/25 Order is False, see Judge admitting to his errors in subsequent hearings.

John Wang

**(385) 334-3308**

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

**2 attachments**

📄 **2025-05-15 D403 ████████ v. Wang (1).pdf**
146K

📄 **2025-07-15-Jul 15, 2025 ████████ vs Wang (1).pdf**
180K

---

**John Wang** <yunlong88cong@gmail.com>                          Wed, Oct 1, 2025 at 4:14 AM
To: Conrad_Kaufman@utp.uscourts.gov

John Wang

**801-787-9755**

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

**8 attachments**

📄 **2018-02-14 Text Messages Entire Relationship of Two Dates.pdf**
4894K

📄 **Pages from ████████ Plea Exhibits.pdf**
3367K

📄 **████████ Plea Annoying Phone Calls.pdf**
600K

10/1/25, 4:15 AM

Case 2:24-cr-00163-TS    Document 205-1    Filed 04/30/26    PageID.11116    Page 14 of 40

United USA v. Chaim Wang Case No. 2:24-cr-163-TS-005 Agent Examples.

📄 **Pages from 2018-12-05 Email to** ███ ████████ **and** ███ **Parents Re_** ████████ **has a Baby.pdf**
190K

📄 **Pages from 05_30_19_Los Angeles Child Support Action 18CWCS16140_Filed_05.16.19.pdf**
83K

📄 **People v. Bethea.pdf**
124K

📄 **Insider Trading Activity -** ████████ ██████ **C_.pdf**
553K

📄 **Court Limits Ban on Speech That Causes _Substantial Emotional Distress_ with _Intent to Harass or Intimdate_ - Reason.com.pdf**
382K

 Gmail

John Wang < y u nl ong8 8 c ong@gmai l . c

## USA v. Wang Regarding Defamation

2 messages

**John Wang** <yunlong88cong@gmail.com>                                      Sun, Sep 21, 2025 at 1:58 AM
To: Richard Sorenson <richard_sorenson@fd.org>, joey.blanch2@usdoj.gov



📄  2024-01-14 San Mateo DCFS report .pdf

📄  2019-02-20.1_███ Sends Police to my Dad's Workplace_False Allegation of GUN AT WORKPLACE.pdf

📄  2019-02-20.3 Notarized Melisa Todd Witness to Freeway Car Chase.pdf

📄  2019-02-20_Statement of Mr. Randall L. Barker.pdf

📄  ███ Subpoenas.pdf

Wang cannot admit to defamation regarding ███████ She is, however, willing to do so in connection with ███ ███

CT (V1)

Also it is undisputed none of the harassing  posts, emails, texts, etc. were sent to Ch████ ████████ himself, as per his testimony at the **DV Trial (10/18/22-10/20/22)**

BY MS. WANG:

Q.“I asked if I sent you any of these. You just told me your friend received these; is that correct?

A. “Your initial question was, did you receive a text message. So I answered that to the word of the question. To answer your question now, I did not -- to answer your question directly, your current question directly now, **no I did not receive a direct text from you. In fact, the majority [all] of any communication I became aware of was through a friend or family member of mine or friends of friends or friends of family members receiving through follow up requests or messages notice of this material.”** **(10/18/22 RT 156:18-28)**

BY MS. WANG:
    Q. “Please identify any direct communications from me to you that you found harassing by text messages.”
    A. “During the relevant time period that you've previously mentioned? Sorry.” JUDGE FLORES: “That -- that question would be fine. Just the way it was asked,
which has no time limitation.”
    Q. “There was a time limitation. It was after December 24th, 2018, up until March 6, 2019, when he got custody.”
     A. “No, I did not receive text messages, phone calls, or e-mails from Kailin Wang directly, knowingly, though she did have access to do so reaching out to me in any kind of context, not harassing, but she had the option to be productive in that line of communication. I never received any kind of communication in those channels directly -- in those channels of communication directly.” **(10/19/22 RT 190:6-21; 1RT 191:14-18)**

        ███████ repeatedly says that Wang's internet postings were on public blogs and ███████ only learned about them because his friends saw them, and then sent screenshots of the posts to ███████ However ██████ failed to identify any of

these "friends" and none of them testified nor authenticated screenshots they sent to ███████ **[10/18/22 RT 157-161]**

The reason is simple: none of the posts about ██████████ are untrue. If the government can identify a specific post that is completely and utterly false, meeting the federal elements of defamation, Wang may reconsider her position. To date, however, the government has provided no such example. For instance, if Wang had claimed that "████████ ████████ is a child sex abuser, rapist, or convicted pedophile," that would constitute clear defamation. But Wang has never made such statements.

Instead, Wang has expressed her belief that ██████████ attempted to force or coerce her into having an abortion and she has further stated that, after she refused, he blocked her and began sending agents to harass her and her family. This harassment did, in fact, occur. Wang is prepared to provide evidence, including a video showing ██████████ agents chasing her parents for over an hour on the freeway while her baby was in the car, causing severe emotional distress and putting the child at significant risk. ██████████ harassment escalated further, including incidents such as sending police to her father's workplace and falsely accusing the Wangs and her father of having a gun at his workplace.



-8473 >

Mon, Jun 25, 12:39 AM

I was certain you were getting an abortion when this first game to light and that was hard enough to swallow. I feel debilitated by this uncertainty

I don't take abortion lightly, I can barely live with myself knowing I'd do that. But I can't be a real father to a kid at this point in my life. Financially, emotionally, any way. Neither you nor I are fit to be parents given our respective situations, probably not this 1% "LA guy" either.

The longer you wait the harder it's going to be to pull the trigger. I don't know what you've been researching or who's been giving you advice but this will not play out favorably for anyone, guaranteed. I can't sugar coat this since it's so late already...

2018-06-23 01:24 PM

Sorry about your case. I wish I could help... unfortunately I'm just a 25 year old that's never been in a relationship trying to not get disowned by my parents and be on the hook for 18 years... I can't help but be brutally honest since it is this late

If ▮▮▮▮▮ believes otherwise, he is free to bring a civil lawsuit. Should he prevail before a civil jury, that Wang's posts are indeed false and defamatory, well then we wouldn't have any issues in this criminal case will we.

---

Although Wang is open to reaching a resolution with the government, she must also consider the reality that she is required to testify soon in her Danish Family Court trial in order to ever see her child again. Since ▮▮▮▮▮ move to Denmark, he has not allowed any contact between Wang and her child, and his actions —including jailing Wang in the Federal case—in May 2024 was solely intended to sabotage her ability to attend the crucial June 11, 2024 hearing, at which the judge was going order international visitation.

This mirrors Wang's first arrest in this matter on October 18, 2019, when ▮▮▮▮▮ timed his actions to prevent Wang from attending the Utah custody hearing.

After a California judge, who had granted ▮▮▮▮▮ temporary sole legal and physical custody, reversed in part and transferred jurisdiction back to Utah based on ▮▮▮▮▮ prior misrepresentations regarding Wang and custody, ▮▮▮▮▮ continued to submit numerous sworn declarations falsely insisting Wang was not a Utah resident. Yet, in the present Federal litigation, ▮▮▮▮▮ claims Wang was always a Utah resident during the relevant time period. The government has done nothing to resolve these contradictions and instead targets the poor and vulnerable minority litigant who is only trying to see her son in favor of ▮▮▮▮▮ the wealthy and powerful executive's son. All these allegations will once again be at the forefront if Wang is forced into a false defamation admission. Such an admission would bar her from testifying about anything related to ▮▮▮▮▮ and the child, effectively ensuring she could never see her young child again —a child whom ▮▮▮▮▮ had previously sought to have aborted.

Wang has spent six years testifying these facts in these posts at numerous evidentiary hearings in San Francisco, Utah, with her truthful evidence serving as the key reason she maintained visitation with her son.

Thus, if Wang is compelled to enter a plea and falsely admit that all her statements and testimony over the past six years were untrue, the government has indicated it will seek the maximum penalty of twenty years should she proceed to trial. Such a false admission not only exposes Wang to new criminal liability for perjury but also results in a cascade of additional criminal charges stemming

from admitting the posts were defamatory when, in fact, they were not false. This would create significant legal exposure solely due to an admission that contradicts the truth of her prior statements and testimony.

If she were coerced into recanting her 6 years of prior testimony and falsely admitting that it was fabricated (which it was not), she would immediately expose herself to new perjury criminal charges.

This is especially true given that ███████ has already deposed her on 9/27/19 and she has testified under oath in multiple other proceedings, now falsely admitting this is all false in order to avoid a potential sentence of 20 years, really is overzealous prosecution. To now falsely declare that her prior testimony was defamatory, testimony she has given for the past 6 years, would place her under serious and unavoidable endless criminal liability which she knows ███████ would absolutely pursue.

Wang therefore invites the government to provide concrete, specific examples of falsehoods. If such examples exist, she will demonstrate that her statements were reasonably based on the surrounding circumstances at the time they were made.

It is equally important to note that ███████ himself has made numerous false allegations against Wang. These include, at a minimum, two false CPS reports, one on March 6, 2019 in relation to the "Kill Baby K" post, and recently on 1/18/24 to San Mateo CPS after he failed to instigate them to help terminate Wang's visitation after ███████ failed to have the San Francisco Family Court do so Each of these CPS claims was dismissed or reversed as meritless.

In addition, ███████ has made multiple false reports of kidnapping. Yet he has not been indicted himself, in part because he hired agents to carry out such conduct, and in part because Wang lacks the manpower, resources, and connections necessary to ensure he is prosecuted. This stands in stark contrast to the way ███████ ███████ was initially unsuccessful in pursuing charges against Wang. When ████ first approached the San Francisco Police Department and submitted IC3 complaints in 2017, no charges were brought. However, once ███████████ money, power, and influence entered the equation, ████ was suddenly pushed to the forefront of the case. ███████ knows that without ████ █ ████ his allegations alone may be insufficient given the broader background and history of this matter.

The reality is that Wang is considering a plea only because her Utah Federal Defenders entered the case six years after its inception and therefore do not possess the familiarity necessary to prepare sufficient pretrial motions or proceed to trial adequately against the combined resources of the United States Attorney's Office and ███████ team of attorneys and experts, who have been litigating this matter for over six years. The imbalance is self-evident: this is a classic David versus Goliath situation.

<mark>It is not in either party's interest to proceed to trial over disputed language when the convicted charge and potential sentence is already fixed.</mark>

Therefore, if a plea agreement cannot be reached, the following pretrial motions will be filed. This will allow both parties to properly assess the strength of the case and negotiate from a better-informed position should they choose to. And if Wang's Federal Attorney Rich does not agree with this strategy, then it is clear there is a fundamental disagreement in the strategy of the case, and Wang would respectfully request a change of counsel.

Before trial, the following issues will be specifically challenged:

1. All factual inaccuracies and misrepresentations contained in the government's Motion to Revoke, which is additionally detailed in the attachments.

2. Falsehoods and mischaracterizations presented by ▮▮▮▮▮▮▮

Furthermore, Wang requires Attorney Rich to subpoena the California Court of Appeal clerks—specifically Channing Hoo and the Records Director—to testify regarding the falsehoods presented by ▮▮▮▮▮ and the inaccuracies made by the government in their submissions, for the Motion to Revoke, which Wang will additionally provide the additional defenses to both ▮▮▮▮▮ and the government's Motion to Revoke.

As for motions expected to be filed before trial, these will be submitted after our request for a Bill of Particulars. Anticipated challenges include jurisdiction, venue, statute of limitations, and First Amendment grounds. <mark>(see attached DRAFT of Pre-trial Motions expected to be filed)</mark>

 The numerous cases  has caused considerable difficulty for all parties involved, but it is important to note that no court has found any harassing contact by Wang in relation to ▮▮▮▮ ▮▮▮ for over seven years, nor has there been sufficient proof against Wang regarding ▮▮▮▮▮ for any conduct since February 2019—assuming such conduct is even criminal in the first place in relation to ▮▮▮▮▮▮▮ is abusing government powers to eliminate Wang's contact with her only child and gain leverage in the custody case. These are undeniable facts.

Wang absolutely welcomes the government to conduct further investigation regarding the sources of unidentified posts. She has previously requested ▮▮▮▮▮ attorneys to do so due to her lack of funds and her understanding that IP addresses are typically static only for business users or specialized servers, while most residential IP addresses are dynamic and can be reassigned to new users after relatively short periods —sometimes within a few days to several months, depending on the ISP's lease settings. As ▮▮▮▮▮ own internet attorney admitted in open court, timely investigation is crucial to identifying anonymous posters. This is precisely why Wang asked ▮▮▮▮▮ attorneys to further investigate the March 6, 2019 "Kill Baby K" post, since server records could potentially reveal the poster's true identity.

However, ▮▮▮▮▮ never conducted meaningful discovery on this post, evidently for strategic reasons, and has actively prevented Wang from pursuing such discovery for the past six years. Moreover, who better to serve as prosecutor than AUSA Joey Blanch, who possesses extensive technical knowledge; this case would have ideally suited a tech-savvy federal prosecutor had it been brought earlier, providing a genuine chance to uncover the real identity of the poster behind the March 6, 2019 "Kill Baby K" post.

Thus, the government must understand Wang's reasonable belief that ▮▮▮▮▮ his investigators, or his extensive legal team falsely impersonated her for at least this post, as he benefited significantly from its existence through subsequent Utah DCFS action. If Wang's position is accurate, it means ▮▮▮▮▮ obtained sole legal and physical custody of the child ex parte—a child he had previously wanted aborted and never met—which, on its face, constitutes truly egregious and potentially criminal conduct.

If the government can identify a specific post that is completely and demonstrably false, meeting the federal elements of defamation, Wang may reconsider her position. To date, however, the government has produced no such example. For instance, if Wang had stated that "▮▮▮▮▮ ▮▮▮▮▮ is a child sex

abuser, rapist, or convicted pedophile," that would constitute clear defamation. However, Wang has never made such statements.



2024_01:11:24_▮▮▮▮▮▮ 27 known Attorneys, Experts, Private Investigators vs.pdf

**Wang also requests more time until she accepts any plea, she requests the government give her until to at least October 5, 2025 to consider her options.**

John Wang

## (385) 334-3308

---

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.



09:27:19_Wang Deposition Transcript.Full (2).pdf



2022_02:02:22_FOAH REINSTATING VISITATION.pdf

**7 attachments**

**DRAFT Federal Motions to File (2).docx**
1609K

**Cases where 1st Amendment Arg. Have Prevailed.pdf**
6987K

**USA v. Eaglin.pdf**
254K

**Planned Opposition with Exhibits to Motion to Revoke Pretrial Release.pdf**
5798K

**11:04:19_DCFS Reverses Findings.pdf**
6332K

**2022_01:05:22A_814465 Reporter's Transcript.pdf**
609K

**10:22:21_Reporter's Transcripts for Oct. 22, 2021 FDV-19-814465 WANG.pdf**
709K

---

**John Wang** <yunlong88cong@gmail.com>                                    Wed, Oct 1, 2025 at 4:13 AM
Draft To: Conrad_Kaufman@utp.uscourts.gov

John Wang

## 801-787-9755

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

**7 attachments**


**DRAFT Federal Motions to File (2).docx**
1609K


**Cases where 1st Amendment Arg. Have Prevailed.pdf**
6987K


**USA v. Eaglin.pdf**
254K


**Planned Opposition with Exhibits to Motion to Revoke Pretrial Release.pdf**
5798K


**11:04:19_DCFS Reverses Findings.pdf**
6332K


**2022_01:05:22A_814465 Reporter's Transcript.pdf**
609K


**10:22:21_Reporter's Transcripts for Oct. 22, 2021 FDV-19-814465 WANG.pdf**
709K

USA v. Wang Regarding Family Members of V1 Restitution Issues- All alleged communications sent to their "Family" is attached

 Gmail

John Wang <yunlong88cong@gmail.c

---

## USA v. Wang Regarding Family Members of V1 Restitution Issues- All alleged communications sent to their "Family" is attached

3 messages

---

**John Wang** <yunlong88cong@gmail.com>                                  Sun, Sep 21, 2025 at 12:55 PM
To: joey.blanch2@usdoj.gov, Richard Sorenson <richard_sorenson@fd.org>

 Rich does need to send Wang Joeys detailed comments and emails to Rich regarding negotiations and everything relevant to the case that is not protected, Rich does need to disclose all discovery and communications with the prosecutor in her case for there to be no issue down the line.

Also because Douglas Rappaport and Erica ▮▮▮▮▮ are ▮▮▮▮▮ attorneys in the Family Law case as well we are talking **several million in restitution (there is no cap)** plus the security detail of the ▮▮▮▮ family which they had for every hearing, every Rally visit, etc. etc., and don't even get Wang stated on the false reports they've made when ▮▮▮▮▮ agents were following and stalking her family, for Wang to have to pay ▮▮▮▮ millions in agents he hired that were not necessary would be an abomination of the justice system.

Wang invites the government to give her examples of harassing communications to the families of the victims.

**Wang also does not agree to the following:**

WS and CT must be placed next to V1 and V2 to avoid confusion, as this designation will be used in numerous cases, subsequent proceedings, and law enforcement actions.

As to Counts 1 and 2, Jennifer Muyskens failed to provide any specific examples; consequently, Wang does not understand how the government expects her to admit to particular cyberstalking conduct alleged when she does not know what she is actually being charged with in this federal indictment.

Wang is amenable to reviewing specific examples the government wishes her to admit to, or alternatively, Wang may decide by October 2025 if these matters can be summarized with the changes as worded below.

11. I stipulate and agree that the following facts accurately describe my conduct. These facts provide a basis for the Court to accept my guilty plea:

At all relevant times, I was a resident of the District of Utah.
<-- Wang was living in New York full-time and was employed there in 2017, as supported by pay stub documentation. The Utah Spanish Fork City Court charged Wang only from October 30 to November 20, 2017, because Wang was home for Thanksgiving break.

In 2017, I connected with Victim 2 on a social media site. We did not develop a romantic or dating relationship. Nevertheless, from approximately September 2017 through November 20, 2017, I engaged in a course of conduct allegedly intended to harass and intimidate Victim 2.    <-- Wang requests specific examples of allegedly harassing conduct reported by ▮▮▮▮▮ after November 2017 for which the government took action on. It is unlawful for Wang to falsely admit conduct to please ▮▮▮▮▮ and impossible for her to have committed cyberstalking that caused ▮▮▮▮▮ ▮▮▮▮ substantial distress or fear  if ▮▮▮▮▮ never knew of nor reported conduct he had no knowledge of, which is an essential element of stalking that must be proven.

In 2018, I met Victim 1 on a social media site. We had a brief sexual relationship resulting in the birth of a child ("Minor-1"). From approximately December 2018 through March 2019, I allegedly engaged in a course of conduct intended to harass and intimidate Victim 1.
<-- Wang requests specific examples of reported harassing conduct sent directly to ▮▮▮▮▮ family that could be considered harassment. This is especially important given the ▮▮▮▮ family's significant wealth and number of siblings, as restitution could be in the millions. Wang is only aware of the attached communications sent to the family, which are certainly not harassing. If Joey wishes to include these examples and none are false, Wang would agree, but they are not defamatory.

To harass and intimidate **Victim 2**, I allegedly used multiple email accounts, social media accounts, and phone numbers to send numerous messages, texts, and other communications to him.

10/1/25, 4:12 AM Criminal USA v. Wang Regarding Family Members of V1 Restitution Issues All alleged communications sent to their Family is attached

Case 2:24-cr-00163-TS   Document 205-1   Filed 04/30/26   PageID.11125   Page 23 of 40

Similarly, I allegedly sent numerous messages and other communications about **Victims 1 and 2 to their friends** and posted harassing content about Victims 1 and 2 on public Internet sites. <span style="color:red"><--- Wang needs examples of when she sent harassing messages, communications, etc. to ████████ and ██████ families the allegations concerning ████████ family that Wang is aware of are attached.</span>

<span style="color:red"> Wang has only received the attached communications they received in regards to the ████████ family, and they are certainly not defamatory and Joey is free to list them in the plea form as specific examples. This is important given the enormous wealth of ████████ and they will allege they spent millions for security, attorneys, internet attorneys etc. etc. for restitution purposes.</span> <span style="color:blue">Note although in the California DV case there is mandatory prevailing party fees that are mandatory after a DV hearing, the Judge did not grant ████████ any fees, ████████ requests and denial at the 12/20/22 for the DV Trial from 10/18/22 through 10/20/22 are attached.</span>

As a result of these messages to and about Victims 1 and 2, I caused them substantial emotional distress. <span style="color:red"><--- Wang needs examples of when she sent harassing messages, communications, etc. to ████████ and ██████ families the allegations concerning ████████ family that Wang is aware of are attached, this is obviously important **as** ████████ will then seek millions in restitution if we are ambiguous about this.</span>

I understand that the Internet is a means and facility of interstate and foreign commerce.

*******************************

It is undisputed that no harassing posts, emails, texts, etc. were ever sent directly to Ch██ ████████ as per his testimony at the DV Trial (Oct. 18–20, 2022):

BY MS. WANG:
Q: "I asked if I sent you any of these. You just told me your friend received these; is that correct?"

A: "Your initial question was, did you receive a text message. So I answered that to the word of the question. To answer your question now, I did not -- to answer your question directly, your current question directly now, no I did not receive a direct text from you. In fact, the majority [all] of any communication I became aware of was through a friend or family member of mine, or friends of friends, or friends of family members, receiving through follow-up requests or messages notice of this material." (10/18/22 RT 156:18–28).

BY MS. WANG:
Q: "Please identify any direct communications from me to you that you found harassing by text messages."

A: "During the relevant time period that you've previously mentioned? Sorry."
JUDGE FLORES: "That -- that question would be fine. Just the way it was asked, which has no time limitation."
Q: "There was a time limitation. It was after December 24th, 2018, up until March 6, 2019, when he got custody."
A: "No, I did not receive text messages, phone calls, or e-mails from Kailin Wang directly, knowingly, though she did have access to do so reaching out to me in any kind of context, not harassing, but she had the option to be productive in that line of communication. I never received any kind of communication in those channels directly -- in those channels of communication directly." (10/19/22 RT 190:6–21; 1RT 191:14–18).

████████ repeatedly stated that Wang's internet postings were on public blogs and that he only learned about them because friends viewed the posts and sent him screenshots. However, ████████ failed to identify any of these "friends," and none testified or authenticated the screenshots they sent to ████████ (10/18/22 RT 157–161).

Given the substantial wealth of the ████████ family, restitution could easily reach millions. The attached communications are the only alleged contacts known to have been sent directly to ████ ████████ ████ ████████ and the three siblings. Please explain how any of these could be considered harassing conduct.

John Wang
(385) 334-3308

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

**10 attachments**

📄 **2019-02-07 David Wallace FB Message to** ████████████ **(NO FURTHER DIRECT MESSAGES TO SIBLINGS REPORTED).pdf**
1196K



📄 **2018-12-05 Email to** ▓▓▓▓ ▓▓▓▓ **and** ▓▓ **Parents Re_** ▓▓▓▓ **has a Baby.pdf**
7322K

📄 **03:06:19_Hillard Heintz Kill Baby K Post Call.pdf**
213K

📄 **2022_11:18:22 Decl of DR_6344.pdf**
1383K

📄 **2022_11:18:22 Decl of EJ_6344.pdf**
2467K

📄 **2022_12:20:23_**▓▓▓▓▓▓ **V. WANG_FDV-19-814465_fulltranscript_CERTIFIED TRANSCRIPT (blue).pdf**
167K

📄 **2024_01:22:24_CT Inconsistent FL-150s.pdf**
1139K

📄 **03:18:19_GOOGLE SECURITY TEAM_1903180098.pdf**
115K

📄 **09:2019_Wang_**▓▓▓▓▓ **Rally Case Report 9.11.2019.pdf**
625K

📄 **10:2019_Wang_**▓▓▓▓▓ **Rally Case Report 10.16.2019.pdf**
634K

---

**John Wang** <yunlong88cong@gmail.com>                                    Sun, Sep 21, 2025 at 2:50 PM
To: joey.blanch2@usdoj.gov, Richard Sorenson <richard_sorenson@fd.org>

---

There is a typo regarding the ==inclusion of the word "allegedly" in the proposed stipulation—this is incorrect,== and the term obviously will be removed.

As demonstrated in the Jean Carroll case involving Donald Trump, as well as the multiple perjury charges related to Ghislaine Maxwell following a 1990s deposition, editing or selectively summarizing six years of previous testimony and future testimony as "defamatory" only exposes Wang to immediate additional criminal charges and unlawful prosecutions after this conviction. Wang seeks to be reasonable and would like to resolve this matter via plea; however, some assurances or clear case acceptance parameters ("CAPs") must be provided to eliminate ambiguity about potential future consequences and some sort of verbiage. ==As suggested== ▓▓▓▓▓ ==certainly has the money to bring a civil defamation suit and if he can prove to a jury that indeed any posts are defamatory, he obviously can and will use this criminal plea there.==

While this request may appear nuanced from the prosecutors perspective—and it is understandable that AUSA Joey Blanche opposes it and may believe Wang is receiving a favorable plea which could, if rejected, result in the threat of a 20-year sentence should she want to proceed to trial—Wang is well aware of the ▓▓▓▓▓ family's tactics, maneuvering, and habitual abuse of judicial orders and findings. Extra precautions are absolutely necessary, or this situation merely sets a trap for new, unavoidable criminal charges, contempt findings, or alleged violations, not attributable to any fault of Wang's, over the next five years or even longer. The pending Motion to Revoke, which Wang considers entirely frivolous, in effect shows the length of unavoidable and false violations sets her up for failure—and perhaps that is the prosecution's intent. Nonetheless, Wang would like to believe that AUSA Joey Blanche, like most prosecutors, is ethical enough and not like her predecessor, Muyskens.

---

WS and CT must be placed next to V1 and V2 to avoid confusion, as this designation will be used in numerous cases, subsequent proceedings, and law enforcement actions. Please review the testimony elicited by ▓▓▓▓▓ family, siblings, made on 10/19/22.

As to Counts 1 and 2, Jennifer Muyskens failed to provide any specific examples; consequently, Wang does not understand how the government expects her to admit to particular cyberstalking conduct alleged when she does not know what she is actually being charged with in this federal indictment.

10/1/25, 4:12 AM Criminal USA v. Wang Regarding Family Members of V1 Restitution Issues All alleged communications sent to their family is attached

Case 2:24-cr-00163-TS   Document 205-1   Filed 04/30/26   PageID.11127   Page 25 of 40

Wang is amenable to reviewing specific examples the government wishes her to admit to, or alternatively, Wang may decide by October 2025 if these matters can be summarized with the changes as worded below in bold.

*******************************

11. **I stipulate and agree that the following facts accurately describe my conduct. These facts provide a basis for the Court to accept my guilty plea:**

At all relevant times, I was a resident of the District of Utah.
   <-- Wang was living in New York full-time and was employed there in 2017, as supported by pay stub documentation. The Utah Spanish Fork City Court charged Wang only from October 30 to November 20, 2017, because Wang was in Utah for Thanksgiving break.

**In 2017, I connected with Victim 2 on a social media site. We did not develop a romantic or dating relationship. Nevertheless, from approximately September 2017 through November 20, 2017, I engaged in a course of conduct intended to harass and intimidate Victim 2.**    <-- Wang requests specific examples of allegedly harassing conduct reported by ███████ after November 2017 for which the government took action on. It is unlawful for Wang to falsely admit conduct in relation to ███████ to please ████████ and impossible for her to have committed cyberstalking that caused ███████ substantial distress or fear if ███████ never knew of nor reported conduct that he had no knowledge of, which is an essential element of 2261A that must be proven.

In 2018, I met Victim 1 on a social media site. We had a brief sexual relationship resulting in the birth of a child ("Minor-1"). From approximately December 2018 through March 2019, I engaged in a course of conduct intended to harass and intimidate Victim 1.
   <-- Wang requests specific examples of reported harassing conduct sent directly to ████████ family that is considered harassment. This is especially important given the ██████ family's significant wealth and number of siblings, as restitution could be in the millions. Wang is only aware of the attached communications sent to the family, which are certainly not harassing. If Joey wishes to include these examples and none are false, Wang would agree, but they are not defamatory. Note the DV Transcripts 10/19/22 the siblings testified they only directly received one message from a "David Wallace" on facebook from Wang, please read them they are attached again here but is in FBI evidence.

To harass and intimidate **Victim 2,** I used multiple email accounts, social media accounts, and phone numbers to send numerous messages, texts, and other communications to him.

Similarly, I sent numerous messages and other communications about **Victims 1 and 2 to their friends** and posted harassing content about Victims 1 and 2 on public Internet sites. <--- Wang needs examples of when she sent harassing messages, communications, etc. to ███████ and ██████ families the allegations concerning ████████ family that Wang is aware of are attached. If the David Wallace messages are used for this conduct as that is the only post the siblings testified as getting a direct message from Wang, then that specific example needs to be included in the plea form, as if what she is admitting is ambiguous again restitution will be in the millions.

Wang has only received the attached communications in discovery as harassment reported by the family of ████████ in relation to the ██████ family, and they are certainly not defamatory and Joey is free to list them in the plea form as the specific examples she asked the defendant to provide. This is important given the enormous wealth of ████████ and they will allege they spent millions for security, attorneys, internet attorneys etc. etc. for restitution purposes. Note Douglas Rappaport is $800/hr. and Erika ████████ is $600/hr., note Douglas Rappaport also stated he reduced his rate to $300/hr. in income and expense declarations in the custody case.

Note although in the California DV case there is mandatory prevailing party fees that are mandatory after a DV hearing, the Judge did not grant ████████ any prevailing fees, ████████ fee requests and denial at the 12/20/22 for the DV Trial from 10/18/22 through 10/20/22 are attached.

As a result of these messages to and about  Victim 2, and online posts posted publicly online and sent to Victim 1's ones family and friends (and list out all directly received messages sent to the ████████ family)  I caused both VI 1 and V2 substantial emotional distress. <--- Wang needs examples of when she sent harassing messages, communications, etc. to ███████ and ██████ families allegations concerning ████████ family that Wang is aware of  that are charged and turned over in discovery are attached, this is obviously important as ████████ will then seek millions in restitution if we are ambiguous about this.

I understand that the Internet is a means and facility of interstate and foreign commerce.

John Wang

**(385) 334-3308**

10/1/25, 4:12 AM — Gmail — USA v. Wang Regarding Family Members of V1 Restitution Issue, All alleged communications lead to their Registry / attached

Case 2:24-cr-00163-TS   Document 205-1   Filed 04/30/26   PageID.11128   Page 26 of 40

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

---

**2 attachments**

 **10:19:22_DVRO Transcripts (Day 2).pdf**
963K

 **TRANSCRIPT-PX-VOL.4-20250311.pdf**
208K

---

**John Wang** <yunlong88cong@gmail.com>                                       Wed, Oct 1, 2025 at 4:10 AM
To: Conrad_Kaufman@utp.uscourts.gov

John Wang

# 801-787-9755

---

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

---

**10 attachments**



**2019-02-07 David Wallace FB Message to ███████████ (NO FURTHER DIRECT MESSAGES TO SIBLINGS REPORTED).pdf**
1196K

**2018-12-05 Email to ████ ████████ and ████ Parents Re_████████ has a Baby.pdf**
7322K

**03:06:19_Hillard Heintz Kill Baby K Post Call.pdf**
213K

**2022_11:18:22 Decl of DR_6344.pdf**
1383K

**2022_11:18:22 Decl of EJ_6344.pdf**
2467K

**2022_12:20:23_████████ V. WANG_FDV-19-814465_fulltranscript_CERTIFIED TRANSCRIPT (blue).pdf**
167K

**2024_01:22:24_CT Inconsistent FL-150s.pdf**
1139K

Gmail - USA v. Wang Regarding Family Members of V1 Restitution Issues. All alleged communications leading to their registry is attached

**03:18:19_GOOGLE SECURITY TEAM_1903180098.pdf**
115K

**09:2019_Wang_███████ Rally Case Report 9.11.2019.pdf**
625K

**10:2019_Wang_███████ Rally Case Report 10.16.2019.pdf**
634K

 Gmail                                                          John Wang < y u nl ong8 8 c ong@gmai l . c

## 2026-09-24 USA v. Wang Comments RE Proposed Stipulation

2 messages

---

**John Wang** <yunlong88cong@gmail.com>                          Wed, Sep 24, 2025 at 12:10 PM
To: Richard Sorenson <richard_sorenson@fd.org>, joey.blanch2@usdoj.gov

Kailin has to go to work soon, so if you need the attachment, Wang Comments RE Proposed Stipulation PDF organized, we cannot get to it until at least tomorrow.

Thank you,

John Wang

## (385) 334-3308

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

 **2026-09-24 USA v. Wang Comments RE Proposed Stipulation.pdf**
16301K

---

**John Wang** <yunlong88cong@gmail.com>                          Wed, Sep 24, 2025 at 12:16 PM
To: Richard Sorenson <richard_sorenson@fd.org>, joey.blanch2@usdoj.gov

See ███████ ████████ Facebook posts attached.

John Wang

## (385) 334-3308

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

[Quoted text hidden]

**Gmail - ███████ Tinder Plus in Shanghai China_ Racist Facebook Memes_Redacted.pdf**
10043K

## 9/24/25 Receipt of Second Plea Draft from AUSA Joey Blanch

**DRAFT** 2

At all relevant times, I was a resident of the District of Utah.

In 2017, I connected with Victim 2 on a social media site. We did not form a romantic or dating relationship. Nevertheless, beginning in and around September 2017 and continuing until at least 2019, I engaged in a course of conduct intended to harass and intimidate Victim 2 and his friends.

In order to harass and intimidate Victim 2, I used multiple email accounts, social media accounts, and phone numbers to send numerous derogatory and defamatory messages, texts and other communications to him. I sent similar messages and other communications about Victim 2 to his friends and posted harassing and defamatory things about him on public Internet sites.  For example:

- On or about October 21, 2017, I texted Victim 2 multiple times.  He kept asking me to stop harassing him, but I told him to "get on the fucking phone" and talk to me or I would post about him online and send the posts to his "teachers colleagues everyone."

- On or about October 21, 2017, I used text messages to threatened to make false posts online, claiming that Victim 2 had an STD.  I told Victim 2 that "I will drag u thru hell" and threatened to send the posts to his job and his parents.  He begged me to stop and I texted "I don't care I have several posts I made that I didn't finish yesterday … they are going up today," and sent him photographs of a site  I threatened to make so many false posts about him that employers would not even see his portfolio if they searched his name online.

- Between approximately October 26 and October 29, 2017, I sent Victim 2 hundreds of text messages.  I told him that if he ignored me did not respond to my texts, I would "get mad." I threatened to make more posts about him online, to obtain a restraining order against him to get him arrested, and to send me who wanted to "fuck me" to his apartment.  I told him I would not stop harassing him and would not take down my Internet posts about him until he flew to Utah and had sex with me.

- on May 16, 2019, and again on June 15, 2019, I used the Internet to report Victims 2 to the federal Internet Crimes Complaint Center ("IC3"). In these reports, I claimed that



**Commented [JB1]:** I'm still not okay with agreeing that reporting walker ▮▮▮ ic3 wasn't pure harassment and part of her stalking pattern.  Limiting her behavior to a couple of months is pure minimization.



**DRAFT** 2

Victim 2 had impersonated me online and posted defamatory and harassing statements on the Internet about me. This was untrue, but I made the report in order to have Victim 2 investigated by law enforcement to continue harassing him.

In 2018, I met Victim 1 on a social media site. We had a brief sexual relationship resulting in the birth of a child ("Minor-1"). Beginning in or around December 2018 and continuing until at least 2020, I engaged in a course of conduct intended to harass and intimidate Victim 1 and his family.

In order to harass and intimidate Victim 1, I used multiple email accounts, social media accounts, and phone numbers to make numerous derogatory and defamatory posts about Victim 1 on public Internet sites. I tagged him in these posts to ensure he saw them, and to ensure anyone reading the posts would connect them to Victim 1. I also send numerous derogatory messages, texts and other communications about him to his friends and families and posted harassing and defamatory things about them on public Internet sites. For example,

- On December 24, 2018, I made a post on the website "Medium," identifying Victim 1 by name, including his photograph and his social media accounts. I included his job and his employer, and tagged his employer in the post. In the post, I wrote that Victim 1 he had "impregnated me and then abandoned his son." I publicly posted the text messages between us, discussing the pregnancy and made derogatory statements about him and his family.

- On January 6, 2019, I posted again on the website "Medium." Again, I identified Victim 1 by name, including his photograph and his social media accounts. I included his job and his employer, and tagged his employer in the post. In the post, I wrote that Victim 1 had "pressured me into killing his fully developed son," when I was the one who told Victim 1 that I wanted an abortion and asked him to pay for it, which he did. I posted that Victim 1 had "impregnated me and then abandoned his son," "just came inside me and left me with this baby," and had "irresponsibly ejaculated inside me and left me with his Baby!!!!!," even though he had texted me that if I decided to have the baby he "wanted to be there" for the child and that he couldn't live with himself "doing the bare minimum as a dad." I posted that Victim 1 was "going around on Tinder matching with thousands of women and having unprotected sex and cumming

**Wang's Response and Objections to Second Plea Draft from AUSA Joey Blanch**

**DRAFT 2**

At all relevant times, I was a resident of the District of Utah.

In 2017, I connected with Victim 2 on a social media site. We did not form a romantic or dating relationship. Nevertheless, beginning in and around September 2017 and continuing ~~until at least 2019,~~ I engaged in a course of conduct intended to harass and intimidate Victim 2 and his friends.

> **Commented [JB1]:** I'm still not okay with agreeing that reporting ████████ to ic3 wasn't pure harassment and part of her stalking pattern. Limiting her behavior to a couple of months is pure minimization.

In order to harass and intimidate Victim 2, I used multiple email accounts, social media accounts, and phone numbers to send numerous derogatory and defamatory messages, texts and other communications to him. I sent similar messages and other communications about Victim 2 to his friends and posted harassing and defamatory things about him on public Internet sites. For example:

- On or about October 21, 2017, I texted Victim 2 multiple times. He kept asking me to stop harassing him, but I told him to "get on the fucking phone" and talk to me or I would post about him online and send the posts to his "teachers colleagues everyone."

- On or about October 21, 2017, I used text messages to threatened to make false posts online, claiming that Victim 2 had an STD. I told Victim 2 that "I will drag u thru hell" ~~and threatened to send the posts to his job and his parents.~~ He begged me to stop and I texted "I don't care I have several posts I made that I didn't finish yesterday … they are going up today," and sent him photographs of a site ~~I threatened to make so many false posts about him that employers would not even see his portfolio if they searched his name online.~~

- Between approximately October 26 and October 29, 2017, I sent Victim 2 hundreds of text messages. I told him that if he ignored me did not respond to my texts, I would "get mad." I threatened to make more posts about him online, ~~to obtain a restraining order against him to get him arrested, and to send me who wanted to "fuck me" to his apartment. I told him I would not stop harassing him and would not take down my Internet posts about him until he flew to Utah and had sex with me.~~

- ~~on May 16, 2019, and again on June 15, 2019, I used the Internet to report Victims 2 to the federal Internet Crimes Complaint Center ("IC3"). In these reports, I claimed that~~

DRAFT

~~Victim 2 had impersonated me online and posted defamatory and harassing statements on the Internet about me. This was untrue, but I made the report in order to have Victim 2 investigated by law enforcement to continue harassing him.~~

I see no posts here nor were any made thats in any charged conduct after March of 2019, so what posts after March 2019 is the USA referring to??

In 2018, I met Victim 1 on a social media site. We had a brief sexual relationship resulting in the birth of a child ("Minor-1"). Beginning in or around December 2018 ~~and continuing until at least 2020~~, I engaged in a course of conduct intended to harass and intimidate Victim 1 and his family.

In order to harass and intimidate Victim 1, I used multiple email accounts, social media accounts, ~~and phone numbers~~ to make numerous derogatory and ~~defamatory~~ posts about Victim 1 on public Internet sites. ~~I tagged him in these posts to ensure he saw them~~, and to ensure anyone reading the posts would connect them to Victim 1. I also send numerous derogatory messages, texts and other communications about him to his friends and families and posted harassing ~~and defamatory~~ things about them on public Internet sites. For example,

- On December 24, 2018, I made a post on the website "Medium," identifying Victim 1 by name, including his photograph and his social media accounts. I included his job and his employer, ~~and tagged his employer in the post~~. In the post, I wrote that Victim 1 he had "impregnated me and then abandoned his son." I publicly posted the text messages between us, discussing the pregnancy and made derogatory statements about him and his family.

- On January 6, 2019, I posted again on the website "Medium." Again, I identified Victim 1 by name, including his photograph and his social media accounts. I included his job and his employer, ~~and tagged his employer in the post. In the post, I wrote that Victim 1 had "pressured me into killing his fully developed son," when I was the one who told Victim 1 that I wanted an abortion and asked him to pay for it, which he did~~. I posted that Victim 1 had "impregnated me and then abandoned his son," "just came inside me and left me with this baby," and had "irresponsibly ejaculated inside me and left me with his Baby!!!!!," ~~even though he had texted me that if I decided to have the baby he "wanted to be there" for the child and that he couldn't live with himself "doing the bare minimum as a dad."~~ I posted that Victim 1 was "going around on Tinder matching with thousands of women and having unprotected sex and cumming

You cannot directly tag an Instagram account within a Medium story using the @ symbol, as that function is reserved for tagging other users on the Medium platform. However, you can achieve the same goal by creating a hyperlink to their Instagram profile or embedding a specific Instagram post. THIS IS GENERAL KNOWLEDGE AVAILABLE ONLINE OR PREPARE TO SUBPOENA FOR MEDIUM CORP. WITNESSES, please Google this.

**DRAFT**

inside them; then leaving them stranded as if they became pregnant by themselves," ~~although I had no evidence of this.~~ I ~~publicly accused him of talking a "lower paying job"~~ just to avoid paying child support, identified Victim 1's parents by name, disclosed ~~their~~ employers, suggested that they were racist.

- ~~On March 6, 2019, I posted about Victim 1 again on Medium. Again, I identified Victim 1 by name, including his photograph and his social media accounts. I included his job and his employer, and tagged his employer in the post. I posted that "[Victim 1] at [tagging his employer] Impregnated me & Abandoned child," "[Victim 1] at [tagging his employer] impregnated me tried to force me to Abort an 18 Week baby then left me stranded without paying for the Abortion," "[Victim 1] has never provided any emotional nor financial support for his son." I also posted that [Victim 1's] son is sick, starving and homeless," even though this was untrue, and at the time Victim 1's son was living with me and my parents in Utah.~~

  <span style="color:red; border:1px solid red">No, this attempts to falsely implicate Wang on the 3/6/19 "Kill Baby K" post.</span>

- On February 17, 2019, posted about Victim 1 on Medium again. This time, I referred to Victim 1 by name, ~~and tagged~~ his employer, and stated that Victim 1 "Refers to his Son as a 'Chink Baby' he will NEVER acknowledge!!! Racist family." I wrote that Victim 1 and his family are "racists ~~who really despise all the Asians they refer to as Gooks, Chinks, and Japs surrounding the Bay area."~~ I never ~~heard Victim 1 or his family say these things.~~

- ~~On May 16, 2019, and again on June 15, 2019, I used the Internet to report Victims 2 to the federal Internet Crimes Complaint Center ("IC3"). In these reports, I claimed that Victim 1 had impersonated me online and posted defamatory and harassing statements on the Internet about me. In fact, the Internet post I complained about was an exact duplicate of another post I had made about Victim 1 on Medium. I did not "know" or even believe that Victim 1 had made this post, but I reported him to IC3 in order to have him investigated by law enforcement.~~

As a result of sending these messages to and about Victims 1 and 2, I caused them and their families substantial emotional distress.

<span style="color:red; border:1px solid red">https://encyclopedia.pub/entry/30419

Men with an Asian fetish are also affected by the stigma that accompanies the term.[7] These men are viewed as inferior by those who assume that they date Asian women because they are unable to date Caucasian women.[7] This logic holds that Asian women are lesser than Caucasian women.[7] The stereotype that the Asian fetish perpetuates, about the sexual superiority of Asian women, may be perceived as reducing the status of Asian women to objects that are only valuable for sex and not as complete human beings.[7]</span>

 **Gmail**

<span style="float:right">**John Wang** ███████████████</span>

## Sick, Starving and Homeless

3 messages

---

**John Wang** ██████████████████████     Wed, Sep 24, 2025 at 11:57 PM
████████████████████████████████████████

████ was very ill with severe jaundice, to the point that he required light therapy. (See attached photos)

At the time, ██████ was receiving both SNAP and Medicaid benefits. ████████ never offered any financial help, never suggested attending a prenatal medical appointment, failed to appear for the birth of the child, and did not communicate in any way regarding ████████ birth. He never inquired whether the baby was born healthy, provided no support whatsoever, and even blocked Wang prior to her first post on 12/24/18. In fact, he wanted an abortion after Wang changed her mind— texts confirm this.

Wang's Utah Medicaid paid for the pregnancy, and under Utah state law, ████████ was obligated to reimburse the state. He has never done so.

████████ never inquired about the child and blocked and ignored Wang's email to his attorney asking whether he wanted to be involved in the child's life. ████████ attorney, Darrick Chase, has since committed suicide. No one knows what dark deeds he may have carried out on behalf of the ████████ or whether his death was related, although his coroner's report states that Chase confessed a particular case he was working on had been deeply troubling him.

John Wang

## (385) 334-3308

---

The information in this email is intended solely for the use of the individual or entity to whom it is addressed and may contain proprietary, confidential, or privileged material, including attorney-client communications and information related to pending privileged litigation matters. If you are not the intended recipient, any review, dissemination, distribution, or copying of this message and any attached materials is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete all copies of this message and any attachments.

---

**10 attachments**



**Gmail - ████████ Jaundice photos.pdf**
1199K

**2019-01-17 ████████ Hires Utah PI to Obtains Birth Certificate.pdf**
265K

**2019-01-17 ████████ Hires Utah PI to Obtains Birth Certificate.pdf**
265K

**2019-02-06 Regina Mullen Go Fund Me Request from @instagram:rachel-chi6776.pdf**
126K

**2019-02-07 David Wallace FB Message to ████████████ (NO FURTHER DIRECT MESSAGES TO SIBLINGS REPORTED).pdf**
1196K

9/25/25 USA v. Wang Plea Draft v3 FINAL OFFER OR REVOKE PROBATION AND TRIAL !!!!!!!!!!

DRAFT 3

At all relevant times, I was a resident of the District of Utah.

In 2017, I connected with Victim 2 on a social media site. We did not form a romantic or dating relationship. Nevertheless, beginning in and around September 2017 and continuing until at least 2019, I engaged in a course of conduct intended to harass and intimidate Victim 2 and his friends.

In order to harass and intimidate Victim 2, I used multiple email accounts, social media accounts, and phone numbers to send numerous derogatory and defamatory messages, texts and other communications to him. I sent similar messages and other communications about Victim 2 to his friends and posted harassing and defamatory things about him on public Internet sites. For example,

- On May 16, 2019, and again on June 15, 2019, I used the Internet to report Victim 2 to the federal Internet Crimes Complaint Center ("IC3"). In these reports, I claimed that Victim 2 had impersonated me online and posted defamatory and harassing statements on the Internet about me. I made the reports in order to have Victim 2 investigated by law enforcement in order to continue harassing and intimidating him.

In 2018, I met Victim 1 on a social media site. We had a brief sexual relationship resulting in the birth of a child ("Minor-1"). Beginning in or around December 2018 and continuing until at least 2020, I engaged in a course of conduct intended to harass and intimidate Victim 1 and his family.

In order to harass and intimidate Victim 1, I used multiple email accounts, social media accounts, and phone numbers to make numerous derogatory posts about Victim 1 on public Internet sites. I tagged him in these posts to ensure he saw them, and to ensure anyone reading the posts would connect them to Victim 1. I also send numerous derogatory messages, texts and other communications about him to his friends and families and posted harassing things about them on public Internet sites. For example,

- On May 16, 2019, and again on June 15, 2019, I used the Internet to report Victims 1 to the federal Internet Crimes Complaint Center ("IC3"). In these reports, I claimed that Victim 1 had impersonated me online and posted defamatory and harassing statements on the Internet about me. I made the reports in order to have Victim 1



DRAFT 3

investigated by law enforcement in order to continue harassing and intimidating him.

As a result of sending these messages and making these posts, I caused Victims 1 and 2 and their friends and families substantial emotional distress.

I understand that the Internet is a means and facility of interstate and foreign commerce.

FINAL DRAFT- FILED VERSION IDENTICAL

FELICE JOHN VITI, Acting United States Attorney (#7007)
JOEY L. BLANCH, Assistant United States Attorney (#16665)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

## IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:24-CR-00163-TS |
| Plaintiff, | STATEMENT BY DEFENDANT IN ADVANCE OF PLEA OF GUILTY |
| vs. | AND PLEA AGREEMENT PURSUANT TO FED. R. CRIM. P. 11(c)(1)(C) |
| KAILIN WANG, | |
| Defendant. | Judge Ted Stewart |

I hereby acknowledge and certify that I have been advised of and that I understand the following facts and rights, and that I have had the assistance of counsel in reviewing, explaining, and entering into this agreement:

1. As part of this agreement with the United States of America, I intend to plead guilty to Counts 1 and 2 of the Indictment. My attorney has explained the nature of the charges against me, and I have had an opportunity to discuss the nature of the charges with my attorney. I understand the charges and what the United States is required to prove in order to convict me. The elements of Counts 1 and 2, both of which charge Cyberstalking, in violation of 18 U.S.C. § 2261A, are:

    (a) the defendant used facilities of interstate and foreign commerce, including an electronic communication service and/or an interactive computer service;

    (b) the defendant used the facility of interstate commerce to engage in a course of conduct – that is, a pattern of conduct composed of two or more acts, evidencing a continuity of purpose;

11.     I stipulate and agree that the following facts accurately describe my conduct. These facts provide a basis for the Court to accept my guilty plea:

At all relevant times, I was a resident of the District of Utah.

In 2017, I connected with Victim 2 on a social media site. We did not form a romantic or dating relationship. Nevertheless, beginning in and around September 2017 and continuing until at least 2019, I engaged in a course of conduct intended to harass and intimidate Victim 2 and his friends.

In order to harass and intimidate Victim 2, I used multiple email accounts, social media accounts, and phone numbers to send numerous derogatory and defamatory messages, texts and other communications to him. I sent similar messages and other communications about Victim 2 to his friends and posted harassing and defamatory things about him on public Internet sites. For example:

- On May 16, 2019, and again on June 15, 2019, I used the Internet to report Victim 2 to the federal Internet Crimes Complaint Center ("IC3"). In these reports, I claimed that Victim 2 had impersonated me online and posted defamatory and harassing statements on the Internet about me. I made the reports in order to have Victim 2 investigated by law enforcement in order to continue harassing and intimidating him.

In 2018, I met Victim 1 on a social media site. We had a brief sexual relationship resulting in the birth of a child ("Minor-1"). Beginning in or around December 2018 and continuing until at least 2020, I engaged in a course of conduct intended to harass and intimidate Victim 1 and his family.

In order to harass and intimidate Victim 1, I used multiple email accounts, social media accounts, and phone numbers to make numerous derogatory posts about Victim 1 on public Internet sites. I tagged him in these posts to to ensure he saw them, and to ensure anyone reading the posts would connect them to Victim 1. I also sent numerous derogatory messages, texts and other communications about him to his friends and families and posted harassing and derogatory things about them on public Internet sites. For example,

4

- On May 16, 2019, and again on June 15, 2019, I used the Internet to report Victim 1 to the federal Internet Crimes Complaint Center ("IC3"). In these reports, I claimed that Victim 1 had impersonated me online and posted defamatory and harassing statements on the Internet about me. I made the reports in order to have Victim 1 investigated by law enforcement in order to continue harassing and intimidating him.

As a result of sending these messages and making these posts, I caused Victims 1 and 2 and their friends and families substantial emotional distress.

I understand that the Internet is a means and facility of interstate and foreign commerce.

12.     The only terms and conditions pertaining to this plea agreement between me and the United States are as follows:

    a.  **Guilty Plea.** I will plead guilty to Counts 1 and 2 of the Indictment.

    b.  **Stipulated Sentence.** Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the sentence imposed by the Court will be no less than a 5-year term of probation and no more than a term of imprisonment of 12 months, and if a term of imprisonment is imposed, it shall be followed by a 3-year term of supervised release; which I agree is a reasonable sentence.

    (1)     I understand that this agreement, including my plea, the agreed upon sentence, and all other terms referenced herein, are subject to the approval of, and acceptance by the Court. I further understand that the Court will likely order the preparation of a Presentence Report to assist in the determination of whether this plea and the agreement are appropriate, and I agree to fully cooperate in the preparation of the Presentence Report.

    (2)     If, after receiving all relevant information, the Court rejects the plea agreement and determines that a sentence different from the agreed upon sentence of no less than a 5-year term of probation and no more than a term of imprisonment of 12 months, I will have the right to withdraw the plea of guilty and the terms of this agreement will become null and void. Likewise, if the Court rejects the plea agreement and determines that the sentence should be less than a 5-year term of probation, and if a term of imprisonment is imposed, a term of supervised release less than 3 years, I understand that the United States will have the right to move to vacate this agreement, and all terms of this agreement will become null and void.

5

    c.  **Dismissal of Counts.** The United States agrees to move for leave to dismiss Counts 3 and 4 at the time of sentencing.

    d.  **Utah Case.**  In addition to pleading guilty in this case (the "federal case"), I have also agreed to plead guilty in State of Utah v. Kailin Wang, Third District Court case number 211100167 (the "Utah case") pursuant to the following terms:

- I will plead guilty to Count 1 of the Utah case, amended to making false written statement in violation of Utah criminal code § 76-8-504, a Class B misdemeanor;
- I will plead guilty to Count 8 of the Utah case, which charges me with forgery in violation of Utah criminal code §76-6-501(2), a Class 3 felony, reduced to a Class A misdemeanor pursuant to Utah criminal code § 77-2.2.3;
- Counts 2-7 will be dismissed;
- The State will recommend a sentence to run concurrent with any period of incarceration imposed in the federal case, if any.

I understand that my guilty plea in the Utah case is an essential part of the agreement in the federal case. Notwithstanding paragraph 12(b)(2) above, I agree that if given the opportunity to plead guilty pursuant to those terms in the Utah case prior to the sentencing hearing in the federal case, and I do not do so, I may not withdraw my guilty pleas in the federal case and the United States will not be bound by its sentencing agreement and can seek up to the statutory maximum sentence.

    e.  **California Case.**  The San Francisco District Attorney's Office agrees that if I plead guilty in the federal case and the Utah case as contemplated by this agreement, they will move to dismiss California v. Wang, Superior Court of the State of California, City and County of San Francisco, case numbers 19016407 and 24500827 (consolidated) (the "California case") after sentencing is imposed in the federal case. The parties agree that dismissal of the California case is an essential part of the agreement in the federal case.

    f.  **Motion to Revoke Pretrial Release** The government agrees to withdraw the motion to revoke pretrial release filed on June 4, 2025, at docket 76, and not to request that defendant be detained prior to sentencing, unless the defendant commits violations of her conditions of pretrial release that are currently unknown to the government.

    g.  **Relevant Conduct.** I understand and agree that the Presentence Report may include descriptions of conduct I engaged in which either was not charged against