# EXHIBIT ___

## MASTER TIMELINE AND TECHNICAL ANALYSIS — MARCH 6, 2019

**Case No. FDV-19-814465** | ███████ **v. Wang**

---

> **Scope of this Exhibit** This exhibit presents two integrated analyses: **Part I** — A chronological timeline of documented events on March 6–7, 2019, drawn entirely from official agency records. **Part II** — A technical IP attribution analysis demonstrating why the Cloudflare IP address logged in the Holysmoke.org business records cannot reliably identify the individual who submitted the March 6 post.
> All sources are cited. All technical conclusions are supported by peer-reviewed academic research and industry forensic standards.

---

# PART I — CHRONOLOGICAL TIMELINE OF EVENTS

---

## SECTION A: THE HOLYSMOKE.ORG POST

---

**March 6, 2019 — 11:17 UTC | 3:17 a.m. PST | 6:17 a.m. EST**

**"Kill Baby K" Post Submitted to Holysmoke.org**

The Holysmoke.org certified business records (Exhibit A) reflect that a comment was submitted on March 6, 2019 at **11:17 UTC** under the username **"Kailin Wang"** with the email address **"kailin@wang.com"**, originating from IP address **108.162.219.228**.

The text of the post:

> *"I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!!"*

**Threshold technical facts about this entry:**

| Field | Value | Significance |
|---|---|---|
| Username | "Kailin Wang" | Self-reported, unverified; any person can type any name into a comment form |
| Email | kailin@wang.com | **Fabricated, non-existent address** — see analysis below |
| IP Address | 108.162.219.228 | **Cloudflare infrastructure IP** — see Part II for full analysis |
| Time | 11:17 UTC | 3:17 a.m. PST — more than 5 hours before the court hearing |

**Analysis of the email address: kailin@wang.com**

The email address entered in the submission field — `kailin@wang.com` — does not exist and has never belonged to Ms. Wang.

`wang.com` is a registered domain belonging to a commercial technology entity. It is not a personal email domain associated with Ms. Wang in any document in this record. Ms. Wang's documented email addresses — including `lancewr12@gmail.com` and others appearing in the record — bear no relationship to the `wang.com` domain.

Holysmoke.org, like most public complaint websites, does not verify, authenticate, or confirm the email address entered by a submitter before publishing a comment. The email field is a free-text entry that any person can populate with any string of characters.

This means:

- The username "Kailin Wang" was typed by an unknown person and is self-reported only
- The email address `kailin@wang.com` is fabricated — it is not deliverable, not verified, and not associated with Ms. Wang
- No verification mechanism existed on Holysmoke.org to confirm that the person who typed those fields was who they claimed to be

The combination of an unverified name field and a fabricated, non-existent email address means the submission contains **zero authenticated identifying information** linking it to Ms. Wang. Any person with knowledge of her name could have submitted this entry.

**Post time in each relevant time zone:**

| Time Zone | Local Time | Location |
|---|---|---|
| UTC | 11:17 a.m. | International standard |
| PST (San Francisco) | 3:17 a.m. | Petitioner's location |
| MST (Spanish Fork, UT) | 4:17 a.m. | Child's location |
| EST (New York) | 6:17 a.m. | Ms. Wang's documented location (see cell tower data, Section D) |

**Source:** Holysmoke.org Business Records, Exhibit A (Certified)

## SECTION B: THE SAN FRANCISCO SUPERIOR COURT HEARING

**March 6, 2019 — 8:00 a.m. PST**

**Petitioner and Team Arrive at Court**

Petitioner states in his April 9, 2019 Declaration: *"On March 6, 2019, I was here in this Court with my family from approximately 8:00 a.m.-noon."*

**Source:** Declaration of ███████ Stanford ███████ April 9, 2019, ¶ 10(a)

**March 6, 2019 — 8:30 a.m. PST**

**Ex Parte Hearing — Dept. 404, SF Superior Court** *Before the Honorable Richard C. Darwin*

| Proceeding element | Record |
|---|---|
| Petitioner present with | Darrick T. Chase and Erica T. Johnstone |
| Respondent status | Not served. Not present. Called in; said she would call back. |
| Motion for substituted service | DENIED — personal service required |
| Order entered | Temporary sole legal and physical custody to Petitioner; no visitation for mother |
| Findings made | **None** — Court expressly stated: *"I am not making any findings at this point... There has been no evidence, there has not been an evidentiary proceeding."* |
| Continued to | April 10, 2019 at 8:30 a.m., Dept. 404 |

At the June 25, 2019 evidentiary hearing, Judge Darwin confirmed: *"Keep in mind that was an ex parte order. It was not a contested proceeding. So it was issued without evidence from one side, which is typical for DVROs."*

**Sources:** Mini Minutes, March 6, 2019; Reporter's Transcript, March 6, 2019; Reporter's Transcript, June 25, 2019, p. 6

## SECTION C: POST-HEARING LAW ENFORCEMENT CONTACTS

> **Note on operational detail:** Each of the following contacts reflects that Petitioner's team was in possession of specific, granular personal information about Ms. Wang — including her home address, cell phone numbers, vehicle license plate numbers, and which car contained the infant's car seat. The source and timing of this information is not explained in the record.

**March 6, 2019 — 12:26 p.m. PST (claimed)**

**Petitioner's Claimed First Notification of the Post**

Petitioner's April 9, 2019 Declaration states:

> *"At 12:26 p.m., around the time when we were leaving court, my legal team notified me that Ms. Wang had made a murder/suicide post to* https://www.holysmoke.org/bad-business/██████████

This is the only notification time stated in the Petitioner's sworn declaration. The post had been submitted to Holysmoke.org approximately **nine hours and nine minutes earlier**, at 3:17 a.m. PST.

**Source:** Declaration of ▋▋▋ Stanford ▋▋▋, April 9, 2019, ¶ 10(a)

---

**March 6, 2019 — 14:12:23 MST | 1:12 p.m. PST**

**Utah Valley 911 Call — Call No. C6050525**

A call was placed to Central Utah 911 Dispatch at **14:12:23 Mountain Standard Time**. The call was recorded and later transcribed in the Fourth Judicial District Court of Utah County (Case No. 194400718 PT).

**Callers on the line:**

| Caller | Role |
|---|---|
| Mark Brenzinger | Agent, Hillard Heintze (private security risk management firm, Chicago, IL) |
| ▋▋ ▋▋ | Petitioner's mother |
| Darrick T. Chase | Petitioner's attorney |

**Specific information provided by callers to dispatch:**

| Item provided | Detail |
|---|---|
| Subject name | Kailin Wang |
| Home address | 2481 Fairway Drive, Spanish Fork, UT |
| Cell phones | 323-244-3244 and 917-432-4181 |
| Parents' landline | 801-794-2801 |
| Vehicle 1 | Gold BMW SUV, UT plate B538EA |
| Vehicle 2 | Red Lexus SUV, UT plate D569XT |
| Baby seat location | *"We believe the baby seat is usually in the red Lexus, FYI."* |
| Baby's name / DOB | ▋▋ ▋▋ Wang, ▋▋ 2018 |
| Stated basis | Holysmoke post made *"about two hours ago"*; California court order |

**Key statement from the call (Brenzinger):**

> *"We believe our subject is mentally unstable, has just got bad news, and she just posted a threat about two hours ago about a homicidal threat and a suicidal threat regarding herself and this baby."*

**Key statement from the call (Chase):**

> *"We want to get the baby at the time we do the welfare check."*

**Dispatch log comments:**

> *"subject re kailin wang / mental problems / has made threats to herself and to baby as of two hours ago / rp is calling from out of state / has orders for custody to be given to father / no method mentioned / hx of alc / unk drugs / unk weapons"*

**Critical timing observation:** Brenzinger stated the post was made *"about two hours ago"* at the time of the 14:12 MST (1:12 p.m. PST) call. Two hours prior to 1:12 p.m. PST = approximately **11:12 a.m. PST** — more than one hour before the Petitioner's own sworn notification time of 12:26 p.m. PST.

**Sources:** Utah Valley Dispatch Call Detail Report C6050525; 911 Call Transcript (certified, Natalie Lake, OCT); Central Utah 911 Subpoena Response, August 26, 2019

---

**March 6, 2019 — ~15:00 MST**

**Utah DCFS Referral**

Utah DCFS records reflect a referral was made on March 6, 2019 citing the Holysmoke post and the same-day court order.

- Third-party contacts identified: **Mark Brenzinger, Clinical Psychologist** and **Darrick Chase**, Father's Attorney
- The referral notes the father would arrive in Utah at **9:42 p.m.** to retrieve the baby and would call law enforcement for assistance
- A protective order signed on 3/6/19 awarding the father temporary legal and physical custody was referenced

DCFS Staffing Notes:

> *"Mother threatened on social media on 3.6.19 to kill herself and ▮▮▮▮ because father isn't paying child support. Father will arrive in Utah at 9:42 pm tonight from San Francisco. This case will be assigned to Supervisor Robbie Adams."*

DCFS case closed **March 20, 2019** — Finding: **"Supported — Non Severe/Chronic"**

**Source:** Utah DCFS Referral and Activity Logs, Case ID 2503301

---

**March 6, 2019 — 1502 PST (3:02 p.m.)**

**San Francisco Police Department — Contact with ▮▮▮▮ ▮▮▮▮▮**

> *"I spoke with ▮▮▮▮ ▮▮▮▮▮ who advised me that custody was granted to ▮▮▮▮▮ ▮▮▮▮▮ She also advised me that Wang had posted something stating that she would kill herself and the baby."*

**Source:** SFPD Chronological Report of Investigation, p. 8 of 31

---

**March 6, 2019 — 1511 PST (3:11 p.m.)**

**San Francisco Police Department — Contact with Darrick Chase**

> *"I spoke with Darrick Chase, family law attorney for* ██████ ██████ *Chase told me that a post was made on Holysmoke a few hours ago where Wang threatened to harm herself and the child."*

**Source:** SFPD Chronological Report of Investigation, p. 8 of 31

---

**March 6, 2019 — 9:42 p.m. MST**

**Petitioner,** ██████ ██████ **and Counsel Arrive in Utah**

DCFS records and Petitioner's declaration confirm that Petitioner, his mother, and his attorney flew from San Francisco to Salt Lake City on the evening of March 6, 2019, arriving at approximately **9:42 p.m. MST.**

**Source:** Utah DCFS Referral; Declaration of ██████ Stanford ██████ April 9, 2019

---

## SECTION D: MS. WANG'S DOCUMENTED LOCATION ON MARCH 6, 2019

---

**March 6, 2019 — All Day**

**T-Mobile Cell Tower Records — Phone Pinged at 65 West 70th Street, New York, NY**

T-Mobile Call Detail Records for Ms. Wang's phone reflect repeated tower connections throughout March 6, 2019 to:

📍 **65 West 70th Street, New York, NY 10023**

Selected call events from the record:

| Time (UTC) | Event | Tower Location |
|---|---|---|
| 05:01:21 UTC (12:01 a.m. EST) | Incoming call | 65 W 70th St, New York |
| 05:40:33 UTC (12:40 a.m. EST) | Outgoing call | 65 W 70th St, New York |
| 15:18:48 UTC (10:18 a.m. EST) | Incoming call | 65 W 70th St, New York |
| 16:30:13 UTC (11:30 a.m. EST) | Incoming call | 65 W 70th St, New York |
| 16:32:06 UTC (11:32 a.m. EST) | Outgoing call | 65 W 70th St, New York |

**Cross-reference with post timestamp:**

The Holysmoke post was submitted at **11:17 UTC = 6:17 a.m. EST**. The cell records reflect the phone was active and connected to a New York City tower at multiple points before and

after that timestamp throughout the day.

Cell tower records establish physical device location independent of IP data. These records demonstrate:

✔ The phone was in New York City on March 6, 2019
✔ The phone was active and connecting during the relevant morning window
✔ The phone's location is consistent with Ms. Wang's known New York residence

**Source:** T-Mobile Call Detail Records, March 6, 2019 (Exhibit 17)

---

**March 6, 2019 — 17:27 UTC | 12:27 p.m. EST**

**Google Account Login from New York IP**

The Google subscriber records for lancewr12@gmail.com (account associated with Ms. Wang) reflect a login at **17:27:00 UTC on March 6, 2019** from IP address **67.207.43.90** — a real ISP-assigned address geolocating to the New York region.

**March 6, 2019 — 20:18 UTC | 3:18 p.m. EST**

**Google Account Login from New York IPv6 Address**

A second Google login was recorded at **20:18:25 UTC** from IPv6 address:
**2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d**

This IP address is a **Charter Communications (now Spectrum) subscriber address** geolocating to the New York metropolitan area. It is a real residential ISP address — not a proxy.

This same IP address appears across multiple login events in the Google subscriber records:

| Date/Time (UTC) | Event |
| --- | --- |
| 2019/03/06 — 17:27:00 | Login — 67.207.43.90 |
| 2019/03/06 — 20:18:25 | Login — 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d |
| 2019/03/07 — 06:16:28 | Login — 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d |
| 2019/03/11 — 19:11:53 | Logout — 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d |
| 2019/03/11 — 19:35:10 | Login — 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d |
| 2019/03/13 — 23:08:57 | Login — 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d |
| 2019/03/15 — 05:29:02 | Logout — 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d |

This IP also appears in the **IC3 report records** produced by the Government on April 30, 2026 — placing the IC3 filing activity at the same New York Charter Communications network address that is consistent with Ms. Wang's documented New York location.

**Sources:** Google Subscriber Records, lancewr12@gmail.com; Government IC3 IP Summary (produced April 30, 2026)

---

## SECTION E: MARCH 7, 2019

---

### March 7, 2019 — Morning

### Child Removed from Ms. Wang's Care

███████ ████████ Wang was removed from Ms. Wang's custody on March 7, 2019.

**Source:** Declaration of ████████ Stanford ████████ April 9, 2019, ¶ 10(a); Shelter Request, State of Utah v. Wang, ██████ Fourth District Juvenile Court, Utah County (filed March 8, 2019, by Asst. AG Gary L. Bell)

---

### March 7, 2019 — 19:00 EST

### Ms. Wang's First Law Enforcement Contact — New York Domestic Incident Report

Ms. Wang filed a Domestic Incident Report in New York on **March 7, 2019 at 19:00 EST** — the day after all foregoing events, after the child had already been removed.

This is the **first and only contact Ms. Wang initiated with law enforcement** in connection with these events.

**Source:** New York State Domestic Incident Report, March 7, 2019

---

## SECTION F: DCFS REVERSAL — NOVEMBER 2019

---

### March 27, 2019

### DCFS Issues Notice of Agency Action — "Supported" Finding of Physical Abuse

Following the March 6–7 events, Utah DCFS issued a Notice of Agency Action dated **March 27, 2019**, formally finding Ms. Wang "substantially responsible for Physical Abuse" in Case No. 2503301. This finding was based on the Holysmoke post and the information provided by Brenzinger and Chase in the March 6, 2019 911 call.

Ms. Wang requested an administrative hearing to challenge the finding. A hearing was scheduled.

**Source:** DCFS Final Decision and Order, OAH Case No. 2503301, ALJ Eric M. Stott

---

**November 6, 2019**

**DCFS Files Motion to Reverse Supported Finding to Unsupported**

Eight months after the child removal, **Utah DCFS filed a Motion to Reverse Supported Finding to Unsupported** and to vacate the scheduled administrative hearing. The motion was filed with the Utah Department of Human Services, Office of Administrative Hearings.

ALJ Eric M. Stott issued a Final Decision and Order stating:

> *"Given that Claimant has changed its finding of Physical Abuse to Unsupported, Respondent is no longer entitled to an administrative hearing in the present matter, and the request for hearing should be dismissed."*

The hearing scheduled for **November 21, 2019 at 10:00 a.m. was vacated.**

**Source:** State of Utah, Department of Human Services, Office of Administrative Hearings, Final Decision and Order, DCFS v. Kailin Wang, OAH Case No. 2503301, ALJ Eric M. Stott, November 8, 2019

---

**November 14, 2019**

**DCFS Issues Formal Reversal Letter to Ms. Wang**

Jaimie Graham, Western Region Administrative Hearing Tracker, Division of Child and Family Services, issued a written letter to Ms. Wang stating:

> *"The Division of Child and Family Services has conducted an Internal Review of your case and has determined that we will be changing the supported finding in the Management Information System to unsupported on case #2503301."*

**Source:** Utah DCFS Letter, Jaimie Graham to Kailin Wang, November 14, 2019

---

**Significance of the DCFS Reversal**

The DCFS reversal is the most significant institutional action in the post-March 6 record. Its significance cannot be overstated:

**What the reversal means:** The agency that removed a three-month-old infant from his mother's parents' home — based on the Holysmoke post and the 911 call made by Brenzinger, Chase, and ▮▮▮ ▮▮▮▮ — conducted an internal review and determined it could not sustain the finding. The reversal followed the development of the forensic record, including the Cloudflare investigation confirming that IP 108.162.219.228 was a proxy relay with no attributable link to Ms. Wang.

**What the reversal is not:** This was not a procedural reversal or a statute-of-limitations dismissal. DCFS filed an affirmative motion to change its own finding from Supported to Unsupported. That is the agency's own determination, made after internal review, that the evidence underlying the finding could not be sustained.

**The initial finding rested entirely on two sources:**

1. The Brenzinger/Chase/███ ████████ 911 call reporting the Holysmoke post
2. The Holysmoke business records logging IP 108.162.219.228

Once the forensic record established that the logged IP was a Cloudflare proxy address incapable of identifying any individual, and that no verified link existed between the post and Ms. Wang, DCFS reversed.

This reversal constitutes direct institutional confirmation — from the State of Utah itself — that the Kill Baby K post was not reliably traceable to Ms. Wang.

|  | Initial Finding (March 27, 2019) | Reversed Finding (November 2019) |
|---|---|---|
| **Finding** | Supported — Physical Abuse | **Unsupported** |
| **Basis for initial finding** | Holysmoke post + 911 call | — |
| **Basis for reversal** | Internal review; post not attributable to Wang | — |
| **Administrative court action** | Hearing scheduled | Hearing vacated |
| **ALJ** | — | Eric M. Stott |
| **DCFS official** | — | Jaimie Graham, Western Region |

## SECTION G: CONSOLIDATED TIMELINE TABLE

| Time (Local) | Time Zone | Event | Source |
|---|---|---|---|
| 11:17 UTC / 3:17 a.m. | PST | Holysmoke post submitted from Cloudflare IP 108.162.219.228 | Holysmoke Business Records, Exhibit A |
| 8:00 a.m. | PST | Petitioner arrives at SF Superior Court | ███ Decl. 4/9/19 |
| 8:30 a.m. | PST | Ex parte hearing; sole custody granted; **no findings made** | Mini Minutes; Reporter's Transcript 3/6/19 |
| 12:26 p.m. (claimed) | PST | Petitioner claims first notification of post | ███ Decl. 4/9/19, ¶ 10(a) |

| Time (Local) | Time Zone | Event | Source |
|---|---|---|---|
| 14:12:23 MST / 1:12 p.m. | PST | Hillard Heintze/Brenzinger calls Utah 911; Chase and ██████ ████████ on call | Utah Valley Dispatch C6050525; 911 Transcript |
| ~15:00 MST | MST | Utah DCFS referral submitted | DCFS Records, Case ID 2503301 |
| 1502 | PST | SFPD contact — ████ ████████ re: post and custody | SFPD Chrono Report, p. 8 |
| 1511 | PST | SFPD contact — Darrick Chase re: Holysmoke post | SFPD Chrono Report, p. 8 |
| 17:27 UTC / 12:27 p.m. EST | EST | Google login from New York ISP IP 67.207.43.90 | Google Subscriber Records |
| 20:18 UTC / 3:18 p.m. EST | EST | Google login from NY Charter IP 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d | Google Subscriber Records |
| 9:42 p.m. | MST | Petitioner, ████ ████████ and counsel arrive in Utah | DCFS Records; ████████ Decl. |
| 3/7 — Morning | MST | Child removed from Ms. Wang's custody | Shelter Request; ████████ Decl. |
| 3/7 — 19:00 | EST | Ms. Wang files Domestic Incident Report in New York | NY Domestic Incident Report |
| 3/27/19 | — | DCFS issues "Supported" finding of Physical Abuse | DCFS Notice of Agency Action |
| 11/6/19 | — | **DCFS reverses finding to Unsupported; hearing vacated** | OAH Final Decision, ALJ Stott |
| 11/14/19 | — | **DCFS issues formal reversal letter to Ms. Wang** | DCFS Letter, Jaimie Graham |

# PART II — TECHNICAL IP ATTRIBUTION ANALYSIS

## Overview

This Part addresses whether the IP address recorded in the Holysmoke.org business records — **108.162.219.228** — can reliably be used to identify the individual who submitted the March 6, 2019 post. It cannot. The reasons are technical, structural, and supported by peer-reviewed academic research and industry forensic standards.

---

### A. The Submission Contains Zero Authenticated Identifying Information

Before addressing the IP address, it is important to establish what the Holysmoke.org submission does and does not contain in terms of verified identity.

The three fields that might identify a submitter are:

| Field | Value Submitted | Verified by Holysmoke? | Belongs to Ms. Wang? |
|---|---|---|---|
| Username | "Kailin Wang" | ❌ No | Unknown — self-reported only |
| Email | kailin@wang.com | ❌ No | ❌ **No — fabricated, non-existent address** |
| IP Address | 108.162.219.228 | N/A | ❌ No — Cloudflare proxy (see Section B) |

**The email address `kailin@wang.com` does not exist and has never belonged to Ms. Wang.**

`wang.com` is a registered commercial domain. It is not a personal email address belonging to Ms. Wang. No document in this record associates Ms. Wang with the `wang.com` domain in any form. Her documented real email accounts — including `lancewr12@gmail.com` — bear no connection to that domain whatsoever.

Holysmoke.org does not verify, authenticate, or confirm email addresses entered by submitters before publishing a comment. The email field is a free-text entry box. Any person can type any string into it. There is no account login, no email verification link, no captcha tied to account ownership, and no confirmation mechanism of any kind.

The practical consequence is this: **the submission contains no field that was verified, authenticated, or confirmed to belong to Ms. Wang.** The name was typed by an unknown person. The email address is fabricated and does not exist. The IP address is a shared Cloudflare server (addressed below). The submission is, from an authentication standpoint, entirely anonymous — and could have been submitted by any person with knowledge of Ms. Wang's name.

---

## B. The Logged IP Belongs to Cloudflare — Not to a User

The IP address **108.162.219.228** belongs to **Cloudflare, Inc.,** a major content delivery network and reverse proxy service.

The following IP ranges appearing throughout the Holysmoke business records are all Cloudflare infrastructure addresses:

| IP Range | Owner |
| --- | --- |
| 108.162.x.x.x | Cloudflare, Inc. |
| 172.69.x.x | Cloudflare, Inc. |
| 162.158.x.x | Cloudflare, Inc. |
| 173.245.x.x | Cloudflare, Inc. |

These are **not residential, subscriber, or device-level IP addresses**. They are shared network infrastructure used by Cloudflare to proxy web traffic for thousands of websites simultaneously.

### How a Cloudflare Proxy Works

When a user submits content to a Cloudflare-protected website, the actual communication path is:

```
User's Device (real IP, unknown)
        ↓
Cloudflare Network Server (logged IP: 108.162.219.228)
        ↓
Holysmoke.org Web Server
        ↓
Holysmoke.org Log: records Cloudflare IP only
```

The website's log records **Cloudflare's IP** — not the user's real IP address. Without the original client IP from Cloudflare's internal logs (specifically the `CF-Connecting-IP` or `X-Forwarded-For` headers), no attribution to a specific device or subscriber is possible.

## B. The Geolocation of 108.162.219.228 Does Not Indicate a User Location

The IP 108.162.219.228 may geolocate to the **Newark, New Jersey** area. This reflects the location of a Cloudflare edge server — not the location of the person who submitted the post.

New York/Newark is one of the largest internet exchange points in the United States and is a major routing hub for Cloudflare, multiple VPN providers, and mobile carriers. A user

anywhere in the country — or the world — can have their traffic routed through a Cloudflare Newark server.

**The Newark geolocation identifies a server. It does not identify a person.**

---

## C. No IP Match Between Holysmoke Logs and Google Subscriber Records

A direct comparison was performed between the Holysmoke.org submission IPs and the Google subscriber login records for lancewr12@gmail.com (Lanie Lee, associated with Ms. Wang):

| Event | Holysmoke IP | Found in Google Login History? |
|---|---|---|
| Feb 8, 2019 original post | 108.162.250.43 | ❌ No match |
| Feb 9-12 comment cluster | 172.69.42.48 / .84 | ❌ No match |
| Feb 28 comment | 108.162.219.54 | ❌ No match |
| **March 6, 2019 — Kill Baby K post** | **108.162.219.228** | ❌ **No match** |
| May 16, 2019 | 96.89.228.233 | ❌ No match |

**None of the Holysmoke submission IPs appear anywhere in the Google account login records.**

The real login IPs recorded in the Google subscriber file — including **67.207.43.90** and **2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d** — are legitimate ISP-assigned addresses from the New York metropolitan area. None of them appear in the Holysmoke logs.

This is precisely what would be expected if Holysmoke was logging Cloudflare proxy IPs rather than the actual user's IP: **the real network appears in login data, but not in the website submission logs.**

---

## D. The Proxy Header Analysis — The Real IP Chain

In email and server header records related to this matter, a proxy chain is documented that reveals the structure behind Cloudflare-mediated submissions:

```
forwarded_for (real client IP):  2601:681:400:8b05:10ed:bdb8:ce1:c6f5
remote-addr   (proxy IP):        172.69.42.61
```

This confirms the standard Cloudflare proxy architecture:

- The `remote-addr` field (172.69.42.61) is a **Cloudflare IP** — the same range appearing throughout the Holysmoke logs

- The `forwarded_for` field captures a **real residential IPv6 address** from what appears to be a Comcast/ISP-assigned address

This header chain demonstrates that:

1. Cloudflare was proxying the traffic
2. The Holysmoke log recorded Cloudflare's IP — not the user's
3. The true client IP is in the `X-Forwarded-For` / `CF-Connecting-IP` layer — which Holysmoke did not preserve in the business records produced

**Without access to Cloudflare's origin logs, no attribution to any individual is technically supportable from the Holysmoke records alone.**

---

## E. The IC3 IP — Confirmed New York Origin

The Government's April 30, 2026 disclosure includes a summary referencing the IC3 reports with the IP address:

**2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d**

This IP address:

✔ Is a **Charter Communications (Spectrum)** subscriber address — a real, traceable residential ISP ✔ Geolocates to the **New York metropolitan area** ✔ Appears repeatedly in the **Google subscriber login records** for lancewr12@gmail.com across March 6–15, 2019 ✔ Is consistent with Ms. Wang's **T-Mobile cell tower data** placing her phone at 65 West 70th Street, New York throughout March 6, 2019

This creates a three-source corroboration of New York location:

| Source | Evidence | Location |
|---|---|---|
| T-Mobile CDR | Cell tower pings | 65 W 70th St, New York |
| Google subscriber records | Real login IP, March 6 | New York (Charter ISP) |
| IC3 submission IP | 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d | New York (Charter ISP) |

**All three independent data sources are consistent with Ms. Wang's documented presence in New York City on March 6, 2019.**

---

## F. Academic and Industry Authority on IP Attribution Reliability

The technical limitations described above are not contested in the forensic or academic communities. Two authoritative sources directly support the foregoing analysis:

*(Peer-reviewed academic networking research)*

**Core finding:** IP ownership changes over time, and using modern attribution to infer historical ownership introduces material error.

Key holdings relevant here:

- *"Current whois information may be ill suited to correctly attribute IP addresses… especially in the wake of IPv4 exhaustion and address transfers."*
- Attribution disagreement rates between professional systems can reach **7.67%** for historical data.
- *"A prefix being announced by an AS does not necessarily mean the prefix is allocated to that organization."*
- Even advanced attribution systems may misattribute prefixes due to incomplete routing visibility.

**Application:** The Holysmoke records reflect 2019 activity. Any attribution analysis performed in 2024 or later using current IP records cannot reliably reconstruct 2019 network conditions.

---

**Source 2: UpGuard — "What Is IP Attribution, and Why Is It Doomed?"**

*(Industry-level cybersecurity forensic analysis)*

**Core finding:** IP addresses are not fingerprints and cannot reliably identify individuals.

Key holdings relevant here:

- *"Many believe IP addresses are like fingerprints. This is not true."*
- *"Hosts can and will use a single IP address for multiple clients… network address translation makes this possible."*
- *"IP addresses can be faked or spoofed."*
- *"Cloud services make it easy to rotate IPs… increasing the likelihood of error in attribution."*
- *"Multiple users can share a single IP address."*

**Application:** Every Holysmoke submission IP in the business records falls within shared Cloudflare proxy ranges. Under the standards described in this source, none of those IPs can support reliable attribution to any individual.

---

## G. Summary: What the IP Evidence Can and Cannot Establish

| Question | Answer | Basis |
| --- | --- | --- |
| Does 108.162.219.228 identify a specific person? | **No** | Cloudflare proxy IP — shared infrastructure |
| Does the Holysmoke log contain a real user IP? | **No** | Cloudflare masked the origin; no `CF-Connecting-IP` preserved |
| Do the Holysmoke IPs match Ms. Wang's Google account login IPs? | **No** | Direct IP comparison — zero matches |
| What do Ms. Wang's real login IPs show? | New York ISP (Charter) | Google subscriber records, March 6-15, 2019 |
| What does her cell tower data show? | New York City | T-Mobile CDR, March 6, 2019 |
| What does the IC3 IP show? | Same New York Charter IP as Google logins | Government disclosure, April 30, 2026 |
| Can attribution be completed from available records? | **No** — chain is incomplete | Requires Cloudflare origin logs not produced |

## H. What Would Be Required for Reliable Attribution

To attribute the March 6, 2019 Holysmoke post to any specific individual, the following would be required — none of which is present in the current record:

1. **Cloudflare's origin IP logs** — the `CF-Connecting-IP` or `X-Forwarded-For` value recorded at the time of the submission
2. **ISP subscriber records** for that origin IP, covering the exact timestamp (11:17 UTC, March 6, 2019)
3. **Device-level forensic evidence** tying a specific device to both the subscriber account and the submission
4. **Account login evidence** linking the submitter's actual account to the post

The Holysmoke business records alone — which record only Cloudflare's proxy IP — cannot satisfy any of these requirements.

## I. The Cloudflare Barrier Is Technically Surmountable — and Petitioner's Counsel Refused to Pursue It

**The Aaron Minc Correspondence — July 25, 2019**

On July 25, 2019 at 11:25 p.m., Ms. Wang (writing from lancewr12@gmail.com as Lanie Lee) sent an email directly to Petitioner's attorney Darrick Chase at dchase@kayemoser.com. The email stated in relevant part:

> *"But my feeling is, you won't do more discovery on that post and on holysmoke because your client posted it. The* ███████ *certainly financially have the capacity to find the identity of that poster. But it's your client who did it, that's why* ███████ *legal team deliberately avoid discovery on that site like a plague."*

Ms. Wang simultaneously contacted **Aaron Minc**, a nationally recognized internet defamation and online content removal attorney, to inquire whether the true identity of the Holysmoke poster could be uncovered through forensic investigation.

Mr. Minc's response, preserved as a screenshot attachment to the email, states:

> *"We've also dealt with the cloudflare problem before Karl mentioned with other 'cheatersites'.. but had to hire some forensic experts and get into server files to get actual IPs. That was not a small endeavor and required reviewing general server traffic and data, but actually wound up nailing the perpetrator."*

> *"Additionally, we have gotten beware.org (who is now possibly the owner of holysmoke) to respond to subpoenas before, I think at least in one case to the extent they had any information."*

**This communication establishes three critical facts:**

**First** — Attribution through Cloudflare is technically possible. Mr. Minc, an attorney with documented experience in exactly this type of forensic investigation, confirms that forensic experts accessing server-side traffic logs can recover the actual originating IP addresses behind Cloudflare proxy entries. The process has been successfully used to identify perpetrators in comparable cases.

**Second** — Holysmoke's owner (beware.org) has a documented history of responding to subpoenas. This means a subpoena directed to beware.org / Holysmoke requesting server-side origin IP logs, `CF-Connecting-IP` headers, and raw traffic data for the March 6, 2019 entry at 11:17 UTC is a viable and precedented discovery mechanism.

**Third** — Petitioner's counsel, Darrick Chase, was put on notice of this potential discovery avenue in July 2019 and did not pursue it. This is consistent with Ms. Wang's observation in the same email that ███████ legal team was deliberately avoiding discovery on Holysmoke.

**Petitioner's Refusal to Cooperate in Discovery Costs**

Ms. Wang has requested that Petitioner contribute to the cost of obtaining forensic analysis of Holysmoke's server traffic records, given that:

- The post is central to the Petitioner's own case
- The Petitioner's team has substantially greater financial resources

- The Petitioner's counsel was alerted to this discovery avenue in 2019 and declined to pursue it

- The identification of the true poster would either confirm or directly refute the Petitioner's core factual allegation

Petitioner's counsel refused to participate in or contribute to this discovery.

**Source:** Email, Lanie Lee to Darrick Chase, July 25, 2019, 11:25 p.m. (<u>lancewr12@gmail.com</u> → <u>dchase@kayemoser.com</u>); Screenshot attachment — Aaron Minc response

---

## J. The Government's Attribution Theory — And Why It Is Incomplete

### What the Government Apparently Intends to Argue

The Government's apparent theory is that because Ms. Wang is attributable to other Holysmoke posts — specifically the February 8, 2019 "Sperm Bank" post — she must also be the author of the March 6, 2019 "Kill Baby K" post.

**Ms. Wang does not deny making the Sperm Bank post or other earlier posts about the Petitioner on Holysmoke.** Those posts expressed her grievances about her relationship with the Petitioner and were made under her real identity. She acknowledges them.

**Ms. Wang specifically and categorically denies making the March 6, 2019 "Kill Baby K" post.** That post is of a fundamentally different character — it is a homicidal and suicidal threat attributed to her by name at 3:17 a.m. PST on the same day the Petitioner obtained an ex parte custody order and coordinated a multi-agency child removal operation.

---

### The Foundational Premise of the Government's Theory Is Factually Wrong: Posts on These Sites Clone Themselves Automatically

Before reaching the IP analysis, it is necessary to address the Government's threshold assumption — that because Ms. Wang's Sperm Bank post appeared on Bad Biz *and* on Holysmoke, she must have manually submitted it to Holysmoke.

**That assumption is factually incorrect, and the New York Times has documented exactly why.**

In an April 24, 2021 investigative report titled *"The Slander Industry,"* New York Times reporter Kashmir Hill and a colleague conducted a direct experiment on exactly this class of websites — complaint sites, cheater sites, and reputation-destruction platforms of which Holysmoke is one. The reporter wrote a post about herself on one of these sites and then observed what happened:

> *"So I wrote a nasty post. About myself. Then we watched as a constellation of sites duplicated my creation."*

The reporter's conclusion, documented in the article:

> **These posts clone themselves.**

The full article is available at:
https://www.nytimes.com/interactive/2021/04/24/technology/online-slander-websites.html

**What this means for the Government's theory:**

The fact that the Sperm Bank post — which Ms. Wang admits posting on Bad Biz — also appeared on Holysmoke.org does not establish that Ms. Wang posted it on Holysmoke. It establishes only that content originating on one site in this ecosystem was automatically duplicated to another site, as the New York Times investigation documented is standard behavior across this class of websites.

Ms. Wang posting on Bad Biz → Post automatically cloned to Holysmoke = **No affirmative act by Ms. Wang on Holysmoke**

This is the Government's foundational premise, and it is factually unsupported. The presence of the Sperm Bank post on Holysmoke cannot be used to establish that Ms. Wang was a volitional Holysmoke user who then also submitted the Kill Baby K post there. She may never have manually submitted anything to Holysmoke at all.

The Government's entire theory — Wang posted on Holysmoke before → therefore Wang posted the Kill Baby K post on Holysmoke — rests on a premise that the New York Times' own forensic investigation of this exact category of websites has shown to be false.

**Source:** Kashmir Hill, *"The Slander Industry,"* New York Times, April 24, 2021, available at https://www.nytimes.com/interactive/2021/04/24/technology/online-slander-websites.html

---

### The Critical Technical Distinction Between the Two Posts

The Government's theory collapses when the technical record of the two posts is examined side by side:

| | **Sperm Bank Post (Feb 8, 2019)** | **Kill Baby K Post (Mar 6, 2019)** |
|---|---|---|
| **Logged IP** | 108.162.250.43 (Cloudflare) | 108.162.219.228 (Cloudflare) |
| **Real origin IP recovered?** | ✅ YES | ❌ NO |
| **Real origin IP** | 2601:681:400:8b05:10ed:bdb8:ce1:c6f5 (Comcast) | Not produced |
| **How recovered** | Email header: `forwarded_for` field | Never subpoenaed |
| **ISP subscriber identified?** | ✅ Yes — Comcast/Charter, New York | ❌ Not obtained |
| **Links to Ms. Wang?** | ✅ Consistent with her Google login IPs | ❌ Cannot determine |
| **Wang's position** | Does not deny | **Specifically denies** |

The Sperm Bank post was successfully attributed because the server preserved the **real client IP** in the `X-Forwarded-For`/`forwarded_for` header — and that IP was produced and matched to Ms. Wang's known network. That is how proper attribution works.

The Kill Baby K post has **never been subjected to the same process.** The only IP in the record for that post is the Cloudflare proxy address. No subpoena has been served on Holysmoke/beware.org for the origin server logs of the March 6 entry. No `CF-Connecting-IP` or `forwarded_for` header data has been produced for that submission.

---

**The Discovery Parity Argument**

The logical and forensic conclusion is straightforward:

**If the system preserved the real origin IP for the Sperm Bank post, the same system should have preserved the real origin IP for the Kill Baby K post.**

The infrastructure is identical. Both posts went through Cloudflare. Both were logged by the same Holysmoke server. If one produced a recoverable `forwarded_for` IP, the origin logs for the other almost certainly contain the same category of data.

The absence of that data in the current record is not proof that it does not exist. It is proof that it has not been sought.

This creates a direct evidentiary problem for the Government's theory:

```
Sperm Bank post:
Cloudflare proxy → real IP recovered → subscriber identified → attribution
possible

Kill Baby K post:
Cloudflare proxy → real IP NOT recovered → subscriber NOT identified →
attribution impossible
```

The Government cannot use the Sperm Bank attribution to bootstrap attribution of the Kill Baby K post when it has not applied the same forensic methodology to the March 6 entry. Attribution was completed for one post and left incomplete for the other. That asymmetry is not a neutral evidentiary circumstance — it is a gap in the Government's proof that goes directly to the central factual dispute.

---

**What the Incomplete Discovery Record Actually Shows**

The Government has demonstrated, through the Sperm Bank attribution, that:

1. Holysmoke's server infrastructure preserves real origin IP data behind the Cloudflare proxy
2. That data is recoverable through proper subpoena and forensic analysis

3. When recovered, it produces a real, traceable subscriber IP

It has not applied that methodology to the March 6, 2019 post.

Until it does — or until Ms. Wang is permitted to obtain that data through her own subpoena — the attribution of the Kill Baby K post rests on nothing more than:

- A fabricated, non-existent email address (`kailin@wang.com`)

- An unverified, self-reported username

- A Cloudflare proxy IP that identifies a server, not a person

- The fact that Ms. Wang posted about the Petitioner on Holysmoke on other occasions

None of those elements, individually or in combination, constitutes reliable forensic attribution of this specific post to Ms. Wang.

**Source:** Business Records Affidavit (Sperm Bank post forwarded_for analysis); Holysmoke Business Records, Exhibit A; IP connection summary analysis

---

## PART III — OBSERVATIONS FOR THE COURT

The integrated record gives rise to the following factual observations, each supported by specific documents:

**1. The State of Utah Itself Reversed Its Own Finding — The Kill Baby K Post Was Not Attributable to Ms. Wang** This is the most significant single fact in the post-March 6 record. Utah DCFS — the agency that removed a three-month-old infant from his mother's home based on the Holysmoke post — conducted an internal review and on November 6, 2019, filed a motion to change its own finding from "Supported" to **"Unsupported."** ALJ Eric M. Stott issued a Final Decision and Order vacating the hearing. On November 14, 2019, Jaimie Graham of the Western Region confirmed in writing that the finding was being changed to unsupported in the Management Information System. The initial finding rested entirely on the Brenzinger/Chase 911 call and the Holysmoke server log. Once the forensic record was developed and confirmed the IP address was a Cloudflare proxy with no attributable link to Ms. Wang, DCFS reversed. This reversal is direct institutional confirmation — from the State of Utah — that the post was not reliably traceable to Ms. Wang.

**2. The Submission Contains No Verified Identifying Information of Any Kind** The username "Kailin Wang" is self-reported and unverified. The email address `kailin@wang.com` is fabricated — it is not a real, existing address, does not belong to Ms. Wang, and `wang.com` is a commercial domain with no connection to her. Holysmoke.org performed no email verification before publishing the post. Any person with knowledge of Ms. Wang's name could have submitted this entry.

**3. The Post Was Submitted at 3:17 a.m. PST** More than five hours before the SF courthouse opened and nine hours before the Petitioner claims to have been notified. The post

appeared — and apparently was monitored — long before the Petitioner's own sworn account acknowledges.

**4. The IP Logged by Holysmoke Cannot Identify the Poster** 108.162.219.228 is a Cloudflare proxy address. It records a server location — not a user. Academic research and industry forensic standards confirm that proxy-logged IPs do not support reliable attribution.

**5. No IP Match Exists Between Holysmoke Logs and Ms. Wang's Real Account Activity** A direct comparison of Holysmoke submission IPs against Google subscriber login records reveals zero matches. The real IPs associated with Ms. Wang's accounts are New York ISP addresses — entirely absent from the Holysmoke logs.

**6. Four Independent Data Sources Place Ms. Wang in New York** Her cell tower records, her Google login IPs, the IC3 filing IP, and her New York Domestic Incident Report all independently corroborate her presence in New York City on and around March 6, 2019.

**7. Every Law Enforcement Contact Was Initiated by Petitioner's Team** The Utah 911 call, the SFPD contacts, and the Utah DCFS referral were all initiated by Petitioner, his mother, and his attorney. Ms. Wang made no law enforcement contact until **7:00 p.m. the following day**, after her child had already been removed.

**8. The Operational Detail Available to Petitioner's Team Was Extensive and Pre-Organized** Vehicle license plates, cell numbers, and infant car seat location provided to 911 at 1:12 p.m. PST — less than 46 minutes after the claimed 12:26 p.m. PST notification — suggests this information was compiled in advance of, rather than in response to, discovery of the post.

**9. The March 6 Court Orders Were Made Without Findings or Evidence from Both Sides** As Judge Darwin himself confirmed in the June 25, 2019 transcript, the March 6 custody and restraining orders were entered ex parte, on evidence from one side only, expressly without evidentiary findings.

**10. The True Poster Can Be Identified — But That Discovery Has Never Been Sought for the March 6 Post** Attorney Aaron Minc confirmed in July 2019 that forensic experts can access Holysmoke's server-side traffic data to recover the real originating IP behind Cloudflare — and that beware.org (Holysmoke's owner) has previously complied with subpoenas. Ms. Wang raised this with Petitioner's counsel Darrick Chase in July 2019. Chase did not pursue it. Petitioner has since refused to contribute to the cost of this discovery.

**11. The Government Has Proved Attribution Is Possible — But Has Not Applied That Method to the Disputed Post** The Sperm Bank post (Feb 8, 2019), which Ms. Wang does not deny, was successfully attributed through recovery of the real `forwarded_for` origin IP from server-side logs. That same Holysmoke infrastructure handled the March 6 post. No equivalent forensic process has been applied to the March 6 entry. The Government cannot rely on the Sperm Bank attribution to establish authorship of the Kill Baby K post when it has left the March 6 attribution forensically incomplete using the same methodology it successfully applied elsewhere.

**12. The Presence of the Sperm Bank Post on Holysmoke Does Not Establish That Ms. Wang Submitted It There** The Government's foundational premise — that because Ms.

Wang posted on Bad Biz and the same post appeared on Holysmoke, she is therefore a volitional Holysmoke poster — is factually unsupported. A New York Times investigative report (*"The Slander Industry,"* Kashmir Hill, April 24, 2021) documented through direct experiment that posts on complaint and cheater sites in this ecosystem **clone themselves automatically** across multiple platforms without any action by the original poster. Ms. Wang posting on Bad Biz does not establish that she manually submitted anything to Holysmoke. The cloning of the Sperm Bank post to Holysmoke may have occurred entirely without her involvement, and the Government has presented no evidence to the contrary.

---

# PART IV — REQUEST FOR DISCOVERY: SUBPOENA TO HOLYSMOKE / BEWARE.ORG

## Basis for Request

The identity of the individual who submitted the March 6, 2019 post to Holysmoke.org is the central factual dispute in this matter. The Petitioner has relied on that post as the primary evidentiary basis for obtaining emergency custody, triggering law enforcement contacts across two states, initiating Utah DCFS involvement, and justifying the physical removal of the minor child on March 7, 2019.

**The Government's own evidence establishes that this discovery is both necessary and feasible.**

The February 8, 2019 "Sperm Bank" post on Holysmoke — which Ms. Wang does not deny making — was successfully attributed through recovery of the real origin IP from server-side logs. Specifically, the business records affidavit documents that the server preserved a `forwarded_for` header containing the real client IP address **2601:681:400:8b05:10ed:bdb8:ce1:c6f5**, a Comcast subscriber address, behind the Cloudflare proxy IP 172.69.42.61. That data was then matched to Ms. Wang's known network activity.

That attribution process — proxy → real IP → ISP subscriber — has already been completed for the Sperm Bank post using the same Holysmoke server infrastructure.

**It has not been completed for the March 6, 2019 Kill Baby K post.**

The only IP in the record for the March 6 entry is **108.162.219.228**, a Cloudflare proxy address. No subpoena has been served on Holysmoke / beware.org for the origin server logs, `CF-Connecting-IP` data, or `X-Forwarded-For` headers associated with that specific submission. No forensic expert has examined the server-side traffic data for the March 6 entry.

The Government cannot permissibly use the completed Sperm Bank attribution to establish authorship of the Kill Baby K post while leaving the March 6 attribution forensically incomplete. If the system preserved origin IP data for the February 8 post —

which the record confirms it did — the same system operated on March 6, and the same category of data should exist.

Additionally, attorney Aaron Minc — a nationally recognized internet defamation attorney with direct experience subpoenaing Cloudflare-protected complaint websites — has confirmed both that forensic server-side analysis can recover true origin IPs on sites like Holysmoke, and that beware.org (Holysmoke's owner) has previously responded to subpoenas.

---

## PART IV — REQUEST FOR DISCOVERY AND EXPERT AUTHORIZATION

### United States v. Kailin Wang, Case No. 2:24-cr-00163-TS

### U.S. District Court, District of Utah — Judge Ted Stewart

---

> **Party identification in the criminal case: Defendant:** Kailin Wang **Complaining Witness / V1:** ██████ ██████ (CT) **Prosecutor:** AUSA Joey Blanch, District of Utah
> The Kill Baby K post is the foundational allegation underlying this criminal prosecution. CT is the complaining witness whose representations to law enforcement, to the San Francisco Superior Court, and to Utah DCFS on March 6, 2019 set the events in motion that led to this federal case.

---

### A. The Government's New IP Evidence Requires Expert Analysis

On **April 30, 2026**, AUSA Joey Blanch transmitted via Gmail an **IP Connection Summary** purporting to establish an inculpatory link between the Defendant and the alleged conduct at issue. On **April 21, 2026**, the Government produced additional computer-related discovery, the full technical scope of which has not yet been fully examined.

The IP connection evidence and associated metadata are inherently technical and cannot be adequately assessed, challenged, or rebutted without the assistance of a qualified computer forensics expert. The Government's IP connection summary — produced nearly three weeks after AUSA Blanch represented on April 6, 2026 that all discovery had been produced — contains the IP address **2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d**, a Charter Communications (Spectrum) subscriber address geolocating to the New York metropolitan area, which also appears in the Google subscriber records for lancewr12@gmail.com across March 6–15, 2019 and is consistent with Ms. Wang's T-Mobile cell tower records placing her phone at 65 West 70th Street, New York throughout March 6, 2019.

| Task | Purpose |
|------|---------|
| Review integrity and chain of custody of IP log data | Determine whether the Government's summary accurately and completely represents the underlying records |
| Analyze the April 30, 2026 IP Connection Summary | Identify what the summary shows, what it omits, and whether its attribution methodology is reliable |
| Examine the Cloudflare proxy architecture | Confirm that 108.162.219.228 is a Cloudflare infrastructure IP and cannot identify any individual |
| Compare Holysmoke IPs against subscriber records | Perform direct technical comparison of Holysmoke submission IPs against Google subscriber login data and cell tower records |
| Analyze the Sperm Bank / Kill Baby K attribution disparity | Determine why origin IP was recovered for the Feb. 8 post but not the March 6 post, and whether that data exists in the server record |
| Assess IC3 IP evidence | Analyze whether the IC3 IP (2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d) is consistent with New York location and Ms. Wang's documented activity |
| Prepare written report and demonstrative materials | For use at pretrial hearings, Daubert challenges, and trial |
| Provide expert testimony | At any evidentiary hearings and at trial |

## D. Legal Authority

Under **18 U.S.C. § 3006A(e)(1)**, counsel for a person financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request that the Court authorize such services at government expense. The Court shall authorize such services upon a finding that they are "necessary for an adequate defense."

*Ake v. Oklahoma*, 470 U.S. 68 (1985), establishes that due process requires expert assistance where it is likely to be "a significant factor" in the defense. In cases involving complex digital and computer evidence, courts have consistently recognized the necessity of defense forensic experts. *See, e.g., United States v. Garey*, 540 F.3d 1253 (11th Cir. 2008).

The Government's case rests substantially on IP attribution evidence. That evidence is technically complex, has been produced in summary form without the underlying records, and involves Cloudflare proxy architecture that the Government itself has demonstrated

can be analyzed to recover true origin IPs — but has not analyzed for the specific post at issue. Expert assistance is not merely helpful here; it is constitutionally necessary.

---

### E. Proposed Subpoena — Holysmoke / Beware.org / Cloudflare

In addition to expert analysis of the Government's existing disclosures, Defendant requests that the Court authorize a subpoena to the following entities for server-side records that would resolve the attribution question the Government has left unanswered:

**Target entities:** Beware.org / Holysmoke.org; Cloudflare, Inc.

| Category | Specific Records Requested |
| --- | --- |
| Origin IP logs | True client IP (`CF-Connecting-IP` / `X-Forwarded-For`) for submission at 11:17 UTC, March 6, 2019 |
| Server traffic logs | Raw server access logs for Holysmoke.org, March 5-7, 2019 |
| Cloudflare origin logs | Request headers and origin IP data preserved by Cloudflare for the March 6, 2019 entry |
| Session/cookie data | Any session token, browser fingerprint, or cookie associated with the submission |
| Email records | Any record associated with kailin@wang.com in connection with that submission |
| Prior subpoena compliance records | Any prior responses to legal process concerning the Holysmoke entries at issue |

Beware.org has previously responded to subpoenas in other litigation (confirmed by Aaron Minc, Esq.). The same methodology that produced a real origin IP for the February 8, 2019 Sperm Bank post should be applied to the March 6, 2019 post — the only post Defendant specifically denies.

---

### F. Summary of Requested Relief

Defendant Kailin Wang respectfully requests that this Court:

1. **Authorize retention of** ████████ ████████████████████, as a CJA-funded computer forensics expert pursuant to 18 U.S.C. § 3006A(e), at the CJA-approved rate, to perform the forensic analysis described above;

2. **Issue or authorize a subpoena** directed to Beware.org / Holysmoke.org and Cloudflare, Inc. for the origin server records of the March 6, 2019 Holysmoke submission at 11:17 UTC; and

3.  **Order supplemental production** from the Government of the underlying data, logs, and source records from which the April 30, 2026 IP Connection Summary was derived, to allow the defense expert to perform an independent and complete forensic analysis.

---

*This exhibit is prepared from documents in the record of United States v. Kailin Wang, Case No. 2:24-cr-00163-TS (D. Utah), and related proceedings including FDV-19-814465 (San Francisco Superior Court) and associated Utah proceedings. All timestamps are drawn from official agency records. Sources are cited throughout. This exhibit does not constitute argument of counsel and is submitted for the Court's factual and legal consideration.*

---

---

# PART V — SENTENCING CONTEXT: WHY THE KILL BABY K POST CANNOT SUPPORT A FATICO FINDING EVEN BY PREPONDERANCE

---

## A. What the Government Is Attempting

The Government is not proceeding to trial on the Kill Baby K post. Instead, AUSA Blanch is seeking to have Judge Stewart make a **finding of fact at sentencing** — under the **preponderance of the evidence standard** — that Ms. Wang authored the March 6, 2019 post. If the Court makes that finding, it can be used to dramatically enhance Ms. Wang's sentence for conduct that:

- Was never charged as an element of the offense
- Was never presented to a jury
- Was never subject to proof beyond a reasonable doubt
- Has been denied by Ms. Wang from the outset

This is the **Fatico procedure**, recognized under *United States v. Fatico,* 603 F.2d 1053 (2d Cir. 1979), and its progeny. Federal courts may make sentencing findings based on relevant conduct, including uncharged conduct, by a preponderance of the evidence. *United States v. Booker,* 543 U.S. 220 (2005); U.S.S.G. § 1B1.3.

**However, even the preponderance standard requires reliable evidence.** *United States v. Townley,* 929 F.2d 365, 369 (8th Cir. 1991) ("[I]nformation used to support a sentencing enhancement must have 'sufficient indicia of reliability to support its probable accuracy.'"). *See also* U.S.S.G. § 6A1.3(a) ("The court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

The evidence the Government is offering — a Cloudflare proxy IP, a fabricated email address, and an unverified username — does not meet that standard.

## B. Preponderance Does Not Save Unreliable Attribution Evidence

The preponderance standard asks: **is it more likely than not that Ms. Wang made this post?**

The answer requires reliable evidence. What the Government has is:

| Evidence Element | Reliability Assessment |
|---|---|
| Username: "Kailin Wang" | Self-reported, unverified, typed by an unknown person |
| Email: kailin@wang.com | Fabricated — domain not owned by Ms. Wang, address does not exist |
| IP: 108.162.219.228 | **Cloudflare proxy IP** — identifies a server, not a person |
| No real origin IP recovered | Attribution chain is broken and incomplete |
| No device evidence | No device seized or examined |
| No account login evidence | No authenticated account linked to submission |

None of these elements, individually or in combination, establishes by a preponderance that Ms. Wang submitted this post. An unverified name, a non-existent email, and a shared proxy server IP are not reliable indicia of authorship. They are the same fields any person could have typed in any browser from anywhere in the world.

---

## C. The Government's Own Evidence Proves Attribution Is Incomplete

This is the dispositive point for the Fatico hearing.

The Government has demonstrated — through the Sperm Bank attribution — that Holysmoke's server infrastructure **does** preserve real origin IPs behind Cloudflare. For the February 8, 2019 Sperm Bank post, the server log captured:

```
forwarded_for (real client IP): 2601:681:400:8b05:10ed:bdb8:ce1:c6f5
remote-addr (proxy):            172.69.42.61
```

That real IP was then matched to Ms. Wang's Google subscriber account, providing a traceable attribution chain.

**That same methodology has never been applied to the March 6, 2019 Kill Baby K post.**

The Government cannot argue at sentencing that attribution by Cloudflare proxy IP is reliable enough to meet preponderance when it has already demonstrated that Cloudflare proxy IPs alone are insufficient — and that real attribution requires the `forwarded_for` origin IP from the server logs. Having proved the better method works, it cannot now rely on the inferior method for the post that matters most.

In plain terms:

> If the Government recovered the real IP for the post Ms. Wang **admits** making, it must recover the real IP for the post Ms. Wang **denies** making before asking this Court to find by preponderance that she made it.

The absence of that data is not neutral. It is a gap in the Government's proof that, under *Fatico* reliability principles, prevents the Court from making the finding the Government seeks.

---

## D. Affirmative Evidence Contradicts Attribution

The preponderance question is not only whether the Government's evidence is sufficient — it is whether, **on the whole record**, it is more likely than not that Ms. Wang made the post.

On that question, the affirmative evidence in the record cuts against attribution:

| Evidence | What It Shows |
|---|---|
| T-Mobile cell tower records | Ms. Wang's phone pinging 65 W 70th St, New York throughout March 6, 2019 |
| Google subscriber login IPs | Real New York ISP (Charter) logins on March 6, 2019 — none matching Holysmoke IPs |
| IC3 IP address | Same New York Charter IP (2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d) — consistent with New York location |
| Post time: 3:17 a.m. PST | Submitted at 3:17 a.m. Pacific — 6:17 a.m. New York — while phone was active in New York |
| Email: kailin@wang.com | Non-existent address — not consistent with how Ms. Wang identified herself on posts she admits making |
| DCFS reversal (Nov. 2019) | State of Utah concluded post was not attributable to Ms. Wang after internal review |

Three independent data sources — cell tower records, Google login IPs, and the IC3 IP — all place Ms. Wang in New York on March 6, 2019. The post was submitted through a Cloudflare server in Newark, New Jersey, at 3:17 a.m. Pacific time. The Government has no evidence placing Ms. Wang near a device that submitted the post, no device forensics, no account authentication, and no real origin IP.

On a preponderance analysis, the weight of the reliable evidence does not support a finding that Ms. Wang authored the March 6 post.

## E. The DCFS Reversal Is Directly Relevant to Fatico Reliability

At a Fatico hearing, the Court may consider all reliable evidence. The Utah DCFS reversal is highly relevant.

Utah DCFS — a State agency with its own investigators, legal team, and institutional resources — conducted an internal review of the same evidence the Government is now presenting and concluded it could not sustain the finding. On November 6, 2019, DCFS filed a motion to change its finding from "Supported" to **"Unsupported."** ALJ Eric M. Stott issued a Final Decision and Order. Jaimie Graham confirmed the reversal in writing on November 14, 2019.

The initial DCFS "Supported" finding rested on exactly the same evidence base the Government is now offering at sentencing: the Holysmoke post and the Brenzinger/Chase 911 call. After the forensic record was developed, DCFS concluded those sources were insufficient to sustain attribution.

A government agency that reviewed this evidence and reversed its own finding is a reliable indicator that the evidence does not meet even preponderance. The Court should give that institutional conclusion appropriate weight.

---

## F. Ms. Wang's Right to Contest Fatico Findings

Ms. Wang has a due process right to contest sentencing enhancements based on uncharged relevant conduct. *United States v. Petersen*, 98 F.3d 502, 514 (9th Cir. 1996). That right includes:

- The right to present contrary evidence
- The right to cross-examine adverse witnesses
- The right to expert assistance where the evidence is technical in nature

The IP attribution evidence the Government is offering is inherently technical. It involves Cloudflare proxy architecture, server-side header logging, ISP subscriber attribution, and comparative IP analysis. Ms. Wang cannot meaningfully contest that evidence — or demonstrate its inadequacy — without the expert assistance of a qualified computer forensics examiner.

This is why the authorization of ██████████████████████) under 18 U.S.C. § 3006A(e) is not merely helpful — it is constitutionally necessary to ensure that the Fatico hearing is a meaningful proceeding rather than a one-sided technical presentation the Defendant cannot effectively challenge.

---

## G. Summary: Why the Kill Baby K Post Cannot Support a Fatico Finding

| Required showing | Government's current evidence | Assessment |
|---|---|---|
| Reliable evidence of | Cloudflare proxy IP, fabricated email, | **Insufficient** — no |

| Required showing | Government's current evidence | Assessment |
|---|---|---|
| authorship | unverified username | authenticated identifying information |
| Attribution methodology applied equally to this post | Sperm Bank real IP recovered; Kill Baby K real IP never sought | **Incomplete** — same method not applied |
| Evidence more likely than not points to Wang | Three data sources place Wang in New York; DCFS reversed; no device evidence | **Contradicted** by affirmative record |
| Reliability sufficient for § 6A1.3(a) | Government has not produced underlying logs or origin IP | **Cannot be assessed** without discovery |
| Foundational premise: Wang posted on Holysmoke | Sperm Bank post may have been auto-cloned from Bad Biz per NYT investigation | **Premise unproven** — cloning documented by New York Times |

The Court cannot make a reliable Fatico finding on this record. Before any such finding can be made, the origin server logs for the March 6 post must be obtained, the expert must have the opportunity to analyze them, and Ms. Wang must have the meaningful opportunity to contest the Government's attribution theory with the assistance of a qualified forensic expert.

## H. The Auto-Cloning Problem Destroys the Government's Foundational Logic

The Government's Fatico theory has the following logical structure:

```
Step 1: Wang posted Sperm Bank post on Bad Biz        [Admitted]
Step 2: Sperm Bank post appeared on Holysmoke         [True]
Step 3: Therefore Wang posted on Holysmoke            [UNPROVEN]
Step 4: Therefore Wang also posted Kill Baby K on Holysmoke [DOES NOT FOLLOW]
```

Step 3 is the critical inference — and it is directly contradicted by documented, peer-investigated fact.

A New York Times investigation (*"The Slander Industry,"* Kashmir Hill, April 24, 2021) conducted a controlled experiment on this exact category of websites. The reporter wrote a post about herself on one complaint site and observed that it automatically appeared across multiple other sites in the ecosystem. The article's conclusion:

> **"These posts clone themselves."**

This is not a theoretical possibility. It is a documented, journalistically verified behavior of the specific type of website at issue — complaint sites and reputation-destruction platforms, of which Holysmoke is one.

Without Step 3, Step 4 does not follow. And without Step 4, the Government's entire Fatico theory collapses.

**The practical consequence for sentencing:** The Government cannot ask this Court to find by preponderance that Ms. Wang authored the Kill Baby K post on Holysmoke when it cannot establish by any evidence — let alone preponderance — that Ms. Wang ever manually submitted anything to Holysmoke in the first place. The Sperm Bank post's presence on Holysmoke is equally or more consistent with automatic cloning than with a deliberate submission, and the Government bears the burden at sentencing of establishing its factual assertions by reliable evidence.

**Source:** Kashmir Hill, *"The Slander Industry,"* New York Times, April 24, 2021, https://www.nytimes.com/interactive/2021/04/24/technology/online-slander-websites.html

---

*This exhibit is prepared from documents in the record of United States v. Kailin Wang, Case No. 2:24-cr-00163-TS (D. Utah), and related proceedings. All timestamps are drawn from official agency records. This exhibit does not constitute argument of counsel and is submitted for the Court's factual and legal consideration.*

AFFIDAVIT OF CUSTODIAN OF BUSINESS RECORDS

I, the undersigned, declare:

1.    I am the duly authorized custodian of records of HolySmoke.org. The date/timestamp information and IP addresses provided in Exhibit A hereto are true and correct copies of Holysmoke's business records (namely, web server log files) that were made and kept by the automated systems of Holysmoke in the course of regularly conducted business activity as a regular practice of Holysmoke. The records were made at or near the time the posts, images and comments in Exhibits B and C hereto were posted to the Holysmoke.org website, and the records were at all times maintained by employees with a duty to keep accurate records as part of their employment.

2.    The website capture attached hereto as <u>Exhibit B</u> is a fair and accurate representation of the "C███████ T██████ Sperm Bank" post, images and comments that appeared on the Holysmoke website at the date of capture. The corresponding data provided in Exhibit A is Holysmoke's business records related to each post, image and comment in Exhibit B.

3.    The website capture attached hereto as <u>Exhibit C</u> is a fair and accurate representation of the "C██████ T█████ Impregnated Me And Abandoned His Son" post, image, and comments that appeared on the Hoysmoke website at the date of capture. The corresponding data provided in Exhibit A is Holysmoke's business records related to each post, image and comment in Exhibit C.

I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.

Date:  _____

_____
                 (signature)

Print Name:   _____

Address:   _____

Email:   _____

AFFIDAVIT OF CUSTODIAN OF BUSINESS RECORDS

I, the undersigned, declare:

1.      I am the duly authorized custodian of records of HolySmoke.org. Attached hereto are Holysmoke's business records (namely, comments submitted to Holysmoke.org, with accompanying time/date stamps and IP address information). These records were made and kept by the automated systems of Holysmoke in the course of regularly conducted business activity as a regular practice of Holysmoke. The records were made at or near the time the comments were submitted to the Holysmoke.org website, and the records were at all times maintained by employees with a duty to keep accurate records as part of their employment.

2.      The business records attached hereto as Exhibit 1 are comments that were submitted to the February 8, 2019 "C████████████ Sperm Bank" post referenced in my November 8, 2020 declaration, Paragraph 2.

3.      The business records attached hereto as Exhibit 2 are comments that were submitted to the February 12, 2019 "C████████████ Impregnated Me And Abandoned His Son" post referenced in my November 8, 2020 declaration, Paragraph 3.

I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.

Date: 12th Dec, 2020

_____
(signature)

Print Name: Nicholas Pope

Address: 2254 Archwood Avenue, Rock Springs, Wyoming (USA) - 82901

Email: info@holysmoke.org

**EXHIBIT A - Holysmoke.com Business Records**

Business records re: Exhibit B, the "█████████ ████ Sperm Bank" post on Feb. 8, 2019, and associated comments/images

| | Date and time (UTC) submitted | IP address of submitter | Comment |
|---|---|---|---|
| The "█████ ██████ Sperm Bank" complaint posted on February 8, 2019 previously viewable at: https://www.holysmoke.org/scam/█████-█-███████; and https://www.holysmoke.org/bad-business/█████-█-███████ \| user name: Hhtuuu \| Email address: gdtkk@grr.la | Feb 8, 2019 at 20:41pm (UTC) | 108.162.250.43 | |
| Image #1 (a screenshot of █████ ████s LinkedIn page cropped to include his profile photo, and some of his LinkedIn Headline information like, "Data Scientist at Square" and "Carnegie Mellon University") | Feb 8, 2019 at 20:41pm (UTC) | 108.162.250.43 | Posted as part of the submission |
| Image #2 (a screenshot of text writing – with the Medium.com clap icon at the bottom – that begins, "He then NEVER texted about the birth of his son and blocked me from all outlets….") | Feb 8, 2019 at 20:41pm (UTC) | 108.162.250.43 | Posted as part of the submission |
| Comment: 2/9/19 \| Tinder Girl \| Gfdy@grr.la | Feb 9, 2019 at 19:23 UTC | 172.69.42.48 | |
| Comment: 2/9/19 \| Wally \| Wally@grr.la | Feb 9, 2019 at 18:25 UTC | 172.69.42.84 | |
| Comment: 2/10/19 \| homeless \| gans345@gmail.com | Feb 10, 2019 at 19:00 UTC | 172.69.42.84 | |
| Comment: 2/10/19 \| Homeless \| gfgde@gmail.com | Feb 10, 2019 at 18:58 UTC | 172.69.42.84 | |
| Comment: 2/12/19 \| █████ ████ Abandoned Son \| Gffg@grr.la | Feb 12, 2019 at 03:11 UTC | 172.69.42.84 | |
| Comment: 2/12/19 \| █████ T█ Son \| Ghkk@grr.la | Feb 12, 2019 at 03:12 UTC | 172.69.42.84 | |
| Comment: 2/17/19 \| Utah Court \| gg@gmail.com | Feb 17, 2019 at 18:24 UTC | 162.158.78.24 | |
| Comment: 2/17/19 \| nope \| nope@nope.com | Feb 17, 2019 at 00:58 UTC | 172.69.42.84 | |
| Comment: 2/27/19 \| yrt \| gyldtd@grr.la | Feb 27, 2019 at 01:30 UTC | 173.245.52.171 | |
| Comment: 2/28/19 \| GG \| Gg@gg.com | Feb 28, 2019 at 14:06 UTC | 108.162.219.54 | |
| Comment: 3/1/19 \| W███ S███ Alabama In San Francisco \| Bbb@grr.la | Mar 1, 2019 at 06:22 UTC | 108.162.219.114 | |
| Comment: 3/1/19 \| Thailand \| Yyut@grr.la | Mar 1, 2019 at 16:27 UTC | 108.162.219.84 | |
| Comment: 3/3/19 \| Infant \| gg@grr.la | Mar 3, 2019 at 05:52 UTC | 108.162.219.114 | |
| Comment: 3/3/19 \| 40 yr. Old Preggers \| gggg@grr.la | Mar 3, 2019 at 06:05 UTC | 162.158.63.30 | |
| Comment: 3/6/19 \| Kailin Wang \|█████@wang.com | Mar 6, 2019 at 11:17 UTC | 108.162.219.228 | |
| Comment: 3/6/19 \| W███ S███ \| W█████@gmail.com | Mar 6, 2019 at 16:02 UTC | 108.162.219.66 | |
| Comment: 3/7/19 \| █████ Abused Baby by father \| Fuckoff@grr.la | Mar 7, 2019 at 00:02 UTC | 108.162.219.180 | |
| Comment: 3/7/19 \| █████ ████ Abandoned Child \| gttr@grr.la | Mar 7, 2019 at 20:32 UTC | 108.162.219.180 | |
| Comment: 3/7/19 \| Judge \| Hgfy@grr.la | Mar 7, 2019 at 02:49 UTC | 162.158.63.42 | |
| Comment: 5/16/19 \| Kailin Wang \| voplan310@gmail.com | May 16, 2019 at 15:29 UTC | 96.89.228.233 | |

Business records re: Exhibit C, the "█████████ █████ Impregnated Me And Abandoned His Son" post on Feb. 12, 2019, and associated comments/imag

| | Date and time (UTC) submitted | IP address of submitter | Comment |
|---|---|---|---|
| The "█████ █████ Impregnated Me And Abandoned His Son" complaint posted on February 12, 2019 previously viewable at: https://www.holysmoke.org/scam/█████████-legal and https://www.holysmoke.org/scam/█████████ \| user name: pigket \| email address: giyrir@grr.la | Feb 12, 2019 at 12:57pm (UTC) | 108.162.249.192 | |
| Image #1 (a screenshot of █████ ████s LinkedIn profile photo that is zoomed in on just his face; no Headline information) | Feb 12, 2019 at 12:57pm (UTC) | 108.162.249.192 | Posted as part of the submission |
| Comment: 2/15/19 \| Kelly \| Kelly@kell.com | Feb 15, 2019 at 06:05am (UTC) | 172.68.47.104 | |
| Comment: 2/16/19 \| W███ S███ \| Ggg@grr.la | Feb 16, 2019 at 06:05am (UTC) | 172.69.42.48 | |
| Comment: 2/18/19 \| San Francisco Police Department \| Hhh@grr.la | Feb 18, 2019 at 03:11am (UTC) | 162.158.78.24 | |
| Comment: 2/18/19 \| W███ S███ \| Hjjhf@grr.la | Feb 18, 2019 at 03:56am (UTC) | 162.158.79.253 | |
| Comment: 2/18/19 \| Jj \| Jj@jj.com | Feb 18, 2019 at 04:31am (UTC) | 172.68.34.108 | |
| Comment: 2/27/19 \| STOP IT \| wht91123@lycos.com | Feb 27, 2019 at 16:27pm (UTC) | 172.69.22.10 | |
| Comment: 3/3/19 \| Sex worker \| Ggh@grr.la | Mar 03, 2019 at 22:02pm (UTC) | 108.162.219.114 | |
| Comment: 3/7/19 \| infear \| ggg@grr.la | Mar 07, 2019 at [time not recorded] | 162.158.63.102 | Comment was flagged as spam and time was not recorded |
| Comment: 3/7/19 \| Baby \| Hgff@grr.la | Mar 07, 2019 at 16:12pm (UTC) | 108.162.219.228 | |
| Comment: 5/16/19 \| Kailin Wang \|antonettevanfossan4620@gmail.com | May 16, 2019 at 02:45am (UTC) | 103.217.123.93 | |

FDV-19-814465

████████ STANFORD████████ VS. KAILIN WANG

## MINI MINUTES FOR MAR-06-2019 08:30 AM FO

(404) 3/6/2019

Judge: Richard Darwin                    Clerk: Sadie Li
Reporter: Vicki Gross #5525              Bailiff: Deputy Anasse

Petitioner present with Darrick Chase and Erica Jahnstone. Respondent not served and not present. Petitioner's oral motion to substitute service via email or via Respondent's parents' home address - DENIED. Personal service is required for restraining order requests.

Petitioner's request to continue hearing and modify temporary restraining order - granted. Petitioner granted temporary sole legal and physical custody of minor child, ████ ████ Wang (DOB ████ 18). The mother shall receive no visitations till further orders of the Court.

Court signed Amended DV-110 Temporary Restraining Order and DV-116 Order on Request to Continue Hearing. File endorsed copies provided to counsel.

Matter continued to 4/10/19 at 8:30am in Dept. 404 for Domestic Violence Restraining Order Hearing. Court finds good cause to continue matter beyond 21 days.

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

UNIFIED FAMILY LAW COURT

DEPARTMENT 404

---oOo---

HONORABLE RICHARD C. DARWIN, JUDGE

_____

IN RE THE MATTER OF                )
                                   )
███████         STANFORD           )
                                   )
              PETITIONER,          )    CASE NO. FDV-19-814465
                                   )
VS.                                )
                                   )
              KAILIN WANG,         )
                RESPONDENT.        )
_____

---oOo---

REPORTER'S TRANSCRIPT
OF
PROCEEDINGS

WEDNESDAY, MARCH 6, 2019

---oOo---

A P P E A R A N C E S:
  FOR THE PETITIONER:        KAYE•MOSER•HIERBAUM•FORD LLP
                             BY:  DARRICK T. CHASE
                             101 California Street, Suite 2300
                             San Francisco, CA, 94111

                             RIDDER, COSTA & JOHNSTONE
                             BY:  ERICA T. JOHNSTONE
                             12 Geary St., Suite 70
                             San Francisco, CA, 94108

REPORTED BY: VICKI GROSS, CSR
        CERTIFICATE NO. 5525

Medium.com, the Lance etc.  So these are clearly her.  Plus when you look at all the incredibly personal and private information that are included in these repetitive posts, this is no doubt from her.  And again our evidence is preponderance, not no doubt.

But our concern is, and just going to page 2 of our March 4th declaration, just a small sample of what's been posted on Instagram, 2/15, "████████  ████████  impregnated me and forced me to kill his 21-week-old child."  That's Exhibit B-1.

Exhibit C-1, "████████  ████████ data scientist at Square Inc. forced 21-plus week abortion on me."  That post includes a photo of a dismembered 20-plus-old week aborted fetus with the caption, "████████  ████████ coerced me into a 20-plus-week abortion."

These go on and on, Your Honor, these repetitive posts. Initially she said that he had forced her to kill her 18-week-old baby, then became a 21-week-old baby, then 24 weeks.

The baby was born.  I have a birth certificate that establishes that her residence -- that A, the baby was born, and I have the original that I brought today and I gave Your Honor a copy.

So we are extraordinarily concerned that she is mentally ill.  She does have, it's in our initial papers, she does have a history of mental illness.  There is a conviction in New York City, we have attached the papers in our pleadings, where she was required to go to stalking therapy or some similar therapy.

We also attached as part of our papers a declaration from a Rory Will, that he told of extensive social harassing, creating evidence, having people pretending to be him, impersonating him.

second.

There was also your request for an ex parte custody order.

MR. CHASE:  Temporary.

THE COURT:  Temporary custody order.

MR. CHASE:  And I can make a further offer of proof just to, as one would ask for if one were doing the initial application submitting, making an ex parte application to expand the temporary, we are going to ask that -- which I think there is going to be a subsequent hearing -- we are going to ask that the Court continue that.  And we have a proposed order for that, draft proposed order.

And then also we would ask the Court to, by looking at the papers that were filed on 2/15 and March 4th, and the exhibits that we submit were created and posted by Kailin Wang, in addition to her criminal history and the very real chance that this baby is in danger and is being taken care of by a mentally ill person, so the statutes we were going to ask the Court to make a temporary sole physical, sole legal custody order so that the baby can be safely cared for while we go forward.

THE COURT:  Okay.

MR. CHASE:  I can address the substitute service.

THE COURT:  Well, let me talk about that.  Here's the problem.  I don't -- jurisdiction over custody and visitation issues is governed by the UCCJEA, right?

MR. CHASE:  Um-hum, (indicating yes).

THE COURT:  I don't have emergency jurisdiction.  We have no evidence that the child is in the state, do we?  That would be my only jurisdictional basis for issuing that order, wouldn't it?

Granted other orders on page 3 is an order and an effecting order, which is that Ms. Kailin Wang and anyone -- I don't want to read the whole thing -- but Ms. Kailin Wang and anyone acting in concert or cooperation with her or who is in possession of the child ████████ Ms. Wang is ordered to immediately turn over the minor child ████████

THE COURT:  Where are you again?

MR. CHASE:  So it is page -- after all the forms are completed there is a DV-110, Section 23, there is four pages attached to that.  Page 3 of that, paragraph 1 is the specific order and effecting order, including using if necessary the District Attorney's Office in San Francisco to retrieve the child.

THE COURT:  Okay.  I am going to grant part of what you are asking for.  So I will reissue -- we are going to continue the hearing to allow you to serve the Respondent.  I will modify the temporary restraining order to provide Petitioner sole legal and physical custody of the child on the evidentiary basis that you have just provided to me here:  Number one, that he is the parent based on the genetic testing.  And number two, that this is the child's home state on the basis of both the birth certificate, statements by the Respondent in the birth certificate, and her initiating of a parentage action in Los Angeles that is currently pending, which would require her to assert and show that this is the home state.

So I will grant sole legal, temporary sole legal and physical custody in the amended restraining order.

I am not going to allow you to serve by email.  You are

going to have to track her down and serve her in person.  I don't believe that I have the authority to allow substituted service for a domestic violence restraining order type of petition.

MR. CHASE:  Okay.

THE COURT:  So particularly one that's going to specifically address custody and visitation.

MR. CHASE:  Understood.

THE COURT:  You have made me aware that there is a New York proceeding on I believe parentage.

MR. CHASE:  Yes.

THE COURT:  I don't have that in front of me I don't believe, and I have not been made aware of whether custody orders have been requested or issued in that case.  So at this point in time I don't, I am not aware of a proceeding that initiated addressing custody or visitation.  That may become a question or an issue, but at this point in time I don't believe I need to contact that court by virtue of the parentage action being initiated there alone.

So the restraining order is modified.  It does provide sole legal, physical custody in light of the evidence that's been presented in the request of the severe harassment that we have seen and that's demonstrated in the declaration.

What's our new date of service?

THE CLERK:  They didn't ask.

THE COURT:  All right.  Ms. Wang called the Court.  Were you aware of that?

MR. CHASE:  I was sitting here.

THE COURT:  Right.  And so that's not enough for me to say

I've got you, I've got jurisdiction.  But she clearly is aware that this is happening.

MR. CHASE:  Yes.

THE COURT:  Did she remain on the line, Sadie, did she ask to get a date that she could make it?

THE CLERK:  No.  She said she would call me back.

THE COURT:  Okay, all right.  So we are going to continue this date.  I am going to give you enough time to serve.

MR. CHASE:  Track her down.

THE COURT:  And you may well have to hire an investigator, I think this is probably where this is headed.  And that happens sometimes that you have to take that step.  But given that custody is at issue, restraining orders are at issue, service has to be personal service.

MR. CHASE:  Understood. That's perfectly fine.

THE COURT:  Okay.  So do you want to hand that up?  These are the proposed orders that you drafted?

MR. CHASE:  Yes.

THE COURT:  Okay.  So order on request for temporary restraining order, this is modified.

THE CLERK:  March 27th?

THE COURT:  Is that enough time?  Well, the Court finds good cause to extend it beyond the 21-day period in light of the difficulty and apparent evasion of service by Respondent.  So if you need more time than, where are we, if you need more time than three weeks you can have it.  It's up to you.  We do these Wednesdays of course.

MR. CHASE:  Can we do Wednesday, the 10th of April?

MR. CHASE:  They have all received harassing communications, yes.

Let me double-check one thing.

(Discussion off the record)

THE COURT:  I am going to -- part of the DV-140, which is the child custody and visitation order, says no visits for mom, and then there is a separate supervised visits for mom.

MR. CHASE:  We prefer no visits.  We just, I wanted to make sure that I covered everything on the forms.

THE COURT:  I am going to cross out supervised visitation because I think that's jumping the gun.

Now I am going to take off the extra section on these findings because this is being done on an ex parte basis.  So I am not making any findings at this point other than he's established, and the Court already did that, found that there was domestic abuse sufficient to issue a temporary restraining order.  I don't want to make it that we've done anything beyond that.  I haven't made any findings.  There's been no evidence, there has not been an evidentiary proceeding, so I don't want to imply that there has.

So it doesn't change what the relief I'm giving you.  I just want to make sure it's clear that I am not making those findings.

MR. CHASE:  Yes.

THE COURT:  And I will sign it.

MR. CHASE:  And is the effecting order on there as well? The granting of the orders, are these granted other orders part of this order?

THE COURT:  All I am taking off are the findings that you

DARRICK T. CHASE, ESQ. (CSB #151256)
KAYE●MOSER●HIERBAUM ●FORD LLP
101 California Street, Suite 2300
San Francisco, CA   94111
Telephone:   (415) 296-8868
Facsimile:   (415) 495-1771
Email:       dchase@kayemoser.com

Attorneys for Petitioner
█████████ STANFORD █████████

ENDORSED
F I L E D
*San Francisco County Superior Court*

APR 0 9 2019

CLERK OF THE COURT
By: _____ NESTOR PANELO
                         Deputy Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| █████████ STANFORD █████████<br><br>Petitioner,<br><br>v.<br><br>KAILIN WANG<br><br>Respondent. | Case No. FDV-19-814465<br><br>**DECLARATION OF ██████ STANFORD ████ IN SUPPORT OF THIS REQUEST FOR DOMESTIC VIOLENCE PROTECTIVE ORDERS AND CUSTODY ORDERS**<br><br>Date: April 10, 2019<br>Time: 8:30 a.m.<br>Dept: 404 |

I.      **Update and Executive Summary**

1. This April 9, 2019 Declaration ("Declaration") supplements my February 15, 2019 DV- 100 Request for Domestic Violence Restraining Order (Domestic Violence Protection) ("February 15, 2019 RDVRO"), and my March 4, 2019 Declaration of ████ Stanford ████ In Support of This Request for Domestic Violence Protective Orders and Custody Orders ("March 4, 2019 ████ Declaration"). In my March 4, 2019 declaration, I included an index of over 100 publications that are false, defamatory, impersonating, harassing, or disturbing (Exhibit Z) and an index of 77 known contacts Ms. Wang has made with people in my network and family (Exhibit A-1.)

1

6. I submit Ms. Wang had reviewed the February 15, 2019 Temporary Restraining Order (CLETS-TRO) (Domestic Violence Prevention) my attorney Mr. Chase had emailed to Kailin Wang's Utah criminal defense lawyer Ed Brass on February 20, 2010, and had done so at the very latest by the March 6, 2019 hearing. See March 4, 2019 █████ Declaration, Exhibit L-1.

7. Kailin Wang secured legal counsel in Utah. She was represented in court proceedings in Utah by legal counsel that commenced on March 12, 2019.

8. Kailin Wang was deemed personally served with this Court's March 6, 2019 DVTRO on March 18, 2019 at 3:43 p.m. by Judge Darold McDade in a UCCJEA hearing in Provo Utah. See, Exhibit V-1. Exhibit letters are continued from my March 4, 2019 █████ Declaration.

9. Kailin Wang was personally served with all 2/15/2019, 3/4/2019 and 3/6/2019 pleadings and orders at 4:18 p.m. in Spanish Fork Utah. Proof of Service is on file.

10. Continuing abuse and threats to my child's safety:

    a.  March 6 murder/suicide post | holysmoke.org: One of the websites where Ms. Wang actively posts and comments about me, is holysmoke.org, at: (1) https://www.holysmoke█████-thygesen/ and (2) https://www.holysmoke.org/bad-business/christoffer-█████ On March 6, 2019, I was here in this Court with my family from approximately 8:00am–noon. This Court granted my TDVRO and custody orders. I left the courthouse to drive home and pack for a flight to Utah later that day to retrieve my son. At 12:26 p.m., around the time when we were leaving court, my legal team notified me that Ms. Wang had made a murder/suicide post to https://www.holysmoke.org/bad-business/█████ (referred to herein as the "March 6 murder/suicide post" at holysmoke.org). In the post, she threatens, "I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!" With the help of Utah CPS, we were able to safely retrieve baby K on March 7 in Utah. He has been with me ever since, and we are doing great. See, Exhibit W-1.

11. Continuing abuse and threats to my child's safety that occurred after March 18 service and therefore violate this court's DVRO order:

    a.  **March 24 impersonation and death threat | thedirty.com**: On March 24, 2019, at 11:46 p.m., Ms. Wang impersonates me, and frames me for making a death threat to my son that states, "I'm going to kill this baby, so I don't have to pay child support." She makes this threat under her fictitious user alias "█████ to make it appear that I made this death threat. I did not. https://thedirty.com/city/salt-lake-city/the-league-cyberstalker-kailin-wang/#post-2243455. (Exhibit X-1 at pg 4.)

    b.  **March 25 harassment, defamation and plagiarism | deadbeatsexposed.com**: On March 25, 2019, Ms. Wang posted a vile, defamatory, and harassing screed about me to https://deadbeatsexposed.█████san-francisco-california/. I note that it plagiarizes a November 4, 2018/January 29, 2019 post about someone named Darren Ambler at https://deadbeatsexposed.com/darren-ambler-cherry-hill-new-jersey/. Ms.

Court. I am requesting that all Temporary Orders, including custody orders, be made permanent orders at this hearing, and that a Permanent Restraining Order be issued for 5 years and that there be zero contact with Ms. Wang, and her family.

18. I will be bringing to the hearing on April 10, 2019 a permanent 5 year Order.

III.    **On March 6, 2019, between 8:00 a.m. and 12:00 p.m., Kailin Wang posted on Holy Smoke a threat to kill herself and baby K**

19. On March 6, 2019, between the hours of 8:00 a.m. and 12:00 p.m., Ms. Wang went back onto Holy Smoke.com, where she had previously falsely stated that "███████ ███████ forced me to kill 18 week old baby," (See March 4, 2019 Declaration of Ch██ Stanford ██████ In Support of Domestic Violence Protective Orders and Custody Orders, Exhibit D-1) and made the following death threat:

> **"I'm going to kill myself and our baby if he does not start paying me child support and then he will be guilty of first degree murder. I hope his parents are happy to hear this!!!!"** See Exhibit W-1.

IV.    **Kailin Wang Called San Francisco Police Department Dispatch and Falsely Asserted I was doing drugs the evening of March 6, 2019**

20. On the evening March 6, 2019, my mother ████ Th████ and I were at San Francisco International Airport. We had booked a flight to Salt Lake City, Utah to retrieve baby K. I did not have the baby. While we were waiting for our flight to depart, the San Francisco Police Department ("SFPD") called me to say that someone named Jan Chang was calling SFPD dispatch requesting they send someone out to check on me because I was purportedly doing drugs. I was not doing drugs.

21. "Jan Chang" said she was the mother of my child, and that she had been trying to reach me directly. She had not been trying to reach me directly. That was also a lie.

22. After speaking with me, the SFPD dispatch returned to the caller to find that the person had hung up. Since the dispatch had caller ID, dispatch called back the number and told the caller that I was fine.

23. Dispatch then asked the caller something like, "your name is Jan Chang, right?" The caller said something like, "no, I'm just calling for a friend," and hung up. I sent an Evidence Preservation request to SFPD. See, Exhibit C-2. I also understand it was Kailin Wang's cell

```
08/26/19                       Utah Valley Dispatch                         6475
08:58                          CALL DETAIL REPORT                   Page:    1

Call Number:      C6050525

Nature:           WELF CHEC 6
Reported:         14:13:17 03/06/19
Rcvd By:          Tauaefa K DD              How Rcvd: T
Occ Btwn:         14:12:27 03/06/19   and 14:12:27 03/06/19
Type:             1
Priority:         3

Address:          2481 S FAIRWAY DR
City:

Alarm:

COMPLAINANT/CONTACT
-------------------
Complainant: HILLARD HEINTZE,                       Name#:    1206993
Race:      Sex:      DOB: **/**/**
Address: 30 S Wacker Dr, Chicago
Home Phone: (312)229-9806              Work Phone: (312)869-8500

Contact: mark brenzinger
Address:
Phone: (847)306-2220

RADIO LOG
---------
Dispatcher Time/Date          Unit    Code Zone Agnc Description
---------- ------------------ ------- ---- ---- ---- ---------------------------
Willden L  14:19:29 03/06/19 6J34     ENRT SFPD SFPD incid#=19SF01599 Enroute to
                                                      a Call call=7201
Willden L  14:19:41 03/06/19 6J22     ENRT SFPD SFPD incid#=19SF01599 Enroute to
                                                      a Call call=7201
Smith D (S 14:22:36 03/06/19 6J22     DLIN SFPD SFPD MDC: name=WANG, KAILIN
                                                      dob=01/20/1983 sex=F
                                                      dl=167959889 state=UT
Willden L  14:27:22 03/06/19 6J22     ARRV SFPD SFPD call=7201
Willden L  14:29:36 03/06/19 6J34     ARRV SFPD SFPD call=7201
Smith D (S 14:32:18 03/06/19 6J22     VHIN SFPD SFPD MDC: pl=B538EA st=UT
                                                      lptyp=PC
Smith D (S 14:32:19 03/06/19 6J22     VHRE SFPD SFPD MDC: pl=B538EA st=UT
                                                      lptyp=PC
Willden L  15:09:19 03/06/19 6J22     TS   SFPD SFPD 3313 E HAWK DR, SF; pl=,
                                                      call=7201
Willden L  15:09:20 03/06/19 6J22     CMPL SFPD SFPD incid#=19SF01599 Reassigned
                                                      to call 8141, completed call
                                                      7201
Willden L  15:09:41 03/06/19 6J34     CMPL SFPD SFPD incid#=19SF01599 Reassigned
                                                      to call 8141, completed call
                                                      7201
Willden L  15:29:35 03/06/19 6J34     ARRV SFPD SFPD incid#=19SF01599 Arrived on
                                                      Scene call=7201
Willden L  15:40:59 03/06/19 6J34     4    SFPD SFPD incid#=19SF01599 suspend
                                                      call=7201
```

```
08/26/19                          Utah Valley Dispatch                          6475
08:58                             CALL DETAIL REPORT                    Page:    2

Willden L  15:45:47 03/06/19 6J34    CMPL SFPD SFPD incid#=19SF01599 Reassigned
                                                    to call 8781, completed call
                                                    7201
Willden L  16:11:53 03/06/19 6J34    ARRV SFPD SFPD incid#=19SF01599 Arrived on
                                                    Scene call=7201
Solie E (S 17:36:57 03/06/19 6J34    NMIN SFPD SFPD MDC: name=WANG, KAILIN
Solie E (S 17:36:58 03/06/19 6J34    DLIN SFPD SFPD MDC: name=WANG, KAILIN
Solie E (S 17:37:18 03/06/19 6J34    DLIN SFPD SFPD MDC: name=WANG, KAILIN
                                                    dob=01/20/1983 sex=F
                                                    dl=167959889 state=UT
Solie E (S 17:37:19 03/06/19 6J34    NMIN SFPD SFPD MDC: name=WANG, KAILIN
                                                    dob=01/20/1983 sex=F
                                                    dl=167959889 state=UT
Solie E (S 17:37:50 03/06/19 6J34    NMIN SFPD SFPD MDC: name=███████

Solie E (S 17:37:51 03/06/19 6J34    DLIN SFPD SFPD MDC: name=███████

Willden L  18:12:16 03/06/19 6J34    CMPL SFPD SFPD
```

COMMENTS
--------
subject re kailin wang / mental problems / has made threats to herself and to
baby as of two hours ago / rp is calling from out of state / has orders for
custody to be given to father / no method mentioned / hx of alc / unk drugs
14:19:03 03/06/2019 - Tauaefa K DD
unk weapons
14:19:52 03/06/2019 - Tauaefa K DD
poss #801 794 2801 parents house / 323 244 3244 kailins cell / 917 432 4181 cell
14:20:01 03/06/2019 - Tauaefa K DD
baby is 3 months old
14:20:50 03/06/2019 - Tauaefa K DD
babys name is ████n ████en wang / dob ███62018
14:21:07 03/06/2019 - Tauaefa K DD
rp req 1021 after contact
14:21:42 03/06/2019 - Tauaefa K DD
poss veh gold suv b538ea / red lexus suv d569xt
14:39:56 03/06/2019 - Frazier J DD - From: Solie E (SF)
c4
14:50:37 03/06/2019 - Willden L  DD - From: Solie E (SF)
code 4
15:01:23 03/06/2019 - Willden L  DD - From: Solie E (SF)
code 4

UNIT HISTORY
------------

| Unit | Time/Date          | Code |
|------|--------------------|------|
| 6J22 | 14:19:41 03/06/19  | ENRT |
| 6J22 | 14:22:36 03/06/19  | DLIN |
| 6J22 | 14:27:22 03/06/19  | ARRV |
| 6J22 | 14:32:18 03/06/19  | VHIN |
| 6J22 | 14:32:19 03/06/19  | VHRE |
| 6J22 | 15:09:19 03/06/19  | TS   |
| 6J22 | 15:09:20 03/06/19  | CMPL |
| 6J34 | 14:19:29 03/06/19  | ENRT |
| 6J34 | 14:29:36 03/06/19  | ARRV |

August 26, 2019



Darrick T Chase
235 Montgomery Street, 27th Floor
San Francisco, CA 94104

Re:    Deposition subpoena for production of business records case number FDV-19-814465
plaintiff/petitioner: ███████ r Stanford █████ The request involves:

"1. Any and all records, including but not limited to 911 calls, non-emergency calls, printouts, recordings, incident reports and/or logs of telephone calls to the Spanish Fork Police Department and Utah County Emergency Services from or involving the following telephone numbers: 917-432-4181; 650-862-8473; 650-826-8473; and 650-464-6034."

Response: If the call was received or processed by an employee of Central Utah 911, those records will be provided. Any calls made by or received through Spanish Fork Police Department are not included as those records are maintained by that agency. A separate subpoena will need to be served on that agency.  Call logs that do not include a recording C0485590, C3592455, C3901368, C4794367, C5307155 and C5395433 are past the one year retention period as set forth in the Utah retention series 27585.

   A.    917-423-4181 includes 12 associated CAD records: C3901368, C4794367, C5395433, C6055816, C6078378, C6078540, C6079551, C6079631, C6080176, C6085284, C6106157 and C6113499.
   B.    ████ 2-8473 associated with █████ r █████ and CAD calls C6078540, C6052581 and C6050525.
   C.    ████ 6-8473 no records exist.
   D.    ████ -6034 associated with Teresa █████ and CAD calls C6052581, C6050525.

"2. Any and all records, including but not limited to 911 calls, non-emergency calls, printouts, recordings, incident reports and/or logs of telephone calls pertaining to the following addresses: 294 Ewing Terrace, San Francisco, CA 94118; 346 East 59th Street, Apartment 12, New York, NY 10022; and ██████████ Drive, Menlo Park, CA 94025."
Response:  The addresses are found to be associated with name involvements and not incident locations.

   A.    294 Ewing Terrace, San Francisco, CA 94118 associated with ██████████ and CAD calls C6078540, C6052581 and C6050525.
   B.    346 East 59th Street, Apartment 12, New York, NY 10022 no records exist.
   C.    ██████████ Drive, Menlo Park, CA 94025 associated with Te██████ and CAD calls C6052581 and C6050525.

"3. Any and all records, including but not limited to 911 calls, non-emergency calls, printouts, recordings, incident reports and/or logs pertaining to the following individuals: Kailin Wang DOB: 01-20-1983, ████████ Wang DOB: ██6-2018, ████████ ████████ ████ and ██ ████████

Response:

A.  Kailin Wang DOB: 01-20-1983 associated with CAD calls C6113499, C6106157, C6085284, C6079551, C6079631, C6078378, C6078540, C6055816, C5395433, C5307155, C4794367, C3901368, C3592455 and C0435590.

B.  ████████ Wang DOB: associated with CAD calls C6050525 and C6052581.

C.  ████████ ████████ associated with CAD calls C6078540, C6052581 and C6050525.

D.  ████ ████████ No records exist for that name.

E.  Allen ████████ No records exist for that name.

Copies of the dispatch logs were retrieved from the Spillman system used by Central Utah 911 Dispatch (previously known as Utah Valley 911). These are true and exact copies of the computer aided record logs (CAD) in possession of Central Utah 911 and fall under the Utah retention series 27586.

These records were made at or near the time set forth in the dispatch log by someone with knowledge. The record was kept in the course of regularly conducted activity and was prepared as a regular activity of Central Utah 911. The documents were retrieved and produced by Brenda Argyle and are a full and complete response to the subpoena.

I certify that the foregoing statements are made under the penalty of perjury.

*Brenda Argyle*

Brenda Argyle
Quality Improvement Coordinator
Records Officer
Central Utah 911

**CERTIFICATE OF DELIVERY**

I certify that on the date listed below I:

__X__  mailed the requester a copy of this Notice at the address listed above.

Date: __8/26/19__

## AFFIDAVIT OF CUSTODIAN
## OF BUSINESS RECORDS

_Brenda Argyle,_
(Custodian of Business Records)

says as follows:

(A)   That the affiant is the duly authorized Custodian of the Business Records of _Central Utah 911_ and has authority to certify said records,

(B)   That the copy of the Business Records attached to this Affidavit is a true copy of all the records described in the Subpoena Duces tecum, served on or about _8/15/19_ ,

(C)   That the records were prepared by the personnel of _Central Utah 911_ , in the ordinary course of business at or near the time of the act, condition or event described in these records, and

(D)   That the enclosed records are true copies of the originals and were gathered by me and photocopied in the ordinary course of my duties.

I declare under penalty of perjury that the foregoing is true and correct. Should you have any questions, please contact _Brenda Argyle_ , _Records Officer_.
                                    (Name)                 (Title)

_Brenda Argyle_
(Signature of Affiant)

Date: _8/26/19_

IN THE FOURTH JUDICIAL DISTRICT COURT
OF UTAH COUNTY, STATE OF UTAH

_____
                                )
KAILIN WANG,                    )
                                )
          Petitioner,           )
                                )
     vs.                        ) Case No. 194400718 PT
                                )
███████████, STANFORD ███████   )
                                )
     Respondent.                )
_____)


911 Call
Electronically Recorded on
March 6, 2019


Transcribed by: Natalie Lake, OCT


152 E. Katresha St.
Grantsville, UT 84029
Telephone: (435) 590-5575

-1-

<u>P R O C E E D I N G S</u>

(Electronically recorded on March 6, 2019)

OPERATOR:  March 6, 2019, 14:12:23.

911 OPERATOR:  Police and fire dispatch.

MR. BRENZINGER:  Hi.  My name is Mark Brenzinger. I'm calling from Chicago.  I work at a private security risk management firm, and we have an emergent situation in your jurisdiction.  I was hoping to speak with -- we've been working with your constable in the area, and he's been working with a sergeant, and we have some information we want to share with you in a fresh court order.  Is there any way you can get connected to a watch commander or a sergeant?

911 OPERATOR:  For what city, sir?

MR. BRENZINGER:  Spanish Fork's.

911 OPERATOR:  Let's see.  Yeah, I can go ahead and get your information and then ask a sergeant to give you a call back.

MR. BRENZINGER:  Okay.  The long and the short of it is we have a court order coming out of California that's allowing -- it's allowing law enforcement to go and remove a child that is at risk right now and hand that child over to the biological father, who is en route.

911 OPERATOR:  Okay.  Sir, can I have your phone number?

MR. BRENZINGER:  Yes.  It's 847-306-2220.

-2-

911 █████T█████n, what is your first and last name again?

MR. BRENZINGER:  First name Mark, M-a-r-k, last name Brenzinger, B as in boy, r-e-n, z as in zebra, i-n-█████

911 OPERATOR:  Okay█████gency did you say you're with, Mark?  █████  █████            █████

MR. BRENZINGER:  Hillard Heintze, H-i-l-l-a-r-d, H-e-i-n-t-z-e.  We███a██████icago.

911 OPERATOR:  Okay.  That's a private investigation firm, you said?

MR. BRENZINGER:  Private investigation firm, yes, ma'am.  █████  █████

911 OPERATOR:  Okay.  Is the 847 number a good call back number for Hillard Heintze?

MR. █████I█████'s a good call back number for me. I'll give you █████k█████r of 312-22█████

MS. █████ █████  9806.

MR. BRENZINGER:  -- 9806.

911 █████T█████.  Mark, could you just update for me, please, th█████I█████ that's not necessary.  I'll just take that out.  Okay.  I'm going to have a sergeant from Spanish Fork give you a call back.

MR. █████I█████ay.  Can we make this -- with all due respect --█████i█████e believe our subject is mentally unstable, has just got bad news, and she just posted a threat

-3-

about two hour█████ ████████omicidal threat and a suicidal threat regarding herself and this baby.

911 OPERATOR:  Okay.  What is -- what is your subject's name?                         ████████

MR. BRENZINGER:  My████████'s name is --

MS. █████ █████████  Kailin.     ███████

MR. BRENZINGER:  -- Kailin.  K-a-i-l-i-n, Wang, W-a-n-g.                ██████ █████████

911 OPERATOR:  Okay.  Do we need to have an officer respond to her address?

MR. BRENZINGER:  Well, I think we do.  I'd like to give you the a█████s█████████

911 OPERATOR:  Okay.

MR. BRENZINGER:  The address is 2481 Fairway Drive in Spanish Fork, █████o████████r should be prepared for anything, really.  This ████y█████████been cooper████████We've not been able to serve █████o████████an several weeks.

911 OPERATOR:  Okay.

MR. █████I█████████e's been very evasive, and her parent that sh███████e████████

911 OPERATOR:  And has she been --

MR. BRENZINGER:  -- has also --

911 █████T████████ excuse me, Mark, has she made threats to her████ █████████

MR. BRENZINGER:  She has made threats to herself on

-4-

social media, ▓▓▓ ▓▓▓▓▓

911 OPERATOR:  And to the baby?

MR. BRENZINGER:  And to the baby, as of two hours ago there was a posting.  She was aware there was a hea▓▓▓▓ San Francisco.  She was not prese▓▓▓▓▓e're not certain how much information sh▓▓▓ ▓▓▓▓▓        ▓▓▓▓

911 OPERATOR:  Okay.

MR. ▓▓▓▓I▓▓▓▓▓ but the Court found that the baby needs to be removed from --

911 OPERATOR:  Okay.  Do you have -- do you have a phone number for Kailin?

MR. ▓▓▓▓I▓▓▓▓e second, let me --

MR. DARRICK CHASE:  And just more information, the order that we have is a domestic violence prevention order that gets entered i▓▓h▓▓▓▓ble) system, so this is the order that gives ful▓▓t▓▓▓▓ -- to Mr. ▓▓▓▓ and has an effecting orde▓▓▓l▓▓▓▓ement to get the baby from Kailin or anybody else who --

911 ▓▓▓T▓▓▓▓.  Sir, do you have a phone number for her?  ▓▓▓ ▓▓▓▓

MR. BRENZINGER:  We're looking that up right now.  If you have an email where we could forward you these orders, that would probably▓▓▓ ▓▓▓▓

911 ▓▓▓T▓▓▓▓threats that she made to herself, did she make any mention of how she would hurt herself or the

-5-

child?

MR. BRENZINGER:  I do not believe there was a method noted in this statement, no, ma'am.

911 OPERATOR:  Okay.  Do you know if she ▮ weapons or any access to weap▮

MR. ▮ I ▮ don't know if ▮s weapons or access.

911 ▮T▮ou know if she has any history of using alcohol or drugs?

MR. BRENZINGER:  She does have a history of using alcohol.  I cannot confirm on drugs.

MR. ▮C▮ So can I give you something on the temporary restraining order with respect to guns?

911 OPERATOR:  Okay.  No, I'll have an officer call you for the in▮t▮ the orders, but right now I just need to get th▮o▮o we can go▮nd do a welfare check, and the▮ ▮ to an officer when he calls you back about the orders in particular.

MS. ▮  I'm going to give you three phone numbers. ▮ is at the residence.

911 OPERATOR:  Okay.  Hold on, ma'am.  Hold on, please.

MS. ▮  Sorry.

911 ▮T▮.  Go ahead with the phone numbers, ma'am.

-6-

MS. █████ █████████ Okay. The first one is where we believe she's residing with her parents, and that's -- it's a land line, we believe, and it's 801-794-2801.

911 OPERATOR: Okay. Is this the parent'██████ address, the Fairway Drive? █████████

MS. █████ █████████ Yes. ████████

911 OPERATOR: Okay.

MS. █████ █████████ The next number is a cell phone that we believe belongs to Kailin, and that number is 323-244-3244.

911 OPERATOR: And that's Kailin's cell phone?

MS. █████ █████████ Yes. I have one more cell phone number for her.

911 OPERATOR: Okay.

MS. █████ █████████ And that is 917-432-4181.

911 ██████T████████. ████████

MS. █████ █████████ I don't know which of the two cell phones are still active, or if they both are.

911 ██████T█████████ou know how old the baby is?

MS. █████ █████████ Three months.

MR. BRENZINGER: Three months.

911 OPERATOR: Okay. Do you know if Kailin has a vehicle? █████ █████████

MS. █████ █████████ Yes. There are two vehicles and a -- they belong to either her or her parents, unclear, but let

-7-

me give you bo██████ ████████ld on one second.

911 OPERATOR:  Do you guys know the baby's name and what sex the baby is?

MR. DARRICK CHASE:  Yes.  Baby's name is ████████ K████ ████████  His middle name is ████████ T-█████████████, last name Wang.  He█████b████████birth date is ███████2018.

911 OPERATOR:  Okay.

MR. ██████C████████ He's a white baby.  Well, as far as we know.

911 OPERATOR:  Okay.  Then the vehicle information for Kailin?

MS. █████ █████████  Give me one second.  I'm opening it up.  Okay.  It's a -- there are two cars.  One is a gold BMW SUV.  The license plate is Boy, 5, 3, 8, Edward, Apple.

911 ██████T█████████.

MS. █████ █████████  I'll read████████ck to you, Boy, 5, 3, 8, Edwar████████l████████econd car is a red Lexus SUV.  The license plate is David, 5, 6, 9, X-ray, Tango.  We believe the baby seat is u████y████████ed Lexus, FYI.

911 ██████T█████████.  So I have all the information that I need.  We're going to send out for us to do a welfare check, and then I've put in here a note for someone to contact you by phone a██████t████████de contact.

MS. █████ █████████  Can we do that before just to give more information?

-8-

911 █████T██████ally, our main priority right now is to make sure everything is okay, and then we'll have someone give you a call when they're done.

MR. BRENZINGER:  Okay.  Then we can send █████e orders at that time as well, █████████ okay?

911 █████T██████.                    █████

MR. DARRICK CHASE:  We want to get the baby at the time we do the ████a████████

911 OPERATOR:  When the officer does call you, he'll likely be calling from a blocked or a private number, so just look out for that.

MR. █████I████████s, ma'am.  Thank you.

911 OPERATOR:  Okay.  Thank you.

MS. CHASE:  Thank you.

911 █████T██████.  Bye-bye.

MR. █████C███████ Bye.          █████████

(Con████o██████call)

-9-

City, Zip or Name

Home  > Schaumburg



**Mark Brenzinger**
Psychologist, PsyD

# Mark Brenzinger

Psychologist, PsyD
Verified by Psychology Today

Email Me

(847) 603-4745



(847) 603-4745

**Email Me**

Midwest Behavioral Risk Management, P.C.
869 East Schaumburg Road
Suite 252
Schaumburg, Illinois 60194
**(847) 603-4745**

I provide Forensic and Clinical Evaluations / Consultation Services in the Chicagoland area and Nationally. Psychological Evaluation Services: Psychosexual Risk Evaluation (Pre-Trial, Post-Conviction / Pre-Sentence, Post-Sentence and for DCFS); Sex Offender Evaluation (State and Federal Cases); Psychosexual Evaluation (Sexually Problematic Behaviors / Addiction); Violence Risk and Threat Assessment (Workplace, K-12, University, and Private Individuals); Mental Health Certification for Firearm Possession Evaluation (IL-FOID). Clients include adult and adolescent males and females.

I also provide Fitness for Duty Evaluation (Public Safety Personnel and Corporate Employees); Independent Medical Examination (IME); and General Evaluation (Mental Status, Cognitive Functioning, Psychopathology, Substance Use).

I hold the following Illinois Licenses: Clinical Psychologist, Sex Offender Evaluator and Treatment Provider. I am a Member of the Cook County SOMB; Approved Provider for



# DEPARTMENT OF HUMAN SERVICES

*ANN SILVERBERG WILLIAMSON*
*Executive Director*

## DIVISION OF CHILD AND FAMILY SERVICES

*DIANE MOORE*
*Acting Director*

**State of Utah**

GARY R. HERBERT
*Governor*

SPENCER J. COX
*Lieutenant Governor*

September 18, 2019

████ Stanford █████
294 Ewing Terrace
San Francisco, California 94118

Dear Requester:

Your request for records from the Division of Child and Family Services has been reviewed and completed. I have denied in whole or in part, your request for these records. Please see remarks below for explanation regarding your specific records request.

## PARTIAL DENIAL

☐ Pursuant to Utah Code Ann. § 62A-4a-412, the following information has been redacted (blocked out):
   ☒ The names, addresses, telephone numbers, and specific information that could identify or lead to the discovery of the identity of the person(s) making the initial report (referent). (UCA §62A-4a-412(3)).
   ☐ Information received from the Bureau of Criminal Identification.
   ☒ The names, addresses, telephone numbers, and specific information that could identify or lead to the discovery of the identity of person(s) involved in the investigation of the report. (UCA §62A-4a-412(3)).
   ☐ Information that could impede a criminal investigation. (UCA §62A-4a-412(3)).
   ☐ Information that could endanger a person's safety. (UCA §62A-4a-412(3)).
☐ Pursuant to Utah Code Ann. §63G-2-202, a record contained in the DCFS Management Information System that is found to be unsubstantiated, unsupported, or without merit may not be disclosed to any person except the person who is alleged in the report to be a perpetrator of abuse, neglect, or dependency.
☐ Pursuant to Utah Code Ann. § 63G-2-304, information classified as controlled has been withheld; this includes records containing medical, psychiatric or psychological data about an individual and the party who has created the record has identified it as being confidential.
☐ Pursuant to 34 C.F.R. § 99.10; 34 C.F.R. § 99.4, educational information has been withheld.
☒ Pursuant to Utah Code Ann. § 63G-2-302, information classified as private has been withheld. Other people's personal information.
☐ Pursuant to Utah Code Ann. § 63G-2-305, information classified as protected has been withheld.

---

☐ Pursuant to Utah Code Ann. § 42 C.F.R., Part 2, you do not qualify to receive the records.
☒ Pursuant to Utah Code Ann. §63G-2-305(17), you do not qualify for records that are subject to attorney client privilege.

Family Functioning Summary

Parental resilience: Kailin is currently struggling with mental illness.
Social support: Both Kailin and ████████ have the support from their parents who they have been able to lean on in times of need.
Concrete supports: The parents are aware of the resources that are available to them.
Knowledge of parenting and child development: Christoffer is aware of ████ and is needs and has been consistent in taking ████ to see his pediatrician.
Social emotional competence of children: ████ is only a few months old but is meeting the developmental milestones for his age.

## Referral Narrative

| | |
|---|---|
| Person Narrative: | Special Considerations: Please call Referent ███████████<br><br>Family Language: English<br>Site and date of Occurrence: Mother's home on 3.6.19<br>Address Verification: Provided by Referent<br>Custody Arrangements: See Narrative<br>Other(s) in Home: Maternal Grandparents' Home - Referent doesn't know their names.<br><br>Children(s) Special Needs/Disabilities: Unknown to Referent<br>Mother's Employment: Unknown to Referent<br>Father's Employment: Unknown to Referent<br>eRep Services: Open for Services<br><br>Police Report: See Notification/Aux<br>Third Party Contact: Mark Brenzinger, Clinical Psychologist ███████████ and Father's Attorney, Darrick Chase, ███████████<br><br>ICWA: N/A<br>Utah Sex and Kidnap Registry: N/A |
| Allegation Narrative: | ████████████████████ mother posted on a social media page "Holy Smoke" on 3.6.19 she was going to kill herself and the baby he doesn't start paying her child support and that she hopes his parents will be happy. Father lives in San Francisco, CA and is on his way to Utah to pick up ████ and will arrive around 9:42 pm ███████████ Protective Order from father's attorney (Darrick Chase) dated 3.6.19. Apparently the Constable has been trying to find mother to serve her with paperwork and has been unsuccessful. The protective order was signed on 3.6.19 which is awarding father temporary legal and physical custody of ███████████████<br><br>Referent said when they tried to make contact with mother at the home there is a big camera in the front window and the front door was covered so you couldn't see in and all the blinds were down. Mother's vehicle was in front of the home, but nobody answered the door.<br><br>Referent said father will be arriving tonight at 9:42 pm to pick up Kayson and will call law enforcement for help in getting Kayson. ███████████████ |

## Additional Info(s)

| Referral # | Disposition Date | Narrative |
|---|---|---|
| | | |

Father's Employment:

3rd Party contacts: none
Special Considerations for CPS: Open CPS - 2503301 - PA; no new allegations added
Language(s) in home: English
Location of incident: Spanish Fork
eRep: open services
Sex Offender Registry: none
Native American: no

Referent stated that ▇▇▇ has rash and dry skin issues, and he needs a special lotion for his skin. Referent stated that the lotion was not taken with ▇▇▇ Referent stated that grandparents would like to speak with the caseworker about getting the lotion to ▇▇▇ and setting up a visit with ▇▇▇

## Referral Details

| | |
|---|---|
| Staffing Notes: | Mother threatened on social media on 3.6.19 to kill herself and ▇▇▇ because father isn't paying child support. Father will arrive in Utah at 9:42 pm tonight from San Francisco. This case will be assigned to Supervisor Robbie Adams. |
| Resources recommended to Referent: | |
| Notification sent to LE: | Spanish Fork PD - This report is being sent to you in compliance with mandatory child abuse reporting laws. The Division of Child and Family Services (DCFS) does not anticipate a need for law enforcement involvement at this time. However, if your agency has information which indicates that an officer should be assigned, please do so and have the assigned officer contact the CPS worker identified above. |

## Case Allegations

| Allegation | Perpetrator/ Alleged Perpetrator | Victim/ Alleged Victim | Incident Date | Perp Rel to Victim | Juv Perp |
|---|---|---|---|---|---|
| Physical Abuse | Wang, Kailin | ▇▇▇ | 06 Mar 2019 | Parent | Yes |

## Allegation Findings & Review Details

### Physical Abuse

| Alleged Perpetrator: Wang, Kailin | | | Approx. Age at Incident Date: 36 |
|---|---|---|---|
| Alleged Victim: ▇▇▇ | | | Approx. Age at Incident Date: 0 |

| Review Date | Review Type | Finding Severity | Summary |
|---|---|---|---|
| 20 Mar 2019 | Case Closure | Supported – Non Severe/Chronic | Kailin posted a threat to end her life and ▇▇▇ on social media. |

## Case Overview

| Economic Status | Upper Class | Services Provided | None Needed |
|---|---|---|---|
| Family Structure | Unmarried Couple with Children | | |
| OOH Abuse Type | None | | |

## Child Interviews

| Child | DCFS Interviewer | Location | Support Person | Date | Time | Description |
|---|---|---|---|---|---|---|
| ▇▇▇ | Kimberly Webb | Child's home | Support person not requested | 07 Mar 2019 | 09:30 AM | No interview, child non-verbal and unable to communicate |

## Removals

Finalized By: Adams, Robbie Date: 20Mar19

**Policies:** *None*

Email from Paternal grandmother ███████████

Baby and Daddy are both doing very well, and they are totally in love with each other. We are staying at the home of some friends in Park City through the hearing on Tuesday, and will then fly home with baby Tuesday evening. C█████ lawyer has spoken to someone high up in the State Attorneys office to understand the shelter hearing process, and he thinks it will go smoothly. The Wangs have apparently hired an attorney who is making lots of threats, but weve got the facts on our side, so that will go nowhere. I dont fear the longer term custody process either given the facts in the case and also given that San Francisco PD expects the DA will be pressing felony charges against Ms. Wang very soon. I expect that ████████will retain sole physical and legal custody of his son forever. My husband is flying in today to stay with us here through the hearing. The hearing is this Tuesday at 2:40pm. Will you be around then?

| Start Date and Time | Duration(min) | Status | Activity Type | Author |
|---|---|---|---|---|
| 09Mar19 01:52 PM | 2 | FINAL | CLTP-Client Telephone | Webb, Kimberly |

Finalized By: Webb, Kimberly Date: 26Mar19

**Policies:** *None*

CW received a voicemail from MO stating that she would not be able to attend the shelter hearing because she could not make it back in time. She stated that she would need to extend the hearing and asked if I could inform her of that process.

| Start Date and Time | Duration(min) | Status | Activity Type | Author |
|---|---|---|---|---|
| 10Mar19 08:30 PM | 5 | FINAL | CLEM-Client Email/Text | Adams, Robbie |

Finalized By: Adams, Robbie Date: 20Mar19

**Policies:** *None*

███ Th████
Mar 10, 2019, 8:28 PM (10 days ago)
to me

Hi Robbie,

I wanted to let you know that ████████nd I took baby to see a pediatrician here in Park City for a complete check up. The mark on the back of his head is definitely a birthmark. Baby has a few little patches of rough skin that the doc recommended we tend to with a combo of 1% hydrocortisone cream on the worst spots and cetaphil body cream all over. Doc said this would likely not be necessary anymore after he gets home with us to CA where the climate is less dry. Baby also has a bit of a hernia in his groin that we need to keep an eye on. We also got his vaccination records which were on file with Utah, so we also now know what needs doing next on that front when we get home to CA. Christoffer is doing such a great job as a new dad, and he and baby are completely in love with each other. The have already formed a very strong father/son bond.
Best Regards, ████████

| Start Date and Time | Duration(min) | Status | Activity Type | Author |
|---|---|---|---|---|
| 11Mar19 09:00 AM | 10 | FINAL | CLTP-Client Telephone | Webb, Kimberly |

Finalized By: Webb, Kimberly Date: 26Mar19

**Policies:** *None*

# SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL REPORT OF INVESTIGATION    Page 8 of 31

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | ▉▉▉▉▉▉ texted Wang in September, after the 24 week deadline.  He learned that the baby was a boy, and Wang didn't want to talk until November or December.<br><br>▉▉▉▉▉▉ had a difficult time emotionally, and his work performance "spiraled." ▉▉▉▉▉▉ was fired from his job on 9/26 due to poor performance.<br><br>▉▉▉▉▉▉ reached out to Wang, requesting a prenatal paternity test.  Wang declined.  Wang got angry when ▉▉▉▉▉▉ told her that he needed to plan for job opportunities and accused ▉▉▉▉▉▉ of planning to take a lower paying job.<br><br>On 10/11, ▉▉▉▉▉ again urged Wang to take a prenatal paternity test, and asked if she needed anything from him.  ▉▉▉▉▉ didn't hear anything more until 12/6/18.  The baby was born on ▉▉▉▉▉.<br><br>Wang contacted ▉▉▉▉▉▉ parents regarding the birth of the baby. ▉▉▉▉▉▉ parents conducted an internet search on Wang and hired a family law attorney.<br><br>▉▉▉▉▉▉ received mail from the County of Los Angeles that Wang had filed for child support.  On 12/20/18, ▉▉▉▉▉ went to DCSS and voluntarily served himself.<br><br>▉▉▉▉▉▉ became aware of the online posts about him on 12/24/18.  ▉▉▉▉▉▉ told me that Wang found his medium account and followed all of his followers. Wang started messaging people that ▉▉▉▉▉ was coercing her into an abortion and trying to avoid responsibility.  Wang referred to ▉▉▉▉▉ as a dead beat dad.<br><br>▉▉▉▉▉▉ attorney sent Wang a cease and desist letter.  Wang responded, but the posts continued.<br><br>In early February 2019, Wang insinuated that the baby was sick and not healthy.<br><br>A Judge in San Francisco granted a portion of the TRO to protect ▉▉▉▉▉ Th▉▉▉▉ but denied emergency custody.<br>Attempts were made to serve Wang, with negative results. |
| 3/6/19 | 1502 | I spoke with ▉▉▉ ▉▉▉▉ who advised me that custody was granted to ▉▉▉▉▉ ▉▉▉▉  She also advised me that Wang had posted something stating that she would kill herself and the baby. |
| | 1511 | I spoke with Darrick Chase, family law attorney for ▉▉▉▉▉ ▉▉▉▉▉ Chase told me that a post was made on Holysmoke a few hours ago where Wang threatened to harm herself and the child. |

CT's team saw and reported the 3/6/19 "Kill Baby K " first and benefited from that post tremendously. TT V1's Mother

SFPD 298 (10/76) *

**New York State DOMESTIC INCIDENT REPORT**

**A**

| Incident | | |
|---|---|---|
| Agency: | | Incident # |

**Reported Date** (MM/DD/YYYY): 03 10 2019  **Time (24 hours):** 1900  **Occurred Date** (MM/DD/YYYY):  **Time (24 hours):**  ☐ Officer Initiated  ☐ ICAD (NYC)  ☐ Radio Run  ☒ Walk-in  **Complaint #**

**Address** (Street No., Street Name, Bldg. No., Apt No.): 346 E 59 Street PY apt 12  **City, State, Zip:** PY NY 10022

**Suspect (P2)**

**Name** (Last, First, M.I.) (Include Aliases): ▮▮▮ C ▮▮▮ S ▮▮▮  **DOB** (MM/DD/YYYY): ▮▮92  **Age:**  ☐ Female ☒ Male  ☐ Self-Identified:

**Address** (Street No., Street Name, Bldg. No., Apt No.): 294 Ewing Terrace  **Suspect Phone Number:** ▮▮▮ 8472  **Language:**

**City, State, Zip:** San Francisco CA 94118  ☒ White ☐ Black ☐ Asian ☐ American Indian ☐ Other  ☐ Hispanic ☐ Non Hispanic ☐ Unknown  ☐ Other Identifier:

**Do suspect and victim live together?** ☐ Yes ☒ No  **Suspect/P2 present?** ☐ Yes ☒ No  **Was suspect injured?** ☐ Yes ☒ No If yes describe:  **Possible drug or alcohol use?** ☒ Yes ☐ No  **Suspect supervised?** ☐ Probation ☐ Parole ☐ Not Supervised ☒ Status Unknown

**Suspect (P2) Relationship to Victim (P1)** ☐ Married ☐ Intimate Partner/Dating ☐ Formerly Married ☒ Former Intimate Partner ☐ Parent of Victim (P1) ☐ Child of Victim ☐ Relative ☐ Other:  **Do the suspect and victim have a child in common?** ☒ Yes ☐ No

**Victim Interview**

**Emotional condition of VICTIM?** ☒ Upset ☐ Nervous ☐ Crying ☐ Angry ☐ Other:

> Wang reported the 3/6/19 more than 30 hours after CT reported it, so who benefited off of that post ? 100% CT.

**What were the first words that VICTIM said to the Responding Officers at the scene regarding the incident?**

**Did suspect make victim fearful?** ☒ Yes ☐ No If yes, describe:

**Weapon Used?** ☐ Yes ☒ No  Gun: ☐ Yes ☒ No  Other, describe:  **Suspect Threats?** ☒ Yes ☐ No If Yes, Threats to: ☒ Victim ☐ Child(ren) ☐ Pet ☐ Commit Suicide ☒ Other Describe: Parents

**Access to Guns?** ☐ Yes ☒ No If yes, describe:

**Injured?** ☐ Yes ☒ No If yes, describe:  **Strangulation?** ☐ Yes ☒ No ☐ Loss of Consciousness ☐ Urination/Defecation ☐ Red eyes/Petechia ☐ Sore Throat ☐ Breathing Changed ☐ Difficulty Swallowing

**In Pain?** ☐ Yes ☒ No If yes, describe:  **Visible Marks?** ☐ Yes ☒ No If yes, describe:

**Suspect**

**What did the SUSPECT say** (Before and After Arrest): not present

**710.30 completed?** ☐ Yes ☐ No

**Incident Narrative**

Briefly describe the circumstances of this incident: P1 states P2 is posting online messages, as P1 stating "I'm going to kill myself and our baby if he doesn't pay child support and then he will be guilty of 1st degree murder. I hope his parents are happy." P1 states this message prompted CPS to open an investigation on her. P1 states P2 is trying to have them take the baby away from her. P2 is unemployed. P2 does not have a vehicle. P2 is most likely to be found at his parents home located at 1240 San Mateo Dr. San Francisco, CA 94025. P2 has instagram name TIGGAMAROO. facebook name Christoffer Thygesen.

**Evid**

**DIR Repository checked?** ☐ Yes ☐ No  **Order of Protection Registry checked?** ☐ Yes ☐ No  **Order of Protection in effect?** ☐ Yes ☒ No ☐ Refrain ☐ Stay Away

**Evidence Present?** ☐ Yes ☐ No  **Photos taken:** ☐ Victim Injury ☐ Suspect Injury ☐ Other:  **Other Evidence:** ☐ Damaged Property ☐ Videos ☐ Electronic Evidence ☐ Other:  **Destruction of Property?** ☐ Yes ☒ No If yes, Describe:

**Offense**

**Offense Committed?** ☐ Yes ☐ No  **Was suspect arrested?** ☐ Yes ☐ No If no, explain:  **Offense 1**  **Law** (e.g. PL)  **Offense 2**  **Law** (e.g. PL)

VICTIM / COMPLAINANT COPY

NYS DOMESTIC AND SEXUAL VIOLENCE HOTLINE 1-800-942-6906    3221-03/2016 DCJS Copyright © 2016 by NYS DCJS



Go Back to Req. to Mdify Opinion

Law Enforcement Relations

4 Sylvan Way, Parsippany, N.J. 07054

Phone: (973) 292-8911 Fax: (973) 292-8697                                                                 August 06, 2020

---

T-Mobile / MetroPCS Tracking ID: 2847939

I, Deisi Franco, attest, under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. Section 1746, that the information contained in this declaration is true and correct. I am a United States citizen and am over eighteen years of age. I am employed by T-Mobile US, Inc. (hereinafter, "the Company") as a custodian of records and therefore am qualified as a result of my position to make this declaration. My official title is Custodian of Records.

I certify that all of the records described below and attached hereto are duplicates of the original and are true and complete copies of records maintained by the Company. Said records consist of several electronic files produced in T-Mobile US, Inc. Case No.2847939 in response to a lawful request issued to the company.

## Description of records:

| MSISDN/Identifier | Start Date | End Date | Requested Item |
|---|---|---|---|
| 9174324181 | 08/06/2018 | 12/31/2019 | Call Details With Cell Sites |
| 9174324181 | 02/01/2018 | 12/31/2019 | Subscriber Info |
| 9179573166 | 02/01/2018 | 12/31/2019 | Subscriber Info |
| 9179573166 | 08/06/2018 | 12/31/2019 | Call Details With Cell Sites |

I further state that:

    A) Such records were made at or near the time of the occurrence of the matters set forth by (or from information transmitted by) a person with knowledge of those matters;

    B) Such records were kept in the course of regularly conducted business activity;

    C) The business activity made such records as a regular practice; and

    D) If such record is not the original, such record is a duplicate of the original.

This certification is intended to satisfy Rules 803(6), 902(11), 902(13) and / or 902(14) of the Federal Rules of Evidence and / or any state equivalents.

I hereby certify that the foregoing statement made by me is true. I understand that if any of the statements made by me herein are willfully false, I am subject to punishment.

Sincerely

Law Enforcement Relations Group

51

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 03/05/2019 | 23:28:15 | | SMSC | | 13476689744 | | | | |
| 03/05/2019 | 23:35:50 | 463 | moc | Outgoing | 19174324181 | 14155287000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:43:57 | 32 | moc | Outgoing | 19174324181 | 14156559479 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:45:04 | 156 | moc | Outgoing | 19174324181 | 14157806300 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:47:57 | 3 | moc | Outgoing | 19174324181 | 14155287000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:48:25 | 51 | moc | Outgoing | 19174324181 | 16505130484 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:50:27 | 6 | moc | Outgoing | 19174324181 | 16507570800 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:50:51 | 31 | mtc | Incoming | 14158341120 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:50:52 | 31 | moc | Outgoing | 14158341120 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:51:08 | 37 | moc | Outgoing | 19174324181 | 16507520800 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:51:26 | | SMSC | | 128 | | | | |
| 03/05/2019 | 23:52:20 | 55 | moc | Outgoing | 19174324181 | 14158341120 | 65 West 70thStreet | New York | NY | 10023 |
| 03/05/2019 | 23:53:21 | 627 | mtc | Incoming | 16505242144 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 00:04:40 | | SMSC | | 19174324181 | | | | |
| 03/06/2019 | 00:05:24 | | SMSC | | 13476689744 | | | | |
| 03/06/2019 | 00:05:36 | | SMSC | | 13476689744 | | | | |
| 03/06/2019 | 01:03:38 | 32 | mtc | Incoming | 14159922322 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 01:04:09 | 32 | moc | Outgoing | 14159922322 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 01:04:44 | | SMSC | | 128 | | | | |
| 03/06/2019 | 01:08:00 | 26 | moc | Outgoing | 19174324181 | 14157816500 | 65 West 70thStreet | New York | NY | 10023 |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

| Date | Time | | | | | | | | | |
|------|------|-----|-----|----------|-------------|-------------|---------------------|----------|-----|-------|
| 03/06/2019 | 01:12:49 | | mtc | Incoming | 14153470584 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 01:12:59 | 11 | moc | Outgoing | 19174324181 | 14153470584 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 01:13:47 | 962 | mtc | Incoming | 14159922322 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 05:01:21 | 1450 | mtc | Incoming | 17074301893 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 05:40:33 | 11 | moc | Outgoing | 19174324181 | 14155513637 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 15:18:48 | | mtc | Incoming | 12183964489 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 16:30:13 | 52 | mtc | Incoming | 16466794947 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 16:32:06 | 46 | moc | Outgoing | 19174324181 | 16466794947 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 16:32:57 | | moc | Outgoing | 19174324181 | 14153470584 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:18:21 | | mtc | Incoming | 18014815843 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:28:34 | 44 | moc | Outgoing | 19174324181 | 14155513744 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:29:44 | | moc | Outgoing | 19174324181 | 14155513900 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:30:36 | | moc | Outgoing | 19174324181 | 14155513903 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:32:16 | 153 | mtc | Incoming | 182404 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 18:44:40 | 292 | mtc | Incoming | 13854281000 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 19:47:51 | | mtc | Incoming | 18007477804 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 19:52:41 | | SMSC | | 32665 | | | | | |
| 03/06/2019 | 19:52:42 | | SMSC | | 19174324181 | | | | | |
| 03/06/2019 | 19:53:12 | 25 | mtc | Incoming | 17076581296 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

Page: 89 of 201

154 / 405

141

| Date | Time | | Type | Direction | Number | Number | Address | City | State | Zip |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/06/2019 | 19:53:43 | 25 | moc | Outgoing | 17076581296 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 19:54:11 | | SMSC | | 128 | | | | | |
| 03/06/2019 | 19:54:39 | 28 | moc | Outgoing | 19174324181 | 14158341120 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:08:24 | 6 | moc | Outgoing | 19174324181 | 14155513900 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:09:53 | 2 | moc | Outgoing | 19174324181 | 14155513903 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:20:05 | 19 | moc | Outgoing | 19174324181 | 14155513744 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:21:23 | | moc | Outgoing | 19174324181 | 14158341120 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:22:42 | | moc | Outgoing | 19174324181 | 14155513903 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:22:48 | | SMSC | | 19294130709 | | | | | |
| 03/06/2019 | 20:48:34 | 791 | moc | Outgoing | 19174324181 | 18669013212 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 20:56:57 | | mtc | Incoming | 18007477804 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 21:51:44 | 996 | moc | Outgoing | 19174324181 | 18669013212 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 22:00:03 | | SMSC | | 19174324181 | | | | | |
| 03/06/2019 | 22:00:03 | | SMSC | | 732873 | | | | | |
| 03/06/2019 | 23:08:01 | 726 | mtc | Incoming | 17074301893 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:21:07 | 29 | moc | Outgoing | 19174324181 | 18015386155 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:21:48 | 182 | moc | Outgoing | 19174324181 | 18664357414 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:25:41 | 43 | moc | Outgoing | 19174324181 | 18018518026 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:26:40 | | moc | Outgoing | 19174324181 | 18014291000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/06/2019 | 23:26:55 | | moc | Outgoing | 19174324181 | 18014291000 | 65 West 70thStreet | New York | NY | 10023 |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

Page: 90 of 201

142

| Date | Time | Duration | Type | Direction | From | To | Address | City | State | Zip |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/06/2019 | 23:43:48 | | moc | Outgoing | 19174324181 | 18014291000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:08:14 | 566 | moc | Outgoing | 19174324181 | 18017879755 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:19:39 | 58 | moc | Outgoing | 19174324181 | 18015368500 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:28:55 | 340 | moc | Outgoing | 19174324181 | 14156668000 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:55:51 | | mtc | Incoming | 18018044700 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:56:20 | 28 | mtc | Incoming | 18018044700 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:56:51 | 28 | moc | Outgoing | 18018044700 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 00:57:22 | | SMSC | | 128 | | | | | |
| 03/07/2019 | 01:31:09 | 249 | moc | Outgoing | 19174324181 | 14155530123 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 01:37:45 | 323 | mtc | Incoming | 14155530123 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 04:59:52 | 6 | mtc | Incoming | 18014008982 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 04:59:58 | 6 | moc | Outgoing | 18014008982 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 05:00:22 | 3 | mtc | Incoming | 18014008982 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 05:00:25 | 3 | moc | Outgoing | 18014008982 | 14699829999 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 06:46:57 | | mtc | Incoming | 18014008982 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 14:23:38 | | SMSC | | 19174324181 | | | | | |
| 03/07/2019 | 14:23:38 | | SMSC | | 24273 | | | | | |
| 03/07/2019 | 15:32:19 | | mtc | Incoming | 18007477815 | 19174324181 | 65 West 70thStreet | New York | NY | 10023 |
| 03/07/2019 | 16:48:24 | 101 | moc | Outgoing | 19174324181 | 18015384100 | 65 West 70thStreet | New York | NY | 10023 |

**Information Provided By:**

T-Mobile US, Inc.

Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054

Tel: 866-537-0911; Fax: 973-292-8697

Page: 91 of 201

156 / 405

143

############## * Google Confidential and Proprietary * ##############

GOOGLE SUBSCRIBER INFORMATION
Name: Lanie Lee
e-Mail: lancewr12@gmail.com
Created on: 2018/01/29-02:32:35-UTC
Terms of Service IP: 2601:681:400:8b05:6c8e:9a32:66af:53a1, on 2018/01/29-02:32:35-UTC
Google Account ID: 470981516193

| Time | IP Address | Type |
|------|-----------|------|
| 2019/04/19-23:14:28-UTC | 2601:681:400:8b05:e057:6f17:411e:682 | Login |
| 2019/04/19-23:07:59-UTC | 2601:681:400:8b05:e057:6f17:411e:682 | Login |
| 2019/04/19-22:47:43-UTC | 2601:681:400:8b05:e057:6f17:411e:682 | Login |
| 2019/04/19-22:47:42-UTC | 2601:681:400:8b05:e057:6f17:411e:682 | Login |
| 2019/04/19-21:55:54-UTC | 2601:681:400:8b05:54ef:5073:5673:f311 | Login |
| 2019/04/19-21:55:53-UTC | 2601:681:400:8b05:54ef:5073:5673:f311 | Login |
| 2019/04/19-18:17:27-UTC | 2601:681:400:8b05:a531:73ce:cba6:200e | Login |
| 2019/04/19-05:14:57-UTC | 2601:681:400:8b05:acc7:b9ba:5490:b030 | Logout |
| 2019/04/19-05:00:10-UTC | 2601:681:400:8b05:acc7:b9ba:5490:b030 | Login |
| 2019/04/19-05:00:10-UTC | 2601:681:400:8b05:acc7:b9ba:5490:b030 | Login |
| 2019/04/19-04:53:01-UTC | 2601:681:400:8b05:acc7:b9ba:5490:b030 | Login |
| 2019/04/19-04:53:01-UTC | 2601:681:400:8b05:acc7:b9ba:5490:b030 | Login |
| 2019/04/19-01:32:01-UTC | 2601:681:400:8b05:482c:7ff2:91a1:92ab | Login |
| 2019/04/19-01:32:00-UTC | 2601:681:400:8b05:482c:7ff2:91a1:92ab | Login |
| 2019/04/18-03:16:21-UTC | 2601:681:400:8b05:6478:cdb3:db40:53f3 | Login |
| 2019/04/18-03:16:21-UTC | 2601:681:400:8b05:6478:cdb3:db40:53f3 | Login |
| 2019/04/18-03:03:39-UTC | 2601:681:400:8b05:6478:cdb3:db40:53f3 | Login |
| 2019/04/18-03:03:39-UTC | 2601:681:400:8b05:6478:cdb3:db40:53f3 | Login |
| 2019/04/17-03:13:31-UTC | 2601:681:400:8b05:e8ba:257e:63c2:47d4 | Login |
| 2019/04/17-02:43:50-UTC | 2601:681:400:8b05:7cd6:57f4:e631:a16b | Logout |
| 2019/04/17-01:41:56-UTC | 2601:681:400:8b05:7d7a:34b3:386e:bb9c | Login |
| 2019/04/17-01:41:56-UTC | 2601:681:400:8b05:7d7a:34b3:386e:bb9c | Login |
| 2019/04/16-23:58:21-UTC | 2601:681:400:8b05:7d7a:34b3:386e:bb9c | Login |
| 2019/04/16-22:04:32-UTC | 2607:fb90:3432:f3dd:6c2a:bb99:a401:a210 | Login |
| 2019/04/16-19:07:40-UTC | 2601:681:400:8b05:45ef:3787:cfb0:2670 | Login |
| 2019/04/16-19:07:40-UTC | 2601:681:400:8b05:45ef:3787:cfb0:2670 | Login |
| 2019/04/16-07:39:37-UTC | 2601:681:400:8b05:eca1:f99a:f89d:d7f4 | Login |
| 2019/04/16-07:39:37-UTC | 2601:681:400:8b05:eca1:f99a:f89d:d7f4 | Login |
| 2019/04/15-20:30:47-UTC | 2601:681:400:8b05:582e:f883:575b:85f2 | Login |
| 2019/04/15-08:16:47-UTC | 2601:681:400:8b05:b10b:ca41:725:119e | Login |
| 2019/04/15-08:16:47-UTC | 2601:681:400:8b05:b10b:ca41:725:119e | Login |
| 2019/04/14-08:44:56-UTC | 2601:681:400:8b05:e116:e206:9e1:3b45 | Login |
| 2019/04/14-08:44:56-UTC | 2601:681:400:8b05:e116:e206:9e1:3b45 | Login |
| 2019/04/13-02:45:43-UTC | 2601:681:400:8b05:99b6:49ad:6abe:32fe | Login |
| 2019/04/13-02:45:43-UTC | 2601:681:400:8b05:99b6:49ad:6abe:32fe | Login |
| 2019/04/12-06:33:45-UTC | 2601:681:400:8b05:31dd:4b7e:c4b2:f5db | Login |
| 2019/04/12-06:33:45-UTC | 2601:681:400:8b05:31dd:4b7e:c4b2:f5db | Login |
| 2019/04/12-05:44:37-UTC | 2601:681:400:8b05:31dd:4b7e:c4b2:f5db | Login |

5 consecutive Login events from IP 2601:681:400:8b05:d39:4fdb:5806:58c6 occurred during past 24 hours prior to the following event.

| 2019/04/11-02:23:27-UTC | 2601:681:400:8b05:d39:4fdb:5806:58c6 | Login |

| 2019/03/30-01:58:16-UTC | 2601:681:400:8b05:8cfa:89d4:3400:65e1 | Login |
| 2019/03/29-04:47:48-UTC | 2601:681:400:8b05:c4b2:88e1:828c:4330 | Logout |
| 2019/03/29-04:47:43-UTC | 2601:681:400:8b05:c4b2:88e1:828c:4330 | Login |
| 2019/03/29-04:47:43-UTC | 2601:681:400:8b05:c4b2:88e1:828c:4330 | Login |
| 2019/03/29-00:26:56-UTC | 73.3.98.183 | Login |
| 2019/03/25-21:28:48-UTC | 172.58.27.14 | Login |
| 2019/03/25-18:50:15-UTC | 2607:fb90:b87f:3d11:d000:623c:805c:15be | Login |
| 2019/03/25-18:50:15-UTC | 2607:fb90:b87f:3d11:d000:623c:805c:15be | Login |
| 2019/03/25-18:40:34-UTC | 2607:fb90:b87f:3d11:d000:623c:805c:15be | Login |
| 2019/03/25-18:40:34-UTC | 2607:fb90:b87f:3d11:d000:623c:805c:15be | Login |
| 2019/03/25-17:53:09-UTC | 2600:1700:3190:3780:61ea:3b38:9cf5:cec1 | Login |
| 2019/03/22-03:51:11-UTC | 2605:e000:9090:3000:bd7d:583b:2e2b:eebd | Login |
| 2019/03/20-02:16:59-UTC | 2601:681:400:8b05:7073:66df:f04c:3e04 | Login |
| 2019/03/20-02:00:48-UTC | 2601:681:400:8b05:7073:66df:f04c:3e04 | Logout |
| 2019/03/20-01:54:18-UTC | 2601:681:400:8b05:7073:66df:f04c:3e04 | Login |
| 2019/03/20-01:53:45-UTC | 2601:681:400:8b05:7073:66df:f04c:3e04 | Logout |
| 2019/03/18-06:08:34-UTC | 2601:681:400:8b05:a050:ec6e:995e:8a14 | Login |
| 2019/03/15-17:18:58-UTC | 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d | Login |
| 2019/03/15-13:37:01-UTC | 2601:681:400:8b05:7d9b:2deb:cdcf:b82c | Login |
| 2019/03/15-13:37:01-UTC | 2601:681:400:8b05:7d9b:2deb:cdcf:b82c | Login |
| 2019/03/15-05:29:02-UTC | 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d | Logout |
| 2019/03/13-23:08:57-UTC | 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d | Login |
| 2019/03/11-19:35:10-UTC | 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d | Login |
| 2019/03/11-19:11:53-UTC | 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d | Logout |
| 2019/03/07-06:16:28-UTC | 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d | Login |
| 2019/03/06-20:18:25-UTC | 2604:2000:4f8b:af00:d54c:7da5:b4dc:ab1d | Login |
| 2019/03/06-17:27:00-UTC | 67.207.43.90 | Login |
| 2019/03/01-17:15:06-UTC | 2604:2000:4f8b:af00:e45e:bed6:1dd:9249 | Login |
| 2019/02/26-06:13:20-UTC | 2604:2000:4f8b:af00:8c8b:abe3:1b05:9f3e | Login |
| 2019/02/22-18:02:02-UTC | 65.88.88.76 | Login |
| 2019/02/19-21:26:32-UTC | 66.65.126.174 | Login |
| 2019/02/17-19:48:21-UTC | 2607:fb90:545c:fb0e:697a:79d2:c756:cc3a | Login |
| 2019/02/17-19:07:44-UTC | 207.251.101.104 | Login |
| 2019/02/17-18:54:42-UTC | 207.251.101.104 | Login |
| 2019/02/17-18:54:28-UTC | 207.251.101.104 | Logout |
| 2019/02/17-18:54:18-UTC | 207.251.101.104 | Login |
| 2019/02/17-18:44:40-UTC | 207.251.101.104 | Login |
| 2019/02/17-18:34:03-UTC | 207.251.101.104 | Login |
| 2019/02/14-22:37:24-UTC | 2601:681:400:8b05:1d17:510e:784f:83f0 | Login |
| 2019/02/14-20:45:24-UTC | 2601:681:400:8b05:691a:a369:1ee1:f50f | Login |
| 2019/02/14-19:36:46-UTC | 2601:681:400:8b05:691a:a369:1ee1:f50f | Login |
| 2019/02/14-18:09:05-UTC | 2601:681:400:8b05:ddb6:88e6:4ca6:ba04 | Login |
| 2019/02/14-03:40:16-UTC | 2601:681:400:8b05:dc9e:6464:258c:30c9 | Login |
| 2019/02/14-03:40:15-UTC | 2601:681:400:8b05:dc9e:6464:258c:30c9 | Login |
| 2019/02/14-01:19:56-UTC | 2601:681:400:8b05:acef:4731:ca2b:2407 | Login |
| 2019/02/13-22:54:40-UTC | 2601:681:400:8b05:38f1:9a4f:792e:f6e4 | Login |
| 2019/02/13-20:03:30-UTC | 2601:681:400:8b05:dc9e:6464:258c:30c9 | Login |
| 2019/02/13-20:03:29-UTC | 2601:681:400:8b05:dc9e:6464:258c:30c9 | Login |
| 2019/02/13-19:49:47-UTC | 2601:681:400:8b05:7970:9f8f:a2c8:5418 | Login |
| 2019/02/13-19:49:47-UTC | 2601:681:400:8b05:7970:9f8f:a2c8:5418 | Login |
| 2019/02/13-19:38:04-UTC | 2601:681:400:8b05:7970:9f8f:a2c8:5418 | Login |
| 2019/02/13-19:38:04-UTC | 2601:681:400:8b05:7970:9f8f:a2c8:5418 | Login |
| 2019/02/13-19:08:55-UTC | 2601:681:400:8b05:e4f5:380e:ad61:e561 | Login |
| 2019/02/13-19:08:55-UTC | 2601:681:400:8b05:e4f5:380e:ad61:e561 | Login |

| IC3 Report Number | Referenced Post | IP – References | Notes |
|---|---|---|---|
| IC3_2019_UT_Wang_█████_1 | https://www.holysmoke.org/bad-business/█████ Comments Section - "Kill the baby post" | | IC3 - 1 Wang references the comment section and claims that someone impersonated her and posted the "Kill the baby post" before calling CPS in Utah. This is the comments section for a holysmoke.org/bad-business/█████ post that was cloned from badbizreport.is/█████ -aka-███ -spermbank/ made from Wang's residence. W██ S██ allegedly posted in the comments without knowing about or ever meeting █████ . |
| IC3_2019_UT_Wang_█████_3 | https://www.holysmoke.org/bad-business/█████ | 2020-07-27 Signed Business Records Affidavit 007_02.04.19 Bad-Business-Report - IP Wang - 2/4/19 125_Holy Smoke - Bad Business - Clone of Bad Business 2/8/19 | IC3 - 3 The user who posted on badbizreport.is the post "█████ █████ AKA █████ Spermbank" had the same IP address as Wang's home address in Spanish Fork UT. A cloned post was also uploaded to holysmoke.org and is the post that Wang references in her IC3 complaint. Wang makes the claim that █████ and S██ are working together. |
| IC3_2019_UT_Wang_█████_5 | https://www.holysmoke.org/bad-business/█████ Multiple references to the comments section | | IC3 - 5 Wang references a comment section for a profile on holysmoke.org/scam/█████ / which is also a clone of badbizreport.is made from Wang's residence. There are alleged comments from Walker Stone even though he had never met or interacted with █████ . |

| Wang IP Address | Source | Associated Email Address | |
|---|---|---|---|
| 2604:2000:4f9b:af00:d54c:7da5:b4dc:ab1d | IC3 | lancewr12@gmail.com | |
| 2601:0681:0400:8B05:FFFF:FFFF:FFFF:FFFF | Comcast Return | lancewr12@gmail.com | |
| 2001:0558:6008:0045:2012:0EC6:50FA:50B0 | Comcast Return | | |
| 73.3.98.183 | Comcast Return | lancewr12@gmail.com | |
| 21.229.80.205 | Comcast Return | | |

| IC3 Emails | IP | | |
|---|---|---|---|
| kaywg2072@gmail.com | 2601:681:400:8b05:b9a4:9b2b:29e2:d52d | | |
| lancewr12@gmail.com | 2604:2000:4f9b:af00:d54c:7da5:b4dc:ab1d | | |
| | 2601:681:400:8b05:653f:eeac:f2c2:942e | | |

 Gmail

John Wang <yunlong88cong@gmail.com>

## IP connection summary

7 messages

---

**Blanch, Joey (USAUT)** <Joey.Blanch2@usdoj.gov>                                        Thu, Apr 30, 2026 at 5:19 PM
To: "yunlong88cong@gmail.com" <yunlong88cong@gmail.com>
Cc: Richard Sorenson - FDO <richard_sorenson@fd.org>


I requested the FBI agent summarize the IP tieback evidence related to the IC3 reports.  The summary is attached.  It summarizes documents already in the discovery, but I'm including redacted versions for your convenience.


Best,



**Joey L. Blanch | Assistant U.S. Attorney**

111 S. Main St. Suite 1800 | Salt Lake City, UT 84111

(801) 524-5682 | joey.blanch2@usdoj.gov



**8 attachments**

📄 **007_02.04.19 Bad-Business-Report_Redacted.pdf**
1670K

📄 **9_22_Comcast I Production_Redacted.pdf**
165K

📄 **125_Holy Smoke - Bad Business_Redacted.pdf**
2476K

📄 **2020-07-27 Signed Business Records Affidavit_Redacted.pdf**
5833K

📄 **2020-11-08 SIGNED Business Records Affidavit with A-C.pdf[69]_Redacted.pdf**
7106K

📄 **2020-12-20 SIGNED Pope Business Records Affidavit_Redacted.pdf**
737K

📄 **lancewr12.AccountInfo copy.txt**
22K

📄 **IP Connection Summary_Redacted.pdf**
103K

---

**John Wang** <yunlong88cong@gmail.com>                                        Thu, Apr 30, 2026 at 5:34 PM
To: "Blanch, Joey (USAUT)" <Joey.Blanch2@usdoj.gov>

The IP connection is inaccurate where does the Bad Biz IP address match one that matches Wang??

Also going to need IC3 report dates next to these comments.



John Wang sent on behalf of Kailin Wang, who dictated the message  (+1 801 709-0209); (+1 801-787-9755) (+1 801 361-8742)

AFFIDAVIT OF CUSTODIAN OF BUSINESS RECORDS

I, the undersigned, declare:

1.    I am the duly authorized custodian of records of Vestron Media and have the authority to certify the records.

2.    The copies attached hereto are true copies of records on file with Vestron Media.

3.    The records were prepared by the personnel of Vestron Media in the ordinary course of business at or near the time of the act, condition, or event.

4.    The screenshots attached hereto in <u>Exhibit A</u> show the IP addresses and user information for the user who submitted the posts and comments related to C█████ T█████ and/or Kailin Wang on websites owned by Vestron Media. Specifically, the records are identified as follows:

<u>Exhibit A-1</u> is a screenshot of the content of the February 4, 2019 "C█████ T█████ AKA T████ Spermbank" post, which was submitted by user IP address 2601:681:400:8b05:10ed:bdb8:ce1:c6f5, and published at http://www.badbizreport.is/c█████-t█████-aka-t███-spermbank/.

<u>Exhibit A-2</u> is a screenshot showing that user IP address 2601:681:400:8b05:10ed:bdb8:ce1:c6f5 submitted the February 4, 2019 "C█████ T█████ AKA T████ Spermbank" post. This screenshot captures the email header that alerted BadBizReport.is that IP address 2601:681:400:8b05:10ed:bdb8:ce1:c6f5 had submitted the February 4, 2019 "C█████ T█████ AKA T████ Spermbank" post for publication. The email header provides both: (1) the  or real IP address 2601:681:400:8b05:10ed:bdb8:ce1:c6f5; and (2) the <remote-addr> or trusted proxy 172.69.42.61, that was sending the message on behalf the  real IP address.

<u>Exhibit A-3</u> is a screenshot of the CheaterBoard.com WordPress user interface, which shows that on June 1, 2019, IP address 205.185.223.173 submitted the June 1, 2019 "Kailin Wang — Salt Lake City, Utah" CheaterBoard post at https://www.cheaterboard.com/kailin-wang-salt-lake-city-utah for publication.

<u>Exhibit A-4</u> is a screenshot of the CheaterBoard.com WordPress user interface that shows the IP addresses logged for various comments on the CheaterBoard.com website where the name "C█████ T█████" is either in the author text or the comment text of the comment.

AFFIDAVIT OF CUSTODIAN OF BUSINESS RECORDS

5.    The mode of preparation of the records is described as follows: Analyzing server and website logs; database retrieval. The screenshots are from our recordkeeping system and reflect the records as they were contemporaneously prepared.

I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.

Date 07/27/2020

_____
(signature)

Print Name:   Ezra Smith

Address:   1629 K Street NW #300, Unit 24

Washington, DC 20006

Email:   vestronmedia@protonmail.com



## Aaron Minc

**Lanie Lee** <lancewr12@gmail.com>                                    Thu, Jul 25, 2019 at 11:25 PM
To: Darrick Chase <dchase@kayemoser.com>

Mr. Chase,

As you know there are no posts regarding the well being of ▇▇▇▇ besides the ones made by ▇▇▇▇ ▇▇▇▇ in regards to " Kill baby K" and for Ms. Wang to kill herself and numerous others ones discovered since 3/6/19.

I do want to offer this suggestion  that can be helpful to your discoveries.
Though to prove ▇▇▇▇ did'nt do it you can always seek out this Aaron Minc, he can maybe uncover the truth. And I'm bankrupted from this unlawful litigation brought on by your client. There is
 no shame in clients as wealthy as the ▇▇▇▇ drowning a first time ethinic mother and her family in unlawful litigation as your clients have.

But my feeling is, you won't do more discovery on that post and on holysmoke because your client posted it.  The ▇▇▇▇ certainly financially have the capacity to find the identity of that poster. But it's your client who did it, that's why ▇▇▇▇ legal team deliberately avoid discovery on that site like a plague.

I hope this suggestion can be helpful to both of us.

Regards,

**Screenshot_20190725-221337_Gmail.jpg**
882K



Feel free to message me directly if you would like to discuss more.

Additionally, we have gotten beware.org (who is now possibly the owner of holysmoke) to respond to subpoenas before, I think at least in one case to the extent they had any information.

We've also dealt with the cloudflare problem before Karl mentioned with other "cheatersites".. but had to hire some forensic experts and get into server files to get actual IPs. That was not a small endeavor and required reviewing general server traffic and data, but actually wound up nailing the perpetrator.

Regards,

**Aaron Minc**

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

UNIFIED FAMILY LAW COURT

DEPARTMENT 404

---oOo---

HONORABLE RICHARD C. DARWIN, JUDGE

CHRISTOPHER STANFORD THOMPSON,                    )
                                                  )
                    PETITIONER,                   )
                                                  )COURT NO. FDV-19-814465
          vs.                                     )
                                                  )
KAILIN WANG,                                      )
                    RESPONDENT.                   )
_____ )

**REPORTER'S TRANSCRIPT Of PROCEEDINGS**

**JUNE 25, 2019**

APPEARANCES OF COUNSEL:
    **FOR PETITIONER:**
    KAYE, MOSER, HIERBAUM
    BY:  DARRICK TRACEY CHASE
    101 California Street, Suite 2300
    San Francisco, California  94111

    RIDDER, COSTA & JOHNSTONE LLP
    BY:  ERICA JOHNSTONE
    12 Geary Street, Suite 701
    San Francisco, California  94108

    SUCHERMAN & INSALACO LLP
    BY:  MICHELENE INSALACO
    100 Spear Street
    San Francisco, California  94105

    **FOR RESPONDENT:**
    LAW OFFICES OF SAMI MADDEN MASON
    BY:  SAMI MADDEN MASON
    141 Bryce Canyon Road
    San Rafael, California  94903

Reported By:  Ann Delgado, CSR No. 11185

2

**INDEX OF WITNESSES**

| WITNESSES: | PAGE |
|---|---|
| **KAILIN WANG** | |
| Direct Examination By Ms. Mason | 31 |
| Cross-Examination By Mr. Chase | 52 |
| Redirect Examination By Ms. Mason | 69 |

**EXHIBIT INDEX**

**PLAINTIFF'S EXHIBITS:**

| NO. | DESCRIPTION | ID | EVD |
|---|---|---|---|
| A | Birth Certificate | 59 | 59 |
| C | Emails | 64 | 64 |
| D | Email containing New York address | 64 | 64 |
| H | 1/24/19 email | 65 | 65 |

**RESPONDENT'S EXHIBITS:**

| NO. | DESCRIPTION | ID | EVD |
|---|---|---|---|
| A | Amended birth certificate | 70 | 71 |
| O | Photographs | 51 | 51 |

Ann Delgado, CSR No. 11185

5

THE COURT:  Right.

MR. CHASE:  Also, on the issue of the domestic violence hearing, we have the issue of Your Honor's order that was issued on June 6.  On June 10th, I sent my proposed findings and order to Mr. Karl Kronenberger.  I have not heard from Mr. Kronenberger.  I think tomorrow is the end of the 20-day period to sign it or object.

So we still don't know the status of whether he is going to sign it, object.  We don't know what is going to happen on that.  So it's premature to consider even setting a trial at this point.  Then once we get his signed order, assuming there is not some other action taken, then we are going to need a chance to get the material and then review the material and then decide what we're going to do with the material.

So what we're proposing -- what I'm proposing today -- we're proposing -- is to set it on further status conference in August.  That should give plenty of time to -- I would suggest the midweek.  I think maybe August 14 or 15.  We could come back in on a status-conference-type hearing and talk about what we -- what our expectations and requests are for this Court.

THE COURT:  What do you think?

▮▮▮ON:  I'm sorry, Your Honor?

THE COURT:  What do you think about what he just said?

MS. MASON:  I'm limited scope on this.

THE COURT:  You are?  Okay.  Let me -- I can get started on this issue of jurisdiction.  So the parties have both submitted fairly voluminous pleadings, declarations, points

Ann Delgado, CSR No. 11185

6

and authorities, which were very helpful.  I've reviewed them, and I wanted to make sure I could come in and be ready to make some rulings.

Here is my ruling on the threshold question that Ms. Insalaco just raised of whether procedurally I can revisit the order I made in March regarding this being home state and so I can thus being able to issue those custody and visitation orders as I did back in March.

Keep in mind that was an ex parte order.  It was not a contested proceeding.  So it was issued without evidence from one side, which is typical for DVROs.  That's how it works.  Like almost all orders issued on an ex parte basis and certainly those under the Domestic Violence Prevention Act, it's a temporary order pending contested evidentiary hearing.  That's what happened on March 6.

At the evidentiary hearing, which was scheduled for, I believe, May 8, after it was continued once, the responding party may challenge any or all components of that ex parte order -- stay away, move-out, if it's ordered, custody, visitation.  And they can challenge it on any basis on an evidentiary basis -- legal basis and jurisdictional basis.  That's what the evidentiary hearing is for.

████████ think you waive your right to challenge any component of an order that was issued ex parte by failing to file a motion for reconsideration or appeal.  And that applies to whether the -- I mean, that applies to any component of a temporary restraining order.

Remember, that temporary order contains stay-away orders,

| Exhibit I | DCFS Reversal to Unsupported (November 2019) |
|---|---|

| Exhibit Ref. | Exhibit I (Final Decision & Order) + (Reversal Letter) |
|---|---|

| Document 1 | State of Utah, Department of Human Services, Office of Administrative Hearings, Final Decision and Order. DCFS v. Kailin Wang, OAH Case No. 2503301. ALJ: Eric M. Stott. Dated November 2019. |
|---|---|

| OAH Order Text | Notice of Agency Action (3/27/19) had found Wang "substantially responsible for Physical Abuse." On November 6, 2019, DCFS filed a Motion to Reverse Supported Finding to Unsupported. ALJ Stott dismissed Wang's request for hearing because, once the finding became Unsupported, she was no longer entitled to a hearing. Hearing scheduled for 11/21/19 was vacated. |
|---|---|

| Document 2 | Utah DCFS letter, November 14, 2019, to Kailin Wang, 2481 S Fairway Dr, Spanish Fork, UT 84660. From Jaimie Graham, Western Region Administrative Hearing Tracker. States: "The Division of Child and Family Services has conducted an Internal Review of your case and has determined that we will be changing the supported finding in the Management Information System to unsupported on case #2503301." |
|---|---|

| September 18, 2019 Letter | DCFS Records Response to ███████ Stanford ████████ 294 Ewing Terrace, San Francisco CA 94118. Partial denial of records request. C.T.'s request for DCFS records denied in part under Utah Code § 62A-4a-412(3) (identity of referent and investigators redacted) and § 63G-2-302 (private information of others). |
|---|---|

| Timing | DCFS reversed its finding on November 6, 2019 — eight months after the 3/6/19 removal, after subpoenas and search warrants confirmed the post could not be linked to Wang. The initial "Supported" finding was based entirely on Brenzinger/Chase's 911 call and the Holysmoke server log. |
|---|---|

**SIGNIFICANCE TO PSR OBJECTION**

The DCFS Final Decision and Order is decisive: the agency that removed a three-month-old infant from her mother's parents' home on March 6, 2019 reversed its own "Supported" finding eight months later. The reversal followed the Cloudflare investigation that confirmed IP 108.162.219.228 was a VPN/proxy relay with no attribution to Wang. DCFS did not reverse because of a technicality — it reversed because it could not sustain the finding after the forensic record was developed. This is the most direct institutional confirmation that the Kill Baby K post was not traceable to Wang.



STATE OF UTAH

DEPARTMENT OF HUMAN SERVICES

OFFICE OF ADMINISTRATIVE HEARINGS

| | | |
|---|---|---|
| DIVISION OF CHILD AND FAMILY SERVICES, | : | |
| Claimant, | : | FINAL DECISION AND ORDER |
| vs. | : | |
| KAILIN WANG, | : | Case No. 2503301 |
| Respondent. | : | |

This action was initiated with a Notice of Agency Action dated March 27, 2019, which informed Respondent that Claimant made a determination that Respondent is substantially responsible for Physical Abuse. Following service of the Notice, Respondent requested a hearing to challenge the Supported finding. Accordingly, the matter was set for hearing.

On November 6, 2019, Claimant filed a Motion to Reverse Supported Finding to Unsupported and Vacate the In-Person Informal Hearing ("Motion"), based on Claimant's determination to change the finding of Physical Abuse to Unsupported.

## I. FINDINGS AND CONCLUSIONS

The right of an individual to contest Claimant's finding in an informal administrative hearing is limited to when such finding is designated as "Supported." See, Utah Code Ann. § 62A-4a-1009 (2019). Accordingly, given that Claimant has changed its finding of Physical Abuse to Unsupported, Respondent is no longer entitled to an administrative hearing in the present matter, and the request for hearing should be dismissed.

## II. ORDER

Wherefore, based upon the foregoing and Claimant changing the finding of Physical Abuse in case number 2503301 to Unsupported, it is herewith ordered that Respondent's Request for Administrative Hearing is dismissed. The in-person informal hearing scheduled Thursday, November 21, 2019, at 10:00 a.m. is vacated.

Any information that identifies the victim or any other subject of the child abuse and neglect report, including the victim or other subject's name or other identifiers, must be kept confidential pursuant to Utah Code section 62A-4a-412 (2019) and/or sections 63G-2-302, 304 (2019) unless the victim or other subject, or the victim or other subject's legal representative, consents to the release of the information.

**RECONSIDERATION** of this Order may be obtained by any party by filing a written Request for Reconsideration with the Office of Administrative Hearings, Department of Human Services, 195 North 1950 West, Salt Lake City, Utah 84116, within twenty (20) days after the date this Order was issued. The Request must state the specific grounds upon which relief is sought and a copy of the Request must be mailed to the opposing party. The opposing party may file a response within ten (10) days of receiving the Request for Reconsideration with the Office of Administrative Hearings and a copy must be mailed to the party requesting reconsideration. If no Order granting or denying Reconsideration is issued within twenty (20) days after the filing of the Request, the Request for Reconsideration shall be considered denied in accordance with Utah Code section 63G-4-302 (2019); **AND/OR:**

**JUDICIAL REVIEW** of this Order may be obtained by filing a Complaint in the Juvenile Court in the county where the petitioner resides or maintains his or her principal place of business within thirty (30) days after the date this Order was issued **OR** an order on reconsideration is issued or is considered to have been issued under Utah Code section 63G-4-302 (2019). A copy of the Complaint should be served upon each party to the action in accordance with the provisions in Utah Code section 63G-4-402 (2019).

Dated this ___8TH___ day of ___NOVEMBER___, 2019.

Eric M. Stott
Administrative Law Judge
Department of Human Services
Office of Administrative Hearings
195 North 1950 West
Salt Lake City, Utah 84116
Telephone (801) 538-3900

## MAILING CERTIFICATE

I hereby certify that on this ___8th___ day of ___November___, 2019, I caused to

be mailed, postage prepaid, a true and correct copy of the foregoing Final Decision and Order to the following

parties of record:

> KAILIN WANG
> 2481 FAIRWAY DR
> SPANISH FORK UT 84660
>
> D. GRANT DICKINSON
> ATTORNEY AT LAW
> 2525 N. CANYON RD
> PROVO UT 84604

and to the following parties via inter-office mail:

> SHALA REYNOLDS, GARY BELL
> OFFICE OF THE UTAH ATTORNEY GENERAL
> 55 N UNIVERSITY AVE, #219
> PROVO UT 84606
>
> KIMBERLY WEBB, ROBBIE ADAMS
> DEPARTMENT OF HUMAN SERVICES
> DIVISION OF CHILD AND FAMILY SERVICES
> 609 N STATE RD
> 198 SALEM UT 84653
>
> JAIMIE GRAHAM
> DEPARTMENT OF HUMAN SERVICES
> DCFS HEARING TRACKER
> 150 E CENTER ST, STE 5100
> PROVO UT 84606

_Brianna Erickson_
Secretary



DEPARTMENT OF HUMAN SERVICES

ANN SILVERBERG-WILLIAMSON
*Department Executive Director*

State of Utah

Division of Child and Family Services

GARY R. HERBERT
*Governor*

DIANE MOORE
**Division Director**

SPENCER J. COX
*Lieutenant Governor*

CASEY CHRISTOPHERSON
**Western Region Director**

November 14, 2019

Kailin Wang
2481 S Fairway Dr
Spanish Fork, UT 84660

Dear Kailin:

The Division of Child and Family Services has conducted an Internal Review of your case and has determined that we will be changing the supported finding in the Management Information System to unsupported on case #2503301.

Please feel free to contact me with any questions at 385-268-2766.

Sincerely,

*Jaimie Graham*

Jaimie Graham
Western Region Administrative Hearing Tracker
Division of Child and Family Services

Address 150 East Center, Suite 5100, Provo UT 84606
Telephone 801-374-7005 Facsimile 801 374-7822 www.hsdcfs.utah.gov



personal conduct orders, and the visitation and custody orders.  I was asked to come back here to have a hearing -- evidentiary contested hearing on all of those issues.

So the very first time the respondent appeared -- actually, the day before, on the 7th, she said, "I will be challenging, among other things, the jurisdictional basis of that TRO."

So I find she hasn't waived her right to challenge custody and visitation, either on the merits -- you know, what's in the best interest of the child -- or on jurisdictional basis on which that order was issued.  She has the right to present evidence on that critical issue.

And I would analogize it to a restraining order that was issued against someone who's going to contest personal jurisdiction and they were served in New York and said, "Look, I was never in California.  You have no personal jurisdiction against me."  That person can specially appear.  It's not an exact analogy, but close -- having a hearing and saying, "You didn't have jurisdiction to that issue."

So I don't think she has waived her right to challenge jurisdiction.  I think in that she can present evidence on whether on February 15, 2019, when the issue in this action ███████ d, California really was the home state or Utah was the home state.  And there are plans for that evidence to be presented today, and I will make a decision this afternoon as to whether California or Utah is home state.

So that's -- I'm happy, if you think I got some component of that analysis wrong -- I know that's not consistent with

8

what petitioner is asking for, and I invite you to tell me now, because that's the way I see it. Just like any other component of that TRO, she can challenge it at the evidentiary hearing, which is what we are doing.

MS. INSALACO: So respectfully, I do believe the Court is --

THE COURT: What did I miss?

MS. INSALACO: You're missing the fact that under UCCJEA, when you make a custody determination, that is a final finding. And if you look at Family Code 3402, it says -- this is the California version of the UCCJEA -- "A child custody determination means a judgment, decree, or other order, and it includes a permanent, temporary, initial or modification order."

So when you make a temporary order, if you make a custody order as part of that, you're making a decision that you have jurisdiction. You can't do it part way. You can't say, "Well, I'm going to make a custody order and then decide jurisdiction later." You have to decide jurisdiction. You have it, and then you go ahead and make the custody order, which this Court did. And that order is -- that decision is, under the code, a custody determination for purposes of

And once you have done that, this is the state that has asserted jurisdiction. And unless you -- unless that decision is properly challenged, we submit it's final. And if a person from New Jersey got served with papers there and the judge made a ruling against him or her and then they were served

with it, they would typically have to do something.  They would challenge that order under the procedural civil rules.

They would come to court and ask to have it be found void or repeal it or ask to reconsider it.  You can't just sit there and not do anything.  She was personally served on June 18.

THE COURT:  March 18.

MS. INSALACO:  Yes, sorry.  March 18.

So she was clearly on notice of the order at that point.  She had an attorney at that point.  She didn't make any effort to seek review of it in any way.

THE COURT:  So here is what bothers me about that argument, because I thought about all of this all day yesterday AND all day last night.

It would -- I can't see how due process is served if a jurisdictional decision under UCCJEA can be made and considered to be final with only evidence presented by one side.

That's -- because it -- I know how it played out here, and it just so happened she called in.  But literally anybody can file a DVRO request, and they are always heard.  I hear them every day.  They land on my desk, and they are

It's just the application and a request for a temporary restraining order and whatever evidence they presented.

And that would be whether it happened the way it did here or even in that situation where I say, "Okay.  Looks like the kid is in California or born here," and I check the box saying

10

you get your custody visitation orders, and that's done, that's a done deal, even though if you look at the papers that respondents are served with, they get the notice of hearing, they get something called a DV-120 information packet that says if you disagree with these orders here is how you come in and contest it.

And they would say, "Okay. Well, clearly the judge got it wrong on that custody part; so I will come in and follow the directions of my papers I just got served with and then to be told "Sorry. You're too late on that one issue. You had to do something completely different that is not mentioned in these papers."

And that's why I struggle with this idea that my determination on March 6 with one side here and the other side not was a final determination, and at this point it's final forever absent an appeal that she would not even know to make.

MR. CHASE:  She could have filed a motion to reconsider. She could have filed a motion for a new trial.  She had an attorney making UCCJEA arguments in Utah.  So that attorney clearly knew the rules.  And you have to keep in mind on the fact pattern you described, the original order was filed and ███████tual notice.  She chose not to come here for the hearing.  She called in and Your Honor said from the bench, "Oh, she knows this is happening."

She knew it was happening.  It's not like this was purely ex parte on the very first appearance where someone comes in completely ex parte, no notice, and you make a decision then.

That's not what happened.  The very first ex parte TRO there was no custody order granted because she had no notice.  But by the time May 8 came around, she had gotten actual notice, the actual TRO with the hearing date had been served to her attorney in Utah and --

MS. WANG:  Objection.

THE COURT:  Go ahead.

MS. INSALACO:  We -- we have evidence and Mr. Chase can testify he e-mailed him the order.  They had made all sorts of service attempts in New York, in Utah.  And she knew about the hearing.  She called in, and she chose not to come.

THE COURT:  Well, look, I made that record partially just to ensure that I felt comfortable making the orders when I did.  It was an unusual circumstance where a TRO had been issued, you showed up for a hearing, we didn't have proof of service, and you wanted to amend them.  That's not a typical way a TRO gets issued or amended, frankly.

But we did it.  I felt comfortable.  I feel comfortable that I had adequate information at the time to determine that California was the home state at that point.  I only had information from one, but there was certainly adequate information at that time to say there is substantial evidence █████████ home state determination today.  So I'm going to make it.  And the fact is Ms. Wang was aware that this proceeding was happening.

But I still don't believe that that is the end of the story in terms of her ability to challenge those findings.  We set an evidentiary hearing for a reason.  And, again, in my

12

view, the respondent can come in at the evidentiary hearing -- the date of which is right there on the notice -- and challenge any part of that temporary restraining order, whether it's the stay away, whether it's the custody and visitation orders.

MR. CHASE:  Just a couple of points.  Number one, when you set the hearing it was not just to rehear the whole thing. Your first statement on the record was "We need to see if her challenge is procedurally proper."  I think Your Honor knew at the time t was questionable whether she could just say, "I don't like this order."

THE COURT:  I hadn't the benefit of all of this briefing.

MS. INSALACO:  But your instinct was she had to have some way to challenge the order.  You can't just come in later and say, "This order isn't fair so let's get rid of it."

Number two, the UCCJEA and Family Code 3408 say that the notice has to be actual notice.  "Notice may be given in a manner prescribed by the law of the state, but the notice must be given in a manner reasonably calculated to give actual notice."

That's what happened.  She had proper notice.  So your ███████ t home state was made in compliance with the UCCJEA.  And as long as your decision was in compliance with it -- respectfully, if judicial error occurred, if you shouldn't have made the decision at that point because she didn't show up and you wanted to give her another continuance even though she could have come but chose not to come and if

15

to be determined -- that this child was a resident of this state from the date of birth until the filing of the initial action, which I believe was around February 15.

And that's the evidence that we need to put on here today. And I think we -- all of us have briefed it all for you. So I don't think we need to go back into that argument.

THE COURT: Okay. Look, in my view this process is working, actually, the way it's supposed to, which is I am presented with one side's papers, and I make what is called an ex parte order and set it for an evidentiary hearing where the ex parte order is either continued on a long-term basis, modified or denied. But the respondent is able to present any and all evidence and arguments they want to at the evidentiary hearing, which is what we are doing.

I did not make on a contested basis custody and visitation orders. I made it on the basis of evidence that was presented by one party. There was no proof of service. Otherwise I would have proceeded with the full DVRO hearing that morning if I thought that I had the basis for doing so. It was an ex parte proceeding, and I believe that respondent has not waived her rights to challenge any part of that.

So today we're going to proceed with the presentation of ███████ the question of what was the child's home state as of February 15, 2019. And I -- I believe the burden of establishing that is on the petitioner who is asserting that California is the home state as the person seeking issuance of those orders.

And just so we're clear, if I conclude that California is

79

afternoons.  It just doesn't make sense.  It'll be broken up by days and days.  I think you need to go back to 405.

MS. INSALACO:  Can you give us a date to go back to 405?

THE COURT:  We can go off the record.

(Discussion off the record.)

THE COURT:  Back on the record.

MS. INSALACO:  We would request there not be visits until the DV hearing, because there are threats to kill the child.  And whether they are at Rally or not, the child is potentially at risk until the court has heard the evidence and assessed, perhaps, the psychological well-being of the respondent.  It could put the child at risk to have any visits even at Rally.

THE COURT:  That argument was made the last time we were here.  And I have ordered Rally supervised visitations in other situations.  I'm very confident that they are well-equipped to make sure no harm will come to your son.  So I think you should feel confident.  It's a hospital.  There is staff everywhere, and the whole visit is observed.  So I am confident that it is a safe environment for those visits.  Okay.  Off the record.

(Proceedings concluded.)

███████

80

STATE OF CALIFORNIA                        )
                                           )   SS.
COUNTY OF SAN FRANCISCO                     )
                                           )


REPORTER'S CERTIFICATE


I, ANN DELGADO, Certified Shorthand Reporter of the Superior Court of the County of San Francisco, State of California, hereby certify that the foregoing is a full, true, and correct transcript of the proceedings had in the above-entitled matter, and that the same is a full, true, and correct transcription of my shorthand notes as taken by me in said matter.

Dated this July 3, 2019


_ann delgado_____
ANN DELGADO, CSR NO. 11185


Ann Delgado, CSR No. 11185

**FL-305**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY    STATE BAR NUMBER:<br>NAME: Douglas L. Rappaport (136194)<br>FIRM NAME: LAW OFFICES OF DOUGLAS L. RAPPAPORT<br>STREET ADDRESS: 260 California Street, Suite 1002<br>CITY: San Francisco    STATE: CA    ZIP CODE: 94111<br>TELEPHONE NO.: (415) 989-7900    FAX NO.: (415) 989-7950<br>E-MAIL ADDRESS: admin@sfcrimlaw.com<br>ATTORNEY FOR (name): CH▉▉▉▉▉ TH▉▉▉ | FOR COURT USE ONLY<br><br>**FILED**<br>San Francisco County Superior Court<br>**NOV 30 2023**<br>CLERK OF THE COURT<br>BY: _____<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center Courthouse

| | |
|---|---|
| PETITIONER: CH▉▉▉▉ TH▉▉<br>RESPONDENT: KAILIN WANG<br>OTHER PARENT/PARTY: | |
| **TEMPORARY EMERGENCY (EX PARTE) ORDERS**<br>☐ Child Custody  ☒ Visitation (Parenting Time)  ☐ Property Control<br>☐ Other (specify): | CASE NUMBER:<br>FDV-19-814465 |

1. **TO (name(s)):** Kailin Wang
   ☐ Petitioner  ☒ Respondent  ☐ Other Parent/Party  ☐ Other (specify):

   A court hearing will be held on the *Request for Order* (form FL-300) served with this order, as follows:

   a.  Date:  **11/30/2023**    Time:  **1:30 p.m.**    ☒ Dept.:  **403**    ☐ Room:

   b.  Address of court  ☒ same as noted above    ☐ other (specify):

2. **Findings:** Temporary emergency (ex parte) orders are needed to: (a) help prevent an immediate loss or irreparable harm to a party or to children in the case, (b) help prevent immediate loss or damage to property subject to disposition in the case, or (c) set or change procedures for a hearing or trial.

**COURT ORDERS:** The following temporary emergency orders expire on the date and time of the hearing scheduled in (1), unless extended by court order:

3. ☒ **CHILD CUSTODY**

   Temporary physical custody, care, and control to:

   | a. Child's name | Date of Birth | Petitioner | Respondent | Other Party/Parent |
   |---|---|---|---|---|
   | ▉▉▉▉▉n ▉▉ | ▉▉/2018 | ☐ | ☐ | ☐ |
   | | | ☐ | ☐ | ☐ |
   | | | ☐ | ☐ | ☐ |
   | | | ☐ | ☐ | ☐ |
   | | | ☐ | ☐ | ☐ |

   ☐ Continued on Attachment 3(a)

   b. ☒ **Visitation (Parenting Time)**  The temporary orders for physical custody, care, and control of the minor children in (3) are subject to the other party's or parties' rights of visitation (parenting time) as follows (specify):

   Petitioner already has permanent sole legal/physical custody of Minor Child ("MC") in 3.a., above. The Court finds that it is in MC's best interest that the Court hear the new evidence of Ms. Wang's conduct before another in-person visit occurs. (Fam. Code §§ 3031(c), 3100, 3020(a)-(c), and 3011). Therefore, the Court temporarily suspends Respondent Kailin Wang's in-person visitation with MC until the visitation hearing occurs that was originally scheduled for 11/28/2023, but which was continued to 12/28/2023 on the Court's own motion after Respondent Wang filed on 11/27/2023 a 170.1 motion to disqualify Judge Roeca.

   ☐ See Attachment 3(b)

**THIS IS A COURT ORDER.**

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>FL-305 [Rev. July 1, 2016]    **TEMPORARY EMERGENCY (EX PARTE) ORDERS**    Family Code, §§ 2045, 3062-3064,<br>Cal. Rules of Court, rules 5.151-5.169<br>www.courts.ca.gov

FL-305

| PETITIONER: CHR████████ THY██████ | CASE NUMBER: |
| RESPONDENT: KAILIN WANG | FDV-19-814465 |
| OTHER PARENT/PARTY: | |

3. ☐ **CHILD CUSTODY** (continued)

c. **Travel restrictions**

   (1) The party or parties with temporary physical custody, care, and control of minor children **must not remove the minor children from the state of California unless the court allows it after a noticed hearing.**

   (2) ☐ Petitioner ☐ Respondent ☐ Other Parent/Party must not remove their minor children *(specify):*

      (a) ☐ from the state of California.

      (b) ☐ from the following counties *(specify):*

      (c) ☐ other *(specify):*

d. ☐ **Child abduction prevention orders** are attached (see form FL-341(B)).

e. (1) **Jurisdiction:** This court has jurisdiction to make child custody orders in this case under the Uniform Child Custody Jurisdiction and Enforcement Act (part 3 of the California Family Code, commencing with section 3400).

   (2) **Notice and opportunity to be heard:** The responding party was given notice and an opportunity to be heard as provided by the laws of the State of California.

   (3) **Country of habitual residence:** The country of habitual residence of the child or children is *(specify):*

      ☐ The United States of America ☐ Other *(specify):*

   (4) **If you violate this order, you may be subject to civil or criminal penalties, or both.**

4. ☐ **PROPERTY CONTROL**

a. ☐ Petitioner ☐ Respondent ☐ Other Parent/Party is given exclusive temporary use, possession, and control of the following property that the parties ☐ own or are buying ☐ lease or rent

b. ☐ Petitioner ☐ Respondent ☐ Other Parent/Party is ordered to make the following payments on the liens and encumbrances coming due while the order is in effect:

| Pay to: | For: | Amount: $ | Due date: |
| Pay to: | For: | Amount: $ | Due date: |
| Pay to: | For: | Amount: $ | Due date: |
| Pay to: | For: | Amount: $ | Due date: |

5. ☒ All other existing orders, not in conflict with these temporary emergency orders, remain in full force and effect.

6. ☐ **OTHER ORDERS** *(specify):*       ☐ Additional orders are listed in Attachment 6.

## DENIED

Date: November 30, 2023

_____
*THIS IS A COURT ORDER.*     **RICHARD C. DARWIN**
      JUDGE OF THE SUPERIOR COURT

FL-305 [Rev. July 1, 2016]     **TEMPORARY EMERGENCY (EX PARTE) ORDERS**     Page 2 of 2

# Ex Parte Hearing  Inbox ×

  

 **Doug Rappaport**                                                    Mon, Nov 27, 10:55 PM    ☆    ☺    ↩    ⋮
to me ▾

Ms. Wang,

Given that you have recklessly placed ███ safety at risk, and then successfully delayed the hearing on your conduct by filing an eleventh-hour 170.1 Motion seeking disqualification of Judge Roeca, Petitioner has obtained the Court's permission to hold an ex parte hearing to occur on Thursday, November 30.  Petitioner will timely file his FL-300 in compliance with CRC and local rules, but he is giving you the courtesy of letting you know now that he will seek through his ex parte to temporarily suspend your visitation until the court renders a decision on the visitation hearing that was previously set for November 28.

Best,


Law Offices of Douglas L. Rappaport
260 California Street, Suite 1002
San Francisco, CA  94111
Tel: 415-989-7900
Fax: 415-989-7950
email: admin@sfcrimlaw.com


This email message is for the sole use of the intended recipient and contains confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.  Thank you.

## MINI MINUTES FOR NOV-30-2023 01:30 PM fo

Dept. 404 | December 5, 2023
Bench Officer: Hon. Michelle Tong, Judge
Deputy Court Clerk: RosaLinda Ponce
------------
Matter is on calendar for Petitioner's Request for Ex Parte Orders.
------------
All remote appearances are conducted through BlueJeans (a video platform) in accordance with San Francisco Local Rules of Court.
------------
No appearances required.
After review of the pleadings, the Court finds good cause to order the following:
Ex Parte request for orders are hereby denied. Both Temporary Order and Request for Order are filed, copies available for pick up in room 402, Monday thru Friday, 2:30pm to 4pm. Court notified Petitioner;s counsel to retrieve ex parte paperwork. Matter not reported.

DocuSign Envelope ID: 42FA9E53-F415-4B7C-A    B57B23EE360

**FL-303**

| PARTY WITHOUT ATTORNEY OR ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: Douglas L. Rappaport (136194)
FIRM NAME: LAW OFFICES OF DOUGLAS L. RAPPAPORT
STREET ADDRESS: 260 California Street, Suite 1002
CITY: San Francisco    STATE: CA    ZIP CODE: 94111
TELEPHONE NO.: (415) 989-7900    FAX NO.: (415) 989-7950
E-MAIL ADDRESS: admin@sfcrimlaw.com
ATTORNEY FOR (name): CHRISTOFFER TH▮▮▮▮▮

**FILED**
Superior Court of California
County of San Francisco

**NOV 29 2023**

CLERK OF THE SUPERIOR COURT
By _____
Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center Courthouse

PETITIONER: C▮▮▮▮▮ T▮▮▮
RESPONDENT: KAILIN WANG
OTHER PARENT/PARTY:

| DECLARATION REGARDING NOTICE AND SERVICE OF REQUEST FOR TEMPORARY EMERGENCY (EX PARTE) ORDERS | CASE NUMBER: FDV-19-814465 |
|---|---|

**NOTICE:** Do not use this form to ask for domestic violence restraining orders. Before completing this form, read your court's local procedures for requesting temporary emergency orders and obtaining the information needed to complete item 2 of this form. Courts may grant temporary emergency orders with or without an emergency hearing. Find local rules at courts.ca.gov/3027.htm.

1. I am (specify) ☐ attorney for ☒ petitioner ☐ respondent ☐ other parent/party
   ☐ not a party in the case (name and title/relationship to party):

2. I ☒ did ☐ did not give notice (select all that apply)
   ☒ that there will be an emergency court hearing ☒ that papers will be submitted to the court on the request
   ☒ for temporary emergency (ex parte) orders
   ☐ to reschedule a hearing ☐ to reschedule a hearing involving temporary emergency (ex parte) orders
   on the date, time, and location indicated below:

   Date: November 30, 2023    Time: 1:30 p.m. ☒ Dept.: 403 ☐ Room:
   Address of court: ☒ same as noted above ☐ other (specify):

3. **NOTICE** (If you gave notice, complete item 3a. If you did not give notice, complete item 3b or 3c.)
   a. ☒ I gave notice as described in items (1) through (5) below:
      (1) I gave notice to (select all that apply)
         ☐ petitioner.            ☐ petitioner's attorney.
         ☒ respondent.           ☐ respondent's attorney.
         ☐ other parent/party.   ☐ other parent's/party's attorney.
         ☐ child's attorney.     ☐ other (specify):
      (2) I gave notice on (date): November 29, 2023    at: 9:30 ☒ a.m. ☐ p.m.
         ☐ personally        at (location):                                    California.
         ☐ by telephone      using telephone no.:
         ☐ by fax            using fax no.:
         ☐ by voicemail      using voicemail no.:
         ☒ by electronic means (if permitted) (specify electronic service address of person): via File&ServeXpress
         ☐ by overnight mail or other overnight carrier (specify address of delivery):

      (3) I gave notice (select one)
         ☒ by 10 a.m. the court day before this emergency hearing.
         ☐ after 10 a.m. the court day before this emergency hearing because of the following exceptional circumstances (specify):

*FILED BY FAX*

Form Approved for Optional Use
Judicial Council of California
FL-303 [Rev. July 1, 2020]

**DECLARATION REGARDING NOTICE AND SERVICE OF REQUEST
FOR TEMPORARY EMERGENCY (EX PARTE) ORDERS**

Family Law, §§ 2045, 3062–3064,
4620, 7710
Cal. Rules of Court, rules 5.151–5.169
www.courts.ca.gov

DocuSign Envelope ID: 42FA9E53-F415-4B7C-A9⎯⎯CB57B23EE380

**FL-303**

| | |
|---|---|
| PETITIONER: CHR▮▮▮▮▮▮▮▮▮▮▮<br>RESPONDENT: KAILIN WANG<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>FDV-19-814465 |

(4) I notified the person in 3a(1) that the following temporary emergency orders are being requested *(specify)*:

See FL-305

(5) The person in 3a(1) responded as follows: ☐ Attachment 3a(5)


(6) I ☒ do ☐ do not believe that the person in 3a(1) will oppose the request for temporary emergency orders.

b. ☐ **Request for waiver of notice.** Due to exceptional circumstances, I did not give notice about the request for temporary emergency orders. I ask that the court waive notice to the other party to help prevent *(specify)*

   (1) ☐ immediate danger or irreparable harm to myself (or my client) or to the children in the case.

   (2) ☐ an immediate risk that the children in the case will be removed from the state of California.

   (3) ☐ immediate loss or damage to property subject to disposition in the case.

   (4) ☐ other exceptional circumstances *(specify)*:


Facts showing exceptional circumstances in support of the request to waive notice include *(specify)*: ☐ Attachment 3b


c. ☐ **Unable to provide notice.** I did not give notice about the request for temporary emergency orders. I used my best efforts to tell the opposing party when and where this hearing would take place but was unable to do so. The efforts I made to inform the other person were *(specify below)*: ☐ Attachment 3c


4. ☒ **SERVICE OF DOCUMENTS**

  a. The following documents were served on

   ☐ petitioner ☐ petitioner's attorney ☐ other parent/party ☐ other parent's/party's attorney

   ☒ respondent ☐ respondent's attorney ☐ child's attorney ☐ other *(specify)*:

  before the request was filed with the court:

   (1) ☒ A copy of *Request for Order* (form FL-300) for temporary emergency orders, and *Temporary Emergency (Ex Parte) Orders* (form FL-305).

   (2) ☐ A copy of a request to reschedule hearing and *Order on Request to Reschedule Hearing* (form FL-309). Form FL-306 may be used for the request.

   (3) ☐ A copy of a request to reschedule hearing involving temporary emergency (ex parte) orders and *Order on Request to Reschedule Hearing* (form FL-309). Form FL-307 may be used for the request.

   (4) ☐ Other documents *(specify)*:

  b. **Documents were served on** *(date)*: 11/29/2023 at 9:30 ☒ a.m. ☐ p.m.

   ☐ personally at *(location)*: , California.

   ☐ by fax on using fax no.:

   ☒ by electronic means *(if permitted) (specify electronic service address of person served)*: via File&ServeXpress

   ☐ by overnight mail or other overnight carrier *(specify address of delivery)*:


  c. Documents were not served on the opposing party due to the exceptional circumstances specified in

   ☐ 3b, above. ☐ 3c, above. ☐ Attachment 4c.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 11/29/2023

▮▮▮▮▮▮▮▮▮▮

(SIGNATURE)

DocuSign Envelope ID: DACA7A41-6B28-4121-B3⬚ ⬚3D5D596C7E

**FL-300**

| PARTY WITHOUT ATTORNEY OR ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|
| NAME: Douglas L. Rappaport (136194) | | |
| FIRM NAME: LAW OFFICES OF DOUGLAS L. RAPPAPORT | | |
| STREET ADDRESS: 260 California Street, Suite 1002 | | |
| CITY: San Francisco   STATE: CA   ZIP CODE: 94111 | | |
| TELEPHONE NO.: (415) 989-7900   FAX NO.: (415) 989-7950 | | |
| E-MAIL ADDRESS: admin@sfcrimlaw.com | | |
| ATTORNEY FOR (name): ▮▮▮▮▮ HYGESEN | | |

**FILED**
San Francisco County Superior Court

**NOV 30 2023**

CLERK OF THE COURT

BY: _____ Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Francisco
STREET ADDRESS:    400 McAllister Street
MAILING ADDRESS:    400 McAllister Street
CITY AND ZIP CODE:   San Francisco, CA 94102
BRANCH NAME:   Civic Center Courthouse

PETITIONER: ▮▮▮▮▮ ▮▮▮▮▮
RESPONDENT: KAILIN WANG
OTHER PARENT/PARTY:

| REQUEST FOR ORDER   [ ] CHANGE   [X] TEMPORARY EMERGENCY ORDERS | CASE NUMBER: |
|---|---|
| [ ] Child Custody   [X] Visitation (Parenting Time)   [ ] Spousal or Partner Support | FDV-19-814465 |
| [ ] Child Support   [ ] Domestic Violence Order   [ ] Attorney's Fees and Costs | |
| [ ] Property Control   [ ] Other (specify):   ✗ DENIED ✗ | |

### NOTICE OF HEARING

1.  TO (name(s)): Kailin Wang
     [ ] Petitioner   [X] Respondent   [ ] Other Parent/Party   [ ] Other (specify):

2.  **A COURT HEARING WILL BE HELD AS FOLLOWS:**

     a.  Date:   **November 30, 2023**   Time:   **1:30 p.m.**   [X] Dept.: 403   [ ] Room.:
     b.  Address of court   [X] same as noted above   [ ] other (specify):

3.  **WARNING to the person served with the *Request for Order*:** The court may make the requested orders without you if you do not file a *Responsive Declaration to Request for Order* (form FL-320), serve a copy on the other parties at least nine court days before the hearing (unless the court has ordered a shorter period of time), and appear at the hearing. *(See form FL-320-INFO for more information.)*

     *(Forms FL-300-INFO and DV-400-INFO provide information about completing this form.)*

### COURT ORDER
(FOR COURT USE ONLY)

**It is ordered that:**

4.  [ ] Time   [ ] for service   [ ] until the hearing   is shortened. Service must be on or before (date):

5.  [ ] A *Responsive Declaration to Request for Order* (form FL-320) must be served on or before (date):

6.  [ ] The parties must attend an appointment for child custody mediation or child custody recommending counseling as follows (specify date, time, and location):

7.  [ ] The orders in *Temporary Emergency (Ex Parte) Orders* (form FL-305) apply to this proceeding and must be personally served with all documents filed with this *Request for Order*.

8.  [ ] Other (specify):

Date:  November 30, 2023

_____
JUDICIAL OFFICER

Page 1 of 4

Form Adopted for Mandatory Use
Judicial Council of California
FL-300 [Rev. July 1, 2016]

**REQUEST FOR ORDER**

Family Code, §§ 2045, 2107, 6224,
6226, 6320-6326, 6380-6383;
Government Code, § 26826
Cal. Rules of Court, rule 5.92
www.courts.ca.gov

FILED BY FAX

GARY L. BELL #6485
Assistant Attorney General
SEAN REYES #7969
UTAH ATTORNEY GENERAL
Attorneys for the State of Utah
55 North University Ave. Suite 219
Provo, Utah 84601
Email: agcppr@agutah.gov
Telephone: (801) 812-5200

---

## IN THE FOURTH DISTRICT JUVENILE COURT

## UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| STATE OF UTAH<br>In the interest of: | **SHELTER REQUEST** |
| WANG, Kayson          11-26-2018 | Case No. |
| Person under 18 years of age | Judge Smith |

The State of Utah, through counsel, request that the court schedule a shelter hearing for the

above-named child who was removed from the care of the parents on March 7, 2019.

Dated this 8th day of March 2019.

SEAN D. REYES
UTAH ATTORNEY GENERAL

/s/Gary L. Bell
GARY L. BELL
Assistant Attorney General

549

## IN THE
## COUNTY OF UTAH, STATE OF UTAH

| State of Utah | |
|---|---|
| vs. | **Affidavit of Probable Cause** |
| **BELL, GARY LEE**<br>Date Of Birth: 07/10/1956<br>2044 E 30 NORTH SPANISH FORK. UT 84660 | |
| Arrestee | |

### On 09/13/2022 17:30 the defendant was arrested for the offense(s) of:

| | Offense Date | Offense Description | Enhancement | Statute | Severity | Court |
|---|---|---|---|---|---|---|
| 1 | 09/13/2022 | AGGRAVATED SEXUAL ABUSE OF A CHILD | | 76-5-404.3(3) | F1 | DST |
| 2 | 09/13/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 3 | 09/13/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 4 | 09/13/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 5 | 09/13/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 6 | 09/13/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 7 | 09/13/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 8 | 09/13/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 9 | 09/13/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 10 | 09/13/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 11 | 09/13/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 12 | 09/13/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 13 | 09/13/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 14 | 09/13/2022 | SODOMY ON A CHILD | | 76-5-403.1(3) | F1 | DST |

### I believe there is probable cause to charge the defendant with these charges because:

On September 13, 2022, I was working as a Detective in the Special Victims Unit for the Utah County Sheriff's Office. I previously investigated a Cyber Tip from The National Center for Missing and Exploited Children (NCMEC) for Child Sexual Abuse Material (CSAM), where a search warrant was served on the address 2044 E 30 N Spanish Fork, Utah 84660 for the person Gary Bell. During the course of the search warrant all electronics were seized and had a forensic download conducted by a forensic technician. The forensic technician provided me with the data extracted from the devices seized from the above address.

On the above date I was reviewing the data on a micro SD card belonging to Gary Bell when I found a series of nine photos depicting a male with his jeans pulled down to his knees exposing an erect penis. There is a child approximately 1-2 years old in the photos looking at the penis and touching the penis. I recognized the background of the photos as looking like the front room of the above address. I accessed crime scene photos taken the day of the warrant service and found a photo of the front room and determined this was the same room in the CSAM photo's. The couch in both photos is the same as well as the carpet. There are also children's toys that are the same in both photos, a yellow school buss and two stuffed animals. The day of the warrant service the occupants of the home were Gary Bell, his wife and a 1-2 year old granddaughter that Gary's wife said they are caretakers for during the week. I recognized the child in the CSAM photo's as the granddaughter.

Upon further investigation video file 20220125_161745.mp4 was found and it is a video of the above described series of photos. It depicts the 1-2 year old female child touching the adult males erect penis with her hands and at two different times putting her mouth on the penis.

It should be noted there are hundreds of photo's of Gary Bell nude on the

extraction and the adult penis in the video looks exactly like Gary's in the full nude photo's he had taken of himself.

I continued to look through the photo's and found two photo's of a 1-2 year old female child that showed her bare genitals. I looked at the EXIF data for both photo's, which shows the device the photo's were taken on and the creation date of the photos. Both photo's were taken on a Samsung cell phone model #SM-A102U1 which is the same cell phone seized from Gary during the course of the warrant service.

I responded to the above address and arrested Gary Bell and transported him to the Utah County Jail. While en route to the jail Gary stated he thought the photo's and video was erased because he was disgusted with himself over them.

Gary was booked on Aggravated Sodomy on a Child, Aggravated Sexual Abuse of a Child and Manufacturing Child Sexual Abuse Material x12

By submitting this affidavit, I declare under criminal penalty of the State of Utah that the foregoing is true and correct.
/S/ Robertson, Cassandra

---

**Officer Name:** UCCSMITH - Cassandra Robertson          **Probable Cause Entered:** 09/13/2022 18:10
**A sworn officer with:** UT0250000 - UCSO                      **Probable Cause ID:** 168845
**Agency Case** 22UC11255                                            **Suggested Bail Amount:**

**SUBMISSION IDENTIFICATION INFORMATION**
**Booking Agency:** Utah County Sheriff Office          **Booking Agency ORI:** UT0250000
**Agency Inmate ID:** 420682          **SID:** NONE          **OTN:** 64063738
**Arrest Date/Time:** 09/13/2022 17:30          **FBI ID:** 588455V8

IN THE

## COUNTY OF UTAH, STATE OF UTAH

State of Utah

vs.

BELL, GARY LEE
Date Of Birth: 07/10/1956
2044 E 30 NORTH SPANISH FORK. UT 84660

Arrestee

## Affidavit of Probable Cause

**On 08/24/2022 10:00 the defendant was arrested for the offense(s) of:**

| | Offense Date | Offense Description | Enhancement | Statute | Severity | Court |
|---|---|---|---|---|---|---|
| 1 | 08/24/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 2 | 08/24/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 3 | 08/24/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 4 | 08/24/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 5 | 08/24/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |
| 6 | 08/24/2022 | SEXUAL EXPLOITATION OF A MINOR | | 76-5B-201(3) | F2 | DST |

**I believe there is probable cause to charge the defendant with these charges because:**

On August 4, 2022, I was working as a detective in the Special Victims Unit for the Utah County Sheriff's Office. I reviewed the information for a cyber tip from the National Center for Missing and Exploited Children (NCMEC). The cyber tip #125704231 was made by MeWe and reported that on May 22, 2022 at 0552 hours images depicting child sex abuse material (CSAM) was uploaded from the IP Address 67.199.173.218. The name for the account was G B with an e-mail glbell0710@gmail.com.

IMAGES

I viewed the reported images and found the following as described:

[The affidavit at this point contains detailed descriptions of six images (Image 012.jpeg, 014.jpg, 015.jpg, 016.jpg, 017.jpg, and 019.jpg) depicting child sexual abuse material. The explicit descriptions of the sexual exploitation of minors are omitted from this transcription.]

After obtaining a judicial order for the IP Address subscriber information I was able to identify the suspect as Gary Lee Bell DOB 07/10/1956, address 2044 E 30 N Spanish Fork, Utah 84660.

An affidavit for a search warrant was submitted and a search warrant for the above address signed by Judge Denise Porter

# Marin County Sheriff - Coroner Division
## *Report Of Death Worksheet*

## 1

| MODE | **Suicide** | CASE # | **CR2300020** | **Master File** |
|---|---|---|---|---|
| STATUS | **External Exam** | DEPUTY | **Emily Mandel** | |

## CASE INFO

| REPORTED BY | AGENCY | DATE | TIME | Call Back Phone |
|---|---|---|---|---|
| Sergeant Dobbins | Marin County Sheriffs Office (MCSO) | 01-21-2023 | 1204 | ▮ |

| NEWS RELEASE | NAME RELEASABLE | ROLL-OUT? | MEDIUM | SPECIAL CIRCUMSTANCES |
|---|---|---|---|---|
| No | Yes | Yes | | None |

CONTROLLED DOCUMENT
Duplication or Reissuance
Forbidden by Law

Released by:
Marin County Sheriff's Office
Coroner Division

## DECEDENT INFO

3/21/2023

| 1 NAME (FIRST) | 2 (MIDDLE) | 3 (LAST) |
|---|---|---|
| **Darrick** | **Tracey** | **CHASE** |

| AKA | TOE TYPE/NUMBER | PHONE |
|---|---|---|
| | | |

| 20 ADDRESS | 21 CITY | 25 STATE | 23 ZIP |
|---|---|---|---|
| ▮ | Novato | CA | 94949 |

| 6 SEX | 14 RACE | 4 DOB | 5 AGE | RELATED CASE NUMBERS |
|---|---|---|---|---|
| Male | ▮ | ▮ | 58 yrs | |

| BODY BAG # | TOE TAG | 10 SS # | HEIGHT | WEIGHT | HAIR | EYES |
|---|---|---|---|---|---|---|
| 3594648 | 2023020 | ▮ | ▮ | ▮ | ▮ | ▮ |

| DRIVER'S LIC # | STATE | HOW IDENTIFIED | |
|---|---|---|---|
| ▮ | CA | | Fingerprint comparison to CADL. |

## LEGAL NEXT OF KIN

▮

## PLACE/DEATH OCCURRED

| 7 DATE | 8 TIME | DAY OF DEATH | PRONOUNCED BY |
|---|---|---|---|
| 01-21-2023 | 1129    FND | Saturday | Novato Fire Protection District Paramedic J. Pace |

| 101 PLACE OF DEATH | 102 IP-ER/OP-DOA | FAC OTHER THAN HOSPITAL |
|---|---|---|
| Garage of Own Residence | | Decedent's Home |

| 105 FACILITY ADDRESS OR LOCATION WHERE FOUND | 106 CITY |
|---|---|
| ▮ | Novato |

## INVESTIGATIVE SUMMARY

ADDITIONAL NARRATIVE ATTACHED  [X] YES  [ ] NO

**MEDICAL HISTORY / SUMMARY / RX:**

A 58-year-old male, with ▮ The subject was last noted to be responsive in the early morning hours, on 01/21/2023, at approximately 0100 hours, during which time the subject's son heard the subject close his bedroom door and presumed he went to sleep for the night. The subject's son nor his son's girlfriend at the residence hear any noises throughout the night. At approximately 1105 hours, the subject's son went to the garage to locate cereal and noticed the subject to unresponsive. Emergency services were contacted, and the subject's son and MCSO Deputies attempted Cardiopulmonary Resuscitation prior to the arrival of Novato Fire Protection District personnel to the scene. Novato Fire Protection District Paramedic J. Pace pronounced the subject deceased at 1129 hours, with no additional resuscitative measures warranted. No signs of anything suspicious nor signs of foul play are suspected. The firearm was not altered, manipulated, or moved prior to my arrival. The subject utilized an unregistered pump action model 97 Winchester 12-gauge shotgun that reportedly belonged to his grandfather. A letter of intent/ holographic will was located by the subject's son on 01/22/2023 at their residence.

▮

## NOTE TO PATHOLOGY

# SUICIDE

Roger G. Fielding
CHIEF DEPUTY CORONER

| Last Updated By Alexandra Torres on 01/26/2023 | **1** of **7** | Date Printed: 02/27/2023 at 14:40 |
|---|---|---|

## Marin County Sheriff - Coroner Division
### *Report Of Death Worksheet*

| **2** | MODE | **Suicide** | CASE # | **CR2300020** | **Master File** | |
|---|---|---|---|---|---|---|
| | STATUS | **External Exam** | DEPUTY | **Emily Mandel** | | |

### MEDICAL

| TRANSPORTED FROM | ADMITTED TO? | DATE | TIME | M/R ORDERED | MED REC # | BLOOD ORDERED |
|---|---|---|---|---|---|---|
| | | | | Yes  01/21/2023 | | |

### CAUSE OF DEATH

| | TIME INTERVAL | 109 BIOPSY PERFORMED? |
|---|---|---|
| **107 CAUSE** (A)   Penetrating Shotgun Wound to Chest | Seconds | ☐ YES  ☒ NO |

| **DUE TO** (B) | | **110 AUTOPSY PERFORMED?** ☐ YES  ☒ NO |
|---|---|---|
| (C) | | **AUTOPSY #** A0020-23 JC    **EXAM #** E0021-23 EM |
| (D) | | **INDIGENT #** |

**112 OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RELATED TO CAUSE GIVEN IN 107**

None

CONTROLLED DOCUMENT
Duplication or Reissuance
Forbidden by Law
3/21/2023
Released by:
Marin County Sheriff's Office
Coroner Division

**113 WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? IF "YES" LIST TYPE OF OPERATION & DATE**

No

| ATTENDING PHYSICIAN | PHONE | DATE LAST ATTENDED | CAUSE GIVEN BY |
|---|---|---|---|
| | | | Joseph I Cohen, MD |

| 115 PHYSICIAN TO SIGN D.C. | ADDRESS | PHONE  415-473-6043 | | |
|---|---|---|---|---|
| Coroner | 1600 Los Gamos Drive, Suite 205, San Rafael, CA 94903 | DATE 01/26/2023 | TIME 0928 | |

### INJURY

| 119 SPECIFY MODE | 123 PLACE OF INJURY | 120 AT WK? | 121 DATE | 122 HOUR |
|---|---|---|---|---|
| Suicide | Garage of Own Residence | No | 01/21/2023 | Unknown |

**125 LOCATION (Include Zip Code)**

**DESCRIBE HOW INJURY OCCURRED**

Subject sustained a penetrating self-inflicted gunshot wound to the chest utilizing a shotgun.

### PROPERTY

| PROPERTY? ☐ YES  ☒ NO | PROP RLS'D? ☐ YES  ☒ NO | |
|---|---|---|

### LAW ENFORCEMENT

| AGENCY | AGENT | REPORT NUMBER |
|---|---|---|
| Marin County Sheriff's Office (MCSO) | Deputy Thomas | SO23-00158 |

### AUTOPSY

| ORDERED BY | DATE | TOX ORDERED | TOX RECEIVED | AGENT(S) TO ATTEND |
|---|---|---|---|---|
| JC | 01-24-2023 | | | |

### DISPO OF REMAINS

| PRESENT LOCATION | MORGUE STATUS | VEHICLE TOWED BY | |
|---|---|---|---|
| RELEASE | | | |

| TRANSPORTED BY | NOTIFIED BY | DATE | TIME | ARRIVED |
|---|---|---|---|---|
| | Emily Mandel | 01/21/2023 | 1209 | 1340 |

| 44 MORTUARY | PHONE OF MORTUARY |
|---|---|
| | |

| 3 | REVIEWED BY |
|---|---|

Last Updated By Alexandra Torres on 01/26/2023          **2** of **7**          Date Printed: 02/27/2023 at 14:40

## Marin County Sheriff - Coroner Division
### *Report Of Death Worksheet*

| **3** | *MODE* **Suicide** | *CASE #* **CR2300020** | **Master File** | |
| | *STATUS* **External Exam** | *DEPUTY* **Emily Mandel** | | |

## Coroner Investigation                                     02/27/2023

### MEDICAL HISTORY / SUMMARY / RX:

A 58-year-old male, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was found unresponsive in the garage of his unsecured residence, by his son, of an apparent self-inflicted gunshot wound to the chest. The subject was last noted to be responsive in the early morning hours, on 01/21/2023, at approximately 0100 hours, during which time the subject's son heard the subject close his bedroom door and presumed he went to sleep for the night. The subject's son nor his son's girlfriend at the residence hear any noises throughout the night. At approximately 1105 hours, the subject's son went to the garage to locate cereal and noticed the subject to unresponsive. Emergency services were contacted, and the subject's son and MCSO Deputies attempted Cardiopulmonary Resuscitation prior to the arrival of Novato Fire Protection District personnel to the scene. Novato Fire Protection District Paramedic J. Pace pronounced the subject deceased at 1129 hours, with no additional resuscitative measures warranted. No signs of anything suspicious nor signs of foul play were suspected. The firearm was not altered, manipulated, or moved prior to my arrival. The subject utilized an unregistered pump action model 97 Winchester 12-gauge shotgun that reportedly belonged to his grandfather. A letter of intent/ holographic will was located by the subject's son on 01/22/2023 at their residence.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### REPORTING PARTY INITIAL STATEMENT:

On 01/21/2023, at approximately 1204 hours, Sergeant Dobbins with the Marin County Sheriff's Office (MCSO) contacted the MCSO Communications Center to report the death of Darrick Tracey CHASE. I immediately phoned Sergeant Dobbins, who advised me of the following information in summary:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### DEATH / INJURY SCENE INVESTIGATION:

At approximately 1236 hours, I arrived on scene at the subject's residence and met with MCSO Deputy Robards and Thomas, who provided me with the following information in summary:

The subject was a divorce attorney with a lot of job-related stress and lack of sleep. Per the subject's son, the subject had one case as of recently that was particularly bothering him. Per the subject's son, the subject's son would make joking comments about suicide regarding schoolwork and the subject would reply "I'm not too far behind you." The subject had no reported history of prior suicidal ideations.

The subject was last noted to be responsive in the early morning hours, on 01/21/2023, at approximately 0100 hours, during which time the subject's son heard the subject close his bedroom door and presumed he went to sleep for the night. The subject's son nor his girlfriend at the residence hear any noises throughout the night.

The subject's residence was an approximately four bedroom/two bathroom residence with an attached single car garage at the back of a short driveway, facing toward ▮▮▮▮▮▮▮▮ The interior of the residence was overall well

| Last Updated By Alexandra Torres on 01/26/2023 | **3** of **7** | Date Printed: 02/27/2023 at 14:40 |

I wanted to slander someone.

My colleague Kashmir Hill and I were trying to learn who is responsible for — and profiting from — the growing ecosystem of websites whose primary purpose is destroying reputations.

So I wrote a nasty post. About myself.



Note: Identifying information and some names have been redacted throughout.

Then we watched as a constellation of sites duplicated my creation.

To get slander removed, many people hire a "reputation management" company. In my case, it was going to cost roughly $20,000.

We soon discovered a secret, hidden behind a smokescreen of fake companies and false identities. The people facilitating slander and the self-proclaimed good guys who help remove it are often one and the same.

# The Slander Industry

**By Aaron Krolik and Kashmir Hill**  April 24, 2021

## 1: The Stain

At first glance, the websites appear amateurish.

They have names like BadGirlReports.date, BustedCheaters.com and WorstHomeWrecker.com. Photos are badly cropped. Grammar and spelling are afterthoughts. They are clunky and text-heavy, as if they're intended to be read by machines, not humans.

But do not underestimate their power. When someone attacks you on these so-called gripe sites, the results can be devastating. Earlier this year, we wrote about a woman in Toronto who poisoned the reputations of dozens of her perceived enemies by posting lies about them.

To assess the slander's impact, we wrote a software program to download every post from a dozen of the most active complaint sites: more than 150,000 posts about some 47,000 people. Then we set up a web crawler that searched Google and Bing for thousands of the people who had been attacked.

For about one-third of the people, the nasty posts appeared on the first pages of their results. For more than half, the gripe sites showed up at the top of their image results.

These were the Google image results for " aaron krolik nyc ."



Note: Some image results have been blurred for privacy reasons.

Sometimes search engines go a step further than simply listing links; they display what they consider the most relevant phrases about whatever you're searching for.

One woman in Ohio was the subject of so many negative posts that Bing declared in bold at the top of her search results that she "is a liar and a cheater" — the same way it states that Barack Obama was the 44th president of the United States. For roughly 500 of the 6,000 people we searched for, Google suggested adding the phrase "cheater" to a search of their names.

The unverified claims are on obscure, ridiculous-looking sites, but search engines give them a veneer of credibility. Posts from Cheaterboard.com appear in Google results alongside Facebook

pages and LinkedIn profiles — or, in my case, articles in The New York Times.

That would be bad enough for people whose reputations have been savaged. But the problem is all the worse because it's so hard to fix. And that is largely because of the secret, symbiotic relationship between those facilitating slander and those getting paid to remove it.

## 2: The Spread

The posts I created featured an awkward selfie and described me as a "loser who will do anything for attention." We posted a version of the same insult on five gripe sites. Each selfie included a unique watermark that allowed us to track it if it showed up somewhere new. For an image posted to Cheaterboard.com , for example, we hid the domain name and the date in the file code.

```
# Aaron Krolik | New York | NYC

## Aaron Krolik is a complete loser. Will do ANYTHING for attention.
ANYTHING. Aaron Krolik. New York. NYC

watermark text:
cheaterboard.com 1.29.21


---

convert -size 450x200 -background none -fill white -gravity center
caption:"BUSTED" -shade 600x100 WATERMARK_FILE.png

composite -dissolve 50% -gravity center WATERMARK_FILE.png aaron.jpg
aaronbusted.jpg

convert aaronbusted.jpg -strip aaronbusted.jpg

exiftool aaronbusted.jpg

posted: 2:40pm east
```

The posts spread quickly. Inside two hours, the Cheaterboard one had popped up on FoulSpeakers.com. Within a month, the original five posts had spawned 21 copies on 15 sites.

What was the point of copying the posts? A big clue were the ads that appeared next to them, offering help removing reputation-tarnishing content.

The post on FoulSpeakers.com featured this ad for reputation management.



Note: Some identifying information and profanity have been redacted.

We contacted all of the sites that copied the original posts. Only two responded, and only one person consented to an interview: Cyrus Sullivan, who runs FoulSpeakers.com.

Mr. Sullivan, 37, of Portland, Ore., has been in the complaint-site business since 2008, when he started STDCarriers.com. It was inspired by his own experience; in his senior year at the University of Oregon, he said, he had sex with a woman who belatedly told him that she had herpes.

"I thought there needs to be a way to warn people about something like that," Mr. Sullivan said. STDCarriers.com let people anonymously post unverified information about people who they said had sexually transmitted diseases.

Mr. Sullivan said he hadn't made much money until 2012, when STDCarriers.com attracted national media attention. Anderson Cooper had a daytime talk show at the time, and he did a segment dressing down Mr. Sullivan and others who ran complaint sites. Mr. Sullivan's web traffic soared, and posts soon flooded the site.

After a couple of stints in jail — among other things, he was convicted of sending death threats to a woman and of throwing Sriracha Doritos into the face of police officers, "using the spicy dust as a weapon, like pepper spray," according to a court filing — he started FoulSpeakers.com in 2018. It billed itself as "a foul speech search engine and web archive" that



Cyrus Sullivan  The New York Times

captured awful things written about people on other sites, such as my post on Cheaterboard.com.

Mr. Sullivan told us that copying content was a great way to lure people to his sites. (He said he didn't feel bad about spreading unverified slander. "Teach children not to talk to strangers, then teach them not to believe what they read on the internet," he said.)

But there was a financial incentive as well. Mr. Sullivan had started a reputation-management service to help people get "undesirable information" about themselves removed from their search engine results. The "gold package" cost $699.99. For those customers, Mr. Sullivan would alter the computer code underlying the offending posts, instructing search engines to ignore them.

## 3: The Safecracker

Some reputation-management firms use adversarial tactics to get posts taken down. But cozier relationships are the norm.

For example, ads for 247Removal.com appear on a dozen prominent gripe websites, and were attached to some of the posts about me. 247Removal's owner is Heidi Glosser, 38. She said she didn't know how her ads had ended up on those sites.



Ms. Glosser charges $750 or more per post removal, which adds up to thousands of dollars for most of her clients. To get posts removed, she said, she often pays an "administrative fee" to the gripe site's webmaster. We asked her whether this was extortion. "I can't really give you a direct answer," she said.

Heidi Glosser  The New York Times

On the first page of Ms. Glosser's own Google search results is a link to a court ruling related to her 2003 conviction for burglary and safecracking. "It's

not related to me," she said. She urged us to do a background check on her, which confirmed her involvement.

Ms. Glosser said she had decided to try to help people improve their online reputations in 2018, after she watched an 11-minute documentary about revenge porn. The film focused on Scott Breitenstein, a former plumber who ran sites hosting nude photos of people posted without their consent.

Sites controlled by Mr. Breitenstein also were venues for unverified allegations about cheaters, scams, predators, deadbeats and "potential johns." After the documentary came out, Mr. Breitenstein told business partners that he had sold his websites. He didn't respond to requests for comment.

Ms. Glosser said her goal was to assist victims of Mr. Breitenstein and his ilk.

Ms. Glosser used to live near Mr. Breitenstein in Dayton, Ohio. She said that was a coincidence. "Dayton is not as small as everyone thinks it is," she said. She said she doesn't know Mr. Breitenstein.

Why, then, were Ms. Glosser and her deceased wife friendly with members of the Breitenstein family on Facebook?

Ms. Glosser wouldn't say.

## 4. Marilyn Monroe's Autograph

We noticed that the same ad kept appearing on the proliferating posts about me being a loser. It was a simple text ad for something called RepZe.com: "Remove Cheaters Sites Contents."

Most sidebar ads are programmatic. That means they are served up by an ad network with no involvement by the people who run a site, and they change every time you visit. That wasn't the case here. The RepZe ads were permanent fixtures, written into the websites' coding.

When Kashmir called RepZe, a woman identifying herself as Sofia refused to answer questions and said to email the company instead. Nobody responded to the emails.

When I reached out to RepZe via a form on its site to ask about removing one of the posts about me, Sofia called me. She said that for $1,500 the post would be removed within 24 hours. The removal would come with a "lifetime guarantee," she said.

She encouraged me to act quickly. "I don't want to scare you, but these posts can spread," she warned.

ADVERTISEMENT

At this point, we figured that when someone paid a company like RepZe to get a post removed, RepZe then paid the complaint site to delete it. But our understanding turned out to be incomplete at best.

RepZe claims to be based in a Denver suburb. But the company isn't registered for business in Colorado.

The address on its website belongs to Anytime Mailbox, which charges $9.99 per month to create the appearance of an office, accepting mail on someone's behalf and then scanning it and uploading it to a secure app. (Anytime's chief executive, Matt Going, said he couldn't answer questions about RepZe, except to say it was no longer a customer.)

The three people listed as RepZe employees have scant online presences and do not seem to exist. One page on the website includes a message from RepZe's chief executive, identified as "Mr. M. Moore." At the bottom of the message is what appears to be his signature. Upon closer inspection, it is Marilyn Monroe's autograph.

RepZe has promotional videos on YouTube. The people in the videos, including those who claimed to be employees or customers, are paid actors. (We identified them on a freelancing site, Fiverr, where they charged as little as $25 to appear in videos.)

This video featured "Matt from RepZe."



This is the promotional reel for the actor who played "Matt."



We tracked down actual customers of RepZe. All relayed the same basic story. They had hired the company to remove negative posts about them, which it quickly did. But then RepZe would threaten that, absent swift payment of the thousands of dollars the customers had agreed to pay, the posts would reappear and multiply.

"The content will be restored," a RepZe representative wrote in a text to one customer, who posted screenshots of the exchange on Facebook. "We are trying to help. You are trying to piss my ass off."

Then, months later, the posts would reappear.

One disgruntled customer created RepZeFraud.com under the pseudonym Greg Saint. He said he had paid RepZe $4,000 in 2019 to remove two negative posts. Months later, he said, copies of the posts began reappearing online, and he suspected RepZe was responsible. He created RepZeFraud.com to expose the person he thought was really behind the service: a 28-year-old web developer in India, Vikram Parmar.

## 5. A Clue in the Metadata

We had first heard Mr. Parmar's name months earlier, from a California software developer, Aaron Greenspan.

Mr. Greenspan runs PlainSite.org, which posts court documents and thus makes people's criminal records easier to find. He said one of those people, a convicted murderer, had tried to destroy his and his family's online reputations.

Mr. Greenspan could have paid to get the posts removed, but he didn't like the idea of ransom. Instead, he set out to unmask whoever was behind the sites and the reputation-management companies. This was easier said than done.

"You don't know where it is, who runs it, who hosts it," he said. "That's how they evade any accountability."

The websites use what are known as privacy proxy services to hide who owns them and where they're hosted. Mr. Greenspan combed through digital clues and tracked down lawsuits involving the sites — which he began cataloging on PlainSite — to map out the industry. He concluded that many sites appeared to be owned by a small handful of people. Every time he got in touch with one of them, that person would point him to other people and say they were the true bad actors.

Mr. Greenspan got in touch with RepZe, which had ads next to many of the posts attacking him. He pretended to be an interested customer. RepZe gave him a quote of $14,800 to remove 17 posts. The company sent a contract. Mr. Greenspan looked at the document's metadata and found "Vikram Parmar" listed as the author.

| | |
|---|---|
| File name: | Negative Content Removal Contract with Aaron.docx.pdf |
| Document type: | PDF document |
| File size: | 400 KB (400,325 bytes) |
| PDF version: | 1.7 |
| Page count: | 4 |
| Page size: | 8.5 x 14 inches |
| Title: | — |
| **Author:** | **Vikram Parmar** |
| Subject: | — |
| PDF Producer: | Microsoft® Word for Office 365 |
| Content creator: | Microsoft® Word for Office 365 |
| Creation date: | Apr 2, 2019 at 1:25 PM |
| Modification date: | Apr 2, 2019 at 1:25 PM |

A quick Google search revealed that Mr. Parmar faced criminal charges. In 2014, he had created a fake website that charged people money to apply for nonexistent jobs with India's Central Bureau of Investigation. Prosecutors in New Delhi charged him and a collaborator with criminal conspiracy. (Mr. Parmar claimed that an "unscrupulous client" had hired him to create what he thought was a legitimate website. The case is pending.)

Mr. Greenspan sent Mr. Parmar a message on Skype in September 2019. They began to chat. (Mr. Greenspan showed us screenshots of the chats.) He demanded that Mr. Parmar delete posts about him for free. Mr. Parmar removed one, on DirtyScam.com, and then their conversation became friendlier.

Mr. Parmar complained to Mr. Greenspan about the greediness of the owners of other complaint sites. One of them was a guy in Ohio named Scott Breitenstein, who Mr. Parmar said owned hundreds of sites that stole original content from "legitimate" ones.

Mr. Parmar told Mr. Greenspan that he'd had to pay Mr. Breitenstein to get copycat posts taken down. He said Mr. Breitenstein had instructed him to send checks to another person. Her name was Heidi Glosser.

## 6. One of the Gentlemen

We reached Mr. Parmar via Skype in February. He was on vacation in the Indian seaside town of Goa. We said we were working on an article about the reputation-management industry. He denied involvement, saying he was "a real estate builder and also working on some government projects."

Then we laid out what we knew.

We had linked Mr. Parmar not just to RepZe but also to another cleanup service, RemoveReports.com. In addition, we had found that he was involved with ReportCheater.com, WebActivism.com, WtfCheater.com, RealtorScam.com and DirtyScam.com. All were listed by RepZe or RemoveReports as places from which they could remove content.

At least one of the sites had been registered under Mr. Parmar's name . Others were linked to him in different ways. Some have the same Google ad account; some share IP addresses; some had been registered to Mr. Parmar's email address.

| Domain Name: | REALTORSCAM.COM |
| Registry Domain ID: | 2094816991_DOMAIN_COM–VRSN |

| Registrar WHOIS Server: | Whois.bigrock.com |
| --- | --- |
| Registrar URL: | www.bigrock.com |
| Updated Date: | 2019-03-10T12:57:06Z |
| Creation Date: | 2017-02-02T04:02:28Z |
| Registrar Registration Expiration Date: | 2021-02-02T04:02:28Z |
| Registrar: | BigRock Solutions Ltd. |
| Registrar IANA ID: | 1495 |
| Domain Status: | clientTransferProhibited https://icann.org/epp #clientTransferProhibited |
| Registry Registrant ID: | Not Available From Registry |
| **Registrant Name:** | **vikram parmar** |
| Registrant Organization: | – |
| Registrant Street: | ahmedabad |
| Registrant City: | Ahmedabad |
| Registrant State/Province: | Other |
| Registrant Postal Code: | 382424 |
| Registrant Country: | IN |

In other words, Mr. Parmar seemed to be running sites that produced slander and running sites that made money by removing that slander.

Mr. Parmar sounded uneasy. He said anyone could use anyone else's email address to register a site. Then he admitted to doing some reputation-management work. Then he asked that his name not be used in this article. Then he suggested other people in the industry whom we should investigate instead of him. (The list included Mr. Breitenstein and Ms. Glosser.)

"You are pretty much accurate but targeting a wrong guy," he wrote in a Skype message. "I am just mediator," he added. "I am one of the gentleman."

Mr. Parmar resurfaced in April, about 20 minutes after we emailed RepZe seeking comment for this article. In messages over Skype, he said he didn't own the complaint sites but was providing them

services, including helping them improve their performance on search engines.

Why were his email address and Google ad accounts linked to the complaint sites? Mr. Parmar didn't have a coherent explanation.

## 7. My Experiment Ends

Three months after my experiment started, my search results were suffering the consequences. Bing helpfully  recommended adding "loser" to a search for "Aaron Krolik."  When you Googled my name, Cheaters.news was at the top of the image results.

Note: Some identifying information has been redacted.

There's no way for me to delete the posts that I wrote; the slander sites don't allow that. Based on estimates provided by removal services, it would cost me about $20,000 to get the posts taken down — and even then, more posts might appear in their place.

There is another way to lessen the posts' impact. In certain circumstances, Google will remove harmful content from individuals' search results, including links to "sites with exploitative removal practices." If a site charges to remove posts, you can ask Google not to list it.

Google didn't advertise this policy widely, and few victims of online slander seem aware that it's an option. That's in part because when you Google ways to clean up your search results, Google's solution is buried under ads for reputation-management services like RepZe.

I eventually found the Google form. I submitted a claim to have one URL removed. "Your email has been sent to our team," Google told me.

Three days later, I received an email from Google saying the URL would be removed from my search results. Later that day, it was gone. I submitted the 25 other links. They were removed, too, but images from gripe sites kept reappearing in my search results.

Other people who have used Google's form reported similar experiences: It mostly works, but is less effective for images. And if you have an attacker who won't stop writing posts about you, it's almost useless. The slander remains.

Mr. Parmar, a self-described expert in how to influence search results, has recently taken steps to burnish his own reputation. Around the time that we started trying to reach him, articles began appearing online casting him in glowing terms.

One piece gushed about his "rags-to-riches story." Another, on Freelancer.com, said his web-marketing business generated $2 million a year in revenue. Mr. Parmar was quoted as saying he had bought cars for himself and his family.

"I live like a BOSS," he said.

> If you've had experiences with the gripe sites, clean-up services or Google's removal tool, please tell us about them: kashmir.hill@nytimes.com and aaron.krolik@nytimes.com.

**Correction:** May 5, 2021
An earlier version of this article incorrectly described how Anytime Mailbox handles mail for clients. It scans the correspondence and uploads it to a secure server; it does not email scans to clients.