IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>KAILIN WANG,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER SUSTAINING IN PART DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT<br><br>Case No. 2:24-CR-163-TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Kailin Wang's objections to her Presentence Investigation Report.[1] For clarity and to simplify the issues to be addressed at sentencing, the Court now rules on the objections raised by Defendant.

## I. BACKGROUND

Defendant was indicted on May 8, 2024, on two counts of interstate cyberstalking in violation of 18 U.S.C. §§ 2261A(2) and 2265A(a) (Counts 1 and 2), and two counts of making a false statement in violation of 18 U.S.C. § 1001(a)(2) (Counts 3 and 4).[2] On September 30, 2025, Defendant pleaded guilty to two counts of cyberstalking.[3] Following numerous continuances, Defendant's sentencing hearing is scheduled for September 1, 2026.

[1] Docket No. 256.

[2] Docket No. 1.

[3] Docket Nos. 88, 89.

## II. DISCUSSION

Federal Rule of Criminal Procedure 32(i)(3) provides as follows:

> At sentencing, the court: (A) may accept any undisputed portion of the presentence report as a finding of fact; [and] (B) must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing.

"[T]he district court may rely on facts stated in the presentence report unless the defendant has [properly] objected to them. When a defendant objects to a fact in a presentence report, the government must prove that fact at a sentencing hearing by a preponderance of the evidence."[4] "The government can meet its burden by either presenting new evidence at sentencing or referring to evidence presented at trial."[5] However, "to invoke the district court's Rule 32 fact-finding obligation, the defendant is required to make specific allegations of factual inaccuracy."[6] More specifically, a defendant has "an affirmative duty to make a showing that the information in the PSR was unreliable and articulate the reasons why the facts contained therein were untrue or inaccurate."[7]

### A. Requested Amendments or Objections to the PSR

<u>Objection 1</u>: Paragraph 7 details a motion filed by the government to revoke Defendant's pretrial release, which the government subsequently withdrew, and the underlying allegations contained therein. Defendant does challenge the accuracy of paragraph 7, but requests specified language be added "to make clear that she disputed the allegations." The requested language

---

[4] *United States v. Harrison*, 743 F.3d 760, 763 (10th Cir. 2014) (internal quotation marks and citation omitted).

[5] *United States v. McDonald*, 43 F.4th 1090, 1095 (10th Cir. 2022).

[6] *United States v. Chee*, 514 F.3d 1106, 1115 (10th Cir. 2008) (internal quotation marks and citation omitted).

[7] *McDonald*, 43 F.4th at 1096 (internal quotation marks and citation omitted).

includes the basis of Ms. Wang's dispute. Paragraph 7 notes that "[D]efendant denied the allegations contained in the government's motion to revoke her pretrial release, and the motion was never adjudicated." The PSR therefore makes clear that Defendant disputed the underlying allegations and that those allegations were never proven. An explanation of why Defendant disputed the underlying allegations or her arguments in support of the dispute are immaterial where the motion is no longer before the Court, and the underlying allegations have not and will not be considered by the Court in its sentencing determination. Objection 1 is therefore overruled.

Objection 2: Paragraph 25 describes some of the communications between Victim 1 and Defendant during Defendant's pregnancy regarding Victim 1's desire to obtain a paternity test, among other things. Defendant objects to the paragraph's "mischaracterization" of the described communication insomuch as it suggests she did not want a paternity test performed and that it was solely her fault Victim 1 was not informed when the baby was born. A ruling on the factual assertions is unnecessary because the matter will not affect sentencing and because the court will not consider the matter in sentencing. The Court will therefore request that the probation officer change Paragraph 25 to read in whole: "On November 26, 2018, the defendant gave birth to K.W. C.T. would subsequently be determined to be the biological father."

Objection 3: The PSR makes several references to photos Defendant posted on online platforms of "a dismembered fetus."[8] Defendant objects to the use of the term "dismembered fetus" as "misleading and inflammatory," and requests that it be replaced with "aborted fetus[]."[9] Ms. Wang does not dispute that the photos were posted as described in the PSR or that

---

[8] *See* Docket No. 254 ¶¶ 31, 34, 35.

[9] Docket No. 256, at 3.

description of the photos is inaccurate, but argues that the term "dismembered fetus" "suggests violence, which was not her intent in posting the images."[10] Because the term "aborted fetus" versus "dismembered fetus" is of no consequence to the Court for purposes of its sentencing determination, the Court will sustain the objection, and request that the probation officer amend the PSR to replace the term "dismembered" with "aborted."

<u>Objection 4</u>: Defendant objects to the offense level enhancements under U.S.S.G. § 2A6.2(b), included in paragraphs 54 and 60. Section 2A6.2(b) provides that the base offense level of stalking is 18, but provides for an increase of two to four levels if the offense involved "a violation of court protection order" or "a pattern of activity involving stalking, threatening, [or] harassing," among other things.

An element of 18 U.S.C. § 2261A(2), the statute to which Defendant pleaded guilty, requires proof that she engaged in a "course of conduct" that causes another person to be in fear of death or serious bodily injury or experience substantial emotional distress. Defendant argues that "[t]here is no discernible difference between the conduct making out an element of the offense itself and the conduct that satisfies the addition[al] enhancement under the guidelines"—namely, the "pattern of activity" enhancement.[11] Therefore, Defendant argues that the two-point enhancement for engaging in a "pattern of activity" is impermissible double counting as applied to 18 U.S.C. § 2261A(2).

The Tenth Circuit has upheld this Court's rejection of this argument in a previous case.[12] "[I]mpermissible double counting . . . occurs when the same conduct is used to support separate

---

[10] *Id.*

[11] *Id.*

[12] *United States v. Bracken*, No. 25-4005, 2025 WL 3470848, at *4 (10th Cir. Dec. 3, 2025) ("There is no non-frivolous argument that the district court engaged in impermissible double counting . . . rather, it correctly concluded the []§ 2A6.2(b)(2) enhancement . . . applied to

increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes."[13] "The term 'course of conduct' means a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose."[14] While the application notes to § 2A6.2 explain that:

> Pattern of activity involving stalking, threatening, harassing, or assaulting the same victim" means any combination of two or more *separate instances of stalking*, threatening, harassing, or assaulting the same victim, whether or not such conduct resulted in a conviction. For example, a single instance of stalking accompanied by a separate instance of threatening, harassing, or assaulting the same victim constitutes a pattern of activity for purposes of this guideline.[15]

Therefore, the enhancement applies if the evidence supports that Defendant engaged in separate instances of stalking behavior. The unchallenged assertions of Defendant's offense conduct included in the PSR and Defendant's Statement in Advance of Plea each support that Defendant engaged in numerous separate instances of stalking, threatening, and harassing behavior against both Victim 1 and Victim 2 over an extended period of time.

Defendant sent numerous harassing and threatening messages to Victim 2 via different mediums on numerous separate occasions. She further contacted Victim 2's friends and family members, initiated hundreds of calls to Victim 2, posted false statements about Victim 2, and made false accusations about him to law enforcement. These separate instances of stalking, threatening, and harassing behaviors were extensive and troubling.

---

[the defendant's stalking] conduct."); *see also United States v. Lloyd*, 809 F. App'x 750, 756 (11th Cir. 2020) (upholding district court's application of a two-level enhancement under U.S.S.G § 2A6.2(b)(1)(E) to a cyberstalking conviction under 18 U.S.C. § 2261A(2)).

[13] *Bracken*, No. 25-4005, 2025 WL 3470848, at *4 (internal quotation marks and citation omitted).

[14] 18 U.S.C. § 2266(2).

[15] U.S.S.G. § 2A6.2, Application Note 1 (emphasis added).

Similarly with Victim 1, Defendant sent numerous derogatory messages regarding Victim 1 to Victim 1's friends and family, made derogatory online posts about Victim 1 and his family, through various mediums and accounts, and made numerous reports against Victim 1 and his family to the Internet Crimes Complaint Center. Again, these separate instances of stalking, threatening, and harassing behaviors were extensive and troubling.

Accordingly, the Court finds the "pattern of activity" enhancement is supported by the record before the Court and will overrule Defendant's objection. This holding is consistent with other circuit court rulings.[16]

Defendant also objects to the two-level enhancement she received for violating a protective order, arguing that there is no evidence of a court finding that the protective order was violated. However, § 2A6.2(b)(1)(E) does not appear to require a court finding that a protective order was violated. Here, Defendant does not dispute that a civil restraining order was issued against her on March 6, 2019, as described in paragraph 37 of the PSR, which prohibited Defendant from harassing Victim 1, among other things. Defendant likewise does not dispute the accuracy of the paragraphs describing Defendant's conduct toward Victim 1 following the issuance of the March 6 restraining order. Further, in Defendant's Statement in Advance of Plea she admits that, on March 16, 2019, and on June 15, 2019, she reported Victim 1 to the federal Internet Crimes Complaint Center "in order to continue harassing and intimidating" Victim 1.[17] Based on these admissions, the Court finds the record is sufficient to support that Defendant

---

[16] *See Bracken*, No. 25-4005, 2025 WL 3470848, at *4; *Lloyd*, F. App'x at 756 ("As the record reflects, on two separate occasions, Lloyd threatened to ruin his victim's 'good girl reputation' by sharing photos that he had received with her friends and parents, unless he received topless pictures of the victim. Threats like these are sufficient to warrant the application of § 2A6.2(b)(1)(E).").

[17] Docket No. 89, at 5.

violated a protective order and will overrule the objection to the additional two-point enhancement assessed for violating a protective order.

Objection 5: Paragraph 74 states that Defendant was arrested for Aggravated Assault in 1998 and summarizes offense reports detailing the underlying conduct. Defendant objects, stating "the conduct alleged in this paragraph is denied" and that she "objects to the details of the allegations." As stated, to trigger the Court's Rule 32 fact-finding obligation, the defendant has "an affirmative duty to make a showing that the information in the PSR was unreliable and articulate the reasons why the facts contained therein were untrue or inaccurate."[18] Defendant has failed to make such articulation here. Notably, Defendant does not deny the arrest, but objects generally to the description provided in support. She does not state why or how the described conduct is inaccurate or unreliable. Further, the arrest report provided by the government is sufficiently reliable to support the charges. Accordingly, the Court will overrule the objection.

Objection 6: Paragraph 77 details Defendant's disorderly conduct conviction from New York County Court in 2013. Again, Defendant objects generally "to the description of the offense conduct described" but fails to "articulate the reasons why the facts contained therein were untrue or inaccurate," as to trigger the Court's fact-finding obligation. Defendant further objects to a criminal history point being added under U.S.S.G. § 4A1.2(c)(1), which provides that criminal history points may be assessed for "[d]isorderly conduct" "only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense."

[18] *McDonald*, 43 F.4th at 1095 (internal quotation marks and citation omitted).

Defendant then cites to Application Note 12(A) to § 4A1.2, which provides a list of "common sense" factors for consideration "[i]n determining whether an unlisted offense is similar to an offense listed in subsection (c)(1) or (c)(2)." Defendant then argues these factors as the basis for why the criminal history point should be removed, comparing "disorderly conduct" to "cyberstalking." However, the "common sense approach" outlined in Application Note 12(A) is not applicable here because "disorderly conduct," is a listed offense in subsection (c)(1), not an unlisted offense.[19]

Instead, the Tenth Circuit has directed that "the categorical approach" is applicable here. As explained by the Tenth Circuit:

> Sentencing enhancements for prior convictions are a common feature of both the Sentencing Guidelines and the criminal code. Depending on the language of the enhancement, courts have employed two different approaches in deciding whether a prior conviction warrants an enhancement. First, when the language of the enhancement confines the court's inquiry to the terms of the statute of conviction, courts employ the 'categorical approach,' looking not to the particular facts of the prior conviction but to the terms of the underlying statute. . . . Second, when the language of the enhancement requires courts to look at the specific facts underlying the prior offense, courts employ a 'factual approach,' looking not only at the terms of the statute of conviction, but also at the underlying facts.[20]

The Tenth Circuit has found that in considering whether a charge of "disorderly conduct" can count toward a defendant's criminal history under § 4A1.2(c)(1), the categorical approach would apply.[21] Although, the categorical approach may "permit[] courts to look beyond the

---

[19] *See United States v. Abeyta*, 877 F.3d 935, 939 (10th Cir. 2017) ("As the comment states, [the common sense] approach applies when determining whether an unlisted offense is similar to a listed offense.").

[20] *United States v. Martinez-Hernandez*, 422 F.3d 1084, 1086–87 (10th Cir. 2005) (internal quotation marks and citation omitted).

[21] *United States v. Griffin*, 763 F. App'x 782, 785 n.2 (10th Cir. 2019) ("If [the defendant] had been charged with disorderly conduct or disturbing the peace, both 'listed offense[s],' we would apply the categorical approach rather than the common sense approach."); *see also Martinez-Hernandez*, 422 F.3d at 1087 ("Because enhancements more often focus on the terms of the statute of conviction than the underlying facts, and because of the practical difficulties and

statute of conviction under certain circumstances," the government has not argued that any such circumstances apply here. Accordingly, the Court looks only to the terms of the underlying statute, and not to the factual record in support of the charged conduct, however similar it may be to the underlying conduct at hand.[22] As argued by Defendant, the terms of New York's disorderly conduct statute and the federal cyberstalking statute are not sufficiently similar to support an enhancement. The government has not argued otherwise. Further, it could be argued that the originally pleaded-to "harassment" charge bears more similarity to the instant cyberstalking charge. However, there is no argument before the Court that "harassment," an "unlisted" offense, is similar to a "listed" offense, thereby warranting the enhancement.

Based on the above analysis, the Court sustains the objection in part and will order the criminal history point added in Paragraph 77 removed.

Objection 7: Defendant objects to paragraph 78's description of the state criminal charges to which she pleaded guilty. As a basis, she states generally that the paragraph is simply "a recitation of the allegations" and "she denies many of the allegations in the state cases."[23] Once again, Defendant fails "to make specific allegations of factual inaccuracy,"[24] or otherwise "articulate the reasons why the facts contained therein were untrue or inaccurate."[25] Accordingly, the Court finds its fact-finding obligation has not been triggered and will overrule the objection.

---

potential unfairness of the factual approach, the factual approach is less common than the categorical approach.") (internal quotation marks and citation omitted).

[22] *Martinez-Hernandez*, 422 F.3d at 1089 ("[I]n applying the categorical approach to prior guilty pleas, sentencing courts are forbidden from 'looking to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for,' an offense meriting an enhancement.") (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)).

[23] Docket No. 256, at 8.

[24] *Chee*, 514 F.3d at 1115 (10th Cir. 2008) (internal quotation marks and citation omitted).

[25] *McDonald*, 43 F.4th at 1095 (internal quotation marks and citation omitted).

Objection 8: Paragraph 109 recites the applicable offense level, criminal history category, and guideline range. Based on Defendant's successful argument in support of removing the additional criminal history point in paragraph 77, Defendant's criminal history category will change from a II to I. Accordingly, the Court will sustain this objection in part.

Objections 9-11: These objections involve proposed conditions of probation or supervised release, and will be addressed by the Court at sentencing.

## III. CONCLUSION

Based on the findings above, the Court will proceed at sentencing under the following guideline calculations: Offense Level of 21; Criminal History Category of I; and Advisory Guideline Range of 37 to 46 months.

SO ORDERED.

DATED this 31st day of August, 2026.

BY THE COURT:

Ted Stewart
United States District Judge